IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JOSHUA SITZER AND AMY WINGER, SCOTT AND RHONDA BURNETT, and RYAN HENDRICKSON, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC, THE LONG & FOSTER COMPANIES, INC., RE/MAX LLC, and KELLER WILLIAMS REALTY, INC.<br><br>Defendants. | Case No. 4:19-cv-00332-SRB |

## ORDER

Before the Court is a Motion of the National Association of Realtors to Transfer this Case to the Northern District of Illinois (Doc. #58). For the following reasons the motion is DENIED.

### I.  Background

Plaintiffs "bring this action on behalf of themselves and on behalf of the plaintiff classes . . . consisting of all persons and entities who listed properties on one of four Multiple Listing Services[1] (the "Subject MLS") and paid a broker commission from at least April 29, 2015 until the Present (the "Subject MLS Class Period")." (Doc. #38, p. 1). Defendants are the National Association of Realtors ("NAR") "and the four largest national real estate broker franchisors[,] . .

---

[1] Plaintiffs describe an MLS as "a database of properties listed for sale in a particular geographic region." (Doc. #38, p. 3). Plaintiffs state that if brokers are members of an MLS, they "are required to list all properties on the MLS." (Doc. #38, p. 3).

1

. each of which has a significant presence in the Kansas City metropolitan area." (Doc. #38, p. 1). Plaintiffs allege that "[t]ogether, Defendants have conspired to require home sellers to pay the broker representing the buyer of their homes, and to pay an inflated amount, in violation of federal antitrust law, the Missouri Merchandising Practices Act ("MMPA")[2], and the Missouri Antitrust Law[.]" (Doc. #38, p. 1). Plaintiffs allege that "[t]he cornerstone of Defendants' conspiracy is NAR's adoption and implementation of a rule that requires all seller's brokers to make a blanket, unilateral and effectively non-negotiable offer of buyer broker compensation (the "Adversary Commission Rule") when listing a property on a [MLS]." (Doc. #38, p. 3). Plaintiffs allege "[t]he MLSs at issue in this case are controlled by local NAR associations, and access to such MLSs is conditioned on brokers agreeing to follow all mandatory rules set forth in NAR's Handbook on Multiple Listing Policy." (Doc. #38, p. 3). NAR moves the Court to transfer this case to the Northern District of Illinois, arguing "this Court lacks personal jurisdiction over NAR under either the Missouri long-arm statute, Mo. Rev. Stat. § 506.500.1, [or] under § 12 of the Clayton Act[.]" (Doc. #58, p. 1).

**II.     Legal Standards**

    **A.  Transfer to Cure Lack of Personal Jurisdiction**

When a "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed[.]" 28 U.S.C. § 1631.

---

[2] Plaintiff states that "[t]he Class Period for the MMPA Class is April 29, 2014 (or earlier) until the Present." (Doc. #38, p. 1)

2

### B. Transfer to Cure Improper Venue under the Clayton Act

"The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). "[W]hen reviewing a motion to transfer, a court may consider evidence outside of the pleadings but must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party." *Thompson v. Titus Transp., LP*, 2012 WL 5933075, at *3 (D. Kan. Nov. 27, 2012) (internal citation and quotation marks omitted).

### III. Discussion

#### A. Personal Jurisdiction Under the Missouri Long-Arm Statute

NAR argues this Court lacks personal jurisdiction over NAR under the Missouri long-arm statute. Plaintiffs do not rely on the Missouri long-arm statute to argue this Court's personal jurisdiction over Defendants. Plaintiffs rely solely on the Clayton Act's personal jurisdiction and venue rules. Accordingly, the Court will not entertain NAR's argument relating to personal jurisdiction under Missouri's long-arm statute, and NAR's motion to transfer pursuant to § 1631 is denied.

#### B. Personal Jurisdiction Under the Clayton Act

Section 12 of the Clayton Act provides special venue and service of process rules for private antitrust actions brought against corporate defendants. Section 12 provides:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

15 U.S.C. § 22.  "[A] corporation is engaged in transacting business in a district . . . if in fact, in the ordinary and usual sense, it 'transacts business' therein of any substantial character." *United States v. Scophony Corp. of Am.*, 333 U.S. 795, 807 (1948) (internal citation omitted).  If venue is proper under Section 12, personal jurisdiction may be established by worldwide service of process. *In re Vitamin C Antitrust Litig.*, 2012 WL 2930109, *4 (E.D. N.Y. July 18, 2012); *Go-Video, Inc. v. Akai Elec. Co. Ltd.*, 885 F.2d 1406, 1413–14 (9th Cir. 1989); 14D Fed. Prac. & Proc. Juris. § 3818 (4th ed.).

The Circuits are split regarding how the two clauses of Section 12—the venue clause and the service of process clause—may be used.  The Third Circuit and Ninth Circuit have adopted a broad interpretation that permits plaintiffs to establish venue by using either the general venue statute, 28 U.S.C. § 1391, or the Section 12 venue clause, combined with the Section 12 service of process clause in order to establish personal jurisdiction over a corporate defendant.  *See In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 296–97 (3rd Cir. 2004); *Go-Video, Inc.*, 885 F.2d at 1413.  The D.C. Circuit, Second Circuit, and Seventh Circuit require that in order to take advantage of the Section 12 service of process clause to establish personal jurisdiction, plaintiffs may only establish venue by using the Section 12 venue clause.  *See GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000); *Daniel v. Am. Bd. Of Emergency Med.*, 428 F.3d 408, 423–24 (2d Cir. 2005); *KM Enters., Inc., v. Global Traffic Techs., Inc.*, 725 F.3d 718, 730 (7th Cir. 2013).  The Eighth Circuit has not adopted an interpretation.

Defendants urge the Court to adopt the narrow reading of Section 12 and forbid Plaintiff from combining the general venue statute with the nationwide service of process clause of Section 12 in order to establish this Court's personal jurisdiction over NAR.  Defendants argue

venue is improper in this District under the narrow reading of Section 12 because "plaintiffs do not allege any facts to support the conclusion that NAR 'transacts business' in this District within the meaning of § 12." (Doc. #59, p. 15). Defendants also argue that sporadic contact with this District does not rise to the level of transacting business within the District in a substantial way. Defendants argue that because venue is improper under Section 12, "the Court lacks personal jurisdiction over NAR under the nationwide service of process provisions of § 12." (Doc. #59, p. 18). Defendants also argue that NAR has insufficient minimum contacts with Missouri to support a finding of personal jurisdiction over NAR that satisfies Due Process.

Plaintiffs argue that venue is proper in the Western District of Missouri, and thus this Court has personal jurisdiction over NAR in this District, under both the broad and narrow interpretations of Section 12's personal jurisdiction provision. Plaintiffs argue venue is proper under the broad approach because "a substantial part of the events . . . giving rise to the claim occurred" in this District. § 1391. Plaintiffs argue "four of the five named class representative Plaintiffs sold homes located in this District, where they were injured because Defendants implemented and enforced NAR's Adversary Commission Rule on the Heartland [or the Kansas City] MLS." (Doc. #65, p. 16). Plaintiffs argue venue is proper under the stricter approach because NAR transacts business in this District as contemplated by the Clayton Act. Plaintiffs argue that NAR has sufficient contacts with the United States, as is required by Section 12, to support a finding of personal jurisdiction that satisfies Due Process.

The Court need not adopt an interpretation of Section 12 because this Court has personal jurisdiction over NAR in accordance with both the broad and narrow reading. Defendants urge the Court to adopt the narrow reading, but do not argue that personal jurisdiction is not satisfied under the broad reading. The broad reading allows Plaintiffs to establish venue by showing that

5

"a substantial part of the events . . . giving rise to the claim occurred" in this District. § 1391. Here, four of the five named plaintiffs "sold homes located in this District, where they were injured because Defendants [allegedly] implemented and enforced NAR's Adversary Commission Rule on the Heartland MLS," which corresponds with the Kansas City area within this District. (Doc. #65, p. 16). A substantial part of NAR's alleged implementation and enforcement of the Adversary Commission Rule against the sellers' brokers occurred in the District, given that three of the four Subject MLSs[3] correspond with cities within this District. Accordingly, venue is proper in the Western District of Missouri under § 1391.

Venue is also proper in this District under Section 12's venue clause, which dictates that venue is proper in any district in which a corporation, "in the ordinary and usual sense [] 'transacts business' therein of any substantial character." *Scophony Corp.*, 333 U.S. at 807 (internal citation omitted). Section 12 of the Clayton Act was enacted to enlarge jurisdiction over corporations. *Id.* at 806–07. "The construction gave the words 'transacts business' a much broader meaning for establishing venue than the concept of 'carrying on business' denoted by 'found' under the preexisting statute and decisions." *Id.* at 807 (internal citation omitted). In enacting Section 12 of the Clayton Act, Congress "relieved persons injured through corporate violations of the antitrust laws from the 'often insuperable obstacle' of resorting to distant forums for redress of wrongs done in the places of their business or residence." *Id.* (internal citation omitted). "A foreign corporation no longer could come to a district, perpetrate there the injuries outlawed, and then by retreating or even without retreating to its headquarter defeat or delay the retribution due." *Id.*

---

[3] Plaintiffs bring this class action on behalf of home sellers who paid a broker commission and whose homes were listed on MLSs corresponding with Kansas City, Missouri; Springfield, Missouri; Columbia, Missouri; and St. Louis, Missouri.

"[T]he substantiality of the business transacted is to be judged from the point of view of the average businessman and not in proportion to the sales or revenues of the defendant." *Black v. Acme Markets, Inc.*, 564 F.2d 681, 687 (5th Cir. 1977) (internal citations omitted); *Katz Drug Co. v. W. A. Sheaffer Pen Co.*, 6 F. Supp. 210, 212 (W.D. Mo. 1932). Further, "the purchases and/or sales which constitutes the transaction of business need not be connected to the subject matter of th[e] suit." *Id.* "The language of a particular case should not be taken as a standard to be erected as a set of rigid prescriptions of the particular incidents of business conduct which may constitute the transaction of business." 3 A. L. R. Fed. 120 (2019) (citing *Austad v. United States Steel Corp.* 141 F. Supp. 437, 440 (N.D. Cal. 1956)). "[W]hat constitutes transacting business . . . cannot be determined by drawing up a checklist of specific incidents of business done and comparing it with the activities in a particular case." *Id.* (citing *Abrams v. Bendix Home Appliances, Inc.* 96 F. Supp. 3, 8 (S.D.N.Y. 1951)). "Although there is no 'singular definitive test for transacting business,' the most important factor to consider is 'the dollar amount of business transacted in the district.'" *In re Blue Cross Blue Shield Antitrust Litig.*, 225 F. Supp. 3d 1269, 1293 (N.D. Ala. 2016) (internal citation omitted).

NAR collects "substantial revenues and fees[] from its members located in this District." (Doc. #65, p. 12). NAR's affidavit filed as an exhibit to the instant motion confirms that approximately 22,600 of its members are located in Missouri but fails to specify how many of those members are located within the Western District of Missouri. Even assuming 10,000 of the Missouri members are located within the Western District of Missouri, which evidence supports and Defendants do not refute, with annual membership dues near $150 per member, NAR receives nearly $1.5 million in dues yearly from members in this District. *See Blue Cross Blue Shield*, 225 F. Supp. at 1296 ("Frankly, it is incredible for BCBS–MS to assert that its

7

collection of approximately $190,000 in premiums per year from approximately 1,900 subscribers in this district constitutes de minimis business. That in itself would be enough for the court to conclude that BCBS–MS engages in substantial business in this district."). That "[l]ess than 1% of NAR's total dues revenue is derived from members in the Western District of Missouri" is inconsequential. (Doc. #59-1, p. 2). *See Brandt v. Renfield Imps., Ltd.*, 278 F.2d 904, 911 (8th Cir. 1960) ("The large amounts of the sales made . . . by [defendants] . . . demonstrate that the business transacted was very substantial. That the sales constituted a very small fraction of the business carried on in all the districts throughout the country . . . is immaterial.").

In addition to collecting membership dues, evidence supports—and NAR does not deny—that NAR requires its member associations to incorporate mandatory provisions verbatim into their bylaws. Membership associations must certify that their bylaws include such provisions, and the MLS Rules and Regulations of member associations and MLSs must also be reviewed and approved by NAR. Member associations and MLSs must also adopt new or amended NAR policies. The above demonstrates that NAR not only transacts substantial business in a monetary sense, but also exerts substantial power and control over its members in this District. *See Daniel*, 428 F.3d at 429 (citing *Myers v. Am. Dental Assoc.*, 695 F.2d 716, 730 (3d Cir. 1983) ("[A] defendant professional organization transacts business in a district when it enforces its standards against constituent organizations through direct, continual supervision of those organizations in the judicial district.").

Additionally, NAR formed a partnership with Blue Springs, Missouri-based company Xceligent, "a national public marketing platform for commercial real estate listings" in 2013. Evidence demonstrates that Xceligent paid NAR directly at least $35,000 for royalties, goods,

8

and services in 2017. NAR also hosted 140 NAR communication directors from state and local associations at a three-day Communication Directors Institute conference at the Crown Center Westin in Kansas City, Missouri, in 2019. Additionally, undisputed evidence shows that the Missouri Realtors, a trade association representing realtors throughout Missouri, budgets to pay NAR over $100,000 a year for unspecified expenses. These business transactions, combined with the roughly $1.5 million in dues NAR receives from its members within this District, show that NAR transacts business of a substantial character within the Western District of Missouri. That NAR does not have an "office, facilities, or employees in this District, [] is not registered to do business in Missouri," and does not specifically target Missouri residents for business solicitation or advertising does not change the analysis. *See, e.g.*, *Health Care Equalization Comm. of Iowa Chiropractic Soc. v. Iowa Med. Soc.*, 501 F. Supp. 970, 980–83 (S.D. Iowa 1980) (finding defendant professional association transacted business in Southern District of Iowa even though association was "not licensed to do business in Iowa," had "no office, employees, or agents in Iowa," had "no property and [made] no purchases in Iowa, and" had "not held any meetings, seminars or workshops in Iowa," because "1.3% of its members reside in Iowa and receive publications, newsletters and other information from the [association], and are subject to its canon of ethics" and because a committee of the association had additional contacts with Iowa)[4]; *Blue Cross Blue Shield*, 225 F. Supp. 3d at 1298 (finding defendant entity conducted

---

[4] NAR argues plaintiffs failed "to mention the controlling decision of the Eighth Circuit in [this] case on appeal from the district court . . . compels the conclusion that assertion of jurisdiction over NAR in this case would violate the Due Process Clause of the Fourteenth Amendment." (Doc. # 71, p. 3). NAR is mistaken. In the Eighth Circuit's opinion, the Court affirmed the district court's finding that the court lacked personal jurisdiction over a defendant *pursuant to the Iowa long-arm statute* because that defendant did not have "sufficient minimum contacts with Iowa to satisfy the requirements of the due process clause of the fourteenth amendment." *Health Care Equalization Comm. of the Iowa Chiropractic Soc. v. Iowa Med. Soc.*, 851 F.2d 1020, 1022–23 (8th Cir. 1988). The district court's finding of personal jurisdiction over a separate defendant *based on Section 12 of the Clayton Act* was not appealed. Accordingly, the Eighth Circuit's opinion and Due Process analysis do not affect the Section 12 personal jurisdiction standard and analysis.

9

substantial business in district where entity had four members in district, "collected approximately $12,508 per year in premiums from its members" within the district, and "paid an average of approximately $86,700 per year . . . to settle claims" within the district).

None of the cases NAR cites involved such substantial business transactions as those transacted by NAR described above. *See Bartholomew v. Va. Chiropractic Ass'n*, 612 F.2d 812 (4th Cir. 1979) *abrogated on other grounds by Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119 (1982) (Defendant's solicitation of advertising time and dissemination of correspondence did amount to transacting business within meaning of Section 12); *Golf City, Inc. v. Wilson Sporting Goods*, Co., 555 F.2d 426, 438 (5th Cir. 1977) (fifty-five members of defendant association living in district, members' receipt of association's publications in district, and five-day business school in district did not amount to transacting business within meaning of Section 12); *Daniel*, 428 F.3d at 429–30 (no substantial business transactions where defendant professional organization's contacts were with the state as a whole rather than the relevant district, and defendant "certified an unspecified number of physicians in New York" and "received an unspecified amount of revenue from the application fees of physicians in New York.").

NAR argues that "[s]ince it would violate due process to assert jurisdiction over NAR under the Missouri long-arm statute, it would also violate due process to assert jurisdiction under § 12 of the Clayton Act." (Doc. #71, p. 4). In support of this argument, NAR cites *South Dakota v. Kansas City S. Indus., Inc.*, 880 F.2d 40, 44 n.10 (8th Cir. 1989), which states that the application of Section 12 "must in every case satisfy constitutional due process principles, including "the familiar 'minimum contacts' requirements for personal jurisdiction." Defendants failed to cite the later-decided *In re Fed. Fountain, Inc.*, 165 F.3d 600, 601 (8th Cir. 1999) (en banc), in which the Eighth Circuit "[took] the opportunity to disagree with that holding and to

align [itself] with virtually every other court that has ruled on the issue" of whether there must "be minimum contacts between a defendant and the state in which he or she is expected to answer, before the court that issued the process may constitutionally assume personal jurisdiction over that defendant." The Court went on to clarify that when Congress "exercise[s] its authority to furnish federal district courts with the power to exert personal jurisdiction nationwide," as Congress did in Section 12 of the Clayton Act, "the fairness that due process of law requires" is satisfied when a defendant "has sufficient contacts with the United States." *Id.* at 602; *see also Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) ("In a statute providing for nationwide service of process, the inquiry to determine minimum contacts is thus whether the defendant has acted within any district of the United States or sufficiently caused foreseeable consequences in this country.") (internal citation and quotation marks omitted); *KM Enters., Inc.*, 725 F.3d at 731; *Go-Video, Inc.*, 885 F.2d at 1416; *Blue Cross Blue Shield*, 225 F. Supp. 3d at 1300. NAR does not dispute that it has minimum contacts with the United States. Aside from NAR's multiple points of contact with the state of Missouri discussed above, NAR acknowledges that it is incorporated in Illinois, its principal place of business is in Chicago, Illinois, and it has an office in Washington, D.C. NAR is an association of real estate professionals throughout the United States and satisfies the standard of minimum contacts with the United States.

Accordingly, because venue is proper under Section 12's special venue provision, nationwide service of process is authorized, and this Court has personal jurisdiction over NAR. The Court will not certify its decision to the Eighth Circuit, as NAR's request that this Court do so relies on a mistaken interpretation of the law, as this Court addressed in footnote 4 above.

**IV.     Conclusion**

The Motion of the National Association of Realtors to Transfer this Case to the Northern District of Illinois (Doc. #58) is DENIED.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: August 19, 2019