IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JOSHUA SITZER AND AMY WINGER, SCOTT AND RHONDA BURNETT, and RYAN HENDRICKSON, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC, RE/MAX LLC, and KELLER WILLIAMS REALTY, INC. <br><br> Defendants. | Case No. 4:19-cv-00332-SRB |

## ORDER

Before the Court is The HomeServices Defendants' Motion: (1) To Compel Arbitration, (2) To Strike Class Allegations as to Certain Unnamed Plaintiffs, and (3) To Stay Proceedings with Respect to the HomeServices Defendants' Pending Arbitration. (Doc. #217). The motion was filed by Defendants HomeServices of America, Inc. ("HomeServices"), BHH Affiliates, LLC, and HSF Affiliates, LLC (collectively, "HomeServices Defendants"). For the reasons discussed below, the motion is DENIED.

I. BACKGROUND

This class action case arises from Defendants' alleged use of anticompetitive trade practices within the residential real estate market. Plaintiffs represent a putative class of home sellers who listed their homes for sale on one of several regional real estate listing marketplaces ("Subject MLS"). HomeServices Defendants are real estate broker franchisors who operate

brokerage subsidiaries, franchisees, and/or affiliates within the geographic regions covered by the Subject MLS.

In their instant motion, HomeServices Defendants argue named Plaintiffs Scott and Rhonda Burnett, as well as other purported class members who listed their homes for sale through a subsidiary of HomesServices, executed listing agreements containing binding arbitration provisions. HomesServices Defendants ask this Court to "(1) require the Burnetts to arbitrate their claim; (2) strike any class allegations that improperly purports to include persons who signed an arbitration agreement; and (3) stay all proceedings with respect to the HomeServices Defendants' pending arbitration." (Doc. #218, p. 6).

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs this issue and "requires courts to enforce arbitration agreements according to their terms." *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1052 (8th Cir. 2013) (citation omitted); *see also* 9 U.S.C. § 2. The FAA carries a presumption of arbitrability and "[t]he Supreme Court has stated repeatedly that [9 U.S.C. § 2] establishes a 'liberal federal policy favoring arbitration agreements.'" *Owen*, 702 F.3d at 1052 (quoting *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012)). "Under § 4, a party 'aggrieved' by the failure of another party 'to arbitrate under a written agreement for arbitration' may petition a federal court 'for an order directing that such arbitration proceed in the manner provided for in such agreement.'" *Id.* (quoting 9 U.S.C. § 4).

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Newspaper Guild of St. Louis, Local 36047 v. St. Louis Post Dispatch, LLC*, 641 F.3d 263, 266 (8th Cir. 2011) (citation and internal quotations omitted). "Thus, when deciding whether to compel arbitration, a court asks

2

whether a valid agreement to arbitration exists, and if so, whether the dispute falls within the scope of that agreement." *Id.* "The FAA establishes that as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001) (citation and internal quotation marks omitted).

The question of whether the parties have agreed to submit a particular dispute to arbitration, *i.e.* the "question of arbitrability," is "an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). The U.S. Supreme Court has found that questions of arbitrability are presumptively for a court to decide, including whether the parties are bound by an arbitration agreement and whether an arbitration agreement applies to a particular type of controversy. *Id.* at 84. "Parties are free to arbitrate threshold or 'gateway' questions of arbitrability." *Fox v. Career Educ. Corp.*, No. 4:11-CV-1584-DDN, 2012 WL 1205155, at *3 (E.D. Mo. Apr. 11, 2012) (finding arbitrator should decide whether arbitration agreement was unenforceable as unconscionable).

### III. DISCUSSION

This Court must decide whether a nonsignatory to a contract containing an arbitration agreement can compel arbitration in an antitrust class action lawsuit. HomeServices Defendants characterize the issue as a gateway dispute that, by the terms of the arbitration agreement, must be decided by an arbitrator, including the "gateway question of a nonsignatory's right to enforce an arbitration agreement." (Doc. #232, p. 5). HomeServices Defendants point to the arbitration agreement's incorporation of the American Arbitration Association ("AAA") Rules as further evidence of the parties' agreement to arbitrate this gateway or threshold issue. (Doc. #232, pp.

3

5–6). Plaintiffs argue that: 1) HomeServices Defendants are not signatories to that contract, making them unable to enforce arbitration; 2) the arbitration agreement does not encompass these antitrust claims; and 3) HomeServices waived arbitration by litigating this case in federal court for nearly a year.[1] (Doc. #230, p. 1). The arbitration agreement at issue here states, in relevant part:

> Any controversy or claim between the parties to this Contract, its interpretation, enforcement or breach (which includes torts claims arising from fraud and fraud in the inducement), will be settled by binding arbitration pursuant to and administered by the rules of the American Arbitration Association (AAA), or such neutral party agreed to by the parties.

(Doc. #218-2, p. 123). Above the signature line for Plaintiffs and their realtor, ReeceNichols, appears the warning in bold and uppercase letters:

**THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES.**

(Doc. #218-2, p. 124). The words "party" or "parties" are used at least five additional times in the arbitration agreement. (Doc. #218-2, p. 123).

### A. Determination of Threshold or Gateway Issues

Courts must play a threshold role in determining "whether the parties have submitted a particular dispute to arbitration." *Catamaran Corp. v. Towncrest Pharmacy*, 864 F.3d 966, 970 (8th Cir. 2017) (quoting *Howsman v. Dean Witter Reynold, Inc.*, 537 U.S. 79, 83 (2002)). HomeServices Defendants argue that the Eighth Circuit's decision in *Eckert/Wordell Architects, Inc. v. FJM Properties of Willmar, LLC*, 756 F.3d 1098 (8th Cir. 2014), is controlling.

---

[1] This Court does not address the second two arguments due to the finding, based on *Catamaran*, that judges rather than arbitrators decide gateway issues in class actions. *See Catamaran Corp. v. Towncrest Pharmacy*, 864 F.3d 966, 970 (8th Cir. 2017). However, the Eighth Circuit allows for a waiver of a contractual right to arbitrate when a party 1) knew of the right, 2) acted inconsistently, and 3) the other party was prejudiced. *Hooper v. Advance America*, 589 F.3d 917, 920 (8th Cir. 2009). In this case, HomeServices Defendants knew of the right and acted inconsistently by litigating this case, including filing transfer motions, for almost one year, and prejudiced Plaintiffs by the delay. The delayed attempt to enforce arbitration feels like "heads I win, tails you lose." *Messina v. N. Central Distrib., Inc.*, 821 F.3d 1047, 1051 (8th Cir. 2016).

> Whether a particular arbitration provision may be used to compel arbitration between a signatory and a nonsignatory is a threshold question of arbitrability. *See Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 84–85, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (delineating potentially dispositive threshold issues between "questions of arbitrability" and "procedural questions"). We presume threshold questions of arbitrability are for a court to decide, unless there is clear and unmistakable evidence the parties intended to commit questions of arbitrability to an arbitrator. *Id.* at 83, 123 S.Ct. 588; *Express Scripts, Inc. v. Aegon Direct Mktg. Servs., Inc.,* 516 F.3d 695, 701 (8th Cir.2008). We have previously held the incorporation of the AAA Rules into a contract requiring arbitration to be a clear and unmistakable indication the parties intended for the arbitrator to decide threshold questions of arbitrability. *See Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769 (8th Cir.2011) (noting the AAA Rules empower the arbitrator to determine his or her own jurisdiction over a controversy between the parties). Eckert Wordell's drafting of the architectural services contract here to incorporate the AAA Rules requires the same result.

*Id.* at 1100. In *Eckert*, FJM Properties, a nonsignatory to the arbitration agreement, sought to compel signatory Eckert Wordell to arbitrate. *Id.* The Eighth Circuit detailed that Fischer Laser Eye Center originally contracted with Eckert Wordell. *Id.* at 1099. Fischer Laser Eye Center became Family Eye Properties, which then became FJM Properties. *Id.* In turn, *Eckert* dealt with successor-entity issues which are absent here. Further, the *Eckert* decision has been limited by the Eighth Circuit, specifically by refusing to expand the arbitrability of threshold questions to class action settings merely by incorporating the AAA Rules. *See Catamaran*, 864 F.3d at 966, 970, 973.

The Eighth Circuit recently discussed these same principles in a collective bargaining context in *Int'l Union v. Trane U.S. Inc.*, 946 F.3d 1031 (8th Cir. 2020), where an automobile-workers union sought to enforce an arbitration agreement. The Eighth Circuit noted:

> The principles we apply in deciding whether to compel arbitration are well established:
>
> (1) arbitration is a matter of contract and may not be ordered unless the parties agreed to submit the dispute to arbitration; (2) unless the parties provide otherwise, courts decide the issue of whether the parties agreed to arbitrate; (3) courts cannot weigh the merits of the grievance in determining whether the claim is subject to

5

> arbitration; and (4) when an arbitration clause exists in a contract, there is a presumption of arbitrability unless it is clear that the arbitration clause is not susceptible of an interpretation that covers the dispute.

*Id.* at 1033 (quoting *Teamsters Local Union No. 688 v. Indus. Wire Prods., Inc.*, 186 F.3d 878, 881 (8th Cir. 1999)). The Eighth Circuit further noted:

> The presumption of arbitrability does not "override[ ] the principle that a court may submit to arbitration only those disputes that the parties have agreed to submit." The presumption applies "only where it reflects, and derives its legitimacy from, a judicial conclusion that arbitration of a particular dispute is what the parties [to a CBA] intended."

*Id.* at 1033 (quoting *Granite Rock Co. v. Int'l Bd. of Teamster*s, 561 U.S. 287, 302-03 (2010)). The Eighth Circuit proceeded to closely examine the two different provisions of the arbitration agreement at issue to determine arbitrability, ultimately compelling arbitration under one provision. *Id.* at 1036. The *International Union* decision clearly provides that the presumption of arbitrability does not override the established principle that the parties must have agreed to arbitrate each particular dispute. *Id.* at 1033. That principle is well-grounded in recent Supreme Court decisions which emphasize the need for an affirmative contractual basis to compel arbitration, as arbitrators only "derive their powers from the parties' agreement to forgo the legal process and submit their disputes to private dispute resolution." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416 (2019) (internal quotation marks and citations omitted).

This point now leads us to the most relevant case, the 2017 Eighth Circuit decision in *Catamaran Corp. v. Towncrest Pharmacy*, 864 F.3d 966 (8th Cir. 2017). In *Catamaran*, the Eight Circuit elaborated on the definition of a threshold issue in an arbitrability context:

> These threshold or gateway issues are called substantive questions of arbitrability. Substantive questions include "whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy." *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003). Courts presume that substantive questions are "for judicial determination [u]nless the parties clearly and

6

> unmistakably provide otherwise." *Howsam*, 537 U.S. at 83, 123 S.Ct. 588 (alteration in original) (internal quotation marks omitted). Because arbitration is about consent of the parties, we "hesitate to interpret silence or ambiguity" in an agreement as grounds for committing such important questions to an arbitrator. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 945, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).

*Id*. at 970. Taking on a matter of first impression—"whether a court or arbitrator should determine whether an arbitration agreement authorizes class arbitration"—the Eighth Circuit decided that the court, not an arbitrator, must decide the threshold question "because of the fundamental differences between bilateral and class arbitration." *Id*. at 969. *Catamaran* did not involve nonsignatories to the arbitration agreement, but the relevant portion of the arbitration agreement did include a reference to the AAA Rules. *See id*. at 969. Judge Sheppard, writing for the Court, listed the following four reasons why class actions were different than bilateral agreements:

1. "The benefits of arbitration are substantially lessened in a class arbitration proceeding";
2. "Confidentiality is lost or becomes more difficult";
3. "Class arbitration brings the bet-the-company of class-action litigation into the realm of arbitration without the safety net of multilayered judicial review"; and
4. "Class arbitration raises important due process concerns."

*Id.* at 971–72 (internal citations omitted). The party seeking arbitration in *Catamaran* pointed out that the arbitration agreement referenced the AAA Rules, *id*. at 973, just as HomeServices Defendants have done here. And, just as HomeServices Defendants have done in this case, the party seeking arbitration in *Catamaran* cited to and relied upon the three leading Eighth Circuit cases which address this issue.[2] *See id.* In *Catamaran*, the Eighth Circuit determined that

---

[2] Those three cases are *Eckert/Wordell Architects, Inc. v. FJM Properties of Willmar, LLC*, 756 F.3d 1098 (8th Cir. 2014), *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766 (8th Cir.2011), and *Fallo v. High-Tech Inst.*, 559 F.3d 874 (8th Cir. 2009).

7

"bilateral arbitration dispute law is entitled to relatively little weight in the class arbitrability context" and that "[i]ncorporation of the AAA Rules by reference is insufficient evidence that the parties intended for an arbitrator to decide the substantive question of class arbitration." *Id.* at 973.

The cases of *Eckert, International Union*, and *Catamaran* are instructive to this Court. *Eckert* stands for the proposition that incorporating the AAA Rules is clear and unmistakable evidence of the parties' intent for the arbitrator to decide the threshold issue. *Eckert*, 756 F.3d at 1100. *International Union* holds that the presumption of arbitrability does not override the cornerstone principle that the parties must have agreed to arbitrate each particular dispute. *International Union*, 946 F.3d at 1033. Finally, *Catamaran* dictates that there are fundamental differences between bilateral and class actions, regardless of the incorporation of AAA Rules, that require a judge to determine arbitrability. *Catamaran*, 864 F.3d at 973.

### B. Threshold or Gateway Issues in an Antitrust Class Action Context?

In this case, Plaintiffs have brought an antitrust class action lawsuit against various defendants. While neither party cites to the *Catamaran* decision,[3] HomeServices Defendants do not seek to arbitrate the class action. Rather, HomeServices Defendants seek to strike the class action allegations altogether. HomeServices Defendants argue this Court is bound by the *Eckert* holding that merely a reference to the AAA Rules[4] is enough to establish clear and unmistakable

---

[3] HomeServices Defendants do cite to a Southern District of New York case on arbitrability of class action waivers as a gateway or threshold issue that appears to contradict the *Catamaran* decision.

[4] There are 55 sets AAA Rules that apply to various industries. *See Active Rules*, AM. ARBITRATION ASS'N, https://adr.org/active-rules (last visited Apr. 9, 2020). The arbitration agreement in this case does not refer to a specific set of AAA rules, so it is impossible for this Court to determine if there is "clear and unmistakable evidence" of what the parties agreed to as it relates to arbitrability of gateway issues. The arbitration agreement between Plaintiffs Burnett and ReeceNichols simply states that there will be "binding arbitration pursuant to and administered by the rules of the American Arbitration Association (AAA)." (Doc. #218-2, p. 123). HomeServices argues, without support, that the Commercial Rules is the appropriate one of the 55 sets of Rules. Without citation to the specific set of AAA Rules in the arbitration agreement, this Court finds a lack of clear and unmistakable evidence.

evidence of an intent to arbitrate gateway or threshold issues, although that position ignores the holdings of both *International Union* and *Catamaran.*

The Eighth Circuit has recently made clear that a presumption of arbitrability does not override the foundational principle that the parties must have agreed to arbitrate each particular dispute. *See International Union*, 946 F.3d at 1033. Further, the 2017 *Catamaran* decision is binding on this Court and remains good law; only the Tenth Circuit has questioned the holding. *See Dish Network L.L.C. v. Ray*, 900 F.3d 1240, 1244–45 (10th Cir. 2018).[5] According to the Tenth Circuit, the Eighth Circuit's decision in *Catamaran* is supported by the U.S. Supreme Court, the Third Circuit, the Fourth Circuit, and the Sixth Circuit. *Id.*

For the reasons set forth by Judge Sheppard, this Court finds that "bilateral arbitration dispute law is entitled to relatively little weight in the class arbitrability context" and that the "[i]ncorporation of the AAA Rules by reference is insufficient evidence that the parties intended for an arbitrator to decide the substantive question of class arbitration." *Catamaran*, 864 F.3d at 973. Judge Sheppard's four reasons for why courts, rather than arbitrators, should decide a gateway issue in a class action setting is even more true for an antitrust class action lawsuit like the one presented here. The "bet-the-company" implications, need for procedural protections, and the multi-layered review are all of critical importance to the parties. *Id*. at 971–72. In turn, the threshold or gateway issue raised by the parties will be decided by the Court.

---

[5] The Tenth Circuit stated, in relevant part: "In light of these Supreme Court cases, many circuits have concluded that whether an arbitration clause permits classwide arbitration is a gateway dispute for the courts to decide. *See, e.g.*, *Catamaran Corp. v. Towncrest Pharmacy*, 864 F.3d 966, 972 (8th Cir. 2017) (holding classwide arbitration determination to be a gateway dispute); *Del Webb Communities, Inc. v. Carlson*, 817 F.3d 867, 873 (4th Cir. 2016) (same); *Opalinski v. Robert Half Int'l Inc.*, 761 F.3d 326, 334–35 (3d Cir. 2014) (same); *Reed Elsevier*, 734 F.3d at 598 (stating "the Court has given every indication, short of an outright holding, that classwide arbitrability is a gateway question rather than a subsidiary one."). While this issue certainly appears to be advancing in the opposite direction of the concurrence's well-reasoned opinion, we need not resolve it today." *Dish Network*, 900 F.3d at 1244–45.

### C. Threshold Issue

Having determined that the court, not an arbitrator, must decide the threshold issue in the antitrust class action context, this Court must "determine whether such contractual basis for class arbitration exists in the agreements between" the parties in this case. *Catamaran*, 864 F.3d at 973–74. As a federal district court sitting in Missouri, this Court must analyze an arbitration agreement based on Missouri state-law principles. *Robinson v. EOR-ARK, LLC*, 841 F.3d 781, 784 (8th Cir. 2016).

"Arbitration is a matter of contract, and a party cannot be required to arbitrate a dispute that it has not agreed to arbitrate." *Dunn Indus. Grp., Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 435 (Mo. banc 2003). While the FAA favors resolution of disputes by enforcement of arbitration agreements, that policy alone is not enough "to extend an arbitration agreement beyond its intended scope." *Tucker v. Vincent*, 471 S.W.3d 787, 794 (Mo. App. E.D. 2015) (quoting *Bellemere v. Cable-Dahmer Chevrolet, Inc.*, 423 S.W.3d 267, 276 (Mo. App. W.D. 2013)). Under Missouri law, "'[o]nly parties to a contract and any third-party beneficiaries of a contract have standing to enforce that contract. To be bound as a third-party beneficiary, the terms of the contract must clearly express intent to benefit that party.'" *See Torres v. Simpatico, Inc.*, 781 F.3d 963, 971 (8th Cir. 2015) (citing *Verni v. Cleveland Chiropractic Coll.*, 212 S.W.3d 150, 153 (Mo. banc 2007)). In *Torres*, the arbitration provision stated the agreement was "intended to benefit and bind certain third party non-signatories," required the purchase of insurance naming a non-signatory as a beneficiary, and allowed for indemnity of "shareholders, directors, officers, [and] employees[.]" *Id*.

Here, there is no relationship between Plaintiffs Burnett and HomeServices Defendants. HomeServices Defendants admit "neither the named plaintiffs nor any purported class member

10

has any contract or direct relationship with HomeServices relevant to the claims asserted in this case." (Doc. #218, p. 2). Plaintiffs Burnett entered into a contract with nonparty ReeceNichols for commission-based real estate brokerage services in Missouri, which HomeServices owns through a subsidiary (Doc. #218, p. 2). HomeServices Defendants assert they are a holding company that does not sell real estate, does not charge commissions, and does not enter into listing agreements like the one between Plaintiffs Burnett and nonparty ReeceNichols. (Doc. #218, p. 2).

The contract entered into between ReeceNichols, as the Broker, and Plaintiffs Burnett, as the Seller, was captioned:

**EXCLUSIVE RIGHT TO SELL CONTRACT**
(Residential Use Only)

(Doc. #218-2, p. 118). The arbitration agreement in that contract clearly states it is binding on "any controversy or claim between the *parties* to this Contract." (Doc. #218-2, p. 123) (emphasis added). The contract also states that "neither *party* will be entitled to join or consolidate disputes by or against others in any arbitration, or to include in any arbitration any dispute as a representative or member of a class, or to act in any arbitration in the interest of the general public or in any private attorney general capacity." (Doc. #218-2, p. 123) (emphasis added). Finally, above the signature line the contract states:

**THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES**.

(Doc. #218-2, p. 124). As admitted by HomeServices Defendants and argued by Plaintiffs, no "contract or direct relationship" exists between Plaintiffs and HomeServices Defendants. HomeServices is not a party to the contract, not a signatory the contract, and does not sell real estate. Further, HomeServices is not a third-party beneficiary as defined by the Eighth Circuit

11

and Missouri Supreme Court and this contract lacks any reference to binding "third party non-signatories" or "officers, shareholders, [or] directors" as there was in *Torres*. 781 F.3d at 971. Under established Missouri Supreme Court law, "a party cannot be required to arbitrate a dispute that it has not agreed to arbitrate." *Dunn Indus. Grp., Inc.*, 112 S.W.3d at 435. As such, HomeServices Defendants, as a non-signatory to the contract, cannot enforce arbitration.

## IV. CONCLUSION

Accordingly, it is hereby ORDERED that HomeServices Defendants' Motion (1) To Compel Arbitration, (2) To Strike Class Allegations as to Certain Unnamed Plaintiffs, and (3) To Stay Proceedings with Respect to the HomeServices Defendants' Pending Arbitration (Doc. #217) is DENIED.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: April 10, 2020