Joshua Sitzer, on behalf of themselves and all others similarly situated; Amy Winger, on behalf of themselves and all others similarly situated; Scott Burnett; Rhonda Burnett; Ryan Hendrickson

*Plaintiffs - Appellees*

v.

National Association of Realtors

*Defendant*

HomeServices of America, Inc.

*Defendant - Appellant*

Keller Williams Realty, Inc.; Realogy Holdings Corp.; RE/MAX Holdings, Inc.

*Defendants*

BHH Affiliates, LLC; HSF Affiliates, LLC

*Defendants - Appellants*

The Long & Foster Companies, Inc.; RE/MAX LLC

*Defendants*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

Submitted: February 16, 2021
Filed: September 10, 2021

_____

Before SMITH, Chief Judge, ARNOLD and STRAS, Circuit Judges.

_____

STRAS, Circuit Judge.

Despite actively litigating this case in federal court for nearly a year, HomeServices[1] claims that the dispute really belongs in arbitration. The question is whether the company waived its right to arbitrate. We conclude that it did, and that, under our precedent, it is a question for us, not the arbitrator, to answer.

I.

Scott and Rhonda Burnett signed a listing agreement with Reece & Nichols Realtors, Inc. to sell their home. The agreement contained a provision requiring "[a]ny controversy or claim between the parties to this Contract, its interpretation, enforcement or breach[,] . . . [to] be settled by binding arbitration."

Along with other homeowners, the Burnetts brought a putative class-action lawsuit against various real-estate entities, including HomeServices of America, Inc., a parent company of Reece & Nichols. The complaint alleged that HomeServices and the other named defendants had engaged in anticompetitive practices.

---

[1] "HomeServices" refers to HomeServices of America, Inc., BHH Affiliates, LLC, and HSF Affiliates, LLC.

-2-

Case 4:19-cv-00332-SRB   Document 523-1   Filed 09/10/21   Page 2 of 8
Appellate Case: 20-1779   Page: 2   Date Filed: 09/10/2021 Entry ID: 5074812

Over the next year, HomeServices fully participated in the case. Along with the other defendants, it joined motions to dismiss and to transfer the case to another judicial district. It also negotiated a proposed scheduling order, answered the complaint, and replied to written discovery. Only then, 305 days after the Burnetts filed the lawsuit, did it finally seek to compel arbitration.

The district court denied the motion, mainly because HomeServices was not itself a party to the Burnetts' listing agreement. In a footnote, the court also questioned whether HomeServices had waived its right to arbitrate by "litigating this case . . . for almost one year." HomeServices appeals the denial of its motion,[2] and the Burnetts defend the ruling on both grounds. *See United States v. Garrido*, 995 F.2d 808, 813 (8th Cir. 2013) ("We may affirm [the denial of a motion to compel arbitration] on any ground supported by the record.").

II.

Arbitration is a waivable contractual right. *See Messina v. N. Cent. Distrib., Inc.*, 821 F.3d 1047, 1050 (8th Cir. 2016). One way in which waiver can occur is when a party decides to "substantially invoke[] the litigation machinery" rather than promptly seek arbitration. *Lewallen v. Green Tree Servicing, L.L.C.*, 487 F.3d 1085,

---

[2]In the same order, the district court denied HomeServices' motion to strike the allegations relating to other members of the putative class who, like the Burnetts, had entered into arbitration agreements of their own. HomeServices purports to challenge this ruling too, but it makes only passing references to it in its opening brief. HomeServices needs to do more than merely mention an alleged error. It must "meaningful[ly] argu[e]" the point for us to consider it. *Chay-Velasquez v. Ashcroft*, 367 F.3d 751, 756 (8th Cir. 2004).

-3-

1090 (8th Cir. 2007). The threshold question here is who gets to decide whether a party has "substantially invoke[d] the litigation machinery": courts or arbitrators?

It turns out that we provided the answer over 40 years ago in *N&D Fashions, Inc. v. DHJ Industries, Inc.*, 548 F.2d 722 (8th Cir. 1976). When the question is waiver through "default," which consists of "active[] participat[ion] in a lawsuit or . . . other action inconsistent with the right to arbitrat[e]," it is one "for determination by the courts." *Id.* at 728 (quotation marks omitted). But when "laches" or "estoppel" is at issue, which can occur when "relevant evidence has been lost due to the delay of the other," then we "generally . . . leave it to the arbitrator" to decide. *Id.* at 729.

Since then, we have consistently allowed courts to decide default-based waiver questions.[3] Other courts have too.[4] The rationale seems to be some combination of treating default-based waiver as a threshold issue of arbitrability, *e.g.*, *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1120–21 (9th Cir. 2008), and a recognition that courts are in a better position to decide it, *Marie*, 402 F.3d at 13.

---

[3]*See, e.g.*, *Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1087–88 (8th Cir. 2021); *Morgan v. Sundance, Inc.*, 992 F.3d 711, 713–15 (8th Cir. 2021); *Messina*, 821 F.3d at 1050–51; *Hooper v. Advance Am., Cash Advance Ctrs. of Mo., Inc.*, 589 F.3d 917, 923–24 (8th Cir. 2009); *Se. Stud & Components, Inc. v. Am. Eagle Design Build Studios*, 588 F.3d 963, 969 (8th Cir. 2009); *Lewallen*, 487 F.3d at 1094; *Kelly v. Golden*, 352 F.3d 344, 349–50 (8th Cir. 2003); *Dumont v. Saskatchewan Gov't Ins.*, 258 F.3d 880, 886–87 (8th Cir. 2001).

[4]*See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 80–81 (2d Cir. 2017) ("When the party seeking arbitration has participated in litigation regarding the dispute, the district court can properly decide the question of waiver."); *see also Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 14 (1st Cir. 2005) (similar); *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 217–18, 221 (3d Cir. 2007) (similar); *JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 394 (6th Cir. 2008) (similar); *Martin v. Yasuda*, 829 F.3d 1118, 1123 (9th Cir. 2016) (similar); *Grigsby & Assocs., Inc. v. M Sec. Inv.*, 664 F.3d 1350, 1353 (11th Cir. 2011) (similar).

-4-

Case 4:19-cv-00332-SRB Document 523-1 Filed 09/10/21 Page 4 of 8
Appellate Case: 20-1779 Page: 4 Date Filed: 09/10/2021 Entry ID: 5074812

The opposite is true when waiver occurs during arbitration or involves "time limits, notice, laches, estoppel, or other conditions precedent" to arbitration. *Pro Tech Indus. Inc. v. URS Corp.*, 377 F.3d 868, 872 (8th Cir. 2004) (emphasis omitted) (quoting *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 85 (2002)). In those circumstances, the arbitrator "presumptively" decides because it is "the expert[] about the meaning of [its] own rules" and can better "interpret and . . . apply them than courts." *Id.* at 872; *see also Howsam,* 537 U.S. at 85.

To be sure, HomeServices has a point that we have not spoken with absolute clarity on the subject. In *National American Insurance Company v. Transamerica Occidental Life Insurance Company*, for instance, we suggested that an arbitrator had to decide whether a party's "pursu[it of] litigation in the Oklahoma *courts*" established waiver. 328 F.3d 462, 466 (8th Cir. 2003) (emphasis added). The relevant conduct in that case, however, did not actually happen in court. Rather, the possibility of waiver arose from the failure to join Transamerica as a party in a prior arbitration proceeding. *See id.* at 463 ("Transamerica counterclaimed that NAICO had waived the right to arbitrate because the disputed contract was the subject of a prior arbitration."); *id.* at 463–64 ("Transamerica argued . . . that NAICO had waived the right to arbitrate because the 1990 reinsurance contracts were the subject of prior arbitration."). So when we referred to "Oklahoma courts," it may well have been, as one district court has noted, a mere "slip of the pen." *Parler v. KFC Corp.*, 529 F. Supp. 2d 1009, 1014 (D. Minn. 2008); *see also Ehleiter*, 482 F.3d at 220–21 (confessing "to some uncertainty about the nature of the waiver conduct at issue in *Transamerica*").

If this reading of *Transamerica* is right, then it fits comfortably within our line of cases involving arbitration-based waiver. *See Pro Tech*, 377 F.3d at 872; *Int'l Ass'n of Bridge, Structural, Ornamental, & Reinforcing Ironworkers, Shopman's Local 493 v. EFCO Corp. & Constr. Prods., Inc.*, 359 F.3d 954, 957 (8th Cir. 2004).

-5-

Case 4:19-cv-00332-SRB   Document 523-1   Filed 09/10/21   Page 5 of 8
Appellate Case: 20-1779   Page: 5   Date Filed: 09/10/2021 Entry ID: 5074812

If it is not, then *N&D* still controls under our first-in-time rule. *See Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) (en banc). Either way, we get to decide.

III.

With the who-decides question answered, we can now determine whether HomeServices has waived its right to arbitrate by actively litigating this case in federal court for close to a year. Waiver occurs when a party "(1) kn[ows] of an existing right to arbitration; (2) act[s] inconsistently with that right; and (3) prejudice[s] the other party [with its] inconsistent acts." *Ritzel Commc'ns, Inc. v. Mid-Am. Cellular Tel. Co.*, 989 F.2d 966, 969 (8th Cir. 1993). If we have any doubts about waiver, we must resolve them "in favor of arbitration." *Id.*

We have little doubt about what HomeServices was trying to do. If there was a possibility that the case would end in federal court, it was uninterested in switching to arbitration. *See Hooper*, 589 F.3d at 922. Indeed, it has never seriously disputed that it knew about the arbitration clause long before it moved to compel arbitration. Yet it decided to pursue the case in federal court anyway.

And it did so aggressively. Shortly after the Burnetts filed the lawsuit, HomeServices joined a request to transfer venue to another judicial district, "evidencing a preference for litigation" over arbitration. *Messina*, 821 F.3d at 1051 (quotation marks omitted); *see id.* (explaining that a party waived arbitration when it "moved to compel arbitration [only] after it lost [a] motion to transfer venue").

Then, without waiting for an answer on the change-of-venue motion, it joined and fully briefed a motion to dismiss for failure to state a claim. *See* Fed. R. Civ. P 12(b)(b)(6); *Kelly*, 352 F.3d at 350 (concluding that a party waived arbitration by "consistently encourag[ing] the district court to resolve the entire dispute"). By doing so, it "sought a final decision from the district court [on] the merits of the

-6-

parties' dispute," which we have already held is "inconsistent with resolving the case through arbitration." *Hooper*, 589 F.3d at 921 (internal quotation marks omitted).

HomeServices did not stop there. It negotiated a proposed scheduling order and participated in a scheduling hearing. And when the district court finally denied the earlier motions, it replied to written discovery, filed an answer, and even joined a motion to amend the scheduling order it had previously negotiated. These are hardly the actions of a party trying "to move promptly for arbitration." *Id.* at 921, 924 (quotation marks omitted); *see also Messina*, 821 F.3d at 1050 (considering "filing an answer, participating in a pretrial hearing, [and] filing a scheduling report [that] recommended a trial date and discovery deadlines" as evidence of waiver); *see also Se. Stud & Components*, 588 F.3d at 969 (concluding that a defendant waived arbitration by, among other things, responding to discovery requests).

It is not as if HomeServices lacked opportunities along the way. *See Messina*, 821 F.3d at 1050. Indeed, it took 305 days before it finally moved to compel arbitration. *See id.* (explaining that a defendant waived arbitration in part because it waited eight months to seek it). A party cannot keep a contractual right to arbitration in its back pocket and pull it out only when it is ready for a "do over." *See id.* (likening this scenario to a game of "heads I win, tails you lose" (quotation marks omitted)).

The extra work the Burnetts had to do is exactly why they were prejudiced. For one thing, they had to respond to a motion to dismiss, which is something that they would likely have to do again if the case were sent to arbitration. *See Hooper*, 589 F.3d at 923 (explaining that compelling arbitration after the district court has ruled on a motion to dismiss "would require a duplication of effort"). For another, they had to deal with other issues too, like the motion to transfer venue, which would have no effect on any arbitration proceeding. *See Messina*, 821 F.3d at 1051 (explaining that a party was prejudiced, in part, because he had to "respond[] to the

-7-

Case 4:19-cv-00332-SRB   Document 523-1   Filed 09/10/21   Page 7 of 8
Appellate Case: 20-1779   Page: 7   Date Filed: 09/10/2021 Entry ID: 5074812

transfer motion"). Given that "[t]he prejudice threshold is not onerous," we conclude that the Burnetts cleared it. *Hooper*, 589 F.3d at 923.

To summarize, HomeServices cannot compel the Burnetts to arbitrate a case that it has already litigated for nearly a year in federal court. The company failed to "do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration." *Lewallen*, 487 F.3d at 1091 (quotation marks omitted). Having followed this course, it must now live with the consequences.

IV.

We accordingly affirm the judgment of the district court.

_____

Case 4:19-cv-00332-SRB   Document 523-1   Filed 09/10/21   Page 8 of 8
Appellate Case: 20-1779     Page: 8      Date Filed: 09/10/2021 Entry ID: 5074812