IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| SCOTT AND RHONDA BURNETT, RYAN HENDRICKSON, JEROD BREIT, SCOTT TRUPIANO, AND JEREMY KEEL, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC, RE/MAX LLC, and KELLER WILLIAMS REALTY, INC.,<br><br>Defendants. | Case No. 4:19-cv-00332-SRB |

## ORDER

Before the Court is Defendant HomeServices's[1] Motion to Compel Arbitration (Doc. #757), and Defendants RE/MAX, LLC, National Association of Realtors, Realogy Holdings Corp., and Keller Williams Realty, Inc.'s (the "Remaining Defendants") Motion to Compel Arbitration or, in the Alternative, to Stay Proceedings Pending Arbitration (Doc. #784). For the reasons stated below, the motions are DENIED.

### I. BACKGROUND

#### A. Factual Background

Plaintiffs Rhonda Burnett, Scott Burnett, Ryan Hendrickson, Jerod Breit, Scott Trupiano, and Jeremy Keel (collectively, "Plaintiffs") in this class action allege that all defendants enforce anticompetitive rules which require home sellers to compensate the home buyer's broker. On

---

[1] "HomeServices" collectively refers to HomeServices of America, Inc., BHH Affiliates, LLC, and HSF Affiliates, LLC.

April 22, 2022, the Court granted Plaintiffs' motion for class certification, certifying classes of home sellers who listed their homes for sale on one of several regional real estate listing marketplaces (the "Subject MLSs") through an agent affiliated with one of the defendants. On June 6, 2022, the United States Court of Appeals for the Eighth Circuit denied the defendants' petition for permission to appeal the class certification order. *See Burnett v. Nat'l Ass'n of Realtors*, Eighth Circuit Case No. 22-8009.

Defendant National Association of Realtors ("NAR") is a national trade association of real estate brokers and agents. HomeServices, Realogy Holdings Corp., and Keller Williams Realty, Inc. are national real estate broker franchisors that operate brokerage subsidiaries, franchisees, or affiliates within the geographic regions covered by the Subject MLSs. According to Plaintiffs, NAR created and implemented the anticompetitive rules, and the other defendants enforce those rules through anticompetitive practices.

Some of the class members, including class representatives Rhonda Burnett and Scott Burnett (the "Burnetts"), used the brokerage services of Reece & Nichols Realtors, Inc. ("ReeceNichols") to sell their home. Another group of class members used the brokerage services of BHH KC Real Estate, LLC d/b/a Berkshire Hathaway HomeServices Kansas City Realty ("BHH KC") to sell their home. Both ReeceNichols and BHH KC are wholly owned subsidiaries of HomeServices of MOKAN, LLC. HomeServices of MOKAN, LLC, is a wholly owned subsidiary of HomeServices of America, Inc.

Since at least 2014, ReeceNichols and BHH KC agents executed form listing agreements (the "Listing Agreements") with home sellers which include varying versions of arbitration agreements (the "Arbitration Agreements"). The 2014–2017 Listing Agreements contain the following Arbitration Agreement:

> Any controversy or claim between the parties to this Contract,[2] its interpretation, enforcement or breach (which includes torts claims arising from fraud and fraud in the inducement), will be settled by binding arbitration pursuant to and administered by the rules of the American Arbitration Association (AAA), or such neutral arbitrator agreed to by the parties. . . .
>
> Neither party will be entitled to join or consolidate disputes by or against others in any arbitration, or to include in any arbitration any dispute as a representative or member of a class, or to act in any arbitration in the interest of the general public or in any private attorney general capacity.

(Doc. #218-2, pp. 11, 18, 25, 33, 39, 47, 54, 61, 69, 82-83, 92; Doc. #218-3, pp. 11, 18, 26, 33, 40, 47-48, 55.)

The 2018 Listing Agreements contain the following Arbitration Agreement:

> Any dispute or claim between the parties to this Agreement, its interpretation, enforcement or breach (which includes tort claims arising from fraud and fraud in the inducement), will be settled by binding arbitration pursuant to the rules of the American Arbitration Association (AAA) and by a neutral arbitrator agreed to by the parties. . . . Neither party will be entitled to join or consolidate disputes by or against others in any arbitration. . . .
>
> Neither party may, in any court proceeding or dispute resolution process, bring any dispute as a representative or member of a class, or to act in the interest of the general public or in any private attorney general capacity.

(Doc. #218-2, p. 92; Doc. #218-3, p. 63-64.)

The 2019–2022 Listing Agreements contain the following Arbitration Agreement:[3]

> Any dispute or claim between the parties to this Agreement, its interpretation, enforcement or breach (which includes tort claims arising from fraud and fraud in the inducement), will be settled by binding arbitration. The parties will mutually agree and select any qualified intermediary that is a certified Alternative Dispute Resolution specialist. . . . Neither party will be entitled to join or consolidate disputes by or against others in any arbitration. . . .

---

[2] Starting in 2017, the term "Contract" was replaced with the term "Agreement." *See*, e.g., Doc. #218-2, pp. 69, 82-83. Page numbers refer to pagination automatically generated by ECF.

[3] Listing agreements used in the "ReeceNichols Southern MO" geographical region from 2018 through 2022 contain identical provisions. (Doc. #758-1, p. 2.)

> Neither party may, in any court proceeding or dispute resolution process, bring any dispute as a representative or member of a class, or to act in the interest of the general public or in any private attorney general capacity.

(Doc. #218-2, pp. 100, 108, 116; Doc. #758-1, pp. 10, 18, 26, 34; Doc. #218-3, pp. 70, 78, 86, 94; Doc. #758-2, pp. 10-11, 19-20, 28-29, 37-38.)

HomeServices and the Remaining Defendants now move to (1) compel the unnamed class members who signed a Listing Agreement to arbitrate their claims, (2) amend the class definitions to exclude those individuals, and (3) stay all proceedings with respect to claims asserted by those individuals until arbitration is completed.[4] Plaintiffs oppose the motions.

## II. LEGAL STANDARD

Section 2 of the Federal Arbitration Act ("FAA") "provides that '[a] written provision in any . . . contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1052 (8th Cir. 2013) (quoting 9 U.S.C. § 2). The FAA carries a presumption of arbitrability and "[t]he Supreme Court has stated repeatedly that [9 U.S.C. § 2] establishes a 'liberal federal policy favoring arbitration agreements.'" *Id.* (quoting *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012)). That policy, however, "is merely an acknowledgement of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts." *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022) (citation and quotation omitted). "Under § 4, a party 'aggrieved' by the failure of another party 'to arbitrate under a written agreement for arbitration' may petition a

---

[4] NAR notes that it joins the Remaining Defendants' motion "only as to Part III, which seeks a stay of proceedings with class members who signed arbitration agreements. . . . NAR takes no position on the remainder of this motion[.]" (Doc. #784, p. 1, n.1.)

4

federal court 'for an order directing that such arbitration proceed in the manner provided for in such agreement.'" *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting 9 U.S.C. § 4).

"The FAA establishes that as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001) (citation and quotation omitted). However, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Newspaper Guild of St. Louis, Local 36047 v. St. Louis Post Dispatch, LLC*, 641 F.3d 263, 266 (8th Cir. 2011) (citation and quotation omitted). "Thus, when deciding whether to compel arbitration, a court asks whether a valid agreement to arbitration exists, and if so, whether the dispute falls within the scope of that agreement." *Id.*

As a federal district court sitting in Missouri, the Court must analyze an arbitration agreement based on Missouri state-law principles.[5] *Robinson v. EOR-ARK, LLC*, 841 F.3d 781, 784 (8th Cir. 2016) ("State contract law governs whether the parties have entered into a valid arbitration agreement."). "The elements required to form a valid contract in Missouri are offer, acceptance, and bargained for consideration." *Baier v. Darden Restaurants*, 420 S.W.3d 733, 737 (Mo. App. W.D. 2014) (citation and quotation omitted). "[T]he party seeking to compel arbitration . . . bears the burden of proving that there was a valid and enforceable agreement." *Duncan v. Int'l Markets Live, Inc.*, 20 F.4th 400, 402 (8th Cir. 2021).

---

[5] The Court finds, and the parties do not dispute, that Missouri contract law applies.

## III. DISCUSSION

### A. HomeServices

HomeServices argues that the Court should compel arbitration because (1) threshold issues of arbitrability must be resolved by an arbitrator, not the Court; (2) even if the Court may resolve threshold issues of arbitrability, HomeServices can enforce the Arbitration Agreements under the FAA. Plaintiffs disagree on each point, and also argue that HomeServices has waived its arbitration rights. The Court will first address the issue of wavier, and then address the parties' remaining arguments.

#### 1. Waiver

"Arbitration is a waivable contractual right." *Sitzer v. Nat'l Ass'n of Realtors*, 12 F.4th 853, 855 (8th Cir. 2021). "Waiver . . . is the intentional relinquishment or abandonment of a known right." *Sundance*, 142 S. Ct. at 1713. "When the question is waiver through default, which consists of active participation in a lawsuit or . . . other action inconsistent with the right to arbitrate, it is one for determination by the courts." *Sitzer*, 12 F.4th at 855 (cleaned up).

A court "will find waiver where the party claiming the right to arbitrate: (1) knew of an existing right to arbitration; [and] (2) acted inconsistently with that right[.]" *Rizel Commc'ns, Inc. v. Mid-Am. Cellular Tel. Co.*, 989 F.2d 966, 969 (8th Cir. 1993). "[P]rejudice is not a condition of finding that a party . . . waived its right to stay litigation or compel arbitration under the FAA." *Sundance,* 142 S. Ct. at 1714. "A party acts inconsistently with its right to arbitrate if it substantially invokes the litigation machinery before asserting its arbitration right, . . . 'when, for example, it files a lawsuit on arbitrable claims, engages in extensive discovery, or fails to move to compel arbitration and stay litigation in a timely manner.'" *Messina v. N. Cent. Distrib. Inc.*, 821 F.3d 1047, 1050 (8th Cir. 2016) (quoting *Lewallen v. Green Tree Servicing, LLC*, 487

6

F.3d 1085, 1090 (8th Cir. 2007)). To safeguard its right to arbitration, a party must "do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration." *Sitzer*, 12 F.4th at 857 (citation and quotation omitted).

The Eighth Circuit has already determined that HomeServices waived any purported arbitration rights. On February 28, 2020, HomeServices filed a motion to compel arbitration against the Burnetts, strike class allegations as to certain unnamed plaintiffs, and to stay proceedings pending arbitration. On April 10, 2020, the Court denied the motion and, in part, noted that HomeServices likely waived its right to compel arbitration because HomeServices knew of its right to arbitration and acted inconsistently with that right.

HomeServices appealed, and on September 10, 2021, the Eighth Circuit affirmed, finding that HomeServices had waived its right to arbitration. *See Sitzer*, 12 F.4th 853. As the Eighth Circuit explained:

> We have little doubt about what HomeServices was trying to do. If there was a possibility that the case would end in federal court, it was uninterested in switching to arbitration. Indeed, it has never seriously disputed that it knew about the arbitration clause long before it moved to compel arbitration. Yet it decided to pursue the case in federal court anyway.
>
> And it did so aggressively. Shortly after the Burnetts filed the lawsuit, HomeServices joined a request to transfer venue to another judicial district, evidencing a preference for litigation over arbitration. . . . Then, without waiting for an answer on the change-of-venue motion, it joined and fully briefed a motion to dismiss for failure to state a claim. By doing so, it sought a final decision from the district court on the merits of the parties' dispute, which we have already held is inconsistent with resolving the case through arbitration.
>
> HomeServices did not stop there. It negotiated a proposed scheduling order and participated in a scheduling hearing. And when the district court finally denied the earlier motions, it replied to written discovery, filed an answer, and even joined a motion to amend the scheduling order it had previously negotiated. These are hardly the actions of a party trying to move promptly for arbitration. . . .
>
> It is not as if HomeServices lacked opportunities along the way. Indeed, it took 305 days before it finally moved to compel arbitration. . . . A party cannot keep a

7

> contractual right to arbitration in its back pocket and pull it out only when it is ready for a do over.

*Id.* at 856-57 (citations and quotations omitted). As the Eighth Circuit warned, "[h]aving followed this course, [HomeServices] must live with the consequences." *Id.* at 857.

HomeServices continued to aggressively litigate this case following the Eight Circuits decision. In particular, HomeServices, along with the Remaining Defendants, participated in the negotiation of two additional amended scheduling orders. HomeServices filed briefing on Plaintiffs' motion for class certification and briefing on class *Daubert* issues. HomeServices also appeared at oral argument on these issues. HomeServices failed to mention its right to arbitrate against unnamed class members in its answer and all defendants, including HomeServices, failed to even make a passing reference to it throughout the class certification briefing. HomeServices engaged in extensive discovery not just related to class certification, but also fact discovery covering the unnamed class members' claims. HomeServices does not dispute that the Court could have considered the Arbitration Agreements at the class certification stage.[6] On April 22, 2022, the Court granted class certification.

On May 5, 2022, HomeServices filed the pending motion to compel arbitration as to the unnamed class members and amend the class definition. Meanwhile, HomeServices and the Remaining Defendants filed a petition to appeal the class certification order under Federal Rule of Civil Procedure 23(f), again failing to mention any purported arbitration rights. According to Plaintiffs, and not disputed by HomeServices or the Remaining Defendants, all parties

---

[6] In fact, in a related case out of the Eastern District of Illinois, *Moehrl v. Nat'l Ass'n of Realtors*, 19-cv-01610, HomeServices was advised that arguments related to narrowing the class definition based on certain arbitration agreements were best raised at the class certification stage. (Doc. #806-2.) And HomeServices did just that, arguing that the arbitration agreements defeat typicality under Rule 23 and that certain class members who have arbitration agreements should be excluded from the class. (Doc. #806-3.) HomeServices's failure to follow the same course in this case supports a finding of waiver.

participated in 50 depositions of party and nonparty witnesses between October 2021 and May 27, 2022. On June 16, 2022, the parties filed a joint motion to enter a Fifth Amended Scheduling Order.

Under all these facts, the Court agrees with Plaintiffs that "HomeServices chose to attempt to defeat class certification in federal court (and thereby effectively end any litigation against it) without ever mentioning arbitration. Only after those efforts failed did HomeServices resort to its arbitration 'do over' card that it had kept hiding 'in its back pocket' throughout months and years of hard-fought litigation." (Doc. #806, p. 35) (quoting *Sitzer*, 12 F.4th at 857). Even if the Eighth Circuit's prior decision is not dispositive of this issue, HomeServices had ample opportunity to raise its intention of asserting its arbitration rights against unnamed class members prior to the Court's class certification order.

HomeServices argues it has not waived any right to arbitrate because it "could not have moved to compel arbitration of claims by absent members until the class was certified." (Doc. #758, p. 12.) However, timeliness is just one "example" of when a party "substantially invokes the litigation machinery before asserting its arbitration right." *Messina*, 821 F.3d at 1050. Instead, "[a] court looks to all of the circumstances to decide whether [an] act is truly inconsistent with [a parties'] right to arbitrate." *Morgan v. Sundance, Inc.*, 992 F.3d 711, 714 (8th Cir. 2021), *overruled on other grounds by* 142 S. Ct. 1708. HomeServices has actively litigated this case since May 2019 (at the time of this Order there are 842 ECF entries), twice filed interlocutory appeals on class certification and arbitration, and now, almost three years into this litigation, raises for the first time arbitration of absent class members' claims. Consequently, the Court finds HomeServices has waived its right to compel arbitration.

9

## 2. Delegation of Threshold Issues of Arbitrability

Even assuming HomeServices did not waive its right to compel arbitration, the Court finds that HomeServices cannot enforce the Arbitration Agreements. HomeServices argues that an arbitrator, not the Court, must decide threshold issues of arbitrability, including whether unnamed class members must arbitrate their claims. Plaintiffs disagree, specifically challenging the purported delegation provisions. The parties' arguments are addressed below.

"When parties contract to arbitrate future disputes, they may choose to incorporate a delegation provision, which is an agreement to arbitrate threshold issues concerning the arbitration agreement." *Shockley v. PrimeLending*, 929 F.3d 1012, 1018 (8th Cir. 2019) (citation and quotation omitted). "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration is asking the court to enforce." *Id.* "'[A] delegation provision is an additional, severable agreement to arbitrate threshold issues that is valid and enforceable unless a specific challenge is levied against the delegation provision.'" *Id.* (quoting *State ex rel. Pinkerton v. Fahnestock*, 531 S.W.3d 36, 50 (Mo. 2017)). "When evaluating the intention of parties to delegate threshold arbitrability issues to the arbitrator, 'courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.'" *Theroff v. Dollar Tree Stores, Inc.*, 591 S.W.3d 432, 439 (Mo. banc 2020) (quoting *Rent-A-Center*, 561 U.S. at 69 n. 1).

HomeServices first argues that the incorporation of the American Arbitration Association ("AAA") Rules in the 2014–2017 and 2018 Arbitration Agreements clearly and unequivocally delegate threshold arbitrability issues to an arbitrator. HomeServices, in part, relies on *Eckert/Wordell Architects, Inc. v. FJM Properties of Willmar, LLC*, 756 F.3d 1098 (8th Cir. 2014), which found "the incorporation of the AAA Rules into a contract requiring arbitration to

10

be a clear and unmistakable indication the parties intended for the arbitrator to decide threshold questions of arbitrability." *Id.* at 1100. These threshold issues included whether "a particular arbitration provision may be used to compel arbitration between a signatory and a nonsignatory." *Id.* Plaintiffs argue that *Eckert* does not apply in this case because the delegation provisions are party-specific, precluding the delegation of threshold issues between a party to the Arbitration Agreement and a nonparty.

The Court agrees that *Eckert* does not apply because HomeServices is not a party or intended third-party beneficiary to the delegation provisions. First, under Missouri law, "'[o]nly parties to a contract and any third-party beneficiaries of a contract have standing to enforce that contract. To be bound as a third-party beneficiary, the terms of the contract must clearly express intent to benefit that party.'" *Torres v. Simpatico, Inc.*, 781 F.3d 963, 971 (8th Cir. 2015) (quoting *Verni v. Cleveland Chiropractic Coll.*, 212 S.W.3d 150, 153 (Mo. banc 2007)).

Here, the parties to these agreements are narrowly defined as either ReeceNichols or BHH KC and the unnamed class member(s) who signed the Listing Agreement. HomeServices does not dispute that it is not a party or third-party beneficiary. HomeServices further admits that "neither the named plaintiffs nor any purported class member has any contract or direct relationship with HomeServices relevant to the claims asserted in this case." (Doc. #218, p. 2.) The parties to the Listing Agreements agreed that arbitration should be administered pursuant to the AAA Rules only when the dispute or claim is "between the parties[.]" *See*, e.g., Doc. #218-2, p. 92. The narrow, party-specific language at issue does not clearly and unmistakably delegate to an arbitrator threshold issues of arbitrability between nonparties, including HomeServices.

11

This party-specific limitation did not exist in *Eckert*.[7] Instead, the delegation provision in *Eckert* broadly encompassed "any claim, dispute, or other matter in question arising out of or related to the contract" regardless of whether the dispute was between the parties to the contract. *Id.* at 1099 (cleaned up). The Arbitration Agreements at issue here are thus distinguishable from the agreement in *Eckert*. Other courts that have addressed arbitration agreements with similar party-limiting language have come to the same conclusion. *See Kramer v. Toyota Motor Corp.*, 705 F.3d 1122 (9th Cir. 2013) (holding that even though the arbitration agreement contained a delegation clause, the contract's limitation to "either you or we" meant there was not "clear and unmistakable evidence that Plaintiffs agreed to arbitrate arbitrability with nonsignatories.")[8]

HomeServices, relying on *Rent-A-Center*, also contends that "arbitration agreements containing broad language in which the parties agreed to arbitrate all disputes relating to the 'interpretation' or 'enforceability' of a contract" also delegate threshold issues of arbitrability, including those between a party and nonparty. (Doc. #758, p. 10.) The Court disagrees. The delegation provision in *Rent-A-Center* did not limit issues of interpretation or enforceability to disputes between parties.[9] Here, the delegation provisions only cover threshold arbitrability issues involving "dispute[s] or claim[s] between the parties to this Agreement[.]" *See,* e.g., Doc.

---

[7] The delegation language in the other cases relied on by HomeServices similarly do not contain this party-limiting language or involve cases where the plaintiff did not specifically challenge the delegation clause as required under *Rent-A-Center*, 561 U.S. at 72.

[8] The Court finds further that the 2014–2017 Arbitration Agreements do not clearly and unmistakably incorporate the AAA Rules. Those agreements state that arbitration will be settled by binding arbitration pursuant to and administered by the rules of the AAA, "or such neutral arbitrator agreed to by the parties." *See*, e.g., Doc. #218-2, p. 11. In other words, the parties may agree to binding arbitration pursuant to and administered by something other than the AAA. While the AAA Rules are referenced, they incorporated as the agreed upon rules under which the arbitration must be conducted, further distinguishing those delegation provisions from *Eckert*.

[9] The delegation provision in *Rent-A-Center* stated: "The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable." *Id.* at 65.

12

#758-1, p. 10.[10]  The threshold arbitrability question in this case, the enforceability and interpretation of the Arbitration Agreements by a nonparty, has not been clearly and unmistakably delegated to an arbitrator.  While a court must enforce a delegation provision, "a party cannot be required to arbitrate a dispute," even a threshold issue, "that it has not agreed to arbitrate."  *Dunn Indus. Grp., Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 435 (Mo. banc 2003).

In turn, the Court – not an arbitrator – must address whether HomeServices can enforce the Arbitration Agreements.

### 3. Enforcement of the Arbitration Agreements

HomeServices argues that, despite it being a nonparty to the Arbitration Agreements, it can compel the unnamed class members to arbitrate their claims in this case.  HomeServices argues that (1) it has a close relationship with ReeceNichols and BHH KC, entitling it to enforce the Arbitration Agreements; (2) Plaintiffs treat HomeServices, BHH KC, and ReeceNichols as a single unit of wrongdoers; and (3) Plaintiffs' claims are so intertwined with the enforcement of the Listing Agreements that HomeServices may enforce the Arbitration Agreements in the Listing Agreements.  Plaintiffs disagree, arguing that, like the delegation provisions, the Arbitration Agreements are narrow and party-specific, precluding the arbitration of disputes involving nonparties.  The Court agrees with Plaintiffs.

"Under Missouri law, '[a] broad arbitration provision covers all disputes arising out of a contract to arbitrate; a narrow provision limits arbitration to specific types of disputes.'"  *Morgan v. Ferrellgas, Inc.*, 8 F.4th 795, 798 (8th Cir. 2021) (quoting *Dunn*, 112 S.W.3d at 428).  Like the

---

[10] HomeServices, relying on *Henry Schein, Inc. c. Archer and White Sales, Inc.*, 139 S. Ct. 524 (2019), also argues that all HomeServices is required to show is that the "class members are themselves parties to an arbitration agreement with a delegation clause[.]"  (Doc. 822, p. 15.)  The Court disagrees.  While *Henry Schein* did hold that a "'wholly groundless' exception is inconsistent with the text of the FAA and with [the Supreme Court's] precedent," that holding assumes that a court has already determined that "the parties' contract delegates the threshold arbitrability question to an arbitrator[.]"  139 S. Ct. at 529.  Here, the Court finds the Arbitration Agreements do not delegate the threshold arbitrability questions at issue in this case.

13

delegation provisions, the Court finds that, by the clear language of the Arbitration Agreements, the only disputes or claims that the unnamed class members agreed to arbitrate are disputes "between the parties." *See*, e.g., Doc. #218-2, p. 100. Further demonstrating the narrow, party-specific scope of the Arbitration Agreements, every agreement contains the following provision: "Neither party will be entitled to join or consolidate disputes by or against others in any arbitration." *See*, e.g., Doc. #218-2, p. 100. Plaintiffs argue that the language of the Arbitration Agreements "expressly limit[s] their application to the parties to those agreements and prohibit[s] both class members and [ReeceNichols and BHHKC]" from including claims against others in arbitration. (Doc. #806, p. 35.) HomeServices fails to address this argument, and the Court agrees with Plaintiffs that the Arbitration Agreements cover disputes only between parties to the Listing Agreements.

For similar reasons, the Court finds that HomeServices enforcement arguments fail. First, under the "close relationship" test, the Court must find that failure to permit a "nonsignatory to invoke arbitration may eviscerat[e] the underlying arbitration agreement between the signatories." *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 798 (internal citation and quotation marks omitted). For the reasons discussed in Section III.A.2, the Court finds that HomeServices does not have a sufficiently close relationship with ReeceNichols or BHH KC to enforce the Arbitration Agreements. Further, because the Arbitration Agreements narrowly cover disputes between the parties, failure to allow HomeServices to compel arbitration will not eviscerate the underlying agreements.

Second, HomeServices' argument regarding the "single unit" estoppel theory fails. "[A] signatory plaintiff [cannot] avoid enforcement when the plaintiff treated signatory and non-signatory defendants as a 'single unit'" *State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 814 (Mo.

14

banc 2015) (quoting *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 98 (2d Cir. 1999)).  The principle underlying this theory is a plaintiff "cannot treat . . . defendants severally for arbitration purposes but jointly for all other purposes." *Id.* at 815.  However, in this case, the Arbitration Agreements themselves prevent nonsignatories from being treated jointly for arbitration purposes.  Even if Plaintiffs had joined ReeceNichols and BHH KC to this lawsuit and asserted claims against them, the Arbitration Agreements do not allow ReeceNichols, BHH KC, or Plaintiffs to "join or consolidate disputes . . . against" HomeServices "in any arbitration."  *See* Doc. #218-2, p. 92.  Further, ReeceNichols and BHH KC are not being treated jointly for all purposes except for arbitration because they are not parties to this lawsuit.  *See Hewitt*, 461 S.W.3d at 815 (applying the theory to nonsignatory defendants because plaintiff's "claim against the [nonsignatory and signatory] defendants is a single one that should be referred in its entirety to arbitration").

   Finally, the Court rejects HomeServices' argument that Plaintiffs' claims are so intertwined with the Listing Agreements such that HomeServices may enforce the Arbitration Agreements.  As a matter of Missouri law, "a party cannot be required to arbitrate a dispute that it has not agreed to arbitrate."  *Dunn*, 112 S.W.3d at 435.  HomeServices is not a party to the Listing Agreements and therefore cannot enforce the narrow, party-specific Arbitration Agreements.

   The Court finds HomeServices cannot compel the unnamed class members to arbitrate their claims against it, and thus a stay and amendment of the class definitions is not warranted.  Accordingly, HomeServices motion is denied.

### B. Remaining Defendants

Remaining Defendants rely on the same arguments asserted by HomeServices. For the reasons the Court denies HomeServices's motion, the Court denies the Remaining Defendants' motion.

### IV. CONCLUSION

Accordingly, it is hereby ORDERED that HomeServices's Motion to Compel Arbitration (Doc. #757), and Defendants RE/MAX, LLC, National Association of Realtors, Realogy Holdings Corp., and Keller Williams Realty, Inc.'s Motion to Compel Arbitration or, in the Alternative, to Stay Proceedings Pending Arbitration (Doc. #784) are DENIED.

**IT IS SO ORDERED.**

Dated: July 19, 2022

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE