IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| SCOTT AND RHONDA BURNETT, RYAN HENDRICKSON, JEROD BREIT, SCOTT TRUPIANO, JEREMY KEEL, HOLLEE ELLIS, and FRANCES HARVEY, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC, RE/MAX LLC, and KELLER WILLIAMS REALTY, INC. | Case No. 4:19-cv-00332-SRB |

**DEFENDANTS' SUGGESTIONS IN SUPPORT OF MOTION TO EXCLUDE
EXPERT TESTIMONY OF JEFFREY ROTHBART**

Defendants National Association of Realtors ("NAR"), Realogy Holdings Corp., HomeServices of America, Inc., BHH Affiliates, LLC, HSF Affiliates, LLC, RE/MAX LLC, and Keller Williams Realty, Inc. (collectively, "Defendants"), by and through their undersigned counsel, hereby move pursuant to Fed. R. Evid. 403 and 702, and according to the scheduling order set by the Court, to strike the Expert Report and exclude the opinions and testimony of Jeffrey Rothbart, whom Plaintiffs have proffered as an expert witness.

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ........................................................................................................... 1
II. RELEVANT BACKGROUND ...................................................................................... 1
    A. Rothbart's Purported Qualifications ................................................................. 1
    B. Rothbart's Report .............................................................................................. 2
        i. Factual Background ............................................................................... 2
        ii. Legal "Opinions" .................................................................................... 3
III. LEGAL STANDARD ..................................................................................................... 4
IV. ARGUMENT .................................................................................................................. 5
    A. Rothbart's Opinions Are Not Reliable Because They Are Not Grounded in Any Methodology .............................................................................................. 5
    B. Rothbart Lacks the Knowledge and Experience to Offer Expert Opinions About Residential Real Estate Matters. ............................................................ 6
    C. Rothbart's Opinions Are Not Sufficiently Supported by Facts ......................... 7
    D. Many of Rothbart's Opinions Are Improper Because They Do Not Assist the Trier of Fact .................................................................................................. 10
    E. Rothbart's Opinions Interpreting NAR's Rules Are Improper Legal Conclusions and Should Be Excluded. ............................................................ 11
V. CONCLUSION ............................................................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*,
　9 F.4th 768 (8th Cir. 2021) ................................................................................. 5, 7, 10

*Cox v. Callaway County, Missouri*,
　No. 2:18-cv-04045-NKL, 2020 WL 1669425 (W.D. Mo. Apr. 2, 2020) ........................ 10, 11

*Daubert v. Merrell Dow Pharm., Inc.*,
　509 U.S. 579 (1993) ...................................................................................... 1, 4, 5, 9

*Dean v. Bearden*,
　No. 19-CV-6022-SRB, 2021 WL 4066336 (W.D. Mo. Sept. 7, 2021) ........................ 8

*Gen. Elec. Co. v. Joiner*,
　522 U.S. 136 (1997) ........................................................................................ 8, 9

*Glastetter v. Novartis Pharm. Corp.*,
　252 F.3d 986 (8th Cir. 2001) ........................................................................... 5

*Khoury v. Philips Mid. Sys.*,
　614 F.3d 888 (8th Cir. 2010) ........................................................................... 6

*Klingenberg v. Vulcan Ladder USA, LLC*,
　936 F.3d 824 (8th Cir. 2019) ........................................................................... 7

*Kumho Tire Co. v. Carmichael*,
　526 U.S. 137 (1999) ....................................................................................... 4, 9

*Lauzon v. Senco Prods., Inc.*,
　270 F.3d 681 (8th Cir. 2001) ........................................................................... 4

*Lee v. Andersen*,
　616 F.3d 803 (8th Cir. 2010) ........................................................................... 9

*Marmo v. Tyson Fresh Meats, Inc.*,
　457 F.3d 748 (8th Cir. 2006) ........................................................................... 6, 9

*Polski v. Quigley Corp.*,
　538 F.3d 836 (8th Cir. 2008) ........................................................................... 4, 5, 6, 8

*Sloan v. Long*,
　No. 4:16 CV 86 (JMB), 2018 WL 1243664 (E.D. Mo. Mar. 9, 2018) ........................ 8

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*St. Louis Convention & Visitors Comm'n v. Nat'l Football League*,
   154 F.3d 851 (8th Cir. 1998) ................................................................................................ 10

*United States v. Clapp*,
   46 F.3d 795 (8th Cir. 1995) .................................................................................................... 10

*Unrein v. Timesavers, Inc.*,
   394 F.3d 1008 (8th Cir. 2005) .................................................................................................. 6

*Weitz Co. LLC v. MH Washington, LLC*,
   No. 06-0559-CV-W-NKL, 2008 WL 8625902 (W.D. Mo. Aug. 19, 2008) ........................... 11

*In re Wholesale Grocery Prods. Antitrust Litig.*,
   946 F.3d 995 (8th Cir. 2019) .................................................................................................... 9

## Other Authorities

Fed. R. Evid.
   403 ................................................................................................................................................ i
   702 ............................................................................................................................... i, 1, 4, 7

I.  INTRODUCTION

Plaintiffs have proffered Jeffrey Rothbart, a lawyer, businessman, and real estate broker licensed in Illinois, as a putative expert witness in the residential real estate market. Rothbart's opinions fall far short of satisfying the requirements of Federal Rule of Evidence 702 and the Supreme Court's standard for expert testimony under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). **First**, Rothbart's Report (attached hereto as **Exhibit 1**, cited herein as "Rothbart's Report" or "Rothbart Report") is a 6-page report that is lacking any discussion of the analysis or methodology employed by Rothbart, as is required. **Second**, Rothbart is unqualified to opine in this case because he has little actual experience as a residential real estate broker and no experience as a real estate broker in the state at issue in this case—Missouri. **Third**, Rothbart's Report lacks any citations to the record and is based on insufficient facts (if it has any factual foundation at all). **Fourth**, the bulk of Rothbart's opinions are not helpful to the trier of fact because they amount to general factual background and not specialized expert testimony. **Finally**, several of Rothbart's opinions amount to legal conclusions, about which he is not permitted to opine.

Rothbart's opinions are nothing more than Plaintiffs' arguments and theories repackaged as an expert report in an attempt to give them an aura of authority and neutrality. Such "opinions" should be excluded.

II.  RELEVANT BACKGROUND

  A.  **Rothbart's Purported Qualifications**

Jeffrey Rothbart works at Stack Real Estate, LLC, a real estate acquisition and development firm which has not handled a single residential (or even commercial) real estate transaction. (Rothbart Report at ¶ 1; Rothbart Dep. Tr. (attached hereto as **Exhibit 2**, which has been excerpted to referenced sections) at 10:21–11:01.) While Rothbart has been retained as an expert witness in over 100 matters (Rothbart Report at ¶ 5), his resume indicates his experience is almost entirely in

1

*commercial*, and not *residential* real estate. (*See id.*, Ex. A.) For example, before his employment at Stack Real Estate, LLC, Rothbart worked at a real estate investment firm "focused on **retail** real estate investments throughout the United States, Europe, and Latin America." (*Id.* (emphasis added).) And before that, his real estate investment firm "focused on the acquisition of U.S. **commercial** real estate." (*Id.* (emphasis added).) Rothbart's resume contains no experience or background related to residential real estate. (*Id.*)

## B. Rothbart's Report

The first part of Rothbart's Report contains general factual information regarding real estate without any grounding in the evidentiary record. The second part of Rothbart's Report contains legal opinions focusing on the "Challenged Restraints" as alleged by Plaintiffs.

### i. Factual Background

The factual background consists of the following three categories of information:

**The roles and duties of buyer and seller agents.** (*Id.* at ¶¶ 12–14.) Rothbart asserts that technology has resulted in most buyers no longer needing an agent to locate properties for them to purchase. (*Id.* at ¶ 14.) Rothbart also states that under the "current system of compensation, the home seller ends up paying for someone who has the duty to work against their interests." (*Id.* at ¶ 15.) Rothbart offers no support for any of these assertions.

**The role of NAR and NAR rules in residential real estate transactions**. (*Id.* at ¶¶ 16–17.) Rothbart describes NAR's "Code of Ethics," and asserts, without citing any analysis or studies, that "[a]ny NAR member who violates these rules is subject to disciplinary action" that may include expulsion or having professional liability insurance withdrawn. (*Id.* at ¶ 17.)

**The function of the multiple listing services in residential real estate transactions, and the interaction between them and NAR's rules.** (*Id.* at ¶¶ 18–21.) Rothbart states that "[m]embership in an MLS is virtually required for all residential brokers and agents." (*Id.* at ¶ 20.)

2

Rothbart further asserts that "[m]ost, if not all, brokers and agents could not conduct their business if they were denied access to the MLS in their markets." (*Id.*) Rothbart also claims, again without citation, that brokers and agents joining an MLS must pay membership fees and agree to follow "all of the MLS rules," which, according to Rothbart, "includes following all rules set forth in the NAR Handbook and the NAR Code of Ethics," and that violation of those rules could lead to expulsion from the MLS and "put the broker or agent out of business." (*Id.* at ¶ 21.)

### ii. Legal "Opinions"

Rothbart's legal "opinions" concern the "Challenged Restraints." First, Rothbart opines that these "Challenged Restraints" "sharply limit the ability of brokers and agents to negotiate the amount of compensation offered," and "discourage sales of property without listing it on an MLS." (*Id.* at ¶¶ 22–24.)

Next, Rothbart's Report offers opinions unsupported by either any analysis or citation to the record as to the effects of the "Challenged Restraints." (*Id.* at ¶¶ 25–29.) According to Rothbart, the "Challenged Restraints" virtually eliminate all negotiation of buyer commission rates. (*Id.*) Rothbart further opines that the "Challenged Restraints" lead to steering or at least the threat of steering. (*Id.* at ¶ 32.) Rothbart also baldly asserts that "Defendants' other rules and practices also facilitate steering." (*Id.* at ¶ 33.) Rothbart further opines that the "Challenged Restraints" are the reason for "a remarkably uniform level for commissions in a given area," and that "the vast majority of all transactions take place at the going rate." (*Id.* at ¶ 35.) Rothbart opines that the tables set forth in Dr. Craig T. Schulman's Expert Report (Dkt. 459, Ex. 22, ¶¶ 156–169, figures 3–9) demonstrate "exactly the relative uniformity" in commission distribution that he would expect, which he opines is "caused by the structural impediments to negotiating commission rates, and in particular by the Challenged Restraints at issue in this case." (Rothbart Report at ¶ 39.)

3

## III. LEGAL STANDARD

Federal Rule of Evidence 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (quoting *Daubert*, 509 U.S. at 597) (internal quotation marks omitted). Rule 702 has been boiled down to a "three-part test": first, the testimony,

> [M]ust be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.

*Polski v. Quigley Corp.*, 538 F.3d 836, 839 (8th Cir. 2008) (quoting *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001)) (affirming district court's opinion that expert's theory was not reliable and thus inadmissible).

Under Rule 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

The court serves as a "'gatekeeper' screening evidence for relevance and reliability." *Polski*, 538 F.3d at 838 (quoting *Daubert*, 509 U.S. at 589). When making reliability and relevancy determinations, "a district court may consider: (1) whether the theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review or publication; (3) whether the theory or technique has known or potential error rate and standards controlling the technique's operation; and (4) whether the theory or technique is generally accepted in the scientific

4

community." *Polski,* 538 F.3d at 839 (citing *Daubert*, 509 U.S. at 592–93). "An expert opinion 'must be supported by appropriate validation—i.e., 'good grounds,' based on what is known.'" *Glastetter v. Novartis Pharm. Corp.*, 252 F.3d 986, 988 (8th Cir. 2001) (citing *Daubert*, 509 U.S. at 590) (affirming district court's exclusion of expert's theory because the data and methods were not scientifically valid bases for the conclusion being reached). Specifically, the district court must separate "expert opinion evidence based on 'good grounds' from subjective speculation that masquerades as scientific knowledge." *Id.* at 989 (citation omitted).

Plaintiffs bear the burden to show, by a preponderance of the evidence, that Rothbart's opinions are admissible. *See Daubert*, 509 U.S. at 593 n.10; *In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, 9 F.4th 768, 776 (8th Cir. 2021).

### IV. ARGUMENT

Rothbart's opinions should be excluded for five primary reasons: (1) Rothbart's opinions are unreliable because they are not grounded in any methodology; (2) Rothbart is not qualified to proffer expert testimony on the issues in this case because he lacks relevant residential real estate knowledge or experience; (3) Rothbart's opinions are not based on sufficient facts or data to be reliable; (4) many of Rothbart's opinions are not helpful to the trier of fact because they are simply factual background and not based on any specialized expert knowledge; and (5) Rothbart's opinions interpreting the meaning or impact of NAR's rules are improper legal conclusions.

#### A. Rothbart's Opinions Are Not Reliable Because They Are Not Grounded in Any Methodology

Rothbart's opinions are inadmissible as expert testimony because they are not arrived at through a scientific inquiry or expert analysis and thus are not grounded in sound methodology. An expert's methodology for developing the basis of his opinion must be reliable. *Daubert*, 509 U.S. at 579. Courts consider a number of factors in evaluating the reliability of a proposed expert, including

5

whether the theory or technique is subject to testing. *See Polski*, 538 F.3d at 839; *Unrein v. Timesavers, Inc.*, 394 F.3d 1008, 1011 (8th Cir. 2005). A party offering expert testimony "must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757–58 (8th Cir. 2006).

Here, Rothbart's Report is lacking **any** discussion of the principles and methodology on which Rothbart relied to reach any of his opinions. This is because no principles or methodology exist. The Court should exclude Rothbart's opinions on the grounds that they are not based on any testable methods or theories and are therefore unreliable.

### B. Rothbart Lacks the Knowledge and Experience to Offer Expert Opinions About Residential Real Estate Matters

As noted above, Plaintiffs must show by a preponderance of the evidence that "the expert is qualified to render the opinion . . ." *Marmo*, 457 F.3d at 757. A district court abuses its discretion if it allows an "expert" witness to testify outside of his or her area of expertise. *See, e.g.*, *Khoury v. Philips Mid. Sys.*, 614 F.3d 888, 893 (8th Cir. 2010) ("[W]e have reversed a district court for permitting an expert to testify outside of his field.").

Rothbart is a lawyer, businessman, and real estate broker licensed in Illinois. (Rothbart Report at ¶¶ 1–2.) Nearly all of Rothbart's real estate experience is in commercial real estate, not residential real estate. (*See generally id.*, Ex. A.) Rothbart has acted as a broker in less than ten residential real estate transactions—six of which were newly built homes sold by a company in which he had an ownership interest, one of which was his own home, and one of which was his cousin's home. (Rothbart Dep. Tr. 108:07–08, 108:14–17, 112:25–113:01.) Rothbart has never attempted to be engaged as a residential broker or marketed himself as such. (*Id.* at 110:19–21.) Critically, Rothbart has never provided expert services related to residential real estate brokerage practices.

(*See id.* at 42:18–45:07.) Not surprisingly, Rothbart has not published a single article regarding residential real estate—the very subject in which he opines as an expert in this case. (*Id.* at 42:02–09; *see also generally* Rothbart Report at ¶ 4, Ex. A.) In addition to lacking residential real estate experience, Rothbart has no experience in residential real estate matters in Missouri, the relevant real estate market in this case. (Rothbart Dep. Tr. 29:08–16).

Nonetheless, Plaintiffs hired Rothbart to opine about the following residential real estate matters:

- The differing roles of brokers and agents in residential real estate transactions (Rothbart Report at ¶¶ 12–15);

- NAR and its established rules as they apply to residential real estate brokers and agents (*Id.* at ¶¶ 16–17);

- MLSs for residential real estate brokers (*Id.* at ¶¶ 18–21);

- The purported effects of the Challenged Restraints in the context of residential real estate transactions (*Id.* at ¶¶ 22–39);

- "For Sale by Owner" residential properties (*Id.* at ¶¶ 40–42).

Rothbart has next to no experience in residential real estate matters, much less in real estate matters in Missouri. As such, Rothbart is not qualified to opine on the residential real estate matters contained in the Rothbart Report, and his opinions should be excluded.

### C. Rothbart's Opinions Are Not Sufficiently Supported by Facts

Rule 702(b) requires expert testimony to be based on sufficient facts or data. A court "may exclude an expert's opinion if it is 'so fundamentally unsupported' by its factual basis 'that it can offer no assistance to the jury.'" *In re Bair Hugger*, 9 F.4th at 778 (citation omitted); *see also Klingenberg v. Vulcan Ladder USA, LLC*, 936 F.3d 824, 829–30 (8th Cir. 2019) (distinguishing cases where the Eighth Circuit affirmed the exclusion of experts' opinions as too speculative because, in those cases, the experts' opinions were "wholly speculative," "connected to the facts by only the

expert's *ipse dixit*," "patent speculation," "pure conjecture," and "vague theorizing based upon general principles"). In making this determination, a court should consider, among other things, whether the expert has ruled out other alternative explanations, and whether the proposed testimony is sufficiently connected to the facts of the case. *See Polski*, 538 F.3d at 839. Courts need not admit testimony that is based purely on the unsupported assertions of an expert. *Gen. Elec. Co. v. Joinder*, 522 U.S. 136, 146 (1997); *see also Dean v. Bearden*, No. 19-CV-6022-SRB, 2021 WL 4066336, at *4 (W.D. Mo. Sept. 7, 2021); *Sloan v. Long*, No. 4:16 CV 86 (JMB), 2018 WL 1243664, at *4 (E.D. Mo. Mar. 9, 2018).

The vast majority of Rothbart's opinions are not based on the record or any other reliable source and simply parrot Plaintiffs' theories. Rothbart's opinions are not the result of facts or data; indeed, Rothbart fails to point to or cite **any** facts in the record, **any** sources, or **any** data to support his conclusions. (*See generally* Rothbart Report.) For example, Rothbart testifies in generalities about sellers or brokers and "For Sale by Owner" homes, purports to know what "most" and "many" brokers and agents do or think, and uses terms like "virtually all" and "vast majority"—all without any substantiating data. (*See id.* at ¶¶ 25, 29–30, 33–35, 41, 42.) Rothbart vaguely refers without citation or factual support to "other rules," "Defendants' other rules and practices," unspecified "NAR's rules," as well as "defendants' training materials." (*Id.* at ¶¶ 23, 28, 31, 33.) Rothbart makes other speculative generalizations without any substantiating support or citations: "***eliminate*** virtually ***all*** negotiation," "***guarantees*** that the offer will bear ***no relationship*** to the experience or qualifications of the buyer broker or agent," "buyers have ***no incentive*** to negotiate," "they have ***no reason*** to show the property with lower compensation," "***no buyer*** can tell if they are being subjected to steering or not," "virtually ***all transactions*** end up on an MLS," "[t]he going rate for commissions in a given area is ***remarkable***," "home prices have increased ***dramatically***," and "[t]his has led to a

***huge increase*** in the actual dollar amounts paid to agents." (Rothbart Report at ¶¶ 25, 26, 27, 30, 33, 35, 36, 37 (emphases added).)

Rothbart's purported opinions are classic *ipse dixit*—an expert's inadmissible assertion that something is true simply because he says it. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert" (quotation marks and citation omitted).); *In re Wholesale Grocery Prods. Antitrust Litig.*, 946 F.3d 995, 1000 (8th Cir. 2019) ("A court should not admit opinion evidence that 'is connected to existing data only by the *ipse dixit* of the expert'" (quoting *Joiner*, 522 U.S. at 146).); *Marmo*, 457 F.3d at 758 ("When the analytical gap between the data and proffered opinion is too great, the opinion must be excluded."). Moreover, certain of Rothbart's opinions are directly contradicted by facts in the record.[1] Rothbart makes no mention of such contradictory facts and makes no attempt to address those contradictory facts in his own proffered opinions. Expert opinions that "merely tell the jury what result to reach," despite the facts in the record, are not proper and are not admissible. *Lee v. Andersen*, 616 F.3d 803, 809 (8th Cir. 2010). Here, the Court should exclude Rothbart's opinions as unreliable because they lack any factual support and are pure *ipse dixit*, and because they are directly contradicted by facts already in the record.

---

[1] As an example, Rothbart opines in paragraph 25 of his Report that "[t]he effect of the Challenged Restraints is to eliminate virtually all negotiation regarding the commission rates paid to buyer." However, the record in this case is replete with evidence of actual negotiation regarding buyers' commission rates even when the Challenged Restraints were in place. *See, e.g.*, Dkt. 553-46, Burns (ReeceNichols) Decl. ¶¶ 5, 6, 10–11; Dkt. 553-54, Hancock (RMLLC Results) Decl. ¶¶ 6–8, 15; Dkt. 553-41, Dohr (CB Gundaker) Decl. ¶¶ 28, 30–33, 35, 37. Rothbart's failure to consider the facts in the record and failure to substantiate his opinions with facts and data render his opinions fundamentally flawed and inadmissible.

9

### D. Many of Rothbart's Opinions Are Improper Because They Do Not Assist the Trier of Fact

Many of Rothbart's opinions do not require specialized knowledge and are not helpful in assisting the trier of fact in analyzing evidence or determining an issue in the case; accordingly, such opinions are not relevant. *See In re Bair Hugger*, 9 F.4th at 777. "Where the subject matter is within the knowledge or experience of laymen, expert testimony is superfluous." *United States v. Clapp*, 46 F.3d 795, 802 (8th Cir. 1995) (citation omitted).

In particular, Rothbart opines on topics including:

- The respective roles, duties, and relationships of buyers and sellers in residential real estate transactions (Rothbart Report at ¶¶ 12–15);
- NAR and NAR's established rules (*Id.* at ¶¶ 16–17, 22–28, 31–35, 39) and;
- MLSs and their relationships with NAR's rules (*Id.* at ¶¶ 18–21).

Rothbart's opinions on these topics are simply a recitation of factual background of Plaintiffs' case—Rothbart is essentially serving as a fact witness disguised as an expert. But these subjects are not beyond the ken of ordinary jurors. *See Cox v. Callaway County, Missouri*, No. 2:18-cv-04045-NKL, 2020 WL 1669425, at *3 (W.D. Mo. Apr. 2, 2020) ("Allowing the opinion of an expert is appropriate when it relates to 'issues that are beyond the ken of people of ordinary experience'" (quoting *Clapp*, 46 F.3d at 802).). Additionally, Plaintiffs were unable to establish many of the facts in Rothbart's Report with any percipient witnesses with, plausibly, the knowledge to testify as to such facts. Plaintiffs may not use Rothbart's Report as an end-around this factual gap in their case. It is black-letter law that a "jury may not rest its verdict on an expert's conclusion without some underlying facts and reasons, or a logical inferential process to support the expert's opinion." *St. Louis Convention & Visitors Comm'n v. Nat'l Football League*, 154 F.3d 851, 863 (8th Cir. 1998). Moreover, the absence of any methodology or specialized analysis required to reach such opinions, as discussed *supra* Section IV.A, is further evidence that no such scientific or specialized knowledge

10

or analysis is required to reach such conclusions. Accordingly, Rothbart's purported expert opinions on these matters should be excluded.

### E. Rothbart's Opinions Interpreting NAR's Rules Are Improper Legal Conclusions and Should Be Excluded

Rothbart has no basis to proffer opinions about the effects of the Challenged Restraints or any of NAR's rules. "[E]xpert testimony containing a legal conclusion is generally not admissible." *Cox*, 2020 WL 1669425, at *4 (citation omitted). For example, Rothbart asserts the following "opinions" regarding the Challenged Restraints and/or NAR's rules and their purported effects:

- The rules "act to sharply limit the ability of brokers and agents to negotiate the amount of compensation offered" and "discourage sales of property without listing" on an MLS (Rothbart Report at ¶¶ 22, 23);

- "The effect of the Challenged Restraints is to eliminate virtually all negotiation regarding the commission rates paid to buyer" (*Id.* at ¶¶ 25–27);

- "Steering (and the threat of steering) is caused by defendants' Challenged Restraints" (*Id.* at ¶ 32);

- "Based on my industry experience, I believe [the uniformity in offered commission rates] is caused by the structural impediments to negotiating commission rates, and in particular by the Challenged Restraints at issue in this case" (*Id.* at ¶ 39). (*See also id.* at ¶¶ 28, 29, 33, 35.)

Rothbart is unqualified to opine as to the Challenged Restraints and the interpretation of NAR's rules, as well as their respective purported effects, as he has no demonstrated expertise in these subject areas. Such testimony infringes upon the province of the Court and the jury to determine the rules' legal and factual impact. *See, e.g.*, *Weitz Co. LLC v. MH Washington, LLC*, No. 06-0559-CV-W-NKL, 2008 WL 8625902, at *4 (W.D. Mo. Aug. 19, 2008) (expert opinion interpreting contract provision was an improper legal conclusion). These opinions are improper and should be excluded.

11

## V. CONCLUSION

Jeffrey Rothbart offers nothing more than unsupported, unsubstantiated, and improper conclusions parroting Plaintiffs' theories on the ultimate issues in this case. He is not qualified to opine in this residential real estate matter, and his opinions are not even his own.

WHEREFORE, Defendants respectfully request that this Court strike from the record and exclude from consideration Jeffrey Rothbart's Expert Report, expert opinions, and testimony and grant such other relief as the Court deems just and appropriate.

Dated: August 29, 2022                                          Respectfully submitted,

/s/ Stacey Mahoney                                              /s/ Ethan Glass
Stacey Anne Mahoney (*pro hac vice*)                            Ethan Glass (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP                                     Deepti Bansal (*pro hac vice*)
101 Park Avenue                                                 Samantha Strauss (*pro hac vice*)
New York, NY 10178                                              COOLEY LLP
(212) 309-6000                                                  1299 Pennsylvania Avenue, NW
stacey.mahoney@morganlewis.com                                  Suite 700
                                                                Washington, DC 20004-2400
Karrie Clinkinbeard                                             (202) 776-2244
Megan J. Ochs                                                   eglass@cooley.com
ARMSTRONG TEASDALE LLP-KCMO                                     dbansal@cooley.com
2345 Grand Boulevard, Suite 1500                                sastrauss@cooley.com
Kansas City, MO 64108
(816) 221-3240                                                  Beatriz Mejia (*pro hac vice*)
kclinkinbeard@atllp.com                                         COOLEY LLP
mochs@atllp.com                                                 3 Embarcadero Center, 20th Floor
                                                                San Francisco, CA 94111
Kenneth Michael Kliebard (*pro hac vice*)                       (415) 693-2000
MORGAN, LEWIS & BOCKIUS LLP                                     mejiab@cooley.com
110 N. Wacker Drive, Suite 2800
Chicago, IL 60606-1511                                          Anne Bigler (*pro hac vice*)
(312) 324-1000                                                  COOLEY LLP
kenneth.kliebard@morganlewis.com                                55 Hudson Yards
                                                                New York, NY 10001
William T. McEnroe (*pro hac vice*)                             (212) 479-6000
MORGAN, LEWIS & BOCKIUS LLP                                     abigler@cooley.com
1701 Market Street
Philadelphia, PA 19103-2921
(215) 963-5000
william.mcenroe@morganlewis.com

Steven F. Molo (*pro hac vice*)
Eugene A. Sokoloff (*pro hac vice*)
Pamela I. Yaacoub (*pro hac vice*)
Matthew J. Fisher (*pro hac vice*)
MOLOLAMKEN LLP
300 N. LaSalle Street, Suite 5350
Chicago, IL 60654
(312) 450-6700
smolo@mololamken.com
esokoloff@mololamken.com
pyaacoub@mololamken.com
mfisher@mololamken.com

Lauren M. Weinstein (*pro hac vice*)
MOLOLAMKEN LLP
600 New Hampshire Avenue, NW
Suite 500
Washington, DC 20037
(202) 556-2000
lweinstein@mololamken.com

Justin M. Ellis (*pro hac vice*)
MOLOLAMKEN LLP
430 Park Avenue, Floor 6
New York, NY 10022
(212) 607-8160
jellis@mololamken.com

***Attorneys for Defendant Realogy Holdings Corp.***

/s/ *Jeffrey A. Levee*
Jeffrey A. Levee (*pro hac vice*)
Eric P. Enson (*pro hac vice*)
Kelly M. Watne
JONES DAY
555 Flower St
Los Angeles, CA 90071
(213) 489-3939
jlevee@jonesday.com
epenson@jonesday.com
kwatne@joensday.com

Eddie Hasdoo (*pro hac vice*)
JONES DAY
110 N. Wacker Drive
Chicago, IL 60606
(312) 782-3939
ehasdoo@jonesday.com

Elizabeth Wright (*pro hac vice*)
COOLEY LLP
500 Boylston Street
Boston, MA 02116
(617) 937-2300
ewright@cooley.com

Jack R. Bierig (*pro hac vice*)
ARENTFOX SCHIFF LLP
233 S. Wacker Drive, Suite 7100
Chicago, IL 60606
(312) 258-5500
jack.bierig@afslaw.com

Charles W. Hatfield (MO Bar # 40363)
Alexander C. Barrett (MO Bar # 68695)
STINSON LLP
230 W. McCarty Street
Jefferson City, MO 65101
(573) 636-6263
chuck.hatfield@stinson.com
alexander.barrett@stinson.com

***Attorneys for Defendant NATIONAL ASSOCIATION OF REALTORS®***

/s/ *Robert D. MacGill*
Robert D. MacGill (*pro hac vice*)
Matthew T. Ciulla (*pro hac vice*)
Scott E. Murray (*pro hac vice*)
MACGILL PC
156 E. Market St.
Suite 1200
Indianapolis, IN 46204
(317) 721-1253
Robert.MacGill@MacGillLaw.com
Matthew.Ciulla@MacGillLaw.com

Jay N. Varon (*pro hac vice*)
Jennifer M. Keas (*pro hac vice*)
FOLEY & LARDNER LLP
3000 K Street NW, Suite 600
Washington, DC 20007
(202) 672-5300

13

Danne W. Webb (MO #39384)
Andrea S. McMurtry (MO #62495)
HORN AYLWARD & BANDY, LLC
2600 Grand Blvd., Suite 1100
Kansas City, MO 64108
(816) 421-0700
dwebb@hab-law.com
amcmurtry@hab-law.com

***Attorneys for Defendant RE/MAX LLC***

jvaron@foley.com
jkeas@foley.com

Brian C. Fries
LATHROP GAGE LLP - KCMO
2345 Grand Avenue, Suite 2200
Kansas City, MO 64108-2618
(816) 292-2000
bfries@lathropgage.com

***Attorneys for Defendants HomeServices of America, Inc., BHH Affiliates, LLC, and HSF Affiliates, LLC***

*/s/ Timothy Ray*
Timothy Ray (*pro hac vice*)
David Kully (*pro hac vice*)
Anna Hayes (*pro hac vice*)
HOLLAND & KNIGHT LLP
150 N. Riverside Plaza, Suite 2700
Chicago, IL 60606
(312) 928-6042
timothy.ray@hklaw.com
david.kully@hklaw.com
anna.hayes@hklaw.com

David R. Buchanan (MO Bar #29228)
BROWN & JAMES, P.C.
2345 Grand Boulevard, Ste. 2100
Kansas City, MO 64105
(816) 472-0800
dbuchanan@bjpc.com

***Attorneys for Defendant Keller Williams Realty, Inc.***

# CERTIFICATE OF SERVICE

      I hereby certify that on this 29th day of August 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to counsel of record for this case.

*/s/ Ethan Glass*
*Attorney for Defendant NATIONAL ASSOCIATION OF REALTORS®*