UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| SCOTT AND RHONDA BURNETT, RYAN HENDRICKSON, JEROD BREIT, SCOTT TRUPIANO, JEREMY KEEL, HOLLEE ELLIS, and FRANCES HARVEY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, RE/MAX LLC, and KELLER WILLIAMS REALTY, INC.,<br><br>Defendants. | Case No. 4:19-cv-00332-SRB<br><br>**CLASS ACTION** |

**DEFENDANTS' MOTION TO CERTIFY THE COURT'S *PER SE* DETERMINATION FOR IMMEDIATE APPEAL UNDER 28 U.S.C. § 1292(b)**

Defendants respectfully move under 28 U.S.C. § 1292(b) and Federal Rule of Appellate Procedure 5(a)(3) for an order certifying this Court's December 16, 2022 Order (Doc. 1019)—holding the *per se* rule applies to Plaintiffs' antitrust claims—for immediate appeal.

**INTRODUCTION**

This Court took care in deciding Defendants' motions for summary judgment, following extensive briefing and robust argument. Its December 16 Order held that Plaintiffs' central claim in this case—that "Defendants implemented or enforced Section 2-G-1" of the National Association of Realtors' MLS Handbook "with the purpose and effect of inflating or stabilizing broker commission rates"—states a "*per se*" violation of the Sherman Act. Doc. 1019, at 20-21. That ruling will have a profound impact on trial. And it is certain to require a re-trial if Plaintiffs

win and the Eighth Circuit later holds that Plaintiffs' claims should have been assessed under the presumptively applicable rule of reason. Section 1292(b) exists to avoid that kind of risk.

While the Court undoubtedly considered its *per se* determination carefully, the issue is complex. Although the Eighth Circuit has not weighed in, courts across the country have held that MLS rules—even rules alleged to stabilize or inflate prices—are subject to the rule of reason rather than *per se* condemnation. *See, e.g.*, *Robertson v. Sea Pines Real Est. Cos.*, 679 F.3d 278, 290 (4th Cir. 2012) (membership criteria); *Reifert v. S. Cent. Wisc. MLS Corp.*, 450 F.3d 312, 321 (7th Cir. 2006) (anti-solicitation rule); *Thompson v. Metro Multi-List, Inc.*, 934 F.2d 1566, 1580 (11th Cir. 1991) (membership criteria); *Supermarket of Homes, Inc. v. San Fernando Valley Bd. of Realtors*, 786 F.2d 1400, 1407 (9th Cir. 1986) (steering); *United States v. Realty Multi-List, Inc.*, 629 F.2d 1351, 1361-62 (5th Cir. 1980) (membership criteria). And they have cast doubt on the 80-year-old decision in *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150 (1940), which this Court invoked. *See In re Sulfuric Acid Antitrust Litig.*, 703 F.3d 1004, 1010-12 (7th Cir. 2012) (Posner, J.) (observing the Supreme Court's later decisions have limited *Socony*); *Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210, 229 (D.C. Cir. 1986) (Bork, J.) (similar).

The stakes could not be higher. Although the class is limited to home sellers in Missouri, the challenged rules govern MLSs nationwide, affecting most residential real estate transactions in the United States. The trial has been continued to October. Given the enormous stakes, the dearth of Eighth Circuit authority, and the contrary views of most appellate courts that have addressed the issue, getting the Eighth Circuit's input now would best serve the interests of justice.

## ARGUMENT

Section 1292(b) allows immediate appeals of interlocutory orders that involve (1) a "controlling question of law," (2) as to which there is "substantial ground for difference of

opinion," and (3) on which an immediate appeal "may materially advance the ultimate termination of the litigation." This case easily checks every box.

I.      **This Court's December 16 Order Addresses A "Controlling Question Of Law"**

An order involves a "controlling" question when it resolves a legal issue "likely to affect the further course of the litigation." *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656, 659 (7th Cir. 1996) (accepting § 1292(b) certification, even though the impact of the issue on the outcome was uncertain); *see also, e.g., Emerson Elec. Co. v. Yeo*, No. 12-cv-1578 JAR, 2013 WL 440578, at *2 (E.D. Mo. Feb. 5, 2013) (collecting cases and certifying order where question would be reviewed *de novo* and a contrary answer would require dismissal). This Court's December 16 Order did just that.

The Eighth Circuit has held that the choice of which antitrust standard governs is a pure question of law. That is true even where the standard's selection or application involve factual questions. *See, e.g., Craftsmen Limousine, Inc. v. Ford Motor Co.*, 363 F.3d 761, 772 (8th Cir. 2004) ("Although a court's determination that the per se rule applies 'might involve many fact questions, the selection of a mode of analysis is **entirely a question of law**.'") (brackets omitted; emphasis added). Getting the answer wrong mandates reversal of a verdict against a defendant. *See, e.g., id.* at 772-73 (reviewing *per se* ruling *de novo*, and reversing and remanding for a new trial under the rule of reason); *Lewis Serv. Ctr., Inc. v. Mack Trucks, Inc.*, 714 F.2d 842, 848 (8th Cir. 1983) (similar, but directing district court to dismiss on remand). "There is no doubt that a question is 'controlling' if its incorrect disposition would require reversal of a final judgment . . . ." Charles Alan Wright *et al.*, 16 Fed. Prac. & Proc. § 3930 (3d ed. 2012).

Courts of appeals regularly decide virtually identical questions on appeal under § 1292(b). *See, e.g., Robertson v. Sea Pines Real Estate Cos., Inc.*, 679 F.3d 278, 283 (4th Cir. 2012) (addressing applicability of *per se* rule in 1292(b) appeal from denial of a motion to dismiss); *In*

3

*re Cardizem CD Antitrust Litig.*, 332 F.3d 896, 905 (6th Cir. 2003) (similar, denial of motion to dismiss and grant of summary judgment to plaintiffs on the applicable antitrust standard).

Like the orders appealed in those cases, this Court's order presents the *per se* question cleanly. The Eighth Circuit has cautioned against taking interlocutory appeals where threshold issues such as standing remain unresolved, or where additional factfinding is needed. *See Paschall v. Kansas City Star Co.*, 605 F.2d 403, 409 (8th Cir. 1979) (antitrust question not ripe for § 1292(b) review where district court had not considered plaintiffs' standing); *S.B.L. By & Through T.B. v. Evans*, 80 F.3d 307, 311 (8th Cir. 1996) (record did not allow court to frame the question on appeal). None of those problems are present here. The December 16 Order addressed all threshold issues, and the parties have completed extensive merits discovery. The Eighth Circuit will have everything it needs to decide the question.

## II. There Is "Substantial Ground For Difference Of Opinion" As To Whether The *Per Se* Rule Applies To Plaintiffs' Antitrust Claims

Certification is also warranted because this Court's determination that the *per se* rule applies presents a "substantial ground for difference of opinion." 28 U.S.C. § 1292(b). That requirement is easily met where, as here, the order addresses a "question of first impression in the Eighth Circuit," *Parker v. Clarke*, 910 F. Supp. 460, 462 (E.D. Mo. 1995), and most other courts have answered it differently from the district court, *White v. Nix*, 43 F.3d 374, 378 (8th Cir. 1994) ("identification of 'a sufficient number of conflicting and contradictory opinions' . . . provide[s] substantial ground for disagreement"). The Eighth Circuit has never addressed the legal standard appropriate for challenges to MLS rules. And the majority of courts that have addressed that question, including five federal courts of appeals, have applied the rule of reason.

"The level of uncertainty required to find a substantial ground for difference of opinion should be adjusted to meet the importance of the question in the context of the specific case."

Wright *et al.*, 16 Fed. Prac. & Proc. § 3930. Given the extraordinary stakes here, the dearth of Eighth Circuit precedent, and the many decisions holding that the rule of reason applies in cases like this one, the *per se* ruling merits certification.

### A. Courts of Appeals Across the Country Have Taken a Contrary Approach, Assessing MLS Rules Under the Rule of Reason

This Court's December 16 Order concluded that Section 2-G-1 is subject to *per se* analysis because it is alleged to be a horizontal agreement to stabilize or inflate prices. Doc. 1019 at 20-21. The Supreme Court has cautioned, however, that the "'rule of reason' [is] the prevailing standard of analysis" under Section 1. *Continental T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 49 (1977); *see Business Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 726 (1988) ("there is a presumption in favor of a rule-of-reason standard"). Any "departure" from that standard "must be based upon demonstrable economic effect" that allows courts to "predict with confidence" that a restraint "would be invalidated in all or almost all instances under the rule of reason." *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886-87 (2007).

Courts of appeals across the country have found that the benefits of the MLS system make it impossible to make that required confident prediction when it comes to MLS rules. Those courts have held that MLS rules must be assessed under the rule of reason **even when** they are alleged to stabilize or inflate prices. That establishes a substantial ground for difference of opinion on what standard applies here.

For example, in *Robertson v. Sea Pines Real Estate Companies, Inc.*, 679 F.3d 278 (4th Cir. 2012), the Fourth Circuit held that "**the cooperative actions of MLS members are not per se unreasonable.**" *Id.* at 290 (emphasis added). As here, the complaints in *Robertson* alleged that certain MLS rules had the effect of "stabiliz[ing] prices." *Id.* at 285; *see* Doc. 759 at ¶ 105. The district court held that the *per se* rule applied. *See Boland v. Consol. Multiple Listing Serv., Inc.*,

868 F. Supp. 2d 506, 516 (D.S.C. 2011). But the court recognized that the issue was "difficult[]," and certified its order for immediate appeal under § 1292(b). *Id.* at 519. The Fourth Circuit accepted the certification and reversed, holding that "the restraints at issue should be evaluated at the merits stage ***according to the rule of reason***, traditionally applied to joint venture cooperation that has possible procompetitive justifications." *Robertson,* 679 F.3d at 290 (emphasis added).

The Seventh Circuit reached the same conclusion in *Reifert v. South Central Wisconsin MLS Corp.*, 450 F.3d 312 (7th Cir. 2006), holding that a challenge to an MLS rule "***must***" be reviewed "***under the rule of reason*** to determine whether [the rule] contributes to competition and productivity." *Id.* at 321 (emphasis added). As here, the complaint in *Reifert* alleged that the NAR Code of Ethics violated Section 1 of the Sherman Act by "prohibiting competition" among listing agents. *Id.* at 315; *see* Doc. 759 at ¶¶ 114-115, 139. The rule at issue barred MLS members from telling sellers under contract with a listing agent about "superior services or prices" that might be available from competing agents. *Reifert*, 450 F.3d at 315. Despite that rule's obvious price impact, the court applied the rule of reason and held that it was ***not*** anticompetitive because it "aids competition and fulfills the purposes of the Sherman Act" by making it more likely that agents would be willing to list their properties on an MLS. *Id.* at 321.

The Ninth Circuit's decision in *Supermarket of Homes, Inc. v. San Fernando Valley Board of Realtors*, 786 F.2d 1400 (9th Cir. 1986), is similar. As here, the plaintiff in that case alleged that MLS rules "fixe[d] commissions" and facilitated "steering" by flagging discount listings that offered less than half the "'going rate' commission of six per cent." *Id.* at 1403, 1406; *see* Doc. 759 at ¶¶ 95, 97. Yet the Ninth Circuit held that the "exchange of price information" in MLS listings "is judged ***under the rule of reason***" absent evidence of an agreement to set those prices.

6

*Supermarket of Homes*, 786 F.2d at 1407 (emphasis added). The same is true of Section 2-G-1, which requires only that listing agents state how much they are willing to offer.

The Fifth Circuit has likewise held that MLS rules "***do not warrant* per se *treatment***." *United States v. Realty Multi-List, Inc.*, 629 F.2d 1351, 1367 (5th Cir. 1980) (emphasis added); *see Pope v. Mississippi Real Est. Comm'n*, 872 F.2d 127, 130 (5th Cir. 1989) (same). The government in *Realty Multi-List* accused an MLS of facilitating a group boycott—a type of restraint repeatedly "declared to be [a] per se violation[ ] of Section 1." 629 F.3d at 1365. Given the evolution of the *per se* rule, however, the Fifth Circuit concluded that it was necessary to consider whether the challenged rules were "at least potentially reasonably ancillary to joint, efficiency-creating economic activities" under the rule of reason. *Id.* at 1367.

The Eleventh Circuit followed that reasoning in *Thompson v. Metro Multi-List, Inc.*, 934 F.2d 1566 (11th Cir. 1991), holding that an MLS's "membership requirements are not *per se* antitrust violations." *Id.* at 1580. As in the Fifth Circuit's *Realty Multi-List* decision, the plaintiffs alleged that an MLS's membership rules constituted a group boycott. *Id.* at 1571. Citing that decision and the "many pro-competitive effects" of MLSs, the Eleventh Circuit applied the rule of reason, instead. *Id.* at 1568, 1580.

In short, five federal courts of appeals, in decisions spanning more than 40 years, have held that MLS rules are subject to the rule of reason ***even when*** assessing claims that would otherwise be subject to the *per se* rule. That establishes "substantial ground for difference of opinion" regarding the standard here. 28 U.S.C. § 1292(b).

    **B.    Courts Have Also Read *Socony* Differently, Rejecting a Literal Application of its Statement of the *Per Se* Rule**

The December 16 Order cited *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150 (1940), which Plaintiffs invoked for its statement that concerted action "for the purpose and with

the effect of raising, depressing, fixing, pegging, or stabilizing" prices is "illegal *per se*." *Id*. at 223; *see* Doc. 1019 at 18, 20-21; Doc. 956 at 16. But courts and scholars have cautioned that *Socony*'s 80-year-old language does not survive *Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.* ("*BMI*"), 441 U.S. 1 (1979). Those views establish further "ground for difference of opinion" regarding the Court's ruling. 28 U.S.C. § 1292(b).

"Taken literally," *Socony* "would outlaw" practices the Supreme Court has since held ***do not*** qualify for *per se* treatment, including the arrangement upheld in *BMI*. *In re Sulfuric Acid Antitrust Litig.*, 703 F.3d 1004, 1010-12 (7th Cir. 2012) (Posner, J.); *see Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210, 229 (D.C. Cir. 1986) (Bork, J.) (observing that *BMI* "***effectively overruled***" the notion that "all horizontal restraints" are *per se* illegal (emphasis added)); *McCarthy v. Intercontinental Exch., Inc.*, No. 20-cv-05832-JD, 2021 WL 6072817, at *3-4 (N.D. Cal. Dec. 23, 2021) (observing that "the Supreme Court has repeatedly cautioned since *Socony* that the antitrust laws should not be applied in such a rote manner").

Indeed, the Supreme Court has relied on *BMI* as an example of its general reluctance "to condemn rules adopted by professional associations as unreasonable *per se*." *F.T.C. v. Indiana Fed'n of Dentists*, 476 U.S. 447, 458 (1986). And other courts have recognized that *BMI* changed the way courts look at trade association rules across the board. Thus, the Fifth Circuit held that MLS rules had to be assessed under the rule of reason "***in light of the BMI case***." *Realty Multi-List*, 629 F.2d at 1367 (emphasis added). The Third Circuit likewise relied on *BMI* to hold that even restraints involving "price-fixing in 'a literal sense,'" do not "automatically qualif[y] as per se illegal price-fixing." *United States v. Brown Univ.*, 5 F.3d 658, 670 (3d Cir. 1993). Although this Court distinguished *BMI* on its facts, those other courts have not limited it that way.

*Socony*'s categorical approach to antitrust has been replaced by a broad consensus that *per se* treatment applies only to restraints that have "'no purpose ***except*** stifling of competition.'" *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 9 F.4th 1102, 1109 (9th Cir. 2021) (emphasis added). Court after court has found that MLS rules do not fit that bill. *See* II.A, *supra*. Section 2-G-1 is no different. Plaintiffs do not even allege that the rule requires listing agents to offer any particular level or range of commission rates, or that the rates offered under the rule are otherwise set by agreement. Doc. 990 at 6 n.6. That takes this case out of the narrow range of restraints, such as "naked" price fixing, subject to *per se* treatment. *See Nat'l Ass'n of Review Appraisers & Mortg. Underwriters v. Appraisal Found.*, 64 F.3d 1130, 1133 (8th Cir. 1995) ("[C]ourts should hesitate to apply a *per se* rule when there is a question as to the extent of a practice's economic impact"); *Realty Multi-List*, 629 F.2d at 1365 (*per se* rules apply only to "naked" restraints).

\* \* \*

Given the dearth of Eighth Circuit precedent, the contrary decisions of most courts to address the *per se* issue in this context, and the nationwide importance of this case, even a court "confident in its decision" should not hesitate to certify its order for immediate appeal. *Saunders v. Ace Mortg. Funding, Inc.*, No. 05-cv-1437, 2007 WL 2008677, at *2 (D. Minn. July 6, 2007) (nevertheless certifying question); *Rural Water Dist. No. 4 v. City of Eudora, Kan.*, 875 F. Supp. 2d 1260, 1274 (D. Kan. 2012) (same); *Miara v. First Allmerica Fin. Life Ins. Co.*, 379 F. Supp. 2d 20, 69-70 (D. Mass. 2005) (same). This Court should follow that path here.

### III. Immediate Appeal Would "Materially Advance The Ultimate Termination Of The Litigation"

Getting an answer from the Eighth Circuit now would reduce the risk of an expensive and time-consuming retrial later. This Court has recognized that trying this case once will be time-consuming and expensive. A trial under the wrong standard would require a do-over if Plaintiffs

win. There is no point in taking that risk, especially now that the trial has been continued and there are no imminent deadlines in the case. *See, e.g.*, *In re Gen. Motors LLC Ignition Switch Litig.*, 427 F. Supp. 3d 374, 393 (S.D.N.Y. 2019) (certification warranted because "reversal after trial might well require a new trial"); *Nat'l Veterans Legal Servs. Program v. United States*, 321 F. Supp. 3d 150, 155 (D.D.C. 2018); *Tenn. Gas Pipeline Co. v. Permanent Easement for 7.053 Acres*, No. 3:12-cv-01477, 2017 WL 4954093, at *2 (M.D. Pa. Nov. 1, 2017); *In re Vitamins Antitrust Litig.*, No. 1285, 2000 WL 33142129, at *2 (D.D.C. Nov. 22, 2000).

While this Court has ordered mediation (Doc. 1023), an immediate appeal on the applicable antitrust standard may help there, too. A ruling that MLS rules are subject to the *per se* rule will complicate any efforts to settle this case. Allowing for review by the Eighth Circuit will permit the parties to assess better the impact of this case and enhance the likelihood that they can reach a common ground. *See, e.g.*, *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012) (appeal's potential to advance settlement efforts "is enough to satisfy the 'may materially advance' clause of section 1292(b)"). That is yet another reason to certify the *per se* determination.

## CONCLUSION

For these reasons, Defendants respectfully request that the Court allow the Eighth Circuit to review the applicability of the *per se* rule in this case by exercising the Court's authority under Federal Rule of Appellate Procedure 5(a)(3) to amend the December 12 Order to state that (1) whether Section 2-G-1 should be assessed as a *per se* restraint is a controlling question of law as to which (2) there is substantial ground for difference of opinion, and that (3) an immediate appeal from the Order may materially advance the ultimate termination of the litigation.

Dated: December 30, 2022

Respectfully submitted,

/s/ Steven F. Molo

Karrie Clinkinbeard
 kclinkinbeard@atllp.com
Megan J. Ochs
 mochs@atllp.com
ARMSTRONG TEASDALE LLP-KCMO
2345 Grand Boulevard, Suite 1500
Kansas City, MO 64108
(816) 221-3240

Stacey Anne Mahoney, *pro hac vice*
 stacey.mahoney@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
(212) 309-6000

Kenneth Michael Kliebard, *pro hac vice*
 kenneth.kliebard@morganlewis.com
MORGAN LEWIS & BOCKIUS LLP
110 N. Wacker Drive, Suite 2800
Chicago, IL 60606-1511
(312) 324-1000

Steven F. Molo, *pro hac vice*
 smolo@mololamken.com
Eugene A. Sokoloff, *pro hac vice*
 esokoloff@mololamken.com
Pamela I. Yaacoub, *pro hac vice*
 pyaacoub@mololamken.com
Matthew J. Fisher, *pro hac vice*
 mfisher@mololamken.com
MOLOLAMKEN LLP
300 N. LaSalle St., Suite 5350
Chicago, IL  60654
(312) 450-6700

William T. McEnroe, *pro hac vice*
 william.mcenroe@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
(215) 963-5000

Lauren M. Weinstein, *pro hac vice*
 lweinstein@mololamken.com
Robert Y. Chen, *pro hac vice*
 rchen@mololamken.com
MOLOLAMKEN LLP
600 New Hampshire Ave., N.W., Suite 500
Washington, D.C.  20037
(202) 556-2000

Justin M. Ellis, *pro hac vice*
 jellis@mololamken.com
MOLOLAMKEN LLP
430 Park Avenue, Floor 6
New York, NY  10022
(212) 607-8160

*Counsel for Realogy Holdings Corp. (n/k/a Anywhere Real Estate, Inc.)*

| | |
|---|---|
| /s/Jeffrey A. LeVee | /s/ Timothy Ray |
| Jeffrey A. LeVee, *pro hac vice*<br>jlevee@jonesday.com<br>Eric P. Enson, *pro hac vice*<br>epenson@jonesday.com<br>Kelly M. Watne, *pro hac vice*<br>kwatne@jonesday.com<br>JONES DAY<br>555 S. Flower Street, 50th Floor<br>Los Angeles, CA 90071<br>(213) 243-2572<br><br>Odeshoo Hasdoo, *pro hac vice*<br>ehasdoo@jonesday.com<br>JONES DAY<br>110 N. Wacker, Ste. 4900<br>Chicago, IL 60605<br>(312) 782-3939<br><br>Danne W. Webb<br>dwebb@hab-law.com<br>Andrea S. McMurtry<br>amcmurtry@hab-law.com<br>HORN AYLWARD & BANDY, LLC<br>2600 Grand Blvd., Ste. 1100<br>Kansas City, MO 64108<br>(816) 421-0700<br><br>*Counsel for RE/MAX, LLC* | Timothy Ray, *pro hac vice*<br>Timothy.Ray@hklaw.com<br>HOLLAND & KNIGHT LLP<br>150 N. Riverside Plaza, Ste. 2700<br>Chicago, IL 60603<br>(312) 263-3600<br><br>David C. Kully, *pro hac vice*<br>david.kully@hklaw.com<br>Anna P. Hayes, *pro hac vice*<br>anna.hayes@hklaw.com<br>HOLLAND & KNIGHT LLP<br>800 17th Street NW, Ste. 1100<br>Washington, DC 20530<br>(202) 469-5415<br><br>Jennifer Lada, *pro hac vice*<br>jennifer.lada@hklaw.com<br>HOLLAND & KNIGHT LLP<br>31 West 52nd Street, 12th Floor<br>New York, NY 10019<br>(212) 513-3513<br><br>Dina W. McKenney, *pro hac vice*<br>dina.mckenney@hklaw.com<br>HOLLAND & KNIGHT LLP<br>1722 Routh Street, Ste. 1500<br>Dallas, TX 75201<br>(214) 969-1757<br><br>David R. Buchanan<br>dbuchanan@bjpc.com<br>BROWN & JAMES, PC-KCMO<br>2345 Grand Boulevard, Ste. 2100<br>Kansas City, MO 64108<br>(816) 472-0800<br><br>*Counsel for Keller Williams Realty, Inc.* |

/s/ Robert D. MacGill
Robert D. MacGill, *pro hac vice*
 robert.macgill@macgilllaw.com
Scott E. Murray, *pro hac vice*
 scott.murray@macgilllaw.com
Matthew T. Ciulla, *pro hac vice*
 matthew.ciulla@macgilllaw.com
MACGILL PC
156 E. Market St., Ste. 1200
Indianapolis, IN 46204

Jay N. Varon, pro hac vice
 jvaron@foley.com
Jennifer M. Keas, pro hac vice
 jkeas@foley.com
FOLEY & LARDNER LLP
3000 K Street NW, Ste. 600
Washington DC 20007

Brian C. Fries
 brian.fries@lahropgpm.com
LATHROP GPM LLP
2345 Grand Ave., Ste. 2200
Kansas City, MO 64108

*Counsel for HomeServices of America, Inc., BHH Affiliates, LLC, and HSF Affiliates, LLC*

/s/ Ethan Glass
Ethan Glass, *pro hac vice*
 eglass@cooley.com
Deepti Bansal, *pro hac vice*
 dbansal@cooley.com
Samantha Strauss, *pro hac vice*
 sastrauss@cooley.com
COOLEY LLP
1299 Pennsylvania Avenue, NW
Ste. 700
Washington, DC 20004-2400
(202) 776-2244

Beatriz Mejia, *pro hac vice*
 mejiab@cooley.com
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
(415) 693-2000

Anne Bigler, *pro hac vice*
 abigler@cooley.com
COOLEY LLP
55 Hudson Yards
New York, NY 10001
(212) 479-6000

Elizabeth Wright, *pro hac vice*
 ewright@cooley.com
COOLEY LLP
500 Boylston Street
Boston, MA 02116
(617) 937-2300

Jack R. Bierig, *pro hac vice*
 jack.bierig@afslaw.com
ARENTFOX SCHIFF LLP
233 S. Wacker Drive, Suite 7100
Chicago, IL 60606
(312) 258-5500

Charles W. Hatfield
 chuck.hatfield@stinson.com
Alexander C. Barrett
 alexander.barrett@stinson.com
STINSON LLP

230 W. McCarty Street
Jefferson City, MO 65101
Phone (573) 636-6263
Fax (573) 636-6231

*Counsel for NATIONAL ASSOCIATION OF REALTORS®*