IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| SCOTT AND RHONDA BURNETT, RYAN HENDRICKSON, JEROD BRIET, SCOTT TRUPIANO, JEREMY KEEL, HOLLEE ELLIS, and FRANCES HARVEY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs<br><br>v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICAN, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC, RE/MAX LLC, and KELLER WILLIAMS REALTY, INC.,<br><br>Defendants. | Case No. 19-CV-00332-SRB |

**PLAINTIFFS' SUGGESTIONS IN OPPOSITION TO DEFENDANTS' MOTION TO CERTIFY FOR IMMEDIATE APPEAL UNDER 28 U.S.C. § 1292(b) (DOC. 1024)**

| | | |
|---|---|---|
| Michael S. Ketchmark<br>Scott A. McCreight<br>KETCHMARK &<br>McCREIGHT, P.C.<br>11161 Overbrook Road,<br>Suite 210<br>Leawood, KS 66211 | Eric L. Dirks<br>Matthew L. Dameron<br>WILLIAMS DIRKS<br>DAMERON LLC<br>1100 Main Street, Suite 2600<br>Kansas City, MO 64105 | Brandon J.B. Boulware<br>Jeremy M. Suhr<br>Erin D. Lawrence<br>BOULWARE LAW LLC<br>1600 Genessee, Suite 416<br>Kansas City, MO 64102 |

*Attorneys for Plaintiffs and the Classes*

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

LAW AND ARGUMENT .......................................................................................................2

   I.    DEFENDANTS PRESENT NO SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION REGARDING APPLICATION OF THE PER SE RULE .......................3

      A.  Horizontal Price-Fixing is a Per Se Violation of the Sherman Act ...................3

          1.  The Federal Courts Uniformly Apply the Per Se Rule to Horizontal Price-Fixing Conspiracies ..................................................................3

          2.  The Per Se Rule Provides No Exception for Trade Trade Association or MLS Rules ...................................................................................4

          3.  Courts Have Continued to Apply the Per Se Rule for More Than 40 Years Since *Broadcast Music* ..........................................................7

      B.  Defendants Make No Attempt to Show Disagreement Within this Circuit .......8

   II.   APPLICATION OF THE PER SE RULE IS NOT A PURELY ABSTRACT QUESTION OF LAW WITHIN THE MEANING OF SECTION 1292(b) ...................9

   III.  ALLOWING YET ANOTHER APPEAL WOULD SLOW THE ULTIMATE TERMINATION OF THIS LITIGATION, NOT ADVANCE IT ...............................10

CONCLUSION ......................................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Adams v. City of Kansas City, Mo.*,
   No. 19-CV-00093-W-WBG, 2022 WL 138102, (W.D. Mo. Jan. 14, 2022) .............................. 8

*Ahrenholz v. Bd. of Trs. of Univ. of Ill.*,
   219 F.3d 674 (7th Cir. 2000) ................................................................................................ 9

*Alexander v. Nat'l Farmers Org.*,
   687 F.2d 1173 (8th Cir. 1982) .............................................................................................. 4

*Always Towing & Recovery, Inc. v. City of Milwaukee*,
   2 F.4th 695 (7th Cir. 2021) .................................................................................................. 7

*Arizona v. Maricopa Cnty. Med. Soc'y*,
   457 U.S. 332 (1982)......................................................................................................... 4, 5

*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*,
   9 F.4th 1102 (9th Cir. 2021) ................................................................................................ 8

*Bartle v. TD Ameritrade Holding Corp.*,
   No. 20-cv-00166-SRB, 2020 WL 7034570 (W.D. Mo. Nov. 30, 2020) ............................ 2, 9

*Chamber of Com. of the United States of Am. v. City of Seattle*,
   890 F.3d 769 (9th Cir. 2018) ................................................................................................ 7

*Cont'l Airlines, Inc. v. United Airlines, Inc.*,
   277 F.3d 499 (4th Cir. 2002) ................................................................................................ 4

*Denny's Marina, Inc. v. Renfro Prods., Inc.*,
   8 F.3d 1217 (7th Cir. 1993) .............................................................................................. 3, 5

*Dimmitt Agri Indus., Inc. v. CPC Int'l Inc.*,
   679 F.2d 516 (5th Cir. 1982) ................................................................................................ 4

*Freeman v. San Diego Ass'n of Realtors*,
   322 F.3d 1133 (9th Cir. 2003) .............................................................................................. 6

*Hyland v. HomeServices of Am., Inc.*,
   771 F.3d 310 (6th Cir. 2014) ............................................................................................ 5, 6

*In re Pre-Filled Propane Tank Antitrust Litig.*,
   860 F.3d 1059 (8th Cir. 2017) .............................................................................................. 4

*In re Sept. 11 Litig.*,
  No. 21 MC 97(AKH), 2003 WL 22251325 (S.D.N.Y. Oct. 1, 2003) ......................................... 1

*In re Sulfuric Acid Antitrust Litig.*,
  743 F. Supp. 2d 827 (N.D. Ill. 2010) ................................................................................... 4

*Jacobs v. Tempur-Pedic Int'l., Inc.*,
  626 F.3d 1327 (11th Cir. 2010) ........................................................................................... 4

*Ketab Corp. v. Mesriani L. Grp.*,
  No. 2:14-cv-07241-RSWL(MRW), 2015 WL 2409351 (C.D. Cal. May 20, 2015) ................... 2

*Lewis Serv. Ctr., Inc. v. Mack Trucks, Inc.*,
  714 F.2d 842 (8th Cir. 1983) ............................................................................................... 8

*Marion Diagnostic Ctr., LLC v. Becton Dickinson & Co.*,
  29 F.4th 337 (7th Cir. 2022) ................................................................................................ 4

*McNamara v. Katten Muchin Rosenman LLP*,
  No. 4:16-cv-01203-SRB, 2017 WL 11493632 (W.D. Mo. April 21, 2017) ..................... 1, 8, 11

*N.F.L. Ins. Ltd. By Lines v. B&B Holdings, Inc.*,
  No. 91 Civ. 8580 (PKL), 1993 WL 255101 (S.D.N.Y. July 1, 1993) ............................... 10, 11

*Nat'l Soc'y of Pro. Eng'rs v. United States*,
  435 U.S. 679 (1978) ......................................................................................................... 5, 7

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*,
  20 F.4th 466 (9th Cir. 2021) ................................................................................................ 4

*Reifert v. S. Cent. Wis. MLS Corp.*,
  450 F.3d 312 (7th Cir. 2006) ............................................................................................... 7

*Rey v. General Motors LLC*,
  No. 4:19-cv-00714-DGK, 2022 WL 675857 (W.D. Mo. March 7, 2022) ........................... 8, 9

*Robertson v. Sea Pines Real Est. Cos.*,
  679 F.3d 278 (4th Cir. 2012) ............................................................................................... 7

*Sec. & Exch. Comm'n v. Aequitas Mgmt., LLC*,
  No. 3:16-CV-438-PK, 2017 WL 7789717 (D. Or. Dec. 11, 2017) ........................................ 2

*Supermarket of Homes, Inc. v. San Fernando Valley Bd. of Realtors*,
  786 F.2d 1400 (9th Cir. 1986) ............................................................................................. 7

*Texaco Inc. v. Dagher*,
  547 U.S. 1 (2006) ............................................................................................................... 4

*Thompson v. Metro. Multi-List, Inc.*,
  934 F.2d 1566 (11th Cir. 1991) ......................................................................................... 7

*Union Cnty., Ia. v. Piper Jaffray & Co.*,
  525 F.3d 643 (8th Cir. 2008) ............................................................................................. 8

*United States v. Apple, Inc.*,
  791 F.3d 290 (2d Cir. 2015) .............................................................................................. 8

*United States v. Nat'l Ass'n of Real Est. Bds.*,
  339 U.S. 485 (1950) ...................................................................................................... 5, 6

*United States v. Realty Multi-List, Inc.*,
  629 F.2d 1351 (5th Cir. 1980) ........................................................................................... 7

*White v. Nix*,
  43 F.3d 374 (8th Cir. 1994) ............................................................................................... 2

*World of Sleep, Inc. v. La-Z-Boy Chair Co.*,
  756 F.2d 1467 (10th Cir. 1985) ......................................................................................... 8

# INTRODUCTION

"'It has . . . long been the policy of the courts to discourage piece-meal appeals because most often such appeals result in additional burdens on both the court and the litigants. Permission to allow interlocutory appeals should thus be granted sparingly and with discrimination.'" *McNamara v. Katten Muchin Rosenman LLP*, No. 4:16-cv-01203-SRB, 2017 WL 11493632, at *1 (W.D. Mo. April 21, 2017) (quoting *Control Data Corp. v. Int'l Bus. Machines Corp.*, 421 F.2d 323, 325 (8th Cir. 1970)); *accord In re Sept. 11 Litig.*, No. 21 MC 97(AKH), 2003 WL 22251325, at *1 (S.D.N.Y. Oct. 1, 2003) ("Federal practice is strongly biased against interlocutory appeals. Appeals from interlocutory orders prolong judicial proceedings, add delay and expense to litigants, burden appellate courts, and present issues for decisions on uncertain and incomplete records, tending to weaken the precedential value of judicial opinions."). A party seeking certification therefore "'bears the heavy burden of demonstrating that the case is an exceptional one in which immediate appeal is warranted.'" *McNamara*, 2017 WL 11493632, at *1 (quoting *White v. Nix*, 43 F.3d 374, 376 (8th Cir. 1994)).

Defendants' motion, which marks the *fifth* time they have sought appeal before trial, cannot justify the extraordinary relief requested. There's nothing unusual or complex about applying the per se rule here – horizontal price-fixing is a per se violation of the Sherman Act, period. No exceptions exist for realtors, real estate associations, or "MLS rules." Nor can Defendants manufacture such an exception by citing cases that dealt with non-price rules such as membership criteria. "[G]etting the Eighth Circuit's opinion now," *Defendants' Motion* at 2, would merely confirm the obvious, and is exactly the type of piecemeal approach that the federal courts avoid whenever possible.

1

On top of being pointless, Defendants' requested appeal would slow the ultimate termination of the litigation, not advance it. This case has been on file for nearly four years, and Defendants' interlocutory appeals have already led to moving the start of trial from February 21 to October 16. Doc. 1020. Granting permission for yet another interlocutory appeal would require moving the trial again, likely to 2025. And in the meantime, Defendants' anti-competitive rules would remain in place and the Plaintiff Class would continue to suffer new damage every day. Section 1292(b) does not compel (or even allow) that result. This is not an exceptional case warranting immediate appeal, and the Court therefore should deny Defendants' motion.

**LAW AND ARGUMENT**

A court may certify an order for interlocutory appeal only if three conditions are met: "'(1) the order involves a controlling question of law; (2) there is substantial ground for difference of opinion; and (3) certification will materially advance the ultimate termination of the litigation.'" *Bartle v. TD Ameritrade Holding Corp.*, No. 20-cv-00166-SRB, 2020 WL 7034570, at *3 (W.D. Mo. Nov. 30, 2020) (quoting *White*, 43 F.3d at 377). These requirements are jurisdictional and cannot be waived. *White*, 43 F.3d at 376. Moreover, even when these conditions are met, a court "has discretion to grant or deny certification, and its decision is unreviewable." *Ketab Corp. v. Mesriani L. Grp.*, No. 2:14-cv-07241-RSWL(MRW), 2015 WL 2409351, at *2 (C.D. Cal. May 20, 2015) (internal quotation omitted); *accord Sec. & Exch. Comm'n v. Aequitas Mgmt., LLC*, No. 3:16-CV-438-PK, 2017 WL 7789717, at *3 (D. Or. Dec. 11, 2017) ("The discretion vested in the district courts whether or not to certify an order for interlocutory appeal is absolute."). Defendants' request meets none of these required standards.

## I. DEFENDANTS PRESENT NO SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION REGARDING APPLICATION OF THE PER SE RULE

First, Defendants establish no substantial ground for difference of opinion over the Court's application of the per se rule. The federal courts uniformly hold that horizontal price-fixing among competitors is a per se violation of the Sherman Act, and they recognize no exception for price-fixing conducted through trade association rules or MLS rules. Defendants' citation to cases from other circuits fails because: (1) none of those cases involved price-fixing, and (2) any difference of opinion for purposes of Section 1292(b) must be within this circuit, not among courts outside the circuit.

### A. Horizontal Price-Fixing Is a Per Se Violation of the Sherman Act.

"As far back as 1940, it has been clear that horizontal price-fixing is illegal *per se* without requiring a showing of actual or likely impact on a market." *Denny's Marina, Inc. v. Renfro Prods., Inc.*, 8 F.3d 1217, 1221 (7th Cir. 1993) (citing *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 223-24 (1940)). "This is because joint action by competitors to suppress price-cutting has the requisite substantial potential for impact on competition to warrant *per se* treatment." *Id.* (internal quotation omitted). Contrary to Defendants' argument, the per se rule is not just "80-year-old language" that has been "replaced by a broad consensus" and "does not survive *Broadcast Music* . . . ." *Defendants' Motion* at 8, 9. The rule remains alive and vibrant, continuing to act as the cornerstone of antitrust enforcement.

#### 1. The Federal Courts Uniformly Apply the Per Se Rule to Horizontal Price-Fixing Conspiracies.

If the courts had abandoned or heavily modified the per se rule in 1979, as Defendants claim, then one would expect that change to be reflected in later cases. But there's no disagreement among the federal courts that horizontal price-fixing remains a per se violation of the Sherman

3

Act. The Supreme Court continues to apply the rule. *Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006) ("Price-fixing agreements between two or more competitors, otherwise known as horizontal price-fixing agreements, fall into the category of arrangements that are *per se* unlawful."). The Eighth Circuit applies the rule. *In re Pre-Filled Propane Tank Antitrust Litig.*, 860 F.3d 1059, 1067 (8th Cir. 2017) ("the horizontal restraint here is a *per se* antitrust violation."); *Alexander v. Nat'l Farmers Org.*, 687 F.2d 1173, 1184 (8th Cir. 1982) ("horizontal price-fixing is, of course, a per se violation of the Sherman Act."). And each of the courts of appeals cited by Defendants apply the rule.[1] Horizontal price-fixing remains "one of the clearest *per se* violations of the Sherman Act," *In re Sulfuric Acid Antitrust Litig.*, 743 F. Supp. 2d 827, 867 (N.D. Ill. 2010), and Defendants cannot seriously argue otherwise.

### 2. The Per Se Rule Provides No Exception for Trade Association or MLS Rules.

Defendants are just as wrong in suggesting that the per se rule provides an exception for price-fixing implemented by trade association rules or MLS rules. For instance, in *Arizona v. Maricopa Cnty. Med. Soc'y*, 457 U.S. 332, 348 (1982), the Supreme Court struck down a medical association's published schedule of maximum prices as a per se violation of the Sherman Act. Nor was the Court swayed by arguments to abandon the per se rule because the price-fixing scheme was "alleged to have procompetitive justifications." *Id*. at 351. As the Court stressed, such an "argument indicates a misunderstanding of the *per se* concept. The anticompetitive potential

---

[1] *See, e.g.*, *Cont'l Airlines, Inc. v. United Airlines, Inc.*, 277 F.3d 499, 509 (4th Cir. 2002) ("certain practices, including price fixing, horizontal output restraints, and market-allocation agreements, are illegal *per se*."); *Dimmitt Agri Indus., Inc. v. CPC Int'l Inc.*, 679 F.2d 516, 530 n.14 (5th Cir. 1982) (examples of "practices illegal per se" include "horizontal price-fixing and market-sharing arrangements"); *Marion Diagnostic Ctr., LLC v. Becton Dickinson & Co.*, 29 F.4th 337, 348 (7th Cir. 2022) ("Horizontal price-fixing agreements between competitors are classic per se violations of Section 1, meaning that they are presumed unlawful."); *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, 20 F.4th 466, 479 (9th Cir. 2021) ("Horizontal price fixing and market allocation are *per se* Section 1 violations."); *Jacobs v. Tempur-Pedic Int'l., Inc.*, 626 F.3d 1327, 1334 (11th Cir. 2010) ("Examples of such per se illegality include horizontal price fixing").

4

inherent in all price-fixing agreements justifies their facial invalidation even if procompetitive justifications are offered for some." *Id*.

The courts equally apply the per se rule to price-fixing by realtors and real estate boards. In *United States v. Nat'l Ass'n of Real Est. Bds.*, 339 U.S. 485 (1950), for example, the Court faced a real estate board's "code of ethics" providing that "Brokers should maintain the standard rates of commission adopted by the board and no business should be solicited at lower rates." *Id*. at 488. The Court condemned that "ethical rule," emphasizing that "[p]rice-fixing is per se an unreasonable restraint of trade. It is not for the courts to determine whether in particular settings price-fixing serves an honorable or worthy end." *Id*. at 489. Similarly, in *Hyland v. HomeServices of Am., Inc.*, 771 F.3d 310, 314 (6th Cir. 2014), the plaintiffs alleged a conspiracy by real estate firms to fix the buyer's broker commission at 3% and the total listing commission at 6%. Although the court found insufficient evidence of that conspiracy, it confirmed that such a scheme, if proved, would constitute horizontal price-fixing subject to the per se rule. *Id*. at 318.

Of course, the rule of reason can apply to trade association rules and MLS rules *not* involving price-fixing. After all, "[t]he nature of the restraint determines which rule will be applied." *Denny's Marina*, 8 F.3d at 1220. But horizontal schemes manipulating price, even when implemented through trade association or MLS rules, remain subject to the per se rule. *See, e.g.*, *Nat'l Soc'y of Pro. Eng'rs v. United States*, 435 U.S. 679, 692-93 (1978) (rule barring discussion of price with potential customers "illegal on its face," even though "not price fixing as such," because it "interfere[s] with the setting of price by free market forces"); *Maricopa Cnty. Med. Soc'y*, 457 U.S. at 348 (per se rule applies to a "price restraint that tends to provide the same economic rewards to all practitioners regardless of their skill, their experience, their training, or their willingness to employ innovative and difficult procedures in individual cases.").

5

This distinction between price and non-price MLS rules is seen in *Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133 (9th Cir. 2003), where the Ninth Circuit considered a Section 1 claim asserted against an MLS over the fees it charged to realtors. The *Freeman* court agreed that real estate associations "may set policies necessary to maintain the MLS database," such as membership criteria or standards for data entry. *Id.* at 1147. Such policies are "reasonably ancillary restraints" that do not relate to prices charged. *Id.* (citing *United States v. Realty Multi-List, Inc.*, 629 F.2d 1351, 1368 (5th Cir. 1980)). The court emphasized, however, that "this flexibility does not extend to what the associations did here," which was "engag[e] in price fixing." *Id*. Even when committed by a real estate association, "[n]o antitrust violation is more abominated than the agreement to fix prices," and the dispositive question "is not whether any price fixing was justified, but simply whether it occurred." *Id*. at 1144.

The *Freeman* distinction between restraints involving price and those not involving price sets this case apart from every case cited by Defendants. The challenged rules here reach directly to price – they don't specify any particular commission rate, but they also don't allow that rate to be zero. And in practice, Defendants never allow purely nominal commission. Rather, they use the challenged rules and train their brokers "to set commission rates at 6%, to split commission equally among Buyer-Brokers and Seller-Brokers, and to never lower commissions." Doc. 1019 at 19. The rules therefore are subject to the per se rule because they are "formed for the purpose and with the effect of raising, depressing, fixing, pegging, or stabilizing" prices. *Id*. at 18 (quoting *Socony*, 310 U.S. at 223); *accord Nat'l Ass'n of Real Est. Bds.*, 339 U.S. at 488-89 (setting commission rates per se illegal); *Hyland*, 771 F.3d at 318 (setting buyer's broker commission at 3% and total listing commission at 6% per se illegal); *Freeman*, 322 F.3d at 1146 ("Agreements not to offer discounts are per se violations of section 1."). Defendants' cases, by contrast, each

6

involved non-price rules such as membership criteria, and were thus subject to the rule of reason.[2] As Plaintiffs stressed in their summary judgment briefing, this case isn't an attack on the MLSs – it's an attack on Defendant's price restraints. And horizontal restraints that "interfere[] with the setting of price by free market forces" are per se antitrust violations. *Nat'l Soc'y of Pro. Eng'rs*, 435 U.S. at 692.

### 3. Courts Have Continued to Apply the Per Se Rule for More Than 40 Years Since *Broadcast Music.*

Defendants next claim that "courts and scholars have cautioned that *Socony*'s 80-year-old language does not survive *Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.*" *Defendants' Motion* at 8. As the Court has already recognized, however, *Broadcast Music* involved a narrow and fact-specific exception to the per se rule, not the blanket overruling of *Socony* that Defendants urge. Doc. 1019 at 20 ("[t]he rationale used to apply the rule of reason in *Broadcast Music* is not present here."). *Socony* remains good law that the courts widely apply to outlaw horizontal price-fixing.

A simple Westlaw search confirms this fact. *Broadcast Music* was decided in 1979. But the "80-year-old language" that Defendants claim it overruled – "[u]nder the Sherman Act a combination formed for the purpose and with the effect of raising, depressing, fixing, pegging, or stabilizing the price of a commodity in interstate or foreign commerce is illegal per se" – continues to be widely cited and applied more than 40 years later. *See, e.g.*, *Always Towing & Recovery, Inc. v. City of Milwaukee*, 2 F.4th 695, 705 (7th Cir. 2021) (quoting disputed language); *Chamber of Com. of the United States of Am. v. City of Seattle*, 890 F.3d 769, 780 (9th Cir. 2018) (same);

---

[2] *See Robertson v. Sea Pines Real Est. Cos.*, 679 F.3d 278, 290 (4th Cir. 2012) (membership criteria); *Reifert v. S. Cent. Wis. MLS Corp.*, 450 F.3d 312, 321 (7th Cir. 2006) (anti-solicitation); *Thompson v. Metro. Multi-List, Inc.*, 934 F.2d 1566, 1580 (11th Cir. 1991) (membership criteria); *Supermarket of Homes, Inc. v. San Fernando Valley Bd. of Realtors*, 786 F.2d 1400, 1407 (9th Cir. 1986) (exchange of information); *Realty Multi-List, Inc.*, 629 F.2d at 1361-62 (membership criteria).

7

*United States v. Apple, Inc.*, 791 F.3d 290, 327 (2d Cir. 2015) (same); *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1477 (10th Cir. 1985) (same); *Lewis Serv. Ctr., Inc. v. Mack Trucks, Inc.*, 714 F.2d 842, 845 (8th Cir. 1983) (same). If Defendants were right, then none of these cases would exist. The fact they do confirms that *Broadcast Music* has been limited to its facts, and definitely did not produce the sea change in antitrust law that Defendants claim.[3]

### B. Defendants Make No Attempt to Show Disagreement Within This Circuit.

Defendants' motion also fails because it makes no attempt to show a disagreement or difference of opinion within *this* Circuit. Defendants point only to cases from other circuits in making their claim for a substantial difference of opinion on applying the per se rule. "Disagreement among courts *outside the circuit*, however, does not establish a substantial ground for difference of opinion to support an interlocutory appeal." *McNamara*, 2017 WL 11493632, at *2; *accord Adams v. City of Kansas City, Mo.*, Case No. 19-CV-00093-W-WBG, 2022 WL 138102, at *2 (W.D. Mo. Jan. 14, 2022). Even if Defendants' cases from other courts of appeal were on point (and they are not), they could not "show a difference of opinion *within this circuit* that would warrant certification of an appeal." *McNamara*, 2017 WL 11493632, at *2.

For the same reason, Defendants' claimed "dearth of Eighth Circuit precedent" cannot justify interlocutory review. *Defendants' Motion* at 2, 5, 9. Both the Eighth Circuit and this Court have made clear that "'a dearth of cases' does not constitute "'substantial ground for difference of opinion'" within the meaning of Section 1292(b). *Union Cnty., Ia. v. Piper Jaffray & Co.*, 525 F.3d 643, 647 (8th Cir. 2008) (quoting *White* 43 F.3d at 378); *accord Rey v. General Motors LLC*,

---

[3] In a similar vein, Defendants argue that "*Socony*'s categorical approach to antitrust has been replaced by a broad consensus that *per se* treatment applies only to restraints that have 'no purpose **except** stifling of competition.'" *Defendant's Motion* at 9 (emphasis in original). But Defendants' sole citation for this proposition, *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 9 F.4th 1102 (9th Cir. 2021), just confirms that horizontal price-fixing remains a per se violation of the Sherman Act. As the *Aya* court explained, "naked horizontal restraints are always analyzed under the *per se* standard." *Id*. at 1109. And *Aya* explicitly affirmed that "agreements between actual or potential competitors to fix prices" are naked restraints subject to the per se rule. *Id*.

8

No. 4:19-cv-00714-DGK, 2022 WL 675857, at *5 (W.D. Mo. March 7, 2022) ("lack of precedent is not grounds for certifying an appeal under section 1292(b)."). Again, Defendants bear the burden of showing a difference of opinion within this circuit over applying the per se rule, and they cannot do so.

**II.     APPLICATION OF THE PER SE RULE IS NOT A PURELY ABSTRACT QUESTION OF LAW WITHIN THE MEANING OF SECTION 1292(b)**

Defendants further present no purely abstract question of law of the type reviewable under Section 1292(b). As this Court has made clear, not all questions of law are eligible for certification. Rather, "'[a] question of law, as construed in § 1292(b), refers to a purely, abstract legal question.'" *Bartle*, 2020 WL 7034570, at *3 (quoting *Emps. Reinsurance Corp. v. Mass. Mut. Life Ins. Co.*, Case No. 06-0188-CV-W-FJG, 2010 WL 2540097, at *2 (W.D. Mo. June 16, 2010)). A "purely abstract question" is "something the court of appeals could decide quickly and cleanly without having to study the record." *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 676-77 (7th Cir. 2000). For this reason, "'[c]hallenging the application of settled law to a specific set of facts is not a question of law'" that can be certified for interlocutory review. *Bartle*, 2020 WL 7034570, at *2 (quoting *Emps. Reinsurance Corp.*, 2010 WL 2540097, at *2). But that's exactly what Defendants are attempting here.

Defendants don't seriously deny that the per se rule remains valid law under the Sherman Act. Instead, they tout "the benefits of the MLS system" as a supposed reason to depart from the per se rule in this case. *Defendants' Motion* at 5. Even if that were a valid argument (and it's not), how could an appeals court evaluate such a claim without having to study the record? Defendants relied on the factual record extensively when arguing for the rule of reason in their summary judgment briefing. Doc. 932 at 27 ("The record in this case also establishes the procompetitive benefits of rules such as the cooperative compensation rule, which, like the rules discussed in the

9

cases above, apply to properties listed on the multiple listing services. SUMF ¶¶ 28-31."). Defendants tried to establish such "procompetitive benefits" with both fact and expert testimony. *Id*. at 9-11. Plaintiffs, in turn, opposed these factual arguments and countered with their own facts and expert testimony. Doc. 960 at 27-31. And the Court cited Plaintiffs' evidence when rejecting Defendants' attack on the per se rule. Doc. 1019 at 19.

The purely abstract legal question here is whether horizontal price-fixing is per se illegal. The settled answer is "yes." Defendants, on the other hand, are trying to evade that pure legal rule by asking for an exception based on facts they claim are unique to MLSs and the real estate industry generally. To even consider Defendants' argument would require evaluating the facts of the case and applying those facts to established law, and Section 1292(b) does not allow interlocutory review under such circumstances.

### III. ALLOWING YET ANOTHER APPEAL WOULD SLOW THE ULTIMATE TERMINATION OF THIS LITIGATION, NOT ADVANCE IT

Finally, Defendants fail to show that certification would materially advance the ultimate termination of the litigation. The Court has already moved the start of trial from February 21 to October 16 to accommodate Defendants and their appeals. Granting Defendants permission for still another appeal would push out trial again, likely to 2025. And in the meantime, Defendants' rules would remain in place and the Plaintiff Class would continue to suffer new damage every day. That result cannot be justified just because Defendants raise the specter of a potential need for retrial in the unlikely event of a successful appeal. Such an argument would "appl[y] in every case where a district court issues an interlocutory order that could result in a remand from the appellate court if the decision ultimately is reversed." *N.F.L. Ins. Ltd. By Lines v. B&B Holdings, Inc.*, No. 91 Civ. 8580 (PKL), 1993 WL 255101, at *3 n.2 (S.D.N.Y. July 1, 1993). Certification would become the rule, rather than the exception, leading to exactly the "additional burdens on

both the court and the litigants" that the Section 1292(b) criteria seek to minimize. *Id*. ("If the mere possibility of a retrial justified certification under section 1292(b), the general rule in federal court that interlocutory appeals are not permitted would be rendered inefficacious.").

Nor would certification help settlement efforts. Everyone knows that settlement discussions tend to become more serious when a trial date is looming. Further delay now, and continuing trial again, could only frustrate the Court's recently ordered mediation. Indeed, Defendants imply that if interlocutory appeal is granted, they will not participate seriously in mediation efforts until after such appeal is concluded. Both sides have all the information they need to "assess . . . the impact of this case," *Defendants' Motion* at 10, and granting certification would only complicate settlement, not aid it.

## CONCLUSION

Interlocutory appeals are meant to be used "sparingly and with discrimination." *McNamara*, 2017 WL 11493632, at *1. But Defendants have sought interlocutory appeal over virtually every major ruling in this case: (1) the denial of transfer; (2) the denial of arbitration; (3) class certification; (4) another denial of arbitration; and now (5) application of the per se rule in denying summary judgment. Enough is enough. This case has been on file for nearly four years and it needs to be tried. Defendants cannot make the extraordinary showing required for an interlocutory appeal, and the Court therefore should deny their motion for certification under Section 1292(b).

Respectfully submitted,

**KETCHMARK & McCREIGHT, P.C.**

*/s/ Scott A. McCreight*
Michael S. Ketchmark #41018
Scott A. McCreight #44002
11161 Overbrook Road, Suite 210
Leawood, KS 66211
(913) 266-4500
mike@ketchmclaw.com
smccreight@ketchmclaw.com

Eric L. Dirks #54921
Matthew L. Dameron #52093
**WILLIAMS DIRKS DAMERON LLC**
1100 Main Street, Suite 2600
Kansas City, MO 64105
(816) 945-7110
dirks@williamsdirks.com
matt@williamsdirks.com
cstout@williamsdirks.com

Brandon J.B. Boulware #54150
Jeremy M. Suhr #60075
Erin D. Lawrence #63021
**BOULWARE LAW LLC**
1600 Genessee, Suite 416
Kansas City, MO 64102
(816) 492-2826
brandon@boulware-law.com
jeremy@boulware-law.com
erin@boulware-law.com

Counsel for Plaintiffs and the Classes

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of January, 2023, I filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record for this case.

*/s/ Scott A. McCreight*
Attorney for Plaintiffs and the Classes