# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| SCOTT AND RHONDA BURNETT, RYAN HENDRICKSON, JEROD BREIT, SCOTT TRUPIANO, JEREMY KEEL, HOLLEE ELLIS, and FRANCES HARVEY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, RE/MAX LLC, and KELLER WILLIAMS REALTY, INC.,<br><br>Defendants. | Case No. 4:19-cv-00332-SRB<br><br>**CLASS ACTION** |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO CERTIFY THE COURT'S *PER SE* DETERMINATION FOR IMMEDIATE APPEAL UNDER 28 U.S.C. § 1292(b)**

Defendants respectfully submit this reply in support of their motion for an order certifying this Court's December 16, 2022 Order (Doc. 1019) under 28 U.S.C. § 1292(b) and Federal Rule of Appellate Procedure 5(a)(3).

## INTRODUCTION

Plaintiffs do not seriously dispute that this Court's December 16, 2022 Order presents a "controlling question of law"—the Eighth Circuit has said as much. They fail to distinguish the many cases demonstrating "substantial ground for difference of opinion" as to whether the *per se* rule should apply here. And while Plaintiffs want their day in court—as Defendants do—Plaintiffs cannot deny that having the Eighth Circuit answer that critical question now could spare everyone

involved a great deal of time and expense, and provide certainty to the parties' settlement discussions, thus materially advancing the resolution of this litigation.

## ARGUMENT

I. **"Substantial Ground for Difference of Opinion" Exists Regarding Whether the *Per Se* Rule Applies to Plaintiffs' Antitrust Claims**

The Court's Order held that Section 2-G-1 was price fixing subject to the *per se* rule because it is claimed to have the "purpose and effect of inflating or stabilizing" prices. Doc. 1019 at 21. Five circuits have considered rules claimed to have the ***exact same*** purpose or effect, and those courts held the rules were ***not*** price fixing subject to the *per se* rule. Doc. 1024 at 5-7. That difference of opinion warrants certification.

A. **Not All Horizontal Restraints That Affect Price Are "Horizontal Price-Fixing"**

Plaintiffs argue (at 3) that courts "uniformly" apply the *per se* rule to "horizontal price-fixing." But "easy labels do not always supply ready answers" in antitrust law. *Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*, 441 U.S. 1, 8 (1979). Before treating a horizontal arrangement as a *per se* price-fixing agreement, courts must ask whether it is a "'naked restraint of trade with ***no purpose*** except stifling of competition.'" *Id.* at 20 (emphasis added; brackets omitted).

With rules promulgated by professional or trade associations, the "plausibility" of procompetitive effects "rules out" an "abbreviated review." *Cal. Dental Ass'n v. FTC*, 526 U.S. 756, 778 (1999) (remanding challenge to association rule for rule-of-reason analysis); *accord Craftsmen Limousine, Inc. v. Ford Motor Co.*, 363 F.3d 761, 776 (8th Cir. 2004) (*per se* analysis "inappropriate" where association rules "arguably" procompetitive).

That is not because there is an antitrust "exception" for trade associations, as Plaintiffs claim (at 4-5). Rather, it is because "there is a ***presumption*** in favor of a rule-of-reason standard." *Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 726 (1988) (emphasis added); *see Cont'l*

2

*T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 49 (1977) (rule of reason is the "prevailing" standard). Courts must apply the rule of reason unless they can point to evidence that allows them to "predict with confidence" that the restraint in question "would be invalidated in ***all or almost all instances*** under the rule of reason." *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886-87 (2007) (emphasis added). The potential procompetitive effects of the rules at issue here preclude the required confident prediction.

Plaintiffs contend that rules with price effects are different. They cite (at 7-8) some modern cases they claim would not "exist" if *Socony* did not ban all such restraints. Doc. 1025 at 8. Professor Herbert Hovenkamp, author of the field's most influential treatise, disagrees. He finds that "nearly all" of the Supreme Court's early *per se* decisions are "dubious today." *The Rule of Reason*, 70 Fla. L. Rev. 81, 136 (2018). Former FTC Chair William Kovacic has likewise observed that "the Supreme Court has revisited" its *Socony*-era cases "since the mid-1970s." *The Future Adaptation of the* Per Se *Rule of Illegality in U.S. Antitrust Law*, 2021 Colum. Bus. L. Rev. 33, 47, 48 (2021); *see also* John M. Newman, *Procompetitive Justifications in Antitrust Law*, 94 Ind. L.J. 501, 502 (2019) (explaining that "courts have systematically retreated from bright-line rules condemning various categories of marketplace conduct as *per se* illegal"). Indeed, the Supreme Court has overruled many of them. *See, e.g.*, *Leegin*, 551 U.S. at 907 (overruling *Dr. Miles Medical Co. v. John D. Park & Sons Co.*, 220 U.S. 373 (1911)); *State Oil Co. v. Khan*, 522 U.S. 3, 7 (1997) (overruling *Albrecht v. Herald Co.*, 390 U.S. 145 (1968)); *Cont'l T.V.*, 433 U.S. at 58 (overruling *United States v. Arnold, Schwinn & Co.*, 388 U.S. 365 (1967)).

### B. Five Circuits Have Held That MLS Rules with Price Effects Are Not Horizontal Price-Fixing Subject to the *Per Se* Rule

Following the Supreme Court's guidance, **five circuits** have refused to apply *per se* treatment to MLS rules like the one here. The Fourth Circuit has held squarely that "the coop-

erative actions of MLS members are not *per se* unreasonable"—precisely because they have "possible procompetitive justifications." *Robertson v. Sea Pines Real Est. Cos.*, 679 F.3d 278, 290 (4th Cir. 2012). The Seventh Circuit has held that courts "must" review MLS rules "under the rule of reason to determine whether [they] contribute[ ] to competition and productivity." *Reifert v. S. Cent. Wis. MLS Corp.*, 450 F.3d 312, 321 (7th Cir. 2006). The Fifth, Ninth, and Eleventh Circuits agree. *See United States v. Realty Multi-List, Inc.*, 629 F.2d 1351, 1361-62 (5th Cir. 1980); *Supermarket of Homes, Inc. v. San Fernando Valley Bd. of Realtors*, 786 F.2d 1400, 1407 (9th Cir. 1986); *Thompson v. Metro Multi-List, Inc.*, 934 F.2d 1566, 1580 (11th Cir. 1991).

Plaintiffs say (at 6-7) those cases are different because the rules at issue were "non-price" restraints. But Section 2-G-1 does not set prices either. If it did, Plaintiffs would not need experts to show the rule "had the effect of stabilizing commission rates." Doc. 1019 at 19. Nor would Plaintiffs need to argue that Defendants set commission rates through "training," *id.*, which has nothing at all to do with the rule and which is not even alleged to be the product of concerted action. The undisputed fact is that the rule requires only an ***offer*** of compensation; it does not require that the offer be a specific amount of money or a specific percentage of the sales price.

That makes this case nothing like the ones Plaintiffs cite (at 5-6). In each of those cases, the plaintiffs challenged ***literal*** price fixing. The rule condemned in *United States v. National Association of Real Estate Boards*, 339 U.S. 485 (1950), required brokers to charge "standard rates of commission" ***set in writing*** by a local real estate board. *Id.* at 488. The plaintiffs in *Freeman v. San Diego Association of Realtors*, 322 F.3d 1133 (9th Cir. 2003), accused the defendants of "fixing support fees" in certain "service agreements" at an allegedly supracompetitive rate of $25 per month. *Id.* at 1142. And the plaintiffs in *Hyland v. HomeServices of America, Inc.*, 771 F.3d 310 (6th Cir. 2014), alleged that the defendants conspired to fix broker rates at a "standard" 6%.

*Id.* at 314. By contrast, Plaintiffs in **this** case have said they are **not** claiming a conspiracy "to follow fixed uniform pricing and charge specific commission rates." Doc. 956 at 6 n.6.

The Court's December 16 Order recognized that Section 2-G-1 "***does not*** explicitly set out acceptable commission rates." Doc. 1019 at 18 (emphasis added). The Court's *per se* determination rested instead on the conclusion that Plaintiffs had raised a genuine dispute over whether "Defendants implemented or enforced Section 2-G-1 with the ***purpose and effect*** of inflating or stabilizing broker commission rates." *Id.* at 20-21 (emphasis added). That makes this case just like those in which other courts have held the *per se* rule was not appropriate.

The rules at issue in those cases were alleged to have the same "purpose and effect" as Section 2-G-1. The plaintiffs in *Robertson* alleged that certain MLS rules "inhibited competition and illegally stabilized the prices paid by plaintiffs as customers of real estate brokerage services." 679 F.3d at 283 (internal quotation marks and brackets omitted). The plaintiffs in *Reifert* alleged that an MLS rule "prohibit[ed] competition" among brokers over "services or prices." 450 F.3d at 315. And the plaintiff in *Supermarket of Homes* alleged that the challenged MLS rules "fixe[d] commissions" by "steering" away from listing offering less than the "'going rate' commission." 786 F.2d at 1403, 1406.

Those allegations could have been lifted straight from the complaint in this case. *See* Doc. 759 ¶¶ 95, 97, 105, 114-115, 139. Yet the courts in those other cases held that the challenged rules "should be evaluated at the merits stage ***according to the rule of reason***." *Robertson*, 679 F.3d at 290 (emphasis added); *see Reifert*, 450 F.3d at 321 (rule "must" be reviewed "under the rule of reason"); *Supermarket of Homes*, 786 F.2d at 1407 (rules "judged under the rule of reason"). That is more than enough to establish reasonable grounds for difference of opinion on the question of which standard should apply to Plaintiffs' claims.

5

### C. Section 1292(b) Does Not Require Intra-Circuit Disagreement

Plaintiffs contend (at 8) that only differences of opinion within the Eighth Circuit count. Nothing in § 1292(b)'s language suggests Congress meant to impose such a limitation. Nor has the Eighth Circuit ever suggested one exists. And courts in this circuit have granted certification without in-circuit differences in far less compelling circumstances. *See, e.g.*, *Parker v. Clarke*, 910 F. Supp. 460, 462 (E.D. Mo. 1995) (finding sufficient grounds where case presented question of first impression in the Eighth Circuit (citing *White v. Nix*, 43 F.3d 374, 378 (8th Cir. 1994)); *Emerson Elec. Co. v. Yeo*, No. 4:12-cv-1578 JAR, 2013 WL 440578 (E.D. Mo. Feb. 5, 2013) (similar, citing contrary authority from Missouri state court and a single Fifth Circuit decision).

To affirm the Court's *per se* determination, the Eighth Circuit would have to split with ***five*** other circuits on an issue of first impression that has nationwide significance. Such a decision, which opens the door to Supreme Court review, is not one the Eighth Circuit takes lightly. *See, e.g.*, *McCarty v. S. Farm Bureau Cas. Ins. Co.*, 758 F.3d 969, 974 (8th Cir. 2014) ("firmly declin[ing] to create a circuit split"); *Cowden v. BNSF Ry. Co.*, 690 F.3d 884, 892 (8th Cir. 2012) (similar); S. Ct. R. 10(a) (review warranted where federal courts of appeals have issued "conflict[ing]" decisions "on the same important matter").

That makes this case different from Plaintiffs' principal authority, *McNamara v. Katten Muchin Rosenman LLP*, No. 4:16-CV-01203-SRB, 2017 WL 11493632 (W.D. Mo. Apr. 21, 2017). The issue in that case turned on Missouri state law, with no broader national significance. The Court's ruling was consistent with in-circuit decisions that were "on point and directly applicable." *Id.* at *3. The out-of-circuit cases cited by the movant were "***not*** directly applicable." *Id.* at *2 (emphasis added). And the issue was "already under consideration by the Eighth Circuit" anyway. *Id.* at *5. Plaintiffs here can point to ***no*** in-circuit cases even arguably on point, while

6

the out-of-circuit cases are not meaningfully distinguishable. The court of appeals should have the opportunity to address the issue now.

## II. Which Antitrust Standard Governs Is a "Controlling Question" of Law

Plaintiffs claim that the question of which antitrust standard governs is not "reviewable" under § 1292(b) because it is not a "purely abstract question of law." Doc. 1025 at 9. That is just wrong.

The Eighth Circuit has recognized that "'the selection of a mode of [antitrust] analysis is ***entirely a question of law***'" even where the court's determination "'might involve many fact questions.'" *Craftsmen Limousine*, 363 F.3d at 772 (brackets omitted; emphasis added). The Supreme Court has ***twice*** decided the issue on review from appeals arising under § 1292(b). *See Arizona v. Maricopa Cnty. Med. Soc'y*, 457 U.S. 332, 336-39 (1982); *Catalano, Inc. v. Target Sales, Inc.*, 446 U.S. 643, 643-44 (1980). Other courts—including the Fourth Circuit in *Robertson*—have done the same. *See, e.g.*, 679 F.3d at 283; *In re Cardizem CD Antitrust Litig.*, 332 F.3d 896, 905 (6th Cir. 2003) (summary judgment ruling that *per se* rule applied); *Valley Drug Co. v. Geneva Pharms., Inc.*, 344 F.3d 1294, 1301 (11th Cir. 2003) (same).

## III. Immediate Appeal Would "Materially Advance the Ultimate Termination of the Litigation," Not Slow It Down

Plaintiffs are eager for their day in Court. So are Defendants. But Defendants are mindful of the value of this Court's time and resources. Plaintiffs do not dispute that there will have to be a second trial if Plaintiffs win and the Eighth Circuit later holds the *per se* rule does not apply. Plaintiffs claim (at 10) that is irrelevant. The weight of authority says otherwise. *See, e.g.*, *In re Gen. Motors LLC Ignition Switch Litig.*, 427 F. Supp. 3d 374, 393 (S.D.N.Y. 2019) (certification warranted because "reversal after trial might well require a new trial"); *Nat'l Veterans Legal Servs. Program v. United States*, 321 F. Supp. 3d 150, 155 (D.D.C. 2018) (similar); *Eagan v. CSX*

*Transp., Inc.*, 294 F. Supp. 2d 911, 916 (E.D. Mich. 2003) (similar, avoiding need for second trial); *Tenn. Gas Pipeline Co. v. Permanent Easement for 7.053 Acres*, No. 3:12-cv-01477, 2017 WL 4954093, at *2 (M.D. Pa. Nov. 1, 2017); *In re Vitamins Antitrust Litig.*, No. 99-197 (TFH), 1285, 2000 WL 33142129, at *2 (D.D.C. Nov. 22, 2000); *cf.* 16 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 3930 (3d ed. 2012) ("no doubt that a question is 'controlling' if its incorrect disposition would require reversal of a final judgment"). And this Court has already recognized that trying this case twice would be a massive waste of time and resources. Doc. 1016.

Plaintiffs speculate that taking an appeal would "likely" push the trial to 2025. They do not mention the amount of time that it would take to try this case, appeal it, and then try the case *again*—a process that would likely drag at least through 2026. Plaintiffs claim they would "suffer new damage" during the pendency of an appeal. Doc. 1025 at 10. But Plaintiffs will be compensated for whatever damages, if any, they can prove. Finally, Plaintiffs accuse Defendants of suggesting they will not participate in court-ordered mediation in good faith if an appeal is granted. That is preposterous. Defendants complied with the Court's order by participating in a mediation session on January 9, and they continue their discussions with Plaintiffs in good faith. Getting the certainty of an Eighth Circuit ruling now could only make those complex and ongoing negotiations more productive.

## CONCLUSION

Defendants respectfully request that the Court amend the December 12 Order to state that (1) whether Section 2-G-1 should be assessed as a *per se* restraint is a controlling question of law as to which (2) there is substantial ground for difference of opinion, and that (3) an immediate appeal from the Order may materially advance the ultimate termination of the litigation.

Dated: January 27, 2022

Respectfully submitted,

/s/ Steven F. Molo

Karrie Clinkinbeard
 kclinkinbeard@atllp.com
Megan J. Ochs
 mochs@atllp.com
ARMSTRONG TEASDALE LLP-KCMO
2345 Grand Boulevard, Suite 1500
Kansas City, MO 64108
(816) 221-3240

Stacey Anne Mahoney, *pro hac vice*
 stacey.mahoney@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
(212) 309-6000

Kenneth Michael Kliebard, *pro hac vice*
 kenneth.kliebard@morganlewis.com
MORGAN LEWIS & BOCKIUS LLP
110 N. Wacker Drive, Suite 2800
Chicago, IL 60606-1511
(312) 324-1000

William T. McEnroe, *pro hac vice*
 william.mcenroe@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
(215) 963-5000

Steven F. Molo, *pro hac vice*
 smolo@mololamken.com
Eugene A. Sokoloff, *pro hac vice*
 esokoloff@mololamken.com
Pamela I. Yaacoub, *pro hac vice*
 pyaacoub@mololamken.com
Matthew J. Fisher, *pro hac vice*
 mfisher@mololamken.com
MOLOLAMKEN LLP
300 N. LaSalle St., Suite 5350
Chicago, IL 60654
(312) 450-6700

Lauren M. Weinstein, *pro hac vice*
 lweinstein@mololamken.com
Robert Y. Chen, *pro hac vice*
 rchen@mololamken.com
MOLOLAMKEN LLP
600 New Hampshire Ave., N.W., Suite 500
Washington, D.C. 20037
(202) 556-2000

Justin M. Ellis, *pro hac vice*
 jellis@mololamken.com
MOLOLAMKEN LLP
430 Park Avenue, Floor 6
New York, NY 10022
(212) 607-8160

*Counsel for Realogy Holdings Corp. (n/k/a Anywhere Real Estate, Inc.)*

/s/ Jeffrey A. LeVee
Jeffrey A. LeVee, *pro hac vice*
 jlevee@jonesday.com
Eric P. Enson, *pro hac vice*
 epenson@jonesday.com
Kelly M. Watne, *pro hac vice*
 kwatne@jonesday.com
JONES DAY
555 S. Flower Street, 50th Floor
Los Angeles, CA 90071
(213) 243-2572

Odeshoo Hasdoo, *pro hac vice*
 ehasdoo@jonesday.com
JONES DAY
110 N. Wacker, Ste. 4900
Chicago, IL 60605
(312) 782-3939

Danne W. Webb
 dwebb@hab-law.com
Andrea S. McMurtry
 amcmurtry@hab-law.com
HORN AYLWARD & BANDY, LLC
2600 Grand Blvd., Ste. 1100
Kansas City, MO 64108
(816) 421-0700

*Counsel for RE/MAX, LLC*

/s/ Timothy Ray
Timothy Ray, *pro hac vice*
 Timothy.Ray@hklaw.com
HOLLAND & KNIGHT LLP
150 N. Riverside Plaza, Ste. 2700
Chicago, IL 60603
(312) 263-3600

David C. Kully, *pro hac vice*
 david.kully@hklaw.com
Anna P. Hayes, *pro hac vice*
 anna.hayes@hklaw.com
HOLLAND & KNIGHT LLP
800 17th Street NW, Ste. 1100
Washington, DC 20530
(202) 469-5415

Jennifer Lada, *pro hac vice*
 jennifer.lada@hklaw.com
HOLLAND & KNIGHT LLP
31 West 52nd Street, 12th Floor
New York, NY 10019
(212) 513-3513

Dina W. McKenney, *pro hac vice*
 dina.mckenney@hklaw.com
HOLLAND & KNIGHT LLP
1722 Routh Street, Ste. 1500
Dallas, TX 75201
(214) 969-1757

David R. Buchanan
 dbuchanan@bjpc.com
BROWN & JAMES, PC-KCMO
2345 Grand Boulevard, Ste. 2100
Kansas City, MO 64108
(816) 472-0800

*Counsel for Keller Williams Realty, Inc.*

/s/ Robert D. MacGill
Robert D. MacGill, *pro hac vice*
 robert.macgill@macgilllaw.com
Scott E. Murray, *pro hac vice*
 scott.murray@macgilllaw.com
Matthew T. Ciulla, *pro hac vice*
 matthew.ciulla@macgilllaw.com
MACGILL PC
156 E. Market St., Ste. 1200
Indianapolis, IN 46204

Jay N. Varon, pro hac vice
 jvaron@foley.com
Jennifer M. Keas, pro hac vice
 jkeas@foley.com
FOLEY & LARDNER LLP
3000 K Street NW, Ste. 600
Washington DC 20007

Brian C. Fries
 brian.fries@lahropgpm.com
LATHROP GPM LLP
2345 Grand Ave., Ste. 2200
Kansas City, MO 64108

*Counsel for HomeServices of America, Inc., BHH Affiliates, LLC, and HSF Affiliates, LLC*

/s/ Ethan Glass
Ethan Glass, *pro hac vice*
 eglass@cooley.com
Deepti Bansal, *pro hac vice*
 dbansal@cooley.com
Samantha Strauss, *pro hac vice*
 sastrauss@cooley.com
COOLEY LLP
1299 Pennsylvania Avenue, NW
Ste. 700
Washington, DC 20004-2400
(202) 776-2244

Beatriz Mejia, *pro hac vice*
 mejiab@cooley.com
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
(415) 693-2000

Anne Bigler, *pro hac vice*
 abigler@cooley.com
COOLEY LLP
55 Hudson Yards
New York, NY 10001
(212) 479-6000

Elizabeth Wright, *pro hac vice*
 ewright@cooley.com
COOLEY LLP
500 Boylston Street
Boston, MA 02116
(617) 937-2300

Jack R. Bierig, *pro hac vice*
 jack.bierig@afslaw.com
ARENTFOX SCHIFF LLP
233 S. Wacker Drive, Suite 7100
Chicago, IL 60606
(312) 258-5500

Charles W. Hatfield
 chuck.hatfield@stinson.com
Alexander C. Barrett
 alexander.barrett@stinson.com
STINSON LLP

230 W. McCarty Street
Jefferson City, MO 65101
Phone (573) 636-6263
Fax (573) 636-6231

*Counsel for NATIONAL ASSOCIATION OF REALTORS®*