# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 22-2664

———————————————

Scott Burnett; Ryan Hendrickson; Jerod Breit; Scott Trupiano; Jeremy Keel; Frances Harvey; Hollee Ellis

*Plaintiffs - Appellees*

Shelly Dreyer

*Plaintiff*

Rhonda Burnett

*Plaintiff - Appellee*

v.

National Association of Realtors

*Defendant*

HomeServices of America

*Defendant - Appellant*

Keller Williams Realty, Inc.; Realogy Holdings Corp.

*Defendants*

BHH Affiliates, LLC; HSF Affiliates, LLC

*Defendants - Appellants*

RE/MAX LLC

*Defendant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: April 12, 2023
Filed: August 2, 2023

_____

Before SMITH, Chief Judge, MELLOY and ERICKSON, Circuit Judges.

_____

SMITH, Chief Judge.

HomeServices of America, Inc.; BHH Affiliates, LLC; and HSF Affiliates, LLC (collectively, "HomeServices") appeal from the district court's[1] denial of HomeServices's motion to compel unnamed class members to arbitrate their claims against it. We affirm.

I. *Background*

Rhonda Burnett, Scott Burnett, Ryan Hendrickson, Jerod Breit, Scott Trupiano, and Jeremy Keel (collectively, "plaintiffs") filed a putative class action, alleging that HomeServices; RE/MAX, LLC; National Association of Realtors (NAR); Realogy Holdings Corp.; and Keller Williams Realty, Inc. enforce anticompetitive rules that result in damages. Specifically, the plaintiffs alleged that the rules require home sellers to compensate the home buyer's broker. NAR is a national trade association

---

[1]The Honorable Stephen R. Bough, United States District Judge for the Western District of Missouri.

-2-

of real estate brokers and agents. HomeServices, Realogy Holdings Corp., and Keller Williams Realty, Inc. are national real estate broker franchisors that operate brokerage subsidiaries, franchisees, or affiliates within the geographic regions covered by several regional real estate Multiple Listing Services (MLSs). The plaintiffs alleged that NAR created and implemented the anticompetitive rules and that the other defendants enforce those rules through anticompetitive practices.

Two non-party real estate brokerage companies used by certain class members to sell their homes—Reece & Nichols Realtors, Inc. (ReeceNichols) and BHH KC Real Estate, LLC d/b/a Berkshire Hathaway HomeServices Kansas City Realty (BHH KC)—are wholly owned subsidiaries of non-party HomeServices of MOKAN, LLC. In turn, HomeServices of MOKAN, LLC is a wholly owned subsidiary of HomeServices. Since at least 2014, ReeceNichols and BHH KC agents executed form listing agreements (Listing Agreement(s)) with home sellers. Each version of the Listing Agreement defines the parties as "SELLER(S)" and "BROKER." *See, e.g.*, R. Doc. 758-1, at 4, 12. In each instance, the broker is ReeceNichols or BHH KC—non-parties to this lawsuit—not HomeServices. These Listing Agreements include versions of arbitration agreements (Arbitration Agreement(s)) between certain class members and non-parties ReeceNichols or BHH KC as the broker. The 2014–2017 Listing Agreements provided:

> ARBITRATION AGREEMENT. Any controversy or claim *between the parties to this Contract*, its interpretation, enforcement or breach (which includes tort claims arising from fraud and fraud in the inducement), will be settled by binding arbitration pursuant to[,] administered by[,] and under the rules of the American Arbitration Association (AAA), or such other neutral arbitrator agreed to *by the parties*. This agreement to arbitrate will [be] construed and interpreted under the Federal Arbitration Act, 9 U.S.C. Section 1, et. seq. While *either party* will have all the rights and benefits of arbitration, *both parties are giving up the right to litigate such claims and disputes in a court or jury trial*. The results, determinations, findings, judgments and/or awards rendered

-3-

through such arbitration will be final and *binding on the parties hereto* and may be specifically enforced by legal proceedings. Judgment on the award may be entered into any court having jurisdiction.

*Neither party will be entitled to join or consolidate disputes by or against others in any arbitration*, or to include in any arbitration any dispute as a representative or member of a class, or to act in any arbitration in the interest of the general public or in any private attorney general capacity.

R. Doc. 218-2, at 11 (fourth emphasis in original) (bold omitted); *see also, e.g.*, R. Doc. 218-2, at 18, 25, 33, 39, 47, 54, 61, 69, 82–83; R. Doc. 218-3, at 11, 18, 26, 33, 40, 47–48, 55–56.

Similarly, the 2018 Listing Agreements contained the following Arbitration Agreement:

10. Arbitration Agreement:

Any dispute or claim *between the parties to this Agreement*, its interpretation, enforcement or breach (which includes tort claims arising from fraud and fraud in the inducement), will be settled by binding arbitration pursuant to the rules of the American Arbitration Association (AAA) and by a neutral arbitrator agreed to *by the parties*. This agreement to arbitrate will be construed and interpreted under the Federal Arbitration Act, 9 U.S.C. Section 1, et. seq and supersedes any other agreement between the parties. While *each party* will have all the rights and benefits of arbitration, *both parties are giving up the right to litigate such claims and disputes in a court*. The results, determinations, findings, judgments and/or awards rendered through such arbitration will be final and *binding on the parties hereto* and may be specifically enforced by legal proceedings. Judgment on the award may be entered into any court having jurisdiction. *Neither party will be entitled to join or consolidate disputes by or against others in any arbitration.*

-4-

Case 4:19-cv-00332-SRB   Document 1049-1   Filed 08/02/23   Page 4 of 14
Appellate Case: 22-2664   Page: 4   Date Filed: 08/02/2023 Entry ID: 5302012

> Additional information and resources regarding the use of arbitration may be found at www.adr.org.
>
> 11. Jury Trial and Class Action Waiver:
>
> *Neither party* may, in any court proceeding or dispute resolution process, bring any dispute as a representative or member of a class, or to act in the interest of the general public or in any private attorney general capacity.

R. Doc. 218-2, at 92 (fourth emphasis in original) (bold omitted); *see also, e.g.*, R. Doc. 218-3, at 63–64.

Finally, the 2019–2022 Listing Agreements likewise provided:

> 10. Arbitration Agreement:
>
> Any dispute or claim *between the parties to this Agreement*, its interpretation, enforcement or breach (which includes tort claims arising from fraud and fraud in the inducement), will be settled by binding arbitration. *The parties* will mutually agree and select any qualified intermediary that is a certified Alternative Dispute Resolution specialist. If *the parties* cannot agree upon a qualified intermediary to serve as arbitrator, *either party* may initiate litigation in the appropriate state court for the sole purpose of requesting that the court select a qualified intermediary to serve as arbitrator. This agreement to arbitrate will be construed and interpreted under the Federal Arbitration Act, 9 U.S.C. Section 1, et. seq and supersedes any other agreement *between the parties*. While *each party* will have all the rights and benefits of arbitration, *both parties are giving up the right to litigate such claims and disputes in a court*. The results, determinations, findings, judgments and/or awards rendered through such arbitration will be final and binding on the parties hereto and may be specifically enforced by legal proceedings. Judgment on the award may be entered into any court having jurisdiction. *Neither party will be entitled to join or consolidate*

-5-

Case 4:19-cv-00332-SRB   Document 1049-1   Filed 08/02/23   Page 5 of 14
Appellate Case: 22-2664   Page: 5   Date Filed: 08/02/2023 Entry ID: 5302012

*disputes by or against others in any arbitration*. Additional information and resources regarding the use of arbitration may be found at www.adr.org.

11. Jury Trial and Class Action Waiver:

*Neither party* may, in any court proceeding or dispute resolution process, bring any dispute as a representative or member of a class, or to act in the interest of the general public or in any private attorney general capacity. All parties waive all rights to a jury trial. For disputes and claims that do not exceed the lesser of: a) $5,000.00 (five thousand dollars); or b) the applicable jurisdictional limit of small claims court, either party may bring such claims in small claims court in lieu of arbitration.

R. Doc. 218-2, at 116 (seventh emphasis in original); *see also, e.g.*, R. Doc. 218-3, at 94; R. Doc. 758-1, at 10, 18, 26, 34; R. Doc. 758-2, at 10–11, 19–20, 28–29, 37–38.

Just above the signature line for "BROKER"—non-parties ReeceNichols or BHH KC—and "SELLER" appears the following in all of the Listing Agreements:

CAREFULLY READ ALL TERMS AND PROVISION[S] *ON ALL PAGES OF THIS AGREEMENT AND ATTACHMENTS BEFORE SIGNING*. WHEN SIGNED, THIS IS A LEGALLY BINDING CONTRACT. IF NOT UNDERSTOOD, CONSULT AN ATTORNEY BEFORE SIGNING. THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES.

R. Doc. 218-2, at 12 (bold omitted); *see also, e.g.*, R. Doc. 218-2, at 19, 26, 33, 40, 47, 54, 62, 70, 85, 93, 101, 109, 117; R. Doc. 218-3, at 12, 19, 26, 33, 41, 49, 57, 65, 71, 79, 87, 95; R. Doc. 758-1, at 11, 19, 27, 35, 43, 51, 59, 67, 75, 83, 92, 101, 110; R. Doc. 758-2, at 12, 21, 30, 39.

-6-

Case 4:19-cv-00332-SRB   Document 1049-1   Filed 08/02/23   Page 6 of 14
Appellate Case: 22-2664   Page: 6   Date Filed: 08/02/2023 Entry ID: 5302012

HomeServices moved to compel arbitration of the plaintiffs' claims "305 days after [the plaintiffs] filed the lawsuit." *Sitzer v. Nat'l Ass'n of Realtors*, 12 F.4th 853, 855 (8th Cir. 2021). In support of its motion to compel, HomeServices conceded that "neither the named plaintiffs nor any purported class member has any contract or direct relationship with HomeServices relevant to the claims asserted in this case." R. Doc. 218, at 7. "The district court denied the motion, mainly because HomeServices was not itself a party to the [plaintiffs'] [L]isting [A]greement. In a footnote, the court also questioned whether HomeServices had waived its right to arbitrate by 'litigating this case . . . for almost one year.'" *Sitzer*, 12 F.4th at 855 (fourth alteration in original).

HomeServices appealed the denial of its motion to this court, and we affirmed. *Id.* at 857. As a threshold matter, we held that courts—not arbitrators—determine whether a party has waived its right to arbitration through default. *Id.* at 855–56. Thereafter, we held that "HomeServices . . . waive[d] its right to arbitrate by actively litigating this case in federal court for close to a year." *Id.* at 856.

Subsequently, the district court granted the plaintiffs' motion for class certification, certifying classes of home sellers who listed their homes for sale on one of the MLSs through an agent affiliated with one of the defendants.[2]

HomeServices then filed a second motion to compel arbitration as to the *unnamed class members* who signed a Listing Agreement to arbitrate their claims. The district court denied the motion to compel arbitration. First, it determined that HomeServices had waived any purported arbitration rights. Specifically, it reasoned that "[e]ven if the Eighth Circuit's prior decision is not dispositive of this issue,

---

[2]This court denied the defendants' petition for permission to appeal the class certification order. *See Burnett v. Nat'l Ass'n of Realtors*, Eighth Circuit Case No. 22-8009.

-7-

Case 4:19-cv-00332-SRB   Document 1049-1   Filed 08/02/23   Page 7 of 14
Appellate Case: 22-2664   Page: 7   Date Filed: 08/02/2023 Entry ID: 5302012

HomeServices had ample opportunity to raise its intention of asserting its arbitration rights against unnamed class members prior to the [c]ourt's class certification order." *Burnett v. Nat'l Ass'n of Realtors*, 615 F. Supp. 3d 948, 957 (W.D. Mo. 2022).

Second, it determined that even if "HomeServices did not waive its right to compel arbitration, . . . HomeServices cannot enforce the Arbitration Agreements." *Id.* The district court began its analysis with the understanding that "the [c]ourt—not an arbitrator—must address whether HomeServices can enforce the Arbitration Agreements." *Id.* at 959. It then determined that HomeServices could not enforce the Arbitration Agreements. The court found "that, by the clear language of the Arbitration Agreements, the only disputes or claims that the unnamed class members agreed to arbitrate are disputes 'between the parties.'" *Id.* at 960 (quoting R. Doc. 218-2, at 100). It noted that "every agreement contains the following provision: 'Neither party will be entitled to join or consolidate disputes by or against others in any arbitration.'" *Id.* (quoting R. Doc. 218-2, at 100).

The court also found that "HomeServices does not have a sufficiently close relationship with ReeceNichols or BHH KC to enforce the Arbitration Agreements. Further, because the Arbitration Agreements narrowly cover disputes between the parties, failure to allow HomeServices to compel arbitration will not eviscerate the underlying agreements." *Id.* And it found that "the Arbitration Agreements themselves prevent nonsignatories from being treated jointly for arbitration purposes." *Id.* Thus, "[e]ven if [p]laintiffs had joined ReeceNichols and BHH KC to this lawsuit and asserted claims against them, the Arbitration Agreements do not allow ReeceNichols, BHH KC, or [p]laintiffs to 'join or consolidate disputes . . . against' HomeServices 'in any arbitration.'" *Id.* (alteration in original) (quoting R. Doc. 218-2, at 92). And the court pointed out that "ReeceNichols and BHH KC are not being treated jointly for all purposes except for arbitration because they are not parties to this lawsuit." *Id.* at 960–61.

-8-

Case 4:19-cv-00332-SRB   Document 1049-1   Filed 08/02/23   Page 8 of 14
Appellate Case: 22-2664   Page: 8   Date Filed: 08/02/2023 Entry ID: 5302012

The court also rejected the argument that the plaintiffs' claims are so intertwined with the Listing Agreements that HomeServices may enforce the Arbitration Agreements. According to the court, "HomeServices is not a party to the Listing Agreements and therefore cannot enforce the narrow, party-specific Arbitration Agreements." *Id.* at 961.

## II. *Discussion*

On appeal, HomeServices argues that the district court erred in denying its motion to compel arbitration of the unnamed class members because (1) it "filed its motion to compel nine business days after the class was certified," Appellant's Br. at 15, and therefore did not waive its right to arbitration against the unnamed class members; (2) "all gateway questions of arbitrability should be decided by the arbitrator," *id.* at 17; and (3) even if the district court decides the gateway question of arbitrability, HomeServices may enforce the Arbitration Agreements.

We review de novo the district court's "denial of a motion to compel arbitration" and "interpretation of a contract." *Triplet v. Menard, Inc.*, 42 F.4th 868, 870 (8th Cir. 2022). We review the district court's "factual findings for clear error." *Id.* Applying this review standard, we hold that "[e]ven assuming HomeServices did not waive its right to compel arbitration, . . . HomeServices cannot enforce the Arbitration Agreements." *Burnett*, 615 F. Supp. 3d at 957.

"Arbitration agreements are favored by federal law and will be enforced as long as a valid agreement exists and the dispute falls within the scope of that agreement." *Shockley v. PrimeLending*, 929 F.3d 1012, 1017 (8th Cir. 2019) (internal quotation marks omitted). Notwithstanding arbitration's "favored status," it "is a matter of contract law" and "parties cannot be compelled to arbitrate unless they have contractually agreed to be bound by arbitration." *Id.* As a result, the court must "determine whether the parties formed a valid contract that binds them to arbitrate their dispute. As the party seeking to compel arbitration, [HomeServices] carries the

-9-

burden to prove a valid and enforceable agreement." *Id.* "At the most fundamental level, assent is required for a contract or an agreement to exist." *Theroff v. Dollar Tree Stores, Inc.*, 591 S.W.3d 432, 437 (Mo. 2020) (en banc).[3]

A. *Delegation of Threshold Issues of Arbitrability*

HomeServices argues that an arbitrator instead of the court must decide the gateway issue of whether unnamed class members must arbitrate their claims. "First," it argues that "[t]he 'incorporation of the AAA Rules into a contract requiring arbitration' is 'a clear and unmistakable indication the parties intended for the arbitrator to decide threshold questions of arbitrability.'" Appellant's Br. at 16 (quoting *Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014)). Second, it argues that the Missouri Supreme Court has held that the following language—"'[a]ny controversy or claim' or '[a]ny dispute or claim' between the parties, including claims related to the agreement's 'interpretation, enforcement or breach' will be settled by binding arbitration"—"constitutes a 'delegation clause' that is 'clear in evincing a manifest intention to delegate threshold questions of arbitrability to a neutral arbitrator.'" *Id.* at 16–17 (alterations in original) (quoting *Soars v. Easter Seals Midwest*, 563 S.W.3d 111, 113–14 (Mo. 2018) (en banc)).

Missouri law unquestionably permits contracting "parties" to make arbitration agreements that commit issues such as arbitrability to their chosen arbitrator. *Theroff*, 591 S.W.3d at 439. The parties' inclusion of "a 'delegation provision' in the arbitration agreement" constitutes a "[c]ontractual arrangement[] to arbitrate gateway questions of arbitrability." *Id.* (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)). "A delegation provision is an additional, severable agreement to

---

[3]Neither party disputes that "Missouri law governs this case." *Shockley*, 929 F.3d at 1017 (citing *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 774 (Mo. 2014) (en banc)).

-10-

arbitrate threshold issues that is valid and enforceable unless a specific challenge is levied against the delegation provision." *Id.* (cleaned up). "We have previously held the incorporation of the AAA Rules into a contract requiring arbitration to be a clear and unmistakable indication the *parties* intended for the arbitrator to decide threshold questions of arbitrability." *Eckert*, 756 F.3d at 1100 (emphasis added) (citing *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769 (8th Cir. 2011)).

"When evaluating the intention of parties to delegate threshold arbitrability issues to the arbitrator, courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Theroff*, 591 S.W.3d at 439 (cleaned up); *see also Eckert*, 756 F.3d at 1100. "One can[not] be forced into arbitration by a contract to which one is a stranger . . . ." *Theroff*, 591 S.W.3d at 439. "[W]hile a court's authority under the Arbitration Act to compel arbitration may be considerable, it isn't unconditional." *Id.* at 439–40 (quoting *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 537 (2019)).

"Whether a particular arbitration provision may be used to compel arbitration between a signatory and a *nonsignatory* is a threshold question of arbitrability." *Eckert*, 756 F.3d at 1100 (emphasis added). "[S]tate contract law governs the ability of nonsignatories to enforce arbitration provisions." *Torres v. Simpatico, Inc.*, 781 F.3d 963, 971 (8th Cir. 2015) (alteration in original) (quoting *Donaldson Co. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 732 (8th Cir. 2009)). Crucial to this case, Missouri law provides that "[o]nly *parties* to a contract and any *third-party beneficiaries* of a contract have standing to enforce that contract. To be bound as a third-party beneficiary, the terms of the contract must clearly express intent to benefit that party or an identifiable class of which the party is a member." *Id.* (emphases added) (quoting *Verni v. Cleveland Chiropractic Coll.*, 212 S.W.3d 150, 153 (Mo. 2007) (en banc)). A "strong presumption" exists "[i]n cases where the contract lacks an express declaration of that intent" "that the third party is not a beneficiary and that the parties contracted to benefit only themselves." *Id.* (quoting *Verni*, 212 S.W.3d at

-11-

153). "Furthermore, a mere incidental benefit to the third party is insufficient to bind that party." *Id.* (quoting *Verni*, 212 S.W.3d at 153).

Here, HomeServices conceded before the district court that "neither the named plaintiffs nor any purported class member has any contract or direct relationship with HomeServices relevant to the claims asserted in this case." R. Doc. 218, at 7. Moreover, the Listing Agreements and their included Arbitration Agreements do not name HomeServices as a party *or* third-party beneficiary. In fact, HomeServices is not mentioned anywhere in the Listing Agreements or Arbitration Agreements. As the district court correctly observed, "the parties to these agreements are narrowly defined as either ReeceNichols or BHH KC and the unnamed class member(s) who signed the Listing Agreement." *Burnett*, 615 F. Supp. 3d at 958. Furthermore, these parties expressly stated in the Arbitration Agreements that arbitration should be administered pursuant to the AAA Rules only when the dispute or claim is "between the parties." R. Doc. 218-2, at 92.[4] As the district court concluded, this "narrow, party-specific language . . . does not clearly and unmistakably delegate to an arbitrator threshold issues of arbitrability between nonparties, including HomeServices." *Burnett*, 615 F. Supp. 3d at 958; *see also Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1127 (9th Cir. 2013) (holding that even though the arbitration agreement contained a delegation

---

[4]And, as the district court correctly noted,

> the 2014–2017 Arbitration Agreements do not clearly and unmistakably incorporate the AAA Rules. Those agreements state that arbitration will be settled by binding arbitration pursuant to and administered by the rules of the AAA, "or such neutral arbitrator *agreed to by the parties*." *See, e.g.*, Doc. #218-2, p. 11. In other words, the parties may agree to binding arbitration pursuant to and administered by something other than the AAA.

*Burnett*, 615 F. Supp. 3d at 959 n.8 (emphasis added).

-12-

clause, the contract's limitation to "either you or we" meant there was not "clear and unmistakable evidence that Plaintiffs agreed to arbitrate arbitrability with nonsignatories").[5]

Based on the foregoing, we hold that the district court correctly concluded that "the [c]ourt—not an arbitrator—must address whether HomeServices can enforce the Arbitration Agreements." *Burnett*, 615 F. Supp. 3d at 959.

### B. *Enforcement of the Arbitration Agreements*

Having determined the gateway issue of arbitrability, we must now address whether the district court correctly determined that HomeServices cannot enforce the Arbitration Agreements against the unnamed class members. We conclude that it did.

HomeServices is neither a party nor a third-party beneficiary of the Listing Agreements or the Arbitration Agreements. *See supra* Part II.A. Thus, the Arbitration Agreements are inapplicable to any dispute between the unnamed class members and HomeServices. Our conclusion is buttressed by the Arbitration Agreements' express statement that "[n]either party"—the sellers and non-parties ReeceNichols or BHH KC—"will be entitled to join or consolidate disputes by or against others in any

---

[5]This is not a case in which a delegation provision "broadly encompassed 'any claim, dispute, or other matter in question arising out of or related to the contract' regardless of whether the dispute was between the parties to the contract." *Burnett*, 615 F. Supp. 3d at 958–59 (quoting *Eckert*, 756 F.3d at 1099); *see also Fallo v. High-Tech Inst.*, 559 F.3d 874, 876, 878 (8th Cir. 2009) (holding that arbitration provision stating that "[a]ny controversy or claim arising out of or relating to this Agreement . . . shall be settled by arbitration in accordance with the Commercial Rules of the American Arbitration Association" "constitute[d] a clear and unmistakable expression of the parties' intent to leave the question of arbitrability to an arbitrator"). Instead, the Arbitration Agreements expressly stated that the dispute, claim, or controversy must be "between the parties" to the agreement. *Burnett*, 615 F. Supp. 3d at 959 (quoting R. Doc. 758-1, at 10).

arbitration." *Burnett*, 615 F. Supp. 3d at 960 (quoting R. Doc. 218-2, at 100). This clause "demonstrat[es] the narrow, party-specific scope of the Arbitration Agreements." *Id.* We further note that the class members' claims do not allege that non-signatory HomeServices breached duties to them "purportedly assigned it by the agreement." *Abdiana Props., Inc. v. Bengston*, 575 S.W.3d 754, 762 (Mo. Ct. App. 2019) (quoting *Netco, Inc. v. Dunn*, 194 S.W.3d 353, 361 (Mo. 2006) (en banc)). We, therefore, hold that the district court did not err in denying HomeServices's motion to compel the unnamed class members to arbitrate their claims against it.[6]

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____

---

[6]Despite its concession that it was not a party to the Arbitration Agreements, HomeServices nonetheless argues that it may compel the unnamed class members to arbitrate because (1) "the relationship between [HomeServices] and [ReeceNichols and BHH KC] is so close, that failing to [compel arbitration] would eviscerate the arbitration agreement," Appellant's Br. at 42 (internal quotation marks omitted); (2) the plaintiffs treated HomeServices, ReeceNichols, and BHH KC as a "single unit" and therefore cannot "avoid arbitration," *id.* at 36 (internal quotation marks omitted); and (3) the plaintiffs' claims are so closely intertwined with the Listing Agreements that HomeServices may enforce the Arbitration Agreements in the Listing Agreements. We reject HomeServices's various estoppel arguments for the same reasons set forth by the district court. *See Burnett*, 615 F. Supp. 3d at 960–61.

-14-