# EXHIBIT A

# Proposal to the Professional Standards Committee of the National Association of REALTORS®

**The following is presented to your distinguished body for consideration:**

**That the National Association of REALTORS® modifies the COE as follows:**

1. #1: Modify the NAR COE to reflect its evolved reality by replacing "listing agent" (75 entries) with either "Seller's Representative", or "Buyer's Representative" as contextually appropriate.
2. Add a definition of "listing" to Article 1, SOP 2, as follows: "an agreement (whether oral or written) between a principal (Seller OR Buyer) and a Broker/Agency to perform some duties (whether fiduciary or not) with regard to the sale, or purchase, of real property".

Rationale:

For one hundred years we, as REALTORS® have believed we had a strong understanding of both the fundamental laws and the implementation of agency, and for at least seventy-six[1] of those years I think we got it right. Over the last quarter century, however, I believe we've been trying to fit a square peg into a round hole. We've unconsciously created a systemic challenge that faces each of us as practitioners every day in the field, and it's time we take a look at how very much the fundamentals of implementation have changed. The time has come to realign ourselves with the evolved reality of agency.

In 1913, when the NAR Code of Ethics was introduced, the concept was based on raising the bar of professionalism in the real estate industry. There were few laws, if any, governing how we practiced, and the Code was meant to provide a platform and basis, both aspirationally and practically, from which to develop a product/service that promoted and protected the interests of those we represented, those with whom we cooperated, and, eventually, the general public. Still viable and rich in concept and content today at its centennial, we who strive to uphold it every day need to recognize that it is now part of the problem we face each day.

Those are strong and adversarial words from one who has embraced the COE for nearly thirty years of practice. They are, however, meant to provide each of us with a series of serious reflective questions that I believe need to start at the NAR Professional Standards level.

In 2008 I had the honor and privilege of being named to the NAR Pro Standards Committee. It was my one chance to make a difference, and a chance I had long awaited. Recovering from cancer, I was unable to make either meeting, and I lost my chance to be a part of what I see as the most important fundamental change in agency theory in a century. Now as we face the impending centennial of the COE I feel compelled to write this paper in hopes that it provides a framework for future dialogue.

1

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER     NARSITZER0000057906

EXHIBIT 601

EXHIBIT 602

Below is a list of fundamental questions upon which we need to reflect in order to reach the "Aha" moment that will set the stage for redefinition and realignment of the NAR COE:

- What is a listing?
- How are fees set?
- Have the laws of agency changed?

For a century we have defined a "listing" as a product…a house for sale. Whenever, and wherever, I teach I get the same answer to the question "What is a listing?" In every class the students agree that "a listing is an agreement between a Seller and the listing Broker/Agency to sell a house".

My contention is that post-1990 disclosure laws, and with the advent of Buyer Agency, a listing has become redefined as "an agreement (whether oral or written) between a principal (Seller OR Buyer) and a Broker/Agency to perform some duties (whether fiduciary or not) with regard to the sale, or purchase, of real property".

Every reference in the COE defines a listing in the "traditional" way. There are seventy-five such references in the COE to listings and/or listing agents. In each of those references the assumption is that the listing agent is synonymous with the REALTOR® who represents the Seller(s). For decades we've been taught that "he who owns the listing owns the market". Therefore, the "listing" has always referred to being "the house" and referring to the specific Seller/Broker relationship.

By clarifying and redefining our agency relationships nationwide over the past two plus decades, we have (sometimes painfully) come to the realization that the *house* is ancillary to the contract between the prospective clients. The house is, indeed, at the center of the transaction and around which all negotiations take place. In and of itself, it is not "the listing". The two "listings" at either end of that transaction have, or should have, become, separate, and perhaps equal entities. In other words, in most states across the country there are two "listing relationships" that actually take place, one with the Seller(s) to perform a certain set of defined duties, and one with the represented Buyer(s) for the purpose of performing, at times, mirror fiduciary duties. The "disconnect" occurs at the convergence between tradition and reality.

Moving to the second question of "how fees are set" is an interesting one, and one that amplifies the disconnect that arises out of the first question.

The Sherman Antitrust Law is very clear about price fixing. We all understand that we cannot set fees, other than our own, and that there can be no standardization, express or implied, regarding fees of any nature. My contention is that the ==traditional method of compensation of a Seller and a Broker "setting" compensation to be paid to a cooperating agent's company/firm is the ultimate form of restraint of trade, and, indeed, represents price fixing in a free market.== Again, blasphemous, you'll say!

If we agree that one company cannot set another company's fee, and that a company, any company, can determine its own value based on mutual agreement between the principal and the client, then as a firm/agent, the fee due for services should be a matter of agreement between the two parties most

Case 4:19-cv-00332-SRB   Document 1078-1   Filed 08/24/23   Page 3 of 7
CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                                    NARSITZER0000057907

directly affected by those services, not by a third party based on an antiquated formula, or some previously accepted norm.

Looking at the question in a visual sense, the policy of compensation traditionally looked like this:



The "x" apples have traditionally represented the whole, which was subsequently divided in whatever way the "listing" firm determined. Historically, the division was 50/50, although that is not meant to be accepted as standardization. In other words, the fee distribution looked like this:



Over time, the redistribution and allocation of cooperative fees has evolved, and due to business practices has taken on a different reflection. What any company/firm decides to offer out is, and should be, a matter of a combination of mutual agreement between the parties and personal business practice.

That evolution has brought REALTORS® to a new realization…that they may be at the whim of any other company's offer of unilateral compensation…that someone else is, indeed, "setting and controlling their value". REALTORS® are accustomed to setting "listing" value because "listings" have always been defined as Seller contractual agreements. Once we grasp the concept that the value *for* service is defined by the parties *to* that service, we can fully comprehend the transition from using the term "listing" to apply universally to altering the language to reflect the "new paradigm".

3

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                                                                 NARSITZER0000057908



Another way to look at the evolutionary process by way of a visual is this:



4

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                                                                                           NARSITZER0000057909

As you can see, the agency relationships are parallel. Each owes equal fiduciary duties (using the assumption that the Buyer and Seller choose to be in a client level relationship) to their clients.

We've always understood the relationship from a lawful standpoint. It's now time to fully understand it from a brokerage standpoint. Because we are all familiar with setting our own listing fees, if we fully grasp that we are entering into a listing agreement no matter which client we represent, it may go a long way to finally and fully evolving into a new reality.

That starts with answering the first question of "what is a listing?"

To the third question regarding whether the laws of agency have changed, our fiduciary duties, as agents, has always remained constant. We have, over the years, come to better understand those duties, thankfully. We have better delineated our roles through state and federal laws, and this centennial celebration for the NAR is a timely opportunity to bring ourselves into the new reality.

By adding a definition of the term "listing" to Article 1, SOP 2, I believe we will begin to better serve our Members and open a meaningful and industry-altering dialogue. By clarifying each usage of the term listing now found in the COE, and by clarifying either Buyer or Seller listing, or being specific where specificity is called for within the Code, I believe we will begin to see greater understanding at the grass roots level.

Just the other day, I had an agent present me with an offer on a property I represent on behalf of the Seller (my "listing" in the traditional sense). When the agent called to tell me he was sending it over he demanded that he be paid "50% of the list fee" and demanded to know what my contractual arrangement with the Seller was. After taking a deep breath, I reminded the agent what the unilateral offer of compensation was through the MLS and said it was neither wise nor lawful to have any discussion regarding my contract or the offering terms thereof.

I told the agent that under Article 17-4 of the COE, and with a written contractual relationship with his client (the terms to which I had no right), he had every right to approach the Seller with language that would provide for his previously agreed upon contracted compensation with his Buyer client. Further, I informed him that I had, indeed, had a conversation with my client, the Seller, under the provisions of Article 1, SOP 1-13, that experienced and informed Buyer's agents may come to us with provisions that support their contractual relationship with their clients. The Sellers were prepared for that request and such discussion. Absent any such contractual relationship between the Buyer and the Buyer's Agent's Agency, the unilateral offer made by the Seller through the Seller's Agent's Agency is understood to be the compensation paid to that cooperating firm. (Article 3)

He was lost.

I asked him to define a "listing" for me, and, after a discussion that involved buying him lunch over discussion, we got the transaction together. Moving forward, he and his company will be better informed, better prepared, and now understands that he has been confusing listing Sellers with "listing"

Case 4:19-cv-00332-SRB   Document 1078-1   Filed 08/24/23   Page 6 of 7
CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                                    NARSITZER0000057910

Buyers. On the one hand he knew his value to Sellers. On the other, he was constantly wondering what his value was to Buyers.

A simple semantic shift makes a world of difference.

I implore the National Association of REALTORS® and the Professional Standards Committee to re-examine the COE in this challenging time. Make a bold statement by recognizing a mindshift that will help each of us as practitioners to better understand the laws and proper implementation of agency.

I am hoping that, during my lifetime, we'll see the unilateral offer of all compensation offered in any MLS completely removed. Again, blasphemous!

By bifurcating the fee, each of us will truly begin to understand the "listing" concept as it should be, understand that in a free market we compete for individual value independently, and begin to comprehend procuring cause apart from perceived, entitled, elusive, extra-determined compensation.

If we can agree that the word "listing agent" can be replaced with the words "Seller Representative", or "Buyer's Representative", where appropriate, I believe we'll be well on our way to making the kinds of changes we need in order to bring our industry practices in line with our ideology!

At the heart of this proposal is education. It is intended to aid all of us as practitioners in better serving our clients, which is, after all, the essence of the Code itself. That educational process begins with semantics…the way we speak to each other. We must first change the way we speak in order to change the way we think.

Respectfully submitted by,


Linda O'Connor, REALTOR®

NRDS #454000102

---

[1] NAR COE as follows:
Article 1, SOP 1-3, 1-7, 1-12 (4 references), 1-13, 1-15 (2 references)
Article 3, SOP 3-3, 3-4 (4 references), 3-7, 3-9
Article 9, Article 9 SOP 9-2
Article 11, SOP 11-1
Article 12, SOP 12-3, 12-4, 12-7 (2 references), 12-10
Article 16, SOP 16-2 (2 references), 16-3, 16-4 (8 references), 16-12, 16-16 (2 references), 16-17 (2 references, SOP 16-18 (5 references)
Article 17, SOP 4(1) [6 references], SOP 4(2) [6 references], SOP 4(3) [4 references], SOP 4(4) [5 references], SOP 4(5) [4 references]

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                                           NARSITZER0000057911