# EXHIBIT B

1           IN THE UNITED STATES DISTRICT COURT

2           FOR THE WESTERN DISTRICT OF MISSOURI

3

4   SCOTT AND RHONDA BURNETT,        )

5   RYAN HENDRICKSON, JEROD BREIT, ) Civil Action No.

6   SCOTT TRUPIANO and JEREMY        ) 4:19-cv-00332-SRB

7   KEEL, on behalf of themselves  )

8   and all others similarly        )

9   situated,                       )

10          Plaintiffs,             )

11      v.                          )

12  THE NATIONAL ASSOCIATION OF     )

13  REALTORS, REALOGY HOLDINGS      )

14  CORP., HOMESERVICES OF          )

15  AMERICA, INC., BHH AFFILIATES, )

16  LLC, HSF AFFILIATES, LLC,       )

17  RE/MAX LLC, and KELLER          )

18  WILLIAMS REALTY, INC.           )

19          Defendants.             )

20

21  VIDEOTAPED ZOOM DEPOSITION - CLIFFORD D. NIERSBACH

22              CHICAGO, ILLINOIS

23          Wednesday, January 26, 2021

24                  9:24 a.m.

25  Job 4995607

Veritext Legal Solutions
www.veritext.com                                              888-391-3376
Case 4:19-cv-00332-SRB   Document 1078-2   Filed 08/24/23   Page 2 of 20

1      THE VIDEOGRAPHER:  Today is Wednesday,

2  January 26, 2022.  We'll go on the record at

3  9:24 a.m.

4      Will the court reporter please swear the

5  witness.

6                  (Witness sworn.)

7              CLIFFORD D. NIERSBACH,

8  having been duly sworn, was examined and testified

9  as follows:

10                  EXAMINATION

11  BY MR. KETCHMARK:

12      Q  Can you please state your name.

13      A  Clifford D. Niersbach.

14      Q  Mr. Niersbach, my name is Michael

15  Ketchmark, and you understand I'm an attorney who

16  is up here from Kansas City, Missouri, for

17  purposes of taking your deposition in a lawsuit

18  which is pending in court down there?

19      A  I do.

20      Q  And during the deposition, it's always

21  important that you answer with words, audibly,

22  okay?

23      A  I'll try to do that.

24      Q  And it's important that we don't talk over

25  each other at the same time, okay?

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 4:19-cv-00332-SRB   Document 1078-2   Filed 08/24/23   Page 3 of 20

1    support the concept.

2         That's what it states, correct, sir?

3    A  Yes, sir.

4    Q  And as part of this Exhibit 600, there's

5    an attachment that you would have received on the

6    proposal to the Professional Standards Committee

7    of the National Association of REALTORS.

8         Do you see that?

9    A  I do.

10        (Exhibit 601 is introduced for the

11   record.)

12   BY MR. KETCHMARK:

13   Q  And also if we go to Exhibit 601, that's

14   the same proposal that's attached.  It's just in a

15   standalone document, and I plan on walking through

16   this proposal with you by using Exhibit 601, okay,

17   sir?

18   A  Yes, sir.

19   Q  We see in here Ms. O'Connor states:

20        In 2008, I had the honor and privilege of

21   being named to the NAR Pro Standards Committee.

22   It was my one chance to make a difference and a

23   chance I had long awaited.  Recovering from

24   cancer, I was unable to make either meeting, and I

25   lost my chance to be a part of what I see as the

1    most important fundamental change in agency theory

2    in a century.  Now we face the impending

3    centennial of the Code of Ethics.  I feel

4    compelled to write this paper in hopes it provides

5    a framework for future dialogue.

6           Do you see that?

7       A  I do.

8       Q  And you know in 2008, when she's talking

9    about this fundamental change in agency theory,

10   that's when NAR was involved in -- in a change

11   going from the subagency method of compensating

12   buyer's brokers to moving to the model that

13   requires a unilateral offer of cooperation and

14   compensation to pay the buyer's broker, correct?

15          MR. BIERIG:  Objection to the form of the

16   question and the misstatement.

17          THE WITNESS:  Say that again.

18   BY MR. KETCHMARK:

19      Q  Sure.  What did you understand the -- when

20   she's talking about this -- this fundamental

21   change in agency theory that happened in 2008,

22   what did you understand she was referring to?

23      A  I thought --

24          MR. BIERIG:  Object to the form of the

25   question.

Case 4:19-cv-00332-SRB   Document 1078-2   Filed 08/24/23   Page 5 of 20

1    BY MR. KETCHMARK:

2       Q  Go ahead.

3       A  I thought she was talking about the

4    proposed changes to the Code of Ethics that she

5    highlights at the top.  When she talks about

6    listing agent, changing listing agent to seller

7    representative.

8       Q  She says in 2008 --

9       A  Um-hmm.

10       Q  -- she had the honor of serving on the

11   committee chair, but she was unable to attend the

12   meeting, and she lost her chance to be part of

13   what I see as the most important fundamental

14   change in agency theory in a century.

15      A  Right.  This letter -- this paper talks

16   about changes to the Code of Ethics and changes to

17   MLS policy.

18      Q  Right.

19      A  The Professional Standards Committee would

20   not consider anything to do with the operation of

21   Multiple Listing Services.

22      Q  Okay.  On the next page, I want to focus

23   in on this paragraph of this document that you

24   would have received back in 2012.

25         The Sherman Antitrust Act is very clear

Case 4:19-cv-00332-SRB   Document 1078-2   Filed 08/24/23   Page 6 of 20

1    about price fixing.  We all understand we cannot

2    set fees, other than our own.  And there can be no

3    standardization, expressed or implied, regarding

4    fees of any nature.

5           Do you see that?

6       A  I do.

7       Q  Do you agree with that statement she made?

8           MR. BIERIG:  Objection, calls for a legal

9    conclusion.

10          THE WITNESS:  I'm not sure what you mean

11   by -- what she meant by "standardization."

12   BY MR. KETCHMARK:

13      Q  Okay.  Other than that, not understanding

14   that piece of it, do you agree with her statement?

15          MR. BIERIG:  Again, objection, calls for a

16   legal conclusion.

17          THE WITNESS:  I read that as basically

18   saying it's the listing broker's decision as to

19   what they will charge for their services.

20   BY MR. KETCHMARK:

21      Q  It's not what I asked you.  She says:

22          The Sherman Antitrust law is very clear

23   about price fixing.

24          Let's just break it down.  Do you agree

25   with that statement she made?

Veritext Legal Solutions
www.veritext.com                                                   888-391-3376
Case 4:19-cv-00332-SRB   Document 1078-2   Filed 08/24/23   Page 7 of 20

1        MR. BIERIG:  Object, calls for a legal

2    conclusion.

3        THE WITNESS:  I -- I believe that's

4    correct.

5    BY MR. KETCHMARK:

6     Q  She says:  We cannot set fees other than

7    our own.

8        Do you agree with that?

9     A  I do.

10    Q  She states in here:

11       My contention is that the traditional

12    method of compensation of a seller and a broker

13    setting compensation to be paid to a cooperating

14    agent's company or firm is the ultimate form of

15    restraint of trade and indeed represents price

16    fixing in a free market.

17       Do you see that?

18    A  I do.

19    Q  She goes on, on the next page, and

20    actually provides a diagram saying:

21       Looking at the question in a visual sense,

22    the policy of compensation traditionally looked

23    like this.

24       And she has across the top:  X apples.

25       And X apples have traditionally

 1   represented the whole, which is subsequently

 2   divided in whatever way the listing firm

 3   determined.  Historically, the division was 50/50,

 4   although it was not meant to be accepted as

 5   standardization, in other words, the fees look

 6   like this:  50 percent and 50 percent.

 7           Do you see that?

 8       A  I do.

 9       Q  And it says:

10           Over time the redistribution and

11   allocation of cooperative fees has evolved and due

12   to business practices has taken on a different

13   reflection.

14           Do you see where she states that?

15       A  I do.

16       Q  On the next page, she gives some more

17   diagrams, and she talks about the agent, seller's

18   listing agent is representing the seller of the

19   home, and the buyer's -- the agent -- the buyer's

20   listing agent is representing the buyer, and the

21   home is reflected there by "made out of money."

22           Do you see that?

23       A  I do.

24       Q  And she indicates:

25           Another way to look at the evolutionary

1   process by way of a visual is...  And then she has
2   the money representing the house, and then at the
3   bottom, on one side, the seller and seller's
4   agent, on the other side, the buyer and buyer's
5   agent.
6        Do you see that?
7   A  I do.
8   Q  And what she is telling the National
9   Association of REALTORS, and the general counsel
10  at the time -- I mean -- back it up here.
11       Do you know that Miss -- what was her name
12  again, Janik?
13  A  Janik, Laurene K. Janik.
14  Q  Do you know, did she receive a copy OF
15  this proposal as well?
16       MR. BIERIG:  Object --
17       THE WITNESS:  No.
18  BY MR. KETCHMARK:
19  Q  Okay.  You didn't give it to her?
20  A  No, sir.
21  Q  So you're not practicing law at the time
22  for the National Association of REALTORS, correct?
23  A  No, sir.
24  Q  Meaning what I said was correct, right?
25  A  Yes.

Veritext Legal Solutions
www.veritext.com                                     888-391-3376
Case 4:19-cv-00332-SRB  Document 1078-2  Filed 08/24/23  Page 10 of 20

1      Q   But you have a law degree?

2      A   Yes.

3      Q   And you had a woman who used to be in

4   leadership at the National Association of REALTORS

5   because that's what -- Ms. O'Connor had the

6   leadership position, correct?

7      A   She was a committee --

8          MR. BIERIG:   Object to the form of the

9   question, and the misstatement of --

10         THE WITNESS:   Ms. O'Connor was a member of

11   a committee of about 112 people.   I wouldn't call

12   her a leader, but she was a member.

13   BY MR. KETCHMARK:

14      Q   Okay.   And she was a member of the

15   Professional Standards Committee?

16      A   Yes, sir.

17      Q   So however many, several hundred thousand

18   million plus Realtors there were, you selected 112

19   of them to serve on the Professional Standards

20   Committee and she was one of those people?

21      A   I don't select them.   But she was selected

22   by the leadership of the National Association,

23   probably in response to a request from her local

24   association.

25      Q   All right.   And so this -- Ms. O'Connor is

1  telling you that she believes that the

2  compensation system that's being used, this

3  unilateral offer of cooperation and compensation,

4  in her words, is the ultimate restraint of trade.

5          That's what she tells you, correct?

6      A   What page are you on?

7      Q   That's on page -- that's on the page

8  that's numbered -- that ends with 7907.  It would

9  the second page of the document.

10     A   Thank you.  I'm with you.

11     Q   That's what she says, right?

12     A   That's what she says.

13     Q   And she's saying that she believes it's a

14  violation of the Sherman Antitrust price-fixing

15  laws, correct?

16     A   She did.

17     Q   And you're a lawyer?

18     A   Yes, sir.

19     Q   And you have a general counsel whose job

20  is to make sure that the National Association of

21  REALTORS is compliant with laws like the Sherman

22  Antitrust law, correct?

23     A   Correct.

24         MR. BIERIG:  Object to the form of the

25  question.

1  correct?

2      A  I could have.

3      Q  You could have sent her a fax.  Her fax

4  number is there, correct?

5      A  I could have.

6      Q  In fact, if you didn't want to spend the

7  money to call her, you could have called her

8  toll-free and had a conversation with her about

9  it.

10     A  I could have.

11     Q  But you the didn't do that, did you?

12     A  No, sir.

13     Q  Nor did you forward this on to the general

14  counsel of your company, did you?

15         MR. BIERIG:  Objection, asked and

16  answered.

17         THE WITNESS:  No, I did not walk in and

18  hand it to the general counsel.

19  BY MR. KETCHMARK:

20     Q  You didn't forward it by e-mail, did you?

21     A  No, sir.

22     Q  So big picture -- make sure that we're on

23  the same page.

24         What Linda O'Connor was telling the

25  National Association of REALTORS is she believed

1   the unilateral offer of compensation -- or the

2   unilateral offer of cooperation and compensation

3   was the ultimate form of a trade restraint, and it

4   represented a violation of the Antitrust Act.

5          That's what she was telling you, correct?

6   A   That was part of what she was telling us.

7   Q   Will you admit to the jury that when you

8   worked at the National Association of REALTORS

9   that you knew and understood that your

10  organization and its members were prohibited from

11  using the trade associations or its rules in an

12  anticompetitive manner?

13         MR. BIERIG:  Object to the form of the

14  question.

15         THE WITNESS:  Say that again.

16  BY MR. KETCHMARK:

17  Q   Sure.  Will you admit to the jury that

18  when you were employed at the National Association

19  of REALTORS, and certainly during this time period

20  in 2012, you knew and understood that the NAR and

21  its members were prohibited from using the trade

22  association and its rules in an anticompetitive

23  manner?

24         MR. BIERIG:  Object to the form of the

25  question.

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 4:19-cv-00332-SRB   Document 1078-2   Filed 08/24/23   Page 14 of 20

```
 1   antitrust laws?
 2         MR. BIERIG:  Objection, calls for a legal
 3   conclusion.
 4         THE WITNESS:  If -- I'm still having a
 5   hard time following the question.  Say it may be a
 6   little slower.
 7   BY MR. KETCHMARK:
 8      Q  Sure, I'll slow down.
 9         Have you ever -- have you ever looked at
10   the Sherman Antitrust Act?
11      A  I did when I was in law school, I assume.
12      Q  But since you got out of law school, you
13   haven't read it?
14      A  Probably not.
15      Q  And so when Ms. O'Connor is telling you
16   that she believes it's the ultimate restraint on
17   trade, this rule, and - and that it violates the
18   Sherman Antitrust Act, I take it you would have no
19   position on that because you weren't -- it's
20   your -- you're saying you don't really know what
21   the law requires.  Is that what you're telling me?
22         MR. BIERIG:  Object to the form of the
23   question.
24         THE WITNESS:  What I'm telling you is that
25   if this ever got to the point where it was going
```

1    to be considered by the relevant committee, we

2    would have looked into that, but it never got that

3    far.

4    BY MR. KETCHMARK:

5        Q   Okay.  And are you telling me that -- that

6    you don't have -- that you're not able to offer an

7    opinion one way or the other as to whether or not

8    it violates the Antitrust Act; is that what you're

9    telling me?

10           MR. BIERIG:  Object to the form of the

11   question.

12           THE WITNESS:  That what violates

13   the Antitrust --

14   BY MR. KETCHMARK:

15       Q   This rule, this unilateral rule of

16   requiring cooperation and compensation.

17           MR. BIERIG:  Object to the form of the

18   question --

19           THE WITNESS:  I don't see.

20           MR. BIERIG:  -- calls for a legal

21   conclusion.

22           THE WITNESS:  It's not my -- I don't see

23   how it would.

24   BY MR. KETCHMARK:

25       Q   But I'm asking you if you understand what

1    CERTIFICATE OF COURT REPORTER - NOTARY PUBLIC

2

3        I, Cynthia J. Conforti, Certified

4    Shorthand Reporter No. 084-003064, CSR, CRR, and a

5    Notary Public in and for the County of Cook, State

6    of Illinois, the officer before whom the

7    foregoing deposition was taken, do hereby certify

8    that the foregoing transcript is a true and

9    correct record of the testimony given; that said

10   testimony was taken by me stenographically and

11   thereafter reduced to typewriting under my

12   direction; that reading and signing was requested;

13   and that I am neither counsel for, related to, nor

14   employed by any of the parties to this case and

15   have no interest, financial or otherwise, in its

16   outcome.

17       IN WITNESS WHEREOF, I have hereunto set my

18   hand and affixed my notarial seal this 2nd day of

19   February, 2022.

20

21   My commission expires: October 30, 2023

22

23

24   Notary Public in and for the

25   State of Illinois

Veritext Legal Solutions
www.veritext.com                                    888-391-3376
Case 4:19-cv-00332-SRB   Document 1078-2   Filed 08/24/23   Page 17 of 20

```
1                    Veritext Legal Solutions
                        1100 Superior Ave
2                          Suite 1820
                      Cleveland, Ohio 44114
3                    Phone: 216-523-1313
4
     February 2, 2022
5
     To: Mr. Bierig
6
     Case Name: Burnett, Scott, Et Al. v. The National Association Of
7    Realtors Et Al.
8    Veritext Reference Number: 4995607
9    Witness:  Clifford D. Niersbach        Deposition Date:  1/26/2022
10
     Dear Sir/Madam:
11
12   Enclosed please find a deposition transcript.  Please have the witness
13   review the transcript and note any changes or corrections on the
14   included errata sheet, indicating the page, line number, change, and
15   the reason for the change.  Have the witness' signature notarized and
16   forward the completed page(s) back to us at the Production address
     shown
17
     above, or email to production-midwest@veritext.com.
18
19   If the errata is not returned within thirty days of your receipt of
20   this letter, the reading and signing will be deemed waived.
21
     Sincerely,
22
     Production Department
23
24
25   NO NOTARY REQUIRED IN CA
```

```
1              DEPOSITION REVIEW
             CERTIFICATION OF WITNESS
2
       ASSIGNMENT REFERENCE NO: 4995607
3      CASE NAME: Burnett, Scott, Et Al. v. The National Association
   Of Realtors Et Al.
       DATE OF DEPOSITION: 1/26/2022
4      WITNESS' NAME: Clifford D. Niersbach
5      In accordance with the Rules of Civil
   Procedure, I have read the entire transcript of
6  my testimony or it has been read to me.
7      I have made no changes to the testimony
   as transcribed by the court reporter.
8

   _____        _____
9  Date                     Clifford D. Niersbach
10     Sworn to and subscribed before me, a
   Notary Public in and for the State and County,
11 the referenced witness did personally appear
   and acknowledge that:
12
       They have read the transcript;
13     They signed the foregoing Sworn
           Statement; and
14     Their execution of this Statement is of
           their free act and deed.
15
       I have affixed my name and official seal
16
   this _____ day of_____, 20____.
17

           _____
18         Notary Public
19         _____
   Commission Expiration Date
20
21
22
23
24
25
```

1                    DEPOSITION REVIEW
                  CERTIFICATION OF WITNESS
2

         ASSIGNMENT REFERENCE NO: 4995607
3        CASE NAME: Burnett, Scott, Et Al. v. The National Association
   Of Realtors Et Al.
         DATE OF DEPOSITION: 1/26/2022
4        WITNESS' NAME: Clifford D. Niersbach
5        In accordance with the Rules of Civil
   Procedure, I have read the entire transcript of
6  my testimony or it has been read to me.
7        I have listed my changes on the attached
   Errata Sheet, listing page and line numbers as
8  well as the reason(s) for the change(s).
9        I request that these changes be entered
   as part of the record of my testimony.
10

         I have executed the Errata Sheet, as well
11 as this Certificate, and request and authorize
   that both be appended to the transcript of my
12 testimony and be incorporated therein.
13 _____        _____
   Date                    Clifford D. Niersbach
14

         Sworn to and subscribed before me, a
15 Notary Public in and for the State and County,
   the referenced witness did personally appear
16 and acknowledge that:
17       They have read the transcript;
         They have listed all of their corrections
18           in the appended Errata Sheet;
         They signed the foregoing Sworn
19           Statement; and
         Their execution of this Statement is of
20           their free act and deed.
21       I have affixed my name and official seal
22 this _____ day of_____, 20____.
23           _____
             Notary Public
24

             _____
25           Commission Expiration Date

Veritext Legal Solutions