UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| SCOTT AND RHONDA BURNETT, RYAN HENDRICKSON, JEROD BREIT, SCOTT TRUPIANO, JEREMY KEEL, HOLLEE ELLIS, and FRANCES HARVEY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC, RE/MAX LLC, and KELLER WILLIAMS REALTY, INC.,<br><br>Defendants. | Case No. 4:19-cv-00332-SRB<br><br>**CLASS ACTION** |

**DEFENDANTS' SUGGESTIONS IN OPPOSITION TO
PLAINTIFFS' MOTION TO STRIKE CERTAIN WITNESSES**

On the eve of trial, Plaintiffs seek to prevent the National Association of REALTORS®; HomeServices of America, Inc.; BHH Affiliates, LLC; HSF Affiliates, LLC; RE/MAX, LLC; and Keller Williams Realty, Inc. (together, the "Defendants") from calling several witnesses to testify on the purported basis that Defendants did not identify these witnesses in their Rule 26 disclosures until after the close of fact discovery. However, Plaintiffs were aware of all of these witnesses before the close of fact discovery. Rather than seek discovery from these witnesses during the discovery period, Plaintiffs elected to wait until the eve of trial to raise their concerns and demand the unwarranted relief of prohibiting Defendants from calling these witnesses to testify at trial. Plaintiffs' motion to strike these witnesses' trial testimony should be denied.

## STATEMENT OF FACTS

### A. Witnesses at Issue for the HomeServices Defendants[1]

Plaintiffs' Motion implicates the following four (4) witnesses who the HomeServices Defendants intend to call live at trial:

<u>Krista Wilson</u> – Ms. Wilson is the Senior Vice President at Reece & Nichols Realtors, Inc. ("ReeceNichols"), one of the Missouri-based real estate brokerage subsidiaries of HomeServices of America, Inc. ("HSoA"). The HomeServices Defendants expressly identified Ms. Wilson in writing to Plaintiffs as a person likely to have discoverable information in a letter dated May 10, 2020:

> We have attached, as requested, an employee roster for the Missouri Subsidiaries for the past five years. We suggest that a meaningful custodian would be Krista Wilson, who is an experienced sales manager and SVP of brokerage for ReeceNichols and, to our knowledge, one of what seem to be relatively few ReeceNichols employees with MLS/trade association involvement (Ms. Wilson has been a board member at Heartland MLS).

Ex. A at 9, May 10, 2020 letter from Jay Varon to Brandon Boulware.

Ms. Wilson subsequently provided substantive written testimony in this case on November 12, 2021, in connection with Defendants' opposition to the class certification motion. Doc. No. 553-45. Ms. Wilson's declaration spanned fourteen pages and contained detailed testimony describing the relationship between ReeceNichols and the HomeServices Defendants; broker licensing requirements; brokerage practices; competition within the real estate industry; ReeceNichols' commission practices and policies; and other relevant topics. This declaration was provided to Plaintiffs well before the close of fact discovery. And the HomeServices Defendants served supplemental Rule 26 disclosures on September 21, 2022, listing Ms. Wilson. Ex. B at 7, HSOA Supplemental Initial Disclosures.

---
[1] HomeServices of America, Inc.; HSF Affiliates, LLC; and BHH Affiliates, LLC.

Thus, it is undisputed that Ms. Wilson was identified to Plaintiffs in writing during the fact discovery period, as was the substance of her testimony and the fact that the HomeServices Defendants intended to rely on it as part of defending against Plaintiffs' allegations.

Mike Frazier – Mr. Frazier is the President and Chief Executive Officer of ReeceNichols. The HomeServices Defendants first disclosed Mr. Frazier as a person with relevant knowledge in the spring of 2020. In response to this disclosure, the Plaintiffs selected Mr. Frazier as a document custodian on May 27, 2020 (*see* Ex. C at 2, 5/27/20 email from Brandon Boulware to Jay Varon[2]), and numerous documents were produced to Plaintiffs from his files.

Mr. Frazier subsequently testified in this matter by submitting a substantive declaration with the HomeServices Defendants' summary judgment motion on August 29, 2022. Doc. No. 931-10. Mr. Frazier's declaration explains the corporate history of ReeceNichols and its relationship to the HomeServices Defendants; the ReeceNichols leadership structure; that the HomeServices Defendants do not require local agents to join any multiple listing service, to comply with NAR's Handbook on Multiple List Policy, or to comply with NAR's Code of Ethics; that the HomeServices Defendants have never provided any guidance to ReeceNichols with respect to the NAR rules at issue in this case; and related issues. Doc. No. 931-10.

The HomeServices Defendants further identified Mr. Frazier as a likely witness in their supplemental disclosures served on September 21, 2022. Ex. B at 7. And Plaintiffs then questioned another HomeServices witness – Rosalie Warner –about Mr. Frazier at her deposition on October 19, 2022. Ex. D, Warner Dep. pp 71-76. Plaintiffs' questions about Mr. Frazier and his role at ReeceNichols and other HomeServices-related entities spanned six pages of deposition

---

[2] Mr. Frazier's full name is R. Michael Frazier. *See* https://www.linkedin.com/in/r-michael-frazier-9286554/.

testimony. Plaintiffs have thus been aware of both the substance of Mr. Frazier's testimony and the HomeServices Defendants' intent to rely on it for more than a year, and they never objected.

Kevin Goffstein – Mr. Goffstein is the President of Greater Metro, LLC dba Berkshire Hathaway HomeServices Alliance Real Estate ("BHHS Alliance"). When this case was first filed, BHHS Alliance was an independently owned and operated franchisee affiliated with the HomeServices Defendants; it became a wholly-owned subsidiary of HSoA in 2021.

Mr. Goffstein testified in this matter by submitting a substantive declaration with the HomeServices Defendants' summary judgment motion on August 29, 2022. Doc. No. 931-8. Mr. Goffstein's declaration provides details about the corporate history of BHHS Alliance; its operational history and independence from the HomeServices Defendants; that the HomeServices Defendants have never imposed any requirements on BHHS Alliance or its sales agents to join any multiple listing service; that BHHS Alliance is independently managed, even after its acquisition; that BHHS Alliance sets its own commission policies; and related issues. At that time, Mr. Goffstein was already known to Plaintiffs, as, on April 1, 2022, they had specifically questioned a Coldwell Banker Gundaker Senior Vice President, Carol McCabe about Mr. Goffstein. Ex. E, Deposition of Carol McCabe 24:18 – 25:5.

The HomeServices Defendants further identified Mr. Goffstein as a likely witness in their supplemental disclosures served on September 21, 2022. Ex. B at 8. Plaintiffs have thus been aware of both the substance of Mr. Goffstein's testimony and the HomeServices Defendants' intent to rely on it for more than a year, and they never objected.

Sarah Butler – Ms. Butler is an expert witness who was first disclosed to Plaintiffs during the class certification proceedings in an expert report served on November 12, 2021. Doc. 555 at 2. Ms. Butler provided a report with all of the details required by Rule 26, including the results

of a survey she conducted of Missouri citizens regarding their experiences with the local real estate agents and brokers who Plaintiffs accuse of having participated in the alleged conspiracy. Doc. 553-3. Ms. Butler was further identified to Plaintiffs through citations in the reports provided by economists Lauren Stiroh and Lawrence Wu on November 21, 2021, and July 14, 2022, respectively. Plaintiffs served a notice on March 22, 2022, to take Ms. Butler's deposition, but they never pursued it. Doc. No. 703.

Finally, Ms. Butler was listed as a potential trial witness in the supplemental disclosures provided by the HomeServices Defendants on September 21, 2022. Ex. B at 12. Plaintiffs have thus been aware of both the substance of Ms. Butler's testimony and the HomeServices Defendants' intent to rely on it for more than a year, and they never objected.

### B. Witness at Issue for RE/MAX, LLC

<u>Sandy Hancock</u> – Sandy Hancock is the broker/owner and manager of Results Realty, LLC d/b/a RE/MAX Results. RE/MAX Results assisted named plaintiff Jerod Breit in the sale of the transaction at issue in Plaintiffs' complaint. Ms. Hancock was disclosed by category on September 20, 2019, in RMLLC's initial disclosures at the inception of this case, which identified "All professionals, including real estate professionals, attorneys, and all others, who assisted any Plaintiff with any real estate transaction." Ex. F at 3. Then, on November 11, 2021, Ms. Hancock submitted a sworn declaration that was filed in connection with Defendants' opposition to Plaintiffs' motion for class certification. *See* Doc. No. 553, Ex. 53. RMLLC then memorialized the disclosure of Ms. Hancock through discovery in a supplement to its Rule 26 disclosures on August 24, 2022. Ex. G at 5-6.

### C. Witness at Issue for Keller Williams Realty Inc.

<u>Jen Davis</u> – Jen Davis has worked as a real estate agent in Springfield, Missouri for the past 15 years (and, as of June 2022, also now serves as Vice President of MAPS Coaching at Keller Williams). Because Ms. Davis has specialized in her career as a real estate agent as a representative of home buyers, Defendants seek to call Ms. Davis to describe the tremendous value of services offered by buyer agents, including how important the involvement of buyer agents is to home sellers. Keller Williams first disclosed Ms. Davis on November 21, 2021, through a declaration in support of Defendants' opposition to Plaintiffs' motion for class certification (Dkt. 553-50), and later amended its initial disclosures under Rule 26(e) on September 12, 2022 (Ex. H at 4) to name Ms. Davis specifically.

### D. Witness at Issue for National Association of REALTORS®

<u>Sarah Young</u>: Plaintiffs have long known about Sarah Young and her involvement in the Real Estate Services Advisory Board ("RES"). In fact, in this case, Plaintiffs themselves questioned multiple witnesses about documents authored by Ms. Young –Plaintiffs used 9 documents expressly referencing Ms. Young in their summary judgment papers, 3 witnesses have testified regarding her role at NAR, an additional 4 witnesses have testified about documents she authored, and Defendants have produced over 5,800 documents with Ms. Young on the correspondence, with 947 where she was the author. Plaintiffs have included 42 exhibits on their list with Ms. Young on them, 18 of which she authored. Further, although Plaintiffs long have been aware of Ms. Young's relevance, NAR also supplemented its initial disclosures to add Ms. Young as an individual likely to have discoverable information. Ex. J at 4 (NAR's Supp. Initial Disclosures).

Ms. Young was the Director of Real Estate Services and Policy Oversight for NAR. Ex. K, Deposition of Rodney Gansho (30(b)(6)) at 223:20-224:12. As part of her role, Ms. Young oversaw the RES and sent correspondence used by Plaintiffs at depositions in this litigation. *See e.g.*, Ex. L, Gansho 30(b)(6) Deposition Ex. 980, 5/8/2018 Email from S. Young, titled "Top 75 Large Firm Directors Agenda and Briefing Book," & Ex. K at 223:20-224:12 ("Q Let's turn to Exhibit 980. Talking about this -- another e-mail that goes out, and I won't go through all of them, but you certainly will agree that when this is being sent out from a Sarah Young at NAR, do you know what Ms. Young's job is?. . . .Q She's a director of real estate services at NAR, correct? A She was, yes."); Ex. M, Gansho 30(b)(6) Deposition Ex. 981, 5/3/2019 Email from S. Young titled "RES Advisory Group Update: Top 75 Meeting Agenda + Briefing Book."; Ex. N, G. Belfari Deposition Exhibit 695, Email from S. Young titled "Top 75".

While RES was not referenced in Plaintiffs' amended complaint and it has nothing to do with the issues in this case (there is no evidence the NAR rules, commissions, or offer of compensation were even discussed), Plaintiffs' pre-trial filings indicate that they intend to spend a significant amount of trial time on RES as a central part of their presentation. *See*, e.g., B. Goldberg Designations (28:7-12, 30:2-17, 30:20-31:13, 32:17-33:2, 33:5-34:9, 34:12-35:20, 36:1-7, 36:11-37:6, 37:10-17, 38:19-42:1, 46:3-48:8, 49:9-20, 50:3-5, 50:17-20, 51:1-6, 67:10-68:14, 69:1 beginning with "You see here…") - 19, 70:1-12, 70:15-71:1, 71:4-9, 71:11-12, 71:14-72:1, 72:7-15, 72:18-73:8, 73:11-74:1, 74:4-75:2, 75:6-20, 76:3-14, 76:18-77:5, 77:9-15 and 77:18-78:6). Specifically, Plaintiffs' attempt to characterize RES as the "venue to hatch an antitrust conspiracy" and characterize the fact that meeting minutes were not kept as a nefarious act. E.g., B. Goldberg 72:7-15, 72:18-73:8, 73:11-74:1, 74:4-75:2, 75:6-20, 76:3-14, 76:18-77:5, 77:9-15 and 77:18-78:6. Ms. Young's testimony is critical to providing the jury with a complete

7

and accurate understanding of the RES during her tenure as Director. Accordingly, the Court should deny Plaintiffs' motion to preclude Ms. Young's testimony.

### E. Witness at Issue for All Defendants

Heartland MLS Representative (Robert Wagoner): Plaintiffs have been on notice regarding Mr. Wagoner's relevance and expected testimony in this litigation since 2019. Realogy, Keller Williams, REMAX and the Home Service Defendants all included Representatives of Heartland MLS on their initial disclosures they served in 2019. *See* Ex. F (RE/MAX 9/2019), at 3; Ex. O (Realogy 9/2019), at 3; Ex. P (HSOA 9/2019), at 4; Ex. Q (KW 9/2019), at 3. NAR also filed a First Supplemental Initial Disclosure listing a Representative of Heartland MLS in September 2022. *See* Ex. R at 4, First Supplemental Initial Disclosures of Defendant National Association of REALTORS® ("Representatives may have knowledge about the local real estate industry and how NAR rules operate in practice in a local MLS.").

Plaintiffs themselves issued a deposition subpoena to Heartland MLS in December 2021 because testimony from the local MLSs is valuable and relevant to this litigation. *See* Ex. S, Notice of Intent to Issue Subpoena to Produce Documents and Testify at a Deposition to Kansas City Regional Association of Realtors, Dec. 20, 2021. However, Plaintiffs never moved forward with the deposition. NAR issued its own subpoena on August 19, 2022, when discovery was open, but Plaintiffs objected because the parties could not find a mutually agreeable date for the deposition to occur before the close of discovery. *See* Ex. T (NAR Heartland Subpoena).

Andrew Bash: Mr. Bash served as the real estate agent to two prior named Plaintiffs – Joshua Sitzer and Amy Winger. Thus, he was disclosed by category on September 20, 2019, in RMLLC's initial disclosures. Ex. F at 3 (identifying "[a]ll professionals, including real estate professionals, attorneys, and all others, who assisted any Plaintiff with any real estate

8
Case 4:19-cv-00332-SRB   Document 1128   Filed 09/07/23   Page 8 of 20

transaction"); *see also* Ex. O at 3; Ex. Q at 3. Mr. Bash's identity was also made known to Plaintiffs during discovery, as he was subpoenaed for documents and a deposition on April 14, 2021. Doc. No. 443. Plaintiffs subsequently issued their own subpoena to Mr. Bash on May 5, 2021. Doc. No. 452.

## ARGUMENT

### A. Defendants Timely Identified Their Witnesses and Their Intent to Rely on These Witnesses at Trial

Federal Rule of Civil Procedure 26(e) requires a party to supplement a discovery response or initial disclosures only if "the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . ." Fed. R. Civ. P. 26(e). Even where a party fails to provide a timely supplement, a sanction under Rule 37 is only appropriate if the failure was not substantially justified or otherwise caused some harm to the opposing party. Fed. R. Civ. P. 37(c). "When a party fails to provide information or identify a witness in compliance with Rule 26(a) or (e), the district court has wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case." *Wegener v. Johnson,* 527 F.3d 687, 692 (8th Cir. 2008). "[E]xclusion of evidence is a harsh penalty and should be used sparingly . . . ." *Id.* Nevertheless, "the district court's discretion to fashion a remedy or sanction for discovery violations under Rule 37 is not absolute," and a district court can abuse its discretion when excluding highly relevant testimony. *Doe v. Young*, 664 F.3d 727, 734-36 (8th Cir. 2011) (finding that even if unfair surprised existed, the court abused its discretion by excluding the relevant testimony.) When fashioning a remedy, the district court should consider the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony. *Sellers v. Mineta*, 350 F.3d 706,

711-12 (8th Cir. 2003); *see also Rodrick v. Wal-Mart Stores E., L.P.*, 666 F.3d 1093, 1097 (8th Cir. 2012) (noting several factors to determine whether a Rule 26 violation is justified or harmless, including "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." . . . . And, even then, the court need not make explicit findings concerning the existence of a substantial justification or the harmlessness.").

Here, Plaintiffs were aware of all the witnesses through the discovery process in advance of trial. As set forth above, Ms. Wilson, Mr. Frazier, Mr. Goffstein, Ms. Butler, Ms. Hancock, Ms. Davis, Ms. Young, Mr. Wanoger, and Mr. Bash were all known to Plaintiffs through the discovery process well before the close of fact discovery, including in class certification proceedings in November 2021, summary judgment briefing in August 2022, or both. Additionally, Ms. Wilson and Mr. Frazier were further identified in written correspondence with the Plaintiffs when discussing potential custodians for document discovery, which resulted in Plaintiffs' selecting Mr. Frazier as one such custodian. All of these witnesses were then further identified in supplemental disclosure under Rule 26(e).

Ms. Wilson, Mr. Frazier, Mr. Goffstein, Ms. Butler, Ms. Hancock, and Ms. Davis have provided either written declarations setting forth the details of their likely testimony or—in the case of Ms. Butler—a full export report as required by Rule 26. Plaintiffs did not raise any objections to the declarations, the Butler expert report or the September 2022 supplemental disclosure identifying these individuals as likely trial witnesses; nor would any objection have had merit given the previous written disclosures of these witnesses as set forth above. These witnesses were timely disclosed to Plaintiffs under Rule 26, as was Defendants' intent to rely on

their testimony at trial. Plaintiffs have known about Ms. Young's relevance to the RES throughout fact discovery and have relied on materials she authored in filings and depositions. With respect to Mr. Wagoner, Plaintiffs have been on notice since 2019.

The cases cited by Plaintiffs do not require a different result. For example, in *Certain Underwriters at Lloyd's v. SSDD, LLC,* 301 F.R.D. 391 (E.D. Mo. 2014), Underwriters served supplemental discovery responses just seven weeks before trial that identified for the first time two witnesses who would testify at trial. *Id.* at 395. Notably, Underwriters had submitted a declaration from one of the witnesses with its summary judgment briefing, and SSDD had moved to strike the declaration on the basis that the witness had not previously been disclosed. *Id.* at 395-96. Although the court ultimately excluded the witness testimony, it observed that SSDD's motion to strike during the summary judgment proceedings put Underwriters on notice that they needed to supplement their initial disclosures and that, had they done so, they could have avoided any untimeliness issue. *Id.* at 396 ("[T]he motion to strike should have prompted Underwriters to supplement their disclosures. Based on these facts, Underwriters reasonably could have avoided the late disclosure of Mr. Fowles, so his untimely disclosure is not substantially justified."). The court also noted that, had Underwriters supplemented its disclosures during the summary judgment briefing, SSDD would have had time to seek an enlargement of the discovery deadline to take the witness's deposition. *Id.* Thus, *Underwriters* provides that Defendants' disclosures are timely.

As noted above, here—unlike in *Underwriters*—Plaintiffs were on notice of Ms. Wilson's and Mr. Frazier's roles prior to receiving their declarations in connection with the summary judgment briefing, and they had also previously received an expert report from Sarah Butler. Ms. Wilson, Mr. Frazier, and Mr. Goffstein then all provided written testimony in

connection with summary judgment, and Plaintiffs did not object to their role as testifying witnesses at that time. Also unlike in *Underwriters,* the HomeServices Defendants then promptly supplemented their Rule 26 disclosures just a few weeks later (in September 2022, almost a year ago) to list all of these individuals as likely trial witnesses (along with Ms. Butler), and—again—Plaintiffs did not raise any objection. Had Plaintiffs raised concerns at that time, there was sufficient time to take any supplemental depositions well in advance of trial to avoid any purported prejudice to Plaintiffs.

*Troknya v. Cleveland Chiropractic Clinic,* 280 F.3d 1200 (8th Cir. 2002), is also distinguishable. In that case, the Eighth Circuit noted that the excluded witnesses "had not been included in CCC's disclosures and supplements provided under Fed. R. Civ. P. 26." *Id.* at 1205. Instead, the names had only been "identified or referenced somewhere in the course of discovery." *Id.* Neither is the case here – all of Defendants' witnesses here were identified in supplemental Rule 26 disclosures and provided detailed testimonial declarations or, in the case of Ms. Butler, a detailed expert report in this case. *Troknya* does not apply here.

Finally, Plaintiffs' additional argument that Ms. Butler should be excluded because she was identified only as a "class certification" expert is factually incorrect. Ms. Butler was originally disclosed as an expert for the purposes of class certification on November 12, 2021. However, in their supplemental Rule 26 disclosures served on September 21, 2022 – five months after the Court certified this case as a class action – the HomeServices Defendants listed Sarah Butler as a trial witness. Thus, Plaintiffs have been on notice for approximately one year that Ms. Butler would testify at trial.

Plaintiffs' reliance on *Burdette v. Vigindustries, Inc.,* No. 10-1083, 2012 U.S. Dist. LEXIS 7198 (D. Kan. Jan. 23, 2012), is misplaced. There, the plaintiff attempted to rely on expert

testimony during class certification that was first disclosed "eight months after the disclosure deadline and more than four months after they filed their motion to certify." *Id.* at *4-*5. In contrast, here, the HomeServices Defendants seek to offer expert testimony at trial that was first disclosed **eight months prior** to the disclosure deadline for merits experts in this case.[3]

Moreover, any technical failure to reissue Ms. Butler's report as a "merits" report rather than a "class certification report" was harmless. As previously noted, defense expert Lawrence Wu cites to and relies on Ms. Butler's survey results in his merits reports. Plaintiffs had the same incentive to depose Ms. Butler and to challenge her opinions, and there is no prejudice to them in permitting Ms. Butler to testify live at trial.

### B. Even if the Witnesses Had Not Been Timely Disclosed, the Court Should Exercise Its Discretion to Permit Their Testimony

Even if this Court were to find that Defendants did not identify the witnesses at issue in a timely manner, the Court should exercise its discretion to permit the testimony. Plaintiffs have been on notice of both the identities of these witnesses and the substance of their expected testimony. Plaintiffs did not seek to take their depositions or to conduct any related discovery; there will not be any unfair surprise or prejudice to Plaintiffs because they have declarations, transcripts, disclosures, and reports detailing these witnesses' expected testimony and, with respect to three of the witnesses, Plaintiffs have access to their emails and files to look for any relevant documents to challenge these witnesses' testimony.

Plaintiffs' current efforts to have the Court penalize Defendants based on their alleged failure to adhere to a rigid discovery schedule is also belied by how discovery actually proceeded in this case. Plaintiffs themselves did not adhere to the discovery schedule to which they refer in

---

[3] Ms. Butler's report was served in November 2021. Defendants' deadline for disclosing merits experts was not until July 2022.

13

their motion.  The Court's last Scheduling Order (Doc. 811, dated June 21, 2022) extended certain deadlines to allow Plaintiffs to take depositions after the close of fact discovery.  The Order required Plaintiffs to "schedule the deposition[]" of Linda O'Connor prior to August 12, 2022.  Plaintiffs did not serve their notice scheduling the O'Connor deposition until September 8, 2022 (Doc. 938), and they did not complete the deposition until November 30, 2022.  Both Defendants and Plaintiffs then deposed Stefan Swanepoel – a witness who was not identified in the Scheduling Order – on February 23, 2023 (Docs. 1026, 1027).  Both of these depositions took place after the supplemental disclosures identified the witnesses Plaintiffs now seek to strike.  Plaintiffs had ample opportunity to depose the disclosed witnesses (or object to the supplemental disclosures) before now and chose not to do so.

Finally, the proposed testimony is important to the Defendants' defense.  Ms. Wilson, Mr. Frazier and Mr. Goffstein will each testify that the HomeServices Defendants do not monitor or seek to control their individual commission policies; they do not dictate training of agents; they do not require their subsidiary brokerages or affiliated franchisees to participate in NAR, local REALTOR Associations, or local MLS bodies. *See, e.g.*, Wilson Decl. (Doc. 553-45); Frazier Decl. (Doc. 931-10); Goffstein Decl. (Doc. 931-8).  Ms. Hancock will testify regarding the relationship between her franchise and RMLLC, the practice of offering cooperative compensation, and her supervision of agents, including the (now deceased) agent that represented one of the named Plaintiffs in the litigation.  Ms. Davis will testify about the importance of buyer agents, who Plaintiffs assert bring little or no value to real estate transactions.  Mr. Wagoner's testimony is also important to the case.  He will be able to testify about the local real estate industry and how NAR rules operate in practice in a local MLS.  Defendants have been proffering such evidence and supporting arguments since the beginning of

this case, so the fact that these witnesses will offer such testimony at trial is no surprise to Plaintiffs.[4]

Ms. Young's testimony is critical for the jury to get a complete and accurate understanding of the RES. Allowing Plaintiffs to enter documents into evidence that Ms. Young authored and to question witnesses on the RES without hearing from Mr. Young directly on issues concerning her personal knowledge would leave the jury with a fragmented and inaccurate picture of the RES. Plaintiffs have a transcript of the testimony she provided in the *Moehrl* action where *Moehrl* Plaintiffs' counsel questioned her on precisely the same topics that are relevant here and thus cannot claim any surprise regarding her testimony.

## **CONCLUSION**

The Court should deny the motion to strike.

Dated: September 7, 2023

---

[4] The HSDs hereby withdraw Tamra Trickey.

*__Counsel for HomeServices of America, Inc.,
BHH Affiliates, LLC, HSF Affiliates, LLC__*

*/s/ Robert D. MacGill*
Robert D. MacGill, *pro hac vice*
Scott E. Murray, *pro hac vice*
Matthew T. Ciulla, *pro hac vice*
Patrick J. Sanders, *pro hac vice*
MacGill PC
156 E. Market St.
Suite 1200
Indianapolis, IN 46204
(317) 721-
1253

robert.macgill@macgilllaw.com
matthew.ciulla@macgilllaw.com
scott.murray@macgilllaw.com
patrick.sanders@macgilllaw.com

Jay N. Varon, *pro hac vice*
Jennifer M. Keas, *pro hac vice*
jvaron@foley.com
jkeas@foley.com
FOLEY & LARDNER LLP
3000 K Street NW, Suite 600
Washington, DC 20007
(202) 672-5300

Brian C. Fries
bfries@lathropgage.com
LATHROP GAGE LLP - KCMO
2345 Grand Avenue, Suite 2200
Kansas City, MO 64108-2618
(816) 292-2000

**_Counsel for Keller Williams Realty, Inc._**

*/s/ Timothy Ray*
David R. Buchanan
dbuchanan@bjpc.com
BROWN & JAMES, PC-KCMO
2345 Grand Boulevard
Suite 2100
Kansas City, MO 64108
(816) 472-0800
Timothy Ray, pro hac vice
timothy.ray@hklaw.com
HOLLAND & KNIGHT LLP
150 North Riverside Plaza, Suite 2700
Chicago, IL 60606
(312) 263-3600

David C. Kully, pro hac vice
david.kully@hklaw.com
Anna P. Hayes, pro hac vice
anna.hayes@hklaw.com
HOLLAND & KNIGHT LLP
800 17th Street NW, Suite 1100
Washington, DC 20530
(202) 469-5415

Jennifer Lada, pro hac vice
jennifer.lada@hklaw.com
HOLLAND & KNIGHT LLP
31 West 52nd Street, 12th Floor
New York, NY 10019
(212) 513-3513

Dina W. McKenney, pro hac vice
dina.mckenney@hklaw.com
HOLLAND & KNIGHT LLP
1722 Routh Street, Suite 1500
Dallas, Texas 75201
(214) 969-1757

***Attorneys for Defendant NATIONAL ASSOCIATION OF REALTORS®***

*/s/ Ethan Glass*
Ethan Glass (pro hac vice)
Samantha Strauss (pro hac vice)
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004-2400
(202) 776-2244
eglass@cooley.com
sastrauss@cooley.com

Beatriz Mejia (pro hac vice)
COOLEY LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
(415) 693-2000
mejiab@cooley.com

Charles W. Hatfield (MO Bar # 40363)
Alexander C. Barrett (MO Bar # 68695)
STINSON LLP
230 W. McCarty Street
Jefferson City, MO 65101
(573) 636-6263
chuck.hatfield@stinson.com
alexander.barrett@stinson.com


***Counsel for Defendant RE/MAX, LLC***

*/s/ Jeffrey A. LeVee*
Jeffrey A. LeVee (Pro Hac Vice)
jlevee@jonesday.com
Eric P. Enson (Pro Hac Vice)
epenson@jonesday.com
Kelly M. Watne (Pro Hac Vice)
kwatne@jonesday.com
JONES DAY
555 Flower St
Los Angeles, California 90071
Tel: (213) 489-3939
Fax: (213) 243-2539

Eddie Hasdoo (Pro Hac Vice)
ehasdoo@jonesday.com
JONES DAY
110 N Wacker Drive, Suite 4800
Chicago, Illinois 60606
Tel: (312) 782-3939
Fax: (312) 782-8585

Danne W. Webb (MO #39384)
Andrea S. McMurtry (MO#62495)
HORN AYLWARD & BANDY, LLC
2600 Grand Blvd., Suite 1100
Kansas City, MO 64108
Telephone: (816) 421-0700
Facsimile: (816) 421-0899
Email: dwebb@hab-law.com
Email: amcmurtry@hab-law.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 7, 2023, an electronic copy of the foregoing was filed with the Clerk of the Court by using the CM/ECF system, and service upon all counsel of record will be accomplished by the CM/ECF system.

*/s/Matthew T. Ciulla*
Counsel to HSDs
