

ATTORNEYS AT LAW

WASHINGTON HARBOUR
3000 K STREET, N.W.
SUITE 600
WASHINGTON, D.C. 20007-5109
202.672.5300 TEL
202.672.5399 FAX
WWW.FOLEY.COM

WRITER'S DIRECT LINE
202.672.5380
jvaron@foley.com

CLIENT/MATTER NUMBER
055143-0109

May 10, 2020

**Via E-Mail**

Brandon J.B. Boulware, Esq.  Matthew L. Dameron, Esq.
Boulware Law  Williams Dirks Dameron LLC
Brandon@boulware-law.com  matt@williamsdirks.com

    Re: *Sitzer* Discovery Matters

Dear Brandon and Matt,

We are writing on behalf of the HomeServices Defendants ("HSDs") with recommendations we can make to our clients to resolve the concerns that we have expressed in writing and during our meet and confers about the breadth, scope, and some of the language of your document requests ("Requests"). Our recommendations are to compromise and arrive at meaningful resolutions and we are hopeful the result is that you show some movement as well. We are committed to making progress on all issues. Our proposals for resolution are our recommendations given that (1) the holiday weekend has made it difficult to facilitate client communications, and (2) we are still evaluating the meaning and effect of the stay order entered by the Court on Friday and have not been able to discuss this with our clients. We remain optimistic that we can work cooperatively towards resolution.

Please recognize that we think the clear majority of our objections are well taken but we are willing to move ahead in this manner nonetheless.

We frankly had hoped to write a more comprehensive discussion of these matters, but the events described above made that difficult and after talking with you yesterday, we came to understand that the best thing to do is to put something in front of you, let you time to consider it, and hope that we can have a productive discussion. Notwithstanding the informal nature of this email, we have given this proposal careful thought.

The following discussion of Definitions, Production of Documents, and Requests is set forth for the three HSDs only. We discuss subsidiary discovery separately below.

  **A.**  **Definitions**

We have attached a list of discrete areas where we believe we need to further clarify or explain how we intend to interpret relevant definitions.

AUSTIN  DETROIT  MEXICO CITY  SACRAMENTO  TAMPA
BOSTON  HOUSTON  MIAMI  SAN DIEGO  WASHINGTON, D.C.
CHICAGO  JACKSONVILLE  MILWAUKEE  SAN FRANCISCO  BRUSSELS
DALLAS  LOS ANGELES  NEW YORK  SILICON VALLEY  TOKYO
DENVER  MADISON  ORLANDO  TALLAHASSEE

4834-9079-1868.5



**B.     Production of Documents**

The offer below is expressly made subject to the Court's stay order. In other words, the HSDs intend to produce only documents relating to those allegations that the Court did not stay. However, we reserve the right to seek further relief in the form of a more comprehensive stay from the Eighth Circuit.

As is contemplated by the ESI Order and TAR Protocol, which we were pleased to see entered, the HSDs will produce responsive, nonprivileged documents as they are kept in the ordinary course of business. Further, our understanding from our TAR Protocol discussions that Plaintiffs prefer that that the HSDs take an expansive view of relevance in training the TAR algorithm, even if it results in a "noisier" production than defense counsel typically would seek to achieve. Under this approach, the HSDs reasonably anticipate producing some amount of documents that are not necessarily responsive to any Request as written.

We propose presumptive confidentiality treatment, pursuant to the TAR Protocol, for all documents/ESI from Ron Peltier, Eugene Blefari, Dana Strandmo, Chris Stuart, the CFOs, and Michael Jalbert.

We will, of course, abide by the Court's rulings on the lookback and post complaint cut-off but may propose for certain limited Requests that the time period be modified. We identify these below.

We also propose to limit the production of certain Requests to the Subject MLS areas—but are otherwise willing to compromise and go beyond that geographic scope on most Requests.

We stand on our privilege objections and continue to assert that the HSDs will not produce documents that are outside of their possession, custody or control, namely, documents of franchisee (*i.e.*, a franchisee of BHH or a franchisee of a HomeServices brokerage subsidiary) or independent contractor agents affiliated with such a franchisee or HSD subsidiary.

Finally, we continue to have concerns about the many Requests that seek "all" documents in broad categories. Although this concern is assuaged to some degree by reaching resolution on HSD custodians and search terms, the fact remains that as written, many of the Requests (*e.g.*, Requests 22, 26, and 27) seek a virtually unlimited number of documents. The HSDs could not possibly collect "all" such documents. Accordingly, in general, the HSDs intend to meet their obligations by harvesting email from the agreed-upon custodians and undertaking a good faith effort to collect additional hard copy or e-documents (*i.e.*, electronic documents other than email, such as Word documents, PowerPoint presentations, etc.) that are responsive to the Requests as negotiated, to the extent they can be located through a reasonable search of HSD central files and the files of agreed upon HSD custodians. We reserve our right to supplement or amend our responses and to raise



May 10, 2020
Page 3

questions of proportionality and undue burden, relevance, or other rights under the Federal Rules of Civil Procedure.

**C.    Specific Requests**

   **1. <u>No Changes to the Following Requests</u>**

Subject to applicable agreement on custodians, search terms, definitions, and the clarifications set out above, and subject to the Stay Order entered by the W.D. Mo. and any future stay entered by the Eighth Circuit, the HSDs are willing to produce responsive nonprivileged documents to the following Requests (excerpted and/or paraphrased below) as written:

- <u>Request 1</u>.  *All Civil Investigative Demands You have received concerning any of the Challenged Restraints and All Communications and Documents produced in response.*
- <u>Request 3</u>.  *All communications with any governmental body or entity about the Challenged Restraints.*
- <u>Request 6</u>.  *All Documents discussing or otherwise relating to the above-captioned lawsuit or* Moehrl v. National Association of Realtors, 1:19-cv-01610 (N.D. Ill.).
- <u>Request 8</u>.  *For the period between January 1, 1996 and the present, all Documents relating to (i) any Trade Association meeting or event at which the Challenged Restraints were voted on, discussed, proposed, adopted, modified, repealed, implemented, or enforced; (ii) the legality of the Challenged Restraints; (iii) proposed changes to the Challenged Restraints, including any discussions to abolish the Challenged Restraints; or (iv) the impact of the Challenged Restraints on the real estate market, including on discount or low-cost Brokers, buyer self-representation, and broker or agent compensation.*
- <u>Request 10</u>.  *All Documents reflecting actions You have taken to implement the Challenged Restraints, including Your rules, requirements, policies, or expectations that Your Employees or Your Franchisees comply with or implement the Challenged Restraints.*
- <u>Request 11</u>.  *All Documents relating to enforcement of the Challenged Restraints.*
- <u>Request 12</u>.  *All manuals, brochures, guidelines, recommendations, policies, and training materials related to the Challenged Restraints or the amount or type of compensation for providing Real Estate Services.*
- <u>Request 13</u>.  *Documents sufficient to identify Your current, former, and future Franchisees or wholly- or partially-owned Brokers.*
- <u>Request 15</u>.  *All Documents relating to Brokers steering, encouraging, or discouraging potential buyers toward or away from a home based on the amount or type of compensation offered in that home's listing, including by: (i) filtering or sorting listings by amount or type of compensation; (ii) declining to disclose to a potential buyer that a home has been listed; (iii) refusing to show a home to a buyer; (iv) discouraging a buyer from submitting*

4834-9079-1868.5



- an offer on a listing; or (v) encouraging a buyer to view or purchase a home based on the amount or type of compensation.
- Request 16. *All Documents referencing or reflecting standard, fixed, traditional, or market commissions for Real Estate Services or the need for industry leadership or discipline in setting the type or amount of compensation for Real Estate Services, excluding Documents concerning the purchase or sale of a single home.*
- Request 19. *All Documents relating to restrictions on the disclosure of MLS data reflecting offered or received Broker compensation.*
- Request 20. *All documents that provide interpretations or guidelines concerning the Challenged Restraints.*
- Request 21. *All documents relating to enforcement of the Challenged Restraints.*
- Request 23. *All Documents relating to the role of MLSs in the market for real estate services, and any actual or potential competitors of or alternatives to MLSs.*
- Request 24. *Documents sufficient to show the types and format of data you retain concerning commissions.*
- Request 30. *All Documents relating to the Named Plaintiffs in this action.*
- Request 31. *All Documents referenced or relied upon in responding to any interrogatory served by any party in this Action.*
- Request 35(i). *All Documents relating to proposed or implemented compliance policies concerning (i) federal, state, or international antitrust laws, competition laws, anti-monopoly laws, anti-cartel laws, unfair competition laws, and any similar laws or regulations . . .*
- Request 38. *Documents sufficient to describe Your policies or practices with respect to the retention or destruction of Documents.*

## 2. Reasonable Narrowing Proposed for the Following Requests

Subject to applicable agreement on custodians, search terms, definitions, and the clarifications set out above, and subject to the Stay Order entered by the W.D. Mo. and any future stay entered by the Eighth Circuit, the HSDs would like to discuss narrowing or clarifying the following Requests:

- Request 2 - Narrow scope of investigations, etc. to those involving Challenged Restraints. *All Documents received through or produced in any investigation, regulatory proceeding, or lawsuit involving the Challenged Restraints or concerning possible, alleged, or actual violations of federal, state, or international antitrust or similar laws or regulations.*
- Request 4 - eliminate scope as reaching undefined "co-conspirators" other than named defendants. *All Documents relating to or reflecting Communications between You and any other Defendant or Co-conspirator concerning: (i) the Challenged Restraints or (ii) for all Communications that do not concern the purchase or sale of a single home, the amount or type of compensation for providing Real Estate Services.*



May 10, 2020
Page 5

- Request 7 - Narrow Request to relevant NAR committees (not all or any NAR committees) and eliminate undefined "other material support." *All Documents relating to Trade Associations, including: (i) membership lists, announcements, dates and locations for meetings, presentations (including speaker notes, where applicable), agendas, minutes, notes, attendance lists, expense reports, handouts, reports, statistical bulletins, and correspondence; (ii) Your or Your Franchisees' membership or participation in any Trade Association; and (iii) any financial or other material support that You or Your Franchisees have provided to any Trade Association.*
- Request 14(i) and (iii)-(v) - Limit to Missouri markets. *All Documents relating to: (i) Your agreements with Franchisees and other corporate affiliates; . . . (iii) rules, manuals, policies, or requirements that apply to Your Franchisees or wholly- or partially-owned Brokers; (iv) Your control or supervision of Franchisees; or (v) any requirements or expectations concerning Your Franchisees or wholly- or partially-owned Brokers' membership or participation in Trade Associations or MLSs.*
- Request 14(ii) - limit to Missouri markets for franchisees (for which re have already responded); see below for Missouri Subsidiary proposal. *All Documents relating to: . . . (ii) Your right or practical ability to obtain documents in Your Franchisees' and other corporate affiliates' possession, custody, or control . . .*
- Request 17 - Agreement concerning how to respond in lieu of "all" documents. *All Documents relating to complaints received from any customer of Real Estate Services or any Broker or agent regarding the Challenged Restraints or prices, pricing, or terms or conditions of sale, and all Documents reflecting any policy of Your company concerning the handling of such complaints.*
- Request 18. - Narrow to issues relating to real estate commission or buyer broker compensation offers. *All Documents relating to the development or use of standardized listing agreements or to the inclusion of particular provisions in such agreements.*
- Request 22 - TBD (under discussion with clients). *All documents evaluating, commenting on, or analyzing the level of buyer and/or seller commissions in the real estate industry.*
- Request 25 – Requires more complicated discussion, including modification of time and scope. *Data sufficient to show, for each actual or potential purchase or sale of residential real estate and each actual or potential transaction of Real Estate Services in each Subject MLS, at the most disaggregated level available, the categories of information listed below: (transaction data).*
- Request 26 - TBD (under discussion with clients). *All Documents and data relating to the following, including in the most disaggregated form in which You maintain such data: a. real estate agent, Broker, and parent company compensation for Real Estate Services, including describing or reflecting the compensation amount or percentage (i.e., "splits") among each. b. Projected, forecasted, estimated, planned, or actual demand for Real Estate Services; c. audited or unaudited financial statements; d. Projected, forecasted, estimated, planned, or actual supply of Real Estate Services; e. Projected, forecasted,*



- *estimated, planned, or actual costs of providing Real Estate Services; f. profits, revenues, margins, and loss information regarding Real Estate Services.*
- Request 27 - Concern about scope and request for all documents. *All Documents and data concerning projected, estimated, planned or actual conditions in the markets for residential real estate and Real Estate Services, including: (i) the extent, level, or type of competition, (ii) market shares (including in the United States and in all or some portion of the Subject MLSs), (iii) competitive position, (iv) agent and Broker compensation, and (v) residential real estate costs, supply, and demand; (vi) consolidation, mergers, acquisitions, or joint ventures, (vii) fixed or variable costs; (viii) substitute products; (ix) residential real estate, Broker, or agent capacity or supply; (x) profits, revenues, and loss information; or (xi) other industry statistics.*
- Request 28 - Request for custodian information and documents is overbroad and invasive. We would be willing to produce depo or hearing transcripts if any exist for the relevant period in any antitrust cases or cases that involve the practice at issue in this case. *For each Document Custodian, all [enumerated information and documents].*
- Requests 32 and 33 – Clarify that the HSDs will produce documents that relate to these topics; not expected to produce in a way that would reveal mental impressions, work product, etc. *All Documents that support or disprove any defense, affirmative or otherwise, alleged or asserted by any Defendant in this action. All Documents that support or disprove any procompetitive justification asserted or that might be asserted by any Defendant in this action, or that support or disprove that such procompetitive benefit could have been achieved through less restrictive alternatives.*
- Request 34 - Overbroad; narrow to the violations alleged here. *All Documents relating to actions to conceal or avoid detection of any potential or actual violations of federal, state, or international antitrust laws, competition laws, anti-monopoly laws, anti-cartel laws, unfair competition laws, anti-bribery laws and any similar laws, rules or regulations (including the use of code words or otherwise masking the identity of any Person or entity, meeting in locations or communicating at times or via methods with the intent to avoid detection by any Person or entity, using non-traceable prepaid calling cards or cellphones, noncontract or disposable cell phones, placing calls from public phones, and destroying, secreting, altering or forging Documents).*
- Request 36 - We will produce HomeServices of America's current org chart, which includes HSF and BHH. *All Documents sufficient to show Your corporate structure or organization, including, but not limited to, departments, divisions, parents, subsidiaries, joint ventures, affiliates, or other sub-units including, where applicable, the percentage of any equity, debt or other interests owned by each entity, and control over such entities, including but not limited to board appointments and/or shareholder committees.*
- Request 37 - The HSDs have produced rog responses and employee rosters for the HSDs for the last five years. See below for proposal on scope of Missouri subsidiary discovery. *As to each of Your divisions, subdivisions, departments, units, subsidiaries, parents,*



May 10, 2020
Page 7

> *affiliates and joint ventures, Documents sufficient to identify (i) Your, Your Franchisees', and Your wholly- or partially-owned Brokers' current or former directors, executives, or officers and (ii) each employee with responsibilities relating to the Challenged Restraints, compensation for Real Estate Services, Your or Your Franchisees' relationships with Trade Associations, or Your or Your Franchisees' relationships with MLSs.*

3. **Problem Requests**

Subject to applicable agreement on custodians, search terms, definitions, and the clarifications set out above, and subject to the Stay Order entered by the W.D. Mo. and any future stay entered by the Eighth Circuit, the HSDs state that Requests 29 and 35(ii) are overly broad and unduly burdensome. *All Documents related to the claims and allegations in the Complaint. All Documents relating to proposed or implemented compliance policies concerning . . . (ii) contacts and/or Communications with Your competitors, and all Documents relating to any inquiries or investigations concerning compliance with such policies.*

**D.    SCOPE OF DISCOVERY FROM MISSOURI REAL ESTATE SUBSIDIARIES**

Again, our proposal here is subject to the Stay Order entered by the W.D. Mo. and any future stay entered by the Eighth Circuit.  As we have explained at length, we are very concerned about the overbreadth of the Requests as they would apply to an operating company context. Indeed, for this reason you agreed to negotiate the Requests as applied only to the HSDs. Many of the Requests are so broad that they would bring in virtually all day-to-day communications for an operating company, including transaction level communications and documents that will have nothing to do with the issues in the case (for example, Request 23 broadly seeks "all" documents "relating to the role of MLSs in the market for real estate services… " This concept is by no means discrete for an operating real estate broker.  MLSs have a role in the vast majority of relevant real estate transactions, such that this request would capture individual conversations between an independent agent and a customer that mentioned the MLS on which the relevant property was listed.)  The HSDs assume that Plaintiffs do not want such documents.  Further, it would pose an unreasonable burden on HSoA and its Missouri subsidiaries ("Missouri Subsidiaries") have to find and produce them.  Similar concerns abound with issues such as commissions, compensations for real estate services, and communications between brokers.

As discussed, we continue to evaluate the Court's Friday Stay Order, but believe that it is of particular import to this category of information and that transaction data relative to arbitrating plaintiffs should not be the proper subject of discovery.  Thus, the HSDs, subject to further review, would produce at this time documents and data that contain commission information from non arbitrating plaintiffs. From ReeseNichols, this includes: (1) MLS data "scrapes" maintained in the ordinary course of business, which contain initial offered commission data from the MLS, and (2) settlement statements maintained in the ordinary course of business, which contain final commission data from both sides

4834-9079-1868.5



May 10, 2020
Page 8

of the transaction. From HSF and BHH, we would produce at this time commission data for Missouri BHH franchisees.

We understand that we are under a Court order to negotiate the contours of a potential commission related data production, and we further understand that you have a different view of the Court's Stay Order than we have expressed. In the event our discussions with our clients do not result in any modification of this view, and our negotiations with you do not resolve this issue such that we are required to produce a broader swath of commission related data (*i.e.*, if the Court clarifies its Stay Order and determines that discovery of arbitrating plaintiff commission data has not been stayed), we would propose to produce the following additional materials.

Please note that, with respect to any production of commission related data, our production would be limited by geographic and temporal scope.

From the Missouri Subsidiaries (not to include any affiliated businesses owned by the Missouri Subsidiaries):

- Documents that would be responsive to Requests 1-3 if issued to the Missouri Subsidiaries, subject to any modifications identified above
- Information sufficient to show any Trade Association of which a Missouri Subsidiary employee has board membership or other leadership role
- Manuals, brochures, guidelines, recommendations, policies, or training materials from the HSDs related to the Challenged Restraints, compensation for Real Estate Services, or membership or participation in Trade Associations or MLSs
- Information sufficient to show the Subject MLSs used by the Missouri Subsidiaries
- Non-duplicative transaction and commission data for Missouri Subsidiary transactions in the past five years
- Non-duplicative accounting and income information
- A sampling of form listing agreements and buyer agreements for Missouri Subsidiary transactions in the past five years
- Document retention policies

Based on the foregoing—as well as the comprehensive search of the HSD custodians—we do not believe individual custodian searches for the HSDs are necessary. We are very concerned at the anticipated size of the collection and review here. As you know, because of our TAR process, we did not negotiate or narrow Plaintiffs' initial search terms, which—as applied to the over 2.8 million emails that we initially collected from just *six* custodians and culled—yielded over 600,000 documents. With 19 agreed HSD custodians, that total number of search term hits, even appropriated culled, will increase by multiples. In light of these various considerations, at most, we would propose a search of emails from 2-3 Missouri subsidiary custodians for the Topics in Requests 15, 19, 20, and 21, subject to any modifications identified above. We have attached, as requested, an employee roster

4834-9079-1868.5



for the Missouri Subsidiaries for the past five years. We suggest that a meaningful custodian would be Krista Wilson, who is an experienced sales manager and SVP of brokerage for ReeceNichols and, to our knowledge, one of what seem to be relatively few ReeceNichols employees with MLS/trade association involvement (Ms. Wilson has been a board member at Heartland MLS).

We look forward to speaking with you tomorrow. If we are able to clarify some of the views under discussion with our client in advance of our discussion, we will try to do so.

Sincerely,

Jay N. Varon

JNV:jmk

cc. Brian Fries, Jennifer Keas, Robert MacGill, Melinda Levitt, Joseph Wendt