IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| RHONDA BURNETT, JEROD BREIT, JEREMY KEEL, HOLLEE ELLIS, and FRANCES HARVEY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs<br><br>v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP. (n/k/a ANYWHERE REAL ESTATE, INC.), HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC, RE/MAX LLC, and KELLER WILLIAMS REALTY, INC.<br><br>Defendants. | Case No. 19-cv-00332-SRB |

**PLAINTIFFS' OPPOSITION TO HOMESERVICES'
MOTION IN LIMINE REGARDING THE RELATIONSHIP
BETWEEN ITS PARENT AND SUBSIDIARY ENTITIES (DOC. 1223)**

The Court has already recognized that Section 1 liability turns on corporate realities, not corporate formalities. Specifically, "When the parent controls, directs, or encourages the subsidiary's anticompetitive conduct, the parent engages in sufficient independent conduct to be held directly liable as a single enterprise with the subsidiary under the Sherman Act." (Doc. 1019 at 17) (quoting *Nobody in Particular Presents, Inc. v. Clear Channel Commc'ns, Inc.*, 311 F. Supp. 2d 1048, 1070 (D. Colo. 2004)); *accord In re Dealer Mgmt. Sys. Antitrust Litig.*, No. 18-cv-864, 2018 WL 6629250, at *7 (N.D. Ill. Oct. 22, 2018); *Intell. Ventures I LLC v. Capital One Fin. Corp.*, No. PWG-14-111, 2016 WL 160263, at *5 (D. Md. Jan. 14, 2016); *BanxCorp v. Apax Partners, L.P.*, Civil Action No. 10-4769 (SDW)(MCA), 2011 WL 1253892, at *4 (D.N.J. March 28, 2011); *In re Penn. Title Ins. Antitrust Litig.*, 648 F. Supp. 2d 663, 689 (E.D. Pa. 2009).

One of the central issues in the case against HomeServices is how much control the company's parent entities exercise over the company's subsidiary entities. As the Court stated in denying HomeServices' motion for summary judgment, the jury is entitled to determine whether the various HomeServices entities are independently controlled and managed, or whether they are considered "a single enterprise" under the Sherman Act:

> the Court also finds that Plaintiffs have presented sufficient evidence to create a genuine dispute of material fact as to whether the HomeServices Defendants are independently managed and have consolidated decision-making power, or entities capable of conspiring under § 1 of the Sherman Act. *See American Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 196–97 (2010) (holding the determinative "question is whether the agreement joins together 'independent centers of decisionmaking'" and finding entities were not capable of conspiring for § 1 purposes where they were each "a substantial, independently owned, and independently managed business"). For example, Robert Moline served as CEO of HSoA at some point from 2008 to 2017, and "[s]omewhere towards the end" was "given the title of CEO of HomeServices Residential Real Estate Brokerage or whatever, which is a nonexistent entity;" however, these titles "didn't matter" because, regardless of his position, he "kept doing the same things [he] was doing before." (Doc. #936-46, p. 3.) When asked if HSoA's subsidiaries and franchisees competed with one another, Moline responded, "[H]ow do you compete with yourself?" (Doc. #963-46, p. 7.)

Doc. 1019 at 16 n.13.

HomeServices' motion focuses on the deposition testimony of Kevin Goffstein. But that testimony confirms the level of control that the HomeServices Defendants exercise over their subsidiaries. Goffstein is the President of Berkshire Hathaway HomeServices Alliance Real Estate, which is a wholly owned HomeServices subsidiary in St. Louis. (Goffstein Depo. at 16:6-10). He considers Defendant HomeServices of America to be his employer:

Q. Can you tell the jury who your present employer is.

A: HomeServices of America.

Q: And how long have you worked for HomeServices of America?

> A: Since March -- we – it's a little complicated, but we were -- our company was acquired on 12/31 of '21. We remained on our existing payroll until, I believe, we transitioned on March 1 of '22. At which time, we went onto the HomeServices of America payroll, but I think that, technically, we were at the beginning of '22.

(*Id*. at 9:11-22). He also testified that while acting as President of Berkshire Hathaway HomeServices Alliance Real Estate, he takes direction from HomeServices of America and its CEO, Gino Blefari:

> Q: . . . But if you picked up the phone and said, Mr. Blefari's on the phone, he'd like to talk to you, that's a call you would take, correct?
>
> A: Of course.
>
> Q: And if he said, hey, I have an expectation you're going to do the following things and carry out the following directives, that's something you would follow, correct?
>
> MS. KEAS: Object to form.
>
> THE WITNESS: Can you give me an example?
>
> Q: (By Mr. Ketchmark) Sure.
> You picked up the phone and it says Mr. Blefari's on the phone and he says, hey, I need to have the financials sent over and I need to know what our plan of attack is in the following area, that type of thing; you would do that, correct?
>
> A: I would direct somebody to do that.

(*Id*. at 18:5-22).

HomeServices also references the deposition testimony of Mike Frazier. But again, that testimony further confirms the level of HomeServices' control over its subsidiaries. Frazier is the CEO of three other HomeServices subsidiaries: ReeceNichols Real Estate, Inc., BHHS Kansas City Realty, and BHHS Alliance Realty. (Doc. 1223 at 2). He admitted that Blefari holds monthly "CEO calls" to issue directions to the various HomeServices affiliates:

3

Q. And on the next page it talks about -- it's from HomeServices of America, and it's about a CEO call and agenda. And it says, "Please see attached agenda and the financials for today's CEO call." Do you see that?

A: Yes.

Q: And there's a CEO call that takes place with the chief executive officer of HomeServices of America that you and all the various other CEOs of the companies affiliated with HomeServices of America participate in; correct?

A: Correct.

Q: And so you're participating in that both on behalf of ReeceNichols and of Berkshire Hathaway, the various affiliates; correct?

A: Correct.

Q: And how often does that call take place?

A: That call takes place once a month.

Q: And Mr. Blefari is the one who is leading that call right now; correct?

A: Correct.

Q: Often?

A: Correct.

Q: And when he's doing so, he's doing so as the CEO of HomeServices of America, but he's also the chairman of HomeServices Affiliates and the chairman of Berkshire Hathaway HomeServices; correct?

MR. VARON: Object to the form.

A: Correct.

Q: (By Mr. Ketchmark) There's that common ownership between -- or that common involvement of him as the chairman of those different companies and the CEO of HomeServices; correct?

MR. VARON: Object to the form.

A: In this capacity, he's chairman of HomeServices of America.

(Frazier Depo. at 56:8-57:18) (attached).  Again, this testimony shows that the HomeServices Defendants exercise direct control over their subsidiaries, who are on the front lines implementing corporate policies devised by Blefari and other HomeServices executives.  In other words, it shows that the HomeServices Defendants are "directly liable as a single enterprise with the[ir] subsidiary[ies] under the Sherman Act." (Doc. 1019 at 17).

HomeServices tries to evade the control issue by mischaracterizing Plaintiffs' claims.  Plaintiffs don't allege any "intra-corporate conspiracy" between the various HomeServices Defendants in this case. (Doc. 1223 at 2).  To the contrary, Plaintiffs allege that the HomeServices Defendants entered into a combination or conspiracy with NAR, Keller Williams, Anywhere, and RE/MAX to follow and enforce the Mandatory Offer of Compensation Rule.  And they further claim that HomeServices consolidates its power so much that no conspiracy among the subsidiaries would be possible – the parent entities make the decisions, and the subsidiaries implement those decisions.

Likewise, Plaintiffs make no claim that the HomeServices Defendants are liable *only* because their "sister subsidiaries hav[e] common officers and directors."  (*Id*. at 1).  Again, the issue is one of control.  Commonality of management and officers is not *determinative* of the degree of control exercised by the various HomeServices entities, but it's certainly *relevant* to that issue.  After all, it's much easier to exercise control over a subsidiary when you're one of its top officers.  Goffstein testified that HomeServices subsidiary Berkshire Hathaway HomeServices Alliance Real Estate ordered its agents to join NAR, follow NAR's rules, and follow commission guidelines that required a fixed rate across all agents.  It is ultimately for the jury to determine whether Berkshire Hathaway HomeServices Alliance Real Estate acted independently when taking

5

Case 4:19-cv-00332-SRB   Document 1225   Filed 10/13/23   Page 5 of 8

those actions, or whether the HomeServices Defendants "controlled, directed, or encouraged" it in doing so, making them "a single enterprise" under the Sherman Act.

Finally, HomeServices asks the Court to require Plaintiffs to recognize "the corporate separateness of the HomeServices Defendants, their subsidiaries and franchisees." (Doc. 1223 at 6). The issue of whether HomeServices maintains corporate separateness is a hotly contested issue of fact for the jury to decide. Indeed, even HomeServices' ownership does not recognize the rigid distinctions that the company makes in this motion:

> I have told you several times about HomeServices, our growing real estate brokerage operation. Berkshire backed into this business in 2000 when we acquired a majority interest in MidAmerican Energy (now named Berkshire Hathaway Energy). MidAmerican's activities were then largely in the electric utility field, and I originally paid little attention to HomeServices.
>
> But, year-by-year, the company added brokers and, by the end of 2016, HomeServices was the second-largest brokerage operation in the country – still ranking, though, far behind the leader, Realogy. In 2017, however, HomeServices' growth exploded. We acquired the industry's third-largest operator, Long and Foster; number 12, Houlihan Lawrence; and Gloria Nilson.
>
> With those purchases we added 12,300 agents, raising our total to 40,950. HomeServices is now close to leading the country in home sales, having participated (including our three acquisitions pro-forma) in $127 billion of "sides" during 2017. To explain that term, there are two "sides" to every transaction; if we represent both buyer and seller, the dollar value of the transaction is counted twice.

Letter from Warren E. Buffett to Berkshire Hathaway Shareholders, Feb. 24, 2018, at 5-6 (retrievable at https://www.berkshirehathaway.com/letters/2017ltr.pdf). Berkshire Hathaway treats HomeServices as a single enterprise, and the jury is entitled to do the same. HomeServices can make its arguments to the jury, but Plaintiffs are entitled to present their evidence and make their arguments too.

## Conclusion

For these reasons, Plaintiffs request that the Court deny HomeServices' motion in its entirety.

Dated: October 13, 2023

Respectfully submitted by:

**KETCHMARK & McCREIGHT, P.C.**

*/s/ Scott A. McCreight*
Michael S. Ketchmark #41018
Scott A. McCreight #44002
11161 Overbrook Road, Suite 210
Leawood, KS 66211
(913) 266-4500
mike@ketchmclaw.com
smccreight@ketchmclaw.com

Eric L. Dirks #54921
Matthew L. Dameron #52093
**WILLIAMS DIRKS DAMERON LLC**
1100 Main Street, Suite 2600
Kansas City, MO 64105
(816) 945-7110
dirks@williamsdirks.com
matt@williamsdirks.com
cstout@williamsdirks.com

Brandon J.B. Boulware #54150
Jeremy M. Suhr #60075
Erin D. Lawrence #63021
**BOULWARE LAW LLC**
1600 Genessee, Suite 416
Kansas City, MO 64102
(816) 492-2826
brandon@boulware-law.com
jeremy@boulware-law.com
erin@boulware-law.com

Counsel for Plaintiffs and the Classes

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 13th day of October, 2023, the foregoing was sent via electronic mail to all counsel of record.

                                                */s/ Scott A. McCreight*
                                                Attorney for Plaintiffs and the Classes