| | |
|---|---|
| SCOTT AND RHONDA BURNETT, RYAN HENDRICKSON, JEROD BREIT, SCOTT TRUPIANO, JEREJMY KEEL, HOLLEE ELLIS, and FRANCES HARVEY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC, RE/MAX LLC, and KELLER WILLIAMS REALTY, INC.,<br><br>Defendants. | Case No.: 4:19-cv-00332-SRB<br><br>Judge Stephen R. Bough |

# SUGGESTIONS IN SUPPORT OF THE HOMESERVICES DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

With the Plaintiffs' having now presented their case to the jury, the absence of any conspiracy evidence against the HomeServices Defendants[1] is glaring. There is no evidence of any kind – neither direct nor circumstantial – that any HomeServices Defendant entered into any kind of agreement with anyone relating to the conduct being challenged in this case. In particular, with respect to NAR's Cooperative Compensation Rule:

- There is no evidence that any HomeServices Defendant was ever involved in any meeting or conversation at NAR – or anywhere else, for that matter – where the Rule was discussed;
- there is no evidence that the HomeServices Defendants ever took any action to follow and enforce the Rule, let alone any evidence that HomeServices coordinated any such action through some agreement with someone else; and
- there is no evidence that any HomeServices Defendant ever thought about the Rule or discussed it, whether internally or with anyone else.

Lacking any direct or circumstantial evidence of an actual conspiratorial agreement to follow and enforce the Rule, Plaintiffs have instead focused their case on red herrings. For example, they offer evidence that BHH Affiliates, LLC requires its franchisees to comply with NAR's Code of Ethics. But there is no evidence that BHH Affiliates, LLC imposed this requirement as part of some agreement with NAR, Keller Williams or anyone else. There is no evidence this requirement was anything other than a unilateral decision made by BHH Affiliates, LLC, and such unilateral conduct cannot form the basis of a Sherman Act conspiracy claim. And, in any event, NAR's Code of Ethics does not contain the Cooperative Compensation Rule being

---

[1] HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, and HSF AFFILIATES, LLC.

challenged in this case – that Rule is contained in NAR's separate and unrelated Handbook on Multiple Listing Service Policy.

As another example, Plaintiffs offer evidence that certain training materials made available by BHH to affiliated agents use an example of 6% when illustrating commissions. But using 6% as an *example or illustrative* real estate commission is ubiquitous in the United States, and there is no evidence of any kind that BHH chose this example as part of an agreement with NAR, Keller Williams, or anyone else to fix commissions at a particular level. And, in any event, such examples have no relationship to Plaintiffs' alleged conspiracy to follow and enforce that NAR Rule.

Because Plaintiffs have not presented any evidence showing an agreement between any HomeServices Defendant and any other party relating to the Cooperative Compensation Rule, the HomeServices Defendants are entitled to judgement as a matter of law on Plaintiffs' claim under Section 1 of the Sherman Act under Fed. R. Civ. P. 50(a).

The HomeServices Defendants are also entitled to judgment as a matter of law for the reasons set forth in the separate motions to be filed by NAR and by Keller Williams, both of which the HomeServices Defendants hereby join and incorporate.

I.  **Summary of Evidence Presented Against the HomeServices Defendants**

Plaintiffs offered evidence from the following four (4) witnesses associated with the HomeServices Defendants in their case-in-chief. We summarize the evidence that Plaintiffs appear to be relying on in their attempt to prove their conspiracy claim against the HomeServices Defendants below.

### A. Dana Strandmo

Dana Strandmo is the Chief Administrative Officer for HomeServices of America, Inc. ("HSoA"), and he testified at deposition as the company's corporate representative. Plaintiffs focused on the following topics with Mr. Strandmo:

- One meeting in 2017 relating to the Council for Multiple Listing Services ("CMLS"). Mr. Strandmo testified that he received an invitation and proposed agenda via email for the meeting. (PX-0767.) Mr. Strandmo further testified that he believed he was not "an attendee at this meeting." Regardless, there was no evidence that anything was discussed or done at this meeting relating to NAR's Cooperative Compensation Rule. (Strandmo Tr. Pp. 8-30; 168-169.)

- A "marketing script" for Gino Blefari in which Mr. Blefari stated that he charged 6% while working as an agent in California and told his clients that he would only negotiate up from there. (Strandmo Tr. Pp. 97-109.)

- A PowerPoint presentation from a wholly-owned subsidiary, Intero Real Estate Services, that referred to earning a "full commission.". (Strandmo Tr. pp. 109-112; PX-1582.)

- A cartoon excerpt from the Intero PowerPoint presentation showing an agent wearing a shirt that says "6%." (Strandmo Tr. pp. 111-112; PX-1582.)

- A mass email sent to Ron Peltier by the Minnesota Association of REALTORS® that included a list of top books for real estate agents. This list referred to Gary Keller's *The Millionaire Real Estate Agent* as a recommended book. (PX-1588; Strandmo Tr. pp. 139-140.)

- NAR's Corporate Ally Program, which Mr. Strandmo had never heard of but which listed HomeServices of America as a Founding Broker Investor. (PX-1604; Strandmo Tr. pp. 149-155.)

- The fact that Ron Peltier, HomeServices of America's chairman, served on NAR's 900-plus member Board of Directors for a period of time after which the Rule was already in place. (Strandmo Tr. pp. 150-151.)

- A statement in a particular BHH training presentation that the best way to eliminate competitors is to include them by explaining that all real estate companies collaborate and then focusing on your own company's services. (PX-1603; Strandmo Tr. pp. 124; 159-161.)

B.  **Gino Blefari**

Gino Blefari is the Chief Executive Officer of HomeServices of America, Inc. Mr. Blefari testified by deposition, and Plaintiffs focused on the following testimony during their case-in-chief:

- Evidence that HSoA supported NAR's adoption of the Clear Cooperation Policy in 2019, also known as the "pocket listing" rule. (Blefari Tr. pp. 16-19; 29-31.) Under this policy, an MLS participant who publicly markets a home for sale must submit that listing to the MLS within one (1) business day of any public marketing.

- The same training script referred to above in which Mr. Blefari shared his technique for responding to requests to reduce his commission when he was an agent. (Blefari Tr. pp. 35-40; PX-0686)

5

- Mr. Blefari's attendance at NAR's RES Advisory Group meetings. Mr. Blefari testified that the RES Advisory Group was composed of large brokers from around the country. Mr. Blefari participated in such meetings "[o]n and off" for maybe 25 years. (Blefari Tr. pp. 59-60.)
- Evidence that Mr. Blefari was copied on an email from Intero that was developing a model for its own office to encourage agents to charge 5.5%-6% commissions within that subsidiary. (Blefari Tr. pp. 60-65; PX-0684.)

**C.  Rosalie Warner**

Rosalie Warner is the Senior Vice President of Network Services for HSF Affiliates, LLC. Ms. Warner testified at deposition as the corporate representative of both HSF and BHH. In their case-in-chief, Plaintiffs focused on the following topics with Ms. Warner:

- The fact that HSoA, HSF and BHH have overlapping officers and directors. (Warner Tr. pp. 14-16; 21-23.)
- That BHH requires franchisees who list properties on an MLS to provide a feed from any MLSs they are using to BHH, and she is not aware of any BHH franchisees or company-owned brokerages who do not list properties on an MLS if an MLS for that area is available. (Warner Tr. pp. 24-26.)
- The requirement that franchisees comply with NAR's Code of Ethics. (Warner Tr. p. 27.)
- Additional testimony regarding the BHH Blefari script, the BHH training on including competition in a franchisee's marketing plan, and the Intero cartoon referenced above. (Warner Tr. pp. 31-34; 47-49; 54-57.)

- That two HSoA subsidiaries in Missouri – Metro, LLC (d/b/a Berkshire Hathaway HomeServices Alliance Real Estate) ("Alliance") and Reece & Nichols Realtors, Inc. (d/b/a ReeceNichols Real Estate) ("ReeceNichols") – have overlapping leadership. (Warner Tr. pp. 70-74.)
- HSoA's support for NAR's Clear Cooperation Policy. (Warner Tr. pp. 76-78.)
- That BHH and HSF do not get involved in discussions of commission plans with their BHH franchisees or subsidiaries. (Warner Tr. p. 85.)
- That BHH and HSF do not get involved in how or whether franchisees offer cooperative compensation to buyer agents. (Warner Tr. p. 85-86.)

**D.    Kevin Goffstein**

Kevin Goffstein is the President of Alliance. Mr. Goffstein testified by deposition, and Plaintiffs focused on the following testimony in their case-in-chief:

- That Alliance and ReeceNichols have overlapping leadership. (Goffstein Tr. pp. 12-14.)
- That, if Mr. Blefari were to make a hypothetical request for information, Mr. Goffstein would respond. (Goffstein Tr. pp. 17-19.)
- The BHH requirement that franchisees comply with the NAR Code of Ethics. (Goffstein Tr. pp. 37-42.)
- The BHH requirement that franchisees who participate in an MLS provide a feed from that MLS to BHH. (Goffstein Tr. pp. 38-39.)
- The requirement imposed by Alliance (an HSoA subsidiary and a BHH franchisee) on its agents to join NAR. (Goffstein Tr. pp. 47-50.)

- That Alliance has a "buyer agency commission" policy requiring its agents to charge at least 2.7% plus a $295 fee. (Goffstein Tr. pp. 68-72.)
- The fact that the Affiliated Business Arrangement Disclosure Statements for ReeceNichols shows typical charges for broker commissions as $200-$1,000, plus 6%-10% of the sales price. (PX-2922.) A similar disclosure statement for Alliance shows $295-$1,000 plus 6%-10% of the sales price, "(unless otherwise negotiated.)" (PX-4513) (Goffstein Tr. pp. 72-75.)
- An email where Mr. Goffstein was discussing an upcoming vote in his capacity as a board member of the MARIS MLS with an employee of Coldwell Banker Gundaker. (Goffstein Tr. pp. 75-80; PX-4524.)
- That Mr. Goffstein has served on the Board of Directors for MARIS, a NAR-affiliated MLS. (Goffstein Tr. p. 79.)

### E. Dr. Craig Schulman

Dr. Schulman is the economist hired by Plaintiffs to provide expert testimony in this case. During trial, Dr. Schulman testified as follows with respect to the alleged conspiracy against the HomeServices Defendants:

- Dr. Schulman admitted, after at least 6,000 hours of work, he has not seen any evidence that any HomeServices Defendant ever discussed commissions or a particular amount that any listing broker would offer to other participants in the MLS with any other Defendant. (10/19/2023 Rough Trial Tr. at 205:12-208:6.)
- Instead, according to Dr. Schulman, the proof of a conspiracy in in the data. *Id.* at 169:15-170:2. In other words, the "stability" in cooperative compensation offers

is supposedly one of the clearest cases of a price fixing collusion conspiracy that he's ever seen. *Id.* at 186:21-187:1.

- But then on cross examination, Dr. Schulman admitted that he has no opinion on whether there was any conspiracy between the HomeServices Defendants and NAR or Keller Williams. *See id.* at 204:19-205:2.

**II.      Legal Argument**

    **A.      Governing Legal Standard Under Fed. R. Civ. P. 50(a)**

A defendant is entitled to judgment on a claim prior to submission of the case to the jury when "there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party." *Porous Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1080 (8th Cir. 1999) (internal quotation marks omitted). A party must "specify the judgment sought and the law and facts that entitle the movant to the judgement" in its motion. Fed. R. Civ. P. 50(a)(2). When analyzing the motion, the Court must: "(1) resolve direct factual conflicts in favor of the nonmovant, (2) assume as true all facts supporting the nonmovant which the evidence tended to prove, (3) give the nonmovant the benefit of all reasonable inferences, and (4) deny the motion if the evidence… would allow reasonable jurors to differ as to the conclusions." *Wilson v. Lamp,* 995 F.3d 628 (8th Cir. 2021) (internal quotation marks omitted).

    **B.      No Reasonable Jury Could Find that the HomeServices Defendants Entered into the Alleged Conspiracy.**

Plaintiffs attempted to prove that each defendant entered into a conspiracy to "follow and enforce" the Cooperative Compensation Rule contained in NAR's Handbook on Multiple Listing Policy. But they presented no evidence that any of the three HomeServices Defendants ever considered, commented on, or took any action of any kind with respect to that Rule. Without any such evidence, no reasonable jury could find in Plaintiffs' favor on their conspiracy claim against

9

any HomeServices Defendant, and judgment should be entered in the HomeServices Defendants' favor.

To prevail on their conspiracy claim, Plaintiffs must show that each HomeServices Defendant "knowingly—that is, voluntarily and intentionally—joined" the alleged conspiracy to follow and enforce the Cooperative Compensation Rule. (Court's 10/16/2023 Proposed Jury Instruction No. 23). At a minimum, this requires **evidence of an agreement** between each HomeServices Defendant and at least one of the other defendants in this case, whether it be NAR, Keller Williams, Anywhere, or RE/MAX. As described by the Supreme Court, the evidence must show that the HomeServices Defendants and the other alleged conspirators "had a conscious commitment to a common scheme designed to achieve an unlawful objective." *Monsanto Co. v. Spray-Rite Serv. Corp.* 465 U.S. 752 at 764 (1984). Although not all conspirators must join the conspiracy at the same time, there must still be evidence of "[a]cceptance by competitors . . . of an invitation to participate in a plan, the necessary consequence of which, if carried out, is restraint of interstate commerce . . . ." *Interstate Circuit, Inc., v. United States,* 306 U.S. 208, 227 (1939).

Notably, mere evidence of parallel (*i.e,* similar) conduct is **not** sufficient to prove a conspiracy. *See, e.g., Admiral Theatre Corp. v. Douglas Theatre Co.,* 585 F.2d 877, 884 (8th Cir. 1978) ("Only where the pattern of action undertaken is inconsistent with the self-interest of the individual actors, were they acting alone, may an agreement be inferred solely from such parallel action."). Instead, Plaintiffs must "present evidence that 'tends to exclude the possibility of independent action' by the defendants." *Blomkest Fertilizer, Inc. v. Potash Corp. of Saskatchewan,* 203 F.3d 1028, 1032 (8th Cir. 2000) (quoting *Monsanto,* 465 U.S. at 768).

Here, the case presented by Plaintiffs is **devoid of any evidence** that any one of the HomeServices Defendants entered into an agreement with any other defendant, let alone an agreement to follow and enforce the Cooperative Compensation Rule. There is no evidence of any "invitation" to participate in a plan. And there is no evidence of any "conscious commitment to a common scheme." Instead, the evidence shows only unilateral action by the HomeServices Defendants to advance their own self-interests.

Specifically, Plaintiffs offered the following categories of evidence against the HomeServices Defendants:

***Evidence that Ron Peltier, HSoA's former chairman, served as one of over 900 members of NAR's Board of Directors.*** But there is no evidence that the Board considered, discussed, or took any action relating to the Cooperative Compensation Rule during Mr. Peltier's tenure, let alone that he was involved in any such consideration, discussion, or action.

***Evidence that individuals associated with the HomeServices Defendants participated in various NAR programs and meetings.*** But there is no evidence that anyone associated with any HomeServices Defendant ever discussed, considered, or took any action with respect to NAR's Cooperative Compensation Rule at any such program or meeting. The "mere opportunity to conspire" – even in the context of parallel business conduct – is "not necessarily probative evidence of [a] price-fixing conspiracy." *Blomkest,* 203 F. 3d at 1036 (citing *Weit v. Continental Ill. Nat'l Bank and Trust Co.,* 641 F.2d 457, 462 (7th Cir. 1981), with approval).

***Evidence Mr. Strandmo was invited to a meeting of the Council for Multiple Listing Services in 2017.*** But there is no evidence that Mr. Strandmo even attended this meeting, let alone that this meeting involved any consideration, discussion, or action relating to NAR's Cooperative Compensation Rule.

***Evidence that certain training materials made available by BHH Affiliates, LLC included references to a "6%" commission.*** But there is no evidence these training materials were developed as part of an agreement with any other Defendant. And evidence that a HomeServices Defendant sought to maximize commissions collected by its own affiliates is obviously in its own self-interest and not indicative of conspiratorial behavior. *See Admiral Theatre,* 585 F.2d at 884. Nor is there any evidence that any HomeServices Defendant forced or required agents to watch or follow these *optional* training materials or otherwise directed what commissions affiliated agents would charge. Moreover, there is no evidence that any of the Intero training materials were ever used outside of the wholly-owned subsidiary. In any event, this case alleges a conspiracy to follow and enforce NAR's Cooperative Compensation Rule; Plaintiffs do not allege a conspiracy to fix commissions at 6%.

***Evidence that, in 2019, HSoA supported NAR's adoption of the Clear Cooperation Policy*** – a policy designed to ensure that listings were made available broadly through the MLS to everyone as opposed to privately marketed to favored groups of potential buyers. This policy is separate from NAR's Cooperative Compensation Rule and has nothing to do with compensation or commissions. (It is also a rule that does not apply to a substantial portion of the class, because the class period started in 2015, while the Clear Cooperation Policy was not effective until 2020. *See* 10-20-2023 Rough Trial Tr. at 181:6-183:9.) In any event, there is no evidence that HSoA supported this separate policy as part of any agreement with any other Defendant as opposed to as a result of its own independent business considerations.

***Evidence that BHH requires its franchisees to comply with NAR's Code of Ethics.*** But NAR's Code of Ethics does not contain the challenged Cooperative Compensation Rule, which is contained in NAR's separate Handbook on Multiple Listing Policy. And the Code of Ethics

itself does not require the sharing of commissions. To the contrary, Article III of the Code of Ethics expressly states that "[t]he obligation to cooperate does not include the obligation to share commissions, fees, or to otherwise compensate another broker." (DX-4034.) In any event, even if it did, there is no evidence that BHH implemented this requirement as part of an agreement with any other Defendant or that BHH implemented this requirement as part of a "conscious commitment" to a "common scheme" to enforce the Cooperative Compensation Rule.

Plaintiffs' reliance on Standard of Practice 16-15 is misplaced. That standard merely requires that, **if a payment is to be made**, it must go first to the broker, not directly to the individual sales agent: "In cooperative transactions REALTORS® shall compensate cooperating REALTORS® (principal brokers) and shall not compensate nor offer to compensate . . . any of the sales licensees employed by or affiliated with other REALTORS® . . . ." (*Id.*) Notably, Standards of Practice are secondary to Articles in the Code of Ethics, so SOP 16-15 cannot, as a matter of legal interpretation, override Article III's clear directive that there is no obligation to share commissions. *See* Code of Ethics, Explanatory Notes ("The Standards of Practice serve to clarify the ethical obligations imposed by the various Articles . . . .") (*Id.*)

Moreover, the fact that one HomeServices Defendant – BHH Affiliates, LLC – requires its franchisees to comply with NAR's Code of Ethics does not then make BHH responsible for any particular rule included within that Code of Ethics. Neither BHH nor the other HomeServices Defendants are members of NAR; and they have not "surrendered [their] freedom of action in the matter . . . and agreed to abide by the will of the association[,]" as was the case in *Anderson v. Shipowners Ass'n of Pacific Coast,* 272 U.S. 359, 364 (1926). Indeed, whether BHH had any such requirement or not would have made no difference in any of the Plaintiffs' transactions because the MLSs at issue independently required Participants to offer cooperative

compensation to other Participants regardless. Thus, BHH's Code of Ethics requirement could have no connection to the harm Plaintiffs allegedly incurred, even if one were to conclude (incorrectly) that the Code of Ethics requires cooperative compensation. *See St. Louis Convention & Visitors Comm'n v. NFL,* 154 F.3d 851, 861 (8th Cir. 1998) (plaintiff must prove causation as part of Section 1 claim).

Finally, there is no evidence that HSoA was involved in BHH's decision to impose this Code of Ethics requirement. Thus, there is no reasonable basis for finding that HSoA encouraged or directed BHH to require compliance with NAR's Code of Ethics, even if that were the correct standard (which the HomeServices Defendants contest). *Cf. Nobody in Particular Presents, Inc. v. Clear Channel Commc'ns, Inc.,* 311 F. Supp. 1048, 1069 (D. Colo. 2004).

**Testimony from Dr. Schulman.** As set forth above, Dr. Schulman admitted on the stand that he has not seen any document or testimony where any HomeServices Defendant discussed cooperative compensation or commissions with any other Defendant. (10/19/2023 Rough Trial Tr. at 205:12-208:6.) He also contradicted himself by asserting that the "proof" of conspiracy is in the data (*id.* at 169:15-170:2), but that he has no opinion on whether a conspiracy actually occurred. *Id.* at 204:19-205:2. In any event, the data shows only that most agents in Missouri offer the "going rate" to buyer brokers on the MLS. There is no evidence that any of the HomeServices Defendants is involved in setting this "going rate" or in directing any affiliated agents what they should offer – if anything – to other Participants in the MLS. The mere fact that agents themselves choose to offer similar amounts (*i.e.,* evidence of conscious parallelism) is insufficient to justify a finding that any HomeServices Defendant joined any conspiracy. *See Blomkest Fertilizer,* 203 F.3d at 1032.

## III. Conclusion

The above comprises all of the evidence offered by Plaintiffs to support their conspiracy claim against the HomeServices Defendants. And this evidence is wholly insufficient. At the close of Plaintiffs' case, no reasonable jury could find in Plaintiffs' favor on their conspiracy claim against any one of the HomeServices Defendants.

Plaintiffs have utterly failed to meet their evidentiary burden against the HomeServices Defendants, and, pursuant to Fed. R. Civ. 50(a), each of the HomeServices Defendants respectfully move the Court to enter judgement in its favor on Plaintiffs' Sherman Act Claim.

Dated: October 23, 2023

/s/Robert D. MacGill
Robert D. MacGill, *pro hac vice*
Scott E. Murray, *pro hac vice*
Matthew T. Ciulla, *pro hac vice*
Patrick J. Sanders, *pro hac vice*
MACGILL PC
156 E. Market St.
Suite 1200
Indianapolis, IN 46204
(317) 721-1253
Robert.MacGill@MacGillLaw.com
Scott.Murray@MacGillLaw.com
Matthew.Ciulla@MacGillLaw.com
Patrick.Sanders@MacGillLaw.com

Jay N. Varon, *pro hac vice*
Jennifer M. Keas, *pro hac vice*
FOLEY & LARDNER LLP
3000 K Street NW
Washington, DC 20007
(202) 672-5300
jvaron@foley.com
jkeas@foley.com

Brian C. Fries
bfries@lathropgage.com
LATHROP GAGE LLP - KCMO
2345 Grand Avenue, Suite 2200
Kansas City, MO 64108-2618
(816) 292-2000

*Counsel for Defendants HomeServices of America, Inc., BHH Affiliates, LLC, and HSF Affiliates, LLC*

**CERTIFICATE OF SERVICE**

      I hereby certify that on October 23, 2023, a copy of the foregoing document was electronically filed through the ECF system and will be sent electronically to all persons identified on the Notice of Electronic Filing.

                                        */s/ Robert D. MacGill*
                                        Robert D. MacGill