UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| SCOTT AND RHONDA BURNETT, RYAN HENDRICKSON, JEROD BREIT, SCOTT TRUPIANO, JEREMY KEEL, HOLLEE ELLIS, and FRANCES HARVEY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC, RE/MAX LLC, and KELLER WILLIAMS REALTY, INC.,<br><br>Defendants. | Case No.: 4:19-cv-00332-SRB<br><br>Judge Stephen R. Bough |

# THE HOMESERVICES DEFENDANTS'[1] MOTION FOR MISTRIAL AND FOR COSTS AND FEES UNDER 28 U.S.C. § 1927

# OR, IN THE ALTERNATIVE,

# FOR LIMITING INSTRUCTION AND TO STRIKE

---

[1] HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC

"Trial by ambush has long since fallen out of favor." *McClarin v. City of New York*, No. 16-cv-6846-FB-SJB, 2023 U.S. Dist. LEXIS 159377, at *15-16 (S.D.N.Y. Sep. 8, 2023); *see also, e.g.*, *Ginns v. Towle*, 361 F.2d 798, 801 (2d Cir. 1966) ("The basic purpose of the federal rules, particularly those concerning discovery and disclosure, is to eliminate trial by ambush, sometimes called the sporting theory of justice, and avoid the very kind of surprise practiced upon the defense in this case.").

NAR Counsel warned this Court on October 23, 2023 using this very quote. 10/23 Rough Tr., at 14:3-6 ("Trial by ambush has long fallen out of favor. Exempting impeachment material from disclosure obligations must, therefore, not be understood as an invitation to reinstate the practice."). His words were prescient. On October 24, 2023, Plaintiffs' Counsel played an extraordinarily-prejudicial video (the "Ambush Video")—never produced during discovery, and never placed on the Exhibit List—without any notice, without permission, without authentication, without any foundation, and without a competent sponsoring witness. *See* 10/24 Rough Tr. at 258:19-264:12.

The Ambush Video is vulgar.[2] It describes a purported "technique" that a "top [real estate agent] producer" "has been using for 40 years" if a consumer "wants [her] to throw in ten thousand dollars at the closing" as part of a "commission cut" "***objection handling technique***[]." Exhibit A at 1. The Ambush Video compares such a request to that of a "hooker standing outside the Lincoln Tunnel at 3 o'clock in the morning giving bleeping bleeping…bleep t[o] sailors….if

---

[2] Because the Ambush Video was neither produced nor placed on the exhibit list, the HomeServices Defendants do not have a copy of it. And, per custom, the Court Reporter is not transcribing videotapes. For the record, pursuant to Fed. R. App. P. 10(c), the undersigned states that his best recollection is that the video played in front of the Jury is located at the following URL: https://www.youtube.com/watch?v=v1J4z-BjDMw, at Youtube Timestamps: 45:10 – 47:16. The Youtube automatically generated transcript of this section is attached as Exhibit A.

1

you think I'm going to cut my bleeping bleeping commission you can take this home and shove it up your bleeping bleeping." *Id.* at 1-2.

The Ambush Video is not on Plaintiffs' exhibit list. Doc. 1231. It is responsive to at least four requests for production, each served four years ago, on October 18, 2019. Exhibit B at RFP 16, 20, 24, 25. It was never produced.[3]

Plaintiffs' ambush with the highly-prejudicial video is just the most recent event in a series of violative actions. Each and all of them result in the inescapable conclusion that this case has been mistried.

- Plaintiffs attempted to introduce an article from Inman (a real estate industry news platform with 2 million views per month[4]) before the Jury. 10/24 Rough Tr. at 192:10-193:5 ("I'm going to show you 4609, a headline."). The Inman article believed to be offered[5] contained a quotation from the Plaintiffs' lawyer ***in the headline's subtitle***: "An attorney for the Sitzer/Burnett homeseller plaintiffs calls the change a 'stunning admission of guilt' on the eve of a class-action trial set to start Oct. 16." Exhibit C. Although the article itself did not make it into evidence, the following exchange did: "I'm going to show you 4609, a headline. You know what Inman's is, don't you? A Sure. Q We actually have an Inman's reporter who's in the courtroom. He's been covering this trial for your industry." 10/24 Rough Tr. at 192:10-193:5. This encouragement for the Jury to research this case, by specific publication name, means that the Jury will now have greater access to Plaintiffs'

---

[3] Plaintiffs admit as much in Exhibit F.

[4] *See* https://partnerships.inman.com/advertising/advertise-with-inman, archived at https://perma.cc/8948-PRC2.

[5] Again, we do not have a copy of this document. However, as best we can tell, the referenced article is entitled *In 'sudden' reversal, NAR says listing brokers can offer 0%*, and it is attached as Exhibit C.

- Counsel's nightly press conferences with the Inman publication. *See* Exhibit D (using the word "Ketchmark" 61 times).[6]

- Plaintiffs referenced Department of Justice investigations in front of the Jury, despite being ordered not to. 10/20 Rough Tr. at 76:22-24; *see also id.* at 77:3-11 ("I told you not to mention the department of justice. I'm going to strike that…Don't talk about the department of justice.").

- Plaintiffs revealed the residence of NAR's Counsel, despite stipulating that they would not do so. 10/20 Rough Tr. at 95:4-6; *see* Doc. 1119 ¶ 9.

- Plaintiffs attempted to reveal the salary of NAR's executive to the Jury, and did reveal the first digit of the salary. 10/24 Rough Tr. at 15:24-16:9.

- Plaintiffs repudiated their agreement on an exhibit redaction (which redacted state law material in accordance with the Court's Order (which Plaintiffs themselves requested)), and then read a list of state law changes, in violation of that same Court Order. 10/23 Rough Tr. at 117:15-119:8, 120:13-16, 113:18-114:7; *see* Doc. 1242.

- Plaintiffs' expert referenced a change in buyers' agents stating their services are "free" and that this change was caused by "regulatory authorities," in violation of the Court's Order. 10/20 Rough Tr. at 90:12-15; *cf.* Doc. 1132 at 4.[7]

---

[6] *Cf., e.g.*, Mo. R. Prof. Resp. 4-3.6(a) ("A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter."); *see* W.D. Mo. L.R. 83.6(c)(1) (adopting same).

[7] Even "improper, voluntary statements of a witness" may be considered in a motion for a mistrial. *See, e.g.*, *Standard Industries, Inc. v. Mobil Oil Corp.*, 475 F.2d 220, 228 (10th Cir. 1973).

3

- Plaintiffs deleted portions of Defendants' counter-designated deposition testimony when playing their deposition videotape to the Jury. 10/23 Rough Tr., at 25:3-28:3.

Plaintiffs have also made extrajudicial threats to and inappropriate characterizations of Defense counsel in the presence of reporters. Exhibit E at 2 ("Be careful when the rabbit gets the gun."); *id.* at 1 ("He then accused the HomeServices lawyer of not being an 'honest broker' and hinted that he would be unrelenting."); *see also* Exhibit D at 11 ("But as the conversation progressed, Ketchmark became angry again thinking about how MacGill had treated the plaintiffs on the stand. 'These are teachers, a former police officer, an executive director for Mothers Against Drunk Driving,' Ketchmark told Inman. 'He's trying to trick them and fool them and bully them on the stand, saying things that are blatantly not true. That's not the pursuit of justice. It's frustrating to me. We're going to ask the jury to hold them accountable.").

This Court has stated that Plaintiffs' actions are not appropriate, particularly with respect to the Inman articles and surprise ambush impeachment videos:

> THE COURT: So two things, Mr. Ketchmark, on this point that is being raised. I don't think the impeachment with that Inman article was fair. I think, you know, the six days versus earlier in the summer, I don't think that article properly impeached on what he was saying.
>
> So any -- I don't want there to be any more impeachment of witnesses with any Inman articles. Not that there's anything inaccurate in the Inman article or they don't have every first amendment right to be here. My concern was I thought the impeachment with that article of that particular witness was not accurate, and talking about coverage in this case is causing us kind of all concern.
>
> So I would ask that you not do that again. Then, as to the second point that was brought up by Mr. Ray, and maybe this is just a distinction between state and federal court. Kind of the surprise element is supposed to be beaten out of all of us now. And so I'll order that any time you plan on impeaching someone with something not on your exhibit list, that we just take a break

4

and approach, and then we'll resolve it that way so that we give the
opportunity for the defendants to object.

10/24 Rough Tr. at 297:22-298:18.

And, with respect to impeachment material (albeit witnesses in this specific passage), the Court warned Plaintiffs:

> THE COURT: I'm not saying I'm going to let you do that, but I'm just saying that you better be disclosing all that. I just cannot fathom people calling out of the blue that we haven't had an opportunity to discover under our federal system what they could potentially say, both sides. You seem concerned.
> MR. KETCHMARK: I am a little bit, Your Honor, because if it's an impeachment witness, if a witness takes the stand and testifies other than truthfully about something she said --
> THE COURT: I'm telling you if that happens, you need to start disclosing right away that that—
> MR. KETCHMARK: I will immediately….

10/23 Rough Tr. at 16:4-16. Plaintiffs ignored the Court's admonition—the next day, Plaintiffs played the Ambush Video and referenced Inman before the Jury.

Plaintiffs' conduct has become worse each day. It has irrevocably contaminated the Jury. The Court should declare a mistrial.

## ARGUMENT

When an attorney "t[akes] advantage of every possibility opportunity" to make references to and "suggest[ions]" about excluded evidence, the court should order a mistrial and a new trial "be held in the interest of fairness to all the parties." *See Brown v. Royalty*, 535 F.2d 1024, 1028 (8th Cir. 1976). This is especially the case when: (1) a lawyer's "assurances to the court and counsel that he would not do so were empty, and he clearly disregarded the court's rulings during trial that this evidence was inadmissible," or (2) a lawyer "fail[s] to keep his agreement to refrain from" making "impl[ications]" in "blatant breach of [a] pretrial agreement." *Id.*; *see also, e.g.*, *McWhorter v. Birmingham*, 906 F.2d 674, 677 (11th Cir. 1990) ("Trial counsel's closing

argument was in direct violation of the district court's ruling and was thus highly improper."); *Adams Labs. v. Jacobs Engineering*, 761 F.2d 1218, 1219 (7th Cir. 1985) ("We remand this case for a new trial because of the numerous errors that occurred, including prejudicial comments made during the course of the trial.").

Where a lawyer "willfully flout[s] the court's evidentiary rulings and decision[s]"—in contrast to isolated or "extraneous" remarks—and where the Court "might reasonably infer that causing a mistrial was his purpose," the Court may award the party requesting a mistrial "his costs, including reasonable attorney's fees, of the trial." *Manion v. Am. Airlines, Inc.*, 215 F. Supp. 2d 90, 92-93 (D.D.C. 2002) (awarding such sums under 28 U.S.C. § 1927[8] after grant of mistrial).

Because Plaintiffs have repeatedly, willfully, and in bad faith multiplied these proceedings unreasonably and vexatiously by acting in contravention of this Court's orders and rules, in violation of the Federal Rules of Civil Procedure, and in a manner contrary to the Rules of Professional Responsibility, the HomeServices Defendants request: (A) the entry of a mistrial, (B) a new trial, and (C) the taxing of trial costs, including reasonable trial attorney's fees, against Plaintiffs and in favor of the HomeServices Defendants.

I. **The Ambush Video.**

Where an exhibit is "relevant to substantive issues, as well as possibly serving to impeach," it must be produced and identified in advance of an examination. *Chiasson v. Zapata*

---

[8] "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

6

*Gulf Marine Corp.*, 988 F.2d 513, 514, 517 (5th Cir. 1993). It is immune neither from discovery nor exhibit list disclosure. *Id.*

In *Chiasson*, the plaintiff was injured in her workplace, a boat, so she sued her employer. *Id.* at 514. The plaintiff served an interrogatory requesting surveillance videos. *Id.* The defendant denied any videos existed. *Id.* At trial, the court permitted the defendant to play a surveillance video and did not allow the plaintiff to review it in advance. *Id.* at 514-15. The plaintiff moved for a new trial, and the motion was denied. *Id.* at 515.

The Fifth Circuit considered the district court's implicit finding the video was used solely for impeachment and, thus, was immune from discovery and disclosure. *Id.* at 516. It reversed and remanded for a new trial, finding an abuse of discretion. *Id.* at 515, 518.

The panel considered the purpose of Federal Rule 26, noting the "need of [a] party seeking disclosure to evaluate the authenticity of [proffered] evidence (particularly when…the impeachment evidence is in the form of photographs or videotape)." *Id.* at 516. Non-disclosure of evidence (even that purportedly used solely for impeachment)

> flies directly in the face of the very purpose of discovery. The federal rules promote broad discovery so that all relevant evidence is disclosed as early as possible, making a trial "less a game of blind man's bluff and more a fair contest", United States v. Procter & Gamble Co., 356 U.S. 677, 683 (1958), where each party can knowledgeably evaluate the strength of its evidence and chances of ultimate success.

*Id.* at 517.

The panel determined that the videotape should have been disclosed, and the finding that it was immune was reversible error. *Id.* Because the videotape constituted "substantive evidence, at least in part," its purpose was not "solely for impeachment," and, therefore, it was not immune. *Id.* The Fifth Circuit based its decision on the following definitions:

7

>Substantive evidence is that which is offered to establish the truth of a matter to be determined by the trier of fact…. Evidence which would tend to prove or disprove [a matter] must be considered "substantive". …
>
>Impeachment evidence, on the other hand, is that which is offered to "discredit a witness … to reduce the effectiveness of [her] testimony by bringing forth evidence which explains why the jury should not put faith in [her] or [her] testimony."

*Id.* (citations omitted). "Because the tape [was], at the very least in part substantive, it should have been disclosed prior to trial, regardless of its impeachment value. The district court abused its discretion by allowing non-disclosure and admitting the tape into evidence." *Id.* at 517-18 (citations omitted); *see also, e.g.*, *Klonoski v. Mahlab*, 156 F.3d 255 (1st Cir. 1998) ("On the thirteenth day of trial during cross-examination of Dr. Klonoski, the last witness in plaintiff's case, defendants disclosed for the first time and used letters written by Mrs. Klonoski to her sister in Poland. Excerpts from the letters were allowed in evidence. Neither Dr. Klonoski nor his attorneys knew of the existence of the letters prior to this time, despite a court order requiring disclosure of such information prior to trial. ***We find that this constituted trial by ambush***. We vacate the judgment below and remand for a new trial.").

In this case, the referenced video clearly was utilized for substantive purposes. The video itself purports to demonstrate an "objection handling technique[]" to avoid "commission cutting." Exhibit A at 1. Plaintiffs' entire case has revolved around such "objection handlers." *See, e.g.*, 10/17 Rough Tr. at 41:9-12 ("This is one of them at Better Homes and Garden handling an objection. Would you cut your commission?"); *id.* at 41:19-22 ("Can you cut your commission? I could not cut my commission because I would not offer you then less than my very best."); *id.* at 42:1-7 ("We want you to cut your commission. Answer: No. Any other questions?"); *id.* at 39:2-8 ("They have one called Earning Your Full Commission…What gives

8

you the impression I won't negotiate my commission with 6 percent?"); Bailey Tr. at 58:18-24 ("In this particular module on overcoming objections…given an example here of how this agent overcomes the objections on commissions head on by saying it's going to be 6 percent."). Indeed, when introducing the Ambush Video, Plaintiffs stated: "you would never have officers of Berkshire Hathaway HomeServices train real estate agents to intimidate homeowners in order to have higher commissions? You would never do that." 10/24 Rough Tr. at 259:5-9.

An argument that the Ambush Video was used solely for purposes of impeachment is frivolous. Plaintiffs assert that the Ambush Video was used to impeach on an issue that "had nothing to do with any issue in the case." Exhibit F at 1. If that's true, Plaintiffs admit too much—"it is generally improper to rely on extrinsic evidence to impeach a witness about a collateral matter." *Clarett v. Roberts*, 657 F.3d 664, 669-670 (7th Cir. 2011).

Under *Chiasson* and *Klonoski*, Plaintiffs' failure to disclose the substantive-evidence Ambush Video on their exhibit list and in the discovery process constitutes grounds for a mistrial. Plaintiffs offer no sufficient justification or excuse in their letter tendered to the Court, attached as Exhibit F.

The HomeServices Defendants are also entitled to a mistrial under the automatic exclusion sanction in Rule 37(c)(1), cross referencing Rule 26(e)(1), because Plaintiffs were required to supplement their request for production responses and productions when they learned of the Ambush Video. Rule 26(e)(1). Their failure to do so resulted in an automatic, self-executing exclusion of the evidence in the trial. Rule 37(c)(1). Plaintiffs' flouting of this rule and playing of the Ambush Video constitutes an independently-sufficient basis for a mistrial.

The HomeServices Defendants were significantly prejudiced by the Plaintiffs' non-disclosure of the Ambush Video.[9] The HomeServices Defendants were deprived of any opportunity to test the Ambush Video's authenticity, foundation, or credibility; were deprived of any opportunity to develop contextual evidence through deposition or otherwise (for example, depositions of the participants in the video, discovery on documents surrounding the video, etc.); and were deprived of the opportunity to bring live witnesses to trial on the video (such as the participants or others). It is too late to remedy any of these prejudicial factors in the context of this trial. A mistrial must be granted.

## II. The Other Violative Actions.

Plaintiffs' other violative actions, described *supra*, can be summarized into two broad categories: (1) contaminating the Jury through nightly press conferences, coupled with a specific reference to the Jury of the publication in which the Plaintiffs' attorney's quotations appear; and (2) repeated violation of Court Orders. Both categories are additional bases for a mistrial.

**1. Press Contamination.** When press reports reach the Jury, a mistrial can be appropriate. *In re Antibiotic Antitrust Actions*, 1976 U.S. Dist. LEXIS 13631 (D. Minn. Aug. 16, 1976) (mistrial where many news stories had been published containing details, there was an "indirect effect" by the news stories, and press accounts had reached at least some jurors).

In this case, extensive and voluminous reporting by Inman has occurred, including details of the trial. Exhibit D, Exhibit E, Exhibit G, Exhibit H, Exhibit I, Exhibit J, Exhibit K, Exhibit L, Exhibit M. Plaintiffs have now revealed to the Jury how to access this information, and the fact that an Inman Reporter is in the courtroom.

---

[9] Obviously, the content of the video is itself extremely prejudicial.

This is extremely prejudicial. The Jury must not be given access to outside press reports about the trial, especially when Plaintiffs' counsel is giving nightly press conferences to Inman. A mistrial should be declared. At a minimum, the Jury should be polled on this important topic.

**2. Repeated Violation of Court Orders.** Repeated and willful violations of Court Orders are a basis for a mistrial. *Manion*, 215 F. Supp. 2d at 92-93. As summarized above, Plaintiffs' Counsel's conduct and limited decorum is deteriorating. It is not improving. The HomeServices Defendants are increasingly prejudiced each day that the Court permits this conduct to continue. The Court's authority depends upon compliance with Court Orders. A mistrial should be declared.

## PRIMARY REQUESTED RELIEF

The HomeServices Defendants request: (A) the entry of a mistrial, (B) a new trial, and (C) the taxing of trial costs, including reasonable trial attorney's fees, against Plaintiffs and in favor of the HomeServices Defendants.

## ALTERNATE REQUESTED RELIEF

No instruction or "striking" of evidence can cure the prejudice injected into this case by Plaintiffs. The HomeServices Defendants expressly state that the below remedies are insufficient, and they do not cure the significant prejudice caused by Plaintiffs.

However, out of an abundance of caution, the HomeServices Defendants formally request the following alternative relief, to be granted only if the Court denies the motion for a mistrial.

1. The Court should strike the Ambush Video and all relating questioning.
    a. During the striking of the Ambush Video, the Court should read the following jury instruction:

11

Case 4:19-cv-00332-SRB    Document 1265    Filed 10/25/23    Page 12 of 16

i. Ladies and Gentlemen, you saw a video of a podcast played at the end of the cross examination of Mr. Peltier. The video is stricken. You are to give it no weight. You are to put it out of your mind. It is not evidence in this case. Plaintiffs were under an obligation to produce certain documents in this case four years ago. They did not comply with this obligation in the manner required by the Federal Rules of Civil Procedure. Plaintiffs were under an obligation to provide an exhibit list before this trial started. They did not comply with this obligation in the manner required by my Court Order. The playing of the podcast video was not authorized by the Federal Rules of Civil Procedure or by my Court Order. Therefore, I again emphasize that you are not to give it any weight.

ii. The Court should poll the Jury on whether they can follow this instruction (*i.e.*, actually disregard the Ambush Video) and whether they can continue to decide the case fairly and impartially without reference to the Ambush Video.

2. The Court should read the following jury instruction and then strike the below "evidence." Ladies and Gentlemen, before you were empaneled, I presided over a hearing where I decided many motions in advance of this trial. All of my decisions and Orders were placed in a written document and given to the parties before the trial started. Plaintiffs did not comply with these Orders during this trial. I am therefore striking the following from the record. The following materials are not evidence. You

are not to consider them in reaching your verdict. You are to place them out of your mind. Do not give them any weight.

   a. The Court should strike all references to Inman.

      i. The Court should poll the jury to inquire if they have read any press coverage.

      ii. The Court should reiterate its instruction to the Jury that they may not research this case or read press coverage.

   b. The Court should strike all references to the Department of Justice.

   c. The Court should strike all references to the residence of NAR's counsel.

   d. The Court should strike all references to the NAR executive's salary.

   e. The Court should strike the references to action by regulatory authorities.

Dated: October 25, 2023

/s/Robert D. MacGill
Robert D. MacGill, *pro hac vice*
Scott E. Murray, *pro hac vice*
Matthew T. Ciulla, *pro hac vice*
Patrick J. Sanders, *pro hac vice*
MACGILL PC
156 E. Market St.
Suite 1200
Indianapolis, IN 46204
(317) 721-1253
Robert.MacGill@MacGillLaw.com
Scott.Murray@MacGillLaw.com
Matthew.Ciulla@MacGillLaw.com
Patrick.Sanders@MacGillLaw.com

Jay N. Varon, *pro hac vice*
Jennifer M. Keas, *pro hac vice*
FOLEY & LARDNER LLP
3000 K Street NW
Washington, DC 20007
(202) 672-5300
jvaron@foley.com
jkeas@foley.com

Brian C. Fries
bfries@lathropgage.com
LATHROP GAGE LLP - KCMO
2345 Grand Avenue, Suite 2200
Kansas City, MO 64108-2618
(816) 292-2000

*Counsel for Defendants HomeServices of America, Inc., BHH Affiliates, LLC, and HSF Affiliates, LLC*

## CERTIFICATE OF SERVICE

    I hereby certify that on October 25, 2023, a copy of the foregoing document was electronically filed through the ECF system and will be sent electronically to all persons identified on the Notice of Electronic Filing.

                                       /s/ *Robert D. MacGill*
                                       Robert D. MacGill