# Sitzer | Burnett: Live updates from the buyer-agent commission trial

**inman.com**/2023/10/16/sitzer-burnett-live-updates-from-the-buyer-agent-commission-trial

Inman



*Beginning Monday, October 16, the Sitzer | Burnett commission trial begins in Kansas City, Missouri. Inman will be updating this post live throughout the month-long trial. Check back early and often for news, views, schedules and more.*

**KANSAS CITY, Mo.** — One of two lawsuits threatening to upend the way agents are compensated has begun in **U.S. District Court in Western Missouri**.

Inman Deputy Editor **Andrea Brambila** is on the ground for what could be a three-week trial. Many of the biggest names in real estate are expected to testify.

As **Sitzer | Burnett** unfolds in October, check back for updates, including color from the courtroom, on-the-ground reporting, breaking news and schedules.

## TUESDAY, OCTOBER 24 — DAY SEVEN

**5:02 p.m. CDT: Court adjourned** Tuesday after an exchange between **Michael Ketchmark**, attorney for the plaintiffs, and **Ron Peltier**, former CEO of **Berkshire Hathaway HomeServices of America**. The exchange happened after the defendants called Peltier to the witness stand.

Case 4:19-cv-00332-SRB   Document 1265-4   Filed 10/25/23   Page 1 of 25

During cross examination, Ketchmark played video of a podcast in which an executive from HomeServices said he'd never cut his commission — and compared doing so to being a prostitute "standing outside the Lincoln Tunnel"



Watch Video At: https://youtu.be/v1J4z-BjDMw

Ketchmark asked Peltier if the comments reflected HomeServices values, and if the executive should have been fired.

"I'm not speaking for him. He's not speaking for us. He's on a podcast," Peltier replied.

After the judge dismissed the jury at 4:49 p.m. CDT, the exchange prompted some legal fireworks. **Timothy Ray —** an attorney representing **Keller Williams** — told the judge that bringing up the podcast video, as well as an Inman article, "was completely inappropriate and highly prejudicial to us" and "Mr. Ketchmark knows better."

And **Robert MacGill**, an attorney representing HomeServices, also argued that "we have very specific concerns about what Mr. Ketchmark did."

The judge said they would discuss the issue Wednesday morning.

Afterward, Ketchmark told Inman that "we complied with all the rules and all the obligations and we're moving forward."

"We're going to let the jury resolve this case," he added. — *Andrea Brambila*

**3:40 p.m. CDT:** Plaintiffs' attorney **Michael Ketchmark** narrowed in on the consequences for multiple listing services that don't follow the National Association of Realtors' mandatory policies during his cross-examination of NAR Director of Engagement **Rodney Gansho** Tuesday afternoon.

Gansho said the only consequence is the potential loss of insurance coverage. During Ketchmark's cross he surmised most MLS executives don't prioritize the insurance "because they could buy their own and it's not that expensive."

Ketchmark produced a 2018 email Gansho wrote in which he told attorney **Mitch Skinner** of the **Council of Multiple Listing Services** that "continued failure" to adopt the mandatory rules could lead to charter revocation for the local association that owns and operates the MLS. It could also lead the local association to remove officers from the MLS because they have "effective control" of the MLS.



NAR Director of Engagement Rodney Gansho

Gansho also inadvertently provided Ketchmark with some ammunition. Gansho told him that when **HomeServices' Jon Coile** or anyone else serves on a NAR committee they owe a fiduciary duty to NAR. Ketchmark seized on this aspect of the alleged conspiracy, to which Gansho angrily replied, "There's no conspiracy here." — *Andrea V. Brambila*

**1:10 p.m. CDT: National Association of Realtors Director of Engagement Rodney Gansho took the stand Tuesday morning.**

Gansho walked through details of NAR's governance system — its board of directors and committee structure — and explained aspects of **NAR's Code of Ethics**, including Articles 1, 3, 12 and 16. He also laid out the **Clear Cooperation Policy** and how it differed from the **cooperative compensation rule**.

Gansho said the **NAR MLS handbook** was a "model" local Realtor associations use to adopt their own rules. He said they don't have to adopt NAR's rules, but if they don't, "they would jeopardize their errors and omissions insurance policy."

"They can purchase their own insurance if they want to," Gansho said, adding that local **multiple listing services** enforce the rules in conjunction with local associations.

Gansho said offers of compensation in the MLS are negotiable, and he acknowledged that NAR's decision to allow listing brokers to offer no compensation to the buyer's agent "is relatively new."

But when an unidentified MLS **decided to change its policy** — **BrightMLS**, according to Inman's own reporting — NAR reversed its policy, said Gansho, who added that Bright's decision was not orchestrated by NAR.

"We weren't even aware of it," Gansho said. "They never called us." When **Ethan Glass,** an attorney representing NAR**,** asked whether leaving the compensation field blank would be the same as zero, Gansho said, "Leaving it blank is not an offer."

Plaintiffs' attorney **Michael Ketchmark** will cross-examine Gansho after lunch. —*Andrea V. Brambila*

**11:01 a.m. CDT: Sitzer Survey**: **Nearly two-thirds** of you said yesterday that buyers would be well-served if they could wrap their agent's commission into their mortgage. The other **35.3 percent** disagreed.

Today, we want to know: If the industry is significantly changed as a result of the scrutiny it's currently facing, **what do you think will happen to the number of licensed Realtors in the future?** — *Taylor Anderson*

**10:15 a.m. CDT:** Plaintiffs attorney **Michael Ketchmark** cross-examined **NAR CEO Bob Goldberg** Tuesday in an exchange that was testy and, at times, funny.

Ketchmark tried again to make an analogy between chicken producers inflating prices and what NAR is doing. Goldberg said it was an "apples and oranges" comparison because agents offer services, not a product.

Goldberg said he couldn't say whether what the chicken producers did was against the law, to which Ketchmark asked, "Do you need me to explain antitrust law?"

"No," Goldberg replied, "I need you to explain to me the chicken law."



NAR CEO Bob Goldberg

Ketchmark brought up several ways NAR talks about commissions. On redirect, NAR attorney **Ethan Glass** pointed out that Goldberg hadn't said the organization doesn't talk about commissions because it's taboo, he said they don't train their agents to set commissions or what commission rates should be. — *Andrea V. Brambila*

**5:42 a.m. CDT:** We're back inside the **Charles Evans Whittaker U.S. Courthouse** this morning as the defense continues to make its case.

Plaintiffs attorney **Michael Ketchmark** is expected to question **National Association of Realtors** CEO **Bob Goldberg** under cross this morning and will likely seize on portions of Monday's testimony from former NAR president **Sharon Millett** around the **cooperative compensation rule.**

Among the points Millett made on Monday under questioning from **Ethan Glass,** an attorney representing NAR, is that the rule, as devised by the trade organization's **Presidential Advisory Group** in the early 1990s, has no bearing on whether listing brokers compensate buyer brokers. According to a summary provided by NAR, Millett contended that compensation would be offered regardless of the rule because it's the best way to ensure the property gets seen — and in some cases the only way a buyer can afford to complete the transaction.

Of Millett, Ketchmark told Inman, "What a wonderfully nice woman."

"We never suggested her work in 1992 was part of this conspiracy," Ketchmark said, referring to an alleged conspiracy to inflate commissions. "It's how [the rule] is being followed and enforced now that's the issue. And all the defendants know it and that's why they're so afraid." —*Jotham Sederstrom*

## MONDAY, OCTOBER 23 — DAY SIX

**4:54 p.m. CDT:** Court adjourned just before 5 p.m. CDT Monday.

Following testimony from former NAR President **Sharon Millett** Monday afternoon, **Ethan Glass** — an attorney representing the **National Association of Realtors** — called NAR CEO **Bob Goldberg** to testify.

While on the witness stand, Goldberg spoke about what NAR does as a trade organization, and said that the national, state, and local Realtor associations have common membership but not common control. He also said the state and local associations are "all independent of NAR."

When Glass asked whether NAR trains its members what commissions to charge their clients, Goldberg said, "We don't touch that. That's taboo."

Later Glass recalled how it was suggested last week that NAR's incentive in the alleged conspiracy was to maintain its dues revenue. But Goldberg replied, "That's preposterous because we are commission benign." By that, he meant NAR gets its $150 in annual dues per member regardless of what that member charges or how much they make.

After the judge dismissed the jury at 4:54 p.m. CDT, the attorneys and the judge discussed scheduling issues. **Michael Ketchmark**, an attorney representing the plaintiffs, told Inman he'll cross examine Goldberg Tuesday, and that the defense will call NAR Head of

Engagement **Rodney Gansho** to the witness stand. — *Andrea V. Brambila*

**4:15 p.m. CDT:** Attorney **Robert MacGill** has asked Judge **Stephen R. Bough** to rule in favor of **HomeServices of America** and its subsidiaries, **BHH Affiliates** and **HSF Affiliates**, saying plaintiffs failed to find "evidence of any kind" the franchisor was involved in a conspiracy to keep commissions high.



"Lacking any direct or circumstantial evidence of an actual conspiratorial agreement to follow and enforce the Rule, Plaintiffs have instead focused their case on red herrings," MacGill wrote in the Monday filing, otherwise known as a "motion for judgment as a matter of law," wherein the court is asked to enter a legal ruling prior to a jury verdict on the basis that no jury would rule otherwise.

"No reasonable jury could find in Plaintiffs' favor on their conspiracy claim against any one of the HomeServices Defendants," said MacGill, who added that **NAR** and **Keller Williams** would file similar arguments. — *Taylor Anderson*.

Robert MacGill

**3:45 p.m. CDT: The defense makes its case.** Attorney **Michael Ketchmark** rested the plaintiffs' case before lunch on Monday, and when the trial resumed **Beatriz Mejia,** an attorney representing the **National Association of Realtors,** called her first witness to the stand: former NAR President **Sharon Millett.**

Millett was the chair of a **Presidential Advisory Group** at NAR in the early 1990s when the body issued a report that recommended NAR change the cooperative compensation rule. The rule wasn't changed until 1996, Ketchmark acknowledged later in his cross-examination of Millet. — *Andrea V. Brambila*

**1:01 p.m. CDT:** Plaintiffs in the Sitzer | Burnett trial last week focused much of their energy on the training and coaching practices of the nation's largest franchisors.



But when it comes to training agents how to handle seller objections, many have been conditioned to accept "nothing less." Inman contributor Rachel Hite writes. Read the story here. — *Taylor Anderson*

**11:55 a.m. CDT: Sitzer Survey:** On Friday, we asked you what you think would happen if commissions were "decoupled," meaning listing brokers no longer made offers of compensation to buyers' agents, and the buyer agent's commission instead came directly from the buyer.

**56.5 percent** of respondents said commissions would decline if that happened. **28.8 percent** said they didn't expect commissions to change much at all, and the remaining **14.7 percent** said commissions would rise as a result.

That has us wondering, if the industry shifted and buyers were responsible for paying their agents directly, **would they be better-served if they could wrap their agent commission into financing?** — *Taylor Anderson*

**9:53 a.m. CDT:** Attorneys for the homeseller plaintiffs no longer intend to call **RE/MAX** co-founder **Dave Liniger** to the stand, according to an amended court filing viewed by Inman. **Jay Papasan,** the best-selling co-author of *The Millionaire Real Estate Agent* and vice president of strategic content for **Keller Williams,** is also no longer scheduled to testify. — *Taylor Anderson*



**'Rabbit gets the gun': The essential guide to Week 1 of Sitzer | Burnett**

Big names, heated exchanges and the emergence of homeseller plaintiffs on the stand dominated the first week of the Sitzer | Burnett commission trial in Kansas City, Missouri

BY JIM DALRYMPLE II • 6 HOURS AGO

**8:24 a.m. CDT:** Inman Special Projects Editor **Jim Dalrymple II** comes to you this morning with a **palette-cleansing rehash** of the first week of the commission trial, including the **drama**, **tension** and **major arguments** from the plaintiffs' side before the defendants — **NAR** first, then the **brokerage franchisors** — trot out their case later this afternoon.

Before then, read Jim's "Essential Guide to Week 1 of Sitzer | Burnett" here and check back later for updates as the trial gets underway. —*Jotham Sederstrom*

**5:05 a.m. CDT:** Welcome back to **Kansas City, Missouri,** where attorney **Michael Ketchmark** will seek to rest the plaintiffs' case Monday — and perhaps even earlier than desired if the final homeseller named as a class representative, **Frances Harvey**, is unable to take the stand today. Ketchmark told Inman Harvey ran into complications making her way back from travels in Japan.

Beside Harvey, jurors can expect "four relatively short video depositions" before plaintiffs rest: **Rosalie Warner**, vice president of Network Services for HSF Affiliates; **Darrell King**, a former COO and compliance officer for **Keller Williams**; **Cliff Niersbach**, a former associate general counsel for the **National Association of Realtors**; and **Kevin Goffstein,** president of **Berkshire Hathaway HomeServices Alliance Real Estate** and **Alliance Title Group.**

The **National Association of Realtors** is expected to lead when the defense takes the floor later this afternoon, Ketchmark said. —*Andrea V. Brambila*

## FRIDAY, OCTOBER 20 — DAY FIVE

**4:55 p.m. CDT: A wrap for the week.** After four days of arguments and witness testimony, the first week of Sitzer | Burnett wrapped up late Friday afternoon just before 5 p.m. CDT.

Friday's witnesses included **Roger Alford**, a law professor from **Notre Dame**. The plaintiffs will continue making their case Monday, and among other things plan to call Australian real estate expert **Todd Reynolds** as a witness.

**Inman's Andrea Brambila** will be back in the courtroom Monday as well, so stick with us as we head into week two. — *Jim Dalrymple II*

**4:11 p.m. CDT:** What do you say, **ChatGPT**? With training and **objection scripts** under fire as attorneys for the plaintiffs drill down on how agents negotiate commissions, Inman Deputy Service Editor **Christy Murdock** appealed to artificial intelligence chatbot **ChatGPT** for a few tips on how to thoughtfully demonstrate your worth without running up against antitrust no-nos. Although ChatGPT has drawn criticism for real estate advice that runs counter to fair housing laws, Murdock said in the case of objection scripts, its guidance holds up. **See what the bot had to say.** — *Taylor Anderson*

**3:27 p.m. CDT:** "This to me is one of the clearest cases of price-fixing and collusion I've ever seen." **Craig T. Schulman**, an associate professor of economics at **Texas A&M** who took the stand for the plaintiffs, testified Thursday. Nevertheless, on Friday morning he clarified that the legal question of whether there was a conspiracy between the defendants was not under his purview. "That's the job of the jury," he said. — *Andrea V. Brambila*

**12:48 p.m. CDT: Judge-approved.** If you're enjoying Inman's **commission coverage**, you're not alone. This morning inside the **Charles Evans Whittaker U.S. Courthouse**, **Judge Stephen R. Bough,** who is presiding over the **Sitzer | Burnett** trial, showed his computer monitor to reveal he had been reading coverage of the trial on Inman'slive blog, several sources confirmed after the fact. He told the courtroom he was enjoying the coverage, the sources added. — *Andrea V. Brambila*



**11:32 a.m. CDT: Sitzer Survey:** Inman readers weren't so split when we asked yesterday whether you'd ever received training on how to object to a seller who tries to negotiate a lower commission. Just over **69 percent** said yes, you've received such training, compared to **22.6 percent** who said you'd never been trained on the matter. (The remaining 8 percent said neither yes or no.)

Judge Stephen R. Bough

Today, we want to know: **What would happen if listing brokers could no longer make offers of compensation to buyside brokers?** — *Taylor Anderson*

**10:02 a.m. CDT: Ethan Glass, an attorney for the National Association of Realtors,** is currently cross-examining **Craig T. Schulman**, an associate professor of economics at Texas A&M who took the stand for the plaintiffs Thursday.



Glass keeps asking questions he wants yes or no answers to and Schulman keeps trying to offer fuller answers. Glass keeps telling him that he can wait until redirect from **plaintiffs' attorney Michael Ketchmark** to give those answers. — *Andrea V. Brambila*

**5:55 a.m. CDT:** Good morning from the home of **Janelle Monae, Paul Rudd, Walt Disney, Jean Harlow, Robert Altman, Charlie Parker** and **Edie McClurg.**

Ethan Glass | Partner at Cooley

We're back in **Kansas City** as the first week of **Sitzer | Burnett** comes to a close today. Until then, Inman Deputy Editor **Andrea Brambila** will be back in the **Charles Evans Whittaker U.S. Courthouse** around **8:30 a.m. CDT** this morning to file dispatches as the plaintiff's attorneys work to wrap up their case today or early next week. Among those expected to testify today or perhaps Monday is **Frances Harvey**, the only remaining homeseller plaintiff yet to take the stand.

The remaining defendants — the **National Association of Realtors, Keller Williams**, **HomeServices of America** and two of its subsidiaries, **BHH Affiliates** and **HSF Affiliates** — will begin their defense next week. —*Jotham Sederstrom*

# THURSDAY, OCTOBER 19 — DAY FOUR



**Under their thumbs: The enigmatic homesellers behind Sitzer | Burnett**

The plaintiffs in a class action antitrust suit challenging the industry's commission structure took to the stand to make the case that the practice of homesellers paying buyer agents is 'unfair'

**10:11 p.m. CDT:** It's late into the evening but we're hot off the presses. Inman Deputy Editor **Andrea Brambila** followed the trial where it led on Thursday, which was all over the map, with a **juror dismissal**, a **brief outburst** and a **sharp summation** of the line of questioning the plaintiffs are beginning to draw out. But over the years as Inman has covered the investigation into commissions, few details have surfaced about **the homsellers who filed the complaint**. Today, we learned a little more. —*Jotham Sederstrom*

**4:57 p.m. CDT: COURT ADJOURNS AGAIN:** At 4:57 p.m. all the jurors but one, a new mom, left the room. She remained and spoke with the judge, then shook hands with all of the attorneys and said good luck. Inman later confirmed with **Michael Ketchmark**, an attorney for the plaintiffs, that she was dismissed from the jury.

With the new mom dismissed, the jury now consists of seven men and one woman. However, the dismissal should not disrupt the proceedings because federal rules merely require the trial to have anywhere between six and 12 jurors.

After the newly dismissed juror left, Ketchmark spoke to lawyers representing the defendants. He told **Timothy Ray** of **Keller Williams** that he planned to bring in two experts, and would have another plaintiff available to testify Friday. And he spoke to **Robert MacGill** from **HomeServices of America** about bringing in expert witnesses. During the conversation, Ketchmark appeared to become increasingly agitated when MacGill wouldn't say if he was planning on flying in an expert from Australia.

Eventually, Ketchmark turned to Ray and said, "The frustration level is through the roof!" He added that he can't continue with attorneys from NAR and Keller Williams being good cop and MacGill not being an "honest broker." At one point, he told MacGill, "Be careful when the rabbit gets the gun."

Speaking to Inman afterward, Ketchmark said that as the plaintiffs' attorney he has to go first and plan how he's going to present his case, adding that he and the defendants' attorneys agreed to keep each other apprised of the witnesses they were planning to bring.

Ketchmark said, "The **NAR** and Keller Williams attorneys have been forthright and honest in their dealings, but I asked the HomeServices attorney a direct question and he refused to answer," which was "frustrating."

"It's not how I practice law and I don't like it," he said. "But trials are full of pressure and I'm willing to forgive him" if he doesn't continue with what he's doing.

But as the conversation progressed, Ketchmark became angry again thinking about how MacGill had treated the plaintiffs on the stand.

"These are teachers, a former police officer, an executive director for Mothers Against Drunk Driving," Ketchmark told Inman. "He's trying to trick them and fool them and bully them on the stand, saying things that are blatantly not true. That's not the pursuit of justice. It's frustrating to me. We're going to ask the jury to hold them accountable." — *Andrea V. Brambila*

**3:40 p.m. CDT:** NAR's economic incentive in the alleged conspiracy to keep real estate commissions high is $225 million per year, according to testimony from **Craig T. Schulman**, an associate professor of economics at Texas A&M who took the stand for the plaintiffs Thursday. That's $150 in NAR dues times 1.5 million members.
Schulman is still testifying as we head toward the end of the day. — *Andrea V. Brambila*

**1:45 p.m. CDT: ANOTHER PLAINTIFF SPEAKS:** Plaintiffs' attorney **Michael Ketchmark** launched into Thursday's witness testimony by calling to the stand homeseller plaintiff **Jerod Breit**, a former police officer who is now regional executive director of Mothers Against Drunk Driving.

When asked why he joined the lawsuit as a class rep, Breit said, "After my first experience selling a home, I was exposed for the first time to how it works and I didn't think necessarily that it was fair." So when a friend told him about the suit, he offered to join.



He said he was satisfied with his RE/MAX agent, but after joining the lawsuit, he learned something that came as a nasty surprise: In his contract with RE/MAX, he'd agreed to pay a total 5.5 percent commission to sell his home with 2.7 percent going to the buyer agent. But when looking at the sale's settlement statement and his attorneys did the math, it turned out that he had actually been charged a 6% commission. When Ketchmark asked how learning that made him feel, Breit said, "It made me feel stupid."

Jerod Breit | Plaintiff in Sitzer | Burnett. Image via LinkedIn

When Ketchmark asked again why Breit joined the suit, Breit said, "I still don't see the fairness in paying for somebody you're never going to meet and never works for you in any way. I don't think it's

fair."

**Robert MacGill** from HomeServices of America cross-examined Breit and got him to acknowledge, by going through various contracts that Breit signed, that Breit knew that as a seller he would be paying the buyer agent commission. At one point, MacGill said, "A deal's a deal."

**NAR** and **KW** declined to cross-examine Breit.

When given the opportunity to redirect, Ketchmark asked Breit, "Do you hate buyer agents?"

"No," Breit said. Ketchmark then asked if Breit's position was that he shouldn't have to pay a buyer agent as the seller and Breit said yes. Ketchmark latched onto MacGill's statement that "a deal's a deal."

He said there were two sides to that handshake: Breit and RE/MAX, and that those contracts spell out corporations' obligations and duties as well. In their contract with Breit, RE/MAX agreed to follow all applicable laws.
Ketchmark asked Breit if he thought RE/MAX was going to follow the law and Breit said yes. He asked if Breit thought that RE/MAX was going to join together in a conspiracy "designed to pick your pocket" and Breit said no.

"Are you asking they keep up their side of the deal by complying with federal antitrust laws?" "Yes," Breit said. — **Read more about Breit here.** *Andrea V. Brambila*

**11:15 a.m. CDT: Sitzer Survey:** Inman readers were largely split yesterday when we asked whether they believe buyers' agents steer clients away from listings that offer a lower commission. A very tight majority, **50.7 percent, said steering occurs.** The other **49.3 percent** of respondents in our unofficial Sitzer survey said steering doesn't happen.

After yesterday's testimony focused on training agents to handle client discussions around commissions, we wanted to know: Have you ever been trained on how to object to a seller who wants to pay a lower commission?

**10:31 a.m. CDT:** The **Real Estate Board of New York** is changing its rules around buyer agent commissions amid broader turmoil around compensation and multiple legal challenges to the way agents are paid nationwide.

Starting Jan. 1, REBNY rules will prevent listing brokers from paying buyer agents and will instead **require sellers to pay commissions directly**, *The Real Deal* reported Thursday morning.

The change is part of a handful of updates being made to the agreement governing REBNY and the Residential Listing Service in New York City, which are **independent from the National Association of Realtors.** Some agents told the outlet they feared the change would give too much leverage to buyer agents, while others say the change will provide more transparency and efficiency. — *Taylor Anderson*

**6:14 a.m. CDT: Today's Horoscope, from Vogue** — "Today, you're being asked to trust what's being offered to you as well as what's being taken away from you. The Universe knows what's best for you and will deliver it to you in divine time."

**6 a.m. CDT: Ed Zorn**, the vice president and general counsel of the nation's largest multiple listing service — as well as an attorney with trial experience — predicted Friday, before the **Sitzer | Burnett** trial had begun, that **Keller Williams** would "probably settle" in the coming days and that it would be difficult for **Berkshire Hathaway** affiliated groups to find an escape at this stage.
Aired on an episode of *Industry Relations* with **Decentre Labs** CEO **Rob Hahn** and **Vendor Alley** publisher **Greg Robertson,** the remarks were among the many prognostications offered by the **California Regional Multiple Listing Service** executive in an interview that was taped Friday and released yesterday. And **Zorn** made clear settlements can come even if parties claim they plan to fight.

"You have some likely spots where people settle," he told his interlocutors. "After the first week, if things go horribly wrong for the defendants, that's a settlement point. Right after the trial, before an appeal bond hearing, another excellent point. That's the most likely spot for **NAR** to sit if NAR doesn't outright win."

Zorn said a win would be hard for NAR, but not impossible. —*Taylor Anderson*



**Agent training, objection scripts on trial as Sitzer | Burnett ends Day 3**
On Day 2 of witness testimony Wednesday, attorney Michael Ketchmark narrowed in on training materials and presentation slides he alleged violated antitrust policies held by the defendants
BY JIM DALRYMPLE II 8 MINUTES AGO

**5:29 a.m. CDT:** Yesterday inside the **Charles Evans Whittaker U.S. Courthouse** in Kansas City, the attorney for the homeseller plaintiffs **Michael Ketchmark** systematically sliced and diced his way through deposed **RE/MAX**, **Coldwell Banker** and **Keller Williams** executives, building a narrative around training materials and objection scripts that repeatedly returned to a supposed "standard 6% commission."

"It goes back to the model," said **Meredith Maples**, senior director of **Keller William University**, who in recorded testimony told Ketchmark that such percentage splits, including numerous examples in training materials from KW events trotted out by Ketchmark, were arbitrary. On the stand, **RE/MAX CEO Nick Bailey** used similar language, saying the use of "6%" commissions in the franchisor's training materials were merely "examples." And on and on.

"It is for example purposes only," Bailey said, according to Inman Deputy Editor **Andrea Brambila**, who's reporting from Missouri throughout the duration of the trial. "We are very clear that commissions are negotiable." —*Jotham Sederstrom*

## WEDNESDAY, OCTOBER 18 — DAY THREE

**4:54 p.m. CDT: Court adjourned.** After many hours of testimony, court wrapped up Wednesday just before 5 p.m. Though it was only the second day with witnesses on the stand, there were highlights aplenty. Perhaps the most significant was the appearance of three plaintiffs: **Hollee Ellis**, **Rhonda Burnett** and **Jeremy Keel**. All three testified in person — a surprising turn of events given that the plaintiffs had previously remained out of the spotlight.

Also on Wednesday, **Ryan Gorman** — who served as CEO of **Coldwell Banker** for three years before being removed from the post in December — appeared via a video deposition.

Court is set to recommence Thursday morning at 10:30 a.m. CDT — a two hour delay compared to previous days because one of the jurors, a new mom, has a conflict. — *Jim Dalrymple II*

**3:15 p.m. CDT: First plaintiff speaks.** Plaintiff **Hollee Ellis**, a Missouri homeowner and daughter of a long-time Realtor, took the stand Wednesday afternoon and explained why she joined the class action suit. Ellis' appearance was especially notable because the plaintiffs have tended to keep a low profile — making Wednesday a rare chance to get commentary directly from one of the people who initiated the case.

Ellis, who has sold four homes and bought five in her lifetime, said that she paid a 6 percent total commission on the home sale at issue in this case. The buyer agent portion added up to 20.55 percent of her net equity, **plaintiff attorney Michael Ketchmark** said, so commissions for both agents took up 40 percent.

"It was a hard pill to swallow that we would walk away with so little," Ellis said.

Ellis said she didn't join the suit for the potential payout. She's not getting any more than any other class member, whatever that might be.

She said, "I just didn't think it was a fair practice," adding that she has five children who are starting their lives and buying homes and said she hoped to end this "unfair practice" for them and other consumers. "If I can help my kids out, I'm gonna do it."

Ellis' said her mom was a Realtor for nearly 30 years.

"I feel like I'm doing it for her as well," Ellis said. "I know she worked very, very hard for some of her buyers and probably could have negotiated a different rate."

**Barack S. Echols** cross-examined Ellis for Keller Williams, followed by **Robert MacGill** for Homeservices of America. The cross from Ray and MacGill wasn't combative, and Ellis was composed.

NAR declined to cross-examine Ellis. — *Andrea V. Brambila*

*Correction: Barack S. Echols cross-examined Ellis for Keller Williams. This post initially indicated Timothy Ray conducted the cross.*

## Agents steer buyers to homes with better commissions, study claims

The study by a trio of researchers analyzed hundreds of thousands of listings and found that those offering lower commissions to buyers' agents received less attention and took longer to sell



**2:54 p.m. CDT:** In a new study, researchers found "strong statistical evidence that buyer agents nationwide **steer their clients away from low-commission listings**." Lower commission homes receive less attention from buyers, the paper states, and the effect increases "as the buyer agent's commission drops farther below the going rate in a given market."

The paper also argues that listings offering lower commissions take more time to sell. Read more here. — *Jim Dalrymple II*

**12:58 p.m. CDT:** During mid-morning testimony, **plaintiffs' attorney Michael Ketchmark** played recorded testimony from **RE/MAX CEO Nick Bailey** in which Bailey confirmed that RE/MAX requires its franchisees to belong to NAR and therefore follow its MLS policies and

code of ethics.

Bailey said, "I do believe that the MLS is derived from the concept of cooperation and compensation" but that if the cooperative compensation rule were no longer mandatory, RE/MAX does not believe it would change listing brokers' behavior.

"Whether or not the rule exists or not, I don't believe it changes anything," Bailey said.



Regarding the Clear Cooperation Policy, Bailey said, "This is NAR's policy. It is not a RE/MAX policy." He said RE/MAX had not decided whether it supports the policy and that RE/MAX does not have a position on whether the policy should be mandatory.

As with other witnesses who testified this morning, Ketchmark also grilled Bailey on RE/MAX's training materials and their use of a 6 percent commission.

Nick Bailey | RE/MAX CEO

Yesterday, Ketchmark played an agent training video from **Gino Blefari** where he said he'd negotiate commissions only if they went up, and that he pre-writes a 6 percent commission into listing agreements.

Before Bailey, Ketchmark called recorded testimony from **Meredith Maples, senior director of Keller William University**.

Ketchmark asked her about KW's antitrust policy, which prohibits commission discussions, and then showed various slides prepared for KW Family Reunion events that show 3 percent commissions for each side of a deal and refer to a "standard 6% commission."

This included slides showing how many more homes an agent would have to sell to earn a million dollars if they charged a 2.5 percent commission versus a 3 percent commission.

Maples insisted that the slides, which included scripts on how to handle objections, were "models" that agents could personalize to their own businesses. "Anything we include from a script perspective is a hypothetical situation," Maples said.

"We don't tell people what to charge," she added.

Ketchmark said he planned to start calling the named plaintiffs to the stand after the lunch break. — *Andrea V. Brambila*

**11:20 a.m. CDT: Sitzer Survey:** The results of yesterday's Sitzer survey show that readers are relatively split on what they think the jury verdict will be. **Fifty-three percent** believe that the plaintiffs will prevail, compared with **47 percent** who believe NAR and the defendants will win.

Today, we want to know: Do you think buyers' agents steer clients away from properties that offer lower or no commissions? — *Taylor Anderson*

**10:29 a.m. CDT:** Plaintiffs' attorneys have relied on video testimony for depositions this morning. **Michael Ketchmark** called on **Rene Galicia, the** former director of MLS Engagement at the **National Association of Realtors**, and **Michelle Figgs**, a former senior industry analyst at **Keller Williams.**

**Ketchmark** also called on NAR Head of Engagement **Rodney Gansho,** who focused on establishing that the trade organization's cooperative compensation policy is mandatory for Realtor-affiliated MLSs. Ketchmark cited the franchisor defendants involved in the **Sitzer | Burnett** case, noting that any of them could have proposed a change to the policy. During the testimony, Ketchmark also read aloud comments from **NAR members** who had objected to a different rule, the Clear Cooperation Policy, before it was approved in 2019. Among the comments:

- that brokers don't need more mandatory regulations
- that you can't force sellers to put their home on the MLS
- that agents' duty is to sellers and not NAR
- that the policy would violate the Sherman Antitrust Act
- that it would create a monopoly
- NAR says it's best for the public, "but the truth is it's what's best for NAR."

With exceptions for attorneys and other essential parties, the use of cellphones and other electronics aren't allowed in the courtroom. However, 20-minute breaks are frequent. Inman will provide updates all day. — *Andrea V. Brambila*

**8:25 a.m. CDT: ALL RISE:** Court is now in session, and the jury is expected to hear testimony from **Linda O'Connor,** former broker with LUX Realty North Shore in Beverly, Massachusetts. O'Connor penned a letter to NAR's Professional Standards Committee in 2012 warning the group that the Participation Rule was "the ultimate form of restraint of trade" and should be eliminated. — *Taylor Anderson*



**6:47 a.m. CDT:** Florida-based **Coldwell Banker Vanguard Realty** Broker Associate **Cara**

**Ameer** aggregated a really thoughtful list of questions real estate agents should be asking about the **Sitzer |Burnett** commission case as the trial gets underway in the **U.S. District Court in Western Missouri**.

Among the 58 questions she poses, Ameer digs into how the price of home warranties, insurance and buydowns could be impacted by a verdict in favor of the plaintiffs. But she also asks dozens of practical questions regarding the future of real estate transactions, including questions around what a contractual agreement between a homebuyer and her agent might look like. Check it out here before court goes into session in a couple hours. — *Jotham Sederstrom*

**5:34 a.m. CDT:** Consumers, it seems, are rooting against the status quo. After **Bloomberg** reported Monday on the controversy over commission sharing, the story was flooded with comments slamming NAR and the industry at large.

"It's time to break up this collusion by NAR," one person wrote, while another opined that "6 percent real estate commission is the biggest scam going."

By Tuesday afternoon, the story had racked up more than 500 comments, most of which were highly critical of the way agents earn a living. —*Jim Dalrymple II*

**4:56 a.m. CDT:** A frost settled early Tuesday morning in **Kansas City** with temperatures dropping to a low of **36 degrees** yesterday, the coldest morning since April 24, according to **Wes Perry** over at **KSHB 41 Kansas City**.

But as plaintiffs and defendants head into Day 3 of the **Sitzer | Burnett** trial, they can expect a thaw that, by afternoon, should turn into a **70-degree** day with a chance of rain, according to **KMBC 9 News** —*Jotham Sederstrom*

## TUESDAY, OCTOBER 17 — DAY TWO



**Gary Keller, Bob Goldberg among first to testify in Sitzer | Burnett**

As the commission trial begins, the Kansas City courtroom saw opening arguments and testimony from industry leaders Keller, Goldberg and HomeServices of America CEO Gino Blefari

BY ANDREA X. BRAMBILA 8 MINUTES AGO

**8:42 p.m. CDT: Andrea Brambila** filed her first dispatch from **Kansas City** as the **Sitzer |Burnett** trial kicked off Tuesday. The story is packed with details, but we recommend

reading it for the testy exchange between **Keller Williams** co-founder **Gary Keller,** who appeared via video deposition, and plaintiffs' attorney **Michael Ketchmark**, who tried to use the published author's books, including *The Millionaire Real Estate Agent*, against him.

Keller's testimony heated up shortly after Ketchmark showed him a video from a KW **Family Reunion** in which a slide showed the average commissions agents earned between 2002 and 2019. Despite the slide, Keller insisted, "We didn't talk about commissions" and that the presentation was "not a conversation about what you charge" but "a model to describe the flow of money."

Similarly, when Ketchmark pointed to a page in Keller's book, *The Millionaire Real Estate Agent*, where he mentions that each side in a transaction gets an average 3 percent commission, Keller said, "It's only an example so I can show how money goes. This is simply a model for the flow of money."

"Nowhere in that book do I talk about commissions except to explain the flow of money. And I say average," Keller added. —*Jotham Sederstrom*

**3:18 p.m. CDT:** After a lunch break, attorneys for **Keller Williams** and **HomeServices of America** gave their opening statements. Attorney **Robert MacGill** spoke for HomeServices, BHH Affiliates and HSF Affiliates, followed by **Timothy Ray** for Keller Williams.

**The jury includes seven men and two women**, with apparent ages ranging from 20s through 60s. All appear to be attentive, with some taking notes during remarks.

An attorney who is attending but not involved with the case told Inman Deputy Editor Andrea Brambila one of the women on the jury has a 5.5-week-old baby at home and needs a break to breastfeed every 1.5 hours.

The pool of prospective jurors initially included about 70 people but was whittled down to a total of seven men and two women. Ten of the prospective jurors who didn't make it to the trial were dismissed because they sold a home during the relevant time period for the class. — *Andrea V. Brambila*

**1:07 p.m. CDT: NAR opening remarks:** Attorney **Ethan Glass**, speaking for NAR, used his opening remarks to push back against the idea that the real estate industry is engaged in a conspiracy.

Among other things, Glass noted that the rule at issue in the case has been around for 25 years, and it's been public and on NAR's website.

"What kind of conspiracy is out in public?" he asked. "There isn't one."

Glass said the purpose of what the court is calling the "Cooperative Compensation Rule" is to remind people "of the unremarkable proposition that no one wants to work for free." He also said, "What NAR is doing is trying to help people and trying to promote homeownership."

He analogized the seller paying the buyer agent to when a dog is lost and the owner wants to summon a bunch of strangers to help find the dog. That owner puts out fliers offering a reward — but only if the dog is found and only to the person who brings back the dog.

His point was that the system benefits homesellers because it incentivizes buyer agents to close deals.

Glass also emphasized that NAR is a voluntary association of 1.6 million people and the average Realtor is a 60-year-old woman with her own business. Corporations are not members. "These are people who live and work in our communities."

He also said, "Not every real estate agent is a Realtor" and that to be a Realtor is to follow a code of ethics.

And he added that NAR doesn't own real estate agencies and "NAR doesn't set commissions of any type." — *Andrea V. Brambila*

**12:58 p.m. CDT: Plaintiffs' opening remarks:** The plaintiffs leaned heavily on video depositions of **Gary Keller and Gino Blefari** outlining how they train agents and how they talk about commissions.

Plaintiffs' attorneys played an agent training video where Blefari said he'd negotiate commissions but only if they go up, and that he pre-writes a 6 percent commission into listing agreements.



"I was showing them [agents] what I did so they can learn from that," Blefari said in his video deposition.

When asked whether he thought it was appropriate to do that, he said, "I certainly don't believe that fixing commissions is appropriate. I do believe training is essential." When Ketchmark asked whether what he was doing was "quintessential price-fixing," Blefari said, "No, it's just negotiating." — *Andrea V. Brambila*

Gino Blefari | HomeServices of America

**12:51 p.m. CDT:** Opening arguments lasted just over three hours on Tuesday after **Judge Stephen R. Bough** gave the jury their instructions.

Attorney **Michael Ketchmark** spoke on behalf of the plaintiffs. **Ethan Glass** spoke on behalf of NAR.

**NAR Chief Legal Counsel Katie Johnson** and spokesman **Mantill Williams** were both in the packed courtroom, as were **attorneys for the Moehrl case**. An estimated 75 people were in the gallery, with about 25 more between lawyers from the parties, the judge, courtroom staff and nine-person jury. — *Andrea Brambila*

**11:36 a.m. CDT: Sitzer survey:** Inman readers believe there's a lot at stake right now. During our opening day Sitzer survey, we asked what impact you thought the trial could have on the industry. **Fifty-one percent** of you said the case would "greatly change the real estate industry." Compare that to the **3 percent** who said the eventual verdict would have no impact on the industry, and **46 percent** saying it would have some impact.

While we wait for an update from opening arguments, we're coming at you with another Sitzer survey. **Let's hear your predictions.** — *Taylor Anderson*

**11:20 a.m. CDT: Checking in with the leaders:** Redfin CEO **Glenn Kelman** doesn't expect the Sitzer | Burnett verdict, or the ruling in the larger **Moehrl** case, to ban cooperative compensation between listing brokers and buyer brokers. But he's not ruling it out.

"Our guess is that the lawsuits in Missouri and Illinois will not go that far [banning cooperative compensation], but it's possible," Kelman told Bloomberg yesterday. "We think that DOJ action is necessary to reach that level, and that would be a seismic change — basically, half the real estate agents in this country would be unemployed." — *Taylor Anderson*



Charles Evans Whittaker U.S. Courthouse on Tuesday, Oct. 17, 2023. Andrea V. Brambila

**8:07 a.m. CDT:** It's a brisk fall morning in Kansas City, but things will be heating up figuratively and literally soon with an afternoon high of 69 degrees. Local headlines are focused on NFL star and Kansas City Chiefs tight end **Travis Kelce** and his new boo **Taylor Swift**. Inman reporter **Andrea V. Brambila** is in Courtroom 7B. We're expecting a packed courtroom for opening arguments this morning and will have updates throughout the day. — *Taylor Anderson*

**5:07 a.m. CDT:** Opening arguments are expected to begin today, but in the meantime, the hashtag **#sitzerburnett** has emerged as the hashtag of choice for conversation around the trial. **Vendor Alley** publisher **Greg Robertson** was among the first to use it Monday as jury selection began. —*Jotham Sederstrom*

I guess I'm starting a hashtag #sitzerburnett https://t.co/VCCDmvv5tr

— The Fabulous Greg Robertson (@gregrobertson) October 16, 2023

# MONDAY, OCTOBER 16 — DAY ONE

**7:43 p.m. CDT:** The nine-person jury was selected this afternoon. The courtroom is likely to be packed for opening statements at 8:30 a.m. tomorrow.

Plaintiffs' attorney Michael Ketchmark told Inman: "I continue to have agents and brokers from all across the nation reach out to me directly to express their frustration with the mandatory nature of [the buyer broker commission] rule. Today we live in a country of divided politics, but this is one issue we can all agree on. We were happy to see that the Wall Street Journal today called for the dismantling of this real estate cartel, which is strangling our housing market." —*Andrea Brambila*



**3:56 p.m. CDT:** Analysts with the investment banking firm **Keefe, Bruyette & Woods** say it's "very likely" that cooperative compensation will be banned in the near future as a result of Sitzer | Burnett. If that happens, the firm told investors it expects the total commission pool to drop by at least 30 percent, and as many as 80 percent of Realtors will leave the industry. Read more details in **this new Inman story**. — *Taylor Anderson*

**1:25 p.m. CDT:** Chatter about the potential consequences of the lawsuit intensified Monday, including in a post on the popular Lab Coat Agents Facebook group. The post was a response to the *Wall Street Journal's* take — many hated the *Journal* piece — and included numerous predictions about what the future of the industry could look like. Here are just a few of the comments:

"I think 2 things will happen, overall real estate commission will be lowered eventually (3-4% is my guess) and buyer commission will be brought to the forefront of the conversation with buyers. Buyer agreements will become standard and will negotiate/discuss the agent compensation that will be added to any offers written."

"If this goes into effect it [will] negatively affect the buyers exponentially! The average buyer cannot even come up with their own closing costs and down payment."

*"I feel like we could end up like a European system where there are no buyers agents."*
— *Jim Dalrymple II*

**11:23 a.m. CDT: Take our daily Sitzer survey.** We want to know how much Inman readers expect the industry to change as a result of an eventual verdict. To start things off, let us know how dramatically you think the outcome will impact real estate in the U.S.

**6:05 a.m. CDT:** *The Wall Street Journal* dropped a meaty editorial on the antitrust case last night, essentially dismissing the **National Association of Realtors** as a "cartel," language previously used by **REX** to describe the 1.58 million-member real estate trade organization. In particular, it takes aim at the supposed malleability of commission rates while touching on the conflicts of interest inherent in sellers paying buyer agent commissions.

"We're no fans of most antitrust suits, but the evidence is strong that Realtors' practices are classic antitrust violations that harm consumers," the editorial ends decisively. "The Realtors may own the U.S. Congress, but perhaps independent courts won't be so intimidated."

**5:30 a.m. CDT:** Good morning from the **Paris of the Plains**, Kansas City, Missouri. Inman is on the ground as the trial of a class-action antitrust lawsuit filed 4.5 years ago kicks off at the Charles Evans Whittaker U.S. Courthouse. The primary order of business today is jury selection. — *Andrea Brambila, Deputy Editor*



**5:20 a.m. CDT:** Another great roundup of commission-related coverage as we prepare for the day comes from **Inman Deputy Service Editor Christy Murdock**, who narrowed in on the various industry responses to the lawsuits thus far, including settlements from **RE/MAX** and **Anywhere**. You can read that one **here.**

**5 a.m. CDT:** We're up early getting ready for the first day of what we're told will be a three-week trial. Inman Deputy Editor Andrea Brambila is flying in to **Kansas City, Missouri** from California as jury selection begins. She'll be reporting on location for the duration of the trial.



While we wait for plaintiffs and defendants to arrive at the **Charles Evans Whittaker U.S. Courthouse**, Inman reporter **Taylor Anderson** has compiled a few examples of Inman's commission coverage in case anyone needs a crash course on the details. But the best place to start is with Brambila's preview of the Sitzer | Burnett trial, which published this morning and can be read **here**. — *Jotham Sederstrom, Editor-in-Chief*

## EDITOR'S SELECTIONS

*An evolving list of essential reading as Sitzer | Burnett gets underway*

**Agent training, objection scripts on trial as Sitzer | Burnett ends Day 3:** At a trial that could change how real estate agents nationwide are paid, RE/MAX CEO Nick Bailey, former Coldwell Banker CEO M. Ryan Gorman, and Keller Williams University executive Meredith Maples defended how they train agents in regards to commissions. **Read more**
**Gary Keller, Bob Goldberg among first to testify in Sitzer | Burnett.** A trial with the potential to shake up the real estate industry got officially underway Tuesday with opening statements from each side and testimony from heavy hitters Keller Williams co-founder Gary Keller, HomeServices of America CEO Gino Blefari and National Association of Realtors CEO Bob Goldberg. **Read more**

**Read the playbooks of NAR, Keller Williams ahead of Sitzer | Burnett** Ahead of the Sitzer | Burnett antitrust trial in Kansas City, the plaintiffs and non-settling franchisor defendants — the National Association of Realtors, Keller Williams and HomeServices and its subsidiaries BHH Affiliates and HSF Affiliates — submitted trial briefs to the court telling their side of the story. **Read more**

*Email Taylor Anderson*