UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| RHONDA BURNETT, JEROD BREIT, JEREMY KEEL, HOLLEE ELLIS, and FRANCES HARVEY, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC, RE/MAX, LLC, and KELLER WILLIAMS REALTY, INC., <br><br> Defendants. | Case No: 4:19-cv-00332-SRB <br><br> Judge Stephen R. Bough |

## SUGGESTIONS IN SUPPORT OF DEFENDANT KELLER WILLIAMS REALTY, INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW

After almost four days of testimony, Plaintiffs have offered no evidence from which a reasonable jury could find in its favor on its claim under Section 1 of the Sherman Act. Simply put, there is no evidence from which a jury could determine that Keller Williams entered into any conspiracy.

Plaintiffs' evidence that Keller Williams participated in a conspiracy is based on three things: (1) a book, (2) a speech, and (3) a rule. But Plaintiffs have offered no evidence whatsoever that these materials constitute anything other than unilateral conduct consistent with Keller Williams' independent business interests. Nor have Plaintiffs offered any evidence that any agent affiliated with a Keller Williams franchisee did anything based on the conduct about which Plaintiffs complain.

1

Plaintiffs offer no evidence that the book (the *Millionaire Real Estate Agent*) or the speech (Gary Keller's "Vision Speech") caused any agent to charge a specific commission rate or to offer cooperative compensation at any level (or at all).  And Plaintiffs have presented no evidence that the rule (Keller Williams' requirement that agents join their local board of REALTORS® and MLS unless exempted by their local franchisee brokerage)—as opposed to unilateral interests—caused any agent to join an MLS in Missouri.  Plaintiffs have likewise presented no evidence that any agent in Missouri relied on training offered by Keller Williams when they entered into a listing agreement with a home seller and, with the seller's knowledge, offered to share a portion of the agreed commission with buyer agents.

Based on the record, no reasonable jury could find that Keller Williams entered into an unlawful agreement actionable under Section 1 of the Sherman Act.

## I. LEGAL STANDARD

Entry of judgment as a matter of law is proper where there is no evidence that is legally sufficient for a reasonable jury to find for a party on an issue on which that party has been fully heard.  FED. R. Civ. P. 50(a)(1).

To establish a claim for violation of Section 1 of the Sherman Act, Plaintiffs must establish, *inter alia*, that a contract, combination or conspiracy exists.  15 U.S.C. § 1; *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 761 (1984).  Section 1 of the Sherman Act "does not reach conduct that is wholly unilateral."  *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 768 (1984); *see also Monsanto*, 465 U.S. at 761 ("Independent action is not proscribed.").  Proof of concerted action—that is, proof of a "conscious commitment to a common scheme designed to achieve an unlawful objective"—is essential to any claim under Section 1 of the Sherman Act.  *Monsanto*, 465 U.S. at 768.

The Supreme Court has set forth explicit standards for determining whether there exists sufficient evidence of such a "conscious commitment" or agreement. The plaintiff must bring forth evidence that "tends to exclude the possibility" of independent action. *Matsushita*, 475 U.S. at 587 (quoting *Monsanto*, 465 U.S. at 764). "[C]onduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy." *Id.* at 588. The Eighth Circuit has echoed this standard, stating "if it is as reasonable to infer from the evidence a … conspiracy as it is to infer permissible activity, then the plaintiffs'[] claim, without more, fails . . . ." *Blomkest Fertilizer, Inc. v. Potash Corp. of Saskatchewan*, 203 F.3d 1028, 1032 (8th Cir. 2000); *Nitro Distrib., Inc. v. Alticor, Inc*., 565 F.3d 417, 423 (8th Cir. 2009) ("We apply *Monsanto* and *Matsushita* broadly.").

## II. ARGUMENT

The Court should enter judgment in favor of Keller Williams because "a reasonable jury would not have a legally sufficient evidentiary basis to find" that Keller Williams entered into an unlawful agreement actionable under Section 1 of the Sherman Act. Plaintiffs have provided no direct evidence of Keller Williams' knowing participation in any agreement, nor any circumstantial evidence that tends to exclude the possibility that Keller Williams acted independently, and not in connection with any conspiracy.[1]

### A. Plaintiffs have presented no direct evidence of a conspiracy.

Plaintiffs must prove that each individual Defendant from which they seek to recover entered into an unlawful conspiracy. But Plaintiffs offered no direct evidence that establishes that Keller Williams entered into an agreement with anyone concerning the Cooperative Compensation

---

[1] For the same reasons, Plaintiffs have provided no basis to find that any of the other Defendants entered into any conspiracy. *See* Defendant RE/MAX, LLC's Suggestions in Support of its Motion for Summary Judgment [ECF No. 926]; Statement of Material Facts and Suggestions in Support of Motion for Summary Judgment of Realogy Holdings Corporation [ECF No. 929]; HomeServices' Motion for Judgment as a Matter of Law and Suggestions in Support [ECF Nos. 1261, 1262]; NAR's Motion for Judgment as a Matter of Law.

3

Rule or concerning commission rates. For example, Plaintiffs have presented no evidence of any involvement by Keller Williams in any meetings, discussions, or other activities relating to the Cooperative Compensation Rule. Direct evidence must be "explicit and require[] no inferences" to establish Plaintiffs' proposition. *See In re Baby Food Antitrust Litig.*, 166 F.3d 112, 118 (3d Cir. 1999); *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 662 (7th Cir. 2002) (noting that direct of evidence of a conspiracy is "evidence tantamount to an acknowledgment of guilt," while circumstantial evidence is "everything else including ambiguous statements" (emphasis omitted)). None of the evidence against Keller Williams presented by Plaintiffs is of that nature.

Additionally, the Eighth Circuit has explicitly rejected the argument that providing direct evidence removes the requirement that plaintiffs disprove independent action: "We require a showing of independent action, **whether it be by circumstantial or direct evidence**." *Nitro Distrib.*, 565 F.3d at 423 (emphasis added). And—as explained below—Plaintiffs have not and cannot disprove independent action.

### B. Plaintiffs have presented no evidence that tends to exclude the possibility of Keller Williams' independent conduct.

Without evidence that actually connects Keller Williams to the conduct they challenge in this case, Plaintiffs instead seek to focus on what they claim are efforts by Keller Williams—efforts undertaken entirely in public and not in conjunction with NAR or the other Defendants—to allegedly convince agents to charge commission rates of 6 percent.

Plaintiffs' claim that Keller Williams conspired with the other Defendants is based on the following assertions: (1) Keller Williams requires franchisee agents to join their local Board of REALTORS® and MLS unless exempted by their local franchisee brokerage; (2) example commission amounts are included in a *New York Times* bestselling book published by Gary Keller

4

over nineteen years ago in 2004 and in some educational and presentation materials published over the past nineteen years; and (3) at its annual Family Reunion convention, Keller Williams reports historical national average commission rates earned annually by over 160,000 independent contractor agents affiliated with over 800 Keller Williams franchisee brokerages across all 50 states. Not only does this evidence have nothing whatsoever to do with the Cooperative Compensation Rule, it also reflects entirely unilateral conduct consistent with Keller Williams' independent business interests. Simply put, reasonable jurors could not draw any inference of conspiracy from the evidence presented because it neither tends to exclude the possibility of independent action nor does it suggest the existence of any conspiracy at all. Accordingly, the Court should enter judgment in favor of Keller Williams.

> **1. Keller Williams' conduct relating to NAR provides no basis to infer a conspiracy.**

To the extent Plaintiffs seek to have the jury infer the existence of a conspiracy involving Keller Williams merely from any involvement in NAR, Plaintiffs' effort fails for multiple reasons.

*First*, and as a threshold matter, there is no evidence that Keller Williams (as opposed to agents affiliated with independently owned and operated franchisees) is a member of NAR or has been meaningfully involved in NAR policymaking activities.[2] Regardless, Keller Williams cannot be held liable under Section 1 of the Sherman Act as a co-conspirator merely based on membership in the trade association. *See, e.g.*, *In re Tyson Foods, Inc. Sec. Litig.*, 275 F. Supp. 3d 970, 995 (W.D. Ark. 2017) ("[M]ere membership in a trade association will not nudge an allegation from the realm of parallelism to the land of agreement." (citing cases)).

---

[2] In fact, the evidence establishes that Keller Williams is not a member of NAR. Oct. 23, 2023 Rough Trial Transcript 173:15-17.

*Second*, evidence that Keller Williams requires independent contractor agents affiliated with its independently owned and operated franchisees to join their local Board of REALTORS® and MLS (unless exempted by the local franchisee) is unilateral conduct that is not indicative of any conspiracy. As Plaintiffs themselves acknowledge, MLS participation is important to brokers, Third Amended Compl. [ECF No. 759] ¶ 106; Oct. 19, 2023 Rough Trial Transcript at 227:9-16 (Schulman stating that the multiple listing service is the "core product" offered by agents); *id*. at 164:13-16 (Schulman stating the benefit of listing a home on the MLS is that "Everybody gets to see it. A lot more people get to see it."), making MLS participation by agents and Keller Williams' requirement that they participate in MLSs (unless exempted) consistent with their unilateral interests and not at all suggestive of a conspiracy. *See* P-0426 at PDF p. 56 (KWRI_000456). Plaintiffs have presented no testimony from any Keller Williams franchisee agent that he or she joined NAR because of Keller Williams' requirement (or that Keller Williams' requirement had a material influence on the agent's decision). Yet again, Plaintiffs' reliance on Keller Williams' requirement that agents join NAR and MLSs to establish a conspiracy is the type of "assume conspiracy first" reasoning that the Eight Circuit has explicitly rejected. *Blomkest*, 203 F.3d at 1033 ("[A] litigant may not proceed by first assuming a conspiracy and then explaining the evidence accordingly").[3]

*Third*, Plaintiffs might point to rare instances in which representatives of Keller Williams attended a NAR meeting or other meeting involving competitors, but Plaintiffs have offered no evidence that the Cooperative Compensation Rule was a topic of discussion at any meeting, much less any meeting allegedly attended by anyone from Keller Williams. Attendance at meetings of

---

[3] *See Hyland v. HomeServices of Am., Inc*., 771 F.3d 310, 319–22 (6th Cir. 2014) (affirming grant of summary judgment where the conduct allegedly indicative of a conspiracy to fix real estate commission rates was consistent with independent conduct).

legitimate organizations offers nothing more than a mere *opportunity* to conspire, which cannot support an inference of any agreement as a matter of law. *See, e.g.*, *Kleen Prods. LLC v. Georgia-Pacific LLC*, 910 F.3d 927, 938 (7th Cir. 2018) (finding opportunities to conspire, including at legitimate trade association meetings, did not support existence of conspiracy and affirming grant of summary judgment); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1235 (3d Cir. 1993) (granting summary judgment as to defendant who socialized with other alleged conspirators and "had the opportunity to conspire" but did not participate in discussions relevant to the alleged antitrust conspiracy); *see also Riggs v. Gibbs*, No. 14-cv-0676, 2017 WL 4391778, at *8 (W.D. Mo. Sept. 29, 2017) (observing that a "bare, unsupported allegation that the defendants had the opportunity to conspire" did not support conspiracy allegation sufficiently to survive summary judgment in a Section 1983 action). And, importantly, there is no evidence that Keller Williams representatives attended meetings of NAR or other organizations for other than legitimate business reasons. Any involvement by Keller Williams representatives under such legitimate circumstances is not suggestive of any conspiracy and would not be a legally sufficient basis on which the jury could find that Keller Williams knowingly entered into an unlawful agreement under Section 1 of the Sherman Act.

*Fourth*, there can be no inference of conspiracy based on the conduct of agents affiliated with Keller Williams' franchisee market centers who Plaintiffs claim were involved in some way in NAR committees or MLS governance. Other than testimony concerning an effort by Realogy to modify the rule three years into the litigation, Plaintiffs have presented no evidence to the jury that the Cooperative Compensation Rule was discussed at any NAR meeting. And there is no evidence that Keller Williams or any independent contractor agent affiliated with a Keller Williams franchisee was in any way involved with Realogy's proposal or the process that followed.

Further, Plaintiffs cannot point to a single decision undertaken by any of those entities that relates to the conduct they challenge. But more fundamentally, there is no evidence that when individual agents participate in governance of NAR or state or local REALTOR® organizations, they do so as representatives of Keller Williams, and not in their individual capacities. And there is no evidence that Keller Williams has any control or has ever attempted to exercise any control over any agents in their capacities as representatives of any REALTOR® or MLS organization.

### 2. Similarity in training materials, without evidence of any coordination with alleged co-conspirators, cannot support allegations of conspiracy.

Plaintiffs present evidence of similarity of messaging in Defendants' educational and presentation materials – again wholly unrelated to the Cooperative Compensation Rule – and seek to invite the jury to infer the existence of a conspiracy based only on that similarity. But Plaintiffs have offered no evidence of *any* communications between Keller Williams and anyone outside the company concerning its training. Without any connection between alleged conspirators, Plaintiffs' evidence amounts to nothing more than evidence of parallel conduct, which cannot provide a legally sufficient basis on which the jury could conclude that Keller Williams engaged in any conspiracy. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007) ("Without more, parallel conduct does not suggest conspiracy … .").

Additionally, Plaintiffs have offered no evidence that any Keller Williams franchisee agent attended any training or engaged in any specific conduct at all based on any training materials published by Keller Williams. Indeed, Mr. Keel—the only named plaintiff who used a seller's agent affiliated with a Keller Williams franchisee—testified that he did not attempt to negotiate the commission, so his agent would have had no reason to employ so-called "objection-handling" scripts. *See* Oct. 18, 2023 Rough Trial Transcript 135:7-14; 141:16-23 (Keel admitting he knows, as an attorney, that contracts are negotiable, but that he did not negotiate the commission

8

Case 4:19-cv-00332-SRB   Document 1268   Filed 10/25/23   Page 8 of 11

percentage on his home sale); *id*. at 146:24-147:5 (Keel stating in the purchase context that he didn't know commissions were negotiable because "[n]o one ever mentioned negotiating commission to me").

> **3. There is no evidence that Keller Williams has conspired with competitors concerning commissions or cooperative compensation offers.**

With no evidence supporting any involvement by Keller Williams in any activities relating to the Cooperative Compensation Rule (or any other challenged rules), and no evidence that Keller Williams franchisee agents offered cooperative compensation or took any other action based on any conduct by Keller Williams, no reasonable jury could find that Keller Williams consciously committed to the common scheme actually challenged by Plaintiffs in this case. But Plaintiffs also attempt to assert an unrelated and irrelevant conspiracy to inflate commission rates through conduct wholly unrelated to following or enforcing the Cooperative Compensation Rule. Their efforts to establish this conspiracy also fail because Plaintiffs have offered no evidence from which a reasonable juror could conclude that Keller Williams has entered into an agreement with anybody regarding commission rates or cooperative compensation amounts.

There has been no evidence that Keller Williams, as a franchisor of independently owned and operated real estate brokerages, has any involvement in setting commission rates or offering cooperative compensation to real estate brokers in Missouri. Nor have Plaintiffs presented any evidence that Keller Williams or its franchisees dictate how affiliated agents operate their businesses, including the commission rates those agents charge or any cooperative compensation offers they may extend through MLSs. Because there is no evidence that Keller Williams has any involvement in the commissions charged by franchisee agents, there is no evidence from which a jury could infer that it has or even could conspire with competitors to set or maintain commission rates.

Plaintiffs might point to references to commission levels in best-selling books available for sale for almost two decades, training materials prepared, or speeches made by Keller Williams executives, but those materials also do not support Keller Williams' involvement in any conspiracy. Because Keller Williams lacks any ability to set or maintain commission rates or offers of compensation, references to commissions in statements made unilaterally by representatives of Keller Williams cannot be interpreted to have been in furtherance of a conspiracy.[4] Nor have Plaintiffs offered any evidence to support an inference that this conduct was undertaken with the conscious commitment to join any conspiracy. *See Monsanto*, 465 U.S. at 764. And Plaintiffs have offered no evidence that any Keller Williams franchisee agent offered cooperative compensation or engaged in any specific conduct at all based on any materials published by Keller Williams.

### III. CONCLUSION

For the foregoing reasons and those offered in NAR's and the HomeServices Defendants' Motion for Judgment as a Matter of Law, the Could should enter judgment as a matter of law in favor of Keller Williams.

---

[4] Plaintiffs suggest that reports of historical nationwide commission averages made to an audience at the company's Family Reunion convention that includes real estate agents affiliated with competitor brands constitutes an effort by Keller Williams to stabilize commission rates. While price "signaling" or advance announcements of price moves have been found to constitute a "plus factor" that can support inferences of a conspiracy, *see Williamson Oil Co. v. Philip Morris U.S.A.*, 346 F.3d 1287, 1305 (11th Cir. 2003), Plaintiffs make no allegations that Keller Williams executives are announcing any competitively sensitive, forward-looking information in reports of past commission rates. Plaintiffs' allegations concerning Keller Williams' Family Reunion, which they do not even attempt to tie to the Cooperative Compensation Rule (or any other challenged rule), cannot provide a legally sufficient basis for a jury verdict against Keller Williams.

Dated: October 25, 2023	Respectfully submitted,

| | |
|---|---|
| David R. Buchanan<br>dbuchanan@bjpc.com<br>BROWN & JAMES, PC-KCMO<br>2345 Grand Boulevard<br>Suite 2100<br>Kansas City, MO 64108<br>(816) 472-0800 | /s/ David C. Kully<br>David C. Kully, *pro hac vice*<br>david.kully@hklaw.com<br>Anna P. Hayes, *pro hac vice*<br>anna.hayes@hklaw.com<br>HOLLAND & KNIGHT LLP<br>800 17th Street NW, Suite 1100<br>Washington, DC 20530<br>(202) 469-5415 |
| Timothy Ray, *pro hac vice*<br>timothy.ray@hklaw.com<br>Barack S. Echols, pro hac vice<br>barack.echols@hklaw.com<br>HOLLAND & KNIGHT LLP<br>150 North Riverside Plaza, Suite 2700<br>Chicago, IL 60606<br>(312) 263-3600 | Jennifer Lada, *pro hac vice*<br>jennifer.lada@hklaw.com<br>HOLLAND & KNIGHT LLP<br>31 West 52nd Street, 12th Floor<br>New York, NY 10019<br>(212) 513-3513 |
| | Dina W. McKenney, *pro hac vice*<br>dina.mckenney@hklaw.com<br>HOLLAND & KNIGHT LLP<br>1722 Routh Street, Suite 1500<br>Dallas, Texas 75201<br>(214) 969-1757 |

***Counsel for Keller Williams Realty, Inc.***

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 25 2023, an electronic copy of the foregoing was filed with the Clerk of the Court by using the CM/ECF system, and service upon all counsel of record will be accomplished by the CM/ECF system.

/s/ *David C. Kully*
David C. Kully