IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| RHONDA BURNETT, JEROD BREIT, JEREMY KEEL, HOLLEE ELLIS, and FRANCES HARVEY, on behalf of themselves and all others similarly situated,<br><br>　　　　　Plaintiffs<br><br>　v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP. (n/k/a ANYWHERE REAL ESTATE, INC.), HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC, RE/MAX LLC, and KELLER WILLIAMS REALTY, INC.<br><br>　　　　　Defendants. | Case No. 19-cv-00332-SRB |

**PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR MISTRIAL (DOC. 1265)**

"[M]istrial is a drastic remedy reserved for the most extraordinary circumstances." *De La Hunt v. Villmer*, No. 4:16-CV-2171, 2021 WL 4523095, at *25 (E.D. Mo. Sept. 30, 2021); *accord Tyler v. White*, 811 F.2d 1204, 1206 (8th Cir. 1987). HomeServices' motion falls far short of that standard.

**I.    Impeachment of HomeServices' Witness Ron Peltier.**

HomeServices' primary focus is on Plaintiffs' impeachment of its witness Ron Peltier. During Peltier's direct examination, HomeServices elicited testimony that he promised Warren Buffet "to protect the Berkshire Hathaway name." (10/24/23 Rough Tr. 252). At HomeServices' request, Peltier testified unequivocally that "There is nothing in the history of HomeServices of America that has not been done with the highest of integrity, honesty, and sincerity. I'm confident

of that." (*Id*.). That testimony had nothing to do with any issue in the case – it was simply made to argue that HomeServices is a "good" company that would never engage in misconduct.

After HomeServices injected this issue, Plaintiffs explored it on cross-examination. When Peltier repeated his testimony, Plaintiffs asked him if any officers of HomeServices ever trained real estate agents to intimidate homeowners in order to have higher commissions. (10/24/23 Rough Tr. 259). Peltier replied, "We don't train people to intimidate people." (*Id*.). Plaintiffs then asked if Peltier knew Allan Dalton, a HomeServices Vice President. (*Id*.). Peltier replied he did, and Plaintiffs played a video of Dalton giving training advice to Tom Ferry, a leading instructor who "trains every broker brand in the country." (10/24/23 Rough Tr. 261). In this video, Dalton described how to use profanity and intimidation with home sellers. Despite being given the chance, Peltier refused to say whether he thought Dalton should be disciplined for his actions in making this video. (10/24/23 Rough Tr. 261-62).

Defendants let the entire video play without objecting. (10/24/23 Rough Tr. 260). Only after the video concluded did Defendants ask to approach. (*Id*.). When they did, they offered no objection based on the rules of evidence. Rather, counsel for HomeServices just claimed lack of notice. (*Id*.). The Court overruled that objection. Then, through four more pages of questioning, no Defendant objected a single time. (10/24/23 Rough Tr. 261-64). Plaintiffs completed their cross-examination and HomeServices offered no redirect.

At the close of the day, HomeServices accused Plaintiffs of violating the Court's pretrial orders. (10/24/23 Rough Tr. 299). That's not true. Under the Court's Scheduling Order, "It is not necessary to include exhibits to be used only for impeachment or rebuttal purposes" on Exhibit Lists. (Doc. 811 at 4). As the Court noted, this provision is standard in the Western District of Missouri. Thus, HomeServices was wrong in claiming "This should have been on the Exhibit

2

List." (10/24/23 Rough Tr. 300-01). The current motion makes no reference to the Exhibit List, and HomeServices appears to have abandoned that point.

HomeServices also claimed that the Dalton video was responsive to its Document Requests No. 16, 20, 24, and 25. (10/24/23 Rough Tr. 299). HomeServices renews that claim in its motion. (Doc. 1265 at 2). But as Plaintiffs have shown, that's not correct either:

- Document Request 16 asked for "All documents relating to the residential real estate brokerage industry." Plaintiffs objected and said they could not respond because the request was too vague and ambiguous and failed to describe the documents sought with reasonable particularity. In any event, the Dalton video does not relate to the "residential real estate brokerage industry."

- Document Request 20 asked for "All Documents relating to any Defendants in this action." Plaintiffs objected that the request was overbroad with an unlimited scope. Plaintiffs agreed to produce documents "relating to Defendants and the allegations in the Amended Complaint." The Dalton video is not responsive to this request as limited.

- Document Request 24 asked for "All Documents relied upon in drafting the Complaint." Plaintiffs objected and said they would not respond based on privilege and work product. In addition, Plaintiffs did not rely on the Dalton video in drafting their complaint.

- Document Request 25 asked for "All Documents relating to the claims and allegations in the Complaint." The allegations in the complaint do not deal with Dalton's endorsement of using profanity to intimidate home sellers. Rather, the Dalton video was used to impeach Peltier's claim that HomeServices always acted "with the highest of integrity, honesty, and sincerity."

Perhaps realizing that no document request sought the Dalton video, HomeServices advances a new third argument in its motion – that Plaintiffs should have disclosed the Dalton video under Fed. R. Civ. P. 26. (Doc. 1265 at 9). Like the Court's Scheduling Order, however, that rule does not reach situations where a document is used solely for impeachment. *Id*. at 26(a)(1)(A)(ii); 26(a)(3)(A). Similarly, Rule 26 is limited to documents that a "party may use to support its claims or defenses." *Id*. The Dalton video was not offered to support Plaintiffs' claims substantively; it was offered to impeach Peltier on the issue of HomeServices' "integrity, honesty, and sincerity" that the company itself injected into the case. Rule 26 therefore does not apply.

3

During the hearing this morning, Defendants claimed that Plaintiffs' use of the Dalton video was substantive and not proper impeachment. The Eighth Circuit recognizes, however, that "Impeachment is 'an attack on the credibility of a witness.'" *Wegener v. Johnson*, 527 F.3d 687, 691 (8th Cir. 2008) (quoting *Sterkel Fruehauf Corp.*, 975 F.2d 528, 532 (8th Cir. 1992)). "To attack the credibility of witnesses by the presentation of evidence showing that facts asserted or relied upon in their testimony are false is to impeach by contradiction." *Id.* (citing 27 Wright & Gold, *Federal Practice & Procedure* § 6096). Moreover, neither HomeServices nor the other Defendants made any objection based on improper impeachment during Peltier's testimony. The impeachment was perfectly proper, and HomeServices has waived any right to claim otherwise.

HomeServices' cited cases provide no basis for a mistrial. In *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.3d 513 (5th Cir. 1993), the plaintiff in a personal injury case specifically requested any surveillance video taken of her. The defendant took such video, but failed to disclose it claiming that it was offered only for impeachment. The court was skeptical of defendant's impeachment claim: "we question whether the proferred videotape discredits her testimony at all." *Id*. at 517. And it found the tape was used substantively because it related to a central element of the plaintiff's claim – the degree of her injuries. Here, by contrast, the Dalton video was not offered substantively. Indeed, Plaintiffs made no reference to the video during their case-in-chief. It was only after HomeServices purposefully injected the issue of its "integrity, honesty, and sincerity" during its own case that Plaintiffs used the video as impeachment to contradict HomeServices' claim.

HomeServices' other case, *Klonoski v. Mahlab*, 156 F.3d 255 (1st Cir. 1998), offers even less support. *Klonoski* is red flagged on Westlaw as "superseded by rule." The reason is that *Klonoski* relied on a previous (and much broader) version of Rule 26 that required disclosure of

4

documents relating to "any matter relevant to the subject matter involved in the action." *In re Subpoena to Witzel*, 531 F.3d 113, 118 (1st Cir. 2008). In 2000, however, Rule 26 was "narrowed to cover only information that the disclosing party may use to support its position." Fed. R. Civ. P. 26, Advisory Committee Notes, 2000 Amendment; *see also Witzel*, 531 F.3d at 118. Whatever obligations the previous rule might have imposed, Plaintiffs did not use the Dalton video to affirmatively support their position and therefore had no duty to disclose it.

To summarize, HomeServices never requested the Dalton video during discovery. If anything, HomeServices is the party that should have produced the video to Plaintiffs. Plaintiffs asked HomeServices to identify its personnel most knowledgeable about training, but HomeServices never disclosed Dalton. Plaintiffs asked HomeServices to produce all training materials, but HomeServices failed to produce a video of its Vice President giving training advice to a leading real estate instructor who "trains every broker brand in the country." (10/24/23 Rough Tr. 261). The Dalton video was publicly available, and Plaintiffs should not have been forced to search those public sources looking for material that HomeServices had an obligation to produce in the first place. In any event, the Dalton video was properly used as impeachment and provides no basis for a mistrial.

## II.     Exhibit 4609.

During his testimony, NAR witness Rodney Gansho testified that NAR changed its rules to allow zero compensation "this summer." (10/24/23 Rough Tr. 115). During cross-examination Plaintiffs confronted Gansho by asking whether the rule change was in fact made only ten days before trial, but he denied it. (10/24/23 Rough Tr. 192). Plaintiffs then sought to impeach him with Exhibit 4609, an article from a real estate publication called Inman. *Id*. NAR objected to use of the word "Inman," but otherwise stated "He can ask his questions." (10/24/23 Rough Tr. 193).

5

The Court sustained the objection and told Plaintiffs not to talk about Inman. (*Id*.). Plaintiffs asked their additional questions, without mentioning Inman, and Defendants made no further objection. (10/24/23 Rough Tr. 193-94). After further unrelated questions, Keller Williams approached and asked the Court to remind the jury not to reference any outside materials, which the Court did. (10/24/23 Rough Tr. 196, 230-31). Finally, Defendants raised the issue again at the end of the day. The Court told Plaintiffs not to use Inman articles for any further impeachment, and in the future to approach the bench when intending to impeach using anything not on any exhibit list. (10/24/23 Rough Tr. 297-98). Plaintiffs said they understood, and counsel for Keller Williams said that addressed his concern. (10/24/23 Rough Tr. 298).

None of this supports HomeServices' claim of "press contamination." (Doc. 1265 at 10). At Defendants' request, the Court reminded the jury not to consult outside sources and struck any reference to Inman from the record. The Court also polled the jury and confirmed that each jury member had not read any news reports or consulted outside materials. There is nothing in the record to establish even a hint of taint or bias of the jury.

HomeServices further refers to other press statements that the jury never heard, claiming that Plaintiffs "made extrajudicial threats" to it. (Doc. 1265 at 4). These supposed threats include: (1) reference to a Bugs Bunny cartoon where the tables are turned ("Be careful when the rabbit gets the gun"); (2) a statement that Plaintiffs would be "unrelenting" in pursuing their claims; and (3) a statement that "We're going to ask the jury to hold [Defendants] accountable." (*Id*.). None of these statements are threats, and none provide any basis for seeking a mistrial.

6

Case 4:19-cv-00332-SRB   Document 1269   Filed 10/25/23   Page 6 of 9

**III.    Other Miscellaneous Complaints.**

HomeServices also lists out other miscellaneous complaints it has about the trial, claiming they constitute "violative actions" or "repeated violations of Court Orders." (Doc. 1265 at 3-4). This is also not correct. For example:

- **"Deleted Portions" of Deposition Testimony**. HomeServices suggests that Plaintiffs improperly deleted portions of its counter-designations of Rosalie Warner's deposition. (Doc. 1265 at 4). The record shows that's not true. The designations in question were a video of Gino Blefari that the jury had already seen three times, and Plaintiffs simply wished to avoid redundancy. (10/20/23 Rough Tr. 25). Plaintiffs exchanged emails with HomeServices' counsel and reached agreement regarding what would be played. (*Id*.). Plaintiffs did nothing improper, and in any event the referenced video was actually played.

- **"Repudiation" of Exhibit Redaction**. HomeServices claims that Plaintiffs violated their own motion in limine prohibiting Defendants from arguing that Missouri law either allows or requires their conduct. (Doc. 1265 at 3). Plaintiffs made no violation. The exhibit at issue related to an entirely different issue, and the Court admitted it into evidence. (10/20/23 Rough Tr. 118). Plaintiffs violated no Court order.

- **Department of Justice Study**. HomeServices references a question asked of Craig Schulman regarding a Department of Justice study. (Doc. 1265 at 3). Plaintiffs violated no Court order – the Court's earlier motion in limine covered DOJ investigations, not studies. (Doc. 1132 at 4). In any event, the Court sustained Defendant's objection to this study and Plaintiffs moved on. (10/20/23 Rough Tr. 77).

- **Salary of NAR CEO**. HomeServices complains that Plaintiffs "attempted to reveal the salary" of NAR's CEO during questioning. (Doc. 1265 at 3). But Defendants never claimed

7

that this question violated any Court order.  NAR objected, Plaintiffs said the salary was relevant to bias, the Court sustained the objection, and Plaintiffs moved on.  (10/24/23 Rough Tr. 15-16).

• **Free Services**.  HomeServices notes that Plaintiffs' expert Roger Alford used the words "regulatory authorities" when testifying about why NAR changed its rules regarding buyer agents claiming their services were "free."  (Doc. 1265 at 3).  In the cited passage, counsel for Plaintiffs stopped Alford immediately after the words were uttered, and no Defendant objected.  (10/20/23 Rough Tr. 90).  This is following a motion in limine, not violating it.

## Conclusion

HomeServices bears a heavy burden in seeking a mistrial and has not come close to meeting it.  For all the reasons stated herein, the Court should deny HomeServices' motion in its entirety (including the company's alternative requests for relief).

Dated: October 25, 2023    Respectfully submitted by:

**KETCHMARK & McCREIGHT, P.C.**

*/s/ Scott A. McCreight*
Michael S. Ketchmark #41018
Scott A. McCreight #44002
11161 Overbrook Road, Suite 210
Leawood, KS  66211
(913) 266-4500
mike@ketchmclaw.com
smccreight@ketchmclaw.com

Eric L. Dirks #54921
Matthew L. Dameron #52093
**WILLIAMS DIRKS DAMERON LLC**
1100 Main Street, Suite 2600
Kansas City, MO 64105
(816) 945-7110
dirks@williamsdirks.com
matt@williamsdirks.com

Brandon J.B. Boulware #54150
Jeremy M. Suhr #60075

Erin D. Lawrence #63021
**BOULWARE LAW LLC**
1600 Genessee, Suite 416
Kansas City, MO 64102
(816) 492-2826
brandon@boulware-law.com
jeremy@boulware-law.com
erin@boulware-law.com

Counsel for Plaintiffs and the Classes

## CERTIFICATE OF SERVICE

 I hereby certify that on this 25th day of October, 2023, the foregoing was filed on the Court's electronic system, which sends notification of the same to all counsel of record.

   */s/ Scott A. McCreight*
   Attorney for Plaintiffs and the Classes

9

Case 4:19-cv-00332-SRB   Document 1269   Filed 10/25/23   Page 9 of 9