UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| SCOTT AND RHONDA BURNETT, RYAN HENDRICKSON, JEROD BREIT, SCOTT TRUPIANO, JEREMY KEEL, HOLLEE ELLIS, and FRANCES HARVEY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC, RE/MAX LLC, and KELLER WILLIAMS REALTY, INC.,<br><br>Defendants. | Case No.: 4:19-cv-00332-SRB<br><br>Judge Stephen R. Bough |

## THE HOMESERVICES DEFENDANTS'[1] ADDITIONAL PROPOSED JURY INSTRUCTIONS

The HomeServices Defendants hereby provide additional proposed jury instructions.

---

[1] HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC

## PROPOSED JURY INSTRUCTION 5000[2]

It has been established that neither HomeServices of America, Inc.; nor BHH Affiliates, LLC; nor HSF Affiliates, LLC is a party or a third-party beneficiary of the Listing Agreements admitted into evidence in this case.[3] There is no agreement of any kind between class members and HomeServices of America, Inc.; or BHH Affiliates, LLC; or HSF Affiliates, LLC.[4] It has been established that neither HomeServices of America, Inc.; nor BHH Affiliates, LLC; nor HSF Affiliates, LLC have a close relationship with ReeceNichols or BHH KC.[5]

---

[2] *See* Doc. 1257.
[3] Burnett v. NAR, 75 F.4th 975, 984 (8th Cir. 2023)
[4] Doc. 806 at ECF p. 23.
[5] Burnett v. NAR, 615 F. Supp. 3d 948, 959-961 (W.D. Mo. 2022), aff'd, 75 F.4th at 984 n.6 (8th Cir. 2023).

# PROPOSED JURY INSTRUCTION 5001[6]

Ladies and Gentlemen, you saw a video of a podcast played at the end of the cross examination of Mr. Peltier. The video is stricken. You are to give it no weight. You are to put it out of your mind. It is not evidence in this case. Plaintiffs were under an obligation to produce certain documents in this case four years ago. They did not comply with this obligation in the manner required by the Federal Rules of Civil Procedure. Plaintiffs were under an obligation to provide an exhibit list before this trial started. They did not comply with this obligation in the manner required by my Court Order. The playing of the podcast video was not authorized by the Federal Rules of Civil Procedure or by my Court Order. Therefore, I again emphasize that you are not to give it any weight.

---

[6] *See* Doc. 1265.

# PROPOSED JURY INSTRUCTION 5002[7]

Ladies and Gentlemen, before you were empaneled, I presided over a hearing where I decided many motions in advance of this trial. All of my decisions and Orders were placed in a written document and given to the parties before the trial started. Plaintiffs did not comply with these Orders during this trial. I am therefore striking the following from the record. The following materials are not evidence. You are not to consider them in reaching your verdict. You are to place them out of your mind. Do not give them any weight.

All references to Inman.

All references to the Department of Justice.

All references to the residence of NAR's counsel.

All references to the NAR executive's salary.

All references to action by regulatory authorities.

---

[7] *See* Doc. 1265.

# PROPOSED JURY INSTRUCTION 5003[8]

Home sellers or real estate agents acting on their behalf may make offers of compensation to buyer brokers when listing a home for sale. There is nothing illegal about making such an offer. Missouri law expressly permits the seller of a home to pay the buyer broker's compensation and permits the seller's agent to share their commission with the buyer's agent. Doing so does not suggest participation in any unlawful agreement.[9]

---

[8] *See* Doc. 1276, 1277.
[9] Mo. Rev. Stat. 339.800, 4 Mo. Code of State Regulations 250-8.090, K.S.A. 58-30,105: 58-30,105.

**PROPOSED JURY INSTRUCTION 5004**[10]

Plaintiffs are not challenging the NAR code of ethics in this case. Plaintiffs do not allege that the NAR code of ethics is the conspiracy at issue in this case.

---

[10] Rough Tr., 10/24/23, at 198:23-199:4 ("Q Sure, it might be important. But do you understand that that's not what we're challenging in this case; we're challenging the mandatory rule? We're not saying that anything in the code of ethics is the conspiracy. You understand we're saying it's the mandatory rule and the agreement to follow and enforce the mandatory rule, that that's the conspiracy? Do you know that?").

# PROPOSED JURY INSTRUCTION NO. 5005

Unilateral or independent activity does not constitute an unlawful conspiracy under the antitrust law.[11] Thus, if the evidence shows that each Defendant independently, meaning without an agreement or understanding between two or more of them, followed and enforced the Cooperative Compensation Rule, that would not be an unlawful conspiracy. It is not sufficient to hold the Defendants liable that each Defendant followed or enforced the Cooperative Compensation Rule; Plaintiffs must prove there was an agreement between the Defendants to follow or enforce the Rule.

Similarly, it would not be an unlawful conspiracy if each Corporate Defendant independently required that Corporate Defendant's wholly owned subsidiaries or franchisees to follow or enforce the Cooperative Compensation Rule.

Nor would it be an unlawful conspiracy for each Corporate Defendant independently to impose commission guidelines or policies on the Corporate Defendant's wholly owned subsidiaries, or for those subsidiaries independently to impose commission guidelines or policies on the real estate agents they engage.[12]

Such unilateral or independent actions, taken without any agreement between two or more Defendants, are not illegal under Section 1 of the Sherman Act.[13] Plaintiffs must prove by a preponderance of the evidence that Defendants reached an agreement with each other to follow or

---

[11] *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 776, 104 S. Ct. 2731, 2744, 81 L. Ed. 2d 628 (1984) ("§ 1 is limited to concerted conduct[.]"); *Willman v. Heartland Hosp. E.*, 34 F.3d 605, 610 (8th Cir. 1994) ("Unilateral actions of a single entity do not give rise to antitrust liability under section one of the Sherman Act .... Section one of the Act applies only to concerted action.") (citation omitted).

[12] *See Re/Max Int'l, Inc. v. Smythe, Cramer Co.*, 265 F. Supp. 2d 882, 899 (N.D. Ohio 2003) ("Unilateral imposition of a policy followed by mere acquiescence of others does not state a section 1 claim.") (citing *United States v. Colgate & Co.*, 250 U.S. 300 (1919)).

[13] *See* citations, *supra* at n.11.

enforce the Cooperative Compensation Rule and, additionally, that any such agreement between the Defendants had the purpose or effect of raising, stabilizing, or inflating residential real estate commissions.

# PROPOSED AMENDMENTS TO JURY INSTRUCTION NO. 21

Under the law, a corporation is a person, but it acts only through its agents. The same is true of LLCs. These corporate "persons" act only through their agents. Now, you have heard the parties talk in this case about "real estate agents." That is not what I mean when I use the word "agents" here. A real estate agent is someone who acts on behalf of a person buying or selling real estate. A corporation's agents are the people who act on behalf of the corporation, including its directors, officers, and employees. A corporation is not capable under the law of conspiring with its own agents, unincorporated divisions, or wholly owned subsidiaries. Through its agents, however, a corporation is capable of conspiring with other persons or independent corporations. A corporation's wholly owned subsidiaries are not capable under the law of conspiring with each other.[14] Nor is a corporation capable of conspiring with its own commissioned sales agents, including by unilaterally imposing commission guidelines or policies on those agents.[15]

A corporation is legally bound by the acts and statements of its agents or employees done or made within the scope of the agent's employment ~~or apparent authority~~.

Acts done within the scope of employment are acts performed on behalf of a corporation and directly related to the performance of the duties the agent has general authority to perform.

~~Apparent authority is the authority that persons outside the corporation could reasonably believe~~

---

[14] *See* Doc. No. 1236 ("The court is mindful that '[a] conspiracy requires a plurality of actors, and ... no such plurality exists between a corporation and its wholly owned subsidiary corporation.'") (quoting *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 274 (8th Cir. 1988)).

[15] *See Pink Supply Corp. v. Hiebert, Inc.*, 788 F.2d 1313, 1316 (8th Cir. 1986) ("The inherent unity of economic interest and purpose which characterizes the relationship between a corporation and its officers, employees and wholly owned subsidiaries also precludes a finding of conspiracy between a corporation and certain agents."; *Card v. Nat'l Life Ins. Co.*, 603 F.2d 828, 834 (10th Cir. 1979) (holding that general agents of insurer were "really a part of the [insurer's] structure and they could not be regarded as conspirators"); *Re/Max Int'l, Inc. v. Smythe, Cramer Co.*, 265 F. Supp. 2d 882, 899 (N.D. Ohio 2003) ("Unilateral imposition of a policy followed by mere acquiescence of others does not state a section 1 claim. ") (citing *United States v. Colgate & Co.*, 250 U.S. 300 (1919)).

~~the agent would have, judging from his or her position with the company, the responsibilities previously entrusted to the person or office, and the circumstances surrounding his or her past conduct. An agent can have apparent authority even when, despite these appearances, the agent is actually acting in a dishonest, fraudulent, or anticompetitive manner.~~

To summarize, for a corporation to be legally responsible for the acts or statements of its agents, you must find that the agent was acting within the scope of his or her employment ~~with apparent authority~~.

~~The fact that a corporation has instructed its agents not to violate the Sherman Act does not excuse the corporation from responsibility for the unlawful acts of its agents done within the scope of their employment or apparent authority.~~

A corporation is entitled to the same fair trial as a private individual. The acts of a corporation are to be judged by the same standard as the acts of a private individual, and you may hold a corporation liable only if such liability is established by the preponderance of the evidence. All persons, including corporations, are equal before the law.

# PROPOSED AMENDMENTS TO JURY INSTRUCTION NO. 22

Corporations or LLCs may own other companies, called subsidiaries. Or they may license their brand names for use by wholly independent companies, called franchisees. It is important to understand that these entities are separate in the eyes of the law. A subsidiary is separate from the company that owns it (the "parent"). And a franchisee is separate from the company that allows the franchisee to use its brand name (the "franchisor").

## Parent-Subsidiary Relationships

The fact that a company owns a subsidiary does not mean that the company is liable for the subsidiary's actions. This is true even if the parent elects the subsidiary's directors or if the parent's own directors also serve as the subsidiary's directors at the same time. The law recognizes that officers holding positions with a parent and a subsidiary can and do change hats to represent the two corporations separately and presumes that such officers wear their subsidiary hats and not their parent hats when acting for the subsidiary.[16] Likewise, an officer's oversight of a subsidiary does not establish a parent's control over the operation of the subsidiary. Activities that are consistent with the parent's investor status such as monitoring the subsidiary's performance, supervision of the subsidiary's finance decisions and articulation of general policies and procedures are regarded as within the norms of corporate behavior and do not give rise to parental liability.[17] To hold a parent liable for its subsidiary's acts—or the acts of the subsidiary's agents or employees—you must find that the subsidiary or its agents and employees were acting as the parent's agent. A subsidiary and its employees and agents are agents of the parent only if the parent exercises actual, participatory, and total control over the conduct at issue.

---

[16] *United States v. Bestfoods*, 524 U.S. 51, 69 (1998).

[17] *Id.* at 71-72.

## Franchisor-Franchisee Relationships

The fact that a franchisor licenses its brands to a franchisee does not mean that the franchisor is liable for the franchisee's actions. This is true even if the franchisor places conditions on the use of those brands. A franchisor has a legitimate interest in protecting the integrity of its brands, logos, and the like. To hold a franchisor liable for the acts of its franchisee—or the acts of the franchisee's agents or employees—you must find:

1. The franchisor has the right to control the conduct at issue;
2. The franchisee has a fiduciary duty to the franchisor; and
3. The franchisee has the right to alter the franchisor's legal rights with third parties.

The absence of any one of these three elements defeats a claim that agency exists.

You must give individual consideration to each defendant and each subsidiary or franchisee. The fact that a defendant has an agency relationship with one of its subsidiaries or franchisees does not mean it has an agency relationship with its other subsidiaries or franchisees.

Dated: October 27, 2023

/s/Robert D. MacGill
Robert D. MacGill, *pro hac vice*
Scott E. Murray, *pro hac vice*
Matthew T. Ciulla, *pro hac vice*
Patrick J. Sanders, *pro hac vice*
MACGILL PC
156 E. Market St.
Suite 1200
Indianapolis, IN 46204
(317) 721-1253
Robert.MacGill@MacGillLaw.com
Scott.Murray@MacGillLaw.com
Matthew.Ciulla@MacGillLaw.com
Patrick.Sanders@MacGillLaw.com

Jay N. Varon, *pro hac vice*
Jennifer M. Keas, *pro hac vice*
FOLEY & LARDNER LLP
3000 K Street NW
Washington, DC 20007
(202) 672-5300
jvaron@foley.com
jkeas@foley.com

Brian C. Fries
bfries@lathropgage.com
LATHROP GAGE LLP - KCMO
2345 Grand Avenue, Suite 2200
Kansas City, MO 64108-2618
(816) 292-2000

*Counsel for Defendants HomeServices of America, Inc., BHH Affiliates, LLC, and HSF Affiliates, LLC*

1

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2023, a copy of the foregoing document was electronically filed through the ECF system and will be sent electronically to all persons identified on the Notice of Electronic Filing.

*/s/ Robert D. MacGill*
Robert D. MacGill
