IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| RHONDA BURNETT, JEROD BREIT, HOLLEE ELLIS, FRANCES HARVEY, and JEREMY KEEL, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC, RE/MAX LLC, and KELLER WILLIAMS REALTY, INC.,<br><br>Defendants. | Case No. 19-CV-00332-SRB |

**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES AND SERVICE AWARDS AND SUGGESTIONS IN SUPPORT THEREOF**

# INTRODUCTION

After years of hard-fought litigation in two separate jurisdictions, Plaintiffs achieved nationwide settlements with three Defendants: Anywhere, RE/MAX and Keller Williams (the "Settlements"). Plaintiffs reached settlements with Anywhere and RE/MAX on October 5, 2023 ("the initial settlements"). Subsequently, Plaintiffs reached a settlement with Keller Williams on February 1, 2024.

Combined, the Settlements provide a non-reversionary common fund of $208,500,000. To achieve this result, Class Counsel worked over the past five years filing and prosecuting two separate lawsuits pending in different jurisdictions, *Moehrl* and *Burnett*. Class Counsel faced large risk representing the Settlement Class. They worked on a fully contingent basis, investing over 96,500 hours of labor— through the date of the last of the three settlements —and advancing nearly $13 million in out-of-pocket costs without any guarantee of success. They did so despite this case having no roadmap or pre-established path to a recovery. Indeed, far from any guarantee that they would be paid for their work or reimbursed their expenses, Class Counsel faced off against well-funded and entrenched opponents represented by *at least twenty* of the top defense firms in the country.

Class Counsel performed a massive amount of legal work leading to the Settlements, including more than 100 motions and responses, such as motions to dismiss, motions to transfer, motions to stay, motions to compel arbitration (and related appeals), class certification, Rule 23(f) appeal petitions, summary-judgment motions, *Daubert* motions, trial motions, and over 180 depositions. Class Counsel did not rely on any governmental prosecution or litigation by other private attorneys. To the contrary, Class Counsel are comprised of a diverse group of well-respected antitrust, complex litigation, and trial lawyers who spearheaded the litigation. This

Settlement therefore represents the culmination of their wholly contingent, risky, costly, and time-intensive work seeking a recovery against Defendants, not the work of anyone else.

Under well-established precedent, Class Counsel is entitled to an award of attorneys' fees representing one-third of the settlement fund and their case expenses. In the Eighth Circuit, a fee based on a percentage of the fund recovered is the favored approach for calculating attorney's fees in contingent representation, including class actions. Such a fee provides an incentive for attorneys like Class Counsel to pursue claims for those whose individual claims are otherwise too small to justify the costs of litigation. And a percentage-based recovery allows individuals without the means to pay counsel by the hour to nonetheless assert their claims. A percentage-based recovery also aligns Class Counsel's interests with those of their clients because the greater the recovery Class Counsel obtains, the greater the fee to which Class Counsel is entitled.

## FACTUAL BACKGROUND

A background of the litigation and Settlements is well-known to the Court and can be found in Plaintiffs' Motion for Preliminary Settlement Approval (Doc. 1192 at ECF 8-19; ECF 1371). The Settlements are non-reversionary meaning the entire amount will be distributed and no amount will revert to the Settling Defendants. Moreover, the Settlements include substantial injunctive relief aimed at ending the Defendants' support for the challenged restraints, including their enforcement of the Mandatory Offer of Compensation Rule. To achieve this result for the Class, Class Counsel performed more than 96,500 hours through the date of the Keller Williams settlement (January 31, 2024) and invested almost $13 million of their own money. Counsel continue to work on behalf of the Class even after these settlements, defending a verdict in *Burnett* and continuing to press forward to trial in *Moehrl* against the remaining Defendants.

2

## I. CLASS COUNSEL PERFORMED EXTRAORDINARY WORK AND ASSUMED SIGNIFICANT RISK ON A CONTINGENT BASIS ON BEHALF OF THE SETTLEMENT CLASS TO OBTAIN THE SETTLEMENTS.

Plaintiffs alleged that various participants in the residential real estate industry, including Anywhere, RE/MAX, and Keller Williams carried out a conspiracy to inflate or stabilize broker commissions by following and enforcing NAR's Mandatory Offer of Compensation Rule as well as associated restraints promulgated by NAR and its members. Defendants have fought this litigation at every conceivable step.[1] To date, Defendants have been represented by at least twenty defense firms – including many of the most highly-regarded defense firms in the world. Dirks Dec. at ¶ 13. Defendants contested every aspect of the cases – including through jurisdictional challenges, motions to compel arbitration, to motions to dismiss, to *Daubert* motions, class certification, summary judgment motions, and—in the case of Keller Williams and other co-Defendants—even a jury trial. *Id.* at ¶¶ 14, 20. Anywhere and RE/MAX fully litigated the cases right up to the courthouse steps, with the settlements only reached on the precipice of trial. *Id.* at ¶ 23. Keller Williams went even further, litigating the case through a jury trial; and settlement was not achieved until after the verdict in *Burnett*. *Id.*

Moreover, in undertaking this substantial commitment on behalf of the Settlement Class, Class Counsel assumed significant risk. There was no roadmap of previous cases or settlements, and no assistance from governmental entities or regulators through parallel litigation. *Id.* at ¶¶ 12, 14. Despite the odds, Class Counsel was successful in their efforts on behalf of the Settlement Class in the Litigation. They obtained favorable rulings on key issues including class-certification,

---

[1]   *See generally* Declaration of Eric L. Dirks ("Dirks Decl.") for an overview of the procedural history and efforts to reach the Settlements. Attached as Ex. 1. Also attached are the declarations of Michael S. Ketchmark (Ex. 2), Brandon J.B. Boulware (Ex. 3), Steve W. Berman Ex. 4), Marc M. Seltzer (Ex. 5), Robert A. Braun (Ex. 6), Daniel C. Hedlund (Ex. 7), George Farah (Ex. 8), Benjamin D. Elga (Ex. 9), Vildan A. Teske (Ex. 10), Russell E. Marsh (Ex. 11). These declarations cover many of the same topics set out in the Dirks Decl. as well as each firm's individual lodestar and expense amounts.

3

summary judgment, and *Daubert*. *Id.* at ¶¶ 14, 20, 23. But it took years of briefing, review of over 5 million pages of documents, retention of at least 20 experts and consultants, and approximately 180 depositions to achieve this result. *Id.* at ¶ 14. Reflecting these efforts, *Burnett* and *Moehrl* have over 1,800 docket entries as of the date of this filing.

Complex litigation, especially against experienced and sophisticated defense counsel, takes extra skill and effort, and that was true here. *Id.* at ¶ 36. Despite the work required and the risk in light of Defendants' stalwart defense, Class Counsel did not waver in their investment of time and money on behalf of the Settlement Class. Class Counsel pushed the Settling Defendants for the best possible settlement they could pay, which included at least three unsuccessful mediations. *Id.* at ¶¶ 24-26. During the subsequent settlement negotiations with Anywhere and RE/MAX which were ultimately successful, Class Counsel had completed all pretrial work in *Burnett* and were on the precipice of the trial. There was no guarantee whatsoever of success at trial and the Settlements represent the culmination of years of work.

Despite the uncertainty, Class Counsel's work necessarily hampered their ability to take on other work. *Id.* at ¶¶ 17-18. That was time and money spent and invested on behalf of the Settlement Class that could have been spent on less risky cases, where liability or damages were more certain, or where the claims had been advanced by previous litigation, government prosecutions or public admissions. *Id.* And even after a trial victory, risks remain given the Defendants' stated inability to pay a judgment – not to mention any risks on appeal.

## ARGUMENT

### I. THE REQUESTED ATTORNEY'S FEES ARE REASONABLE UNDER THE FACTS AND CIRCUMSTANCES PRESENTED HERE.

Under well-established Eighth Circuit law, a fee equal to one-third of the Settlement Fund should be approved.

### A. Contingent Fees Are Awarded Using the Percentage-of-the-Fund Approach.

Courts typically use the "percentage-of-the-fund method" to award attorneys' fees from a common fund. *See, e.g.*, *Rawa v. Monsanto Co.*, 934 F.3d 862, 870 (8th Cir. 2019). "In the Eighth Circuit, use of a percentage method of awarding attorney fees in a common-fund case is not only approved, but also 'well established,'" *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005) (quoting *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999)), or even "preferable,'" *Barfield v. Sho-Me Power Elec. Co-op.*, No. 11-CV-4321, 2015 WL 3460346, at *3 (W.D. Mo. June 1, 2015) (quoting *West v. PSS World Med., Inc.*, No. 13-CV-574, 2014 WL 1648741, at *1 (E.D. Mo. Apr. 24, 2014)). The percentage method aligns the interests of the attorneys and the class members by incentivizing counsel to maximize the class's recovery. *See Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 245 (8th Cir. 1996) ("[T]he Task Force [established by the Third Circuit] recommended that the percentage of the benefit method be employed in common fund situations.") (citing *Court Awarded Attorneys Fees, Report of the Third Circuit Task Force*, 108 F.R.D. 237, 255 (3rd Cir. 1985))).[2] The Court should therefore use the percentage approach to award fees in this case.

### B. A Fee Equal to One-third of the Fund is Reasonable.

This Court and other courts within the Eighth Circuit confirm that one-third of the common fund is an appropriate amount for class counsels' fees in complex class actions, including antitrust litigation. Eighth Circuit and Missouri courts "have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund in other class actions." *Huyer v. Buckley*, 849

---

[2] In contrast, undue focus on hours or hourly rates "creates an unanticipated disincentive to early settlements, tempts lawyers to run up their hours, and compels district courts to engage in a gimlet-eyed review of line-item fee audits." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (cleaned up).

F.3d 395, 399 (8th Cir. 2017) (quoting *In re Xcel,* 364 F. Supp. 2d at 998); *see also Rawa*, 934 F.3d at 870 ("courts have frequently awarded attorneys' fees ranging up to 36% in class actions") (quoting *Huyer*, 849 F.3d at 399); *Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1064 (D. Minn. 2010) (holding fee award of 33% reasonable); *In re U.S. Bancorp Litig.,* 291 F.3d 1035, 1038 (8th Cir.2002) (affirming fee award representing 36% of the settlement fund as reasonable)); *In re Xcel,* 364 F.Supp.2d at 998 (collecting cases demonstrating that district courts routinely approve fee awards between 25% and 36%).

Just recently, this District approved one-third of the fund in a settlement valued at $325 million. *See Rogowski v. State Farm Life Ins. Co.*, No. 22-CV-203, 2023 WL 5125113, *4-5 (W.D. Mo. April 18, 2023). Thus, judges in the Western District of Missouri and the Eighth Circuit routinely apply the one-third-of-the-fund fee calculation, even to large settlements.

In doing so, courts typically consider some or all of the relevant factors listed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). *See In re Target Corp. Customer Data Security Breach Litig.*, 892 F.3d 968, 977 (8th Cir. 2018). The *Johnson* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*In re Target,* 892 F.3d at 977 n.7. To be sure, "[m]any of the *Johnson* factors are related to one another and lend themselves to being analyzed in tandem." *Swinton v. SquareTrade, Inc.*, 454 F. Supp. 3d 848, 886 (S.D. Iowa 2020). Therefore, courts in the Eighth Circuit often focus on the most relevant *Johnson* factors in evaluating fee requests. *See Huyer*, 849 F.3d at 398–400 (affirming trial court's award of one-third of the common fund after review of Johnson factors 1-

5 only); *In re Xcel*, 364 F. Supp. 2d at 993; *Tussey v. ABB, Inc.*, No. 06-CV-4305, 2019 WL 3859763, at *2 (W.D. Mo. Aug. 16, 2019); *Yarrington*, 697 F. Supp. 2d at 1062; *Hardman v. Bd. of Educ. of Dollarway, Arkansas Sch. Dist.*, 714 F.2d 823, 825 (8th Cir. 1983).

### Class Counsel worked on a contingent basis, despite the numerous risks and time commitments.
**(Factors 1, 4, 6-7 and 10)**

Here, Class Counsel's time and labor invested was substantial and necessarily precluded other work. Dirks Decl. (Ex. 1) at ¶ 18. Prosecuting the Litigation required over $80,000,000 in lodestar through January 31, 2024. Dirks Decl. at ¶ 41. In addition to the substantial number of hours it took to reach the Settlements, Class Counsel were also required to expend $12,923,266.48 of their own money toward the litigation through the date of the initial settlements. All that work, which precluded other less-risky employment, was the result of Class Counsels' efforts undertaken without any guarantee of payment. Dirks Decl. at ¶ 10, 17-18, 27. Moreover, this case faced low odds of early settlements given the attack on practices that were central to the real estate brokerage industry. *See, e.g.*, *How the $1.8 Billion Real-Estate Commissions Lawsuit Came to Be*, Wall Street Journal, November 26, 2023 ("Antitrust cases almost always settle before trial, giving attorneys some assurance they will get paid something. But in this case, the damages were so high and the threat to the industry so existential that plaintiff attorneys thought it unlikely NAR would settle."). Indeed, from the outset, NAR took the position that the cases were "baseless." *See, e.g., Realtor Group Moves to Dismiss Class Action Lawsuit Alleging Collusion,* Forbes, May 21, 2019 ("According to John Smaby, president of NAR, all three claims have no merit. 'In today's complex real estate environment, REALTORS and Multiple Listing Services promote a pro-consumer, pro-competitive market for home buyers and sellers, contrary to the baseless claims of these class

7

action attorneys,' he said. 'Our filing today shows the lawsuit is wrong on the facts, wrong on the economics and wrong on the law.'").

"Courts have recognized that the risk of receiving little or no recovery is a major factor in awarding attorney fees." *Yarrington*, 697 F. Supp. 2d at 1062 (quoting *In re Xcel*, 364 F. Supp. 2d at 994); Theodore Eisenberg & Geoffrey Miller, *Attorney Fees In Class Action Settlements: An Empirical Study*, 1 J. Emp. L. Studies 27, 27, 38 (2004) ("Fees are also correlated with risk: the presence of high risk is associated with a higher fee, while low-risk cases generate lower fees . . . . [This] is widely accepted in the literature.")). "Unless that risk is compensated with a commensurate award, no firm, no matter how large or well-financed, will have the incentive to consider pursuing a case such as this." *Tussey*, 2019 WL 3859763, at *3. "Courts agree that a larger fee is appropriate in contingent matters where payment depends on the attorney's success." *Been v. O.K. Industries, Inc.*, No. 02-CV-285, 2011 WL 4478766, at *9 (E.D. Okla. Aug. 16, 2011). And critically, "[t]he risks plaintiffs' counsel faced must be assessed as they existed in the morning of the action, not in light of the settlement ultimately achieved at the end of the day." *In re Xcel*, 364 F. Supp. 2d at 994.

This was the riskiest case some Class Counsel have ever prosecuted, due not only to the possibility of no recovery but also due to the amount of time and money they were required to expend in order to be in a position to reach the Settlements (or judgment) against entrenched defendants. Dirks Decl. at ¶22; Berman Dec. at ¶ 5. *See also Caligiuri v. Symantec Corp.*, 855 F.3d 860, 866 (8th Cir. 2017) (affirming fee award where lower court reasoned, in part, that "[p]laintiffs' counsel, in taking this case on a contingent fee basis, was exposed to significant risk"); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 17-md-2800, 2020 WL 256132, at *33 (N.D.

8

Ga. Mar. 17, 2020) ("This action was prosecuted on a contingent basis and thus a larger fee is justified.").

### The claims were difficult to prosecute.
### (Factor 2)

Because antitrust claims are especially complex, expensive, and difficult to prosecute, courts have recognized that antitrust settlements should result in attorneys' fees equal to one-third of the fund. *See In re Peanut Farmers Antitrust Litig.,* No. 19-CV-00463, 2021 WL 9494033, at *6 (E.D. Va. Aug. 10, 2021) ("[A]n award of one-third is also common in antitrust class actions.") (citing cases);[3] *In re Urethane Antitrust Litig.*, No. 04-CV-1616, 2016 WL 4060156, at *5 (D. Kan. July 29, 2016) (awarding one-third of $835 million settlement, noting "a one-third fee is customary"); *In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 100, 106 (E.D. Pa. 2013) (awarding one-third of the settlement fund as attorneys' fees in which court relied upon the fact that class counsel had litigated a number of hotly contested *Daubert* challenges).

Here it is undeniable that the antitrust claims at issue in these cases were challenging to prosecute. As the Court saw, no stone was left unturned by Defendants and challenges were made at every stage (*i.e.* motions to dismiss, motions for summary judgment, Daubert motions, efforts to appeal from class certification orders, appeals on arbitration issues, and trial). *See* Dirks Decl. at ¶¶ 14, 23.

### Class Counsel's reputation and skillful resolution of the Litigation supports the award.
### (Factors 3 and 9)

Courts often judge class counsel's skill against the "quality and vigor of opposing counsel . . . ." *In re Charter Commc'ns, Inc.*, MDL No. 1506 All Cases, No. 02-CV-1186, 2005

---

[3] And observing that "[o]ther courts have determined that a higher percentage rate is appropriate where discovery has been completed and the case is ready for trial." *Id.*

WL 4045741, at *29 (E.D. Mo. June 30, 2005) (citing *In re IBP, Inc. Sec. Litig.*, 328 F. Supp. 2d 1056, 1064 (D.S.D. 2004)).

Here, Class Counsel faced off against no fewer than *twenty* highly-respected law firms over the course of the litigation. Although Class Counsel's team included some of the country's most accomplished class action and trial lawyers, Defendants also hired some of the country's most prominent and respected defense attorneys. This weighs heavily in favor of the requested award.

Class Counsel in their own right are well-known on both a national level and local level. *See generally* Exhibits 1-6. Indeed, trial counsel for the *Burnett* case was named as this year's Missouri Lawyer of the Year. *See Ketchmark named Lawyer of the Year*, Missouri Lawyers Weekly, December 7, 2023. And Class Counsel for the *Moehrl* case have been repeatedly recognized for their skill and expertise in antitrust litigation. *See, e.g.,* Berman Dec. at ¶ 2; Seltzer Dec. at ¶ 3; Braun Dec. at ¶ 2.

### The percentage requested is supported by other awards under the facts and circumstances of this Litigation.
### (Factors 5 and 12)

In the Eighth Circuit, courts have "frequently awarded attorneys' fees ranging up to 36% in class actions." *Huyer*, 849 F.3d at 399.[4] Courts have recognized that prosecution of antitrust claims should result in a one-third-of-the-fund fee award. *See In re Peanut Farmers,* 2021 WL 9494033, at *6 ("[A]n award of one-third is also common in antitrust class actions.") (citing cases); *In re Urethane*, 2016 WL 4060156, at *5 (awarding one-third of $835 million antitrust settlement, noting "a one-third fee is customary").

---

[4] *See also supra* pp. 5-6.

Moreover, the requested one-third fee award is equal to or less than what the actual named plaintiffs—those with the most on the line and most involved in the case—agreed to at the outset of the case. Class representative in the *Burnett* case agreed to at least 35%. Dirks Decl. at ¶27. Class representative in the *Moehrl* case agreed to up to 33.3%. Berman Dec. at ¶ 16.

### The amount involved and results obtained for the Settlement Class given the risks of the Litigation support the percentage requested.
### (Factor 8)

Here, the Fund is pure cash and non-reversionary; so, the Settlements, plus interest earned until its distribution, requires no further valuation.[5] In requesting a fee as a percentage of the Fund, Class Counsel necessarily seeks a fee proportionate to the degree of monetary success obtained.

Equally important, the Settlements include significant injunctive relief which require the Settling Defendants, among other things, to not enforce the Mandatory Offer of Compensation Rule and to train their agents that commissions are negotiable. *See also National Association of Realtors Verdict Will Send "Shock Waves" Through the Industry,* The Wall Street Journal, November 1, 2023 ("There is no question that Tuesday's nearly $1.8 billion verdict against the National Association of Realtors and brokerage firms is going to send shock waves through the industry. Commissions have stayed pretty stable at about 5% to 6% of the sales price for decades now, despite major technological upheaval in the industry. We may finally start to see those costs for home buyers and sellers go down quite a bit."). Counsel is not seeking any additional fee for this valuable relief in this motion, but the value of that relief is substantial in itself and should be considered when evaluating the fee that is sought.

This factor supports a contingency percentage of one-third, particularly given the benefits achieved. Importantly, success—including "exceptional success"—is not measured solely by the

---

[5] The value of the injunctive relief obtained is also substantial.

maximum damages alleged but must be evaluated against any "unusually difficult or risky circumstances and the size of plaintiffs' recovery." *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1204–05 (S.D. Fla. 2006). Here, the request is supported by both the size of the recovery and the results obtained as compared to the risk of a lesser recovery or none at all. Moreover, the Settlements represent the first recovery on behalf of the class. Rather than stop at these settlements and move on to less risky litigation, Class Counsel have continued to prosecute these joint and several liability claims against other Defendants. Thus, any future settlements or judgments will also benefit the Class.

Finally, the Settlements represent the most Anywhere, RE/MAX and Keller Williams can reasonably pay. Dirks Decl. at ¶ 26.

### C. The Requested Fee Is Reasonable Under a Lodestar Crosscheck.

Although a lodestar crosscheck is "not required" in the Eighth Circuit, *Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017); *PHT Holdings II, LLC v. N. Am. Co. Life & Health Ins.*, 2023 WL 8522980, *7 (S.D. Iowa November 30, 2023)—and should be disfavored[6]—performing such a crosscheck here confirms that the requested fee is reasonable and should be approved. As noted above, Class Counsel have spent over 96,500 hours through January 31, 2024. These hours result in an overall lodestar through January 31, 2024 of $80,354,706.40. Dirks Decl. at ¶ 41.

Thus, under these Settlements, class counsel's lodestar exceeds the fee request.

---

[6] "'[T]o overly emphasize the amount of hours spent on a contingency fee case would penalize counsel for obtaining an early settlement and would distort the value of the attorneys' services.'" *Rawa*, 934 F.3d at 870 (quoting *In re Charter Commc'ns*, 2005 WL 4045741, at *18).

## II. THE COURT SHOULD APPROVE CLASS COUNSEL'S REQUEST FOR REIMBURSEMENT OF REASONABLY INCURRED EXPENSES.

"Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement." *Yarrington*, 697 F. Supp. 2d at 1067 (quoting *In re Media Vision Tech. Sec. Litig.,* 913 F. Supp. 1362, 1366 (N.D. Cal. 1996)). Under the Settlements, Class Counsel are entitled to recover their expense reimbursement. The costs and expenses through January 31, 2024 were reasonable and necessary in order to reach these Settlements. Dirks Decl. ¶ 42; see also Exhibits 2-11.

The largest components of these costs are for experts, class notice and administration, depositions and mediations, travel and online research. *See Tussey*, 2019 WL 3859763, at *5 ("Reimbursable expenses include many litigation expenses beyond those narrowly defined 'costs' recoverable from an opposing party under Rule 54(d), and includes: expert fees; travel; long-distance and conference telephone; postage; delivery services; and computerized legal research.") (*citing* Alba Conte, 1 Attorney Fee Awards § 2:19 (3d ed.))). Here, the litigation required a large number of depositions due to the complex nature of the claims, the size of the case, and the number of relevant witnesses. Experts were critical because they are virtually essential in antitrust cases. The *Moehrl* and *Burnett* cases were partly coordinated but litigated separately, involving different geographical regions and case schedules, and therefore it was necessary for Class counsel in each case to retain separate experts. A platform for storing documents and facilitating their review was required given the large volume of documents produced. Class notice administration was required under Rule 23. Legal research was required given the innumerable legal disputes and briefs. When possible, the *Moehrl* and *Burnett* plaintiffs coordinated in order to reduce expenses. For example,

Class Counsel shared document repositories and coordinated numerous depositions to occur on the same day. Dirks Decl. at ¶ 45.

All of the expenses submitted were reasonable expenses in such a large litigation. The Court should thus approve Class Counsel's expense reimbursement request.

### III. THE COURT SHOULD APPROVE THE REQUESTED SERVICE AWARDS.

Courts routinely approve service awards to compensate class representatives for the services they provide and the risks they incur on behalf of the class. The factors for deciding whether the service awards are warranted are: "(1) actions the plaintiffs took to protect the class's interests, (2) the degree to which the class has benefited from those actions, and (3) the amount of time and effort the plaintiffs expended in pursuing litigation." *Caligiuri*, 855 F.3d at 867.

Here, Plaintiffs seek a service award of $15,000 per Settlement Class Representative and $25,000 for Class Representatives who testified at trial. The Settlement Class Representatives performed important work on the case, including time-consuming gathering of facts and documents, assisting Class Counsel with the specifics of their transactions, preparing for and sitting for depositions, reviewing the Settlement Agreements, and for some, attending and testifying at trial. Dirks Decl. at ¶ 46. That work materially advanced the litigation and protected the Settlement Class's interests. *Id.* Indeed, without their time and effort, these Settlements would have been impossible. Finally, the requested service awards are consistent with other awards approved in the Eighth Circuit. *Tussey*, 850 F.3d 951, 961–62 (8th Cir. 2017) (approving $25,000 service awards); *Rogowski*, 2023 WL 5125113, *6 (approving $25,000 service awards for named plaintiffs); *Wolfert v. UnitedHealth Group, Inc.,* No. 08-CV-01643 (E.D. Mo. Aug. 21, 2009), ECF No. 38 at 4–5 (approving a service award of $30,000).

Accordingly, Plaintiffs' request falls within a fair range of service awards—this is

14

especially so given the landmark nature of this litigation. The Court should therefore approve the requested service awards for each Settlement Class Representative.[7]

## CONCLUSION

Class Counsel respectfully request that the Court approve the requested fee of one-third of the Settlement Fund, reimbursement of current expenses in the amount of $12,923,266.48 (subject to being updated before the final approval hearing), and service awards of $15,000-25,000 to each of the Settlement Class Representatives.

Respectfully Submitted,

**WILLIAMS DIRKS DAMERON LLC**

 */s/ Eric L. Dirks*
Eric L. Dirks MO #54921
Matthew L. Dameron MO #52093
1100 Main Street, Suite 2600
Kansas City, Missouri 64105
Tel:    (816) 945-7110
Fax:    (816) 945-7118
dirks@williamsdirks.com
matt@williamsdirks.com

**BOULWARE LAW LLC**
Brandon J.B. Boulware MO # 54150
Jeremy M. Suhr MO # 60075
Erin D. Lawrence MO # 63021
1600 Genessee, Suite 416
Kansas City, MO 64102
Tel:    (816) 492-2826
brandon@boulware-law.com
jeremy@boulware-law.com
erin@boulware-law.com

---

[7] To the extent a Settlement is reached with the additional defendants, Plaintiffs may seek additional service awards for class representatives who further participated.

**KETCHMARK AND MCCREIGHT P.C.**
Michael Ketchmark MO # 41018
Scott McCreight MO # 44002
11161 Overbrook Rd. Suite 210
Leawood, KS 66211
Tel:   (913) 266-4500
mike@ketchmclaw.com
smccreight@ketchmclaw.com

*Attorneys for the Settlement Class*