# Exhibit 1

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| RHONDA BURNETT, JEROD BREIT, HOLLEE ELLIS, FRANCES HARVEY, and JEREMY KEEL, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC, RE/MAX LLC, and KELLER WILLIAMS REALTY, INC.,<br><br>Defendants. | Case No. 19-CV-00332-SRB |

**DECLARATION OF ERIC L. DIRKS IN SUPPORT OF
CLASS COUNSEL'S MOTION FOR ATTORNEY'S FEES, COSTS, EXPENSES
AND SERVICE AWARDS**

I, Eric L. Dirks, hereby declare as follows:

1. I am a partner at the law firm of Williams Dirks Dameron LLC in Kansas City, Missouri, and counsel for the Plaintiff and the Class in the *Burnett* action. I submit this declaration in support of Plaintiff's Motion for Attorneys' Fees, Expenses and Service Awards. I make this statement of my own personal knowledge, and if called to testify, would testify competently thereto.

2. The following is a brief description of my professional background. I am a founding partner of the law firm of Williams Dirks Dameron LLC, in Kansas City, Missouri where I focus my practice on complex litigation, including nationwide class actions. Before my involvement in this case, I have acted as counsel on over four dozen class and collective actions,

1

I have settled numerous class actions, tried a class action to verdict and through appeal in federal court (prior to the *Burnett* trial), and successfully argued the issue of class certification before the Missouri Supreme Court. As the Court is aware, my firm and our co-counsel in this case successfully navigated this case from its infancy to a $1.785 Billion jury verdict.

3. I am AV rated with Martindale Hubbell, am routinely selected as a Super Lawyers Top 50 in Kansas City and have been selected to Kansas City's Best of the Bar on multiple occasions. I have publicly spoken on numerous occasions the topic of complex litigation, including class actions.

4. I spent the majority of my time over the past three years working on the *Burnett* matter and am intimately familiar with all aspects of the case.

5. Based on my experience prosecuting this case and our research, the Settlements represent the largest known consumer class settlement involving the real estate brokerage industry.

6. The Settlements are more than a large financial recovery for the class. The injunctive relief set out in the Settlements is a substantial victory for class members and, in my opinion, will ultimately result in cost savings for future home sellers.

7. Based on my experience in handling class action litigation for the past two decades, I can say without a doubt that the Settlements constitute a fair and reasonable– indeed excellent– result for the class.

8. Our firm and co-counsel filed *Burnett* in 2019 and have collectively dedicated more resources to the prosecution of this litigation than any other case in our firms' history. Prior to *Moehrl* and *Burnett*, there has never been a public or private prosecution or settlement of the Mandatory Offer of Compensation Rule. In other words, our case is the first to obtain monetary or injunctive relief with respect to the Mandatory Offer of Compensation Rule. Throughout the

litigation Anywhere, RE/MAX and Keller Williams took the position that their conduct was lawful and that the cases lacked merit.

9. *Burnett* and *Moehrl* represent the only certified classes of plaintiffs involving the Mandatory Offer of Compensation Rule. Our firm and co-counsel, along with class counsel in *Moehrl* (collectively "Class Counsel" or "co-counsel"), litigated the only cases involving the Mandatory Offer of Compensation Rule until other plaintiffs began filing similar cases once they had the opportunity to observe our successes in the litigation.

10. As discussed in greater detail below, to achieve this result for the Settlement Class, we, along with our co-counsel, performed a massive amount of work—more than 96,500 hours through the date of the Keller Williams Settlement—in the Litigation, on a contingent basis, working for more than five years. We also spent over $12,923,266.48 in reasonable and necessary expenses through the date of the Keller Williams Settlement.

11. After we reached Settlements with Anywhere and RE/MAX, we continued litigating against Keller Williams and other defendants. In *Burnett*, we litigated all the way through trial and in *Moehrl*, summary judgment briefing is ongoing and trial is nearing.

12. Based on my two decades of experience prosecuting class actions and serving as class counsel in numerous class actions, I can say that this Litigation was the most unique and hotly-contested I have experienced. Moreover, the result came after years of work in not one, but two, litigious class actions: *Burnett* and *Moehrl*.

13. In each case, Defendants mounted a comprehensive and independent defense, requiring us to give an equally forceful prosecution. Defendants were represented by no less than twenty well-respected defense firms during the course of the *Burnett* litigation including: Cooley, Quinn Emanuel Urquhart Sullivan, Arent Fox Schiff, Jones Day, Holland & Knight, Faegre Baker

Daniels, Morgan Lewis & Bockius, Foley & Lardner, MacGill PC, Gibson Dunn & Crutcher, Barnes & Thornburg, MoloLamken, Polsinelli, Stinson, Brown & James, Lathrop GPM, Horn Aylward & Bandy, Armstrong Teasdale.

14. In undertaking such a substantial commitment on behalf of the Settlement Class, we assumed momentous risk because the claims were complex and expensive to prosecute. We defeated two motions to dismiss, three motions to compel arbitration, 5 motions for summary judgment, three appeals, and took and defended over 80 depositions in *Burnett* and over 100 depositions in *Moehrl*. The cases involved at least 20 different experts on liability and damages involving numerous reports and depositions. Damages experts reviewed huge data sets including millions of rows of data. Expert testimony covered a broad array of subject matters.

15. We reviewed more than 5 million pages of documents, and we isolated and reviewed unique documents, which culminated in the parties marking hundreds of deposition and trial exhibits. Both sides issued numerous third-party subpoenas to multiple MLSs and real estate brokerages.

16. Even after prevailing at trial in *Burnett*, Defendants continue to fight nearly every aspect of the case. Nonetheless, we were successful in our efforts on behalf of the Settlement Classes with respect to Anywhere, RE/MAX, and Keller Williams.

17. Our investment of labor and expenses substantially limited the other work my firm and my co-counsels' firms we were able to take on during the last five years. We confronted a much larger defense team with a near endless amounts of resources. The nearly 100,000 hours of work we collectively performed through the date of the Keller Williams Settlement demonstrates this massive undertaking. Given the size and business model of our firms, that was a significant risk for us to take on a purely contingent basis.

18. There were certainly less risky cases we could have devoted those resources to, where either liability or damages or both were more certain, where expert witnesses and other costs of prosecution were cheaper, where payment would come faster, and where the claims had been advanced by previous case law or government prosecution. We nonetheless dedicated our resources to these cases because we believed in the claims and representation of the class.

19. We undertook to represent home sellers when these cases were not only risky, but legally uncharted. There was no favorable precedent on the issue of the Mandatory Offer of Compensation Rule.

20. Liability was also far from the only risk we faced. It was critical to prevail on that point but hardly sufficient to obtain a significant recovery. Defendants levied every conceivable challenge at class certification, expert testimony, and damages.

21. And this case was unusually expensive to prosecute. This is due, in part, to the antitrust nature of the case. But also due to the fact that we were required to engage experts to handle significant data processing and evaluation due to the large number of transactions involved.

22. In terms of the time involved, expenses required, and area of law, I can say that this case was, by far, the riskiest case my firm has ever prosecuted.

23. It was not until the eve of trial, and Defendants exhausting their options at every turn (i.e. motions to dismiss, motions for summary judgment, Daubert motions, appeals from class certification order, and trial continuances), that Anywhere and RE/MAX were prepared to settle. Ultimately, Plaintiffs' decision to settle was based on Anywhere and RE/MAX's financial condition and strategic trial considerations. And we did not reach a settlement with Keller Williams until three months after trial, again based on Keller Williams's financial condition and strategic considerations.

5

Case 4:19-cv-00332-SRB   Document 1392-1   Filed 02/29/24   Page 6 of 13

24. The Settlements were not reached until after numerous attempts at mediation and negotiations. The cases were first mediated April of 2020 with Hon. Garrett Brown (Ret.). The parties attended a mediation with Judge Brown as well as several less formal phone calls and meetings. These attempts were unsuccessful. The parties then mediated with Greg Lindstrom in January of 2023, a well-known national antitrust expert and mediator. The attempts were again unsuccessful. Numerous phone calls and emails between Plaintiffs and Mr. Lindstrom and separately between Defendants and Mr. Lindstrom were also unsuccessful. The parties then attended another mediation with Judge Willie Epps in July of 2023. While some progress was made, no settlements were reached. Plaintiffs and Anywhere subsequently attended a mediation with Mr. Lindstrom shortly before trial and ultimately reached a resolution after two full days. Plaintiffs then mediated with RE/MAX using Mr. Lindstrom and reached a resolution after two separate days of negotiations. The parties continued to finalize the Anywhere and RE/MAX settlements and were able to do so prior to trial, with the both Settlements being signed on or around October 5, 2023. Plaintiffs attended another mediation with Keller Williams and Mr. Lindstrom after trial, in addition to numerous calls, meetings and negotiations. The Keller Williams settlement was executed on February 1, 2024.

25. In order to determine that the Settlements are in the best interest of the Class, and in addition to the discovery process and evaluation of data and witnesses, Plaintiffs used forensic accountants to evaluate the internal financial documents of Anywhere, RE/MAX and Keller Williams. Anywhere, RE/MAX, and Keller Williams provided detailed internal financial documentation and made their executives available for questioning by Plaintiffs counsel. It was only after this process of determining each settling Defendant's ability to pay that the parties

reached settlement. In my opinion, the Settlements are fair, reasonable and adequate in light of Anywhere, RE/MAX, and Keller Williams's financial condition.

26. I also believe the Settlement is in the best interests of the Settlement Class given the risks and delay of further litigation. The Settlement represents the most Anywhere, RE/MAX, and Keller Williams could reasonably pay. Moreover, due to the nature of joint and several liability, the Settlements do not constitute a maximum recovery for the class because Settlement Class Members will be eligible to participate in any future settlements. Thus, the Settlements obtained meaningful relief for the classes with the opportunity for additional recovery. Indeed, as Class Counsel, we continue to strenuously litigate on behalf of this Settlement Class.

27. My firm's work on this case was performed on a wholly-contingent basis pursuant to contingency fee contracts with the Named Plaintiffs. Each of these contracts with Named Plaintiffs called for a contingency fee of 35%—higher than the amount requested from the common fund. My firm has not received any amounts in connection with this case, either as fee income, litigation funding or expense reimbursement.

28. The time we spent on this case over the last five years has substantially limited our ability to take on other, potentially profitable work. Because my office is relatively small, any time I spend on this case necessarily reduces the time I have available to work on other matters. I have personally declined to work on numerous promising cases due to my commitments in prosecuting this case.

29. My firm kept contemporaneous track of the time spent on *Burnett* and the Litigation.

30. After an exercise of billing judgment, our firm has expended 9,133 hours of work in connection with this litigation through January 31, 2024 (the date of the Keller Williams

Settlement) and many more since then. Many of our hours in this case were not recorded due to the contingent nature of our Plaintiffs' practice. For example, over the course of this litigation I made and received thousands of case-related calls and emails for which I did not record my time. But we do regularly record contemporaneous daily time records in our computerized database, which occurred in this case and is reported below.

31. My firm's lodestar through January 31, 2024, on the Burnett matter is:

| TIMEKEEPER | POSITION | HOURS | RATE | TOTAL |
|---|---|---|---|---|
| Allen, Alexis | Associate | 49.2 | $600 | $29,520.00 |
| Cheung, Katia | Associate | 2,139.6 | $600 | $1,283,760.00 |
| Dameron, Matthew | Partner | 1,216.4 | $1,250 | $1,520,500.00 |
| Dirks, Eric | Partner | 3,310.6 | $1,250 | $4,138,250.00 |
| Flores, Carlos | Paralegal | 39.1 | $300 | $11,730.00 |
| Graham, Katie | Paralegal | 24.9 | $300 | $7,470.00 |
| Mann, Clinton | Associate | 89.4 | $600 | $53,640.00 |
| Stout, Courtney | Associate | 2,204.8 | $600 | $1,322,880.00 |
| Strickland, Brittni | Paralegal | 41.7 | $300 | $12,510.00 |
| Williams, Michael | Partner | 15.5 | $1,250 | $19,375.00 |
| Wren, Jesse | Paralegal | 1.8 | $300 | $540.00 |
|  | TOTAL HOURS | 9,133.0 | TOTAL | $8,400,175.00 |

32. These rates are consistent with recent lodestar crosschecks in complex litigation in the Kansas City area. *See, e.g., Rogowski v. State Farm Life Ins. Co.*, No. 22-CV-203, 2023 WL 5125113, at *5 n.8 (W.D. Mo. Apr. 18, 2023) (performing lodestar crosscheck on rates of $1,125 for senior partners, $775-$950 for junior partners, $475-$700 for associates, and $275-$340 for paralegals); *In re T-Mobile Customer Data Security Breach Litigation*, No. 21-MD-3019 (W.D. Mo. June 29, 2023), ECF No. 235 at 37–38 (rejecting need to perform lodestar crosscheck but nonetheless finding the following rates reasonable, senior partners $1,000-$1,275, junior partners $825-$950, and associates $475-$650); Order and Judgment Granting Final Approval of Class Action Settlement, *Jackson County v. Trinity Industries*, No. 1516-CV23684, at 4–5 (Mo. Ct. Cir. Aug. 30, 2022) (approving blended hourly rate of $662 for firms).

33. Our work in class action litigation has been crosschecked relatively recently by this Court in *Hays v. Nissan N. Am. Inc.*, No. 17-CV-353 (W.D. Mo. Sept. 30, 2022), ECF No. 138 at 3 ($900 - $1,125 for partners, $695 for associates, $340 for paralegals).

34. A court within the Eighth Circuit recently approved a class action fee petition noting the "median standard billing rate for equity partners of $1,463 per hour, as reflected by a nationwide survey of the top 50 law firms nationwide." *PHT Holdings II, LLC v. N. Am. Co. Life and Health Ins.*, No. 18-CV-368, 2023 WL 8522980, *7 (S.D. Iowa November 30, 2023). The court recognized the overall lodestar crosscheck rates were below this average in finding the lodestar crosscheck to result in a reasonable fee. *Id.* at 7–8. The court also observed that, where, as here, prosecuting the case requires particularized legal specialization, the courts may consider a national billing rate. *Id.* at 7. *See also In re Auto Parts Antitrust Litig.*, No. 12-md-2311, 2018 WL 7108072, at *3 (E.D. Mich. Nov. 5, 2018) ("In national markets, partners routinely charge between $1,200 and $1,300 an hour, with top rates at several large law firms exceeding $1,400. In specialties such as antitrust and high-stakes litigation and appeals, for lawyers at the very top of those fields, hourly rates can hit $1,800 or even $1,950." (cleaned up)); *see also Spano v. Boeing Co.*, No. 06-CV-743, 2016 WL 3791123, at *3 (S.D. Ill. Mar. 31, 2016) (using similar rates).

35. The PWC 2024 Billing Rate Survey conducted by PWC reveals that average rate for top firms continues to rise with an average of AMLAW 50 equity partner rates of over $1,500 per hour. *See 2024 Billing Rate & Associate Salary Survey (BRASS) Initial Release*, PWC, https://www.pwc.com/us/en/law-firms/surveys/assets/brass24ir/2024-brass-ir-brochure.pdf.

36. Six of the firms representing Defendants are in the AMLAW Top 30. *See Law Firms*, ALM | LAW.COM, https://www.law.com/law-firms/. And three are in the top 11. *Id.*

37. Not only did this litigation require Class Counsel with specialized knowledge of class action antitrust law, it is also a result of national litigation in multiple venues with attorneys from all over the country.

38. Unlike most class cases, this was an antitrust claim with complicated legal issues. This case was also uniquely expensive to prosecute. And *Burnett* went to trial, with *Moehrl* scheduled to be tried by the end of this year. Finally, this litigation occurred during the recent inflationary conditions which have had an impact on law practices – including the rising cost of retaining staff.

39. Additional time and expenses has been and will be incurred for the work that we will be performing on this matter through the conclusion of the settlement and even after final approval of the settlement.

40. The lodestar summary reflects Williams Dirks Dameron LLC's extensive experience in the field, the complexity of the matters involved in this litigation, and the prevailing rate for providing such services.

41. All firms' combined reported lodestar amounts through January 31, 2024, come to **$80,354,706.40.**

42. Through January 31, 2024, Williams Dirks Dameron has advanced out-of-pocket a total of $1,036,275.63 in expenses (after the exercise of billing judgment) reasonably and necessarily incurred in connection with the prosecution of this matter. These expenses are reflected in the books and records regularly kept and maintained by my firm. It is my opinion that the Settlements would have never been reached without the expenditure of these expenses. Although there were multiple defendants in this case, due to the joint and several liability nature

of the case, all of the time and expenses spent in furtherance of the case against one defendant applied to the time and expenses against another defendant.

43. My firm's reasonable expenses in *Burnett* through January 31, 2024 are as follows:

| ACTIVITY | TOTAL COST |
|---|---|
| Copy & Print | $6,385.50 |
| Depositions | $18,687.95 |
| Document Storage, Production & ESI | $55,528.18 |
| Experts & Consultants | $904,125.12 |
| Mediation | $12,760.60 |
| Postage | $43.38 |
| Process Service | $2,055.05 |
| Records & Transcripts | $176.70 |
| Research | $12,919.98 |
| Travel & Meals | $23,593.17 |
| TOTAL | $1,036,275.63 |

44. All firms combined expended a total amount of **$12,923,266.48** through January 31, 2024.

45. These expenses were necessary because the litigation required a multitude of depositions due to the numerous fact and expert witnesses. Experts were critical because they are typically necessary in antitrust cases. Document storage was required given the large volume of documents produced. Class notice administration was required under Rule 23. Legal research was required given the innumerable legal disputes and briefs. When possible, the *Moehrl* and *Burnett* plaintiffs coordinated in order to reduce expenses. For example, we shared document repositories and coordinated numerous depositions to occur on the same day. All of the expenses submitted were reasonable expenses in such a large litigation.

46. The Class Representatives invested significant time and effort on behalf of the class. For most, their participation on this case took them away from their families and their work. Each current and former class representative produced substantial documentation of their real estate transactions and submitted to lengthy depositions, typically a full day of intense

interrogation. Each of the class representatives participated closely with class counsel at all stages of the litigation and through settlement approval (and some testified at the recent *Burnett* trial). All of them were willing to put their names and reputations into the public domain in order to represent not only themselves but the entire class.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed this 29th day of February 2024.

_____
Eric L. Dirks