Arturo Gonzalez
1463 Banning Blvd.
Wilmington, Ca 90744
310-200-7010
Plaintiff, In Pro Per

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MISSOURI

WESTERN DIVISION

| | |
|---|---|
| RHONDA BURNETT, JEROD BREIT, JEREMY KEEL, HOLLEE ELLIS, AND FRANCES HARVEY, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED PLAINTIFFS<br>V.<br>THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDING CORP., HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC, RE/MAX, LLC, AND KELLER WILLIAMS REALTY, INC., | CASE NO:4:19-cv-00332-SRB<br><br>1. NOTICE OF MOTION FOR: MOTION FOR RECONSIDERATION<br><br>**Hearing Date**: To be determined<br>**Time**: TBD<br>**Location**: |

## INTRODUCTION

To the Honorable ,Judge Stephen R. Bouh, National Association (NAR) member Art Gonzalez member number 204501476, brings this pro-se reconsideration motion pursuant to Federal Rules of Civil Procedure 9023. Currently there is a proposed settlement in the case and the case has not been finalized. The main point of the complaint is as stated in paragraph 3 as follows,

3. The cornerstone of Defendants' conspiracy is NAR's adoption and implementation of a rule that requires all seller's brokers to make a blanket, unilateral and effectively non-negotiable offer of buyer broker compensation (the "Adversary Commission Rule") when listing a property on a

- 1 -
MOTION FOR RECONSIDERATION

Multiple Listing Service ("MLS"). This rule in simple terms mandates that a Listing Agent list the amount of commission the Listing Agent and the Seller have agreed to pay the Buyer's Agent for cooperating and bringing a Buyer to buy Seller's home.

The Plaintiff also mentions that there is a lot of confusion in the Real Estate industry regarding how commissions work and indeed there is a lot of confusion in the industry regarding the commission structure. Even if you look at You Tube Real Estate experts they are also confused. The Plaintiff states the following in regards to the confusion that exists in the industry,

Paragraph 45 of the complaint states as follows, "The result of these agreements and the Adversary Commission Rule is that buyer brokers — who are supposed to assist their clients in negotiating against the seller — receive their compensation from the total commission paid by the seller, not from the buyer they represent. Real estate insiders recognize that the Adversary Commission Rule leads to a marketplace where there is **"a lot of confusion around how commissions work,"** where even writers for real estate publications "never get[] a very clear cut answer from the industry or from anyone".

The Court will get a clear cut answer as to how the commission structure works. Let's analyze who indeed pays for the commission. As stated above by the Plaintiff, the commissions rates can be in the range between 5% to 6% and indeed this would not be considered price fixing. Let's suppose that the commission is set at 6%. Customarily, the commission is split 50/50 between Buyer's Agent and Seller's Agent. For the purpose of simplification, let's suppose that a piece of real estate has a fair market value of $100,000. At this point we must analyze what this actually means.

The majority of Seller's use the services of Real Estate Agents to sell their home. It's estimated that 90% of Sellers in the United States use Real Estate Agents to sell their home. What this means is that the fair market value of a home takes into consideration the cost of the Real Estate

Agents' commissions. Therefore, when the home has a fair market value of $100,000, this is an estimate that considers the fact that commissions are built into the fair market value and the commissions are between the range of 5% to 6%. Since 90% of Seller's use a Real Estate Agent, the commission is built into the fair market value.

In this case the commission would be 6% of $100,000 for a total of $6,000 to be paid in commissions. The question is who pays the commission and how does it ultimately work? The Buyer customarily would obtain a loan for the $100,000 and the commissions paid would ultimately be paid from this pool of money that comes from the buyer, in other words the Buyer. There are 2 illustrations to demonstrate this process and it's as follows;

Buyer obtains a loan for $100,000 or brings cash that is transferred to the Seller.

### EXAMPLE 1

$100,000 funds from the Buyer go to Seller ⟶ Seller receives $100,000

Seller keeps $94,000

The Agents in total receive $6,000

### EXAMPLE 2



$100,000 funds from Buyer go to Seller    Seller receives $100,000

Seller keeps $94,000

The Agents in total receive $6,000

Based on these examples, the original source of the commissions came from the Buyer and therefore, ultimately the Buyer paid for the commissions. In example 1, the commissions as part of the $100,000 were transferred from Buyer to Seller and Seller transferred the commissions to Buyer's Agent and therefore, ultimately the Buyer paid for the Commission as Buyer in example 2 could have simply transferred the commission amount straight to the Agents. To confirm that indeed the Buyer

customarily has paid for the commissions we can look to the United States for guidance. In the case UNITED STATES OF AMERICA, Department of Justice, Antitrust Division v. National Association of Realtors, the United States stated in paragraph 21 stated the following, "NAR'S Free-Services Rule allows brokers to mislead buyers by obscuring the fact that buyers have a stake in what their buyer brokers are being paid for their services. Buyer broker fees, though nominally paid by the home's seller, are ultimately paid out of the funds from the purchase price of the house. If buyers are told that buyer broker services are "free," buyers are less likely to think to negotiate a lower buyer broker commission or to view buyer broker rebate offer as attractive."…..

Looking at the verdict page 2 question 4 where the answer is yes to conspiracy, we the National Association of Realtors were found guilty for damages to the Plaintiff. Page 2 question 4 reads as follows, "Do you find that the conspiracy set forth in Question 1 caused the Class Plaintiffs to pay more for real estate brokerage services when selling their homes than they would have paid absent the conspiracy?" Based on how the commission model works, the Seller could not have been damaged as ultimately they were not the ones that paid for the commissions based on how the commission structure works, as in the current structure the commissions are negotiated by the Seller, but ultimately paid by the Buyer.

**ILLUSTRATION OF HOW REAL ESTATE COMMISSIONS WORK BASED ON REPOSESSED (REO) HOMES OR REPOSSESSED GOVERNMENT HOMES (HUD)**

When a Bank or HUD repossesses a home, they put the property in the market and based on tradition, they have relied on Real Estate Agents to sell their properties. Let's take the same example from above. The property fair market value is $100,000. The Bank or HUD will list their home on the Multiple Listing Service with a real estate agent. Typically, HUD has paid up to 5% just to buyer's agent as was the case in 2004 in the city of Long Beach California (exhibit 1). From 2020 to 2024 all HUD sales commissions were set at 3% to Buyer's Agent in the County of Los Angeles

(exhibit 2). Let's do a break down. Let's do a break down of a 5% commission vs. a 6% commission although banks have also at times paid up to 4% commissions exhibit 3.

**5% BREAK DOWN COMMISSION AT A $100,000 SALES PRICE**

Buyer obtains a loan for $100,000 or brings cash that is transferred to the Seller.

$100,000 funds from the Buyer go to Seller ⟶ Seller receives $100,000

Seller keeps $95,000

The Agents in total receive $5,000

**6% BREAK DOWN COMMISSION AT A $100,000 SALES PRICE**



$100,000 funds from Buyer go to Seller    Seller receives $100,000

Seller keeps $94,000

The Agents in total receive $6,000

Based on the analysis of the 5% to 6% break down, the conclusion is that in the 5% break down Seller keeps $95,000 vs. at the 6% structure the Seller keeps $94,000 which is a difference of the Seller keeping $1,000 more when the listing commission is 5% vs. 6%. At the same time the Buyer pays $1,000 more in commission because ultimately the funds are paid from the money the Buyer brings. So the conclusion is that as the commission goes higher, the Seller gets less and the Buyer pays more, in other words commissions are a result of a function in which the higher the commission the Seller gets less and the Buyer pays more.

The question is then why would a Seller pay more? The answer is that at times depending on economic factors such as properties been difficult to sell, it might make sense to pay more as demonstrated by HUD and Banks. HUD and Banks understand this that's why they have offer in Southern California up to 5%.

The complaint provided evidence of collusion based on a script in which the Agent was trying to have the Listing Agent pay a 3% commission. The complaint states as follows, Paragraph 96. In an earlier script ("Explaining How Commission Is Used: Script #2"), the Keller Williams guide suggests that a realtor point out that "the homes that are really selling almost always have 3 percent to the other agent," in contrast to "these other listings where they're asking just 2.5 percent for the other agent."

97. This practice of steering, confirmed by economic literature and by Defendants' Case 4: own training materials, has manifest anticompetitive effects. Steering deters reductions from the "standard" commission and enables brokers to avoid doing business with, or to retaliate against, buyer brokers who try to compete by offering significant discounts.

It may seem that this practice of incentivizing Agents through a higher commission may be a bad practice, but that's a practice that has been set by Banks and HUD as they have offered up to 5% just to Buyer's Agent and that's not including the Listing Agent compensation.

**PROPOSED SETTLEMENT CHANGE, LISTING AGENT IS TO NEGOTIATE HIS COMMISSION ONLY**

There are several proposed changes that ultimately will not work because ultimately as the United States understands, the commissions are paid from the funds that come from the Buyer and ultimately the Seller doesn't have the commissions to give to his own Agent until he receives those funds from the Buyer. Let's give an example using the same figures of the example above. Let's revisit the facts of the case above. Let's supposed that the property is worth $100,000. As mentioned the fair market value of a home factors in the commission to the transaction and it's an estimate. So let's supposed the Seller negotiates a 3% commission with the listing agent, ultimately the Buyer is paying for this and would need Buyer's Consent.

**PROPOSED SETTLEMENT CHANGE, BUYER'S AGENT IS TO NEGOTIATE HIS COMMISSION ONLY**

This change would work because as demonstrated and the United States understands, the Buyer has always paid the commissions through the financing. Maybe this explains why the United State Veteran Governmental program that was created by the government, the Buyer is prohibited to pay for any commissions pursuant to the current rule 8 in the Veterans Pamphlet 26-7, Revised Chapter 8 which reads as follows, "Fees or commissions charged by a real estate agent or broker in connection with a VA loan may not be charged to or paid by the veteran-purchaser. While use of "buyer" brokers is not precluded, veteran-purchasers may not, under any circumstances, be charged a brokerage fee or commission in connection with services of such individuals. Since information on property available to the public from a variety of sources, VA does not believe that preventing the veteran from paying buyer-broker fees will harm the veteran." As proven, the Seller in the past has negotiated the commissions up front with the Agent and the Buyer has ultimately paid for the commissions.

**CONCLUSION**

In conclusion, the Plaintiffs, The National Association of Realtors have denied any wrong doing. There was no conspiracy on behalf of the National Association of Realtors, and even if there was a conspiracy, let's assume for a moment that there was a conspiracy, ultimately, the damaged party could not be the Seller's as the Sellers negotiated the commissions up front, however, the commissions were ultimately paid by the Buyer and therefore, if there is a damaged party, the Sellers were not the damaged Party as it was the Buyer's that would have been damaged as they ultimately paid for the commissions and were never made aware of this. It's an easy fix to just have an additional disclosure to inform the Buyer of the uniqueness of the Real Estate Industry that since it's like no other industry because of the high ticket item that Real Estate is and it's also a product like no

other that needs the services of 2 Agents. In this current system, the commission for both Buyer's and Seller's is built into the structure as it is financed and in this manner it makes the system consumer friendly for the Buyer to just come up with the initial down payment and this option has worked for decades. The industry just lacked one piece of information to inform the Buyer that since there is no "free lunch" this is the best way that has worked for many decades in America.

The Second solution is to get rid of the Buyer's Agent Compensation and Seller's can wait to see what negotiation the Buyer proposes as ultimately the Buyer finances the cost.

Respectfully Submitted,

/Art Gonzalez Jr./            3-28-2024

_____

Art Gonzalez Jr.            Date: