IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| RHONDA BURNETT, JEROD BREIT, JEREMY KEEEL, HOLLEE ELLIS, and FRANCES HARVEY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, et al.,<br><br>Defendants. | Case No. 4:19-cv-00332-SRB |

## PULTEGROUP, INC.'S OBJECTIONS TO PRELIMINARY CLASS SETTLEMENTS WITH ANYWHERE REAL ESTATE, RE/MAX, AND KELLER WILLIAMS (DOC. 1321, DOC. 1372)

PulteGroup, Inc. is one of the nation's largest residential homebuilders. With 31 divisions and active operations in 25 states, PulteGroup, through its operating subsidiaries working out of its regional divisions (collectively, "Pulte"), sold 28,603 homes in 2023 alone. Exhibit A, Pulte 2023 Annual Letter to Shareholders at 1. During the timeframe of this litigation and settlement, Pulte's divisions listed thousands of homes on multistate listing services and paid commissions to brokers representing buyers on the resulting sales.

Several procedural factors have hindered Pulte's efforts to evaluate whether remaining in the settlement classes is the right decision. First, the settlement agreements exclude key information about the method of allocating funds, details necessary for Pulte to evaluate its expected recovery. Second, the settlement agreements envision claims made through a hand-filled claim form, a needless and time-consuming complication for a homebuilder that will be downloading this information from computer databases. And lastly, apparent breakdowns in

1

providing notice to the class—breakdowns that resulted in Pulte never receiving direct notice—raise concerns that this settlement will not survive due process scrutiny.

These questions—the magnitude of Pulte's potential recovery, the work required to receive it, and whether the notice process may suffer due process infirmities—are key considerations in Pulte's decision whether to opt out of or remain in the settlement class. Because the deadline is here and Pulte has seen no answers to these questions, Pulte objects.

## OBJECTIONS

### I. The proposed settlements do not provide enough information for Pulte to evaluate its potential recovery.[1]

Pulte cannot determine whether to remain in the settlement class because the parties have not made key information available.

"[T]he information provided to the class members . . . must be structured in a manner that enables class members rationally to decide whether they should intervene in the settlement proceedings or otherwise make their views known." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999).[2] Information permitting class members to value individualized settlement is particularly important to allow class members to evaluate their options. *Id.*; *see also Haggart v. Woodley*, 809 F.3d 1336, 1348 (Fed. Cir. 2016) ("[I]t is crucial that class counsel allow class members to easily acquire more detailed information should they choose to do so.").[3] For instance, courts routinely reject class settlement agreements that do "not advise a potential claimant of the amount of its recovery." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 94 (S.D.N.Y. 2007)

---

[1] This objection applies to the entire class. *See* Fed. R. Civ. P. 23(e)(5)(A).
[2] Throughout, unless otherwise noted, all emphases and alterations are added, and all internal quotation marks, citations, and footnotes are omitted.
[3] The Court also has an obligation to "ensure that the distribution of funds is fair and reasonable." *Taft v. Ackermans*, No. 02-cv-7951, 2007 WL 414493, at *9 (S.D.N.Y. Jan. 31, 2007).

(finding a proposed settlement defective because it lacked amount-of-recovery information; the information is "an important factor in a class member's decision of whether to opt out of a class settlement"); *In re Refco, Inc. Sec. Litig.*, No. 05-cv-8626, 2010 WL 11586941, at *13 (S.D.N.Y. May 11, 2010) (noting that "[t]he lack of allocation would certainly raise a substantial problem if this was going to be the last notice of settlement going to the class members"). Comparatively, if "class members c[an] easily acquire . . . data on potential individual awards" through information provided, even if that information is not in the notice itself, courts have upheld the settlement. *Petrovic*, 200 F.3d at 1153 (affirming settlement where class members could call phone number to obtain information about individual settlement estimates).

Pulte cannot determine or reasonably estimate "the amount of its recovery" and other key information about settlement because the parties have not made the information available. *In re Initial Pub. Offering*, 243 F.R.D. at 94. The only information in the class notice is that Re/Max and Anywhere collectively paid $138.5 million in settlement funds and Keller Williams paid $70 million. Exhibit B, Re/Max and Anywhere Long-Form Settlement Notice, at 5; Exhibit C, Keller Williams Long-Form Settlement Notice, at 5. Unlike in *Petrovic*, however, there is nowhere for class members to learn how those funds will be divided up, and what a "potential individual award" will look like. *See* 200 F.3d at 1153. Pulte has not seen any information about class size, expected claim rate, or the claim administrator's evaluations in dividing up settlement funds. Most of this information typically would be provided in a Plan of Allocation, a document routinely provided before the opt-out date. *See, e.g.*, *In re Envision Healthcare Corp. Sec. Litig.*, No. 3:17-cv-1112, 2023 WL 8110157, at *5 (M.D. Tenn. Nov. 20, 2023) (indicating that class members received plan of allocation before opt-out date); *Taft*, 2007 WL 414493, at *9 ("The plan of allocation was fully disclosed in the Notice of Proposed Settlement"). Yet Pulte sought this information on the website,

3

Doc. 1319-1 at 18, ¶¶ 59–60, through the "dedicated toll-free telephone number," *id*. at 18–19, ¶¶ 61–62, and by contacting class counsel. The information was not provided and Pulte understands it does not yet exist.

The information contained in a Plan of Allocation is important for Pulte to evaluate its potential award. For the claims Pulte will submit, the homes were "listed on a multiple listing service" in the United States and "a commission was paid" to a buyer's agent. Doc. 1321 at 2. That should entitle Pulte to a proportional recovery for the fees it paid to buyers' agents. But without a Plan of Allocation, Pulte cannot be sure that, as a large-scale homebuilder, it will not be disadvantaged in some way in the Plan of Allocation. Pulte needs additional information to evaluate whether to remain in the settlement class.[4]

## II. The settlement agreement provides no mechanism for homebuilding claimants to reduce the burden of claim submission.[5]

"There should be no unnecessary hurdles that make it difficult for class members to exercise their rights to . . . submit a claim." *Arkansas Fed. Credit Union v. Hudson's Bay Co.*, No. 18-cv-8472, 2021 WL 8445929, at *1 (S.D.N.Y. July 22, 2021). In general, the reasons to require class members to prove they are part of the class is to "prevent[] fraudulent claims." *See Keil v. Lopez*, 862 F.3d 685, 697 (8th Cir. 2017). The claims process should not create more barriers to claim submission than necessary to achieve that purpose. *See Rubio-Delgado v. Aerotek, Inc.*, No. 13-cv-3105, 2015 WL 1503436, at *2 (N.D. Cal. Apr. 1, 2015). Courts have rejected class settlements where the parties made it needlessly difficult for a party to object or file a claim. *See,*

---

[4] If Pulte does not receive additional information before settlement, Pulte reserves the right to object to the Plan of Allocation once it is made available.
[5] Pulte raises this objection on behalf of homebuilders that listed on the MLS and paid a commission to a broker of a buyer. *See* Fed. R. Civ. P. 23(e)(5)(A).

*e.g.*, *McClintic v. Lithia Motors, Inc.*, No. 11-859, 2012 WL 112211, at *6 (W.D. Wash. Jan. 12, 2012).

The Claim Form—the parties' proposed method of proving class membership—is an unnecessary hurdle for class members like Pulte, with thousands of claims, to prove their qualifying home sales. The fundamental problem is that the Claim Form requires class members to ***manually*** enter five categories of information: address of home sale, date, listing brokerage, total commission paid, and commission paid to buyer's broker. *See* Doc. 1319-1 at 89–90 (Exhibit D to affidavit). This is a needless complication for the many home sellers that hold this information in electronic databases. Pulte is one such seller: it has this information saved in computer software and can download and submit an electronic file with this information with relative ease. This information, accompanied by the necessary attestations, would provide everything necessary to "prevent[] fraudulent claims." *See Keil*, 862 F.3d at 697. But copying that information into the Claim Form, thousands of times, is a needless complication that will do nothing but create unnecessary hurdles to claim submission. *See, e.g.*, *Arkansas Fed. Credit Union*, 2021 WL 8445929, at *1; *cf. In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 316 (S.D.N.Y. 2020) (approving antitrust class action settlement that provided class members with a list of their "qualifying purchases" based on "data produced during discovery").

Nor does this method benefit the class. Requiring a manual claims submission process for all sellers, regardless of how that information normally is kept, will create an additional burden on the claims administrator to review thousands of claim forms instead of a single filing by a single claimant. This will inevitably increase administrative costs, which will lessen the recovery of the class members under the settlement agreements. *See, e.g.*, Doc. 1371-1 at 9 (Keller Williams settlement, stating that costs of administration to be paid out of Total Monetary Settlement

Amount). And unjustifiably high administrative costs may make a settlement unfair. *Cf. Keil*, 862 F.3d at 703 (rejecting objections where objectors did not show that administrative costs were "excessive" or "unjustifiably high").

A manually entered Claim Form may be a suitable option for home sellers that do not keep home-sale information in electronic databases. For instance, an individual home seller with paper records may find it easier to enter the information manually. But for the significant number of home sellers who store this information in electronic databases, the settlements should include a streamlined claim submission process.

### III. Pulte did not receive notice.[6]

Pulte's final objection to the proposed class settlements is that it never received notice of these settlements through any approved mechanism.

In class settlements, "[t]he Due Process Clause requires notice, an opportunity to appear in person or by counsel, [and] an opportunity to 'opt out[.]'" *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 798 (1985). Notice must be reasonably calculated to alert class members of the settlement. *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1176 (8th Cir. 1995).

Here, the approved class notice provision required "[d]irect notice" to any class member for whom (a) the defendants provided contact information or (b) the claims administrator located contact information. Doc. 1319-1 at 6, ¶ 14(a). Pulte paid commissions to Re/Max, Keller Williams, and Anywhere agents, likely on thousands of home sales. Yet Pulte never received direct notice of settlement. Nor did Pulte representatives learn about the settlement through magazine publication or digital advertising on social media. *See id.* at 11, ¶ 36.[7] Rather, Pulte's

---

[6] Pulte raises this objection on behalf of the class. *See* Fed. R. Civ. P. 23(e)(5)(A).
[7] These three methods: direct notice, a magazine advertisement, and digital media advertising, appeared to be the three methods of alerting prospective class members in the first instance. While

representatives independently learned of the settlement, well after the fact, from review of legal news. While Pulte's independent knowledge of settlement may render its notice issues moot, *In re Pinterest Derivative Litig.*, No. 20-cv-8331, 2022 WL 2079712, at *2 (N.D. Cal. June 9, 2022), that is not true classwide. Many home sellers in this class are individuals. If Pulte, with thousands of claims, did not receive direct notice of settlement, individual home sellers with many fewer sales likely did not receive notice either. Those individual home sellers may also lack legal counsel and would be less likely to learn about their class membership through the news. The notice campaign, while perhaps sufficient in the abstract, did not alert class members of settlement in practice. *See DeBoer*, 64 F.3d at 1176.

## IV. Pulte's compliance with objection requirements.

The Court's orders granting preliminary approval listed several requirements for objecting parties. Docs. 1321 & 1372, at 5–6, ¶ 12. Pulte included several of these elements throughout its objection but, for the avoidance of doubt, restates those requirements here.

> *a) the full name, address, telephone number and email address, if any, of the Settlement Class Member;*

Full Name: PulteGroup, Inc., through Pulte Home Company, LLC, and its various other home selling subsidiaries.

Address: Pulte's corporate offices are located at 3350 Peachtree Road NE, Suite 1500, Atlanta, GA 30326.

Telephone Number: The telephone number for Pulte's corporate offices is (800) 777-8583. Pulte can be contacted through undersigned counsel of record.

---

the claims administrator listed several other steps they planned to take (e.g., website, toll-free number), those steps were aimed at providing more information to class members who already knew about the settlement from the approved notice methods.

      b) the address of the home sold, the date of the sale, the listing broker, and the Buyer's broker;

Pulte's divisions have sold thousands of qualifying homes during the applicable period. Pulte provides one example of a qualifying home sale here:

<u>Address</u>: 1169 Penderlee Court, Mount Pleasant, SC 29466

<u>Date of Sale</u>: March 6, 2020

<u>Listing Broker</u>: Maureen Terry of Pulte Home Company, LLC

<u>Buyer Broker</u>: Dave Friedman of Keller Williams Realty Charleston

      c) a specific statement of all grounds for the objection and, if applicable, any legal support for the objection;

See brief above.

      d) a statement whether the objection applies only to the objector, to a specific subset of the Class, or to the entire Class;

Descriptions of the applicable group for each objection are listed in footnotes at the start of each objection.

      e) the name and contact information of any and all attorneys representing, advising, or in any way assisting the objector in connection with the preparation or submission of the objection or who may profit from the pursuit of the objection;

Pulte is represented by undersigned counsel from Bush Seyferth PLLC. Undersigned counsel was assisted in preparing and submitting the objection by Paul Slater and Trevor Scheetz of Sperling & Slater, LLC, and Robert Stephens of Swanson, Martin & Bell, LLP.

      f) a list of all class action settlements to which the Settlement Class Member has objected in the past five (5) years, if any;

None currently known.

    *g) copies of any papers, briefs, or other documents upon which the objection is based;*

See brief above.

    *h) a statement of whether the Settlement Class Member intends to appear at the Fairness Hearing either personally or through counsel;*

Counsel for Pulte intends to appear at the Fairness Hearing. Pulte's counsel is filing a separate Notice of Intention to Appear pursuant to Paragraph 20 of the Long Form Notice.

    *i) the signature of the Settlement Class Member.*

See signature of Pulte's counsel below.

## CONCLUSION

For the reasons set forth above, Pulte respectfully requests that the Court (1) defer the opt-out date until after 30 days after the class receives notice of a plan of allocation and (2) require the parties to provide an efficient method for claimants to submit bulk claims through an electronic spreadsheet, and (3) monitor future notice to ensure class members receive actual notice.

Dated: April 12, 2024

Respectfully submitted,

*/s/ Stephanie A. Douglas*
Stephanie A. Douglas (admitted pro hac vice)
Susan A. McKeever (admitted pro hac vice)
Jeffrey A. Turner (admitted pro hac vice)
BUSH SEYFERTH PLLC
100 W. Big Beaver Road, Suite 400
Troy, MI 48084
Telephone/Fax: (248) 822-7800
douglas@bsplaw.com
mckeever@bsplaw.com
turner@bsplaw.com

*Attorneys for PulteGroup, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above document has been served upon all counsel of record by filing via the CM/ECF system. Notice of this filing has also been sent to the following addresses via USPS Mail:

| | |
|---|---|
| Faegre Drinker Biddle & Reath LLP<br>c/o Aaron Van Oort<br>2200 Wells Fargo Center,<br>90 South Seventh Street<br>Minneapolis, MN 55402 | Jones Day<br>c/o Jeffrey LeVee<br>555 S. Flower Street, 50th Floor<br>Los Angeles, CA 90071 |
| - and – | - and - |
| Skadden Arps Slate Meagher & Flom LLP<br>c/o Boris Bershteyn<br>One Manhattan West<br>New York, NY 10001 | Williams Dirks Dameron LLC<br>c/o Eric Dirks<br>1100 Main Street, Suite 2600<br>Kansas City MO 64105 |

*/s/ Stephanie A. Douglas*