# Exhibit 3

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | |
|---|---|
| RHONDA BURNETT, JEROD BREIT, HOLLEE ELLIS, FRANCES HARVEY, and JEREMY KEEL, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC, RE/MAX LLC, and KELLER WILLIAMS REALTY, INC.,<br><br>    Defendants. | Case No. 19-CV-00332-SRB |

## <u>DECLARATION OF JENNIFER M. KEOUGH</u>
## <u>REGARDING PROPOSED NOTICE PLAN</u>

I, Jennifer M. Keough, declare as follows:

1.      I am Chief Executive Officer, President, and Co-Founder of JND Legal Administration LLC ("JND"). I have more than 20 years of legal experience creating and supervising notice and claims administration programs and have personally overseen well over 1000 matters. I am regularly called upon to submit declarations in connection with JND's notice and administration work.

2.      I submit this Declaration based on my personal knowledge, as well as upon information provided to me by experienced JND employees and Counsel for the Plaintiffs and Defendants, to describe the proposed Notice Program and address why it is consistent with other best practicable court approved notice plans and the requirements of Rule 23 of the Federal Rules

of Civil Procedure ("Rule 23"), the Due Process Clause of the United States Constitution, and any other applicable statute, law or rule, as well as the Federal Judicial Center ("FJC") guidelines for best practicable due process notice.

## RELEVANT EXPERIENCE

3. JND is a leading legal administration services provider with its headquarters in Seattle, Washington and other offices within the United States. JND's class action division provides all services necessary for the effective implementation of class actions, including: (1) all facets of legal notice to potential class members, such as developing the final class members list and addresses for them, outbound mailing, email notification, and the design and implementation of media programs; (2) website design and deployment, including online claim filing capabilities; (3) call center and other contact support; (4) secure class member data management; (5) paper and electronic claims processing; (6) calculation design and programming; (7) payment disbursements through check, wire, PayPal, merchandise credits, and other means; (8) qualified settlement fund tax reporting; (9) banking services and reporting; and (10) all other functions related to the secure and accurate administration of class actions.

4. JND is an approved vendor for the United States Securities and Exchange Commission ("SEC"), the Federal Trade Commission ("FTC"), and the Consumer Financial Protection Bureau ("CFPB"). In addition, we have worked with a number of other government agencies including the U.S. Equal Employment Opportunity Commission ("EEOC"), the Office of the Comptroller of the Currency ("OCC"), the Federal Deposit Insurance Corporation ("FDIC"), the Federal Communications Commission ("FCC"), the Department of Justice ("DOJ"), and the Department of Labor ("DOL"). We also have Master Services Agreements with various corporations and banks which were only awarded after JND underwent rigorous reviews of our

systems, privacy policies, and procedures. JND has also been certified as SOC 2 Type 2 compliant by noted accounting firm Moss Adams.[1]

5.      JND has been recognized by various publications, including the *National Law Journal*, the *Legal Times*, and the *New York Law Journal*, for excellence in class action administration. JND was named the #1 Class Action Claims Administrator in the U.S. by the national legal community for multiple consecutive years, and we were inducted into the *National Law Journal* Hall of Fame in 2022 and 2023 for having held this title. JND was also recognized last year as the Most Trusted Class Action Administration Specialists in the Americas by *New World Report* (formerly *U.S. Business News*) in the publication's 2022 Legal Elite Awards program.

6.      The principals of JND collectively have over 80 years of experience in class action legal and administrative fields. JND has overseen the administration of some of the most complex administration programs in the country and regularly prepare and implement court-approved notice campaigns throughout the United States.

7.      JND was appointed as the notice and claims administrator in the landmark $2.67 billion Blue Cross Blue Shield antitrust settlement in which we mailed over 100 million postcard notices; sent hundreds of millions of email notices and reminders; placed notice via print, television, radio, internet, and more; staffed a call center with 250 agents during the peak of the notice program; and received and processed more than eight million claims. I am the Court-appointed notice expert in that case. JND was also appointed the settlement administrator in the $1.3 billion Equifax Data Breach Settlement, where we received more than 18 million claims and I supervised all aspect of direct notice. Email notice was sent twice to over 140 million class

---

[1] As a SOC 2 Compliant organization, JND has passed an audit under AICPA criteria for providing data security.

members, the interactive website received more than 130 million hits, and the call center was staffed with 1,500 agents at the peak of call volume.

8. Other large JND matters include a voluntary remediation program in Canada on behalf of over 30 million people; the $1.5 billion Mercedes-Benz Emissions Settlements; the $120 million GM Ignition Switch Settlement, where we mailed nearly 30 million notices and processed over 1.5 million claims; and the $215 million USC Student Health Center Settlement on behalf of women who were sexually abused by a doctor at USC; as well as hundreds of other matters.

9. Prior to forming JND with my partners, I was involved in many other large-scale notice and claims programs. For example, my team and I handled all aspects of mailed notice, website activities, call center operations, claim intake, scanning and data entry, and check distribution for the $20 billion Gulf Coast Claims Facility. In the $10+ billion BP Deepwater Horizon Settlement, I worked directly for Patrick Juneau, the Court-appointed claims administrator, in overseeing all inbound and outbound mail activities, all call center operations, all claim intake, scanning and data entry and all check distributions for the program. I oversaw the entire administration process in the $3.4 billion Cobell Indian Trust Settlement (the largest U.S. government class action settlement ever).

10. JND's Legal Notice Team, which operates under my direct supervision, researches, designs, develops, and implements a wide array of legal notice programs to meet the requirements of Rule 23 and relevant state court rules. In addition to providing notice directly to potential class members through direct mail and email, our media campaigns, which are regularly approved by courts throughout the United States, have used a variety of media including newspapers, press releases, magazines, trade journals, radio, television, social media, and the internet depending on

4

the circumstances and allegations of the case, the demographics of the class, and the habits of its members, as reported by various research and analytics tools.

11.     During my career, I have submitted several hundred declarations to courts throughout the country attesting to our role in the creation and launch of various notice programs. Particularly relevant here, I submitted a declaration regarding the proposed notice plan and JND was appointed as the Settlement Administrator for the RE/MAX, Anywhere, and Keller Williams Settlements. The notice elements we are proposing here are substantially similar to what we designed and implemented for the RE/MAX, Anywhere, and Keller Williams Settlements.

## SETTLEMENT CLASS

12.     JND has been asked by the Parties to prepare a Notice Program to reach Settlement Class Members in the National Association of Realtors Settlement and inform them about their rights and options in the proposed Settlement.  This Notice Program may easily be done in conjunction with providing notice related to other forthcoming settlements.

13.     According to the National Association of Realtors Settlement Agreement, the Settlement Class consists of all persons who will be certified by the Court for settlement purposes only, namely, all persons who sold a home that was listed on a multiple listing service ("MLS") anywhere in the United States where a commission was paid to any brokerage in connection with the sale of the home in the following date ranges:

      a.     Moehrl MLSs: March 6, 2015 to date of Class Notice;

      b.     Burnett MLSs: April 29, 2014 to date of Class Notice;

      c.     MLS PIN: December 17, 2016 to date of Class Notice;

      d.     Homes in Arkansas, Kentucky, and Missouri, but not on the Moehrl MLSs, the Burnett MLSs, or MLS PIN: October 31, 2018 to date of Class Notice;

5

e.    Homes in Alabama, Georgia, Indiana, Maine, Michigan, Minnesota, New Jersey, Pennsylvania, Tennessee, Vermont, Wisconsin, and Wyoming, but not on the Moehrl MLSs, the Burnett MLSs, or MLS PIN: October 31, 2017 to date of Class Notice; and

f.    All other homes: October 31, 2019 to date of Class Notice.

## NOTICE PROGRAM SUMMARY

14.    The proposed Notice Program has been designed to provide the best notice practicable, consistent with the methods and tools employed in other court-approved notice programs. The FJC's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* considers a notice plan with a 70%-95% reach effective.[2]

15.    The proposed Notice Program mirrors the programs in the Anywhere, RE/MAX and Keller Williams Settlements and consists of the following components:

a.    Direct notice to all Settlement Class Members for whom the Settling Defendants provide contact information or for whom contact information is located via other means (e.g. third-party data).

b.    A targeted digital effort with the leading digital network (Google Display Network – "GDN"), the top social media platform (Facebook), and a respected programmatic partner (OMTD).

c.    A notice placement in a popular consumer magazine (*Better Homes & Gardens*).

---

[2] Reach is the percentage of a specific population group exposed to a media vehicle or a combination of media vehicles containing a notice at least once over the course of a campaign. Reach factors out duplication, representing total different net persons.

6

d.      Additional efforts including an internet search campaign to assist interested Settlement Class Members in finding the case website, the distribution of a national press release, and sponsorships with popular class action websites (TopClassActions.com and ClassAction.org).

e.      A claims stimulation effort that will include the sending of multiple email notices reminding potential Settlement Class Members of the approaching claims deadline.

f.      An established case-specific Settlement website where information about the Settlement, as well as copies of relevant case documentation, including but not limited to the Settlement Agreement, the Plan of Distribution (once submitted to the Court), the Long Form Notice, and the Claim Form, will be accessible to Settlement Class Members. Settlement Class Members will also be encouraged to file claims online through a secure portal on the website.

g.      An established toll-free telephone number with an Interactive Voice Recording system ("IVR") that Settlement Class Members may call to obtain more information about the Settlement and request copies of the Long Form Notice and Claim Form. The IVR recording will be comprehensive; however, if operators become desired, JND will accommodate.

h.      The creation of a QR Code (a matrix barcode) that will allow quick and direct access to the Settlement website through a mobile device.

16.    Throughout the Notice Program, JND will monitor, adjust, and/or optimize as needed to achieve the desired goals.

17.     Based on my experience in developing and implementing class notice programs, I believe the proposed Notice Program will meet, and in fact exceed, the standards for providing the best practicable notice in class action settlements.

18.     Each component of the proposed Notice Program is described in more detail in the sections below.

## DIRECT NOTICE

19.     An adequate notice plan needs to satisfy "due process" when reaching a class. The United States Supreme Court, in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974), stated that direct notice (when possible) is the preferred method for reaching a class. In addition, Rule 23(c)(2) of the Federal Rules of Civil Procedure provides that "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means."

20.     As a result, at my direction, JND staff will effectuate direct individual notice to all members of the Settlement Class for whom Settling Defendants provide contact information or for whom we were able to obtain such information through other means. Courts have approved notice programs in which email is the primary method of delivering notice to class members.

21.     Email notice will be sent to all Settlement Class Members for whom an email address is available.

22.     For those Settlement Class Members where an email address is unavailable or where the email bounces back and cannot be ultimately delivered, JND proposes sending a Postcard Notice.

23. Both the Email Notice and the Postcard Notice will be modeled off of the long form notice and will identify and direct Settlement Class Members to an interactive Settlement website where they can review the Settlement Agreement, and other key documents in the case, and initiate the claims process (a hard copy claim form may also be requested).

24. Both the Email Notice and the Postcard Notice will include a Spanish-language tag that will direct Spanish-speaking Settlement Class Members to the Settlement website for a notice in Spanish.

25. Importantly, whether a Settlement Class Member is sent direct notice by email or postcard, the notice will satisfy the Federal Rules of Civil Procedure and due process.

**Email Notice**

26. Prior to sending the Email Notice, JND will evaluate the email for potential spam language to improve deliverability. This process includes running the email through spam testing software, DKIM[3] for sender identification and authorization, and hostname evaluation. Additionally, we will check the send domain against the 25 most common IPv4 blacklists.[4]

27. JND uses industry-leading email solutions to achieve the most efficient email notification campaigns. Our Data Team is staffed with email experts and software solution teams to conform each notice program to the particulars of the case. JND provides individualized support during the program and manages our sender reputation with the Internet Service Providers ("ISPs"). For each of our programs, we analyze the program's data and monitor the ongoing effectiveness of the notification campaign, adjusting the campaign as needed. These actions ensure

---

[3] DomainKeys Identified Mail, or DKIM, is a technical standard that helps protect email senders and recipients from spam, spoofing, and phishing.

[4] IPv4 address blacklisting is a common practice. To ensure that the addresses being used are not blacklisted, a verification is performed against well-known IP blacklist databases. A blacklisted address affects the reputation of a company and could cause an acquired IP addresses to be blocked.

the highest possible deliverability of the email campaign so that more potential Settlement Class Members receive notice.

28. For each email campaign, including this one, JND will utilize a verification program to eliminate invalid email and spam traps that would otherwise negatively impact deliverability. We will then clean the list of email addresses for formatting and incomplete addresses to further identify all invalid email addresses.

29. To ensure readability of the email, our team will review and format the body content into a structure that is compatible with all email platforms, allowing the email to pass easily to the recipient. Before launching the email campaign, we will send a test email to multiple ISPs and open and test the email on multiple devices (iPhones, Android phones, desktop computers, tablets, etc.) to ensure the email opens as expected.

30. Additionally, JND will include an "unsubscribe" link at the bottom of the email to allow Settlement Class Members to opt out of any additional email notices from JND. This step is essential to maintain JND's good reputation among the ISPs and reduce complaints relating to the email campaign.

31. Emails that are returned to JND are generally characterized as either "Hard Bounces" or "Soft Bounces." A Hard Bounce occurs when the ISP rejects the email due to a permanent reason such as the email account is no longer active. A Soft Bounce occurs when the email is rejected for temporary reasons, such as the recipient's email address inbox is full.

32. When an email is returned due to a Soft Bounce, JND attempts to re-send the email notice up to three additional times in an attempt to secure deliverability. If the Soft Bounce email continues to be returned after the third re-send, the email is considered undeliverable. Emails that result in a Hard Bounce are also considered undeliverable.

**Postcard Notice**

33.     JND will send a color Postcard Notice to known Settlement Class Members provided by Defendants for whom an email address is not available or for whom the Email Notice was deemed ultimately undeliverable. In my experience, the use of color will help differentiate the postcard from junk mail.

34.     Prior to sending the Postcard Notice, JND staff will run the mailing addresses through the United States Postal Service ("USPS") National Change of Address ("NCOA") database.[5] At my direction, JND staff will track all Postcard Notices returned undeliverable by the USPS and will promptly re-mail Postcard Notices that are returned with a forwarding address. Also, with my oversight, JND staff will take reasonable efforts to research and determine if it is possible to reach a Settlement Class Member for whom the Postcard Notice is returned without a forwarding address by mailing to a more recent mailing address at which the potential Settlement Class Member may be reached.

## MEDIA NOTICE

35.     In addition to the direct notice effort, JND proposes a robust media campaign that *alone* will reach at least 70% of potential members of the Settlement Class.

36.     The media campaign consists of a targeted digital effort with GDN, Facebook, and OMTD, as well as a print notice placement in a popular consumer magazine (e.g., *Better Homes & Gardens*).

**Media Resources**

---

[5] The NCOA database is the official USPS technology product which makes change of address information available to mailers to help reduce undeliverable mail pieces before mail enters the mail stream. This product is an effective tool to update address changes when a person has completed a change of address form with the USPS. The address information is maintained on the database for 48 months.

37.     JND utilizes the most reputable advertising media research tools to ensure that the best media is selected and that our reach calculations can withstand the most critical review and challenge. The media research tools we utilized in our analysis and will use to implement the media campaign include MRI, ComScore, Google Active View, Google Analytics, Google Tag Manager, and The Trade Desk.

38.     MRI data was used to analyze the demographics and media usage of potential Settlement Class Members, as well as to determine the reach of our proposed print effort. Understanding who we are trying to reach is key in determining how best to reach them. MRI is a nationally accredited research firm that provides consumer demographics, product and brand usage, and audience/exposure in all forms of advertising media through probabilistic and address-based sampling. MRI is the leading producer of media and consumer research in the United States.

39.     JND used Comscore data to not only analyze where potential Settlement Class Members are spending time on the internet, but more importantly, for calculating the reach of our proposed digital effort. Comscore's multi-reach platform allows us to analyze unduplicated audiences (net reach) across multiple platforms (e.g., Google, Facebook) and devices (desktop and mobile). Through the platform, we were able to assess the efficiency and effectiveness of our proposed media plan by reducing waste and improving campaign performance across all devices.

40.     At the time of implementation, our digital experts will verify and monitor our digital placements. Google Active View, which is accredited by the Media Rating Council (MRC), will be used to measure viewable impressions across the web and in apps. Google Active View supports the Interactive Advertising Bureau (IAB) and MRC definition of viewability—a minimum of 50% of the ad is in view for a minimum of one second for display ads. In addition, over a hundred complex algorithms will be used to spot bad traffic as it happens to prevent invalid

clicks, impressions, views, or interactions. These efforts prevent impressions from being served and counted when they have not been loaded onto a person's screen.

41.     JND will place a Google Analytics pixel across all case landing pages to monitor and track website traffic. Through the use of Google Analytics and custom UTM codes, our digital experts will be able to monitor the number of website visits, average time spent per visit, and the number of pages visited per session. Data will be broken down by source, or referring website, in order to make optimizations based on media placements that are driving the longest time on site and the largest number of claim form submissions. Demographic data such as age and gender, will be reviewed and optimized towards those groups who prove to be the most responsive and interactive with the case website.

42.     JND will also place a 'Container Tag' across all case landing pages using Google Tag Manager, a tag management system (TMS) that allows advertisers to place and update measurement codes and code fragments on a landing page from a single source. With these codes placed within the container, website data is passed back to advertising platforms (such as Meta, Google, The Trade Desk), allowing machine learning to take place, optimizing towards placements and audiences that are driving site traffic and claim form submissions. All data collected through Google Tag Manager adheres to Google's Privacy Policies and Principles. No personal identifiable information (PII) is collected.

43.     JND places media through The Trade Desk, the leading Demand Side Platform (DSP) that champions transparency, as well as industry-wide collaboration and innovation. The Trade Desk provides JND the same buying power/access to inventory as the biggest Fortune 100 companies. JND has access to nearly any website's banner inventory, streaming video, streaming audio and OTT (over-the-top) inventory. Through The Trade Desk's countless partnerships with

data providers, JND also has access to leading technology to target and reach audiences based on criteria such as recent/frequent browsing habits, purchase data, recent and frequent geo locations, and more.

**Target Analysis**

44. JND analyzed the demographics and media usage of potential Settlement Class Members to determine how best to reach them. MRI data does not measure home sellers; however, data is available for adults 18 years of age or older (Adults 18+) who are current homeowners ("Homeowners").

45. Among other things, MRI data indicated that Homeowners are active internet users, with 98% using the internet and 67% visiting Facebook in a 30-day period. In terms of devices, 91% use their cellphone or smartphone to access the internet.

46. JND considered these and other key demographics and media usage when designing our Notice Program and selecting targets.

**Digital Effort**

47. The proposed digital effort consists of placements with GDN, the leading digital network; Facebook, the top social media platform; and OMTD, a respected programmatic partner. A total of 311 million digital impressions will be served among adults 35 years of age or older ("Adults 35+") with focused targeting included.[6]

48. To concentrate our efforts on reaching potential Settlement Class Members, GDN impressions will specifically target homeowners and/or users who have searched on Google for key terms related to this matter, such as Burnett, Moehrl, Sitzer, NAR, National Association of

---

[6] Impressions or Exposures are the total number of opportunities to be exposed to a media vehicle or combination of media vehicles containing a notice. Impressions are a gross or cumulative number that may include the same person more than once. As a result, impressions can and often do exceed the population size.

Realtors, National Association of Realtors Settlement. A portion of the Facebook impressions will specifically target users who recently moved or expressed an interest in things related to this matter such as a homeowner association, a moving company, home renovations, real estate, investing, home improvement and/or National Association of Realtors. The programmatic impressions on OMTD will emphasize Adults 35-64 and will target users based on "length of residency" being between 3-10 years and those who are likely homeowners or sold a house one or more years ago to narrow our focus on potential Settlement Class Members.

49. Multiple targeting strategies will also be used to increase the effectiveness of our digital effort, including the following techniques:

      a. Predictive Targeting (GDN only) uses multiple data points (search queries, sites visited, and digital behavior trends) to make inferences regarding future behavior/performance for a given campaign.

      b. Look-a-like Targeting (LAL) to individuals whose characteristics match that of individuals who have visited the case website and/or submitted an online claim.

      c. Audience Targeting optimizes efforts based on demographics, behavior, and interests of potential Settlement Class Members.

      d. Geotargeting optimizes efforts based on the location of potential Settlement Class Members.

      e. Keyword Targeting allows targeting to users based on their search queries, recent social media posts or engagement with websites or posts that feature specific keywords.

      f. Machine Learning will be used across all digital media platforms in order to optimize campaigns in real time based on placements, times of day and sub-targets

within the larger demo and geo target that are likely to drive claim form submissions.

50. The digital activity will be served across all devices (desktop, laptop, tablet and mobile), with a heavy emphasis on mobile devices. The digital ads will directly link to the Settlement website, where Settlement Class Members may access more information about the Settlement, including the Long Form Notice, as well as file a claim electronically.

**Print Effort**

51. Print media will include a notice placement in *Better Homes & Gardens* magazine, a highly read consumer lifestyle magazine. *Better Homes & Gardens* publishes monthly with a circulation of 3.1 million and a readership of 18 million. It reaches 11% of Adults 35+ and extends reach to older homeowners who may not frequent the internet. A QR code will appear in the print ad for easy, direct access to the Settlement website through mobile devices.

**ADDITIONAL EFFORTS**

52. JND will undertake additional efforts to further disseminate notice to Settlement Class Members, including an internet search campaign, a national press release, and sponsorships with popular class action websites.

53. Given that web browsers frequently default to a search engine page, search engines are a common source to get to a specific website (i.e., as opposed to typing the desired URL in the navigation bar). As a result, JND proposes a Google search effort to assist interested Settlement Class Members in finding the case website. The Keyword List utilized with GDN will be applied and expanded to include additional keywords based on content on the case website landing page, the legal names of the cases, as well as other case information. These keywords are words/phrases that are bid on when they match the search term (or a variation of the search term) a person types into their Google search bar. When a search term matches to a keyword or phrase, a Responsive

Search Ad (RSA) may be served, generating a tailored message relevant to the search term. RSAs utilize machine learning to pair various combinations of ad copy (headlines and descriptions) based on which groupings have worked well previously (i.e., produced a strong CTR/conversion performance), and what the platform anticipates will generate the ideal results from the unique searcher. When the RSA is clicked on, the visitor will be redirected to the case website where they can get more information.

54.    To further assist in getting "word of mouth" out about the case, JND proposes the distribution of a press release at the start of the campaign to over 11,000 media outlets nationwide.

55.    Certain class action websites are frequented for updates on class action lawsuits. These sites, help drive potential class members to the case specific website. As a result, we propose sponsorship opportunities with TopClassActions.com and ClassAction.org.

<u>**CLAIMS STIMULATION EFFORT**</u>

56.    Prior to the claim filing deadline, JND's team will initiate an effort to encourage Settlement Class Members to submit claims and to remind them of the impending deadline.

57.    The claims stimulation effort will include sending multiple reminder email notices to potential Settlement Class Members who have yet to take action (i.e., file a claim and/or exclude themselves from the Settlements).

58.    Additional digital efforts may also be considered such as (1) an audience custom list, (2) retargeting and/or (3) look-alike targeting. Digital banner ads may be sent to potential Settlement Class Members who visited the Settlement website but did not complete a claim submission (retargeting), as well as to individuals who demographically/geographically match with those Settlement Class Members who have already filed online claims (look-alike targeting).

JND will monitor the Settlement website traffic and utilize that information if a digital claims stimulation effort is needed.

## SETTLEMENT WEBSITE

59.     At my direction, JND created an informational, interactive Settlement website where potential Settlement Class Members can obtain more information about their rights and options under the Settlements and submit claims. Information regarding this Settlement will be incorporated into the existing Settlement website. The website, www.RealEstateCommissionLitigation.com, has an easy-to-navigate design and is formatted to emphasize important information and deadlines. The Settlement website contains, among other things, information about the Settlements, a Frequently Asked Questions section, a list of Important Dates and Important Documents, the ability to download a Long Form Notice and Claim Form in both English and Spanish, the ability to submit claims electronically through a secure claims filing portal, and information about how Settlement Class Members can access the toll-free telephone number.

60.     The Settlement website is mobile-enabled and ADA compliant, and will undergo significant penetration testing to make sure that the site cannot be breached as well as load testing to make sure that the site will be able to accommodate the expected traffic from a class this large. It will also be designed to maximize search engine optimization through Google and other search engines.

## DEDICATED TOLL-FREE NUMBER

61.     JND established and will maintain a dedicated toll-free telephone number with an automated IVR, available 24 hours a day, seven days a week, which will provide Settlement-

related information to Settlement Class Members, and the ability to request and receive the notices and the claim form by mail.

62.     The Settlement website and IVR recordings will be designed to be comprehensive, answering all common questions; however, if operators become desired, JND will accommodate that need by providing an option to speak with a Customer Service Representative. JND has multiple call center sites, all in the United States, and can ensure enough staffing and redundancy to handle any volume of calls we receive on this matter.

### DEDICATED POST OFFICE BOXES

63.     JND established two separate United States Post Office Boxes: one dedicated for Settlement Class Members to submit letters, inquiries, and claim forms; and one dedicated strictly to receive exclusion requests, which will be utilized for this Settlement.

### QR CODE

64.     JND created a QR Code (a matrix barcode) that will allow quick and direct access to the Settlement website through mobile devices. The QR Code is included, where practicable, in printed notice documents (i.e., the email, postcard, and print publication notices).

### REACH

65.     The proposed media effort alone is designed to reach at least 70% of potential Settlement Class Members. The extensive direct notice effort, internet search campaign, distribution of the national press release, class action sponsorship opportunities, and claims stimulation effort will extend the reach further. The proposed Notice Program is similar to and, indeed, more robust than that of other court approved programs and meets the high reach standard set forth by the FJC.

## NOTICE DESIGN AND CONTENT

66.     I reviewed and provided input to the Parties on the form and content for each of the notice document exhibits in the RE/MAX, Anywhere, and Keller Williams Settlements, and it is my understanding that the form of the notice and claim form will be substantially similar to the documents used in the previous Settlements. Based on my experience designing court-approved class notice programs, if the notice documents for this Settlement are substantially similar to the notice documents previously used, then in my opinion, each of these notice documents will comply with Rule 23, the Due Process Clause of the United States Constitution, and any other applicable statute, law, or rule, as well as the FJC's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*.

67.     Each of the notice documents will contain easy-to-read summaries of the Settlement and the options that are available to Settlement Class Members. Additionally, the notice documents will provide instructions on how to obtain more information about the Settlement.

68.     The Long Form Notice will be posted on the Settlement website and will be available by mail if requested. It will provide details regarding, among other things, the nature of the action; who is in the Settlement Class; general descriptions of the claims asserted and references to the defenses of Settling Defendants; the monetary relief afforded by the Settlement Agreement; the right of Settlement Class Members to obtain counsel, object to the Settlement, or exclude themselves from the Settlement; and the binding effect of the Settlement on Settlement Class Members. The Long Form Notice will also provide, inter alia, details on when claims and objections are due, how and when to opt-out, how and where to seek additional information, and how to submit a claim.

69.     The Email Notice and Postcard Notice will provide, among other things, a summary of what the lawsuit is about, who is affected, what a Settlement Class Member may receive from the Settlement, the deadline by which a claim should be submitted, other options (opting out and objecting), and how and where to obtain more information.

70.     To the extent that some Class Members may speak Spanish as their primary language, the print notice documents will include a subheading in Spanish at the top directing Spanish speaking Settlement Class Members to visit the Settlement website for a notice in Spanish.

## CLAIM FORM

71.     The Claim Form will explain the claims process, is designed to ensure that filing a claim is as simple as possible and will be sent to any individual who requests a written form. However, the direct notice portion of the Notice Program is designed to drive claimants to the Settlement website where they can utilize an interactive process for claims submission. Online claim forms not only save substantial money in postage but are generally favored by claimants since the wizard feature of the process will walk them through the form step by step and will be very user-friendly. The online claim form process will prevent claimants from submitting an electronic claim without clicking necessary verifications such as signature. Electronic claims also eliminate the step of manual data entry and generally make processing easier and less expensive.

72.     The interactive Claim Form will be accessed through a secure portal and will request the same information from claimants that is set forth in the printed Claim Form. The interactive Claim Form will also be designed to ensure that required information is provided before a claimant can move onto the next step of the Claim Form.

73.     Broadly stated, to complete the Claim Form, the claimant will provide their name and contact information as well as identify, to the extent possible, information about the home sale,

such as the address of the home sold, date of sale, amount of the total commission paid, and any documents to support the proof of payment.

74. All claimants may submit Claim Forms electronically through the Settlement website or physically by mail to the established Settlement P.O. Box.

**OBJECTIONS AND OPT-OUTS**

75. Members of the Settlement Class may object to the Settlement. Settlement Class Members may also exclude themselves ("opt-out") entirely. The Long Form Notice explains these legal rights (and others) to Settlement Class Members.

76. Any member of the Settlement Class who wishes to object to any aspect of the Settlement must send to Class Counsel, Defendants' Counsel, and file with the Court, a written statement of its objection. The objection must include the case name and number (*Burnett, et al., v. National Ass'n of Realtors, et al.*, Case No. 19-CV-00332-SRB (W.D. Mo.)), the Settlement Class Member's name, address, telephone number, signature, and the reasons that they object to the Settlement.

77. Any Settlement Class Member may also opt out of the Settlement. To do so, Settlement Class Members must submit a written request to JND stating their intent to exclude themselves from the Settlement. The exclusion request must include the Settlement Class Member's present name, address, and telephone number; a statement that they wish to be excluded from the Settlement; and their handwritten signature. If the Settlement Class Member is deceased or incapacitated, the signature of the legally authorized representative of the Settlement Class Member must be included.

## **CONCLUSION**

78.     In my opinion, the Notice Program provides the best notice practicable under the circumstances, is consistent with the requirements of Rule 23, and is consistent with other similar court-approved best notice practicable notice programs. The Notice Program is designed to reach as many Settlement Class Members as possible and inform them about the Settlement and their rights and options, and provide them with the opportunity to review a plain language notice with the ability to easily take the next step and learn more about the Settlement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 16, 2024, in Seattle, Washington.

_____

JENNIFER M. KEOUGH