# Exhibit 1

RHONDA BURNETT, JEROD BREIT,
HOLLEE ELLIS, FRANCES HARVEY, and
JEREMY KEEL, on behalf of themselves
and all others similarly situated,

           Plaintiffs,

v.

THE NATIONAL ASSOCIATION OF
REALTORS, REALOGY HOLDINGS
CORP., HOMESERVICES OF AMERICA,
INC., BHH AFFILIATES, LLC, HSF
AFFILIATES, LLC, RE/MAX LLC, and
KELLER WILLIAMS REALTY, INC.,

           Defendants.

Case No. 19-CV-00332-SRB

## DECLARATION OF ERIC L. DIRKS IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT WITH ANYWHERE, RE/MAX AND KELLER WILLIAMS

I, Eric L. Dirks, hereby declare as follows:

1.      I am a partner at the law firm of Williams Dirks Dameron LLC in Kansas City, Missouri, and counsel for the Class in the *Burnett* action. I submit this declaration in support of Plaintiffs Motion for Final Settlement Approval of the Settlements with Anywhere, RE/MAX, and Keller Williams. I make this statement of my own personal knowledge, and if called to testify, would testify competently thereto.

2.      The following is a brief description of my professional background. I am a founding partner of the law firm of Williams Dirks Dameron LLC, in Kansas City, Missouri where I focus my practice on complex litigation, including nationwide class actions. Before my involvement in this case, I acted as counsel on over four dozen class and collective actions, I have

settled numerous class actions, tried a class action to verdict and through appeal in federal court (prior to the *Burnett* trial), and successfully argued the issue of class certification before the Missouri Supreme Court. As the Court is aware, my firm and our co-counsel in this case successfully navigated this case from its infancy to a $1.785 Billion jury verdict.

3. I am AV rated with Martindale Hubbell, am routinely selected as a Super Lawyers Top 50 in Kansas City and have been selected to Kansas City's Best of the Bar on multiple occasions. I have publicly spoken on numerous occasions on the topic of complex litigation, including class actions.

4. I spent the majority of my time over the past three years working on the *Burnett* and related matters and am intimately familiar with all aspects of the cases.

5. Based on my experience prosecuting this case and our research, the Settlements represent the largest known consumer class settlement involving the real estate brokerage industry.

6. The Settlements are more than a large financial recovery for the class. The practice change relief set out in the Settlements is a substantial victory for class members and, in my opinion, will ultimately result in cost savings for future home sellers.

7. Based on my experience in handling class action litigation for the past two decades, I can say without a doubt that the Settlements constitute a fair and reasonable– indeed excellent– result for the class.

8. Our firm and co-counsel filed *Burnett* in 2019 and have collectively dedicated more resources to the prosecution of this litigation than any other case in our firms' history. To my knowledge, prior to *Moehrl* and *Burnett*, there had never been a significant public or private prosecution or settlement of the current Mandatory Offer of Compensation Rule. Throughout the

Case 4:19-cv-00332-SRB   Document 1469-1   Filed 05/02/24   Page 3 of 8

litigation Defendants took the position that their conduct was lawful and that the cases lacked merit.

9. *Burnett* and *Moehrl* represent the only certified litigation classes of plaintiffs involving the Mandatory Offer of Compensation Rule. Our firm and co-counsel, along with class counsel in *Moehrl* (collectively "Class Counsel" or "co-counsel"), litigated the only cases involving the Mandatory Offer of Compensation Rule until other plaintiffs began filing similar cases once they had the opportunity to observe our successes in the litigation.

10. After we reached Settlements with Anywhere and RE/MAX, we continued litigating against Keller Williams and other defendants. In *Burnett*, we litigated all the way through trial and in *Moehrl*, trial was imminent.

11. In each case, Defendants mounted a comprehensive and independent defense, requiring us to give an equally forceful prosecution. Defendants were represented by no less than twenty well-respected defense firms during the course of the *Burnett* litigation including: Cooley, Quinn Emanuel Urquhart Sullivan, Arent Fox Schiff, Jones Day, Holland & Knight, Faegre Baker Daniels, Morgan Lewis & Bockius, Foley & Lardner, MacGill PC, Gibson Dunn & Crutcher, Barnes & Thornburg, MoloLamken, Polsinelli, Stinson, Brown & James, Lathrop GPM, Horn Aylward & Bandy, and Armstrong Teasdale.

12. The issues were complex. We defeated two motions to dismiss, three motions to compel arbitration, five motions for summary judgment, three appeals, and took and defended over 80 depositions in *Burnett* and another 100 in *Moehrl*. The cases involved at least 20 different experts on liability and damages involving 24 expert reports in *Moehrl* and 19 expert reports in *Burnett*, along with related expert depositions. Damages experts reviewed huge data sets including millions of rows of data. Expert testimony covered a broad array of subject matters.

13.     We reviewed more than 5 million pages of documents, and we isolated and reviewed unique documents, which culminated in the parties marking hundreds of deposition and trial exhibits. Both sides issued numerous third-party subpoenas to multiple MLSs and real estate brokerages.

14.     There were two appeals to the Eighth Circuit on the issue of arbitration, a denied writ for certiorari, and two Rule 23(f) Petition that were denied by the Seventh and Eighth Circuits.

15.     Even after prevailing at trial in *Burnett*, Defendants continued to fight nearly every aspect of the case. Nonetheless, we were successful in our efforts on behalf of the Settlement Classes with respect to Anywhere and RE/MAX prior to trial, and Keller Williams after trial.

16.     Liability was also far from the only risk we faced.  It was critical to prevail on that point but hardly sufficient to obtain a significant recovery.  Defendants levied every conceivable challenge at class certification, expert testimony, and damages.

17.     The Settlements were not reached until after numerous attempts at mediation and negotiations. The cases were first mediated April of 2020 with Hon. Garrett Brown (Ret.). The parties attended a mediation with Judge Brown as well as several less formal phone calls and meetings. These attempts were unsuccessful. The parties then mediated with Greg Lindstrom in January of 2023, a well-known national antitrust expert and mediator. The attempts were again unsuccessful. Numerous phone calls and emails between Plaintiffs and Mr. Lindstrom and separately between Defendants and Mr. Lindstrom were also unsuccessful. The parties then attended another mediation with Judge Willie Epps in July of 2023. While some progress was made, no settlements were reached. Plaintiffs and Anywhere subsequently attended a mediation with Mr. Lindstrom shortly before trial and ultimately reached a resolution after two full days. Plaintiffs then mediated with RE/MAX using Mr. Lindstrom and reached a resolution after two

separate days of negotiations. The parties continued to finalize the Anywhere and RE/MAX Settlements and were able to do so prior to trial, with both Settlements being signed on or around October 5, 2023. Plaintiffs attended another mediation with Keller Williams and Mr. Lindstrom after trial, in addition to numerous calls, meetings and negotiations. The Keller Williams settlement was executed on February 1, 2024.

18.     In order to determine that the Settlements were in the best interest of the Class, and in addition to the discovery process and evaluation of data and witnesses, Plaintiffs used a forensic accountant to evaluate the internal financial documents of Settling Defendants. It was only after this process of evaluating Settling Defendants' ability to pay that the parties reached settlement. In my opinion, the Settlements are fair, reasonable and adequate and provide substantial benefits to the class.

19.     We also obtained and reviewed documents and data from not only the MLSs in *Burnett* and *Moehrl*, but nationwide.

20.     The *Burnett* verdict alone would have bankrupted any of the Settling Defendants.

21.     If we would have forced Settling Defendants into bankruptcy, it would have not been in the best interest of the *Burnett* class, the *Moehrl* class, or the Settlement Class.

22.     I can say without a doubt that the Settling Defendants would only settle *Burnett*, *Moehrl*, or any other commissions case for that matter, on a nationwide basis.

23.     For this reason, among others including the practice changes at issue, it was in the best interest of all class members to reach these nationwide Settlements.

24.     I have been involved in the class notice process. I have personally responded to dozens of calls and emails from individuals who are Settlement class members.

25. The majority of these individuals simply had questions about whether and how to file a claim.

26. Some had more detailed questions, such as how much they stand to receive and how to file multiple claims.

27. The individuals who called or emailed me or my office, were generally satisfied with the responses they received and the vast majority spoke positively about the Settlements.

28. My office spoke with at least two individuals representing homebuilders, asking how to file bulk claims. We informed then that JND can accommodate a bulk submission process and put them in touch with JND.

29. I told individuals who asked about their share of the Settlements, or a plan of allocation, that because there were additional settlements expected to be obtained, that the plan of allocation will be formalized once more information is known about the total settlement picture and that claiming class members will be informed of that plan. But for each class member who asked this question, I told them that the claims will be allocated equitably and reduced on a pro rata basis. To give them a sense of the value of a claim, I also informed them of the number of claims received to date. Each of these individuals found this information helpful and had no follow up questions.

30. To my knowledge, Pulte Group did not reach out to my office, other co-counsels' offices or JND prior to filing its objection. After we received their objection, my co-counsel and I reached out to Pulte's attorney and scheduled a call to answer their questions. I believe we answered all the questions she had.

31. Elaine Gerber (Doc. 1456) does not object but states Plaintiffs' counsel did not contact her to assist her in filing a claim. A Williams Dirks Dameron staff member did respond to

6

Ms. Gerber on March 5, 2024 in an email. In any event, I spoke with Ms. Gerber on the phone on April 19, 2024, I answered her questions, and her concerns were resolved.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed this 2nd day of May, 2024.

_____
Eric L. Dirks

7