| | |
|---|---|
| RHONDA BURNETT, JEROD BREIT, JEREMY KEEL, HOLLEE ELLIS, and FRANCES HARVEY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC, RE/MAX LLC, and KELLER WILLIAMS REALTY, INC.,<br><br>Defendants. | Case No. 19-CV-00332-SRB |

**SUGGESTIONS IN SUPPORT OF FINAL APPROVAL OF
REALOGY HOLDINGS CORP.'S NATIONWIDE CLASS SETTLEMENT**

# TABLE OF CONTENTS

Page

I.      INTRODUCTION..................................................................................................1

II.     BACKGROUND ..................................................................................................3

        A.      Anywhere "Breaks the Ice" and Settles First. .....................................3

        B.      Additional Settlements Follow the Icebreaker. ...................................4

III.    ARGUMENT........................................................................................................6

        A.      The $83.5 Million Settlement with Anywhere Is an Excellent Result for
                the Class...............................................................................................7

                1.      The settlement with Anywhere broke the ice, delivering huge
                        benefits to the class beyond the settlement itself......................7

                2.      Anywhere's facts and witnesses posed a serious risk to Plaintiffs at
                        trial. .......................................................................................10

                3.      The fairness and adequacy of the $83.5 million settlement is
                        reinforced by its magnitude in comparison to Anywhere's finances. ......16

                4.      Litigation developments that occurred after Plaintiffs settled with
                        Anywhere are irrelevant to assessing the adequacy of the
                        settlement...............................................................................18

        B.      Anywhere Would Not Have Agreed to Pay $83.5 Million Without the
                Finality Provided by a Nationwide Class and a Broad Release.........................20

                1.      Anywhere insisted, for good reason, on a nationwide class..................20

                2.      Anywhere insisted, for good reason, that all of its franchisees be
                        released....................................................................................22

                3.      Anywhere insisted, for good reason, that the people it was settling
                        with release all of their claims against it based on the alleged
                        antitrust conspiracy...............................................................24

CONCLUSION ....................................................................................................25

-i-

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Albin v. Resort Sales Mo., Inc.,*
2021 WL 5107730 (W.D. Mo. May 21, 2021)................................................................. 21

*In re Am. Inv'rs Life Ins. Co. Annuity Mktg. & Sales Pracs. Litig.,*
263 F.R.D. 226 (E.D. Pa. 2009)..................................................................................... 23

*Am. Needle, Inc. v. NFL,*
130 S. Ct. 2201 (2010).................................................................................................... 14

*In re Auction Houses Antitrust Litig.,*
2001 WL 170792 (S.D.N.Y. Feb. 22, 2001).................................................................... 17

*In re Auto. Parts Antitrust Litig.,*
2018 WL 7108016 (E.D. Mich. Nov. 6, 2018) .............................................................. 9

*In re Auto. Refinishing Paint Antitrust Litig.,*
2004 WL 6248154 (E.D. Pa. Sept. 27, 2004)................................................................. 9

*In re BankAmerica Corp. Sec. Litig.,*
210 F.R.D. 694 (E.D. Mo. 2002) .............................................................................19, 22

*Burnett v. NAR,*
2022 WL 17741708 (W.D. Mo. Dec. 16, 2022)..............................................5, 10, 20, 21

*Bus. Elecs. Corp. v. Sharp Elecs. Corp.,*
485 U.S. 717 .................................................................................................................... 14

*In re Cardizem CD Antitrust Litig.,*
218 F.R.D. 508 (E.D. Mich. 2003)................................................................................ 10

*In re Charter Commc'ns, Inc. Sec. Litig.,*
2005 WL 4045741 (E.D. Mo. June 30, 2005).................................................................. 17

*In re Checking Acct. Overdraft Litig.,*
830 F. Supp. 2d 1330 (S.D. Fla. 2011) .......................................................................... 19

*In re Cigna Corp.,*
2007 WL 2071898 (E.D. Pa. July 13, 2007).................................................................... 19

*Constr. Aggregate Transp., Inc. v. Fla. Rock Indus., Inc.,*
710 F.2d 752 (11th Cir. 1983) ........................................................................................ 14

Case 4:19-cv-00332-SRB   Document 1478   Filed 05/06/24   Page 3 of 35

*Cont'l T.V., Inc. v. GTE Sylvania Inc.*,
    433 U.S. 36 (1977) ................................................................................... 14

*In re Coordinated Pretrial Proc. in Antibiotic Antitrust Actions*,
    410 F. Supp. 669 (D. Minn. 1974) .......................................................... 15

*In re Corrugated Container Antitrust Litigation*,
    1981 WL 2093 (S.D. Tex. June 4, 1981) ................................................ 7, 8

*DeBoer v. Mellon Mortg. Co.*,
    64 F.3d 1171 (8th Cir. 1995) .................................................................. 20

*Dekro v. Stern Bros. & Co.*,
    571 F. Supp. 97 (W.D. Mo. 1983) .......................................................... 18

*In re Domestic Airline Travel Antitrust Litig.*,
    378 F. Supp. 3d 10 (D.D.C. 2019) ......................................................... 8, 9

*In re Flight Transp. Corp. Sec. Litig.*,
    730 F.2d 1128 (8th Cir. 1984) ................................................................ 15

*Friedman v. REBNY*,
    No. 1:24-cv-00405 (S.D.N.Y.) ............................................................... 21

*In re Gen. Am. Life Ins. Co. Sales Pracs. Litig.*,
    357 F.3d 800 (8th Cir. 2004) .................................................................. 24

*Gibson v. NAR*,
    No. 4:23-cv-00788-SRB (W.D. Mo.) ..................................................... 4, 5

*Grunin v. IHOP*,
    513 F.2d 114 (8th Cir. 1975) ........................................................ 6, 16, 20

*In re GSE Bonds Antitrust Litig.*,
    414 F. Supp. 3d 686 (S.D.N.Y. 2019) ...................................................... 8

*Hesse v. Sprint Corp.*,
    598 F.3d 581 (9th Cir. 2010) .................................................................. 23

*Huyer v. Njema*,
    847 F.3d 934 (8th Cir. 2017) .................................................................... 9

*Keil v. Lopez*,
    862 F.3d 685 (8th Cir. 2017) .................................................................. 19

*Klein v. O'Neal, Inc.*,
    2009 WL 1174638 (N.D. Tex. Apr. 29, 2009) ....................................... 22

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
  551 U.S. 877 (2007)................................................................. 14

*In re Linerboard Antitrust Litig.*,
  203 F.R.D. 197 (E.D. Pa. 2001)................................................ 9

*In re Linerboard Antitrust Litig.*,
  292 F. Supp. 2d 631 (E.D. Pa. 2003)........................................ 8

*In re Literary Works in Elec. Databases Copyright Litig.*,
  654 F.3d 242 (2d Cir. 2011)..................................................... 25

*In re Lithium Ion Batteries Antitrust Litig.*,
  2020 WL 7264559 (N.D. Cal. Dec. 10, 2020) ......................... 10

*Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*,
  921 F.2d 1371 (8th Cir. 1990) ................................................. 6

*Long v. Se. Pa. Transp. Auth.*,
  2021 WL 10343501 (E.D. Pa. Oct. 8, 2021)............................. 18

*In re Lorazepam & Clorazepate Antitrust Litig.*,
  205 F.R.D. 369 (D.D.C. 2002).............................................16, 19

*Marshall v. NFL*,
  787 F.3d 502 (8th Cir. 2015).................................................10, 20

*Me. State Ret. Sys. v. Countrywide Fin. Corp.*,
  2013 WL 6577020 (C.D. Cal. Dec. 5, 2013) ........................... 23

*Meredith Corp. v. SESAC, LLC*,
  87 F. Supp. 3d 650 (S.D.N.Y. 2015).......................................8, 17

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
  465 U.S. 752 (1984)................................................................. 11

*New Hampshire v. Maine*,
  532 U.S. 742 (2001)................................................................. 24

*In re Packaged Ice Antitrust Litig.*,
  322 F.R.D. 276 (E.D. Mich. 2017)........................................... 8

*In re Packaged Seafood Products Antitrust Litigation*,
  2022 WL 228823 (S.D. Cal. Jan. 26, 2022)............................7, 8

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y.)....................................................... 19

iv

*In re Patriot Nat'l, Inc. Sec. Litig.*,
    828 F. App'x 760 (2d Cir. 2020) ....................................................... 17

*Petrovic v. Amoco Oil Co.*,
    200 F.3d 1140 (8th Cir. 1999) ........................................................ 17

*Planetarium Travel, Inc. v. Altour Int'l, Inc.*,
    97 F. Supp. 3d 424 (S.D.N.Y. 2015) ............................................... 14

*In re Polyurethane Foam Antitrust Litig.*,
    168 F. Supp. 3d 985 (N.D. Ohio 2016) ........................................... 15

*In re Pork Antitrust Litig.*,
    2022 WL 4238416 (D. Minn. Sept. 14, 2022) ................................. 15

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
    584 F. Supp. 2d 697 (M.D. Pa. 2008) ............................................... 8

*Pro. Firefighters Ass'n of Omaha, Local 385 v. Zalewski*,
    678 F.3d 640 (8th Cir. 2012) ............................................. 6, 10, 15

*In re Processed Egg Prods. Antitrust Litig.*,
    284 F.R.D. 278 (E.D. Pa. 2012) ....................................................... 8

*In re Prudential Ins. Co. of Am. Sales Prac. Litig. Agent Actions*,
    962 F. Supp. 450 (D.N.J. 1997) ..................................................... 23

*Pumps & Power Co. v. S. States Indus., Inc.*,
    787 F.2d 1252 (8th Cir. 1986) ....................................................... 11

*In re Real Estate Comm'n Antitrust Litig.*,
    MDL No. 3100 (J.P.M.L.) ............................................................... 21

*Retta v. Millennium Prods., Inc.*,
    2017 WL 5479637 (C.D. Cal. Aug. 22, 2017) ................................ 23

*Robertson v. Sea Pines Real Estate Cos.*,
    679 F.3d 278 (4th Cir. 2012) ......................................................... 14

*Schoenbaum v. E.I. DuPont de Nemours & Co.*,
    517 F. Supp. 2d 1125 (E.D. Mo. 2007) ........................................... 24

*Shay v. Apple Inc.*,
    2024 WL 1184693 (S.D. Cal. Mar. 19, 2024) ................................ 23

*Sitzer v. NAR*,
    420 F. Supp. 3d 903 (W.D. Mo. 2019) ................................ 10, 12, 13

v

*Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC*,
2023 WL 3749996 (S.D.N.Y. June 1, 2023)............................................................ 8

*In re Sony SXRD Rear Projection T.V. Class Action Litig.*,
2008 WL 1956267 (S.D.N.Y. May 1, 2008)........................................................... 17

*Stallings v. Hussmann Corp.*,
447 F.3d 1041 (8th Cir. 2006) ............................................................................. 24

*Standard Iron Works v. ArcelorMittal*,
2014 WL 11350176 (N.D. Ill. Oct. 23, 2014)........................................................ 8

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011) (en banc)..........................................................21, 22

*In re Synchrony Fin. Sec. Litig.*,
2023 WL 4992933 (D. Conn. Aug. 4, 2023) ........................................................ 18

*TBK Partners, Ltd. v. Western Union Corp.*,
675 F.2d 456 (2d Cir. 1982).................................................................................. 25

*Thompson v. Edward D. Jones & Co.*,
992 F.2d 187 (8th Cir. 1993)................................................................................. 25

*Trombley v. Nat'l City Bank*,
826 F. Supp. 2d 179 (D.D.C. 2011) ...................................................................... 19

*Umpa v. NAR*,
No. 4:23-cv-00945-SRB (W.D. Mo.)...................................................................... 5

*United States v. Realty Multi-List, Inc.*,
629 F.2d 1351 (5th Cir. 1980) .............................................................................. 14

*Van Horn v. Trickey*,
840 F.2d 604 (8th Cir. 1988)...........................................................................6, 10

*In re Vitamins Antitrust Litig.*,
2000 WL 1737867 (D.D.C. Mar. 31, 2000)......................................................... 16

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005).........................................................................21, 24, 25

*White v. NFL*,
836 F. Supp. 1458 (D. Minn. 1993) ..................................................................... 15

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
396 F.3d 922 (8th Cir. 2005) .................................................................................. 6

**STATUTES, RULES & REGULATIONS**

Fed. R. Civ. P. 23(e)(2)..............................................................................................1, 6

vii

# I.    INTRODUCTION

This Court should grant final approval of Plaintiffs' settlement with Anywhere Real Estate, Inc. ("Anywhere," f/k/a Realogy Holdings Corp.) because the record shows it to be fair, reasonable, and adequate under Fed. R. Civ. P. 23(e)(2). Plaintiffs address most of the Rule 23(e) factors. Anywhere writes separately to demonstrate why its settlement was an excellent result for class members, given Anywhere's role as the settlement icebreaker and its strong defenses to Plaintiffs' claims. Anywhere also responds to the objectors who criticize Plaintiffs for agreeing to a nationwide class and release. Without those terms, there would be no settlement.

Anywhere was the first defendant to settle with Plaintiffs. Its $83.5 million settlement, reached in August 2023 and filed with the Court on October 5, 2023, broke the ice after years of unsuccessful mediations between defendants and Plaintiffs. Since then, settlements totaling an additional $889 million have been reached with RE/MAX, Keller Williams, the National Association of Realtors ("NAR"), Compass, The Real Brokerage, At World Properties, Realty One Group, HomeServices of America, and Douglas Elliman. More settlements are anticipated.

Not only did Anywhere's settlement break the ice, but the terms it negotiated established a template that all subsequent brokerage settlements have followed.

Plaintiffs made a sound strategic decision to settle with Anywhere first, because Anywhere's defenses were strongest, and leaving Anywhere in the case for trial would have created significant risks for the plaintiff class. Plaintiffs claimed that all defendants conspired to fix the prices of commissions paid to homebuyers' brokers. ECF No. 759 (3d Am. Class Action Compl.) at 2. Contrary to Plaintiffs' theory, Anywhere had formally argued that there should be no mandatory rule requiring homesellers to make non-zero offers of compensation to homebuyers' brokers and petitioned NAR to rescind its rule (a petition NAR rejected). Anywhere's facts were strong, and so were its witnesses. Its CEO holds a Ph.D. in economics and testified powerfully for

the defense in his depositions. Its experts included a former Commissioner of the Federal Housing Administration who served under three Presidents. By settling with Anywhere and taking its facts and witnesses off the table for trial, Plaintiffs substantially advanced the interests of class members.

Given Anywhere's icebreaker status and the strength of its defenses, the $83.5 million Plaintiffs obtained in settlement was an excellent result. In addition to its factual defenses, Anywhere was prepared to appeal the legal ruling of a per se antitrust violation. A reversal by the Eighth Circuit on this basis would have required a retrial under the rule of reason, which would have reduced Plaintiffs' leverage and extended proceedings, all to class members' detriment.

The amount Plaintiffs obtained was even better in light of Anywhere's financial resources. When the parties signed their term sheet on August 31, 2023, the housing market was the worst it had been in decades, and Anywhere had total cash and cash equivalents of only $179 million as of June 30, 2023. The settlement payment of $83.5 million represents nearly half this amount. Anywhere refused to pay more given its obligation to its shareholders, employees, and other constituents to stay viable.

A few objectors have criticized Plaintiffs for agreeing to a nationwide class and a release covering Anywhere's franchisees and all antitrust claims that class members could have asserted arising out of the same conspiracy. Anywhere wants to be perfectly clear on this point: It would not have agreed to pay $83.5 million without these terms. Anywhere insisted on a nationwide class covering all multiple listing services, regardless of affiliation with NAR. It never would have agreed to settle piecemeal because allowing liability to remain for even a single multiple listing service was unacceptable, given the magnitude of exposure. Anywhere also insisted that the release cover all Anywhere-related entities, including franchisees, because Plaintiffs consistently argued

2

that Anywhere was responsible for the commissions charged by all its related entities, including franchisees. Finally, Anywhere insisted that the people in the Settlement Class release all their antitrust claims arising from the same alleged conspiracy, including claims they could assert as either sellers or buyers. Anywhere had no interest in paying the same people twice for the same alleged antitrust conspiracy, once for claims based on their home sales and another time for claims based on their home purchases. The terms Plaintiffs agreed to were the only terms on which a settlement was possible, and they were entirely fair, reasonable, and adequate.

For these reasons, in addition to those advanced by Plaintiffs, the settlement with Anywhere should be approved and all objections overruled.

## II. BACKGROUND

### A. Anywhere "Breaks the Ice" and Settles First.

After more than four years of litigation, this case was set to begin trial on October 16, 2023. ECF No. 1020 (Minute Order). Having invested huge amounts in prosecuting the case, Plaintiffs had yet to recover anything.

Anywhere had developed a strong case for trial. In addition to joint defense witnesses, Anywhere had prepared one expert and three fact witnesses that were Anywhere-specific. ECF No. 1084 (Defs.' Proposed Witness List). These witnesses included its CEO, who holds a Ph.D. in economics from Yale University. They also included Brian Montgomery, former Commissioner of the Federal Housing Administration under Presidents George W. Bush, Barack Obama, and Donald Trump. Anywhere's trial counsel had filed significant pretrial materials on behalf of the joint defense group, including motions in limine (ECF Nos. 1061-73, 1075-78, 1080), deposition designations (ECF Nos. 1090, 1092), a proposed exhibit list (ECF No. 1098), proposed jury instructions (ECF No. 1100), and a proposed witness list (ECF No. 1084). The greatest risk to Plaintiffs' conspiracy case came from Anywhere, which had fought the very rule Plaintiffs claimed

3

to be the conspiracy's core.

Plaintiffs reached a settlement with Anywhere in August 2023. ECF No. 1192, at 29. On September 5, the parties notified the Court. ECF No. 1107. On September 7, Anywhere withdrew all witnesses it intended to call at trial, including its expert. ECF No. 1130.

On September 18, Plaintiffs notified the Court of a new settlement with RE/MAX (ECF No. 1138)—a settlement that added $55 million to class members' recovery. On October 5, the parties moved for preliminary approval of both the Anywhere and RE/MAX settlements. ECF No. 1192. The form of RE/MAX's settlement followed Anywhere's template. *Compare* ECF No. 1192-4, *with* ECF No. 1192-3.

On October 31, having taken Anywhere's facts and witnesses (as well as RE/MAX's) off the table for trial, Plaintiffs won a jury verdict awarding pre-trebled damages totaling $1,785,310,872 against the three remaining defendants: HomeServices (including BHH Affiliates, LLC and HSF Affiliates, LLC), NAR, and Keller Williams. ECF No. 1294, at 2.

On November 20, the Court issued an order granting preliminary approval of the Anywhere and RE/MAX settlements. ECF No. 1321.

B.    **Additional Settlements Follow the Icebreaker.**

On February 1, 2024, Plaintiffs announced another settlement, this one for $70 million with Keller Williams, which the Court preliminarily approved the same day. ECF Nos. 1371 & 1372. The form followed Anywhere's template. *Compare* ECF No. 1371-1, *with* ECF No. 1192-3.

On March 22, Plaintiffs notified the Court of a settlement with NAR for $418 million. ECF No. 1406. On April 19, Plaintiffs moved for preliminary approval of the NAR settlement. ECF No. 1458. On April 23, the Court granted the motion for preliminary approval. ECF No. 1460.

4

On March 22, Plaintiffs also announced a settlement with Compass for $57.5 million. *Gibson v. NAR*, No. 4:23-cv-00788-SRB, ECF No. 135. The form followed Anywhere's template. *Gibson*, ECF No. 161-2.

On April 8, Plaintiffs notified the Court of a settlement with The Real Brokerage Inc. and Real Broker, LLC for $9.25 million. *Umpa v. NAR*, No. 4:23-cv-00945-SRB, ECF No. 237. The form followed Anywhere's template. *Gibson*, ECF No. 161-3.[1]

On April 23, Plaintiffs notified the Court of a settlement with Realty One Group, Inc. for $5 million. *Gibson*, ECF No. 147. The form followed Anywhere's template. *Gibson*, ECF No. 161-4.

On April 24, Plaintiffs notified the Court of a settlement with At World Properties, LLC for $6.5 million. *Gibson*, ECF No. 149. The form followed Anywhere's template. *Gibson*, ECF No. 161-5.

On April 26, Plaintiffs notified the Court of a settlement with HomeServices of America for $250 million. *Burnett*, ECF No. 1462.[2] Additional terms of the settlement have not yet been made public, and Plaintiffs have not yet moved for preliminary approval of the settlement.

On April 29, Plaintiffs notified the Court of a settlement with Douglas Elliman Inc. and Douglas Elliman Realty, LLC for $17.75 million. *Gibson*, ECF No. 157. The form followed Anywhere's template. *Gibson*, ECF No. 161-6.

The same day, Plaintiffs moved for preliminary approval of the Compass, Real Brokerage, Realty One, At World Properties, and Douglas Elliman settlements. *Gibson*, ECF No. 161. The

---

[1] *Umpa* and *Gibson* were consolidated on April 23, 2024. *Umpa*, ECF No. 245.

[2] *See also* James Kleimann, *HomeServices Settles Commission Lawsuits for $250M*, HOUSINGWIRE (Apr. 26, 2024), https://www.housingwire.com/articles/homeservices-settles-commission-lawsuits-for-250m/.

Court granted preliminary approval to all five settlements on April 30. *Gibson*, ECF No. 163.

\* \* \*

Thus far, Anywhere's original $83.5 million settlement has broken the ice for $889 million in additional settlements, all going to the same class members (with minor variations on the class periods for older claims). Nearly 195,000 claims have been submitted in the Anywhere and RE/MAX settlements as of May 2. Decl. of J. Keough (Exhibit 1) ¶ 49.[3] Only twelve (12) objections were made to these settlements. *Id.* ¶ 52. Fifty-nine (59) timely requests for exclusion were made. *Id.* ¶ 53. These objections and opt-outs represent a very small share of the Settlement Class, which is estimated to contain over 30 million people. *Id.*

## III.    ARGUMENT

The Court should exercise its discretion to approve Plaintiffs' settlement with Anywhere. Because of the overriding public interest in settling cases, "[t]he law strongly favors settlements. Courts should hospitably receive them." *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990). Class action settlements are to be approved when they are "fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2) (listing factors to consider). District courts have wide discretion in determining whether to grant approval. *See Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988) (listing additional factors to consider) (citing *Grunin v. IHOP*, 513 F.2d 114, 124 (8th Cir. 1975)).

Plaintiffs address the Rule 23(e) and *Van Horn* factors in their final approval brief. Anywhere writes separately to focus on what the Eighth Circuit calls "[t]he most important consideration in deciding whether a settlement is fair, reasonable, and adequate," namely, "the

---

[3] All "Exhibit" citations refer to exhibits to the Declaration of Stacey Anne Mahoney, filed simultaneously herewith.

strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement."

*Pro. Firefighters Ass'n of Omaha*, *Local 385 v. Zalewski*, 678 F.3d 640, 648 (8th Cir. 2012)

(quoting *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 933 (8th Cir. 2005)).

**A.    The $83.5 Million Settlement with Anywhere Is an Excellent Result for the Class.**

For several reasons, the Anywhere settlement is an excellent result for the class. It broke the ice, enabling the settlements that followed and providing a template for them. It removed Anywhere's facts from the October 2023 trial, secured Anywhere's cooperation with Plaintiffs, and increased Plaintiffs' odds of prevailing against the remaining defendants (which they did). Still, Plaintiffs drove a hard bargain, demanding and receiving nearly 50% of Anywhere's total cash on hand during the worst housing market in decades. On top of that, Plaintiffs negotiated substantial changes to Anywhere's business practices. In short, the settlement is more than fair, reasonable, and adequate.

**1.    The settlement with Anywhere broke the ice, delivering huge benefits to the class beyond the settlement itself.**

The first, "icebreaker" settlement is critical to converting a risky claim into certain cash and concrete non-monetary relief. In assessing adequacy, courts have long emphasized the benefits that icebreaker settlements provide beyond their own terms. In reviewing the icebreaker settlement in the *In re Corrugated Container Antitrust Litigation* in 1981, for instance, the court framed the positive benefits that a first-settling defendant generates in a large-scale antitrust class proceeding: "This settlement was advantageous to the class. . . . It was the first one negotiated and, in addition to the benefits already detailed, broke the ice and brought other defendants to the point of serious negotiations. . . . It is extremely difficult to put a dollar value on the ice-breaking effect of the St. Regis settlement[.]" 1981 WL 2093, at *19 (S.D. Tex. June 4, 1981).

7

Today, courts express the same view. In 2022, the court in *In re Packaged Seafood Products Antitrust Litigation* expressed the consensus: "Courts typically approve settlements that offer the first settling party a discount due to 'the significant value in and of itself as an icebreaker settlement,' particularly when, as here, the settling defendants have agreed to cooperate in the remaining litigation." 2022 WL 228823, at *5 (S.D. Cal. Jan. 26, 2022) (quoting *In re Domestic Airline Travel Antitrust Litig.*, 378 F. Supp. 3d 10, 19 (D.D.C. 2019)). Anywhere sets forth in the margin many additional decisions, issued by federal courts across the country, approving icebreaker class settlements and recognizing the unique value they provide.[4]

In this litigation, Anywhere was the icebreaker. Its $83.5 million settlement has thus far led to nine additional settlements adding $889 million to the class members' recovery, for a total recovery of $972.5 million and counting. Not only that, but Anywhere's settlement agreement

---

[4] *See, e.g.*, *Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC*, 2023 WL 3749996, at *5 (S.D.N.Y. June 1, 2023) ("[T]he Settlement provides adequate recovery for the Class, not only through its monetary value, but also through . . . the value of serving as an 'ice-breaker' settlement to potentially facilitate future settlements.") (citing *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 697 (S.D.N.Y. 2019)); *In re Packaged Ice Antitrust Litig.*, 322 F.R.D. 276, 293-94 (E.D. Mich. 2017) (icebreaker settlement "provid[ed] significant cooperation that no doubt played a substantial role in the eventual settlements reached with the other Defendants," the value of which "weighs in favor of approval of the Settlement Agreement") (citing *In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008)); *Standard Iron Works v. ArcelorMittal*, 2014 WL 11350176, at *3 (N.D. Ill. Oct. 23, 2014) ("[T]he Court finds that the Settlements are fair and reasonable in light of the risks of continued litigation—particularly considering that these are 'icebreaker' settlements with relatively small defendants in a multi-defendant antitrust case in which other non-settling Defendants will remain liable for all class damages under principles of joint and several liability."); *In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 278, 304-05 (E.D. Pa. 2012) (icebreaker status of settlement weighed in favor of final approval because the defendant's promise of cooperation "aids the Plaintiffs in prosecuting and resolving their claims against the other Defendants" and "should increase the likelihood of future settlements") (citation omitted); *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003) ("[T]his settlement has significant value as an 'ice-breaker' settlement," including because it "should increase the likelihood of future settlements.") (citing *In re Corrugated Container*, 1981 WL 2093, at *19).

8

provided the class with a template that it used with RE/MAX, Keller Williams, and other broker defendants. Anywhere's template settlement includes significant, non-monetary relief in the form of various changes to Anywhere's business practices, further increasing the value to the class. *See, e.g.*, *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 666 (S.D.N.Y. 2015) ("[T]he long-term conduct relief provided for in the settlement will yield, in the Court's assessment, an even greater long-term recovery to the settlement class."). These numerous and substantial benefits to the class strongly favor approval of Anywhere's leading settlement.

Moreover, Anywhere's pre-trial icebreaker settlement preserved joint and several liability with respect to the remaining defendants and secured Anywhere's agreement to cooperate with Plaintiffs. *See* ECF No. 1192-3, ¶¶ 15, 62 (preserving Plaintiffs' claims against non-Anywhere defendants and other alleged co-conspirators) & ¶¶ 55-58 (requiring Anywhere to provide certain cooperation to Plaintiffs in prosecuting claims against non-Anywhere defendants). As a result, Anywhere's settlement does not "prejudice class members' ability to recover the full amount of their damages should the non-settling Defendants be found liable and, in fact, increase[s] the likelihood of such recovery because of the cooperation provisions [therein]." *In re Domestic Airline Travel*, 378 F. Supp. 3d at 19 (citing *In re Auto. Parts Antitrust Litig.*, 2018 WL 7108016, at *5 (E.D. Mich. Nov. 6, 2018)); *see also In re Auto. Refinishing Paint Antitrust Litig.*, 2004 WL 6248154, at *5 (E.D. Pa. Sept. 27, 2004) ("[D]ue to the possibility of the joint and several liability of the Defendants on the antitrust conspiracy claim, Plaintiffs' settlement with BASF and DuPont should not have a negative impact on Plaintiffs' ability to recover damages should the nonsettling Defendants be found liable.") (citing *In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 208 (E.D. Pa. 2001)).

9

## 2. Anywhere's facts and witnesses posed a serious risk to Plaintiffs at trial.

Settling with Anywhere first—and before trial—demonstrated sound strategy by Plaintiffs to protect the value of class members' claims, including because Anywhere would have created substantial risk to Plaintiffs' conspiracy claims at trial.

In assessing whether a class settlement is fair, reasonable, and adequate, courts consider whether "credible defenses" put "the strength of the Plaintiffs' legal claims . . . in question." *Huyer v. Njema*, 847 F.3d 934, 939 (8th Cir. 2017). "Experience proves that, no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict, particularly in complex antitrust litigation." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003). Indeed, the Eighth Circuit "ha[s] repeatedly rejected arguments 'that compromise was unnecessary because [the party] would have prevailed at trial.'" *Marshall v. NFL*, 787 F.3d 502, 515 (8th Cir. 2015) (quoting *Pro. Firefighters Ass'n of Omaha, Local 385 v. Zalewski*, 678 F.3d 640, 649 (8th Cir. 2012)) (alteration in original). "Antitrust cases are particularly risky, challenging, and widely acknowledged to be among the most complex actions to prosecute." *In re Lithium Ion Batteries Antitrust Litig.*, 2020 WL 7264559, at *15 (N.D. Cal. Dec. 10, 2020). "[I]n approving a settlement," therefore, "the district court need not undertake the type of detailed investigation that trying the case would involve[.]" *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988) (citation omitted).

Here, Plaintiffs alleged that certain real estate industry participants conspired to increase the prices that homesellers paid for buyer broker services in residential real estate transactions. The "cornerstone" of the alleged conspiracy was an NAR rule requiring brokers representing homesellers who used a multiple listing service ("MLS") to facilitate a sale to make non-zero offers of compensation on the MLS to the broker who represented the successful buyer. *See generally Sitzer v. NAR*, 420 F. Supp. 3d 903 (W.D. Mo. 2019); *Burnett v. NAR*, 2022 WL

10

17741708 (W.D. Mo. Dec. 16, 2022); *see also* ECF No. 759 (3d Am. Class Action Compl.) ¶ 3. Anywhere's facts created a significant problem for this theory because Anywhere formally communicated to NAR that it <u>opposed</u> the mandatory-offer rule and petitioned NAR to rescind it—a petition NAR denied. *See* ECF No. 597-1 (Decl. of M. Gorman, then-President and CEO of Realogy Brokerage Group, LLC and CEO of Coldwell Banker, LLC) ¶ 9 ("[I]t is the position of Realogy that the mandatory nature of the NAR Cooperative Compensation Rule should be rescinded. It is also the position of Realogy that offers of compensation that are made to buyer brokers should be transparently available to consumers, not just to brokers."); ECF No. 1003 (transcript of oral arguments held Nov. 17, 2022) at 112:6-14 ("MR. KETCHMARK: [Realogy] actually made a proposal to NAR to lift this, and NAR didn't give it a public hearing. They just voted it down, and when it was voted down, it was on a committee which had membership of the other defendants in this case. THE COURT: When was that? . . . MS. MAHONEY: February of 2022, Your Honor."). When a supposed antitrust conspirator actively and publicly fought against the "cornerstone" of the supposed conspiracy, Plaintiffs have a serious problem with their case. *See Pumps & Power Co. v. S. States Indus., Inc.*, 787 F.2d 1252, 1256 (8th Cir. 1986) ("Unless an antitrust plaintiff offers 'evidence that tends to exclude the possibility' of independent action, an inference of conspiracy is unreasonable.") (quoting *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984)). Indeed, counsel for Plaintiffs acknowledged that, by opposing the NAR rule, Anywhere showed that it "no longer believe[d] this rule needs to be mandatory[.]" ECF No. 1003, at 96:23-24.

Add to these powerful anti-conspirator facts the dearth of evidence Plaintiffs had to tie Anywhere to the supposed conspiracy in the first place. Anywhere is not a NAR member. ECF No. 929-7 (Decl. of J. Dohr, President of Coldwell Banker Realty – Gundaker) ¶ 17 & ECF No.

11

929-12 (Decl. of M. Gorman) ¶ 5. Anywhere did not require either its subsidiary brokerages or the independently owned and operated franchisees that license its brands to become NAR members or members of any local board or association of REALTORS®. ECF No. 929-4 (R. Schneider, Anywhere Real Estate CEO Dep. Tr. (*Sitzer*) 82:7-21).[5] Anywhere also never mandated any training regarding mandatory non-zero offers of buyer broker compensation for its subsidiary brokerages, independent franchisees that licensed one of its brands, or independent contractor sales associates affiliated with any of those brokerages. ECF No. 929-5 (W. Crane, Vice President of Learning, Century 21 Dep. Tr. (*Sitzer*) 24:1-5, 156:23-157:15). Likewise, Anywhere did not require any franchisees, company-owned brokerages, or independent contractor sales associates to offer or pay any particular compensation to buyer brokers in connection with MLS listings. *Id.* at 99:25-100:4; ECF No. 929-7 (Decl. of J. Dohr) ¶¶ 14, 25-26, 31, 35-36. Indeed, Plaintiffs presented no evidence of an agreement between Anywhere and any alleged co-conspirator in furtherance of a supposed agreement to require seller brokers to make unilateral offers of buyer broker compensation in their listings.

Testimony from Anywhere's fact witnesses reinforced its lack of involvement in any supposed conspiracy. For example, Anywhere's CEO, Ryan Schneider, testified that Anywhere "do[es] not require [its] franchisees to join or participate with NAR . . . [or] to join or participate with any MLSs." ECF No. 929-4 (R. Schneider Dep. Tr. (*Sitzer*) 80:18-21); *see also* ECF No. 929-14 (M. Gorman Dep. Tr. (*Sitzer*) 190:6-10) (confirming Anywhere did not require franchisees or company-owned brokerages to join MLSs).

---

[5] Anywhere licenses its brands to independently owned and operated real estate brokerage franchisees under its portfolio of brands that includes Century 21®, Coldwell Banker®, ERA®, Sotheby's International Realty®, Corcoran®, and Better Homes and Gardens® Real Estate. ECF No. 929-2 (Realogy Holdings Corp. Form 10-K) (Feb. 25, 2020) at 4. Anywhere also owns and operates brokerages under the Coldwell Banker®, Corcoran®, and Sotheby's International Realty® brands. *Id.*

Anywhere fact witnesses also consistently testified that Anywhere did not support the mandatory nature of the Offer of Compensation rule (a/k/a the "participation rule"). *See, e.g.*, Exhibit 2 (R. Schneider Dep. Tr. (*Sitzer*) 47:13-15) ("The mandatory nature of the participation rule, we absolutely do not support and would like to see changed."); Exhibit 3 (R. Schneider Dep. Tr. (*Moehrl*) 64:11-13) ("[W]e believe the participation rule should be changed, and the mandatory part of it should be rescinded."); *id.* at 39:13-16 ("Realogy does not believe that the quote, participation rule, should be or needs to be mandatory, and we . . . support changing that."); Exhibit 4 (M. Gorman Dep. Tr. (*Sitzer*) 320:10-12) (Anywhere is "fine with that [Offer of Compensation] rule no longer existing"); Exhibit 5 (Anywhere 30(b)(6) Dep. Tr. (*Sitzer*) 63:22-24) ("[R]ealogy is comfortable with the elimination [of] the mandatory nature of the offer rule.").

Moreover, as the corporate representative of Anywhere testified, Anywhere's "most recent franchise disclosure documents do not make a reference to the National Association of Realtors code of ethics . . . [and Anywhere] do[es] not require that [franchisees] adhere to the National Association of Realtors code of ethics." Exhibit 5 (Anywhere 30(b)(6) Dep. Tr. (*Sitzer*) 91:11-14, 94:8-9); *see also, e.g.*, Exhibit 6 (Realogy-Sitzer-01265456) (Sotheby's International Realty® Franchise Disclosure Document removing language requiring compliance with NAR Code of Ethics); Exhibit 7 (Realogy-Sitzer-01261719) (Sotheby's International Realty® Policies and Procedures Manual that no longer contains language related to NAR Code of Ethics or attaches NAR Code of Ethics); Exhibit 8 (Realogy-Sitzer-01265780) (Coldwell Banker® Independent Sales Associate Code of Ethics).

Anywhere's fact witnesses also testified that they had (and have) issues with NAR's Clear Cooperation Rule. *See, e.g.*, Exhibit 3 (R. Schneider Dep. Tr. (*Moehrl*) 84:17-20) ("[T]here's two issues where we have a different point of view than NAR. One is [the NAR Offer of Compensation

13

Rule]. Another is the Clear Cooperation Rule."); Exhibit 5 (Anywhere 30(b)(6) Dep. Tr. (*Sitzer*) 98:11-13) ("[A]nywhere, formerly Realogy, has shared at various times the fact that we believe there are flaws to the clear cooperation policy[.]").

In short, Anywhere's facts presented a significant trial risk for Plaintiffs. Plaintiffs also faced the legal risk that, even if they won at trial, they would lose the verdict on appeal if the Eighth Circuit disagreed with this Court's finding of a *per se* antitrust violation and remanded for a new trial under the rule of reason. *See, e.g.*, *Constr. Aggregate Transp., Inc. v. Fla. Rock Indus., Inc.*, 710 F.2d 752, 757 (11th Cir. 1983) ("We reverse and remand for a new trial because the trial court erred in instructing the jury on a theory of per se illegality [under Sherman Act § 1]."). This was a real risk. *Per se* liability is rare and should be applied only to "manifestly anticompetitive" conduct, *Cont'l T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 50 (1977), that "would always or almost always tend to restrict competition and decrease output," *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007) (quoting *Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 723) (1988)). Until this Court's ruling, courts had uniformly applied the rule of reason to antitrust challenges brought against MLS rules and rejected "out-of-hand condemnation" under the *per se* standard because of the "enormously procompetitive objectives" and "significant economic efficiencies" that MLSs offer. *United States v. Realty Multi-List, Inc.*, 629 F.2d 1351, 1368-69 (5th Cir. 1980); *see also, e.g.*, *Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 290 (4th Cir. 2012) ("Because trade associations may be protective of consumer interests and not just inimical to them, the cooperative actions of MLS members are not per se unreasonable.") (citing *Am. Needle, Inc. v. NFL*, 130 S. Ct. 2201, 2207 (2010)). The rule at issue in this case— requiring non-zero offers of compensation—should likewise have been assessed under the rule of reason, including because it did not set commission rates at any specific level or levels and

14

therefore did not constitute a naked price-fixing arrangement. *See, e.g.*, *Planetarium Travel, Inc. v. Altour Int'l, Inc.*, 97 F. Supp. 3d 424, 433 n.4 (S.D.N.Y. 2015) ("[A]mex and Altour are free to establish their own fixed commission rates within Amex's network. This does not constitute price fixing because no prices are being set."). If this case were tried under the rule of reason, Anywhere's strong defenses would become even more powerful and raise the very real possibility that Plaintiffs' claims would fail in their entirety.

When, as here, a defendant has "credible argument[s]" against liability and can create a "substantial risk the plaintiffs would not prevail," that factor weighs heavily in favor of finding the settlement fair and adequate. *See Pro. Firefighters Ass'n of Omaha*, 678 F.3d at 648-49 (affirming final approval of settlement and rejecting argument that the settlement was unfair "simply because [a sub-class] did not get as much as they believed they should," as it improperly assumed that plaintiffs "would have prevailed at trial"); *see also, e.g.*, *In re Flight Transp. Corp. Sec. Litig.*, 730 F.2d 1128, 1137-38 (8th Cir. 1984) (affirming final approval of settlement where "no reported opinion addresses the precise [merits] question presented here," which created "a substantial question whether [plaintiff] would prevail on its constructive-trust claim" and made the claim "not so strong as to make it an abuse of discretion to approve a settlement that roughly splits it in half"); *In re Pork Antitrust Litig.*, 2022 WL 4238416, at *2 (D. Minn. Sept. 14, 2022) (granting final approval of antitrust settlement that provided "substantial relief against the backdrop of a great deal of uncertainty where the merits are highly contested" in case involving alleged price-fixing conspiracy among pork processing companies); *White v. NFL*, 836 F. Supp. 1458, 1478 (D. Minn. 1993) (granting final approval of settlement in antitrust class action and acknowledging risk that, "if defendants were to prevail on certain issues" on appeal, it would "entirely preclude[] [the plaintiffs] from establishing liability"); *In re Coordinated Pretrial Proc. in Antibiotic Antitrust*

*Actions*, 410 F. Supp. 669, 678 (D. Minn. 1974) (approving settlement where price-fixing claims faced "substantial roadblocks" on top of the "difficulties inherent" in prevailing on such claims); *In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985, 996 (N.D. Ohio 2016) (granting final approval of settlement in light of "real possibility that IPPs could have received much less— even zero—from a jury at trial or following an appeal"); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 393 (D.D.C. 2002) ("[A]ny verdict inevitably would have led to an appeal and might well have resulted in appeals by both sides and a possible remand for retrial, thereby further delaying final resolution of this case. These factors weigh in favor of the proposed Settlement.") (quoting *In re Vitamins Antitrust Litig.*, 2000 WL 1737867, at *4 (D.D.C. Mar. 31, 2000)).

### 3. The fairness and adequacy of the $83.5 million settlement is reinforced by its magnitude in comparison to Anywhere's finances.

The Anywhere settlement of $83.5 million is an excellent result for Plaintiffs based solely on the settlement's icebreaker role and the strength of Anywhere's defenses. But its fairness and adequacy are reinforced by its magnitude in comparison to Anywhere's financial resources at the time of settlement. The company's June 30, 2023 financial statements (i.e., the quarterly statements that had been filed with the SEC most recently prior to the successful mediation) demonstrate that, near the time of settlement, the company had total cash and cash equivalents of $179 million and few other tangible assets that could have been used to satisfy a judgment. *See* Anywhere Real Estate, Inc. Form 10-Q, at 8 (Aug. 4, 2023);[6] ECF No. 1192 (Mot. for Prelim. Approval) at 30 (describing same). The settlement captured a large proportion of this cash without depleting the working capital that the company required to operate. *See Grunin v. IHOP*, 513 F.2d

---

[6] Available at https://ir.anywhere.re/financials/sec-filings/default.aspx (select "Quarterly Filings" for 2023).

114, 125 (8th Cir. 1975) (affirming antitrust settlement and explaining that a "total victory" for plaintiffs after trial "would have been financially disastrous if not fatal" to the defendant, and the settlement "gave valuable concessions to the [settlement class] yet maintained [the defendant's] corporate viability"); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999) ("While it is undisputed that [the settling defendant] could pay more than it is paying in this settlement, this fact, standing alone, does not render the settlement inadequate."); *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 665 (S.D.N.Y. 2015) ("class actions are strong medicine" that "confront defendants with potentially ruinous financial exposure," but "a defendant is not required to 'empty its coffers' before a settlement can be found adequate") (quoting *In re Auction Houses Antitrust Litig.*, 2001 WL 170792, at *5 (S.D.N.Y. Feb. 22, 2001) and *In re Sony SXRD Rear Projection T.V. Class Action Litig.*, 2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008)).

The settlement is also a significant recovery in light of Anywhere's financial performance and lack of available cash when the parties finalized their settlement in August 2023. Over the preceding three years, Anywhere had lost $287 million in net income. *See* Anywhere Real Estate, Inc. Form 10-K, at 86 (Feb. 24, 2023);[7] ECF No. 1192 (Mot. for Prelim. Approval) at 30 (describing same). There was no indication that residential real estate sales would increase significantly in the near future,[8] and any continued losses suffered by the company would only create more risk of nonrecovery for class members. *See, e.g.*, *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760, 763 (2d Cir. 2020) (settlement amount of $6.5 million fell "within the reasonable percentage of recoveries in terms of similar cases" because the defendant "had possibly

---

[7] Available at https://ir.anywhere.re/financials/sec-filings/default.aspx (select "Annual Filings" for 2023).

[8] *See, e.g.*, Diana Olick, *Home Sales Fall Again in July, as Supply Drops to Near Quarter-Century Low*, CNBC (Aug. 22, 2023), https://www.cnbc.com/2023/08/22/home-sales-drop-again-in-july-as-supply-drops-again.html.

as low as $16 million in insurance-policy funds available to reimburse the class" and "further litigation would drain the amount available to shareholders") (internal quotation omitted); *In re Charter Commc'ns, Inc. Sec. Litig.*, 2005 WL 4045741, at *8 (E.D. Mo. June 30, 2005) (acknowledging "considerable risks regarding [plaintiff's] ability to collect any sizable judgment from [defendant]," and granting final approval given that "but for the Settlement, [defendant] may have been forced into bankruptcy"); *Dekro v. Stern Bros. & Co.*, 571 F. Supp. 97, 101 (W.D. Mo. 1983) (approving class action settlement and crediting the "uncertain[ty]" regarding "whether defendant could pay a substantially greater judgment at some time in the future, especially if defendant incurred considerable additional expense in the defense of this action"). This was particularly concerning because Anywhere had a significant debt load of more than $2.8 billion, far in excess of its market capitalization. *See* Anywhere Real Estate, Inc. Form 10-Q, *supra*, at 17. Plaintiffs were so concerned with Anywhere's financial condition, in fact, that they required Anywhere to make a statement of solvency as part of the settlement's terms. *See* ECF No. 1192-3, ¶ 48 ("Anywhere warrants and represents that it is not 'insolvent' within the meaning of applicable bankruptcy laws as of the time the Settlement Agreement is executed."). By electing to settle with Anywhere when they did, Plaintiffs "alleviate[d] uncertainty about [Anywhere's] financial condition," *Long v. Se. Pa. Transp. Auth.*, 2021 WL 10343501, at *1 (E.D. Pa. Oct. 8, 2021), thus reinforcing the fairness and adequacy of the $83.5 million settlement.

### 4. Litigation developments that occurred after Plaintiffs settled with Anywhere are irrelevant to assessing the adequacy of the settlement.

Any comparison of Anywhere's pre-trial icebreaker settlement (which altered the course of trial) to Plaintiffs' settlement with or verdict against other defendants is improper—especially because the settlement with Anywhere enabled that verdict by taking its strong facts off the table.

Courts have consistently held that a settlement's fairness and value must be determined

based on the information available to the parties at the time they reached the settlement, and that events occurring after the settlement is reached should not inform that analysis. *See, e.g.*, *In re Synchrony Fin. Sec. Litig.*, 2023 WL 4992933, at *7 (D. Conn. Aug. 4, 2023) (parties' knowledge of the strengths and weaknesses of the claims "at the time a settlement is reached . . . affects the determination of the settlement's fairness") (quoting *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997)); *In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330, 1346 (S.D. Fla. 2011) ("A settlement fairness analysis must consider such risks at the time the settlement was reached, not after settlement.") (citing *In re Cigna Corp.*, 2007 WL 2071898, at *3 (E.D. Pa. July 13, 2007)); *Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 203 (D.D.C. 2011) ("[T]he Court's analysis of the fairness of the settlement considers what was known to the settling parties at the time the agreement was reached . . . , not the risks or absence of risks that arose after the settlement[.]") (citing *In re Cigna*, *supra*); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 380 (D.D.C. 2002) (fairness of settlement is evaluated based on information available to the parties "at the time they reach the settlement").

Hindsight evaluation cannot properly account for the risk that Plaintiffs faced at the time they settled with Anywhere, and factoring post-settlement developments into the fairness analysis would discourage defendants from settling at an early stage in multidefendant class actions. The Court should therefore disregard the jury verdict and Plaintiffs' subsequent settlements with other defendants in evaluating the Anywhere settlement's fairness.

* * *

In sum, considering Anywhere's status as icebreaker, its strong defenses, and its financial condition as of August 2023, the combined value of the settlement's monetary relief, practice changes, and cooperation provisions falls well "within the ballpark" of reasonableness and merits

19

final approval. *See Keil v. Lopez*, 862 F.3d 685, 696 (8th Cir. 2017) ("[A] settlement is a product of compromise and the fact that a settlement provides only a portion of the potential recovery does not make such settlement unfair, unreasonable or inadequate.") (quoting *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 708 (E.D. Mo. 2002)); *Marshall v. NFL*, 787 F.3d 502, 518 (8th Cir. 2015) ("To require the district court to make detailed factual findings on the value of class claims in every case . . . would run counter to this Court's guiding principle that '[t]he very purpose of compromise is to avoid the delay and expense of such a trial' and that '[t]he parties to a class action are not required to incur immense expense before settling as a means to justify that settlement.'") (quoting *Grunin*, 513 F.2d at 124 and *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995)) (internal citation omitted).

### B. Anywhere Would Not Have Agreed to Pay $83.5 Million Without the Finality Provided by a Nationwide Class and a Broad Release.

Some objectors criticize Plaintiffs for agreeing to a nationwide class, a release of Anywhere's franchisees, and a release of all antitrust claims that the members of the class could have asserted against Anywhere, whether as sellers or buyers. Without the finality delivered by these terms, however, there would be no settlement. Anywhere would not have agreed to settle without them. For this reason, along with the reasons separately articulated in Plaintiffs' brief, the objections should be overruled.

#### 1. Anywhere insisted, for good reason, on a nationwide class.

Some objectors argue that any settlement class should have been limited to homes listed on the MLSs that were certified for litigation in the *Burnett* and *Moehrl* litigations. ECF Nos. 1441, 1448. Plaintiffs explain why this argument is legally baseless. In addition, as a practical matter, Anywhere never would have agreed to settle piecemeal because allowing liability to remain for even a single MLS was unacceptable, given the prospect of joint and several liability for all

industry participants, plus trebling.

The verdict in this case illustrates the magnitude and reality of this risk. *Burnett* involved only four of approximately 600 MLSs nationwide, yet after Anywhere settled, trial produced a jury award of $1.78 billion in damages before trebling.

Consequently, Anywhere insisted that any settlement class be nationwide and include all "multiple listing services" nationwide, regardless of how they are labeled, and regardless of NAR affiliation. Only with the global peace provided by a nationwide class that covered not only the MLSs covered by the pending cases but all other MLSs nationwide, such as MLS PIN and the Real Estate Board of New York ("REBNY"),[9] could Anywhere afford to pay $83.5 million for a settlement.

Courts routinely recognize that settlement classes broad enough to bring global peace can be a practical necessity to settlement. *See, e.g.*, *Albin v. Resort Sales Mo., Inc.*, 2021 WL 5107730, at *5 (W.D. Mo. May 21, 2021) (absence of certification of a "single nationwide class action" would "discourage class action defendants from settling"); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106 (2d Cir. 2005) ("Broad class action settlements are common, since defendants and their cohorts would otherwise face nearly limitless liability from related lawsuits in jurisdictions throughout the country."); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 311 (3d Cir.

---

[9] In a filing before the Judicial Panel on Multidistrict Litigation, the named plaintiff in a putative antitrust class action against REBNY, *Friedman v. REBNY*, No. 1:24-cv-00405 (S.D.N.Y.), argued that his case should not be included in any multidistrict proceeding, in part because his claims allegedly were not covered by the Anywhere, RE/MAX, and Keller Williams settlements. *See In re Real Estate Comm'n Antitrust Litig.*, MDL No. 3100 (J.P.M.L.), ECF No. 384 (Friedman Resp. in Opp. to Mot. for Transfer to MDL). The settling defendants filed a Joint Statement demonstrating that Friedman and all other people who sold homes on REBNY within the class period were covered by the Settlement Class. ECF No. 499. On March 19, Friedman filed a reply. ECF No. 516. Friedman did not, however, either opt out of the settlement or file an objection to it in this proceeding. He has therefore waived any argument that he and other sellers who used REBNY are not included in the Settlement Class.

2011) (en banc) ("[Without] global peace . . . there would be no settlements[.]"). Accordingly, a settling defendant will typically pay more to secure a nationwide release than a single- or multistate class might recover. *See, e.g.*, *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 705 (E.D. Mo. 2002) ("[Defendants] paid both classes of plaintiffs more in the instant global settlement out of a desire to obtain 'total peace' than they would have paid either group of plaintiffs individually."); *Sullivan*, 667 F.3d at 311 ("In a class action settlement setting, defendants seek and pay for global peace[.]") (quoting *Klein v. O'Neal, Inc.*, 2009 WL 1174638, at *3 (N.D. Tex. Apr. 29, 2009)).

**2. Anywhere insisted, for good reason, that all of its franchisees be released.**

Some objectors argue that the release should not have covered Anywhere's franchisees. ECF Nos. 1441, 1448. Plaintiffs explain why this argument is legally baseless. In addition, as a practical matter, Anywhere never would have agreed to settle unless all of its related entities, including its franchisees, were released.

Throughout the litigation, Plaintiffs consistently argued that Anywhere was responsible for commissions charged by all of its related entities, including its company-owned brokerages and franchisees. This Court accordingly certified a class of "[a]ll persons who, from April 29, 2015 through the present, used a listing broker **affiliated with . . . Realogy Holdings Corp. [n/k/a Anywhere]** . . . in the sale of a home listed on the Heartland MLS, Columbia Board of Realtors, Mid America Regional Information System, or the Southern Missouri Regional MLS, and who paid a commission to the buyer's broker in connection with the sale of the home[.]" ECF No. 741 (Order Granting Mot. for Class Cert.) at 40 (emphasis added). In compiling their damages claim, Plaintiffs included transaction data for both Anywhere company-owned brokerages and affiliated franchisees. *See* Merit Stage Expert Report of Craig T. Schulman, Ph.D. (May 6, 2022) (Exhibit 9) ¶¶ 26-27 (calculating Anywhere's annual share of home sales on each subject MLS during the

22

class period based on the number and dollar value of properties sold by all "affiliated offices," including company-owned brokerages and franchisees) & ¶¶ 281-89 (estimating damages attributable to each broker defendant without distinguishing sales by company-owned brokerages from sales by franchisees).

Unless Anywhere's franchisees were released, Anywhere therefore could not ensure finality and would face potential indemnification risks from its franchisees. A release of the franchisees was not only appropriate, but necessary. *See In re Am. Inv'rs Life Ins. Co. Annuity Mktg. & Sales Pracs. Litig.*, 263 F.R.D. 226, 240 (E.D. Pa. 2009) (overruling objection to release of independent sales agents of insurance company because "the release of agents is a necessary component of the settlement agreement in order to provide finality. Otherwise, dissatisfied policyholders could sue the defendants' agents who would then, in turn, look to the defendants for indemnity or contribution.") (citing *In re Prudential Ins. Co. of Am. Sales Prac. Litig. Agent Actions*, 962 F. Supp. 450, 559 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998)); *Shay v. Apple Inc.*, 2024 WL 1184693, at *8 (S.D. Cal. Mar. 19, 2024) ("The release of non-party retailers is common practice in cases such as this, where the released claims against these non-parties concern an identical injury arising from common facts.") (citing *Hesse v. Sprint Corp.*, 598 F.3d 581, 590-91 (9th Cir. 2010)); *Me. State Ret. Sys. v. Countrywide Fin. Corp.*, 2013 WL 6577020, at *7, *17 (C.D. Cal. Dec. 5, 2013) (overruling objection arguing that "non-parties cannot be released for the claims asserted in the Settlement Actions"); *Retta v. Millennium Prods., Inc.*, 2017 WL 5479637, at *8 (C.D. Cal. Aug. 22, 2017) (overruling objection that release of third-party retailers was inappropriate: "[T]his argument is meritless because the purpose of the settlement is to prevent duplicative litigation of identical claims. . . . Millennium is a manufacturer that sells its products through various retailers, so any claims [objector] purports to have against third-party retailers of

the Subject Products are going to be based on the same false or misleading labeling allegations asserted here. This objection is overruled.") (internal citation omitted); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 108-09 (2d Cir. 2005) (approving class settlement with broad releases against non-parties, including member banks, insurance companies, and Swiss governmental entities).

### 3. Anywhere insisted, for good reason, that the people it was settling with release <u>all</u> of their claims against it based on the alleged antitrust conspiracy.

Finally, some objectors argue that the individuals included in the Settlement Class were not allowed to release <u>all</u> of their claims against Anywhere arising out of the alleged antitrust conspiracy, but only the claims they could assert from their home sales, and not the claims they could assert from their home purchases. ECF No. 1447. Plaintiffs explain why this objection is legally baseless. In short, "[t]here is no impropriety in including in a settlement a description of claims that is somewhat broader than those that have been specifically pleaded. In fact, most settling defendants insist on this." *In re Gen. Am. Life Ins. Co. Sales Pracs. Litig.*, 357 F.3d 800, 805 (8th Cir. 2004). In addition, as a practical matter, Anywhere never would have agreed to pay half of its on-hand cash in settlement, only to have the same people it just paid sue it again for the same alleged antitrust conspiracy.[10]

To be clear, the only people included in the settlement—and the only people giving Anywhere any release—are people who sold homes within the class period. *See* ECF No. 1192-3,

---

[10] If the same person tried to sue Anywhere as a buyer after already having sued it and recovered as a seller, Anywhere would assert the defense of judicial estoppel because of the unfair switch in positions. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001); *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1047 (8th Cir. 2006); *Schoenbaum v. E.I. DuPont de Nemours & Co.*, 517 F. Supp. 2d 1125, 1141 (E.D. Mo. 2007) (acknowledging defendants' judicial estoppel argument where "Plaintiffs have presented multiple legal theories, on multiple occasions, with respect to their status as direct or indirect purchasers," but reserving its ruling on estoppel), *vacated in part on other grounds*, 2007 WL 3331291 (E.D. Mo. Nov. 6, 2007).

24

¶ 18 (defining class members as people who "sold" a home). Many of those people, however, both sold *and bought* homes during the class period. (This is just common sense: most people who sell a home previously bought it.) Anywhere refused to settle only part of the antitrust claims with people who both sold and bought homes. Anywhere insisted on gaining finality with the people it was settling with. This is commonplace. "Parties often reach broad settlement agreements encompassing claims not presented in the complaint in order to achieve comprehensive settlement of class actions, particularly when a defendant's ability to limit his future liability is an important factor in his willingness to settle." *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 247-48 (2d Cir. 2011) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106 (2d Cir. 2005)). "Practically speaking, class action settlements simply will not occur if the parties cannot set definitive limits on defendants' liability." *Wal-Mart Stores*, 396 F.3d at 106 (internal quotation omitted) (cleaned up). "Under such circumstances the paramount policy of encouraging settlements takes precedence." *Thompson v. Edward D. Jones & Co.*, 992 F.2d 187, 191 (8th Cir. 1993) (quoting *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 461 (2d Cir. 1982)).

## CONCLUSION

For the foregoing reasons, in addition to the reasons submitted by Plaintiffs, the Anywhere settlement is fair, reasonable, and adequate and should be finally approved.

Dated:  May 6, 2024        */s/ Aaron Van Oort*

Karrie Clinkinbeard
kclinkinbeard@atllp.com
ARMSTRONG TEASDALE LLP-KCMO
2345 Grand Boulevard, Suite 1500
Kansas City, MO 64108
(816) 221-3240

Aaron Van Oort, *pro hac vice*
aaron.vanoort@faegredrinker.com
Kevin Wagner, *pro hac vice*
kevin.wagner@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH LLP**
2200 Wells Fargo Center
90 S. 7th Street
Minneapolis, MN 55402
(612) 766-7000

Stacey Anne Mahoney, *pro hac vice*
stacey.mahoney@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178
(212) 309-6000

Kenneth Michael Kliebard, *pro hac vice*
kenneth.kliebard@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
110 North Wacker Drive
Chicago, IL 60606
(312) 324-1000

William T. McEnroe, *pro hac vice*
william.mcenroe@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
2222 Market Street
Philadelphia, PA 19103
(215) 963-5001

*Counsel for Defendant Anywhere Real Estate Inc.*
*(f/k/a Realogy Holdings Corp.)*

26

**CERTIFICATE OF SERVICE**

I hereby certify that on May 6, 2024, I caused a true and correct copy of the foregoing to be served on all counsel of record via the Court's electronic filing system.

Dated:  May 6, 2024

*/s/ Aaron Van Oort*
Aaron Van Oort