**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

RHONDA BURNETT, JEROD BREIT, HOLLEE ELLIS, FRANCES HARVEY, and JEREMY KEEL, on behalf of themselves and all others similarly situated,

                Plaintiffs,

      v.

THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC, RE/MAX LLC, and KELLER WILLIAMS REALTY, INC.,

                Defendants.

Case No. 19-CV-00332-SRB

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
WITH HOMESERVICES DEFENDANTS,
CERTIFICATION OF SETTLEMENT CLASS, AND APPOINTMENT OF CLASS
REPRESENTATIVES AND SETTLEMENT CLASS COUNSEL**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

BACKGROUND ................................................................................................... 2

I.    THE LITIGATION................................................................................... 2
II.   SETTLEMENT NEGOTIATIONS AND MEDIATION ........................ 5
III.  SUMMARY OF THE SETTLEMENT AGREEMENT............................ 6
   A.   *Settlement Class* ........................................................................ 6
   B.   *Settlement Amount*..................................................................... 7
   C.   *Changes to Business Practices* ................................................ 7
   D.   *Release of Claims Against HSA, its Members, and Participating Entities* .................. 10
   E.   *Application for Award of Attorneys' Fees, Costs, and Class Representative Service Awards*.................................... 10
IV.   THE CLASS DEFINITION CONTEMPLATED BY THE SETTLEMENT SATISFIES RULE 23, AND THE CLASS SHOULD BE CERTIFIED .........................................................11
   B.   *Legal Standard for Modifying the Class Definition* ...................... 13
   C.   *The Proposed Settlement Class Satisfies Rule 23(a)* ................... 15
      1.   Numerosity............................................................... 15
      2.   Commonality.............................................................. 16
      3.   Typicality.................................................................. 17
      4.   Adequacy .................................................................. 18
   D.   *The Proposed Settlement Class Satisfies Rule 23(b)(3)*............... 19
      1.   Predominance ........................................................... 19
      2.   Superiority of a Class Action .................................... 22
V.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT ............ 23
   B.   *HSA's Financial Condition* ....................................................... 25
   C.   *The Complexity and Expense of Further Litigation*...................... 26
   D.   *The Amount of Opposition to the Settlement*................................ 26
   E.   *The Settlement Also Satisfies the Rule 23(e) Factors* ................. 27
VI.   THE COURT SHOULD APPOINT CO-LEAD CLASS COUNSEL FOR THE CERTIFIED CLASSES IN *BURNETT* AND *MOEHRL* AS CO-LEAD COUNSEL FOR THE SETTLEMENT CLASS........................................ 28
VII.  CLASS NOTICE SHOULD PROCEED IN A SUBSTANTIALLY SIMILAR MANNER AS THE EARLIER SETTLEMENTS ................................. 28

CONCLUSION...................................................................................................... 29

# TABLE OF AUTHORITIES

**Cases**

*Albin v. Resort Sales Missouri, Inc.*, 2021 WL 5107730 (W.D. Mo. May 21, 2021) .................. 14

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997).................................................... 18, 20, 22

*Burnett v. Nat'l Ass'n of Realtors*, 2022 WL 1203100 (W.D. Mo. Apr. 22, 2022) ............... Passim

*Chapman v. First Index, Inc.*, 796 F.3d 783 (7th Cir. 2015) ......................................... 13

*Cohn v. Nelson*, 375 F. Supp. 2d 844 (E.D. Mo. 2005)................................................. 24

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013)........................................................ 15

*D&M Farms v. Birdsong Corp.*, 2020 WL 7074140 (E.D. Va. Dec. 1, 2020) ............................ 16

*DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171 (8th Cir. 1995) ...................................... 17, 24

*Donaldson v. Pillsbury Co.*, 554 F.2d 825 (8th Cir. 1977)........................................... 17

*Ebert v. Gen. Mills, Inc.*, 823 F.3d 472 (8th Cir. 2016)................................................ 19

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) .................................................. 18

*Grunin*, 513 F.2d ........................................................................................ 24

*Gunnells*, 348 F.3d ..................................................................................... 18

*Hand v. Beach Entertainment KC, LLC*, 456 F. Supp. 3d 1099 (W.D. Mo. 2020) ...................... 15

*Holt v. CommunityAmerica Credit Union*, 2020 WL 12604383 (W.D. Mo. Sept. 4, 2020) ......... 20

*Hughes v. Baird & Warner, Inc*, 1980 WL 1894 (N.D. Ill. Aug. 20, 1980)................................ 17

*Hyland v. Homeservices of Am., Inc.*, 2008 WL 4858202 (W.D. Ky. Nov. 7, 2008).................... 18

*In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694 (E.D. Mo. 2002)...................... 14

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003)........................... 24

*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195 (5th Cir. 1981) ................... 18

*In re Gen. Am. Life Ins. Co. Sales Pracs. Litig.*, 357 F.3d 800 (8th Cir. 2004) ........................... 13

*In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539 (9th Cir. 2019) ........................................ 19

*In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166 ....................................................... 14

*In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654 (E.D. Va. 2001) ................................. 13

*In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152 (S.D.N.Y. 2018) ............ 13

*In re Nexium Antitrust Litig.*, 777 F.3d 9 (1st Cir. 2015) ............................................................ 21

*In re Packaged Seafood Prod. Antitrust Litig.*, 15-MD-2670, 2023 WL 2483474 (S.D. Cal. Mar. 13, 2023) ........................................................................................................................................ 29

*In re Pre-Filled Propane Tank Antitrust Litig.*, 2019 WL 7160380 (W.D. Mo. Nov. 18, 2019) ... 20

*In re Serzone Prods. Liab. Litig.*, 231 F.R.D. ............................................................................... 22

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 13152270 (N.D. Cal. Aug. 24, 2011) ..... 13

*In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d 1057 (8th Cir. 2013) ........................................................................................................................................................ 23

*In re Zurn Pex Plumbing Prod. Liab. Litig.*, 2013 WL 716088 (D. Minn. Feb. 27, 2013) ........... 20

*In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604 (8th Cir. 2011) ................................ 19

*Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No.*, 921 F.2d 1371 (8th Cir. 1990) .. 23

*Marcus v. Kansas*, 209 F. Supp. 2d 1179 (D. Kan. 2002) ............................................................ 25

*Marshall v. Nat'l Football League*, 787 F.3d 502 (8th Cir. 2015) ............................................... 23

*Moehrl v. Nat'l Ass'n of Realtors*, 2023 WL 2683199 (N.D. Ill. Mar. 29, 2023) ................. Passim

*Paxton v. Union Nat'l Bank*, 688 F.2d 552 (8th Cir. 1982) .......................................................... 16

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) ..................................................... 20, 23

*Rannis v. Rechia*, 380 Fed. App'x 646 (9th Cir. 2010) ................................................................ 16

*Rawa v. Monsanto Co.*, 934 F.3d 862 (8th Cir. 2019) .................................................................. 14

*Sanderson v. Unilever Supply Chain, Inc.*, 2011 WL 5822413 (W.D. Mo. Nov. 16, 2011).......... 23

*Spann v. J.C. Penney Corp.*, 314 F.R.D. 312 (C.D. Cal. 2016) .................................................... 13

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3d Cir. 2011).................................................................. 14

*Van Horn v. Trickey*, 840 F.2d 604 (8th Cir. 1988) ...................................................................... 24

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .................................................................. 16

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ........................................ 14

*Wireless*, 396 F.3d ...................................................................................................................... 24

**Statutes**

15 U.S.C. § 1 ................................................................................................................................. 2

**Rules**

Fed. R. Civ. P. 23(e)(1)(B) ............................................................................................................ 23

Fed. Rule Civ. Proc. 23(b)(3)(D) .................................................................................................. 22

Fed R. Civ. P. 23(g) ...................................................................................................................... 28

Federal Rule of Civil Procedure 23(b)(2) ............................................................................... 11, 12

Federal Rule of Civil Procedure 23(b)(3) .................................................................. 11, 12, 19, 22

Federal Rule of Civil Procedure 23(e) ................................................................................ 23, 27, 28

Federal Rule of Evidence 408 ...................................................................................................... 25

Rule 23 ......................................................................................................................................... 13

Rule 23(a).................................................................................................................................... 15

Rule 23(b) .................................................................................................................................... 15

Rule 23(b)(3)(A–D) ..................................................................................................................... 20

Rule 23(c)(2)(B)..................................................................................................................... 28, 29

Rule 23(e)(2) ................................................................................................................................ 27

Rule 23(e)(3) ........................................................................................................... 27

Rule 23(f) ................................................................................................................. 26

**Other Authorities**

4 Newberg on Class Actions § 11.41 ....................................................................... 23

7B Wright & Miller, Federal Practice & Procedure § 1798.1 (3d ed. 2005) ................................ 15

## INTRODUCTION

After five years of hard-fought litigation, a jury trial, and extensive arm's-length settlement negotiations, Plaintiffs and the HomeServices Defendants, HomeServices of America, Inc., BHH Affiliates, LLC, Long & Foster Companies, Inc., and HSF Affiliates, LLC (together, "HomeServices" or "HSA") reached a global Settlement that provides substantial monetary relief—including a total monetary settlement amount of $250 million—to a nationwide class of home sellers as well as practice changes that will ultimately benefit future home sellers and buyers.

The Settlement resolves on a nationwide basis Plaintiffs' claims for damages and injunctive relief against HSA for its alleged anticompetitive practices in the market for residential real estate brokerage services, including Plaintiffs' claims in *Burnett v. National Association. of Realtors*, Case No. 4:19-cv-00332-SRB (W.D. Mo.) ("*Burnett*"), *Moehrl v National Association of Realtors*, Case No. 1:19-cv-01610-ARW (N.D. Ill.) ("*Moehrl*"), *Daniel Umpa v. The National Association of Realtors, et al.*, No. 23-cv-945 (W.D. Mo.) ("*Umpa*"), and *Don Gibson v. The National Association of Realtors, et al*., No. 23-cv-00788 (W.D. Mo.) ("*Gibson*") (collectively, "the Actions"). The Settlement is fair, adequate, reasonable, and beneficial to the Settlement Class, and thus Plaintiffs respectfully move this Court for preliminary approval.

The Settlement creates a non-reversionary settlement fund consisting of $250 million in payments from HSA plus any interest accrued on HSA's payments after they are deposited into the escrow account (for a total of over $980 million in proposed settlements thus far in the Actions); and requires consumer friendly practice changes.

The Settlement was the product of a half-decade of litigation and extensive settlement negotiations. The Settlement was informed by weighing the substantial monetary and practice change relief against the risks, cost, and delay of further litigation (including appeals), as well as limitations on HSA's ability to pay the full amount of any trial judgment entered against it.

Accordingly, Plaintiffs respectfully request that the Court enter an order: (1) preliminarily approving the Settlement; (2) certifying a Settlement Class; (3) appointing Plaintiffs as Settlement Class Representatives; (4) appointing Settlement Class Counsel as defined below; and (5) ordering notice to the class.[1]

## BACKGROUND

### I. THE LITIGATION

After five years of hard-fought litigation in *Burnett* and *Moehrl*, including multiple appeals, a jury trial and intensive settlement negotiations, Plaintiffs in the Actions have reached global settlements that provide monetary relief totaling at least $987.1 million and require historic practice changes that will ultimately benefit future home sellers and buyers. Economists and other market experts have predicted that the Settlements could ultimately save consumers billions of dollars per year.[2]

The *Moehrl* class action was filed in the Northern District of Illinois on March 6, 2019, on behalf of home sellers who paid a broker commission in connection with the sale of residential real estate listed on 20 Covered MLSs spanning 19 states. (*Moehrl* Doc. 1). The *Burnett* action was filed in this Court on April 29, 2019, on behalf of home sellers who paid a broker commission in connection with the sale of residential real estate listed on one of four Subject MLSs in Missouri. (*Burnett* Doc. 1).

The plaintiffs in both actions alleged that NAR and the nation's largest real estate brokerage firms entered into an unlawful agreement in violation of the Sherman Act, 15 U.S.C. § 1, to artificially inflate the cost of commissions in residential real estate transactions. *Moehrl* and

---

[1] The Settlement Agreement is attached as Exhibit A to the Declaration of Steve Berman (Ex. 1).
[2] *See, e.g.*, Julian Mark, Aaron Gregg & Rachel Kurzius, *Realtors' Settlement Could Dramatically Change Cost of Housing Sales*, WASH. POST (Mar. 15, 2024), https://www.washingtonpost.com/business/2024/03/15/nar-real-estate-commissions-settlement/.

*Burnett* Plaintiffs alleged a longstanding conspiracy among Defendants to agree to NAR rules (a) requiring home sellers to make blanket unilateral offers of compensation to real estate brokers working with buyers, (b) restraining negotiation of those offers, (c) denying buyers information on the commissions being offered, (d) allowing buyer agents to represent that their services are "free," and (e) incentivizing and facilitating steering by brokers towards high commission listings and away from discounted listings (together, the "Challenged Rules"). *Moehrl* and *Burnett* Plaintiffs claimed that the Challenged Rules are anticompetitive and caused them to pay artificially inflated broker commissions when they sold their homes. Defendants have denied the allegations.

Defendants filed motions to dismiss the *Burnett* action on August 5, 2019, and this Court denied their motions on October 16, 2019. (*Burnett* Doc. 131). Similarly, Defendants filed motions to dismiss the *Moehrl* action on August 9, 2019, and the Court in that action denied their motions on October 2, 2020. (*Moehrl* Doc. 184). The parties proceeded with discovery.

On April 22, 2022, this Court granted the *Burnett* Plaintiffs' motion for class certification; appointed Scott and Rhonda Burnett, Jerod Breit, Ryan Hendrickson, Jeremy Keel, and Scott Trupiano as class representatives; and appointed Ketchmark & McCreight, Boulware Law LLC, and Williams Dirks Dameron LLC as Co-Lead Class Counsel. (*Burnett* Doc. 741). Shelly Dreyer, Hollee Ellis, and Frances Harvey joined as class representatives in the *Burnett* action with the Third Amended Complaint (*Burnett* Doc. 759).

On March 29, 2023, Judge Wood granted the plaintiffs' motion for class certification in the *Moehrl* action, appointed Christopher Moehrl, Michael Cole, Steve Darnell, Jack Ramey, Daniel Umpa, and Jane Ruh as class representatives, and appointed Cohen Milstein Sellers & Toll PLLC, Hagens Berman Sobol Shapiro LLP, and Susman Godfrey LLP as co-lead class counsel. (*Moehrl* Doc. 403).

The parties in both actions completed over four years of extensive fact and expert discovery, including propounding and responding to multiple sets of interrogatories and requests for production, followed by the production of well over 5 million pages of documents from the parties and dozens of non-parties across both actions. *Moehrl* and *Burnett* Plaintiffs briefed numerous discovery motions and other disputes relevant to obtaining evidence supporting their claims. The parties conducted around 100 depositions in the *Moehrl* action and over 80 depositions in the *Burnett* action. *Moehrl* Plaintiffs engaged six experts and *Burnett* Plaintiffs engaged five experts supporting their claims and in rebuttal to the nine experts retained by Defendants in each case. Moreover, most experts were deposed in connection with the submission of 24 expert reports in *Moehrl* and 19 expert reports in *Burnett*. The plaintiffs in both cases have also briefed summary judgment, and the Plaintiffs in *Burnett* proceeded to trial, including against HSA, and briefed post-trial motions. (Berman Decl. ¶ 14; Dirks Decl., Ex. 2 at ¶¶ 11–13). Much of the discovery focused on the nationwide rules and practices of NAR and its members. Class Counsel and experts in *Burnett* and *Moehrl* analyzed rules, policies, practices, and transaction data, including on a nationwide basis. (Berman Decl. ¶ 15; Dirks Decl. ¶ 12). They also evaluated whether those policies and practices differed among the various MLSs. The information and data were not limited to the *Burnett* and *Moehrl* Defendants, but rather focused on the entire industry. *Id.* After Plaintiffs obtained a verdict in *Burnett*, HSA filed multiple post-trial motions, and, if those motions were unsuccessful, was mounting its merits appeal in addition to its writ of certiorari on arbitration issues. (Dirks Decl. at ¶ 13).

After years of aggressive litigation and settlement negotiations, *Moehrl* and *Burnett* Plaintiffs, and the defendants in those cases, entered into settlement Agreements that require those

defendants to make important Practice Changes, provide Cooperation in the ongoing litigation, and pay the following amounts:

1. National Association of Realtors ("NAR"): at least $418 million;
2. HomeServices Defendants: $250 million;
3. Anywhere Real Estate, Inc. (f/k/a Realogy Holdings Corp.) ("Anywhere"): $83.5 million;
4. RE/MAX LLC ("RE/MAX"): $55 million; and
5. Keller Williams Realty, Inc. ("Keller Williams"): $70 million;

(Berman Decl. ¶ 16; Dirks Decl. ¶ 8). This Court granted final approval of the settlements with Anywhere, RE/MAX, and Keller Williams,[3] and preliminary approval of the Settlement with NAR.[4] In connection with all of these settlements, this Court appointed the following firms Co-Lead Class Counsel:

1. Ketchmark & McCreight,
2. Boulware Law LLC,
3. Williams Dirks Dameron LLC,
4. Cohen Milstein Sellers & Toll PLLC,
5. Hagens Berman Sobol Shapiro LLP, and
6. Susman Godfrey LLP.[5]

## II.     SETTLEMENT NEGOTIATIONS AND MEDIATION

Class Counsel and counsel for HSA engaged in extensive arm's-length settlement negotiations that lasted nearly four years. These included several telephonic and in-person mediations with a nationally recognized and highly experienced mediator, two mediations with a retired federal court judge, and a mediation with a federal magistrate judge. Although these

---

[3] See Burnett Doc. 1487.
[4] See Burnett Doc. 1460.
[5] See Burnett Docs. 1460 and 1487.

mediations did not directly result in a Settlement, the Parties continued to engage directly through multiple intensive in-person and telephonic negotiations over many months, when they ultimately reached an agreement on the Settlement. (Berman Decl. ¶¶ 7; Dirks Decl. ¶ 14).

The Settling Parties reached the Settlement Agreement after considering the risks and costs of continued litigation, including appeals and a potential bankruptcy. Plaintiffs and Class Counsel believe the claims asserted have merit and that the evidence developed supports their claims. Plaintiffs and counsel, however, also recognize the myriad of risks and delay of further proceedings in a complex case like this, and believe that the Settlement confers substantial benefits upon the Settlement Class Members. (Berman Decl. ¶ 9; Dirks Decl. ¶¶ 6, 15-17). Moreover, Plaintiffs and counsel conducted a thorough financial analysis of HSA's ability to pay, which reflected limits on the monetary recovery feasible through either settlement or continued litigation. (Berman Decl. ¶ 11; Dirks Decl. ¶¶ 14-15).

## III.  SUMMARY OF THE SETTLEMENT AGREEMENT

### A.  Settlement Class

The proposed Settlement Class in the Settlement Agreement includes all persons who sold a home that was listed on a multiple listing service anywhere in the United States where a commission was paid to any brokerage in connection with the sale of the home in the following date ranges:

    a.  Moehrl MLSs: March 6, 2015 to date of notice;

    b.  Burnett MLSs: April 29, 2014 to date of notice;

    c.  MLS PIN: December 17, 2016 to date of notice

    d.  All other MLSs: October 31, 2019 to date of notice.

(Agreement ¶ 17).

### B. Settlement Amount

The Settlement provides that HSA will pay a Total Settlement Amount of $250 million for the benefit of the Settlement Class. The total Settlement Amount is paid in five installments and is inclusive of interest. Interest earned on the payments once deposited into the escrow accounts is for the benefit of the class. The Total Settlement Amount is inclusive of all costs of settlement, including payments to class members, attorneys' fees and costs, service awards for current and former class representatives (including Settlement Class Representatives), and costs of notice and administration. (Agreement ¶ 20).

The Total Settlement Amount is non-reversionary; once the Settlement is finally approved by the Court and after administrative costs, litigation expenses, and attorneys' fees are paid, the net funds will be distributed to Settlement Class Members with no amount reverting back to HSA, regardless of the number of claims made. (Agreement ¶ 40).

### C. Changes to Business Practices

The Settlement requires HSA (and its affiliates, as a condition of any release) to make several significant practice changes.

    i.    advise and periodically remind HomeServices's company-owned brokerages, franchisees (if any), and their agents that there is no HomeServices requirement that they must make offers of compensation to or must accept offers of compensation from buyer brokers or other buyer representatives or that, if made, such offers must be blanket, unconditional, or unilateral;

    ii.    require that any HomeServices company-owned brokerages and their agents (and recommend and encourage that any franchisees and their agents) disclose to prospective home sellers and buyers and state in conspicuous language that

broker commissions are not set by law and are fully negotiable (i) in their listing agreement if it is not a government or MLS-specified form, (ii) in their buyer representation agreement if there is one and it is not a government or MLS-specified form, and (iii) in pre-closing disclosure documents if there are any and they are not government or MLS-specified forms. In the event that the listing agreement, buyer representation agreement, or pre-closing disclosure documents is a government or MLS-specified form, then HomeServices will require that any company-owned brokerages and their agents (and recommend and encourage that any HomeServices franchisees and their agents) include a disclosure with conspicuous language expressly stating that broker commissions are not set by law and are fully negotiable;

iii. prohibit all HomeServices company-owned brokerages and their agents acting as buyer representatives (and recommend and encourage that franchisees and their agents acting as buyer representatives refrain) from advertising or otherwise representing that their services are free (unless they are, in fact, not receiving any compensation for those services from any party);

iv. require that HomeServices company-owned brokerages and their agents disclose at the earliest moment possible any offer of compensation made in connection with each home marketed to prospective buyers in any format;

v. prohibit HomeServices company-owned brokerages and their agents (and recommend and encourage that any franchisees and their agents refrain) from utilizing any technology or taking manual actions to filter out or restrict MLS listings that are searchable by and displayed to consumers based on the level of

compensation offered to any cooperating broker, unless directed to do so by the client (and eliminate any internal systems or technological processes that may currently facilitate such practices);

vi. advise and periodically remind HomeServices company-owned brokerages and their agents of their obligation to (and recommend and encourage that any franchisees and their agents) show properties regardless of the existence or amount of compensation offered to buyer brokers or other buyer representatives provided that each such property meets the buyer's articulated purchasing priorities;

vii. for each of the above points, for company-owned brokerages, franchisees, and their agents, develop training materials consistent with the above relief and eliminate any contrary training materials currently used.

viii. display offers of compensation made by listing brokers or agents, where such compensation data is available and/or provided by HomeServices own brokerages for all active listings by HomeServices on its own brokerage website(s), and shared on bhhs.com or that brokerage's associated HomeServices regional franchise network website(s), and require company owned brokerages (and recommend and encourage that franchisees and agents) include their cooperative compensation offers (if any) on any listings that they publicly display or share with prospective buyers through IDX or VOW displays, or through any other form or format. For purposes of this paragraph, "HomeServices own brokerage" includes HomeServices' subsidiary-owned brokerages and its franchisees. (Agreement ¶ 51)

**D.     Release of Claims Against HSA, its Members, and Participating Entities**

Upon the Effective Date, Plaintiffs and the Settlement Class will release and discharge HSA and its respective subsidiaries, affiliated franchisees, independent contractors, and certain other representatives from any and all claims arising from or relating to "conduct that was alleged or could have been alleged in the Actions based on any or all of the same factual predicates for the claims alleged in the Actions, including but not limited to commissions negotiated, offered, obtained, or paid to brokerages in connection with the sale of any residential home." (Agreement ¶¶ 7, 13-15, 29–31). The complete terms of the releases are contained in the Settlement Agreement.

The Settlement Agreement, however, does nothing to abrogate the rights of any member of the Settlement Class to recover from any other Defendant, including Berkshire Hathaway Energy. (Agreement ¶ 63). The Settlement Agreement also expressly excludes from the Release a variety of individual claims that class members may have concerning product liability, breach of warranty, breach of contract, or tort of any kind (other than a breach of contract or tort based on any factual predicate in this Action). Also exempted are any "individual claims that a class member may have against his or her own broker or agent based on a breach of contract, breach of fiduciary duty, malpractice, negligence, or other tort claim, other than a claim that a Class Member paid an excessive commission or home price due to the claims at issue in these Actions." (Agreement ¶ 31).

**E.     Application for Award of Attorneys' Fees, Costs, and Class Representative Service Awards**

The Settlement authorizes Settlement Class Counsel to seek to recover their attorneys' fees and costs incurred in prosecuting the Actions, as well as to seek service awards for current and former class representatives, including the Settlement Class Representatives. (Agreement ¶ 37). Following the Court's preliminary approval of the Settlement and issuance of notice, Class

10

Counsel will apply to the Court for an award of attorneys' fees, costs, and potentially for service awards, to be paid out of the Settlement Fund.  (Agreement ¶ 37)

## IV.  THE CLASS DEFINITION CONTEMPLATED BY THE SETTLEMENT SATISFIES RULE 23, AND THE CLASS SHOULD BE CERTIFIED

Certifying a nationwide Settlement Class is appropriate here, where the Settlement Class members are all home sellers who allegedly suffered the same or similar harms as those alleged in the *Burnett* and *Moehrl* cases from the same defendants.

### A.  Class Definition

This Court previously certified under Rule 23(b)(3) the following class antitrust claim class:

> All persons who, from April 29, 2015 through the present, used a listing broker affiliated with Home Services of America, Inc., Keller Williams Realty, Inc., Realogy Holdings Corp., RE/MAX LLC, HSF Affiliates, LLC, or BHH Affiliates, LLC, in the sale of a home listed on the Heartland MLS, Columbia Board of Realtors, Mid America Regional Information System, or the Southern Missouri Regional MLS, and who paid a commission to the buyer's broker in connection with the sale of the home;

The Subject MLSs in the *Burnett* action were four MLSs in Missouri.

The *Moehrl* Court previously certified the following damages class under Federal Rule of Civil Procedure 23(b)(3):

> Home sellers who paid a commission between March 6, 2015, and December 31, 2020, to a brokerage affiliated with a Corporate Defendant in connection with the sale of residential real estate listed on a Covered MLS and in a covered jurisdiction. Excluded from the class are (i) sales of residential real estate for a price below $56,500, (ii) sales of residential real estate at auction, and (iii) employees, officers, and directors of defendants, the presiding Judge in this case, and the Judge's staff.

(Moehrl Doc. 403). In addition, the *Moehrl* Court previously certified the following injunctive relief class under Federal Rule of Civil Procedure 23(b)(2):

> Current and future owners of residential real estate in the covered jurisdictions who are presently listing or will in the future list their home for sale on a Covered MLS.

> Excluded from the class are (i) sales of residential real estate for a price below $56,500, (ii) sales of residential real estate at auction, and (iii) employees, officers, and directors of defendants, the presiding Judge in this case, and the Judge's staff. (*Id.*)

The Covered MLSs in the *Moehrl* action are 20 MLSs spanning 19 states across the United States.

The *Gibson* case asserted nationwide classes on behalf of: all persons in the United States who, from October 31, 2019, through the present, used a listing broker affiliated with any Corporate Defendant in the sale of a home listed on an MLS, and who paid a commission to the buyer's broker in connection with the sale of the home. *Gibson* Doc. 1.

The Settlement is conditioned upon the Court certifying a class for settlement purposes only that is slightly broader than the litigation classes certified in *Burnett* and *Moehrl*, as to this Settlement only, including in the following respects: (a) the class is nationwide in scope, while *Burnett* and *Moerhl* were limited to specific MLSs; (b) sellers regardless of the broker used (rather than only those affiliated with the Defendants); and (c) a date range that generally extends to the date of notice. The proposed Settlement Class definition, pursuant to Rule 23(b)(3) is as follows:

> all persons who sold a home that was listed on a multiple listing service anywhere in the United States where a commission was paid to any brokerage in connection with the sale of the home in the following date ranges:
>
> e. Moehrl MLSs: March 6, 2015 to date of notice;
>
> f. Burnett MLSs: April 29, 2014 to date of notice;
>
> g. MLS PIN: December 17, 2016 to date of notice
>
> h. All other MLSs: October 31, 2019 to date of notice.

(Agreement ¶ 17).

The Settlement Class definition satisfies the requirements of Rule 23(a) and 23(b)(3). Accordingly, Plaintiffs request that the Court certify the Settlement Class for settlement purposes.

### B. Legal Standard for Modifying the Class Definition

The Court has authority under Rule 23 to certify a nationwide settlement class here. Even in the litigation context, courts may certify a class broader than the one alleged in the complaint. *See, e.g.*, *Chapman v. First Index, Inc.*, 796 F.3d 783, 785 (7th Cir. 2015) (Easterbrook, J.) (explaining that the "obligation to define the class falls on the judge's shoulders" and "motions practice and a decision under Rule 23 do not require the plaintiff to amend the complaint"); *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152 (S.D.N.Y. 2018) ("consistent with the certifying court's broad discretion over class definition," adopting "the class definition that Plaintiffs propose in their motion for class certification [even though] it expands upon the definition found in the Amended Complaint").

In the settlement context, courts regularly certify broader classes. *See, e.g.*, *In re Gen. Am. Life Ins. Co. Sales Pracs. Litig.*, 357 F.3d 800, 805 (8th Cir. 2004) ("There is no impropriety in including in a settlement a description of claims that is somewhat broader than those that have been specifically pleaded. In fact, most settling defendants insist on this."); *Smith v. Atkins*, 2:18-cv-04004-MDH (W.D. Mo.); *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 320 (C.D. Cal. 2016); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-cv-1827, 2011 WL 13152270, at *9 (N.D. Cal. Aug. 24, 2011) ("For the history of class certifications, courts have generally certified settlement classes broader than the previously-certified litigation classes; the claims released are typically more extensive than the claims stated. Courts have noted that the concerns about manageability and/or the class-wide applicability of proof (which can serve to limit or defeat class certification for trial) are in large part no longer relevant when establishment of a defendant's liability is replaced by a settlement."); *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654,

661 (E.D. Va. 2001) (certifying settlement class broader than previously certified litigation class); *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 172 (same).

Often, broad classes are a practical prerequisite to reaching any settlement because a defendant will not agree to any meaningful settlement unless it can obtain global peace. *See, e.g.*, *Albin v. Resort Sales Missouri, Inc.*, No. 20-cv-03004, 2021 WL 5107730, at *5 (W.D. Mo. May 21, 2021) (reasoning that the absence of "a single nationwide class action" would "discourage class action defendants from settling" (quotation omitted)); *accord Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 103 n.5, 106 (2d Cir. 2005) ("Broad class action settlements are common, since defendants and their cohorts would otherwise face nearly limitless liability from related lawsuits in jurisdictions throughout the country. Practically speaking, class action settlements simply will not occur if the parties cannot set definitive limits on defendants' liability" (quotation omitted)) (affirming nationwide settlement in an antitrust case); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 310-11 (3d Cir. 2011) (en banc) ("[Without] global peace . . . there would be no settlements." (affirming nationwide settlement in an antitrust case)). Conversely, because global peace is most valuable to defendants, defendants will pay more to obtain it, thus benefitting class members. *See, e.g.*, *Rawa v. Monsanto Co.*, 934 F.3d 862, 869 (8th Cir. 2019) (noting that each California class member received more under the nationwide settlement than they sought under the abandoned statewide class); *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 705 (E.D. Mo. 2002) ("[Defendants] paid both classes of plaintiffs more in the instant global settlement out of a desire to obtain 'total peace' than they would have paid either group plaintiffs individually.").

Here, certifying a nationwide class covering all multiple listing services is warranted for several reasons. First, the impact of the antitrust harm is nationwide, so a nationwide settlement is justified. Second, Plaintiffs have conducted extensive discovery into the alleged nationwide

conspiracy and have thoroughly litigated the claims, providing a robust factual record on which to assess the claims and base negotiations, including expert testimony that the alleged conspiracy affected home sales across the country, regardless of which multiple listing service was used. Third, Plaintiffs could have made nationwide allegations cover all multiple listing services in this action (and, in fact, did make such allegations in the *Gibson* case). Fourth, a nationwide settlement will conserve judicial and private resources. 7B Wright & Miller, Federal Practice & Procedure § 1798.1 (3d ed. 2005) ("Clearly, a single nationwide class action seems to be the best means of achieving judicial economy."). Fifth, class members will be fully apprised of the settlement class definition through the notice process.

**C.    The Proposed Settlement Class Satisfies Rule 23(a)**

The Settlement Class must satisfy the four requirements of Rule 23(a) and one of the subsections of Rule 23(b). *See Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013); *Burnett v. Nat'l Ass'n of Realtors*, No. 19-cv-00332, 2022 WL 1203100, at *4 (W.D. Mo. Apr. 22, 2022). The Court should grant certification here because the proposed Settlement Class satisfies Rule 23(a) and (b)(3). Provisional certification will allow the Settlement Class to receive notice of the Settlement and its terms, including the rights of Class Members to submit a claim and recover a class award if the Settlement is finally approved, to object to and/or be heard on the Settlement's fairness at the Fairness Hearing, or to opt out.

**1.    Numerosity**

As set forth in *Burnett* Plaintiffs' previous class certification briefing before this Court, Rule 23(a)(1) requires that "the class be so numerous that joinder of all members is impracticable." "[A] plaintiff does not need to demonstrate the exact number of class members as long as a conclusion is apparent from good faith estimates." *Hand v. Beach Entertainment KC, LLC*, 456 F.

Supp. 3d 1099, 1140 (W.D. Mo. 2020). Although the Eighth Circuit has not established strict requirements regarding the size of a proposed class, *see Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559 (8th Cir. 1982), class sizes as small as forty have satisfied this requirement. *Rannis v. Rechia*, 380 Fed. App'x 646, 651 (9th Cir. 2010).

Here, the Settlement Class Members number in the millions, dispersed across the United States. Moreover, this Court and the *Moehrl* Court previously held that litigation classes that are smaller than the Settlement Class at issue here satisfy the numerosity requirement. *See Burnett*, 2022 WL 1203100, at *19; *Moehrl v. Nat'l Ass'n of Realtors*, No. 19-cv-01610, 2023 WL 2683199, at *11 (N.D. Ill. Mar. 29, 2023). Thus, the Settlement Class plainly satisfies Rule 23(a)(1)'s numerosity requirement.

### 2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Plaintiffs must show that resolution of an issue of fact or law "is central to the validity of each" class member's claim; "[e]ven a single [common] question will" satisfy the commonality requirement. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 359 (2011); *see also Paxton*, 688 F.2d at 561 (8th Cir. 1982) ("The rule does not require that every question of law or fact be common to every member of the class"). "In the antitrust context, courts have generally held that an alleged conspiracy or monopoly is a common issue that will satisfy Rule 23(a)(2) as the singular question of whether defendants conspired to harm plaintiffs will likely prevail." *D&M Farms v. Birdsong Corp.*, No. 2:19-cv-463, 2020 WL 7074140, at *3 (E.D. Va. Dec. 1, 2020).

Here, the Court previously held that there are many issues common to the *Burnett* classes, including (1) whether Defendants engaged in a conspiracy to artificially inflate the cost of commissions in residential real estate transactions; (2) whether the conspiracy violates Section 1

of the Sherman Act; (3) the duration, scope, extent, and effect of the conspiracy; (4) whether a per se or rule of reason analysis should apply; and (5) whether Plaintiffs and other members of the Classes are entitled to, among other things, damages, and/or injunctive relief. *See Burnett*, 2022 WL 1203100, at *5. Similarly, the *Moehrl* Court found that the commonality requirement was met based on the common question "whether Defendants conspired to artificially inflate the buyer-broker commissions paid by the class by adopting the Challenged Restraints, in violation of § 1 of the Sherman Act." *Moehrl*, 2023 WL 2683199, at *11. These common issues exist with respect to the Settlement Class as they did with respect to the classes initially certified in the *Burnett* and *Moehrl* actions. *See, e.g.*, *Hughes v. Baird & Warner, Inc*, No. 76-cv-3929, 1980 WL 1894, at *2 (N.D. Ill. Aug. 20, 1980) ("The obvious question of fact common to the entire class is whether or not a conspiracy existed. This question will most probably predominate the entire lawsuit."). In particular, the conduct of NAR and brokerages such as HSA that is being challenged generally centers on rules adopted nationwide and applying to Realtors nationwide.

### 3. Typicality

Rule 23(a)(3) requires that the class representatives' claims be "typical" of Class Members' claims. "The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995); *Burnett*, 2022 WL 1203100, at *6. Rule 23(a)(3) "requires a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff." *Donaldson v. Pillsbury Co*., 554 F.2d 825, 830 (8th Cir. 1977). "In the antitrust context, typicality is established when the named plaintiffs and all class members alleged the same antitrust violations by defendants. Specifically, named plaintiffs' claims are typical in that they must prove a conspiracy, its effectuation, and damages therefrom – precisely what the absent class members

must prove to recover." *Hyland v. Homeservices of Am., Inc.*, No. 3:05-cv-612, 2008 WL 4858202, at *4 (W.D. Ky. Nov. 7, 2008) (internal citations and quotations omitted); *Burnett*, 2022 WL 1203100, at *6.

This Court previously held that *Burnett* Plaintiffs' claims are typical of members of the *Burnett* classes. Similarly, here, Plaintiffs' claims are typical of members of the proposed Settlement Class. Each Settlement Class Member sold a home that was listed on an MLS in the United States. Settlement Class Members' claims arise out of a common course of misconduct by Defendants; they all paid a commission when they sold their homes that was inflated by Defendants' conduct. As such, Rule 23(a)(3) is satisfied.

### 4. Adequacy

Rule 23(a)(4) requires that, for a case to proceed as a class action, the court must find that "the representative parties will fairly and adequately protect the interests of the class." This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157–58 n.13 (1982)). For a conflict to defeat class certification, the conflict "must be more than merely speculative or hypothetical," but rather "go to the heart of the litigation." *Gunnells*, 348 F.3d at 430-31 (citation omitted).

As with the classes earlier certified in the Actions, *Burnett*, 2022 WL 1203100, at *1; *Moehrl*, 2023 WL 2683199, at *11, there is no conflict here; the interests of Plaintiffs are aligned with those of Settlement Class Members. Plaintiffs, like all Settlement Class Members, share an overriding interest in obtaining the largest possible monetary recovery and the most effective practice changes from HSA. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) ("[S]o long as all class members are united in asserting a common right, such as

achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes."). Moreover, because any non-nationwide settlement would have left HSA exposed to litigation involving claims exceeding its ability to pay, the only feasible means for Plaintiffs to obtain *any settlement at all* was to settle on a nationwide basis on behalf of the entire Settlement Class. Finally, Plaintiffs are not afforded any special or unique compensation by the proposed Settlement Agreements. As such, Rule 23(a)(4) is satisfied.

## D. The Proposed Settlement Class Satisfies Rule 23(b)(3)

Once Rule 23(a)'s four prerequisites are met, Plaintiffs must demonstrate that the proposed Settlement Class satisfies Rule 23(b)(3). Specifically, Plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiffs have done so.

### 1. Predominance

"The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation . . . and goes to the efficiency of a class action as an alternative to individual suits." *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 479 (8th Cir. 2016) (internal citations omitted). The predominance question at class certification is not whether Plaintiffs have already proven their claims through common evidence. *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 618 (8th Cir. 2011). Rather it is whether questions of law or fact capable of resolution through common evidence predominate over individual questions. *Id.*

"[W]hether a proposed class is sufficiently cohesive to satisfy Rule 23(b)(3) is informed by whether certification is for litigation or settlement." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 558 (9th Cir. 2019). "[T]he predominance requirement is relaxed in the settlement

context." *In re Pre-Filled Propane Tank Antitrust Litig.*, No. 14-02567, 2019 WL 7160380, at \*4 (W.D. Mo. Nov. 18, 2019); *see also Holt v. CommunityAmerica Credit Union*, No. 4:19-cv-00629, 2020 WL 12604383, at \*4 (W.D. Mo. Sept. 4, 2020). When a class is being certified for settlement, "a district court need not inquire whether the case, if tried, would present intractable management problems." *Amchem*, 521 U.S. 591 at 620. Therefore, as courts in this circuit recognize, "When a class is being certified for settlement, the Court need only analyze the predominance of common questions of law and the superiority of class action for fairly and effectively resolving the controversy; it need not examine Rule 23(b)(3)(A–D) manageability issues, because it will not be managing a class action trial. *In re Zurn Pex Plumbing Prod. Liab. Litig.*, No. 08-MDL-1958, 2013 WL 716088, at \*5 (D. Minn. Feb. 27, 2013). For example, in *Zurn Pex*, the district court found that common issues predominated because class representatives and members of the settlement class all sought to remedy a "shared legal grievance." *Id.*

Indeed, the Eighth Circuit, in rejecting objections to another class action settlement, stated that "the interests of the various plaintiffs do not have to be identical to the interests of every class member." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999). Instead, the Eighth Circuit emphasized that certification of a settlement class was appropriate where "all of the plaintiffs seek essentially the same things: compensation for damage already incurred, restoration of property values to the extent possible, and preventive steps to limit the scope of future damage." *Id.*

Here, all Plaintiffs seek to remedy the same grievance—widespread conduct by NAR and brokerages throughout the United States that has resulted in supracompetitive broker commission rates. This conduct includes nationwide policies enacted by NAR and carried out by brokerages, including nationwide MLS rules that mandate blanket unilateral offers of compensation to

cooperating brokers that, before the NAR Settlement, existed in MLSs throughout the United States. All Plaintiffs seek the same relief—compensation for the higher broker rates that they have had to pay, as well as systemic reforms that address the underlying conduct.

Common issues also predominate for each element that Plaintiffs must prove to prevail in an antitrust case: (1) a violation of the antitrust laws; (2) the impact of the unlawful activity; and (3) measurable damages. *See, e.g.*, *Burnett*, 2022 WL 1203100, at *10. First, as discussed above, all members of the Settlement Class share the same legal grievance—a violation of the antitrust laws by Defendants. Second, this Court has already recognized that "the fact of antitrust impact can be established through common proof . . . ." *Burnett*, 2022 WL 1203100, at *11 (quoting *In re Nexium Antitrust Litig.*, 777 F.3d 9, 18 (1st Cir. 2015)). *Burnett* and *Moehrl* Plaintiffs have already "shown the existence of common questions concerning antitrust impact that can be answered with common evidence," *Moehrl*, 2023 WL 2683199, at *19; *Burnett*, 2022 WL 1203100, at *12, including expert opinions, analyses of residential real estate transactions in foreign benchmark countries, and transaction data from Defendants and MLSs. At bottom, evidence of impact from the fact that commissions in the United States are higher than international markets is common to the nationwide settlement class. Third, all or nearly all members of the Settlement Class have been damaged by paying inflated commissions as a result of the Challenged Rules or other similar rules or by paying any commission to a buyer broker. The experts in both the *Burnett* and *Moehrl* actions presented reliable methods of measuring damages as the difference between the amount Class Members paid for buyer broker commissions in the actual world versus what they would have paid in the but-for world. The same type of methodology can be used for the broader Settlement Class.

### 2. Superiority of a Class Action

In addition to the predominance of common questions, Rule 23(b)(3) requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Factors relevant to the superiority of a class action under Rule 23(b)(3) include: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

In this case, the first three factors weigh heavily in favor of class certification. First, Class Members have little economic incentive to sue individually based on the amount of potential recovery involved, and any Settlement Class Member who wishes to opt out will have an opportunity to do so. Second, there are few known existing individual lawsuits filed by Settlement Class Members. Third, judicial efficiency is served by approving the Settlement. It would be inefficient—for both the Court and the parties—to engage in millions of individual trials involving similar claims. "Requiring individual Class Members to file their own suits would cause unnecessary, duplicative litigation and expense, with parties, witnesses and courts required to litigate time and again the same issues, possibly in different forums." *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. at 240.

Finally, the Supreme Court has found that when certifying a settlement class "a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. Such is the case here. If approved, the Settlement Agreements would obviate the need for

a trial against HSA, and thus questions concerning that trial's manageability are irrelevant. Accordingly, the Court should certify the Settlement Class.

## V.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

Federal Rule of Civil Procedure 23(e) sets out a two-part process for approving class settlements. This case is at the first stage of the approval process, often called "preliminary approval," where the Court decides if it is "likely" to approve the Settlement such that notice of the Settlement should be sent to the class. Fed. R. Civ. P. 23(e)(1)(B). At this stage, the Court does not make a final determination of the merits of the proposed Settlement. Full evaluation is made at the final approval stage, after notice of the Settlement has been provided to the members of the class and those class members have had an opportunity to voice their views. At this first stage, the parties request that the Court grant "preliminary approval" of the Settlement and order that notice be directed to the Settlement Class.

As a general matter, "the law strongly favors settlements. Courts should hospitably receive them." *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990) (noting it is especially true in "a protracted, highly divisive, even bitter litigation"). Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 Newberg on Class Actions § 11.41; *see also Petrovic*, 200 F.3d at 1148 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor."); *Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015) ("A settlement agreement is 'presumptively valid.'" (quoting *In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013)); *Sanderson v. Unilever Supply Chain, Inc.*, 10-cv-00775-FJG, 2011 WL 5822413, at *3 (W.D. Mo. Nov. 16, 2011) (crediting the

judgment of experienced class counsel that a settlement was fair, reasonable, and adequate). The presumption in favor of settlements is particularly strong "in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005).

The standard for reviewing a proposed settlement of a class action is whether it is "fair, reasonable, and adequate." *Wireless II*, 396 F.3d at 932. The Eighth Circuit has set forth four factors that a court should review in determining whether to approve a proposed class action settlement: "(1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement." *Id.* (citing *Grunin*, 513 F.2d at 124; *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988)). "The views of the parties to the settlement must also be considered." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995).

### A.     The Merits of Plaintiffs' Cases, Weighed Against the Terms of the Settlement

The parties naturally dispute the strength of their claims and defenses. The Settlement reflects a compromise based on the parties' educated assessments of their best-case and worst-case scenarios, and the likelihood of various potential outcomes. Plaintiffs' best-case scenario is prevailing and recovering on the merits at trial in *Moehrl*, *Gibson*, *and Umpa*, and upholding their award on appeal in those cases, as well as in this case. But "experience proves that, no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict, particularly in complex antitrust litigation." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003). The same is true for post-trial motions and appeals. And being liable alone for the full amount of alleged damages in any one of these cases would bankrupt HSA.

Against this risk, the Settlement provides for a recovery of $250 Million from HSA. As discussed in detail below, the Settlement is supported by the financial condition of HSA, which lacks the ability to pay the full damages sought in any one of the Actions.

The Settlement's terms were reached following arm's-length negotiations that occurred over a period of multiple years, including nearly six months of intensive negotiations, and involved the assistance of multiple well-respected mediators. Plaintiffs held several mediation sessions with HSA as well as several intensive direct negotiations, several of which were attended by senior HSA executives including its General Counsel and CEO. (Dirks Decl. ¶ 14). "When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable." *Marcus v. Kansas*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002).

### B. HSA's Financial Condition

The Settlement is fair and reasonable in light of HSA's financial condition and its inability to satisfy even the *Burnett* judgment. (Berman Decl. ¶ 11; Dirks Decl. ¶¶ 14-15). Pursuant to Federal Rule of Evidence 408, Plaintiffs received and carefully analyzed HSA's financial records, including performing an analysis by one of Plaintiffs' counsel, a certified public accountant with training in financial forensics. (Berman Decl. ¶ 11; Dirks Decl. ¶ 14). The monetary settlement was reached with due consideration for HSA's limited ability to pay. (*Id.*) Furthermore, the entire real estate industry has faced significant financial headwinds over the past 2 years due to challenging financial conditions including high interest rates. In 2023, just 4.09 million existing homes were sold in the United States, the lowest number since 1995.[6] This has caused

---

[6] Brooklee Han, *Just 4.09 million existing homes were sold in 2023*, HOUSINGWIRE (Jan. 19, 2024), https://www.housingwire.com/articles/just-4-09-million-existing-homes-were-sold-in-

understandable financial difficulties for Defendants, including HSA, whose businesses are directly tied to the number of home sales.

### C. The Complexity and Expense of Further Litigation

Plaintiffs' claims raise numerous complex legal and factual issues under antitrust law. This is reflected in the parties' voluminous briefing to date, which includes extensive class certification and summary judgment briefing in both *Moehrl* and *Burnett*, as well as post-trial briefing in *Burnett*. In addition, the parties have engaged in extensive appellate briefing, including (rejected) Rule 23(f) petitions in both *Moehrl* and *Burnett*, as well as two separate appeals in the *Burnett* litigation concerning arbitration issues. Furthermore, even after the *Burnett* trial, HSA was poised to mount a strenuous appeal. In *Moehrl*, trial against HSA was imminent. By contrast, the Settlement ensures a recovery to the Class that will be allocated and distributed in an equitable manner. In light of the many uncertainties still pending in the litigation, an equitable and certain recovery is highly favorable, and weighs in favor of approving the proposed Settlement. (Berman Decl. ¶¶ 9-11; Dirks Decl. ¶¶ 6, 14-17).

### D. The Amount of Opposition to the Settlement

The Settlement Class Representatives in both *Moehrl* and *Burnett* have approved the terms of the Settlement. (Berman Decl. ¶ 12, 19; Dirks Decl. ¶ 18). Notice regarding the Settlement has not yet been distributed. In the event any objections are received after notice is issued, they will be addressed by Plaintiffs' counsel as part of the final approval process.

---

2023/#:~:text=Existing%20home%20sales%20dropped%20to,sold%2C%20the%20fewest%20since%201995.

### E. The Settlement Also Satisfies the Rule 23(e) Factors

In addition to the *Van Horn* factors used by the Eighth Circuit, courts in this district also routinely consider the overlapping Rule 23(e)(2) factors:

> (A) the Class Representatives and Class Counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the Class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the Class, including the method of processing Class-Member claims;
> >
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> >
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The Settlement satisfies each of these factors. First, Settlement Class Representatives and Class Counsel have adequately represented the Class. Indeed, both this Court and the *Moehrl* Court previously appointed Settlement Class Counsel as class counsel on behalf of the *Burnett* and *Moehrl* classes at the class certification stage. Both courts have also previously appointed the proposed Settlement Class Representatives as representatives on behalf of the respective classes. *Burnett*, 2022 WL 1203100; *Moehrl*, 2023 WL 2683199. Second, as discussed above, the Settlement was negotiated at arm's length over a lengthy period of time. Third, for the reasons stated above, the relief provided to the Class is adequate. The Settlement provides for a significant financial recovery for the Settlement Class, especially considering HSA's limited financial resources. Furthermore, the Settlement includes practice changes that benefit consumers. Fourth, the Settlement treats Class Members fairly and equitably relative to each other.

27

## VI.  THE COURT SHOULD APPOINT CO-LEAD CLASS COUNSEL FOR THE CERTIFIED CLASSES IN *BURNETT* AND *MOEHRL* AS CO-LEAD COUNSEL FOR THE SETTLEMENT CLASS

Fed R. Civ. P. 23(g) requires a court certifying a case as a class action to appoint class counsel. Plaintiffs respectfully request that the Court appoint *Burnett* and *Moehrl* Lead Counsel as Settlement Class Counsel, namely Ketchmark & McCreight, Boulware Law LLC, Williams Dirks Dameron LLC, Cohen Milstein Sellers & Toll PLLC, Hagens Berman Sobol Shapiro LLP, and Susman Godfrey LLP. Proposed Settlement Class Counsel are highly experienced in the areas of antitrust and class action litigation. They have tried antitrust class actions to verdict and prosecuted and settled numerous others. (Berman Decl. ¶¶ 4-6; Dirks Decl. ¶¶ 2-3). Moreover, as detailed above, they have diligently prosecuted this case for five years, handling, among other things, motions to dismiss, protracted fact discovery from parties and non-parties, review and synthesis of millions of pages of documents, expert discovery, discovery disputes, class certification, and depositions of fact and expert witnesses, and prevailed in the *Burnett* trial. (Berman Decl. ¶ 14-15; Dirks Decl. ¶¶ 4, 11-13). Both this Court and the *Moehrl* Court have already recognized Lead Counsels' diligent prosecution of their cases by appointing them as Class Counsel for the *Burnett* and *Moehrl* Classes, respectively, as part of their rulings on class certification. Class Counsel have participated in a lengthy negotiation process to achieve the best possible result for the classes.

## VII.  CLASS NOTICE SHOULD PROCEED IN A SUBSTANTIALLY SIMILAR MANNER AS THE EARLIER SETTLEMENTS

Rule 23(e) requires that, prior to final approval of a settlement, notice must be provided to class members who would be bound by it. Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

When notice is sent, the process will be substantially similar to the notice provided with

the Anywhere, RE/MAX and Keller Williams Settlements—which the Court already approved. (See Keough Declaration ¶ 11); *see also Burnett* ECF Doc. 1321 (approving notice plan)). As this Court previously held, JND's proposed notice plan provides for the "best notice practicable and satisfies the requirements of due process." Doc. 1321; s*ee also In re Packaged Seafood Prod. Antitrust Litig.,* No. 15-MD-2670, 2023 WL 2483474, at *2 (S.D. Cal. Mar. 13, 2023) (approving notice plan with estimated reach of at least 70% and observing that "[c]ourts have repeatedly held that notice plans with similar reach satisfy Rule 23(c)(2)(B)" (citing cases)). This plan, pursuant to Rule 23(c)(2)(B), provides the "best notice practicable" to all potential Settlement Class Members who will be bound by the proposed Settlement. Accordingly, the Court should appoint JND as the notice administrator and authorize the proposed notice plan contained herein.

## CONCLUSION

The Settlement Agreements provide an immediate, substantial, and fair recovery for the Settlement Class. Accordingly, Plaintiffs respectfully request that the Court enter an order: (1) preliminarily approving the Settlement; (2) certifying the Settlement Class for settlement purposes only; (3) appointing Plaintiffs as Settlement Class Representatives; (4) appointing *Burnett* Class Counsel and *Moehrl* Class Counsel as Settlement Class Counsel; and (5) ordering that notice be directed to the Class in a manner substantially similar to that issued in conjunction with the Anywhere, RE/MAX and Keller Williams Settlements.

August 7, 2024

Respectfully Submitted,

*/s/ Robert A. Braun*

Benjamin D. Brown (*pro hac vice*)
Robert A. Braun (*pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
(202) 408-4600
bbrown@cohenmilstein.com
rbraun@cohenmilstein.com

Steve W. Berman (*pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 623-7292
steve@hbsslaw.com

Rio S. Pierce (*pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
(510) 725-3000
riop@hbsslaw.com

Marc M. Seltzer (*pro hac vice*)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
(310) 789-3100
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

*/s/ Eric L. Dirks*

Eric L. Dirks MO #54921
Matthew L. Dameron MO #52093
**WILLIAMS DIRKS DAMERON LLC**
1100 Main Street, Suite 2600
Kansas City, Missouri 64105
Tel:     (816) 945-7110
Fax:    (816) 945-7118
dirks@williamsdirks.com
matt@williamsdirks.com

Brandon J.B. Boulware MO # 54150
Jeremy M. Suhr MO # 60075
Erin D. Lawrence MO # 63021
**BOULWARE LAW LLC**
1600 Genessee, Suite 416
Kansas City, MO 64102
Tel:     (816) 492-2826
brandon@boulware-law.com
jeremy@boulware-law.com
erin@boulware-law.com

Michael Ketchmark MO # 41018
Scott McCreight MO # 44002
**KETCHMARK AND MCCREIGHT P.C.**
11161 Overbrook Rd. Suite 210
Leawood, KS 66211
Tel:     (913) 266-4500
mike@ketchmclaw.com
smccreight@ketchmclaw.com

***Attorneys for the Settlement Class***