IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| RHONDA BURNETT, JEROD BREIT, HOLLEE ELLIS, FRANCES HARVEY, and JEREMY KEEL, on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br> v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC, RE/MAX LLC, and KELLER WILLIAMS REALTY, INC.,<br><br>     Defendants. | Case No. 19-CV-00332-SRB |

**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES REGARDING THE NAR AND HOMESERVICES SETTLEMENTS AND <u>SUGGESTIONS IN SUPPORT THEREOF</u>**

i
Case 4:19-cv-00332-SRB   Document 1535   Filed 09/13/24   Page 1 of 18

# INTRODUCTION

After years of hard-fought litigation in multiple lawsuits, Plaintiffs have achieved proposed nationwide settlements now totaling at least $998.375 million[1] in monetary relief, in addition to significant groundbreaking changes in the real estate marketplace that will provide very substantial benefits to millions of Americans in the future. These include settlements with the Anywhere, RE/MAX, and Keller Williams defendants that this Court finally approved in this case[2] settlements with nine defendant families that this Court preliminarily approved in *Gibson*,[3] and settlements with NAR and the HomeServices defendants that this Court has also preliminarily approved.[4]

Through this motion, Plaintiffs seek attorneys' fees of one-third of the $679.275 million obtained for the class pursuant to the NAR and HomeServices settlements and recovery of certain case costs and expenses.[5] Plaintiffs' final approval motion for the NAR and HomeServices Settlements will be heard on November 26, 2024.[6] As with the other settlements that Plaintiffs have obtained, the $679.275 million case settlement funds created by the NAR and HomeServices settlements are non-reversionary. To achieve this result, Class Counsel worked intensively for more than five years in *Moehrl*, *Burnett*, *Umpa*, and *Gibson* ("the litigation"). Class Counsel faced substantial risk representing the Settlement Classes. They worked on a fully contingent basis, investing over 107,500 hours of labor through August 31, 2024, and advancing over $16 million

---

[1] The NAR settlement includes a mechanism for the further benefit to the class for multiple listing services and brokerages to "opt in" to the settlement, including by making additional settlement payments beyond the $418 million to be paid by NAR. To date, additional settlement amounts of $11.275 million have been reached with several other opt in settlements awaiting signature. Thus, the Settlement Fund will continue to grow.
[2] *See* Doc. 1487.
[3] *See Gibson* Docs. 163, 297, 348.
[4] *See* Doc. 1460; 1520.
[5] As discussed in note 1, additional settlements under to the NAR Settlement have been reached with opt in brokers and MLSs in the amount of $11.275 million in additional relief; Plaintiffs anticipate this number to grow modestly. Plaintiffs are entitled to one-third of the increased fund. *See* Declaration of Professor Robert Klonoff ("Klonoff Decl."), Exhibit 1 at pg. 1, n 2. This motion applies to any such additional amounts.
[6] *See* Docs. 1460-61, 1520.

in out-of-pocket costs and expenses without any guarantee of success. They did so despite this litigation having no pre-ordained path to a recovery. Indeed, Class Counsel faced well-funded and entrenched opponents represented by *at least thirty* of the most prominent defense firms in the country.

Class Counsel are a diverse group of well-respected antitrust, complex litigation, and trial lawyers who spearheaded the litigation. In doing so, Class Counsel did not have the benefit of any governmental prosecutions or preexisting litigation brought by other private attorneys. These settlements are the independent product of Class Counsel's wholly contingent, risky, costly, and time-intensive work seeking relief for the classes they represent against well-resourced Defendants.

This Circuit's precedent applied to the facts here support Class Counsel's requests for attorneys' fees representing one-third of the settlement funds and for reimbursement of case costs and expenses. In the Eighth Circuit, a fee based on a percentage of the fund recovered is the favored approach for calculating attorney's fees in contingent representation, including class actions. The percentage of the fund approach aligns Class Counsel's interests with those of the class because the greater the recovery Class Counsel obtains, the greater the fee to which Class Counsel is entitled. As courts have recognized, it incentivizes counsel to continue pursuing additional claims beneficial to the class even where, as here, counsel have already obtained substantial recoveries for the class.

For these reasons, Class Counsel respectfully request that the Court approve a fee of one-third of the settlement funds and reimbursement of current expenses in the amount of $16,528,352.83 that have not already been reimbursed in connection with prior settlements.

# FACTUAL BACKGROUND

The background of the litigation and settlements is well-known to the Court and is described in Plaintiffs' motions for preliminary settlement approval. *See* Docs. 1192 (Anywhere and RE/MAX); 1371 (Keller Williams); 1458 (NAR); 1518 (HomeServices). The settlements are non-reversionary, meaning the entire amount is for the benefit of the class and upon approval no amount will revert to the Settling Defendants regardless of the claims submitted. Moreover, the settlements include landmark practice change relief – including the elimination of the Mandatory Offer of Compensation Rule. To achieve these results for the Class, Class Counsel devoted more than 107,500 hours of work through August 31, 2024, and advanced over $16 million of their own money to pay for necessary costs and expenses on behalf of the class. Counsel continues to work on behalf of the Class even after achieving these settlements.

## I. CLASS COUNSEL PERFORMED EXTRAORDINARY WORK AND ASSUMED SIGNIFICANT RISK ON A CONTINGENT BASIS ON BEHALF OF THE SETTLEMENT CLASS TO OBTAIN THE SETTLEMENTS.

Plaintiffs allege that the National Association of Realtors and other entities agreed to engage in anticompetitive conduct that had the effect of inflating real estate broker commissions, including by following and enforcing NAR's Mandatory Offer of Compensation Rule and associated restraints promulgated by NAR and its members. Many of these Defendants, including NAR and HomeServices fought the litigation at every conceivable step.[7] To date, Defendants in the litigation have been represented by at least thirty defense firms – including many of the most highly-regarded firms in the world. Dirks Decl. at ¶ 13. These firms have extensively litigated the

---

[7] *See generally* Declaration of Eric L. Dirks ("Dirks Decl.") for an overview of the procedural history and efforts to reach the Settlements. Attached as Ex. 2. Also attached are the declarations of Michael S. Ketchmark (Ex. 3), Brandon J.B. Boulware (Ex. 4), Steve W. Berman (Ex. 5), Marc M. Seltzer (Ex. 6), Robert A. Braun (Ex. 7), Daniel Hedlund (Ex. 8), George Farah (Ex. 9), Benjamin Elga (Ex. 10), Vildan Teske (Ex. 11), Russell Marsh (Ex. 12). These declarations cover many of the same topics set out in the Dirks Decl. as well as each firm's individual lodestar and expense amounts.

cases, filing jurisdictional challenges, motions to compel arbitration, motions to dismiss, *Daubert* motions, challenges to class certification, summary judgment motions, several appeals, and—in the case of Keller Williams, NAR and HomeServices—even through verdict in a jury trial. *Id.* at ¶¶ 14, 20.

Moreover, in undertaking this substantial commitment on behalf of the Class, Class Counsel assumed significant risk. There was no roadmap of previous cases or settlements, and no assistance from governmental entities or regulators through parallel litigation. *Id.* at ¶ 17. Despite the long odds they faced, Class Counsel achieved remarkable success. They obtained favorable rulings on key issues including on class certification, summary judgment, and *Daubert*. *Id.* at ¶¶ 14, 20. However, these successes required years of briefing, reviewing and analyzing millions of pages of documents, retention of at least 20 experts and consultants, and conducting approximately 180 depositions to achieve this result. *Id.* at ¶ 15-16. These efforts are etched in the litigation. *Burnett*, *Moehrl*, *Umpa,* and *Gibson* have over 2,400 docket entries as of the date of this filing.[8]

## ARGUMENT

### I. THE REQUESTED ATTORNEYS' FEES ARE REASONABLE UNDER THE FACTS AND CIRCUMSTANCES PRESENTED HERE.

Under well-established Eighth Circuit law, a fee equal to one-third of the settlement funds should be approved.

---

[8] Moreover, Plaintiffs' Counsel did not stop with their trial victory in *Burnett*. They worked to maximize the recovery for the Class by filing the *Gibson* and *Umpa* complaints against additional Defendants. The *Moehrl* and *Burnett* actions originally included claims against five defendant families on behalf of home sellers who listed their properties on 24 covered MLSs. The *Gibson* case, by named Plaintiffs Don Gibson, Lauren Criss, John Meiners, and Daniel Umpa, advances similar claims against additional Defendants on behalf of a nationwide class of home sellers.

### A. Contingent Fees Are Awarded Using the Percentage of the Fund Approach.

Courts typically use the "percentage-of-the-fund method" to award attorneys' fees from a common fund. *See, e.g.*, *Rawa v. Monsanto Co.*, 934 F.3d 862, 870 (8th Cir. 2019). "In the Eighth Circuit, use of a percentage method of awarding attorney fees in a common-fund case is not only approved, but also 'well established,'" *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005) (quoting *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999)), or even "preferable,'" *Barfield v. Sho-Me Power Elec. Co-op.*, No. 11-CV-4321, 2015 WL 3460346, at *3 (W.D. Mo. June 1, 2015) (quoting *West v. PSS World Med., Inc.*, No. 13-CV-574, 2014 WL 1648741, at *1 (E.D. Mo. Apr. 24, 2014)). The percentage method aligns the interests of the attorneys and the class members by incentivizing counsel to maximize the class's recovery. *See Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 245 (8th Cir. 1996) ("[T]he Task Force [established by the Third Circuit] recommended that the percentage of the benefit method be employed in common fund situations.") (citing *Court Awarded Attorneys Fees, Report of the Third Circuit Task Force*, 108 F.R.D. 237, 255 (3rd Cir. 1985)).[9] The Court should therefore use the percentage approach to award fees in this case.

### B. A Fee Equal to One-Third of the Fund is Reasonable.

This Court and other courts within the Eighth Circuit confirm that one-third of the common fund is an appropriate amount for class counsels' fees in complex class actions, including antitrust litigation. Eighth Circuit and Missouri courts "have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund in other class actions." *Huyer v. Buckley*, 849

---

[9] In contrast, undue focus on hours or hourly rates "creates an unanticipated disincentive to early settlements, tempts lawyers to run up their hours, and compels district courts to engage in a gimlet-eyed review of line-item fee audits." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (cleaned up).

F.3d 395, 399 (8th Cir. 2017) (quoting *In re Xcel,* 364 F. Supp. 2d at 998); *see also Rawa*, 934 F.3d at 870 ("courts have frequently awarded attorneys' fees ranging up to 36% in class actions") (quoting *Huyer*, 849 F.3d at 399); *Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1064 (D. Minn. 2010) (holding fee award of 33% reasonable); *In re U.S. Bancorp Litig.,* 291 F.3d 1035, 1038 (8th Cir. 2002) (affirming fee award representing 36% of the settlement fund as reasonable)); *In re Xcel,* 364 F.Supp.2d at 998 (collecting cases demonstrating that district courts routinely approve fee awards between 25% and 36%).

Just recently, this Court approved one-third of the fund in a settlement valued at $325 million. *See Rogowski v. State Farm Life Ins. Co.*, No. 22-CV-203, 2023 WL 5125113, *4-5 (W.D. Mo. April 18, 2023). Thus, judges in the Western District of Missouri and the Eighth Circuit often apply the one-third-of-the-fund fee calculation, even to large settlements.

In doing so, courts typically consider some or all of the relevant factors listed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). *See In re Target Corp. Customer Data Security Breach Litig.*, 892 F.3d 968, 977 (8th Cir. 2018). The *Johnson* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*In re Target,* 892 F.3d at 977 n.7. To be sure, "[m]any of the *Johnson* factors are related to one another and lend themselves to being analyzed in tandem." *Swinton v. SquareTrade, Inc.*, 454 F. Supp. 3d 848, 886 (S.D. Iowa 2020). Therefore, courts in the Eighth Circuit often focus on the most relevant *Johnson* factors in evaluating fee requests. *See Huyer*, 849 F.3d at 398–400 (affirming trial court's award of one-third of the common fund after review of Johnson factors 1-

5 only); *In re Xcel*, 364 F. Supp. 2d at 993; *Tussey v. ABB, Inc.*, No. 06-CV-4305, 2019 WL 3859763, at *2 (W.D. Mo. Aug. 16, 2019); *Yarrington*, 697 F. Supp. 2d at 1062; *Hardman v. Bd. of Educ. of Dollarway, Arkansas Sch. Dist.*, 714 F.2d 823, 825 (8th Cir. 1983). The *Johnson* factors favor Plaintiffs request here, as Prof. Klonoff has explained. *See, e.g.,* Klonoff Decl., Exhibit 1 at ¶¶ 24, 34, 39.

### 1. Class Counsel worked on a contingent basis, despite the numerous risks and time commitments. (Factors 1, 4, 6-7 and 10)

Here, Class Counsel's time and labor invested was substantial and necessarily precluded other work. Dirks Decl. at ¶¶ 17-18. Prosecuting the litigation required over $92 million in lodestar through August 31, 2024. Dirks Decl. at ¶ 42. In addition to the substantial number of hours it took to reach the Settlements, Class Counsel were also required to advance $16,528,352.83 of their own money toward the litigation through August 31, 2024, with more bills coming due every day. Dirks Decl. at ¶ 47. All that work, which precluded other less-risky employment, was the result of Class Counsels' efforts undertaken without any guarantee of payment. Moreover, the litigation faced low odds of early settlements because they challenged practices that were central to the real estate brokerage industry. *See, e.g.*, *How the $1.8 Billion Real-Estate Commissions Lawsuit Came to Be*, Wall Street Journal, November 26, 2023 ("Antitrust cases almost always settle before trial, giving attorneys some assurance they will get paid something. But in this case, the damages were so high and the threat to the industry so existential that plaintiff attorneys thought it unlikely NAR would settle."). Indeed, from the outset, NAR adamantly insisted that the cases were "baseless." *See, e.g.*, *Realtor Group Moves to Dismiss Class Action Lawsuit Alleging Collusion*, Forbes, May 21, 2019 ("According to John Smaby, president of NAR, all three claims have no merit. 'In today's complex real estate environment, REALTORS and Multiple Listing Services promote a pro-consumer, pro-competitive market for home buyers and sellers, contrary to the baseless claims of these class

7

action attorneys,' he said. 'Our filing today shows the lawsuit is wrong on the facts, wrong on the economics and wrong on the law.'").

"Courts have recognized that the risk of receiving little or no recovery is a major factor in awarding attorney fees." *Yarrington*, 697 F. Supp. 2d at 1062 (quoting *In re Xcel*, 364 F. Supp. 2d at 994); Theodore Eisenberg & Geoffrey Miller, *Attorney Fees In Class Action Settlements: An Empirical Study*, 1 J. Emp. L. Studies 27, 27, 38 (2004) ("Fees are also correlated with risk: the presence of high risk is associated with a higher fee, while low-risk cases generate lower fees . . . . [This] is widely accepted in the literature."). "Unless that risk is compensated with a commensurate award, no firm, no matter how large or well-financed, will have the incentive to consider pursuing a case such as this." *Tussey*, 2019 WL 3859763, at *3. "Courts agree that a larger fee is appropriate in contingent matters where payment depends on the attorney's success." *Been v. O.K. Industries, Inc.*, No. 02-CV-285, 2011 WL 4478766, at *9 (E.D. Okla. Aug. 16, 2011). And critically, "[t]he risks plaintiffs' counsel faced must be assessed as they existed in the morning of the action, not in light of the settlement ultimately achieved at the end of the day." *In re Xcel*, 364 F. Supp. 2d at 994.

This was among the riskiest litigation Class Counsel have ever prosecuted, due to the possibility of no recovery, the scale of the litigation, the deeply embedded nature of the practices and issue, and the investment of time and money required to pursue the litigation and reach settlements or other judgment against well-resourced defendants. Dirks Decl. at ¶ 22; *see also Caligiuri v. Symantec Corp.*, 855 F.3d 860, 866 (8th Cir. 2017) (affirming fee award where lower court reasoned, in part, that "[p]laintiffs' counsel, in taking this case on a contingent fee basis, was exposed to significant risk"); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 17-md-2800, 2020 WL 256132, at *33 (N.D. Ga. Mar. 17, 2020) ("This action was prosecuted on a

contingent basis and thus a larger fee is justified."). And that risk continued to grow throughout the years of litigation through trial, with every hour of work and every dollar of expenses compounding the risk to Class Counsels' investment. Dirks Decl. at ¶ 22. The riskiness of the litigation is also confirmed by dearth of similar cases filed by other attorneys until after the *Burnett* trial verdict and the actions by attorneys in the few cases that were filed to "slow-walk" them (thereby avoiding a significant investment on their part) pending the outcome of the litigation. In sum, "the extraordinary level of work and result achieved here in the face of enormous risk warrants a substantial fee percentage." Klonoff Decl. at ¶ 88.

### 2. The claims were difficult to prosecute. (Factor 2)

Because antitrust claims are especially complex, expensive, and difficult to prosecute, courts have recognized that antitrust settlements attorneys' fees equal to one-third of the fund are often appropriate in antitrust suits. *See In re Peanut Farmers Antitrust Litig.,* No. 19-CV-00463, 2021 WL 9494033, at *6 (E.D. Va. Aug. 10, 2021) ("[A]n award of one-third is also common in antitrust class actions.") (citing cases);[10] *In re Urethane Antitrust Litig.*, No. 04-CV-1616, 2016 WL 4060156, at *5 (D. Kan. July 29, 2016) (awarding one-third of $835 million settlement, noting "a one-third fee is customary"); *In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 100, 106 (E.D. Pa. 2013) (awarding one-third of the settlement fund as attorneys' fees in which court relied upon the fact that class counsel had litigated a number of hotly contested *Daubert* challenges). *See also* Klonoff Decl. at ¶¶ 41.

Here it is undeniable that the antitrust claims at issue in the litigation were challenging to prosecute. As the Court knows, no stone has been left unturned by numerous Defendants, including

---

[10] And observing that "[o]ther courts have determined that a higher percentage rate is appropriate where discovery has been completed and the case is ready for trial." *Id.*

NAR and HomeServices, and challenges have been made to Plaintiffs' case at every stage (*i.e.* motions to dismiss, motions for summary judgment, *Daubert* motions, class certification, efforts to appeal from class certification orders, appeals on arbitration issues, and trial). *See* Dirks Decl. at ¶¶ 14, 20. The case also required extensive discovery, including well over 100 depositions, the production and review of millions of pages of documents, and dozens of expert reports.

### 3. Class Counsel's reputation and skillful resolution of the litigation supports the award. (Factors 3 and 9)

Courts often judge class counsel's skill against the "quality and vigor of opposing counsel . . . ." *In re Charter Commc'ns, Inc.*, MDL No. 1506 All Cases, No. 02-CV-1186, 2005 WL 4045741, at *29 (E.D. Mo. June 30, 2005) (citing *In re IBP, Inc. Sec. Litig.*, 328 F. Supp. 2d 1056, 1064 (D.S.D. 2004)).

Here, Class Counsel faced off against no fewer than *thirty* highly-respected law firms over the course of the litigation. Dirks Decl. at ¶ 13. Although Class Counsel's team includes some of the country's most accomplished class action and trial lawyers, Defendants also hired some of the country's most prominent defense attorneys and firms. This weighs heavily in favor of the requested award. *See* Klonoff Decl. at ¶¶ 56-58.

Class Counsel in their own right are well-known on both a national level and local level. *See generally* Exhibits 2-7. Indeed, trial counsel for the *Burnett* case was named as the most recent Missouri Lawyer of the Year. *See Ketchmark named Lawyer of the Year*, Missouri Lawyers Weekly, December 7, 2023. And Class Counsel for the *Moehrl* case have been repeatedly recognized for their skill and expertise in antitrust litigation. *See, e.g.,* Berman Dec. at ¶ 2; Seltzer Dec. at ¶ 3; Braun Dec. at ¶ 2.

### 4. The percentage requested is supported by other awards under the facts and circumstances of this litigation. (Factors 5 and 12)

In the Eighth Circuit, courts have "frequently awarded attorneys' fees ranging up to 36% in class actions." *Huyer*, 849 F.3d at 399.[11] Courts have recognized that prosecution of antitrust claims should result in a one-third-of-the-fund fee award. *See In re Peanut Farmers*, 2021 WL 9494033, at *6 ("[A]n award of one-third is also common in antitrust class actions.") (citing cases); *In re Urethane*, 2016 WL 4060156, at *5 (awarding one-third of $835 million antitrust settlement, noting "a one-third fee is customary").

Moreover, the requested one-third fee award is equal to or less than what the actual named plaintiffs—those with the most on the line and most involved in the case—agreed to at the outset of the case. The class representatives agreed to fees between 33.3% and 35%. Dirks Decl. at ¶ 28; Berman Dec. at ¶ 6.

These factors also support Plaintiffs' request. Klonoff Decl. at ¶¶ 60-61, 77-78.

### 5. The amount involved and results obtained for the Settlement Class given the risks of the litigation support the percentage requested. (Factor 8)

Here, the settlement funds are entirely in cash and non-reversionary; so, the settlements, plus interest earned until distribution, require no further valuation. In requesting a fee as a percentage of the funds, Class Counsel seek a fee directly proportionate to the degree of monetary success obtained.

Equally important, the Settlements include significant injunctive relief which requires, among other things, for NAR to eliminate the Mandatory Offer of Compensation Rule and for HomeServices Defendants to train their agents that commissions are negotiable. *See* Docs. 1458

---

[11] *See also supra* pp. 6-7.

11

Case 4:19-cv-00332-SRB   Document 1535   Filed 09/13/24   Page 12 of 18

(NAR preliminary approval motion); 1518 (HomeServices preliminary approval motion). The value of this non-monetary relief to consumers is substantial in itself and provides additional justification for the requested fee. *See* Klonoff Decl. at ¶¶ 96-98; Declaration of Dr. Nicholas Economides ("Economides Decl."), Exhibit 13, at ¶¶ 16-17 (opining even conservatively modest decreases in commissions will save consumers billions). *See also National Association of Realtors Verdict Will Send "Shock Waves" Through the Industry,* The Wall Street Journal, November 1, 2023 ("There is no question that Tuesday's nearly $1.8 billion verdict against the National Association of Realtors and brokerage firms is going to send shock waves through the industry. Commissions have stayed pretty stable at about 5% to 6% of the sales price for decades now, despite major technological upheaval in the industry. We may finally start to see those costs for home buyers and sellers go down quite a bit."); *Examining Some of the Big Changes Coming to Real Estate Commissions*, National Public Radio, August 16, 2024 ("Over time, home buyers and sellers are expected to save tens of billions of dollars a year in lower commissions").

This further factor supports an award of one-third of the cash portion of the settlements, particularly given the benefits achieved. Importantly, success—including "exceptional success"—is not measured solely by the maximum damages alleged but must be evaluated against any "unusually difficult or risky circumstances and the size of plaintiffs' recovery." *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1204–05 (S.D. Fla. 2006). Here, the request is supported by both the size of the recovery and the results obtained as compared to the risk of a lesser recovery or none at all. And rather than stop at the *Burnett* and *Moehrl* defendants, Class Counsel continued to prosecute joint and several liability claims against additional Defendants in *Gibson* and *Umpa*. Thus, these and any future settlements or judgments will also benefit the Class.

### C. The Requested Fee Is Reasonable Under a Lodestar Crosscheck.

Although a lodestar crosscheck is "not required" in the Eighth Circuit – *Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017); *PHT Holdings II, LLC v. N. Am. Co. Life & Health Ins.*, 2023 WL 8522980, at *7 (S.D. Iowa Nov. 30, 2023)[12] – performing such a crosscheck here confirms that the requested fee is reasonable and should be approved. As noted above, Class Counsel have spent over 107,500 hours through August 31, 2024 in the litigation. These hours result in an overall lodestar through August 31, 2024 of **$92,338,583**. Dirks Decl. at ¶ 42.

In performing a lodestar crosscheck in litigation involving multiple settlements and multiple cases, the appropriate method is to consider the "holistic approach." *See* Klonoff Decl. at ¶¶ 104-09; *see also In re Capacitors Antitrust Litig.*, 2018 WL 4790575, at *6 (N.D. Cal. Sept. 21, 2018) ("courts typically base fee awards in subsequent settlements on all work performed in the case," based on the reality—applicable here—that "the total work performed by counsel from inception of the case makes each settlement possible."); *In re Automotive Parts Antitrust Litig.*, 2020 WL 5653257, at *3 n.5 (E.D. Mich. Sept. 23, 2020) ("In calculating the lodestar for purposes of the cross-check, it would be impractical to compartmentalize and isolate the work that . . . Class Counsel did in any particular case at any particular time because all of their work assisted in achieving all of the settlements and has provided and will continue to provide a significant benefit to all of the . . . classes.").

The Court previously approved a fee of one-third of the Anywhere, RE/MAX and Keller Williams Settlement. *Burnett*, 2024 WL 2842222, at *17 (W.D. Mo. May 9, 2024). When those

---

[12] "'[T]o overly emphasize the amount of hours spent on a contingency fee case would penalize counsel for obtaining an early settlement and would distort the value of the attorneys' services.'" *Rawa*, 934 F.3d at 870 (quoting *In re Charter Commc'ns*, 2005 WL 4045741, at *18). *Cf. In re T-Mobile Customer Data Security Breach Lit.*, No. 23-2744, 2024 WL 3561874, at *7 (8th Cir. July 29, 2024 (observing a crosscheck is not required but can be warranted "when a megafund case settles quickly").

13

prior settlements are added to the NAR, HomeServices and *Gibson* Settlements, the total monetary settlement value is $998,375,000. One-third of this combined amount is $332,791,666. Thus, the combined fee request, to date, constitutes an approximately 3.6 multiplier on their time. Such a multiplier is well within the range of reasonableness. *See* Klonoff Dec. at ¶¶ 29, 122; *Rawa*, 934 F.3d at 870 (observing a lodestar multiplier of 5.3 is within the bounds of reasonableness); *Huyer v. Buckley*, 849 F.3d 395, 399–400 (8th Cir. 2017) (observing lodestar multipliers of up to 5.6 times class counsel's lodestar to be in the reasonable range for a lodestar crosscheck); *In re T-Mobile Customer Data Security Breach Litigation*, No. 23-2744, 2024 WL 3561874, at *6 (8th Cir. July 29, 2024) (observing that in a case that settled early in the litigation, a multiplier of 5.3 is on the "high" side of reasonableness) (citing *Rawa*, 934 F.3d at 870)); *In re Charter Commc'ns, Inc., Sec. Litig.*, No. 4:02-cv-1186-CAS, 2005 WL 4045741, at *18 (E.D. Mo. Jun. 30, 2005) (finding 5.61 lodestar multiplier reasonable); *In re Syngenta AG MIR 162 Corn Litig.*, 2019 WL 1274813, at *5 (D. Kan. Mar. 20, 2019) ("a multiplier of 3 is well within the range allowed in other cases involving large settlements"). Thus, by this Court's and the Eighth Circuit's own standards, Plaintiffs' request of fees of one-third of the settlement funds is reasonable.

**II.  THE COURT SHOULD APPROVE CLASS COUNSEL'S REQUEST FOR REIMBURSEMENT OF REASONABLY INCURRED EXPENSES.**

"Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement." *Yarrington*, 697 F. Supp. 2d at 1067 (quoting *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996)). Under the Settlements, Class Counsel are entitled to recover their expenses. The costs and expenses through August 31, 2024 were reasonable and necessary in order to reach these Settlements. Dirks Decl. ¶¶ 47-48; *see also* Exhibits 2-12. The total costs associated with the litigation through August 31, 2024 is $16,528,352.83. Of this,

$12,923,266.48 was already awarded by the Court in conjunction with the Anywhere, RE/MAX and Keller Williams settlements. As a result, Plaintiffs are requesting reimbursement of the additional expenses that have not already been awarded.[13]

The largest components of these costs is for experts, depositions, class notice and administration, mediations, and online research. *See Tussey*, 2019 WL 3859763, at *5 ("Reimbursable expenses include many litigation expenses beyond those narrowly defined 'costs' recoverable from an opposing party under Rule 54(d), and includes: expert fees; travel; long-distance and conference telephone; postage; delivery services; and computerized legal research.") (*citing* Alba Conte, 1 Attorney Fee Awards § 2:19 (3d ed.))). All of the expenses submitted were reasonable and necessary expenses in such a large litigation. The most significant cost since the previous expense award relating to the Anywhere, RE/MAX and Keller Williams Settlements has been for class notice that was mailed in the *Moehrl* case prior to settlements with NAR and HomeServices. This was a reasonable and necessary expense. The Court should thus approve Class Counsel's expense reimbursement request to the extent the costs have not been awarded pursuant to the prior settlements.

## CONCLUSION

Class Counsel respectfully request that the Court approve the requested fee of one-third of the Settlement Fund and reimbursement of current expenses in the amount of $16,528,352.83 that have not already been reimbursed in prior settlements.

---

[13] Plaintiffs reserve the right to update their cost totals up to the Court's November 26, 2024 final approval hearing.

Dated: September 13, 2024

Respectfully submitted by:

**COHEN MILSTEIN SELLERS & TOLL PLLC**
*/s/ Robert A. Braun*
Benjamin D. Brown (*pro hac vice*)
Robert A. Braun (*pro hac vice*)
Sabrina Merold (*pro hac vice*)
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
bbrown@cohenmilstein.com
rbraun@cohenmilstein.com
smerold@cohenmilstein.com
Daniel Silverman (*pro hac vice*)
769 Centre Street
Suite 207
Boston, MA 02130
Telephone: (617) 858-1990
dsilverman@cohenmilstein.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Steve W. Berman (*pro hac vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com

Rio S. Pierce (*pro hac vice*)
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
riop@hbsslaw.com

Nathan Emmons (Mo. Bar. No. 70046)
Jeannie Evans (*pro hac vice*)
455 North Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
nathane@hbsslaw.com
jeannie@hbsslaw.com

**WILLIAMS DIRKS DAMERON LLC**

/s/ Eric L. Dirks
Eric L. Dirks           MO # 54921
Michael A. Williams     MO # 47538
Matthew L. Dameron      MO # 52093
Eric L. Dirks           MO # 54921
1100 Main Street, Suite 2600
Kansas City, MO 64105
Tele: (816) 945 7110
Fax: (816) 945-7118
mwilliams@williamsdirks.com
matt@williamsdirks.com
dirks@williamsdirks.com

**BOULWARE LAW LLC**
Brandon J.B. Boulware   MO # 54150
Jeremy M. Suhr          MO # 60075
1600 Genessee Street, Suite 956A
Kansas City, MO 64102
Tele:   (816) 492-2826
Fax:    (816) 492-2826
brandon@boulware-law.com
jeremy@boulware-law.com

**KETCHMARK AND MCCREIGHT P.C.**
Michael Ketchmark       MO # 41018
Scott McCreight         MO # 44002
11161 Overbrook Rd. Suite 210
Leawood, Kansas 66211
Tele:   (913) 266-4500
mike@ketchmclaw.com
smccreight@ketchmclaw.com

**SUSMAN GODFREY L.L.P.**
Marc M. Seltzer (*pro hac vice*)
Steven G. Sklaver (*pro hac vice*)
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Beatrice C. Franklin (*pro hac vice*)
One Manhattan West
New York, New York 10001
Telephone: (212) 336-8330
bfranklin@susmangodfrey.com

Matthew R. Berry (*pro hac vice*)
Floyd G. Short (*pro hac vice*)
Alexander W. Aiken (*pro hac vice*)
401 Union St., Suite 3000
Seattle, Washington 98101
Telephone: (206) 516-3880
mberry@susmangodfrey.com
fshort@susmangodfrey.com
aaiken@susmangodfrey.com

*Attorneys for Plaintiffs and the Class*