IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| RHONDA BURNETT, JEROD BREIT, JEREMY KEEL, HOLLEE ELLIS, AND FRANCES HARVERY, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,<br><br>*Plaintiffs*,<br><br>v.<br><br>THE NATIONA ASSOCIATION OF REALTORS, REALOGY HOLDING CORP., HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFLIATES, LLC, RE/MAX, LLC, AND KELLER WILLIAMS REALTY, INC.,<br><br>*Defendants*. | Case No. 4:19-CV-00332-SRB |

## OBJECTION TO FINAL APPROVAL OF SETTLEMENT

James Mullis, by and through his undersigned attorneys, hereby objects to approval of the settlements between Plaintiffs and defendants The National Association of Realtors, HomeServices of America, Inc., BHH Affiliates, LLC, and HSF Affiliates, LLC ("Defendants"). Mullis is a class member because he sold a home located at 2519 April Breeze Lane, Henderson, NV 89002 on May 24, 2021 that was listed on the Greater Las Vegas ("GLVAR") MLS. Ex. 1, Decl. of James Mullis, ¶¶ 3-4. The listing broker was Top Tier Realty and the buying broker was Motion Properties Las Vegas. *Id.* This Objection applies to class members who also bought

1

homes listed on an MLS in which the seller paid a commission to a real estate broker. One representative of Mullis's undersigned counsel intends to appear at the Fairness Hearing.[1]

The releases as currently drafted leave room for settling Defendants to claim that they also cover class claims that Mullis and others have aggressively litigated against them in two other actions on behalf of *buyers* of homes. *See Batton v. Nat'l Ass'n of Realtors, et al.*, 21-cv-430 (N.D. Ill.), and *Lutz v. HomeServices of America, Inc., et al.*, 24-cv-10040 (S.D. Fla.). Indeed, the first round of settling parties to the home seller cases claimed exactly this and sought to enjoin certain homebuyers from litigating their claims.

But this litigation has never advanced claims for damages incurred by homebuyers and cannot now purport to release such claims. The buyer and seller cases have been litigated as separate suits on behalf of separate classes of victims in separate courts asserting separate sets of claims. Indeed, Plaintiffs' counsel intentionally excluded homebuyer lawsuits from their MDL motion with respect to their related action asserting the same claims, *Gibson et al. v. Nat'l Ass'n of Realtors, et al.*, 4:23-cv-00788 (W.D. Mo.), because Plaintiffs' counsel said they "differ" from home-seller claims. Movants' Consolidated Reply, *In re Real Estate Commission Litig.*, MDL-3100 (J.P.M.L. Feb. 2, 2024), Ewing Decl., Ex. D at 12; *see also* Pls.' Opening Brief ISO Motion for Centralization, *In re Real Estate Commission Antitrust Litig.*, MDL-3100 (J.P.M.L. Dec. 27, 2023), Ewing Decl. Ex. C at 11. Sellers never sought to consolidate, coordinate, or intervene in

---

[1] Mullis has filed two objections to class action settlements within the last 5 years, *Sitzer, et al. v. National Association of Realtors, et al.*, 4:19-cv-00332 (W.D. Mo.), and *Gibson, et al. v. Nat'l Ass'n of Realtors, et al.*, 4:23-cv-00788 (W.D. Mo.), which involved similar allegations as those being settled here but against different defendants. Mullis objected on the same grounds asserted herein. Only then did the parties to those settlements make clear for the first time that they intended to release homebuyer claims.

2

the buyer cases and never engaged buyer plaintiffs in the discussions that resulted in the current settlements.

Mullis therefore seeks clarification of the release language to ensure the settlements do not purport to release the *Batton* and *Lutz* homebuyer claims, and that the only claims released by class members are those related to transactions in which the class member was a home seller. If the settling parties oppose such clarification, then the settlements should be rejected because: (1) they are not equitable to class members who both bought and sold a home (especially those who purchased multiple homes or a more expensive home than they sold); and (2) sellers and buyers here have divergent interests that create inherent conflicts the settlements fail to address.

**Factual Background**

Mullis purchased a home located in Henderson, Nevada in 2020. The home was listed on the GLVAR MLS. In January 2021, Mullis, along with several other plaintiffs, filed a class-action complaint against Defendants in the Northern District of Illinois, asserting claims that they and other class members were harmed when purchasing homes in which inflated commissions were paid. *Batton v. Nat'l Ass'n of Realtors, et al.*, 21-cv-430 (N.D. Ill.). After Mullis' claims against the HomeServices defendants were dismissed for lack of personal jurisdiction, Mullis' counsel filed identical claims in the Southern District of Florida against the HomeServices defendants and one other co-conspirator. *Lutz v. HomeServices of America, Inc., et al.*, 4:24-cv-10040 (S.D. Fla.).

Mullis and the putative classes in *Batton* and *Lutz* allege state-law indirect purchaser antitrust and unfair competition claims based on anticompetitive conduct similar to that alleged in this litigation, but with a crucial difference: Mullis alleges that he and putative class members suffered damages each time they *bought* a home and the seller paid a real estate commission because they paid inflated commissions and higher home prices, among other harms such as

3

being steered away from lower-priced comparable properties. Ewing Decl., Ex. A (Complaint) at ¶¶ 4, 12, 114. Mullis's claims against previously settling defendants have been the subject of multiple motions to dismiss in the past three years, which the *Batton* court recently denied in part. Ewing Decl., Ex. B, February 20, 2024 Memorandum Opinion and Order.

Examining the effects of these unlawful practices on buyers, the Department of Justice explained that inflated commissions harm "buyers (who end up paying through higher home purchase prices)." Statement of Interest of the United States, *Nosalek v. MLS Prop. Info. Network, Inc.*, No. 20-cv-12244 (D. Mass. Feb. 15, 2024), Ewing Decl, Ex. E at 6. According to the DOJ, "the buyer-broker commission has a very real cost to homebuyers, who ultimately pay through higher purchase prices." *Id.* at 8. These are the costs the *Batton* and *Lutz* plaintiffs seek to recoup.

The complaint before this Court, however, focuses exclusively on the harm incurred by home *sellers*. *Sitzer et. al. v. Nat'l Ass'n of Realtors, et al.*, Amended Complaint, Dkt. 759 at ¶ 118-119. The complaint being settled before this Court only sought to represent a class of home sellers and points only to alleged harms to the seller in a given transaction for damages. *Id*. at ¶ 118-119, 139.

The pending settlement agreements bind class members to the following Releases:

> Upon the occurrence of the Effective Date, the Releasing Parties expressly and irrevocably waive, and fully, finally, and forever settle, discharge, and release the Released Parties from, any and all manner of claims, demands, actions, suits, and causes of action, whether individual, class, representative, or otherwise in nature, for damages, restitution, disgorgement, interest, costs, expenses, attorneys' fees, fines, civil or other penalties, or other payment of money, or for injunctive, declaratory, or other equitable relief, whenever incurred, whether directly, indirectly, derivatively, or otherwise, whether known or unknown, suspected or unsuspected, in law or in equity, that any Releasing Party ever had, now has, or hereafter can, shall, or may have and that have accrued as of the date of preliminary approval of the Settlement arising from or related to the Released Claims. The Released Claims include but are not limited to the

4

> antitrust and consumer protection claims brought in the Actions and similar state and federal statutes. In connection therewith, upon the Effective Date of Settlement, each of the Releasing Parties (i) shall forever be enjoined from prosecuting in any forum any Released Claims against any of the Released Parties from the beginning of time through the date of preliminary approval of the Settlement; and (ii) agrees and covenants not to sue any of the Released Parties with respect to any Released Claims.

Dkt. 1192-3 at ¶ 30, 1518-1 at ¶ 29, 1371-1 at ¶ 32. "Released Claims" are defined as "any and all manner of federal and state claims regardless of the cause of action arising from or relating to conduct that was alleged or could have been alleged in the Actions based on any or all of the same factual predicates for the claims alleged in the Actions, including but not limited to commissions negotiated, offered, obtained, or paid to brokerages in connection with the sale of any residential home." Dkt. 1192-3 at ¶ 14, 1518-1 at ¶ 13, and 1371-1 at ¶ 15.

The settling parties have not made any plan of allocation available. Nonetheless, available evidence on the settlement website indicates that there will be no compensation provided based on the number of homes purchased by class members. For example, the website instructs class members to submit a separate claim form for each home a class member sold, but does not require any information about homes purchased. *See* https://www.realestatecommissionlitigation.com/claimformlanding. There is simply no evidence that buyers have been adequately represented or will receive adequate compensation, if any, for the release of their claims.

**Objection**

## I. The Settlements' Releases Do Not Cover Homebuyer-Based Damages Claims

Properly interpreted, the Releases do not cover claims asserted by class members to recover damages in separate transactions when they purchased a home. The releases expressly adopt the "same factual predicate" rule to define their scope. Dkt. 1192-3 at ¶ 14, 1518-1 at ¶ 13, and 1371-1 at ¶ 15. This language, also known as the "identical factual predicate" rule,

5

incorporates the doctrine that a release cannot bar claims "which depend not only upon a different legal theory but upon proof of further facts." *Nat'l Super Spuds, Inc. v. New York Mercantile Exch.*, 660 F.2d 9, 18 n.7 (2d Cir. 1981) (Friendly, J.) (emphasis added). The identical factual predicate rule requires more than just common conduct across the Defendants. Even where the challenged defendant's conduct is similar, the identical factual predicate rule does not apply if the second claim requires additional, plaintiff-specific facts not required in the first litigation. *Id.; In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 91 F.4th 174, 185 (4th Cir. 2024).

The "factual predicates" alleged in the claims being settled in this Court have always been the harms class members suffered when paying a commission for selling a home. It has never been the extent to which *homebuyers* suffer harm due to inflated commissions and home prices or steering. Mullis' homebuyer claims require him to prove additional facts that the Plaintiffs in this action did not need to prove, including: (1) that he purchased a home; (2) using a buyer-agent; and (3) that supracompetitive broker commissions caused him to pay more for the home than it would otherwise cost. None of those requirements are present in the claims being settled before this Court and thus do not form the identical factual predicate. *See id.*; *see generally Graves v. Cam2 Int'l LLC*, 3:19-cv-05089, 2020 WL 3968040, at *9 (W.D. Mo. July 13, 2020) (claims based on different transactions were not released); *Karg v. TransAmerica Corp.*, 18-cv-134, 2019 WL 3938471, at *4 (N.D. Iowa Aug. 20, 2019) (prior class action settlement release against same plan administrators involving same plan did not cover claims resulting in a different type of harm).

The parties' conduct has likewise indicated that settling class members' homebuyer-based claims are not being released. In their MDL motion to consolidate and coordinate cases

alleging *identical* claims against different defendants, settling Plaintiffs' counsel expressly excluded the *Batton* homebuyer actions. Their conduct reflects their acknowledgement that homebuyer damages claims do not arise out of or relate to the same factual predicate as the seller claims, or, alternatively, that Plaintiffs' counsel did not adequately represent the interests of homebuyers.

If the Court or the parties clarify that the settlements do not affect the homebuyer-based damages claims in *Batton* and *Lutz*, Mullis has no objection to the settlements.

## II.     If the Releases Cover Homebuyers' Damages Claims, The Settlements Are Inequitable and Provide Inadequate Representation To Certain Class Members

If the settling parties intend to release claims brought by class members who allege they also suffered damages when they separately purchased homes, then Mullis objects to the settlements on several grounds. Primarily, the settlements fail Rule 23(e)(2)(D)'s requirement to "treat class members equitably relative to each other." Specifically, class members who purchased multiple homes or more expensive homes than they sold are not being treated equitably to those who only sold a home or sold a more expensive home than they purchased.

First, there is no plan of distribution or allocation available at the time objections are due. This renders it impossible for the Court to determine that the settlements treat all class members equitably relative to one another, as Rule 23 requires. Mullis and other homebuyers can only infer that the plans of distribution with respect to the pending settlements provide no compensation for any damages suffered when purchasing a home listed on an MLS, based on the fact that the current settlement website informs class members to submit separate claim forms only for each home sold. Given that the *Batton* homebuyer claims recently survived multiple motions to dismiss and are proceeding to discovery, it would be patently unfair and unreasonable for the settlements to release them for *no* additional consideration and while giving them no

7

Case 4:19-cv-00332-SRB    Document 1561    Filed 10/28/24    Page 7 of 13

weight in allocating the settlements' proceeds. *See In re Bank of America Securities Litig.*, 210 F.R.D. 694, 712 (E.D. Mo. 2002) (rejecting approval of class action settlement because plan of allocation did not award compensation for meritorious claims); *Branson v. Pulaski Bank*, 4:12-cv-01444, 2015 WL 139759, at *6-7 (W.D. Mo. Jan. 12, 2015) (rejecting approval of class action settlement because allocation did not account for differences among plaintiffs: "the Settlement is not fair and equitable to the Settling Plaintiffs vis-à-vis each other").

Second, if the parties released the homebuyer claims as part of these settlements, then Plaintiffs and class counsel have not adequately represented those claims in this litigation or in the settlement discussions. There is no evidence of any effort made in this litigation, related litigations, or as part of the settlement discussions to estimate or even discuss the damages sought by class members for transactions in which they purchased their homes. *See Branson*, 2015 WL 139759, at *5 (rejecting approval of a class action settlement that released additional claims when no effort was made to ascertain the value of claims). Moreover, the parties have made no efforts to involve counsel who have attempted to value and assert those claims in the settlement discussions or allocation, despite them litigating those actions for more than three years. *See Martin v. Cargill, Inc.*, 295 F.R.D. 380, 387 (D. Minn. 2013) (rejecting approval of class action settlement attempting to settle pending claims first asserted by other parties without their involvement).

Third, if settling class representatives and class counsel are in fact releasing the homebuyer-based damages claims, the Court should reject the settlements because Plaintiffs and their counsel have failed to implement necessary substantive and procedural safeguards against conflicts of interest between homebuyers and home sellers. Some class members, like inheritors, have only sold and not purchased any homes during the class period. This relatively small group

may receive compensation for every injury they suffered. Class members who purchased homes do not. The settlement improperly asks many class members to sacrifice their purchasing claims and share whatever money Defendants paid to release those purchasing claims with class members who do not have those claims. This is improper. *Nat'l Super Spuds*, 660 F.2d at 18 n.8 (class members cannot "be required to share with persons who" lack certain claims "whatever sum defendants were willing to pay because the settlement included the release of [those] claims"); *see In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 254 (2d Cir. 2011) ("Although all class members share an interest in maximizing the collective recovery, their interests diverge as to the distribution of that recovery because each category of claim is of different strength and therefore commands a different settlement value.").

Any attempt to resolve these conflicts in a global settlement requires more than Plaintiffs' counsel have done here to ensure that homebuyer claims are not unfairly compromised. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626-27 (1997) (rejecting class action settlement where some class members had goals in conflict with other class members and no independent representation was provided); *Ortiz v. Fireboard Corp.*, 527 U.S. 815 (1999) (rejecting class action settlement where allocation treats class members with disparate strengths and types of claims the same). For example, in *Professional Firefighters Association of Omaha, Local 385 v. Zalewski*, 678 F.3d 640 (8th Cir. 2012), the Eighth Circuit approved a class action settlement with divergent interests between active and retired firefighters because the district court "subdivided the class to mitigate . . . potential conflicts" and "permitted five retired firefighters to intervene with separate counsel and participate in settlement negotiations that focused extensively on protecting the retirees' interests." *Id.* The same is required here.

9

Case 4:19-cv-00332-SRB   Document 1561   Filed 10/28/24   Page 9 of 13

It does not matter if some named Plaintiffs both bought and sold homes. *Amchem* itself rejected the settlement even though the named plaintiffs collectively had claims that spanned the divergent interests in that case, and it requires rejection of the unified representation here. *See* 521 U.S. at 603 (some named plaintiffs "already suffered physical injuries" while others "had not yet manifested" physical injuries).

The only way to avoid this conflict and ensure intraclass equity with adequate representation is to interpret the releases pending before this Court to relate solely to transactions in which class members sold a home, or to appoint independent counsel to represent homebuyers in the settlement negotiations and allocation decisions.

## Conclusion

The Court should approve the settlements only if the settling parties expressly carve out homebuyer claims from the definition of "Released Claims" or otherwise clarify that the settlements do not release damages claims related to transactions in which class members purchased homes. If not, the Court should reject the settlements as unfair, unreasonable, lacking intraclass equity, and failing to adequately represent class members who purchased homes.

Dated: October 28, 2024

/s/ *Randall P. Ewing, Jr.*
Randall P. Ewing, Jr.
George A. Zelcs
Ryan Z. Cortazar
**KOREIN TILLERY, LLC**
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
Telephone: 312-641-9750
Facsimile: 312-641-9751
gzelcs@koreintillery.com
rewing@koreintillery.com
rcortazar@koreintillery.com

Steven M. Berezney (MO Bar #56091)
Michael E. Klenov
Carol O'Keefe
**KOREIN TILLERY LLC**
505 N. 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
sberezney@koreintillery.com
mklenov@koreintillery.com
cokeefe@koreintillery.com


Vincent Briganti
Christian Levis
Noelle Forde
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
vbriganti@lowey.com
clevis@lowey.com
nforde@lowey.com

*Attorneys for James Mullis*

                                                                                                        _____
James Mullis
6977 Luminary Drive,
Las Vegas, NV 89119.
702-588-3375
jamie.mullis@yahoo.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2024, the foregoing was filed electronically with the Clerk of Court of the Western District of Missouri to be served by the Court's electronic filing system to all Counsel of Record.

/s/ *Randall P. Ewing, Jr.*
Randall P. Ewing, Jr.

13

Case 4:19-cv-00332-SRB   Document 1561   Filed 10/28/24   Page 13 of 13