UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| RHONDA BURNETT, JEROD BREIT, JEREMY KEEL, HOLLEE ELLIS and FRANCES HARVEY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL ASSOCIATION OF REALTORS, et al.,<br><br>Defendants. | Civil Action No. 19-cv-00332-SRB |

## OBJECTION OF MONTY MARCH TO THE
## PROPOSED NATIONAL CLASS ACTION SETTLEMENT WITH DEFENDANT
## NATIONAL ASSOCIATION OF REALTORS

Monty March ("March") hereby objects to the proposed nationwide settlement with Defendant National Association of Realtors ("NAR"). March objects on behalf of himself and a putative class of persons who sold Manhattan residential real estate which was listed on the Real Estate Board of New York ("REBNY") Residential Listing Service ("RLS"), and who utilized the services of a broker and paid a buyer broker commission in accordance with REBNY rules (the "REBNY Manhattan Class"). March is a named plaintiff in a pending class action on behalf of a proposed class of Manhattan sellers, *March v. Real Estate Board of N.Y., Inc.*, No. 1:23-cv-09995-JGLC-RWL (S.D.N.Y.) ("*March*" or the "*March* Action").

This objection is brought in accordance with Fed. R. Civ. P. 23(e)(5) and this Court's April 23 Order granting preliminary approval of the nationwide class action settlements with Defendant NAR in the above-captioned action (ECF No. 1460, the "Preliminary Approval Order"), the long form settlement notice published on the website https://www.realestatecommissionlitigation.com/ (the "Settlement Website"), and instructions on the Frequently Asked Questions page of the

1

Settlement Website.

As required by ¶12 of the Preliminary Approval Order, March states as follows:

(a) Full name: Monty March
Address: 16 Gallantinville Road
Pine Plains, NY 12567
Telephone Number: (917) 375-2341
Email Adress: montymarch@gmail.com

c/o Michael M. Buchman, Esq.
Motley Rice LLC
800 Third Avenue, Suite 2401
New York, NY 10022
Telephone Number: (212) 577-0050
Email Address: mbuchman@motleyrice.com

(b) Address of home sold: 4 East 95th Street, Apt PH 9/10
Date of sale: On or around July 20, 2022
Listing Broker: Brown Harris Stevens Residential Sales
Buyer's Broker: Douglas Elliman

(c) The grounds for this objection are stated herein.

(d) This Objection applies to objector and the proposed class set forth in the *March* Action.

(e) This Objection applies to the settlement with the National Association of Realtors.

(f) Names and contact information for attorneys representing Mr. March and the proposed class in *March* are listed in the signature block below.

(g) March has previously objected to the nationwide class action settlements with Defendants Compass, Inc., At World Properties LLC, Douglas Elliman, Inc., and Engel & Völkers New York Real Estate LLC in the case captioned *Gibson et al v. National Association of Realtors et al*, CA No. 4:23-cv-00788-SRB.

(h) To the extent that any documents supporting this objection are not already publicly available on this Court's CM/ECF system, they are being submitted as exhibits to the Declaration of Michael M. Buchman ("Buchman Decl."), filed concurrently herewith or they are hyperlinked within this Objection.

(i) March intends to appear at the Fairness hearing through his counsel.

(j) Objector's signature is provided below.

**PRELIMINARY STATEMENT**

March commenced action on behalf of the REBNY Manhattan Class, which seeks damages for violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. §1; New York state antitrust

law (New York General Business Law §340); and New York unjust enrichment law against REBNY and various Manhattan residential real estate brokerage firms stemming from an agreement/conspiracy to adhere to REBNY's RLS rules which resulted in artificially inflated commissions for homes listed on REBNY's RLS. *See* Ex. 1 at ¶¶1-2; 11-13; 74-77.[1] *March* opposes the proposed nationwide settlement with Defendant NAR because the proposed settlement agreement before this Court purports to extinguish the REBNY Manhattan Class claims, which *do not* arise out of the same factual predicate as those being resolved in this Court.

The proposed settlement currently awaiting final approval before the Court seeks to resolve claims involving an agreement/conspiracy perpetrated by and through the National Association of Realtors to inflate buyer-broker commissions for homes listed by NAR-affiliated "Realtors" on NAR-affiliated Multiple Listing Services ("MLSs"), pursuant to NAR rules, and/or MLS rules that were controlled or influenced by NAR.[2]

The alleged REBNY and NAR agreements to fix, raise, maintain, or stabilize residential real estate commissions are distinct and factually unrelated. *REBNY separated from NAR in 1994. NAR's Mandatory Offer of Compensation Rule was adopted in 1996. REBNY RLS rules, including its broker commission sharing rule (Article III, Section 2), were instituted in 2004*. REBNY – an entirely distinct and separate real estate association – *could not* have played a part in NAR's creation and implementation of the Mandatory Offer of Compensation Rule in 1996 because REBNY left NAR two years earlier. *See infra* § A.1. To be clear, the *March* action relates to an entirely separate real estate association, listing service, broker rules, and mechanisms through which the REBNY anticompetitive agreement/conspiracy was formed and maintained.

---

[1] References to "Ex." are to the exhibits attached to the Buchman Decl.
[2] *See Umpa, et al. v. NAR, et al.*, 4:23-cv-945-SRB, ECF No. 1 (*Umpa* Compl.) ¶¶1–6, 18, 27, 139–140; *Gibson, et al. v. NAR, et al.*, 4:23-cv-788-SRB, ECF No. 232 (*Gibson* Compl.) ¶¶1–3, 7–8, 17–19, 77, 87; *Burnett et al. v. NAR*, et al., 19-cv-332-SRB, ECF No. 759 (*Burnett* Compl.) ¶¶1–3, 5- 7, 17–18.

3

There is simply no factual or legal basis upon which to release March's or the REBNY Manhattan Class claims. The Court should, therefore, reject, in part, the proposed settlement with NAR as to March's and the REBNY Manhattan Class claims. Should the parties modify the proposed "Settlement Class" definition so that it expressly *excludes* transactions associated with REBNY and/or on the REBNY RLS, *see*, *e.g.*, ECF No. 1458-1-6 (National Association of Realtors Settlement Agreement) at ¶21, March would have no objection to the settlement and would withdraw his objection.

## GROUNDS FOR OBJECTION

**A. The Proposed Settlement Improperly Seeks to Release Claims From The REBNY Litigation in New York City Which Does Not Arise Out Of The Same Factual Predicate As The NAR Litigations**

The proposed NAR settlement awaiting final approval cannot release *March*'s claims because it does not share the identical factual predicate with the nationwide horizontal conspiracy underpinning the NAR litigation as alleged in the NAR litigation complaints.

In order for a settlement to release claims asserted in a different action the "same factual predicate" test must be satisfied. *See,* e.g. *In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, 716 F.3d 1057, 1065 (8th Cir. 2013). While it may be true that class action releases can include claims not presented—and even those which could not have been presented in the underlying litigation—the released conduct or claims must arise from the "identical factual predicate" as the settled conduct or claims. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 107 (2d Cir. 2005) ("*Wal-Mart*") (*citing TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982) ("*TBK Partners*"); *see also Dennis v. JP Morgan Chase & Co.*, 2021 WL 1893988 *5-6 (S.D.N.Y. May 11, 2021). But where, as is the case here, the "source of [an] alleged antitrust conspiracy is wholly different from the source of the alleged conspiracy" in a settled case, the settlement *cannot* release claims related to a parallel conspiracy. *In re Digital Music Antitrust*

4

*Litig.*, 812 F. Supp. 2d 390, 400 (S.D.N.Y. 2011). What is required is that the released claims share "the very same set of facts." *Id.*; *see also Murphy v. Jones*, 877 F.2d 682, 684–85 (8th Cir. 1989) ("whether two claims are the same for res judicata purposes depends on whether the claims arise out of the same nucleus of operative fact or are based upon the same factual predicate."). Here, the respective alleged agreements/conspiracies between the national NAR actions and the *March* Action do not "arise out of the same nucleus of operative fact [n]or are [they] based upon the same factual predicate." *See Id.*

To be sure, no factual predicate or connective tissue exists between the REBNY RLS agreement to fix, raise, maintain, or stabilize real estate commission prices in *March* and the nationwide NAR conspiracy alleged in the NAR litigations. Accordingly, no identical factual predicate can exist and the pending proposed settlements before this Court cannot release the claims alleged in *March*.

### 1. The REBNY/RLS Agreement Constitute a Different Factual Predicate

*March* alleges a wholly separate anticompetitive agreement to inflate real estate commissions in Manhattan for residential real estate listed on the RLS using the REBNY Rules and Code of Ethics. Ex. 1 ¶¶1-2; 11-13; 74-77. NAR is not a party in *March*, and REBNY is not a party in any real estate commission litigation outside New York City. This is because REBNY and NAR have absolutely nothing to do with each other. And they have had nothing to do with each other for three decades. To that point, the context of REBNY's separation from NAR in 1994 and the timeline when NAR implemented the Mandatory Offer of Compensation Rule in 1996 is crucial.

In 1994, REBNY decided to fully secede from NAR.[3] The decision to separate from NAR

---

[3] REBNY Pulls Out of NAR, https://www.thefreelibrary.com/REBNY+pulls+out+of+NAR.+(Real+Estate+Board+of+New+York;+National...-

followed a years' long dispute pertaining to "the number of salespeople and brokers that REBNY was required to pay dues for to the national and state [Realtor] associations."[4] In the aftermath of REBNY separation, REBNY's then First Senior Vice President Warran Wechsler emphasized, "we [REBNY] have no desire to put ourselves in conflict with another industry organization or question the motives of its membership or its staff[.]"[5] It was thus clear by 1994 that REBNY and NAR, for all intents and purposes, were separate entities. Wechsler even went on to say, "[w]e [REBNY] just no longer have a relationship with them [NAR]".[6]

Two years following the REBNY departure from NAR in 1996, NAR decided to adopt the "Mandatory Offer of Compensation Rule"[7] which required the seller's agent to offer a blanket and nonnegotiable commission for the buyer's agent as a condition of listing real estate property on a local MLS. REBNY was entirely separate from and had no role in NAR's decision to implement the Mandatory Offer of Compensation Rule. It could not have. It was totally separate from NAR since 1994.

Notably, REBNY's RLS was created eight years *after* NAR's Mandatory Offer of Compensation Rule was created and "[s]ince its inception in 2004, [REBNY's RLS] has never utilized NAR rules."[8] Thus, at the respective times NAR and REBNY implemented their buyer-broker commission rules, each was a distinct entity that had no relationship with one another.

Any settlement stemming from the real estate commission litigation before this Court pertains to an agreement/conspiracy stemming from NAR which inflated commissions. This agreement/conspiracy structure could only be implemented through MLSs affiliated with and/or

---

[a015774444](a015774444)
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] Ex. 2 at 74.
[8] Ex. 3 at 29.

influenced by NAR – with NAR members transacting in their Realtors® capacity on their respective MLS. *See, e.g. Burnett v. National Assoc. of Realtors*, 2022 WL 1203100, at *7 (W.D. Mo. Apr. 22, 2022) (granting class certification of the initial "four Subject MLSs" in part because the "identical" applicable NAR rules did "not differ based on the MLS" and that NAR's Code of Ethics and Handbook "apply to each subject MLS uniformly"). The term MLS is so intertwined with NAR that NAR has an MLS logo as a registered service mark.[9] The term Realtor® is a registered trademark of NAR and signifies that a Realtor® is a member of NAR[10] who commits to abide by the NAR code of ethics.[11] Thus, the separate NAR centered agreement/conspiracy functioned through various NAR broker defendant policies at the corporate level which enforced the national NAR rules on NAR MLS's at the broker/agent level. *See Umpa* Compl. ¶¶8–11, 16–18, 111–112; *Gibson* Compl. ¶¶94–98, 117; *Burnett* Compl. ¶¶7; 17-18.

Unlike the NAR agreement being enforced nationally at the broker defendants' corporate level, the mechanism REBNY utilized to enforce its agreement to inflate real estate broker commissions was that REBNY itself required individual agents and brokers to agree in writing to abide by the REBNY Rules and Code of Ethics as a precondition to transacting on the RLS. Ex. 1 at ¶¶75-77. This is wholly different from the way NAR enforced its agreement/conspiracy.

The thirty year history of REBNY and NAR being separate entities - as well as the clear absence of any common agreement between NAR and REBNY - demonstrates the separateness of the alleged anticompetitive agreements/conspiracies that were designed to artificially inflate residential real estate broker commissions. *See In re Currency Conversion Fee Antitrust Litig.*,

---

[9] NAR, Logos and Trade Mark Rules, MLS Service Mark Logo, https://www.nar.realtor/logos-and-trademark-rules/mls-service-mark-logo
[10] NAR, Top 5 Things You Need to Know about the Realtor® Trademarks, https://www.nar.realtor/logos-and-trademark-rules/top-5-things-you-need-to-know-about-the-realtorr-trademarks
[11] Ex. 2. at 82.

264 F.R.D. 100, 118–20 (S.D.N.Y. 2010) (separate antitrust conspiracies regarding analogous topics do not satisfy the identical factual predicate test because "***the agreement itself***, not its performance, ***is the crime of conspiracy***") (emphasis added); *Dennis v. JPMorgan Chase & Co.*, No. 16-CV-6496 (LAK), 2021 WL 1893988, at *5 (S.D.N.Y. May 11, 2021) (citing *TBK Partners*, 675 F.2d at 462) ("Claims that rely upon proof of further facts … cannot be released."); *United States v. Foley,* 598 F.2d 1323, 1333 (4th Cir.1979) ("the agreement itself, not its performance, is the crime of conspiracy").

Aside from being derived from two different and distinct real estate associations and having differing mechanisms of enforcing compliance, the text of the REBNY RLS Rules are meaningfully different from the NAR rules. The REBNY RLS rules impose a default 50/50 split of seller/buyer broker commissions, for exclusive listings, which was to be borne entirely by the respective home seller in the absence of a written agreement to the contrary. Ex. 1, March Complaint ¶74. In addition, there is a "Commission Reduction Rule" which mandated any diminution in the buyer broker commission or the overall broker commissions negotiated between a seller and the seller broker to be fronted entirely from the seller broker's pocket unless the buyer broker agreed to the reduction in writing. Ex. 1 at ¶76. There is no analog to these requirements in the NAR rules.

REBNY itself represents that its real estate broker commission rules materially differ from NAR's. Namely, "the RLS does not mandate the use of a standard form exclusive listing agreement, thus allowing each participating brokerage firm to negotiate the terms of each of their exclusive listing agreements" and "RLS has never maintained the 'Buyer Broker Compensation Rules'—at the heart of the NAR Cases—which require a listing broker to make a mandatory blanket offer of compensation to buy-side brokers in order list a property on the RLS." Ex. 4 at 3.

Additionally, the REBNY real estate broker commission rules, which were in effect until January 1, 2024, had effects that were arguably more pernicious and anticompetitive than those promulgated nationwide by NAR. For example, it has been gleaned, that "[i]n REBNY Manhattan, 99 percent of the [Buyer Broker] rates ranged between 2.5 and 3.0 percent."[12] This can be contrasted with a Brooklyn MLS, operating apart from REBNY buyer/broker commission sharing strictures, where the average buyer broker commission sat at approximately 1%.[13]

It would indeed be manifestly disingenuous to now include REBNY RLS within the ambit of the proposed settlement class when the underlying complaints themselves acknowledge the REBNY RLS *is not* an MLS. Complaints from NAR centered litigations omit REBNY RLS from the class definition of the descriptions of antitrust violations. *See Umpa* Compl. at ¶¶161, 173; *Gibson* Compl. at ¶258; *Burnett* Compl. at ¶¶29, 118-120. Complaints from NAR centric litigations similarly acknowledge that RLS *is not* a NAR-affiliated or controlled "MLS" and that REBNY has its own rules. *See Umpa* Compl. at ¶110 (calling RLS an "MLS-like service in New York City" subject to different rules); *Gibson* Compl. at ¶182 (alleging that the RLS is "an MLS service" and referencing REBNY/RLS rules that had been in effect "[u]ntil recently").

Lastly, while the preliminary approval papers make it clear that Plaintiffs and the Settling Defendants intend to release REBNY RLS related claims, there is a paucity of support for their position. Counsel for the REBNY Manhattan Class has gleaned from two paragraphs from the Anywhere, RE/MAX, and Keller Williams Settlement Approval Order, ECF 1487, that it is to be believed that REBNY RLS is one of the "multiple listing service[s] nationwide" that falls under

---

[12] Stephen Brobeck, *Diverse Real Estate Commissions: The New York City Residential Brokerage Anomaly*, CONSUMER FED'N OF AM., at 17 (Oct. 19, 2022), https://consumerfed.org/wp-content/uploads/2022/10/Diverse-Real-Estate-Commissions-Report-10-19-22.pdf.
[13] Stephen Brobeck, *Diverse Real Estate Commissions: The New York City Residential Brokerage Anomaly*, CONSUMER FED'N OF AM., at 3 (Oct. 19, 2022), https://consumerfed.org/wp-content/uploads/2022/10/Diverse-Real-Estate-Commissions-Report-10-19-22.pdf.

the ambit of the settlement. *See* ECF 1487 ¶63. As evidence for this, the Order points to a single citation to the expert reports of Professors Craig Schulman & Einer Elhauge. *See* ECF 1487 ¶46. That citation seems to indicate Realtors operating on the REBNY RLS remained obligated to follow the NAR Code of Ethics and were, therefore, incentivized to adhere to the Mandatory Offer of Compensation Rule (See ECF 1487 ¶46). The Shulman Reply Report cited is still entirely under seal and counsel for REBNY Manhattan Class cannot verify the veracity or applicability of Schulman's analysis to the REBNY RLS. The contention that the REBNY members in any way adhered to NAR's Code of Ethics is flatly **wrong**. As REBNY's counsel has judicially admitted, REBNY "doesn't follow NAR's Code of Ethics."[14]

In looking at the only public expert report that was relied upon, (Expert Class Certification Report of Professor Einer Elhauge, Ex. 5 the "Elhauge Report") one can see REBNY or its RLS were not considered as one of the myriad of independent MLS's that were similar enough to NAR MLS's to deserve scrutiny and analysis. *See* Ex. 5 at 231-250. And this is for good reason. In looking at which characteristics defined a non-NAR MLS as "not fully independent from NAR", Professor Elhauge enumerated five factors: "(i) partial MLS ownership by Realtor associations; (ii) MLS rules restricting ownership to brokers that are NAR members (i.e. Realtors); (iii) MLS rules limiting members to NAR members (i.e., Realtors); (iv) MLS executive participation on NAR's MLS rulemaking bodies; and/or (v) MLS rules expressly adopting or incorporating NAR's Code of Ethics, NAR's MLS Handbook, and other NAR policies." Ex. 5 at 233. It stands to reason that none of these *indicia* (reflecting a lack of independence from NAR) apply to REBNY or the REBNY RLS. REBNY and the REBNY RLS are wholly separate and distinct from NAR. The Elhauge Report cited in the Order evidences that REBNY is independent from NAR and as such

---

[14] Ex 3 at 29.

it cannot be used to support approval of settlement that extinguishes March's and the Manhattan REBNY Class's claims.

2. **Numerous Defendants Agree that REBNY RLS is an Entirely Different Conspiracy**

Defendants in *March* have clearly articulated they agree the *March* Action does not share a discernable factual predicate with the NAR related actions.

REBNY RLS rules operate in a distinct ecosystem. REBNY's Counsel made the following admissions before the Judicial Panel on Multidistrict Litigation ("JPML"):

- "Since [REBNY RLS's] inception in 2004, it has never utilized NAR rules." Ex. 3 at 29.

- REBNY "doesn't follow NAR's code of ethics." *Id.*

- REBNY "has always had its own rules and regulations and its own code of ethics" *Id.*

- REBNY has "never adopted any NAR rule or any NAR convention." *Id.*

- "The entire [REBNY RLS] system has operated independent of NAR for its entire existence." *Id.*

- "There are no common facts and there's going to be no common discovery with respect to the New York actions. For example, any discovery relating to the history of the NAR rules, the passage of the NAR rulings, the compliance and enforcement of the NAR rules is completely irrelevant to the REBNY cases. Similarly, the passage of the REBNY rules, the enforcement and compliance with the REBNY rules, also completely irrelevant to the NAR cases." *Id.*

- "[T]he rule at the heart of the REBNY action, Article 4, Section 1, is not a mandatory offer of compensation rule. It doesn't require an offer of compensation in order to list." *Id.* at 30

Counsel for REBNY made it perfectly clear to the JPML that REBNY RLS operates in a *wholly different factual context* than the NAR system.

Following numerous statements evincing that REBNY *did not* share any factual predicate with the NAR actions, Judge Kennelly asked REBNY's counsel, "there's been a whole succession

11

of folks who've gotten up and basically said, well, we don't follow the NAR rules, et cetera, et cetera. Isn't there some rule that's being followed in all these situations that has some degree of similarity or overlap with the NAR rule?" *Id.* at 31. Counsel for REBNY responded, [n]ot with respect to the REBNY case." *Id.*

REBNY made similar representations to the JPML in its written opposition to centralization:

- [u]nlike each of the other Defendants…REBNY and RLS have no affiliation with the National Association of Realtors ("NAR"), and do not use the NAR Rules, the NAR Handbook on Listing Policy (the "NAR Handbook") or the NAR Code of Ethics. Tellingly, NAR is not named as a Defendant in March, which is premised solely upon REBNY's and RLS's own rules, and does not implicate any NAR rules. Ex. 4 at 1.

- The NAR Cases, including the Burnett and Moehrl cases…are premised entirely upon NAR's Rules, the NAR Handbook and NAR's Code of Ethics – all of which REBNY and RLS deliberately never adopted and do not follow. *Id.* at 2

- The RLS "never maintained the 'Buyer Broker Compensation Rules'"—at the heart of the NAR Cases—which require a listing broker to make a mandatory blanket offer of compensation to buy-side brokers in order to list a property on the RLS. *Id.* at 3.

- "[T]he overwhelming majority of properties sold in New York City involve co-operative and condominium apartments, not single family homes. Thus, the types of transactions over the RLS differ significantly from those on traditional MLSs outside of New York City, which involve single family homes. *Id.* at 3-4.

- "REBNY and RLS have no affiliation with NAR, and they have not adopted NAR's Rules, the NAR Handbook or NAR's Code of Ethics. To the contrary, REBNY and RLS maintain their own rules (which March attached to his Complaint) and their own code of ethics… March is premised upon a specific REBNY rule that materially differs from the NAR Rules, NAR Handbook and Code of Ethics at issue in the other cases Movants seek to consolidate." *Id.* at 4.

- "March and Friedman are premised upon an entirely different rule than the NAR Cases, which necessitates separate and distinct factual discovery. Discovery obtained from NAR, or even from NAR-affiliated associations, NAR-affiliated MLSs, and/or NAR-affiliated brokerage defendants related to jurisdictions in which such entities operate, will have absolutely no bearing whatsoever on the claims against REBNY or RLS. The inverse is also true; discovery obtained from

12

> REBNY and RLS will only relate to New York City and to the RLS in particular, which is the only listing service in the country which utilizes its rules and regulations, and thus will not create any efficiencies in the NAR Cases, which do not involve New York City, REBNY or RLS." *Id*. at 6.

> - "[B]ecause they are not affiliated with NAR, neither REBNY nor the RLS subscribe to or abide by the NAR Handbook or the NAR Code of Ethics—REBNY and RLS actually utilize their own rules and regulations and an unrelated Code of Ethics and Professional Practices." *Id.*

Various additional REBNY Defendants have also agreed that *March* and a companion class action alleging similar violations of the REBNY RLS Rules on behalf of a Brooklyn class -- *Friedman v. Real Estate Board of N.Y., Inc.*, No. 1:24-cv-00405-JGLC-RWL (S.D.N.Y.) ("*Friedman*") -- *do not* share the same factual predicate with the NAR conspiracy. These Defendants previously opposed the transfer of *March* and *Friedman* to this Court to be consolidated with *Gibson* and *Umpa*. Those Defendants stated unequivocally that the alleged REBNY agreement/conspiracy is wholly separate from the alleged NAR conspiracy and no factual predicate exists.

Defendant Engel & Völkers New York Real Estate LLC represented the following to the JPML:

- "*March* and *Friedman* are unique in focusing on [REBNY], not NAR, and in limiting their claims to transactions conducted using the REBNY Listing Service, not a Multiple Listing Service." Ex. 6 at 3.

- "The REBNY cases—unlike *Burnett*, *Moerhl*, or any of the other cases against NAR— allege a conspiracy based solely on the REBNY rules and their impact on transactions completed through the REBNY Listing Service." *Id.*

- "[T]he REBNY cases allege a <u>different</u> agreement than any other action in the proposed centralization." *Id* at 6. (emphasis in original).

- [N]o other complaints allege agreements of any kind involving REBNY (or E&V New York). Thus the facts relevant to the alleged agreement in the REBNY cases are entirely independent of the facts relevant to the agreement alleged in the other actions." *Id*. at 7.

- "[T]he factual proof of the[ ] elements required in a REBNY-centered case will be entirely distinct from the proof needed to establish a NAR-centered conspiracy." *Id* at 2.

13

Defendant Douglas Elliman made similar representations to the JPML:

- REBNY cases "do not share common questions of fact warranting centralization because there is not one factual issue common to each action." Ex. 7 at 1.

- "[T]he rules at issue in the only two New York-based actions, *March* (and *Friedman*) are entirely different from the rules of [NAR]. And those cases exclusively involve rules promulgated by [REBNY] and the [RLS], which have zero affiliation with NAR, and are both limited to New York City." *Id.* at 2.

- "[N]o 'common conspiracy' is alleged." *Id.*

- The fact that both *March* and *Friedman* "deal exclusively with parts of the New York City real estate market (specifically, Manhattan and Brooklyn) which utilize the RLS… belie[s] [any] argument that REBNY and the RLS are 'subject to NAR's control and influence." *Id.* at 7-8.

A number of other REBNY Defendants similarly acknowledge REBNY and NAR *do not* share a factual predicate. Mr. Ryan Serhant, CEO of Serhant LLC, publicly pronounced on CNBC's *Squawk Box* that "we're not members of the National Association of Realtors in New York City and there is no MLS in New York City."[15] Mr. Serhant also emphasized this again on his YouTube channel stating "by the way New York, no MLS, I know it's crazy."[16] Serhant LLC submitted to the JPML that "the *March* and *Friedman* cases do not involve common questions of fact with the cases pending in the different districts[.]" Ex. 8 at 2. Brown Harris Stevens residential Sales, LLC and Halstead Manhattan, LLC jointly submitted to the JPML "the REBNY Actions present a different context in which alleged antitrust violations will be adjudicated. The distinction between NAR and REBNY and the brokerage firms that operate thereunder are significant." Ex. 9 at 2. Defendant Suitey, Inc. (d/b/a The Agency) submitted to the JPML that "[i]t is the NAR's Rules, Code of Ethics, and Handbook, not REBNY's, that are at the heart of the W.D. Mo. Actions. The distinctions between NAR's Rules, Code of Ethics and Handbook and REBNY's Rules and

---

[15] Ryan Serhant on Squawk Box Discussing NAR Settlement, https://www.youtube.com/watch?v=BVS3p_l07lo at 4:15-4:25.
[16] Ryan Serhant Video Titled, "How Much Do Real Estate Agents Actually Make?", https://www.youtube.com/watch?v=uQM8xgV6xgg at 3:19-3:22.

Code of Ethics are meaningful and significantly distinguish the March and Friedman Actions from both the W.D. Mo. Actions <u>and</u> the NAR Cases." Ex. 10 at 6 (emphasis in original). Defendant Compass submitted that "REBNY is *not* affiliated with NAR…[t]his means that REBNY members would be subject to a completely different set of rules that have nothing to do with NAR. Further, the *March* litigation would be dominated by Manhattan specific issues…[t]hus, the *March* complaint would have essentially no factual overlap with any other case…" Ex. 11 at 5.

The Court should believe what REBNY and other Manhattan based Defendants have said when they emphasized there is *no common factual predicate* between the REBNY centered class actions and the nationwide NAR litigations. The *March* Action simply *does not* arise out of the same factual predicate with the NAR litigation and for that reason alone the proposed settlements presently before this Court should be rejected, in part, in so far as they pertain to REBNY and the Manhattan residential real estate market.

**B.     The Settling Parties Have Not Met Their Burden of Proving That the Settlements are Fair, Reasonable, and Adequate Under Fed. R. Civ. P. 23(e)**

The sweeping and overbroad nationwide settlement that subsumes the claims of the factually distinct REBNY Manhattan Class cannot be approved as fair, reasonable, and adequate under Fed. R. Civ. P. 23(e). Plaintiffs and the NAR Defendant have failed to "bear the burden of developing the record and proving that the settlement is fair, reasonable, and adequate." *Galloway v. Kansas City Landsmen, LLC*, 2013 WL 3336636, at *2 (W.D. Mo. July 2, 2013) (citation omitted). This is because, among other reasons, the monetary compensation provided is too low and the practice changes mandated by the settlement agreement is too tepid to address the harms created by decades of supracompetitve real estate broker commissions.

The monetary compensation itself that is provided by NAR is woefully inadequate to REBNY Manhattan Class members who likely suffered greater individual harm and injury

compared to those affected by the NAR conspiracy. The $418 million baseline settlement figure (to be somewhat adjusted upward with brokerage opt ins) is no way near sufficient to address both the nationwide harms of the nationwide NAR conspiracy and the discrete and separate harms stemming from the REBNY agreement/conspiracy. Any arguments that Defendant NAR or any opt in brokerage lacks an ability to pay or that increasing settlement consideration would render NAR or opt in brokerages in a precarious financial situation rings hollow. As this Court noted before, ". . . defendants here in this case obviously made huge profits."[17] The settlement agreement before this Court also does not seek any consideration from franchises, despite the fact national brokerage franchises were key participants in the nationwide NAR conspiracy and New York based franchises participated in the REBNY agreement to inflate real estate broker commissions. Notably, counsel for the REBNY Manhattan Class has not been provided sufficient tangible evidence regarding the financial condition and ability to pay of Defendant NAR and any applicable opt in brokerage. Leaving REBNY class counsel, and others similarly situated, in the dark regarding a Settling Defendant's financial condition renders a class member unable to fully participate in the settlement process envisioned by Federal Rule of Civil Procedure 23(e). *See Shane Group, Inc. v. Blue Cross Blue Shield of Michigan, et. al.,* 825 F.3d 299, 306, 309 (6th Cir. 2016) ("class members cannot participate meaningfully in the process contemplated by Federal Rule of Civil Procedure 23(e) unless they can review the bases of the proposed settlement" and that is particularly true when particular settlement agreement documentation is "the keystone of the settlement agreement"). REBNY Manhattan class counsel should, therefore, be able to review documents evidencing the financial condition of NAR (alongside any New York brokerage that opts in to the NAR Settlement) which was under seal or subpoenaed for trial, utilized at any point

---

[17] Ex. 12 at 2.

during mediation to reach agreement, as well as any other documents that NAR or any New York brokerage opting into the NAR settlement has used to prove their financial state and ability to pay.

Beyond that, the terms of the NAR Settlement Agreement before this Court does not provide settlement class members enough information as to whether the settlement monies are sufficient nor does the Settlement Agreement provide sufficient information regarding how settlement consideration will be distributed. No information is provided to inform REBNY Manhattan Class members if they will receive additional monetary consideration to account for the likely greater injury suffered by REBNY Manhattan Class members as opposed to those who sold a home on an MLS allegedly tainted by the nationwide NAR agreement/conspiracy. Moreover, no information is provided as whether or not REBNY Manhattan Class members will be provided a *pro rata* distribution of settlement consideration (which would at least account for the higher real estate prices in Manhattan).

To the extent that the NAR Settlement seeks to extinguish the REBNY Manhattan class claims against REBNY and REBNY affiliated brokerages, Plaintiffs and class counsel moving for final approval of the NAR Settlement have not adequately represented REBNY class claims in this litigation or in the settlement discussions. Counsel for the REBNY Manhattan class is unaware of any efforts made by plaintiffs and class counsel to assess, estimate, or even discuss damages incurred by the Manhattan REBNY class members in connection with the NAR Settlement. Attempting to settle additional claims (when no attempt has been made to determine the value of those claims) is a factor that weights against approval of a class action settlement. *See Branson v. Pulaski Bank*, 2015 WL 139759, at * 5 (W.D. Mo. Jan. 12, 2025). Moreover, Plaintiffs and class counsel have made no efforts to involve REBNY class counsel who have asserted Manhattan specific class claims for nearly a year. *See Martin v. Cargill, Inc.*, 295 F.R.D. 380, 387 (D. Minn.

2013) (final approval of class action settlement rejected, in part, because a global settlement attempted to subsume pending claims asserted elsewhere without the involvement of that additional counsel).

Aside from meager monetary consideration and an unclear method of distributing settlement proceeds, the practice changes envisioned by the settlement agreements are repetitive and ephemeral given that they are mandated for only 7 years. Even assuming the practice changes contemplated by each settlement agreement was as fulsome as the settling parties suggest, the fact that each agreement provides for a sunset provision seven years after the effective date of the agreement severely undercuts the efficacy of these changes. Besides the fact that NAR and each covered brokerage can simply wait out the practice changes and then return to the same anticompetitive behavior as before, it is an open question whether these practice changes will have much of a discernable long term effect on the real estate industry. Seven years of practice changes is not adequate, based on Defendants' highly profitable decades long practice of fixing real estate commissions, to ensure the anticompetitive practice will not resurface. Stronger practice changes (with rigid compliance checks) that last longer than seven years are needed to ameliorate decades of harm stemming from the anticompetitive practices alleged in these cases.

## CONCLUSION

For the reasons stated herein, Monty March respectfully submits that the Court should reject, in part, the proposed settlements with the National Association of Realtors as to March's and the REBNY Manhattan Class claims.

Dated: October 28, 2024                                             Respectfully submitted.

**MOTLEY RICE LLC**

*/s/ Michael M. Buchman*_____
Michael M. Buchman

Telephone: (212) 577-0050
mbuchman@motleyrice.com
Nathaniel Blakney
Telephone: (212) 577-0046
nblakney@motleyrice.com
Hannan A. Seirafi
Telephone: (212) 577-0044
hseirafi@motleyrice.com
800 Third Avenue, Suite 2401
New York, New York 10022

**MILLER LAW LLC**

Marvin A. Miller
Telephone: (312) 332-3400
MMiller@millerlawllc.com
Mathew Van Tine
Telephone: (312) 676-2668
MVantine@millerlawllc.com
53 W. Jackson Blvd., Suite 1320
Chicago, Illinois 60604

*Counsel for Objector Monty March*

_____*Monty March*_____ Dated 10/28/24
MONTY MARCH