# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

| | |
|---|---|
| RHONDA BURNETT, JEROD BREIT, JEREMY KEEL, HOLLEE ELLIS, and FRANCES HARVEY, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | Case No. 4:19-cv-00332-SRB |
| v. | Judge Stephen R. Bough |
| THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC, RE/MAX LLC, and KELLER WILLIAMS REALTY, INC., | |
| Defendants. | |

## SUGGESTIONS IN SUPPORT OF FINAL APPROVAL OF THE HOMESERVICES DEFENDANTS' NATIONWIDE CLASS SETTLEMENT

# TABLE OF CONTENTS

I.      BACKGROUND ...................................................................................................1

II.     THIS COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT..........2

        A.      The Class Representatives and Class Counsel Have Adequately
                Represented the Class ...............................................................................3

        B.      The Settlement Was Negotiated at Arm's Length ...................................3

        C.      The Relief Provided for in the Settlement Is Adequate When Balanced
                Against Countervailing Considerations ....................................................3

                1.      Continued Litigation Against HomeServices Presented
                        Considerable Risks for the Class ................................................4

                2.      The HomeServices Defendants' Financial Condition Favors Final
                        Approval ......................................................................................6

                3.      Continued Litigation Guaranteed Increased Costs and Significant
                        Delays in Achieving Any Recovery .............................................7

                4.      Overwhelming Acceptance of the Settlement by the Class Favors
                        Final Approval .............................................................................8

        D.      The Settlement Treats Class Members Equitably ....................................8

III.    THE OBJECTORS' ARGUMENTS ARE NOT PERSUASIVE .......................................8

        A.      This Court Properly Certified a Nationwide Settlement Class ................9

        B.      The Settlement's Release of Claims Against Franchisees Is Proper ....................10

        C.      The Settlement's Release of Buyer Claims Is Proper ............................11

        D.      The Settlement Is Fair and Provides Value to the Class ........................14

        E.      The Spring Way Objectors' Attack on the Practice Change Commitments
                Fails.........................................................................................................14

        F.      The Long-Form Notice Was Proper .......................................................15

IV.     CONCLUSION ..................................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adams v. S. Farm Bureau Life Ins. Co.*,
493 F.3d 1276 (11th Cir. 2007) ..................................................................................12

*Adkins v. Nestle Purina PetCare Co.*,
2015 WL 10892070 (N.D. Ill. June 23, 2015) .........................................................10

*In re Agent Orange Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd sub nom. In re Agent Orange Prod.
Liab. Litig. MDL No. 381*, 818 F.2d 145 (2d Cir. 1987)............................................6

*Albin v. Resort Sales Missouri, Inc.*,
2021 WL 5107730 (W.D. Mo. May 21, 2021) .........................................................10

*Anderson v. Travelex Ins. Servs. Inc.*,
2021 WL 4307093 (D. Neb. Sept. 22, 2021) ..............................................................4

*In re BankAmerica Corp. Sec. Litig.*,
350 F.3d 747 (8th Cir. 2003) ......................................................................................8

*Burnett v. Nat'l Ass'n of Realtors*,
2024 WL 2842222 (W.D. Mo. May 9, 2024) ...............................1, 7, 9, 10, 13, 15

*Cleveland v. Whirlpool Corp.*,
2022 WL 2256353 (D. Minn. June 23, 2022)...........................................................4, 8

*Concord Boat Corp. v. Brunswick Corp.*,
207 F.3d 1039 (8th Cir. 2000) ....................................................................................6

*Cont'l T.V., Inc. v. GTE Sylvania Inc.*,
433 U.S. 36 (1977)......................................................................................................5

*Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*,
807 F. App'x 752 (10th Cir. 2020) ...........................................................................12

*Flaum v. Doctor's Assocs., Inc.*,
2019 WL 2576361 (S.D. Fla. Mar. 11, 2019)...........................................................10

*In re Gen. Am. Life Ins. Co. Sales Practices Litig.*,
357 F.3d 800 (8th Cir. 2004) .....................................................................................10

*Graves v. Cam2 Int'l LLC*,
2020 WL 3968040 (W.D. Mo. July 13, 2020)...........................................................13

*Grunin v. Int'l House of Pancakes*,
513 F.2d 114 (8th Cir. 1975) ......................................................................................6

*Hanson v. Acceleration Life Ins. Co.*,
  2000 WL 33340298 (D.N.D. June 21, 2000) ............................................................ 9

*Holden v. Burlington N., Inc.*,
  665 F. Supp. 1398 (D. Minn. 1987) ......................................................................... 6

*Illinois Brick Co. v. Illinois*,
  431 U.S. 720 (1977) .................................................................................................. 5

*Karg v. TransAmerica Corp.*,
  2019 WL 3938471 (N.D. Iowa Aug. 20, 2019) ...................................................... 12

*Keil v. Lopez*,
  862 F.3d 685 (8th Cir. 2017) ................................................................................. 14

*Khoday v. Symantec Corp.*,
  2016 WL 1637039 (D. Minn. Apr. 5, 2016) .............................................................. 3

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
  551 U.S. 877 (2007) .................................................................................................. 5

*In re Literary Works in Elec. Databases Copyright Litig.*,
  654 F.3d 242 (2d Cir. 2011) ................................................................................... 12

*Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*,
  921 F.2d 1371 (8th Cir. 1990) .................................................................................. 2

*In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales
  Pracs. & Prod. Liab. Litig.*,
  91 F.4th 174 (4th Cir. 2024) .................................................................................. 12

*McCabe v. Six Continents Hotels, Inc.*,
  2015 WL 3990915 (N.D. Cal. June 30, 2015) ....................................................... 11

*North Dakota v. Lange*,
  900 F.3d 565 (8th Cir. 2018) ................................................................................. 11

*State of N. D. ex rel. Olson v. Andrus*,
  581 F.2d 177 (8th Cir. 1978) .................................................................................... 2

*Paxton v. Union Nat'l Bank*,
  688 F.2d 552 (8th Cir. 1982) .................................................................................... 3

*Petrovic v. Amoco Oil Co.*,
  200 F.3d 1140 (8th Cir. 1999) ........................................................................... 13, 15

*In re Prudential Ins. Co. Am. Sales Prac. Litig.*,
  148 F.3d 283 (3d Cir. 1998) ................................................................................... 12

# TABLE OF AUTHORITIES
## (*Continued*)

*Rogowski v. State Farm Life Ins. Co.*,
2023 WL 5125113 (W.D. Mo. Apr. 18, 2023) ........................................................9

*Summit Health, Ltd. v. Pinhas*,
500 U.S. 322 (1991) ..............................................................................................5

*In re Uponor, Inc. F1807 Plumbing Fittings Prods. Liab. Litig.*,
716 F.3d 1057 (8th Cir. 2013) ..............................................................2, 4, 11, 15

*Van Horn v. Trickey*,
840 F.2d 604 (8th Cir. 1988) .................................................................................4

*Vladimir v. U.S. Banknote Corp.*,
976 F. Supp. 266 (S.D.N.Y. 1997) .........................................................................4

*Walkinshaw v. CommonSpirit Health*,
2022 WL 5255287 (D. Neb. Oct. 6, 2022) .............................................................6

*White v. Nat'l Football League*,
836 F. Supp. 1458 (D. Minn. 1993) .......................................................................8

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
396 F.3d 922 (8th Cir. 2005) .............................................................................2, 7

*Woodard v. Navient Sols., LLC*,
2024 WL 94468 (D. Neb. Jan. 9, 2024) ................................................................9

## Rules

Fed. R. Civ. P. 23(e)(2) ..................................................................................2, 3, 8

Defendants HomeServices of America, Inc. ("HSA"), BHH Affiliates, LLC ("BHH") and HSF Affiliates LLC ("HSF") (collectively, the "HomeServices Defendants") write in support of final approval of their settlement with Plaintiffs and the settlement class. The Court should approve the settlement because it is fair, reasonable, and adequate under Fed. R. Civ. P. 23(e)(2)—a conclusion thoroughly explained in Plaintiffs' motion, Dkt. 1595.[1] To avoid repetition, the HomeServices Defendants make this brief submission to address matters specific to their settlement.

## I.    BACKGROUND

On April 26, 2024, after nearly five years of litigation and a jury trial, the HomeServices Defendants reached a class settlement, subject to the Court's approval, in which they agreed to pay $250 million to the settlement class and make certain changes to their business practices (the "Settlement"). Dkt. 1518-1, Ex. A. The non-monetary terms of the Settlement are substantially similar to the non-monetary terms in the settlements reached with Keller Williams, Anywhere, and RE/MAX, all three of which this Court has already finally approved. *Burnett v. Nat'l Ass'n of Realtors*, 2024 WL 2842222 at *11 (W.D. Mo. May 9, 2024); *see also* Order, *Gibson v. Nat'l Ass'n of Realtors* ("*Gibson* Order"), No. 4:23-cv-788 (W.D. Mo. Nov. 4, 2024), Dkt. 530 (granting final approval to settlement agreements with other brokerage companies).

Importantly, at the time the Settlement was reached, the jury's verdict in this case was vulnerable to being vacated. Specifically, at the time, pending before this Court were a motion for judgment as a matter of law and a motion for a new trial, each of which rested on compelling grounds. The HomeServices Defendants also had a petition for a writ of certiorari pending in the United States Supreme Court, in which they argued that Plaintiffs' claims should have been submitted to arbitration and never tried in federal court at all. While the HomeServices Defendants believed in the strength of these post-trial motions and the cert petition, the astronomical damages

---

[1] The HomeServices Defendants incorporate by reference the arguments raised in Plaintiffs' suggestions in support of final approval, to the extent they apply to the HomeServices Defendants' settlement agreement and any objections thereto.

awarded by the jury rendered their ability even to post the appeal bond required to stay enforcement of the judgment highly uncertain.

Ultimately, in light of their financial condition, and in order to put the burden of litigation behind them, the HomeServices Defendants agreed to a settlement figure ($250 million), inclusive of interest and paid over roughly four years, that represented the uppermost limit of their ability to pay while still remaining financially viable. During settlement negotiations, the HomeServices Defendants provided Plaintiffs' counsel highly confidential information sufficient to evaluate their financial condition. *See* Dkt. 1518-2 at 4.

Since this Court preliminarily approved the Settlement (Dkt. 1520), acceptance of the Settlement has been robust. Indeed, of the millions of class members who received notice of the Settlement, only three objections to it have been filed. *See* Dkts. 1555-1, 1561, 1563.

## II. THIS COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

As an initial matter, the Settlement "is 'presumptively valid,'" *In re Uponor, Inc. F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013) (quoting *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1391 (8th Cir. 1990)), given the "broad policy encouraging settlements," *State of N. D. ex rel. Olson v. Andrus*, 581 F.2d 177, 181 n.7 (8th Cir. 1978). The Settlement also satisfies Rule 23's requirement that a class settlement be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Because "a class action settlement is a private contract negotiated between the parties," the fairness inquiry is not rigid or formulaic but will adjust in response to the different terms and circumstances of the agreement in each case. *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 934 (8th Cir. 2005). Accordingly, the court's role is "to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned." *Id.* Rule 23(e)(2) sets forth four factors that the Court should consider in approving a settlement. Fed. R. Civ. P. 23(e)(2). Here, all four factors militate in favor of final approval.

## A. The Class Representatives and Class Counsel Have Adequately Represented the Class

To satisfy this requirement, the class representatives must "have common interests with members of the class" and have "vigorously prosecute[d] the interests of the class through qualified counsel." *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562–63 (8th Cir. 1982); Fed. R. Civ. P. 23(e)(2)(A). While the class representatives and class counsel are in the best position to address this factor in their own motion, it has been the HomeServices Defendants' experience that the class representatives and class counsel have vigorously prosecuted this case and fought for their interests, whether before trial, during trial, or in settlement negotiations. Dkt. 1595 at 18–19. And despite objectors' attempts to argue otherwise, the record reflects no conflicts between the class representatives and the settlement class, whose claims are aligned. *See infra* p. 13 n.5.

## B. The Settlement Was Negotiated at Arm's Length

The Settlement was also negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). Specifically, the Settlement was reached after the parties litigated the case to a jury verdict and included several telephonic and in-person mediations with a nationally recognized and highly experienced mediator, two mediations with a retired federal court judge, and a mediation with a federal magistrate judge. *See, e.g.*, *Khoday v. Symantec Corp.*, 2016 WL 1637039, at *8 (D. Minn. Apr. 5, 2016) (explaining that "arm's length negotiations and an absence of collusion is reasonably inferred in light of the fact that the adversarial process of this litigation has been vigorous during the course of the dispute, spanning several years and hundreds of court filings, with adversarial motions pending even at the time of settlement" and "the parties participated in three rounds of mediation" with an "experienced, independent mediator").

## C. The Relief Provided for in the Settlement Is Adequate When Balanced Against Countervailing Considerations

"[T]he relief provided for the class is adequate, taking into account … the costs, risks, and delay of trial and appeal" among other relevant circumstances. Fed. R. Civ. P. 23(e)(2)(C). Here, all four of the factors that courts consider when assessing the adequacy of class settlements favor final approval: "(1) the merits of the plaintiff's case weighed against the terms of the settlement,

(2) the defendant's financial condition, (3) the complexity and expense of further litigation, and (4) the amount of opposition to the settlement." *In re Uponor*, 716 F.3d at 1063 (quoting *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988)).[2]

### 1. Continued Litigation Against the HomeServices Defendants Presented Considerable Risks for the Class

The terms of the Settlement are fair, reasonable, and adequate when balanced against the strength of Plaintiffs' case. *Van Horn*, 840 F.2d at 607. Where, as here, a settlement is reached after trial, courts consider the "reasonableness of the settlement" in light of the "jury verdict as well as the complexity, expense and likely duration of future appellate litigation on the jury verdict[, and] … the risk of the jury verdict being overturned either on defendants' motion for judgment as a matter of law or on appeal." *Vladimir v. U.S. Banknote Corp.*, 976 F. Supp. 266, 266 (S.D.N.Y. 1997).

At the time of the Settlement, the HomeServices Defendants had filed post-trial motions explaining that the jury's verdict in this case suffered from two fundamental problems. First, the evidence presented at trial was insufficient to support the verdict, which entitled the HomeServices Defendants to judgment as a matter of law. Second, the trial was tainted by errors that required, at the very least, a new trial. Plaintiffs faced a significant risk that the jury's verdict could have been wiped out entirely as a result of these motions. And even if the HomeServices Defendants had not prevailed on these motions, they could have commenced an appellate process that would have been lengthy and complex and may have left Plaintiffs with nothing. Simply put, despite the positive outcome Plaintiffs received in the jury trial, the battle was far from over. Summarized briefly below are a few examples of the key legal issues Plaintiffs would have had to contend with had litigation continued.

*First*, Defendants vehemently contested the application of the per se standard to Plaintiffs' antitrust claim. Per se condemnation is reserved for narrow categories of "manifestly

---

[2] *See Cleveland v. Whirlpool Corp.*, 2022 WL 2256353, at *5 (D. Minn. June 23, 2022) (analyzing the *Van Horn* factors to assess adequacy of relief); *see also Anderson v. Travelex Ins. Servs. Inc.*, 2021 WL 4307093, at *2 (D. Neb. Sept. 22, 2021) (approving settlement under Rule 23(e) by evaluating *Van Horn* factors).

anticompetitive" conduct, *Cont'l T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 50 (1977), that "would always or almost always tend to restrict competition and decrease output," *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007) (internal quotation marks omitted). Here, there was ample evidence in the trial record that the challenged NAR rules actually *benefitted* home sellers, making application of the per se standard entirely inappropriate. Dkt. 1362 at 8–25. This fundamental error was highly likely to be corrected on appeal (if it was not remedied by this Court) and would have completely undone Plaintiffs' victory at trial and at the very least required a new trial applying the rule of reason standard.

*Second*, no reasonable jury could have found that the HomeServices Defendants participated in any conspiracy. That is, Plaintiffs at trial presented no evidence at all (whether direct or circumstantial) that any of the HomeServices Defendants agreed with any other defendant to follow and enforce NAR's rules, even though "the essence of any violation of § 1 is the illegal agreement itself." *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 330 (1991); *see* Dkt. 1350 at 10–26. Had either this Court or the Eighth Circuit agreed with the HomeServices Defendants on this point, the result would have been judgment as a matter of law in their favor.

*Third*, trial demonstrated that Plaintiffs were not "direct purchasers" from the HomeServices Defendants (which are holding companies that do not sell broker services, charge commissions, or transact directly with consumers); rather, Plaintiffs are two or more steps removed from them in the chain of commerce. Dkt. 1350 at 26–32. Plaintiffs thus faced a significant risk that post trial (or on appeal) a finding would be made that they lacked antitrust standing to pursue their damages claims against the HomeServices Defendants. *See Illinois Brick Co. v. Illinois*, 431 U.S. 720, 735–36 (1977) (it is black-letter law that only "direct purchasers" may recover damages from an alleged antitrust violator). This would have resulted in judgment as a matter of law for the HomeServices Defendants.

*Fourth*, Plaintiffs failed to prove injury in fact—a key element of their antitrust claim. The only evidence Plaintiffs offered at trial to show they were injured was the testimony of their economic expert, Dr. Schulman. However, as explained in the post-trial briefs, Dr. Schulman's

construction of an overly simplistic "but-for" world was completely divorced from the record evidence. Dkt. 1350 at 32–36; *see also* Dkt. 1358; *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1055–57 (8th Cir. 2000) (defendants entitled to judgment as a matter of law where the plaintiffs' injury and damages case rested on an expert who did "not incorporate all aspects of the economic reality" of the relevant market into his model and "ignored inconvenient evidence"). Had this argument been successful, it could have resulted in judgment as a matter of law for the HomeServices Defendants, or at the very least a new trial.

These issues, and others, were not only likely to undo the jury's verdict, but also posed risks to any other plaintiff seeking to bring claims on the same theories. The reality of these risks, combined with "the complexity, expense, and likely duration of" continued litigation, weighs in favor of approving the Settlement. *Walkinshaw v. CommonSpirit Health*, 2022 WL 5255287, at *3 (D. Neb. Oct. 6, 2022). This is particularly so when these risks are balanced against the relief provided for in the Settlement—i.e., a substantial $250 million payment and meaningful conduct changes.

### 2. The HomeServices Defendants' Financial Condition Favors Final Approval

As to the second *Van Horn* factor, the HomeServices Defendants' financial condition favors approval. Courts routinely consider "the defendant's overall financial condition and ability to pay" when evaluating the fairness of a class settlement. *See Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 1254 (8th Cir. 1975) (affirming approval of a class settlement that took into account the defendant's ability to pay and noting the "evidence to suggest that a total victory [for plaintiffs] … would have been financially disastrous if not fatal to [defendant]"). This is true even where, as here, a settlement "amount[s] to only a fraction of the potential cash recovery." *Holden v. Burlington N., Inc.*, 665 F. Supp. 1398, 1414 (D. Minn. 1987); *see also In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984) ("[t]he fact that the settlement amount may equal but a fraction of potential recovery does not render the settlement inadequate"), *aff'd sub nom. In re Agent Orange Prod. Liab. Litig. MDL No. 381*, 818 F.2d 145 (2d Cir. 1987).

Here, the HomeServices Defendants' financial condition amply supports final approval. The HomeServices Defendants did not have sufficient funding to satisfy the jury's verdict or any amount higher than the $250 million that they agreed to pay over four years. They also lacked sufficient cash or other liquid assets to post an appeal bond for the full amount of the verdict, and had they been unable to stay enforcement of the verdict, would have been pushed into bankruptcy. During the course of their lengthy and hotly contested settlement negotiations with Plaintiffs, the HomeServices Defendants confidentially provided detailed proof of their financial condition that persuaded Plaintiffs' counsel that the $250 million dollar settlement amount was the most they could afford to pay.

In short, as this Court has previously recognized, "[o]btaining relief now, rather than risk bankruptcy or reversal on appeal, was the most prudent thing Class Counsel could have done." *Burnett*, 2024 WL 2842222, at *11.

### 3. Continued Litigation Guaranteed Increased Costs and Significant Delays in Achieving Any Recovery

As to the third *Van Horn* factor, the complexity of the case and expense of further litigation also favor final approval. Indeed, had the HomeServices Defendants been able to post the required bond and pursue their appeal, that would at the very least have significantly increased the costs of litigation and delayed any recovery for years. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d at 933 (affirming settlement because had the case continued, it would "likely drag on for years, require the expenditure of millions of dollars, all the while class members would receive nothing").

The HomeServices Defendants' appetite for vigorously litigating the issues implicated in this case was not limited to appealing any adverse ruling on the post-trial motions, either. For instance, at the time the Settlement was reached, the HomeServices Defendants had sought review in the Supreme Court of their argument that many class members' claims should have been resolved through arbitration. Petition for Writ of Certiorari, *HomeServices of America, Inc. v. Burnett*, No. 23-840 (Feb. 2, 2024). The HomeServices Defendants were also actively litigating

other cases making similar claims based on similar allegations, such as the *Moehrl* action, and were prepared to continue doing so. In light of this, as well as the complexity of the case and the expense of further litigation, the third *Van Horn* factor weighs in favor of final approval.

### 4. Overwhelming Acceptance of the Settlement by the Class Favors Final Approval

The dearth of opposition to the Settlement means that the fourth *Van Horn* factor also weighs in favor of final approval. Of the millions of potential class members who received direct notice of the Settlement from the claims administrator, only 39 opted out. Dkt. 1595-7 at 15. And only *three* objections to the Settlement were filed. Dkts. 1555-1, 1561, 1563. Where, as here, "there are relatively few objections to a class-action settlement [it] suggests that the settlement is fair and reasonable." *Cleveland*, 2022 WL 2256353, at *7; *see also In re BankAmerica Corp. Sec. Litig.*, 350 F.3d 747, 749–50 (8th Cir. 2003) (settlement fair and reasonable where there were ten objections out of "the hundreds of thousands of eligible class members"); *White v. Nat'l Football League*, 836 F. Supp. 1458, 1458 (D. Minn. 1993) (approving settlement where "[l]ess than two percent of the total class objected to the terms of the original settlement" and "[l]ess than one percent of the total class object to the amended version").

### D. The Settlement Treats Class Members Equitably

Lastly, the Settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). As an initial matter, the practice change relief applies equally to all settlement class members nationwide. And every class member is eligible to submit a claim and receive compensation that takes into consideration the amount the class member paid in commissions. *See* Dkt. 1595 at 34.

### III. THE OBJECTORS' ARGUMENTS ARE NOT PERSUASIVE

As noted, only three sets of objectors have objected to the Settlement.[3] *See* Dkts. 1555-1, 1561, 1563. Each set of objectors is represented by attorneys who have filed lawsuits against the

---

[3] Two sets of objectors object in a single brief to both the NAR and HomeServices settlements. The HomeServices Defendants respond only to the objections therein that are directed towards their Settlement. The HomeServices Defendants also do not respond to arguments advanced in briefs objecting to only the NAR settlement, as those objectors did not timely object to the

HomeServices Defendants challenging the same conduct in another forum. *See Burton v. Bluefield Realty Grp., LLC*, No. 7:24-cv-01800 (D.S.C.) (filed by attorneys representing Cheatham objectors); *Lutz v. HomeServices of America, Inc.*, No. 4:24-cv-10040 (S.D. Fla.) (filed by attorneys representing Mullis objectors); *Spring Way Center LLC v. W. Penn Multi-List, Inc.*, No. 2:23-cv-02061 (W.D. Pa.) (filed by attorneys representing Spring Way Center objectors).

Importantly, this Court has twice overruled materially identical objections from these same objectors in its orders finally approving other settlements in this case. *Burnett v. Nat'l Ass'n of Realtors*, 2024 WL 2842222 (W.D. Mo. May 9, 2024); *see also Gibson* Order. Undeterred, these objectors and their counsel come back to the Court once again, offering no explanation for why the result should be any different than the last two times they made the same arguments. The third time should not be the charm.

### A. This Court Properly Certified a Nationwide Settlement Class

The Cheatham and Spring Way objectors contend that a nationwide class should not be certified, claiming that the Settlement "greatly exceed[s] the scope for which classes were certified and for which discovery was conducted." Dkt. 1563 at 3. These objections are unavailing—as this Court previously recognized. *Burnett*, 2024 WL 2842222, at *3. Indeed, courts frequently certify settlement classes that are broader than classes certified before settlement. *E.g.*, *Woodard v. Navient Sols., LLC*, 2024 WL 94468 (D. Neb. Jan. 9, 2024); *Hanson v. Acceleration Life Ins. Co.*, 2000 WL 33340298 (D.N.D. June 21, 2000); *Rogowski v. State Farm Life Ins. Co.*, 2023 WL 5125113 (W.D. Mo. Apr. 18, 2023). In fact, as this Court recently held in approving brokerage settlement agreements in the related *Gibson* case, a nationwide settlement class is particularly appropriate here, as "Plaintiffs have conducted extensive discovery into the alleged nationwide

---

HomeServices Defendants' Settlement. Dkts. 1548, 1552, 1558-1, 1560, 1562; *Gibson* Dkts. 527, 528; *see also* Dkt. 1564 (denied by the Court at Dkt. 1577). Nor do the HomeServices Defendants respond to the *pro se* objectors who raise generalized arguments regarding the total settlement amount or attorney's fee request. Dkts. 1539, 1541. To the extent any of these objections can be construed as directed at the HomeServices Defendants, they should be overruled for the reasons stated herein, and for the reasons stated in Plaintiffs' and NAR's briefs.

conspiracy and have thoroughly litigated the claims, providing a robust factual record on which to assess the claims and base [settlement] negotiations." *Gibson* Order at 7.

Relatedly, these objectors argue that it would "be economical for plaintiffs to pursue" their claims on a "state class basis" as "each claim is worth at least several thousand dollars." Dkt. 1555-1 at 4. However, this argument ignores that the Settlement was structured as a nationwide settlement in large part due to the HomeServices Defendants' limited ability to pay. *See supra* pp. 6–7. In fact, a narrower settlement class would present the very real risk that home sellers outside the class would not recover anything from the HomeServices Defendants. Thus, the Settlement is the best possible result for the class because it guarantees monetary relief to home sellers across the country and ensures that every class member receives an equitable share of the recovery. *See Albin v. Resort Sales Missouri, Inc.*, 2021 WL 5107730, at *5 (W.D. Mo. May 21, 2021) (the absence of "a single nationwide class action" would "discourage class action defendants from settling" (quotation omitted)). The Court should once again overrule these objections.

**B. The Settlement's Release of Claims Against Franchisees Is Proper**

The Cheatham and Spring Way objectors also argue that the Settlement improperly releases the HomeServices Defendants' franchisees, claiming that the franchisees offer no consideration under the terms of the Settlement. Dkt. 1555-1 at 5; Dkt. 1563 at 8. But as this Court has explained, such arguments ignore "the way settlements usually work," as "[n]o part of the consideration on either side" was "keyed to any specific part of the consideration of the other." *Gibson* Order at 37–38 (quoting *In re Gen. Am. Life Ins. Co. Sales Practices Litig.*, 357 F.3d 800, 805 (8th Cir. 2004)). Rather, in return for the substantial consideration offered, the HomeServices Defendants obtained, among other things, a release encompassing their franchisees. Furthermore, as this Court has previously correctly held, it is not "unfair or inappropriate to release corporate affiliates or franchisees (or agents affiliated with those affiliates or franchisees)." *Burnett*, 2024 WL 2842222, at *11 (citing, *inter alia*, *Flaum v. Doctor's Assocs., Inc.*, 2019 WL 2576361, at *3 (S.D. Fla. Mar. 11, 2019), which gave final approval to a settlement releasing all franchisees in a suit against a franchisor); *see also Adkins v. Nestle Purina PetCare Co.*, 2015 WL 10892070, at

*4 (N.D. Ill. June 23, 2015) (final approval of settlement releasing a variety of non-parties, including franchisees); *McCabe v. Six Continents Hotels, Inc.*, 2015 WL 3990915, at *3 (N.D. Cal. June 30, 2015) (preliminary approval of a settlement releasing franchisees).

### C. The Settlement's Release of Buyer Claims Is Proper

The Mullis objectors argue that the Settlement improperly releases claims class members may have relating to transactions in which they were home *buyers* (rather than home *sellers*). Dkt. 1561 at 2. As support for this argument, they contend that the well-established "same factual predicate" test for the release of claims, *In re Uponor*, 716 F.3d at 1065, is not satisfied because "[t]he 'factual predicates' alleged in the claims being settled … have always been the harms class members suffered when paying a commission for selling a home. It has never been the extent to which homebuyers suffer harm due to inflated commissions and home prices or steering." Dkt. 1561 at 6. Because those additional "requirements" are not present, they contend that home buyer claims are not part of the same "factual predicate." *Id.*

But the Settlement incorporates the *Uponor* "same factual predicate" test by defining the term "Released Claims" narrowly to include only causes of action "arising from or relating to conduct that was alleged or could have been alleged in the Actions based on any or all of the same factual predicates for the claims alleged in the Actions …." Dkt. 1518-1 at 17 (Settlement ¶ 13). In addition, "[f]or avoidance of doubt" as to enforceability, the release "extends to, but only to, the fullest extent permitted by law." *Id.* at 23 (Settlement ¶ 29). Moreover, as this Court has found previously, the Mullis objectors adopt an overly narrow view of the "same factual predicate" test. That is because what makes the conduct in this case supposedly anticompetitive does not vary depending on whether a class member participates in a real estate transaction as a home seller, rather than as a home buyer. Accordingly, any class member with both seller and buyer claims would "ordinarily be expected to try them all in one judicial proceeding," as they "share the same factual predicate." *Gibson Order* at 47 (quoting *North Dakota v. Lange*, 900 F.3d 565, 568–69 (8th Cir. 2018)). And, as this Court has found, "releases in antitrust direct-purchaser settlements commonly cover all claims the settlement class members could raise against the settling defendant

arising out of the same conspiracy, including when those direct purchasers may also have indirect-purchaser claims." *Id.* at 45–46 (collecting cases).

This Court's prior rejection of this scope-of-the-release objection is, moreover, in accord with the many cases that have rejected similar attempts to frame the "same factual predicate" too narrowly. *See, e.g.*, *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 248 (2d Cir. 2011) (rejecting "overly narrow view" of factual predicate where claims arose from same broad underlying facts); *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 765–66 (10th Cir. 2020). Courts also regularly reject arguments that minor factual distinctions are sufficient to create a different factual predicate. *See, e.g.*, *Adams v. S. Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1290 (11th Cir. 2007) ("The Adams Class Action … alleged an overarching scheme of fraud and deception by Southern Farm in connection with the sale of these flexible premium types of policies, a broad nucleus of fact that would encompass the fraud claims now being alleged by the appellants." (emphasis added)); *In re Prudential Ins. Co. Am. Sales Prac. Litig.*, 148 F.3d 283, 311 (3d Cir. 1998) ("The named plaintiffs … all have claims arising from the fraudulent scheme perpetrated by Prudential. That overarching scheme is the linchpin of [the complaint], regardless whether each class member alleges a churning claim, a vanishing premium claim, an investment plan claim, or some other injury.").

The Mullis objectors' cases are, moreover, inapposite. Dkt. 1561 at 6. In *Karg v. TransAmerica Corp.*, 2019 WL 3938471, at *4 (N.D. Iowa Aug. 20, 2019), for instance, the settlement at issue released claims relating to "the method of procuring [a] portfolio management service through an intermediary and the resulting fees." The court held that *separate* conduct alleged in the complaint, which concerned "the inclusion or performance of the underlying investments themselves" was not covered by the release. *Id.* Here, in contrast, there is no distinction between the conduct that underlies home seller and home buyer claims. And in *In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 91 F.4th 174, 184 (4th Cir. 2024), the court held that "consumer protection claims … are not likely to 'depend upon the very same set of facts' as personal injury or wrongful death claims."

Here, by contrast, claims stemming from class members' home purchases depend on the same facts as claims stemming from class members' home sales, as the complaints filed in recent home buyer cases illustrate. *See, e.g.*, Am. Compl., *Batton v. Nat'l Assoc. of Realtors*, No. 1:21-cv-430 (N.D. Ill. July 6, 2022), Dkt. 84 (home buyer case alleging an antitrust conspiracy indistinguishable from the conspiracy alleged in this case); Am. Compl., *Lutz v. HomeServices of America, Inc.*, No. 4:24-cv-10040 (S.D. Fla. June 11, 2024), Dkt. 45 (same).[4] Finally, *Graves v. Cam2 Int'l LLC*, 2020 WL 3968040, at *9 (W.D. Mo. July 13, 2020) did not even address the same factual predicate test, and instead simply held that because the settlement at issue expressly released only claims relating to the purchase of a product "in Missouri," it did not bar claims for purchases made in other states. *Id.*

Relatedly, the Mullis objectors argue that "it would be patently unfair and unreasonable for the settlement[] to release [homebuyer claims] … while giving them no weight in allocating the settlements' proceeds," but simultaneously acknowledge that "[t]he settling parties have not made any plan of allocation available." Dkt. 1561 at 5, 7–8. The Court has repeatedly explained that arguments regarding allocation are "premature," and "should be raised in the allocation phase." *Gibson* Order at 44; *Burnett*, 2024 WL 2842222, at *17. This argument is thus premature and should be rejected.

In sum, the Court should once again overrule objections attacking the scope of the release in the Settlement.[5]

---

[4] Furthermore, the Settlement expressly *does not* release claims "concerning product liability, breach of warranty, breach of contract or tort of any kind (other than a breach of contract or tort based on any factual predicate in this Actions), a claim arising out of violation of the Uniform Commercial Code, or personal or bodily injury" or a number of claims that a class member may have "against his or her own broker or agent" other than claims based on the same factual predicate at issue here. Dkt. 1518-1 at 24 (Settlement ¶ 31).

[5] The Mullis objectors also once again raise the argument that home buyers are not adequately represented in the Settlement. Dkt. 1561 at 7–9. However, as this Court previously held, these arguments are "unfounded." *Burnett*, 2024 WL 2842222, at *13 (citing *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1146 (8th Cir. 1999)). Indeed, "[s]everal of the named Plaintiffs in this case both bought and sold homes within the class period." *Id.*

### D.    The Settlement Is Fair and Provides Value to the Class

The objectors also argue that the monetary figure in the Settlement (i.e., $250 million) is "grossly disproportionate to the amount appropriate to adequately compensate … injured parties." Dkt. 1563 at 3–4; *see also* Dkt. 1555-1 at 2.  As support, they point to certain financial figures purportedly reported on Berkshire Hathaway's website for HomeServices of America, Inc.  Dkt. 1563 at 8.  This argument misunderstands the nature of the HomeServices Defendants' business and its revenues.  Indeed, the vast majority of their gross revenues flow out of the companies as soon as they are received to cover commission expenses, mortgage fees, settlement services, and other direct costs.  As a result, the HomeServices Defendants' free cash flow for 2023 constituted only a small fraction of their *net* revenue (and an even *smaller* fraction of the gross revenue number the objectors erroneously rely on).  Dkt. 1518-2 at 4–5.  Moreover, as previously discussed, *supra* pp. 6–7, the $250 million settlement figure represents the outer limit of the HomeServices' Defendants ability to pay while remaining financially viable.  *Keil v. Lopez*, 862 F.3d 685, 696 (8th Cir. 2017) ("As courts routinely recognize, a settlement is a product of compromise and the fact that a settlement provides only a portion of the potential recovery does not make such settlement unfair, unreasonable or inadequate.").

Relatedly, some objectors suggest that $250 million is too low given that the HomeServices Defendants are "subsidiar[ies] of Berkshire Hathaway."  *E.g.*, Dkt. 1555-1 at 1.  But Berkshire Hathaway (and Berkshire Hathaway Energy, itself a subsidiary of Berkshire Hathaway) are separate and distinct legal entities that have no legal or contractual obligation to cover the liabilities of the HomeServices Defendants, including the *Burnett* judgment, or to fund a settlement.  For that simple reason, the fairness of the Settlement must be judged against the resources of the HomeServices Defendants only—not those of their parent entities.

### E.    The Spring Way Objectors' Attack on the Practice Change Commitments Fails

The Spring Way objectors complain that the agreed-to practice changes in the Settlement are insufficient because they supposedly do not go far enough and "expire after just five years."

*See, e.g.*, Dkt. 1563 at 4, 9. But as this Court has repeatedly concluded in analyzing materially identical practice change commitments, "the practice change relief is significant" and provides "great value" to the class. *Burnett*, 2024 WL 2842222, at *6, *11–12. For instance, these commitments require "Settling Defendants, among other things, to not enforce the Mandatory Offer of Compensation Rule and to train their agents that commissions are negotiable." *Id.* at *17. Indeed, these commitments will have a significant impact on "not only the Settling Defendants but also the broader industry," particularly when coupled with the practice changes provided for in the settlement reached with NAR. *Id.* at *6. Furthermore, as this Court has held, "the time limitation on these practice changes is reasonable"—as "[i]njunctive relief settlements with sunset provisions are routinely approved, often for shorter periods than the five-year periods at issue here." *Id.* at *12. The Court should thus once again overrule objections to the sufficiency of the practice change commitments in the Settlement.

## F. The Long-Form Notice Was Proper

Finally, two sets of objectors argue that the long-form notice improperly "does not list the size of the verdict or the much smaller class certified for trial in *Burnett*" and fails to inform class members of their likely recovery under the Settlement. Dkt. 1555-1 at 9; *see also* Dkt. 1563 at 9–10. This Court has already overruled identical objections, observing (correctly) that the Eighth Circuit has held that "[v]alid notice of a settlement agreement 'may consist of a very general description' of settlement terms." *Gibson* Order at 28 (quoting *In re Uponor, Inc.*, 716 F.3d at 1065); *Petrovic*, 200 F.3d at 1152–53. Here, "the notice … easily satisfied this standard." *Id.* at 27–28.

## IV. CONCLUSION

For the foregoing reasons, in addition to the reasons presented in Plaintiffs' moving papers, the Settlement is fair, reasonable, and adequate and should receive final approval. The HomeServices Defendants also join Plaintiffs in respectfully requesting that this Court direct entry of a partial final judgment with respect to the settlement class's claims against the HomeServices Defendants pursuant to Federal Rule of Civil Procedure 54(b).

Dated: November 20, 2024

Respectfully submitted,

/s/ Robert D. MacGill
Robert D. MacGill, pro hac vice
Matthew T. Ciulla, pro hac vice
Patrick J. Sanders, pro hac vice
MACGILL PC
156 E. Market Street
Suite 1200
Indianapolis, IN 46204
(317) 721-1253
Robert.MacGill@MacGillLaw.com
Matthew.Ciulla@MacGillLaw.com
Patrick.Sanders@MacGillLaw.com

Brian C. Fries
bfries@lathropgage.com
LATHROP GAGE LLP - KCMO
2345 Grand Avenue
Suite 2200
Kansas City, MO 64108-2618
(816) 292-2000

Jennifer M. Keas, *pro hac vice*
FOLEY & LARDNER LLP
3000 K Street NW
Washington, DC 20007
(202) 672-5300
jkeas@foley.com

Theodore Joseph Boutrous, Jr, *pro hac vice*
Christopher D. Dusseault, *pro hac vice*
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071
(213) 229-7804
tboutrous@gibsondunn.com
cdusseault@gibsondunn.com

Gregg J. Costa, *pro hac vice*
Gibson, Dunn & Crutcher LLP
811 Main Street
Suite 3000
Houston, TX 77002
(346) 718-6649
gcosta@gibsondunn.com

Julian Wolfe Kleinbrodt, *pro hac vice*
Gibson, Dunn & Crutcher LLP
One Embarcadero Center
Suite 2600
San Francisco, CA 94111
(415) 393-8382
jkleinbrodt@gibsondunn.com

Cynthia Richman, *pro hac vice*
Harry R.S. Phillips, *pro hac vice*
Gibson, Dunn & Crutcher LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500
crichman@gibsondunn.com
hphillips@gibsondunn.com

***Counsel for Defendants***
***HomeServices of America, Inc., BHH***
***Affiliates, LLC, and HSF Affiliates LLC.***

16

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 20, 2024, an electronic copy of the foregoing was filed with the Clerk of the Court by using the CM/ECF system and service upon all counsel of record will be accomplished by the CM/ECF system.

/s/ *Robert D. MacGill*
Robert D. MacGill

17