IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| RHONDA BURNETT, JEROD BREIT, HOLLEE ELLIS, FRANCES HARVEY, and JEREMY KEEL, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC, RE/MAX LLC, and KELLER WILLIAMS REALTY, INC.,<br><br>Defendants. | Case No. 19-CV-00332-SRB |

**THE AGENCY AND BROWN HARRIS STEVENS' SUGGESTIONS AND RESPONSE TO ROBERT FRIEDMAN (DOC. 1560) AND MONTY MARCH (1562) OBJECTIONS TO THE PROPOSED NATIONAL CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND AND SETTLEMENT TERMS ................................................... 2

   A. The Litigation ........................................................................................................ 2

   B. Settlement Negotiations ........................................................................................ 3

III. MARCH AND FRIEDMAN'S OBJECTIONS HAVE ALREADY BEEN OVERRULED IN GIBSON AND SHOULD BE OVERRULED IN THIS CASE ........................................ 5

   A. Similar Issues of Factual Predicate, Standing, Total Settlement Amount, and Pro Rata Distribution Have Already Been Decided ........................................ 5

   B. Statements to the JPML Are Not Inconsistent with Factual Predicate ................. 12

IV. CONCLUSION ............................................................................................................ 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Angela Boykin v. National Association of Realtors, et al.*,
   Case No. 2:24-cv-00340 ...............................................................................................3

*Gael Fierro and Patrick Thurber v. National Association of Realtors, et al.*,
   Case No. 2:24-cv-00449 ...............................................................................................3

*Gibson, et al. v. The National Association of Realtors, et al.*,
   4:23-cv-788-SRB ..........................................................................................................1

*Hao Zhe Wang v. National Association of Realtors, et al.*,
   Case No. 1:24-cv-2371 .................................................................................................3

*Moehrl v. Nat'l Assn of Realtors,*
   (N.D. Ill. Oct. 18, 2022)............................................................................................2, 3

*Monty March v. Real Estate Board of New York, et al.*,
   Case No. 1:23-cv-09995 (S.D.N.Y. Nov. 13, 2023)..................................................3, 5

*Nathaniel Whaley v. National Association of Realtors, et al.*,
   Case No. 2:24-cv-00105 ...............................................................................................3

*In re: Real Est. Comm'n Antitrust Litig.*,
   Case MDL No. 3100 (JPML May 12, 2024) .........................................................12, 13

*Robert Friedman v. The Real Estate Board of New York, Inc., et al.*,
   Case No. 1:24-cv-00405 (S.D.N.Y. Jan. 18, 2024) ...................................................3, 5

**Statutes**

Sherman Act, 15 U.S.C. § 1............................................................................................................2

I.  **INTRODUCTION**

The Agency[1] and Brown Harris Stevens[2] file this joint response to select objections filed to the proposed national class action settlement with the National Association of Realtors ("NAR") and related "opt-in" settlements. Principally, The Agency and Brown Harris Stevens respond to the objections by Robert Friedman (Doc. 1560) and Monty March (Doc. 1562). Notably, the essentially identical arguments raised by March and Friedman were addressed and overruled by this Court in *Gibson, et al. v. The National Association of Realtors, et al.*, 4:23-cv-788-SRB (Doc. 530)[3].

With respect to the settlements themselves, thirteen brokerage firms, 15 non-Realtor MLSs, and 547 Realtor MLSs "opted into" the NAR Settlement. These Settlements together comprise a total settlement fund of almost $700 million. This fund is in addition to other settlements submitted for approval in this case and the *Gibson* action. All told, the total monetary value of settlements across both cases is more than $1 billion. In addition to providing for a monetary recovery for the class, the Settling Defendants obligate themselves to make important changes in their practices, detailed in the Settlement Agreements and summarized in the briefs in support of preliminary approval. *See* Docs. 1458 (NAR), 1538 (opt-in entities); https://www.realestatecommissionlitigation.com/nar-documents. These reforms will promote price competition and, over time, are expected to bring about meaningful benefits for consumers.

This Court has already preliminarily approved the proposed settlements. *See* Docs. 1460,

---

[1] RealTech Holdings, Inc., Suitey, Inc. dba The Agency, The Agency IP Holding Co., LLC, UMRO Realty Corp dba The Agency, and The Agency Real Estate Franchising, LLC are hereinafter collectively referred to as "The Agency".
[2] "Brown Harris Stevens" includes all predecessor brokerages and affiliated brokerages owned by the parent entity Terra Holdings, LLC.
[3] Attached as Exhibit A to the Declaration of Jenifer Wallis.

1540. Plaintiffs' Motion and Suggestions in Support of Final Approval of Settlements with the NAR, Homeservices Defendants and Opt In Entities (Plaintiffs' Motion) (Doc. 1595) more than adequately addresses the background and settlement terms, notice, positive Class reaction to the settlements, and legal standards for settlement approval. Rather than reiterate those arguments herein, The Agency and Brown Harris Stevens incorporate by reference Plaintiffs' Motion (Doc. 1595) and briefly address certain issues raised by March and Friedman with respect to the Agency and Brown Harris Stevens Settlements.[4]

## II. BACKGROUND AND SETTLEMENT TERMS

### A. The Litigation

This Court is familiar with the facts and procedural history leading up to these settlements. Briefly, the *Moehrl* class action was filed in the Northern District of Illinois on March 6, 2019, on behalf of home sellers who paid a broker commission in connection with the sale of residential real estate listed on 20 Covered Multiple Listing Services ("MLSs") spanning 19 states. (*Moehrl* Doc. 1). The *Burnett* action was filed in this Court on April 29, 2019, on behalf of home sellers who paid a broker commission in connection with the sale of residential real estate listed on one of four Subject MLSs in Missouri. (*Burnett* Doc. 1).

The Plaintiffs in both actions alleged that NAR and the nation's largest real estate brokerage firms entered into an unlawful agreement in violation of the Sherman Act, 15 U.S.C. § 1, to artificially inflate the cost of commissions in residential real estate transactions. The Agency and Brown Harris Stevens are not named defendants in either of those actions.

---

[4] The Objection to the National Association of Realtors' Settlement by the South Carolina objectors (Doc. 1558-1) is also briefly addressed herein to the extent it pertains to The Agency and Brown Harris Stevens. So too is *pro se* Wang's objection (Doc. 1547) to the extent it pertains to Brown Harris Stevens.

On April 22, 2022, this Court granted the *Burnett* Plaintiffs' motion for class certification (*Burnett* Doc. 741). On March 29, 2023, Judge Wood granted the Plaintiffs' motion for class certification in the *Moehrl* action. (*Moehrl* Doc. 403). After the *Burnett* and *Moehrl* classes were certified, a number of copycat actions alleging class actions for the same claims were filed across the country. The Agency and Brown Harris Stevens were named in a number of these copycat actions. The Agency is a named defendant in *Fierro v. NAR*,[5] *Whaley v. NAR*,[6] *Boykin v. NAR*,[7] *March v. REBNY*,[8] and *Friedman v. REBNY*.[9] Brown Harris Stevens is also a named defendant in *March* and *Friedman*, as well as in *Wang (pro se) v. NAR*.[10]

B.  **Settlement Negotiations**

Class Counsel and counsel for NAR engaged in extensive arm's-length settlement negotiations that lasted nearly four years, resulting in a settlement that included an Appendix C – Brokerage "Opt In" Agreement providing terms by which brokerages could opt into the settlement agreement, including the mandated practice changes but with a negotiated settlement amount. *See* Doc. 1458-1 and Doc. 1538. Both The Agency and Brown Harris Stevens timely "opted in" to the

---

[5] *Gael Fierro and Patrick Thurber v. National Association of Realtors, et al.,* Case No. 2:24-cv-00449 was filed in the Central District of California on January 17, 2024.
[6] *Nathaniel Whaley v. National Association of Realtors, et al.*, Case No. 2:24-cv-00105 was filed in the United States District Court for the District of Nevada on January 15, 2024.
[7] *Angela Boykin v. National Association of Realtors, et al.*, Case No. 2:24-cv-00340 was filed in the United District Court for the District of Nevada on February 16, 2024. It was transferred and consolidated with *Whaley* on March 20, 2024.
[8] *Monty March v. Real Estate Board of New York, et al.*, Case No. 1:23-cv-09995 was filed in the Southern District of New York on November 13, 2023.
[9] *Robert Friedman v. The Real Estate Board of New York, Inc., et al.*, Case No. 1:24-cv-00405 was filed in the Southern District of New York on January 18, 2024.
[10] *Hao Zhe Wang v. National Association of Realtors, et al.*, Case No. 1:24-cv-2371 was filed in the Southern District of New York on March 28, 2024. To the extent Wang objects to the Brown Harris Stevens Settlement (*see* Doc. 1547, Section X), Brown Harris Stevens incorporates by reference the arguments in Plaintiffs' Motion urging this Court to overrule Wang's objections. (Doc. 1595, Section VI, C7).

NAR Settlement.[11] Upon "opting in", The Agency and Brown Harris then shared comprehensive financial records with Plaintiffs' counsel and forensic accountant. These comprehensive financial records were also shared with Mediator Greg Lindstrom, who mediated the settlement negotiations for both The Agency and Brown Harris Stevens, as well as other "opt-ins" to the NAR settlement agreement. The Agency participated in multiple mediation sessions with Plaintiffs' counsel and Lindstrom and continued to work over a period of weeks to reach a settlement with Plaintiffs' counsel. The settlement was contingent upon being a nationwide class settlement, such that all claims raised—including those brought in copycat actions—would be resolved and released. The settlement agreement reflects the same:

> For the avoidance of doubt, the Settlement Class and Released Claims include but are not limited to, transactions on non-Realtor MLSs, which shall include, but are not limited to, transactions listed on any multiple listing service owned, operated, governed by, or affiliated with The Real Estate Board of New York ("REBNY") and/or the REBNY Residential Listing Service ("RLS").

https://www.realestatecommissionlitigation.com/admin/api/connectedapps.cms.extensions/asset?id=c219284e-8036-45b8-b475-28694fabdbfe&languageId=1033&inline=true at FN 1. The Brown Harris Stevens settlement included the similar deal-breaker language:

> For the avoidance of doubt, Plaintiffs and Brown Harris Stevens intend this Settlement Agreement and the Settlement Class Definition to encompass a nationwide class with a nationwide settlement and release, including, but not

---

[11] The South Carolina objectors claim that the Settlement Agreement by Brown Harris Stevens and possibly by The Agency failed to meet the "deadlines" outlined in Appendix C for execution of their settlement agreements, and thus urge this Court to not approve the NAR Settlement. *See* Doc. 1558-1 at 8-9. This argument is bogus and to the extent the Court entertains it, we incorporate by reference Plaintiffs' Motion, which addresses it. (Doc. 1595, Section VI, C3).

4

limited to, all persons who sold a home nationwide that was listed on any and all non-NAR multiple listing services, which shall include, but are not limited to, transactions associated with the Real Estate Board of New York ("REBNY") and/or on the REBNY Residential Listing Service ("RLS"). *See* https://www.realestatecommissionlitigation.com/admin/api/connectedapps.cms.extensions/asset?id=9ef5e925-7a88-47db-9afe-2d20262bfc55&languageId=1033&inline=true, ¶15.[12]

## III. MARCH AND FRIEDMAN'S OBJECTIONS HAVE ALREADY BEEN OVERRULED IN GIBSON AND SHOULD BE OVERRULED IN THIS CASE

As Plaintiffs' Motion makes clear, the Class's reaction to the Settlements has been positive and strongly supports final approval. (Doc1595 at p. 16). Thirteen objections have been filed on behalf of 23 total objectors. *Id.* Two of those objectors are Monty March and Robert Friedman, plaintiffs in the copycat actions naming both The Agency and Brown Harris Stevens in the Southern District of New York. However, nearly identical objections raised by March and Friedman were already rejected by this Court. The Agency and Brown Harris Stevens hereby incorporate by reference the Suggestions in Support of Final Approval of the Settling Defendants' Class Settlements in the *Gibson* action. Doc. 522 and attached as Exhibit A to the Declaration of Jenifer Wallis.

### A. Similar Issues of Factual Predicate, Standing, Total Settlement Amount, and Pro Rata Distribution Have Already Been Decided

---

[12] Both Brown Harris Stevens and The Agency each consented to the jurisdiction and venue of the Western District of Missouri for purposes of their settlements. *See* BHS Settlement Agreement, ¶52vii; The Agency Settlement Agreement, ¶¶ 5-6.

Friedman's objection claims that the settlement seeks to release claims that do not arise out of the same factual predicate as the NAR litigation, namely *March* and *Friedman*. This Court, however, already considered and overruled similar objections in the *Gibson* matter. The Court's November 4, 2024 Final Approval Order (Doc. 530) in *Gibson* (attached as Exhibit B to the Declaration of Jenifer Wallis) directly addresses and rejects each of March and Friedman's arguments, which apply equally here:

> 55. The New York Objectors, Friedman and March, argue their cases are "wholly distinct" from the *Gibson* case and should not be subject to the nationwide releases reflected in the Settlements. They further assert that their claims do not share the same "factual predicate" as the *Gibson* case.
>
> 56. First, the basis behind the New York objection is unequivocally rebutted by the plain language of the *Gibson* Complaint. Plaintiffs here plead a nationwide conspiracy on behalf of a nationwide class that expressly challenges rules adopted by the Residential Listing Service ("RLS") of the Real Estate Board of New York ("REBNY"). (*See* Doc. #232), Consolidated Am. Compl., ¶ 182. There is no basis to claim that the *Gibson* case does not share a "factual predicate" with claims challenging the same RLS rules that are referenced in the *Gibson* complaint. Even so, the Complaint further alleges that anticompetitive restraints, including those promulgated by NAR, apply to brokers nationwide, including to non-NAR MLSs like NWMLS, WPMLS, and REBNY RLS because: these MLSs and their participating brokerages are generally subject to the same or similar anticompetitive restraints that apply in MLSs that are under NAR's formal control, including because: (i) all realtor members of non-NAR MLSs are subject to NAR's Code of

Ethics; and (ii) each non-NAR MLS has adopted the same or similar anticompetitive restraints as those imposed by NAR on its affiliated MLSs. *Id*.

57. The Complaint alleges that, as a result, "Defendants' conspiracy has had the following anticompetitive effects *nationwide*," including in NWMLS, WPMLS, and REBNY RLS: (a) "Home sellers have been forced to pay commissions to buyer-brokers—their adversaries in negotiations to sell their homes— thereby substantially inflating the cost of selling their homes"; (b) "Home sellers have been compelled to set a high buyer-broker commission to induce buyerbrokers to show their homes to home buyers."; (c) "Home sellers have paid inflated buyer-broker commissions and inflated total commissions."; (d) "The retention of a buyer-broker has been severed from the setting of the broker's commission; the home buyer retains the buyer-broker, while the home seller sets the buyer-broker's compensation"; (e) Price competition among brokers to be retained by home buyers has been restrained." *Id*. ¶ 225 (emphasis added); *see also id*. ¶¶ 28, 227 (describing "nationwide" impact).

58. Plaintiffs also allege that any non-NAR MLS are controlled by, "NAR-aligned brokerages and are not fully independent from NAR." *See id*. ¶ 182 (describing in detail NAR's and its members' control over and influence of MLSs not exclusively owned or operated by NAR associations). Plaintiffs also point out that there are more than 17,000 NAR members in the New York City area alone. *See* https://www.realtor.com/realestateagents/new-york_ny. Thus, the Court rejects the New York Objectors' claim that the Settlement is limited to NAR only MLSs.

59. Second, the New York Objectors' argument that their claims do not share the same "factual predicate" as the *Gibson* case (Doc. #467, p. 2; Doc. #470, p. 3) is contradicted by their own prior judicial admissions. Although the New York Objectors *argue* that their cases are "wholly distinct and unrelated" to this one, they and their counsel filed complaints expressly linking their claims to the rules challenged in *Gibson*, including those adopted by NAR. *See* Class Action Compl. at ¶ 73, *March v. REBNY*, 1:23-cv-09995 (S.D.N.Y. Nov. 13, 2023); *Friedman v. REBNY*, 1:24-cv-0405 (S.D.N.Y. Jan. 18, 2024). As the New York Objectors' own complaints reflect, the challenged NAR and REBNY rules are functionally identical.

60. Third, consistent with Plaintiffs' allegations in *Gibson*, the evidentiary records in *Burnett* and *Moehrl* reflect that: (i) the REBNY RLS rules challenged here were anticompetitive in similar ways to the challenged NAR rules; and (ii) the challenged NAR rules applied nationwide, including to transactions in REBNY RLS. Plaintiffs' experts analyzed rules implemented by non-NAR MLSs, including REBNY/RLS, (8-10-22 Schulman Reply Rept., *Burnett* Doc. #922-3, pp. 23-25) and concluded that Realtors operating in those jurisdictions "remain obligated to compensate the buyer's agent per the NAR Code of Ethics and are thereby incentivized to require sellers to make unilateral offers of compensation to buy-side brokers/agents." *Id.* at ¶ 75. Prof. Einer Elhauge further opined as part of a detailed, multi-page analysis of REBNY's rules that "the RLS rules, like the NAR [Buyer Broker Commission Rule (BBCR)], required listings to include an offer of buyer-broker compensation whenever sellers wanted to sell to buyers who were

represented by buyer-brokers" and "had several other restraints similar to the NAR version of the BBCR." Elhauge Class Cert. Rebuttal Report, at ¶ 67, *Moehrl v. Nat'l Assn of Realtors* (N.D. Ill. Oct. 18, 2022) (Doc. #372.) The Court is familiar with the REBNY and other non-NAR MLS policies and practices because they were discussed at length in *Burnett*. The Court finds that the challenged REBNY rules share the same common nucleus of operative fact, and thus the same factual predicate, as *Burnett* and *Gibson*, and therefore were not "wholly distinct" from *Burnett* or *Gibson*, as the New York Objectors contend.

61. The slight differences that the New York Objectors contend exist between the relevant NAR and REBNY rules are not material or sufficient to create a distinct factual predicate. Objectors ask the Court to define factual predicate too narrowly, thereby needlessly creating piecemeal litigation arising from the same conduct – a practice courts routinely reject. *See, e.g.*, *In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1065 (8th Cir. 2013) (overruling objection that "settlement contained an overbroad release" since it permissibly released only claims related to the factual subject of the litigation); *In re Literary Works in Elec. Databases Copyright Litig.,* 654 F.3d 242, 248 (2d Cir. 2011) (finding that objectors took an "overly narrow view" of factual predicate where claims arose from same underlying facts); *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 765-66 (10th Cir. 2020) (same); *see also In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 272 F. App'x 9, 13 (2d Cir. 2008) (finding reliance on different documents for misrepresentation claims based on investment losses did not create separate factual predicate where claims were


9
Case 4:19-cv-00332-SRB    Document 1599    Filed 11/21/24    Page 12 of 17

each based on reliance on misleading opinions by defendants). Accordingly, claims involving properties listed on non-NAR MLSs like NWMLS, WPMLS, and REBNY RLS all share the same factual predicate as those involving properties listed on NAR-affiliated MLS.

62. The New York Objectors assert that the Class Representative "do not have standing" to settle their claims. (Doc. #467, p. 13.) But the Class Representatives allege that they were injured as part of the same alleged anticompetitive conspiracy that impacts sellers of homes on REBNY RLS.

63. The New York Objectors argue that the total settlement amount is inadequate to fully compensate them for their injuries. But as described above, that is not the proper legal standard for assessing adequacy. The New York Objectors further claim that Plaintiffs have not provided evidence of the Settling Defendants' ability to pay limitations. The court disagrees. *See* Berman Decl. at ¶¶ 2, 6-11. In addition, Settling Defendants Douglass Elliman and Compass are publicly traded companies whose financial records are publicly accessible.

64. Although the New York Objectors state that the practice changes reflected in the settlements are a "commendable step in the right direction," they argue those changes could have been stronger and lasted longer. (Doc. #470, p. 15.) But that is true in essentially any settlement that is the product of compromise and is not a basis for rejecting the Settlements here. *See, e.g.*, *In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Mktg. and Sales Practices Litig.*, No. 12-MD-2320, 2015 WL 7282543, at *10 (D.N.H. Nov. 16, 2015) (approving final settlement and overruling objections "that the injunctive remedies go away in five

years" and observing the injunctive relief "provides a valuable benefit to the class" and just because the injunction is not as broad as some class members wanted "does not make this settlement inadequate").

65. The New York Objectors also argue that Class members who sold homes on REBNY have not been given guidance on whether they "will be provided a *pro rata* distribution" or if the higher commissions that some of those Class members paid will be reflected in claim payments. The Court disagrees. The settlement website advises both that: (i) settlements payment "will take into account the amount of commissions class member claimants paid to a real estate broker or agent"; and (ii) "[t]o the extent the value of total claims exceeds the amount available for distribution from the settlement funds, each class member's share of the settlement may be reduced on a pro rata basis." Settlement FAQ 11.

66. Objector Friedman asserts, with no basis whatsoever, that the Settlements' inclusion of sellers who listed homes on REBNY "appears to be the product of a so-called 'collusive settlement.'" (Doc. #467, p. 14.) As discussed above at length, Class Counsel diligently sought to obtain the largest possible recovery on behalf of the nationwide class they were appointed to represent, given the strength and risks of the litigation, including the Settling Defendants' financial limitations. The New York Objectors fail to point to any evidence suggesting otherwise, beyond the mere fact that overlapping claims in a different lawsuit are within the scope of the release. That is not a basis for rejecting the Settlements.

67. The Court finds the vast majority of Class members from New York favor approval of the Settlements. Although the claims deadline is still months

11
Case 4:19-cv-00332-SRB    Document 1599    Filed 11/21/24    Page 14 of 17

away, over 13,000 New York residents have already submitted claims; and none have objected (aside from the clients of counsel with competing class litigation). Keough Decl. at ¶ 51. If the Settlements are not approved, many of these Class members risk receiving no compensation for their injuries.

Exhibit B to the Declaration of Jenifer Wallis.

This same Court should reach the same result here.[13] This Court should adopt its well-reasoned rejection of March and Friedman's arguments in *Gibson* and overrule the essentially identical objections here.

### B. Statements to the JPML Are Not Inconsistent with Factual Predicate

March and Friedman argue here, just as they did in *Gibson*, that statements made by Brown Harris Stevens and The Agency in the JPML proceeding support their argument that the claims in their cases are different from those asserted here. This Court has already addressed and rejected this same argument:

> The New York Objectors also assert that some of the Settling Defendants took positions before the Judicial Panel on Multidistrict Litigation ("JPML") that are inconsistent with the position that the claims in *Gibson*, *March*, and *Friedman* all share the same factual predicate. To the contrary, the JPML proceedings, on balance, support finding that these cases all have the same factual predicate. Moreover, as Settling Defendants explained, their positions before the JPML do not

---

[13] Although neither The Agency nor Brown Harris is a publicly traded company, their comprehensive financial records were provided to Plaintiffs' counsel and to the mediator Greg Lindstrom. The resulting settlements of $3.75 and $2.9 million (respectively) were a direct result of those financial records and extensive settlement negotiations between Plaintiffs' counsel, Lindstrom, and each of the settling parties.

support the New York Objectors' arguments here. Some of Settling Defendants even withdrew the submissions quoted by March and Friedman.

*See* Ex. B to Declaration at pg. 32, FN 5.

Here, the NAR settlement agreement to which both The Agency and Brown Harris Stevens opted in provides they will "withdraw any existing response before the Judicial Panel on Multidistrict Litigation with respect to *In re Real Estate Commission Antitrust Litigation* (MDL No. 3100)[.]" *See* Settlement Agreements for the The Agency (¶38.v), and Brown Harris Stevens (¶52.v). However, that Multidistrict Litigation was closed at the time of the execution of the Brown Harris Stevens and Agency settlement agreements such that withdrawal was not procedurally possible. And as the Court has already recognized, "the JPML proceedings, on balance, support finding that these cases all have the same factual predicate." Exhibit B to Wallis Declaration, Doc. 530 at pg. 32, FN 5. Indeed, the JPML's decision did not accept that there was any material difference between the cases, even under the different standard for centralization. Order Denying Transfer at 4, *In re: Real Est. Comm'n Antitrust Litig.*, Case MDL No. 3100 (JPML May 12, 2024) ("JPML Docket"), ECF No. 558. The JPML explained that the NAR settlement agreement gave "MLSs that are not owned by an NAR affiliate," such as REBNY, a "mechanism . . . to opt-in." *Id.* The JPML further recognized "the broad contours of this new settlement" that "may well resolve at least some claims in this litigation, if not many." *Id.*

The Court should again reject March and Friedman's objections on this basis.

## IV. CONCLUSION

For the above reasons, The Agency and Brown Harris Stevens respectfully request that the Court grant final approval of their Settlements.

Dated: November 21, 2024

/s/ *Jenifer C. Wallis*
Jenifer Champ Wallis (*Admitted pro hac vice*)
MUNCK WILSON MANDALA, LLP
1975 Century Park East, Suite 2300
Los Angeles, CA 90067
310-855-3311
Fax: 972-628-3616
Email: jwallis@munckwilson.com

Michael Dale Pospisil
Matthew Swift
POSPISIL SWIFT LLC
1600 Genessee St., Suite 340
Kansas City, MO 64102
816-895-6440 ext 101
Email: mdp@pslawkc.com
Email: mts@pslawkc.com

Robert E Linkin (*Admitted pro hac vice*)
J. David Rowe (*Admitted pro hac vice*)
MUNCK WILSON MANDALA, LLP
807 Las Cimas Parkway, Suite 300
Austin, TX 78746
737-201-1600
Fax: 737-201-1601
Email: rlinkin@munckwilson.com
Email: drowe@munckwilson.com

***Counsel for*** *The Agency*

Dated: November 21, 2024

/s/ *Silvia L. Serpe*
Silvia L. Serpe (*Admitted pro hac vice*)
SERPE LLC
16 Madison Square West
New York, NY 10010
212-257-5010
Email: sserpe@serpellc.com

***Counsel for*** *Brown Harris Stevens*