## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| RHONDA BURNETT, JEROD BREIT, JEREMY KEEL, HOLLEE ELLIS, and FRANCES HARVEY, on behalf of themselves and all others similarly situated,<br><br>                 *Plaintiffs*,<br>    v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC, RE/MAX LLC, and KELLER WILLIAMS REALTY, INC.,<br><br>                 *Defendants*. | No. 4:19-cv-00332-SRB<br><br>Judge Stephen R. Bough |

## **STATEMENT OF INTEREST OF THE UNITED STATES**

The United States respectfully submits this Statement under 28 U.S.C. § 517, which permits the Attorney General to direct "any officer of the Department of Justice . . . to attend to the interests of the United States in a suit pending in a court of the United States."[1] The United States continues to scrutinize policies and practices in the residential real-estate industry that may stifle competition. It is a matter of public record that the United States has an open investigation into these practices. *See NAR v. United States*, 97 F.4th 951 (D.C. Cir. 2024) (discussing United States' investigation into NAR's rules and practices), *petition for cert. filed* (Oct. 15, 2024) (No. 24-417). Competition in real estate is critical, and home ownership is a key component of the wealth of American households.

Because the United States did not participate in either this litigation or the proposed settlement, the proposed settlement does not limit the United States' ability to enforce the antitrust laws, including to seek greater relief for the conduct at issue here. Given that, the United States takes no position on whether the proposed settlement satisfies Rule 23(e), apart from one concern. The proposed settlement includes a provision requiring buyers and their brokers enter "written agreement before the buyer tours any home." Dkt. 1458-1 ¶ 58(vi). This provision itself raises independent concerns under the antitrust laws, which could be addressed in multiple ways. The parties could (i) eliminate the provision or (ii) disclaim that the settlement creates any immunity or defense under the antitrust laws. Alternatively, the Court could clarify that approval of the settlement affords no immunity or defense for the buyer-agreement provision.

---

[1] The United States previously submitted a Statement of Interest in this matter to correct the inaccurate portrayal, by defendant NAR, of a 2008 consent decree between the United States and NAR. Dkt. 113 (Sept. 30, 2019).
...

# DISCUSSION

The class actions before the Court challenge blanket unilateral offers of compensation to buyer brokers. This pervasive industry practice harms both sellers and buyers. Sellers feel tremendous pressure to offer the "customary" rate of 2.5-3% to buyer brokers, lest those buyer brokers "steer" their clients to higher-commission properties. *See* United States' Statement of Interest, *Nosalek v. MLS Prop. Info. Network, Inc.*, Dkt. 290 at 13, 1:20-cv-12244 (D. Mass. Feb. 14, 2024). This practice does not benefit buyers, who must foot the bill through higher home purchase prices, regardless of the extent or quality of their brokers' services or whether they would have otherwise been willing to pay for those services at all. *Id.* Listing brokers, who represent sellers, effectively decide the total commission and, as a general matter, split it with buyer brokers, insulating buyer brokers from meaningful competition, foreclosing meaningful negotiations between buyer brokers and their clients, and decreasing the incentive for brokers to offer improved or lower-cost services. *See Burnett v. NAR*, No. 4:19-CV-00332-SRB, 2022 WL 17741708, at *8 (W.D. Mo. Dec. 16, 2022).

Under the proposed settlement, NAR would prohibit brokers from making these offers on the MLS itself. The proposed settlement, however, expressly allows offers of compensation to continue and for them to be posted publicly; it simply prohibits making these offers on an MLS. *See* Dkt. No. 1458-1 ¶ 58(ii), (iii). The proposed settlement also introduces a new NAR rule that requires buyers and brokers to enter a "written agreement before the buyer tours any home." Dkt. 1458-1 ¶ 58(vi).

Under the well-established standards for evaluating a proposed class-action settlement under Rule 23(e), the Court's role is to determine whether, "taken as a whole," this "private contract negotiated between the parties . . . . is fair, adequate, and reasonable to all concerned."

*Marshall v. Nat'l Football League*, 787 F.3d 502, 509 (8th Cir. 2015) (quoting *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 934 (8th Cir. 2005)). Although this inquiry demands a balancing of several factors, *see Marshall*, 787 F.3d at 508, a court cannot "substitute optimal settlement terms for the judgment of the litigants and their counsel," *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148–49 (8th Cir. 1999).

The Court's evaluation under Rule 23(e) does not require it to determine that the changes in NAR's rules included in the proposed settlement effectively remedy past violations, nor whether those changes comply with the antitrust laws. By contrast, in an antitrust enforcement action, the role of the United States differs substantially from that of private plaintiffs. *See F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 170 (2004) (noting the United States, "unlike a private plaintiff, must seek to obtain the relief necessary to protect the public from further anticompetitive conduct and to redress anticompetitive harm"). In such enforcement actions, a court has the power to "prevent and restrain" violations of the Sherman Act. 15 U.S.C. § 4. Such relief should "pry open to competition a market that has been closed by defendants' illegal restraints," *Ford Motor Co. v. United States*, 405 U.S. 562, 577-78 (1972) (citation omitted), and "avoid a recurrence of the violation and . . . eliminate its consequences." *Nat'l Soc. of Pro. Eng'rs v. United States*, 435 U.S. 679, 697 (1978). A court may also restrict conduct that might otherwise be lawful to "preclude the revival of the illegal practices." *FTC v. Nat'l Lead Co.*, 352 U.S. 419, 430 (1957).

Thus, while the Court may ultimately find that the proposed settlement achieves important concessions in the interests of the *private* actors in this litigation and satisfies Rule 23(e), such determination does not mean that the proposed settlement effectively prevents or restrains ongoing antitrust violations or remedies past violations, or itself contemplates practices

that fully comply with the antitrust laws. Because the United States did not participate in either the underlying litigation or the proposed settlement, that settlement does not preclude any future enforcement actions by the United States, and compliance with the proposed settlement or new NAR rules implementing that settlement affords no defense to any such enforcement actions. Nonetheless, NAR or other potential defendants that incorporate NAR's policies into their business practices may attempt to use any findings in the Court's decision as a shield against a future enforcement action by the United States. For this reason, the United States respectfully requests that if the Court approves the settlement, it should clarify that such approval does not address whether the proposed settlement prevents and restrains current antitrust violations, remedies past violations, or contains revised policies and practices that comply with the antitrust laws.

In addition, the new provision that requires buyers and brokers to make written agreements before home tours may harm buyers and limit how brokers compete for clients. It bears a close resemblance to prior restrictions among competitors that courts have found to violate the antitrust laws in other proceedings and could limit — rather than enhance — competition for buyers among buyer brokers. *See, e.g., FTC v. Ind. Fed. of Dentists*, 476 U.S. 447, 459 (1986) (condemning an agreement among competitors "to withhold from their customers a particular service that they desire"); *RealComp II, Ltd. v. FTC*, 635 F.3d 815 (6th Cir. 2011) (condemning an agreement that prohibited information useful to consumers from being distributed through MLS feeds to public websites).

In its recent filing, Plaintiffs argued that the settlement does not require a representation agreement for a specific time period. *See* Plaintiffs' Motion and Suggestions in Support of Final Approval, Dkt. No. 1595 (Nov. 20, 2024) at 42. Regardless, buyer brokers under the proposed

4

Case 4:19-cv-00332-SRB     Document 1603     Filed 11/24/24     Page 5 of 7

rule may not show a house, even a no-obligation showing, without first obtaining a written agreement. Thus, the concerns remain that the broker agreement rule may limit how brokers compete, and there is no record available in the current posture addressing this concern. It is therefore important that any settlement not purport to preclude future antitrust scrutiny.

As discussed above, there are multiple ways that this restriction on competition for buyers could be addressed in the context of the proposed settlement.

The United States stands ready to appear or otherwise participate at the final settlement hearing on November 26 to answer questions or further assist the Court.

| | |
|---|---|
| Dated: November 24, 2024 | Respectfully submitted, |

| | |
|---|---|
| JONATHAN S. KANTER<br>*Assistant Attorney General* | YVETTE TARLOV<br>*Chief, Media, Entertainment, and Communications Section* |
| DOHA G. MEKKI<br>*Principal Deputy Assistant Attorney General* | |
| HETAL DOSHI<br>MICHAEL B. KADES<br>*Deputy Assistant Attorneys General* | CHRIS BOWER<br>HANNAH BENJAMIN<br>CURTIS STRONG<br>ERIC WELSH<br>BRIAN WHITE<br>FREDERICK YOUNG<br>*Trial Attorneys* |
| GEORGE C. NIERLICH<br>*Deputy Director of Civil Enforcement* | |
| DAVID DAHLQUIST<br>*Acting Deputy Director of Civil Litigation* | |
| MARKUS BRAZILL<br>*Counsel to the Assistant Attorney General* | /s/ *Jared A. Hughes*<br>JARED A. HUGHES (VA BAR NO. 65571)<br><br>U.S. Department of Justice<br>Antitrust Division<br>450 Fifth Street, N.W., Suite 7000<br>Washington, DC 20530<br>Telephone: (202) 598-2311<br>Email: jared.hughes@usdoj.gov<br><br>*Counsel for the United States of America*<br><br>Local Contact for Purposes of Service:<br><br>JEFFREY P. RAY (MO. BAR NO. 35632)<br>*Deputy U.S. Attorney and Civil Chief*<br><br>Charles Evans Whittaker Courthouse<br>400 East Ninth Street, Fifth Floor<br>Kansas City, MO 64106<br>Telephone: (816) 426-4300<br>Email: Jeffrey.Ray@usdoj.gov |