**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | |
|---|---|
| RHONDA BURNETT, JEROD BREIT, HOLLEE ELLIS, FRANCES HARVEY, and JEREMY KEEL, on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br><br>     v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC, RE/MAX LLC, and KELLER WILLIAMS REALTY, INC.,<br><br>               Defendants. | Case No. 19-CV-00332-SRB |

**PLAINTIFFS' SUGGESTIONS IN RESPONSE TO STATEMENT OF INTEREST OF THE UNITED STATES**

Less than two days before the final approval hearing on the Class's Settlement Agreement ("Settlement") with the National Association of Realtors ("NAR"), the Department of Justice ("DOJ") filed a Statement of Interest on behalf of the United States concerning that Settlement. Doc. #1603.[1] The DOJ's statement of interest raises two issues—neither of which is a basis for declining to grant final approval.

First, the DOJ advises that it has an open investigation into certain practices challenged in this litigation and speculates that "NAR or other potential defendants . . . may attempt to use any

---

[1] The DOJ does not explain its failure to raise these issues earlier. The NAR Settlement was publicly disclosed more than eight months ago on March 15, 2024, and the deadline for objections and opt-outs was October 28, 2024. In the *Nosalek* litigation, DOJ filed a statement of interest objecting to a very different settlement with a non-Realtor MLS before that court ruled on *preliminary* approval. *See Nosalek v. MLS Property Information Network, Inc.*, 1:20-cv-12244 (D. Mass. Feb. 15, 2024) (Doc. #290).

1

findings in the Court's decision as a shield against a future enforcement action by the United States." Doc. #1603 at 5. The DOJ does not provide any basis for its concern. The United States did not participate in the underlying litigation or the proposed Settlement, and the Settlement does not limit its ability to enforce the antitrust laws, including its ability to seek relief in a future enforcement action. Moreover, the DOJ states that it is not opposing the NAR Settlement based on the existence of its own investigation.

Second, the DOJ vaguely asserts that the requirement in Paragraph 58(vi) of the NAR Settlement that brokers must disclose their prices to buyers before touring any homes "raises independent concerns under the antitrust laws." Doc. #1603 at 1. The DOJ does not show that any valid antitrust concern exists or offer any other reason why the NAR Settlement should not be approved.

The NAR Settlement practice changes—including Paragraph 58(vi)'s price disclosure requirement—were created in consultation with Plaintiffs' antitrust experts and are based on the extensive evidentiary records developed in the *Burnett* and *Moehrl* cases. *See* Doc. #1595 at 11. Paragraph 58(vi), in particular, was designed to address several of the rules and practices challenged in the *Burnett* and *Moehrl* suits on the ground that those challenged practices limited buyers' ability and incentive to negotiate broker pricing, including by restricting broker price transparency. Among these challenged NAR and MLS rules were (i) those authorizing participating brokers working with buyers to filter properties by the amount of compensation being offered and to restrict buyers' access to information about the compensation being offered on the universe of properties listed on the MLS; (ii) those permitting real estate brokers until recently to advertise and represent to buyers that their services were free of charge, when in fact those brokers

were receiving compensation; and (iii) those requiring listing brokers to make blanket compensation offers to buyer and other cooperating brokers.

Requiring up-front price disclosures by brokers working with buyers, and prohibiting buyer brokers from receiving greater compensation than agreed to in those disclosures, is intended to increase price transparency to buyers and prevent brokers from imposing hidden or surprise costs. Paragraph 58(vi)'s binding price disclosure requirement also enables buyers to effectively compare and negotiate pricing options before choosing a broker, in turn enhancing price competition among buyer brokers. Along with the Settlement Agreement's elimination of cooperative compensation from MLSs, Paragraph 58(vi)'s price disclosure requirement is a key mechanism for reducing the incentive and ability of brokers to steer buyers.[2]

The most effective time to require price disclosures is before a broker begins touring homes with a potential buyer. As a practical matter, once a broker is engaged to show a home, buyers may be reluctant to switch brokers (or contractually prevented from doing so). In addition, if brokers have not yet disclosed their pricing before buyers begin touring homes, they will have the ability and incentive to seek supracompetitive compensation from listing brokers and sellers associated with individual property listings. These hard-fought practice changes thus benefit both buyers and sellers by creating market incentives to lower the amounts consumers pay to buy and sell homes.

---

[2] *See, e.g.*, Elhauge Class Cert. Report, at ¶ 218, *Moehrl v. Nat'l Assn. of Realtors*, 1:19-cv-01610 (N.D. Ill. June 7, 2022) (Doc. #324-6) ("*The best opportunity to induce price competition among buyer-brokers is in the selection and retention process by the buyer, when buyer-brokers are competing to be retained by the buyer. If the buyer were paying the commission or could readily internalize benefits from negotiating it lower, the buyer would have an incentive to make buyer-brokers compete on price to be retained*. That incentive is severely restricted when restraints require seller-brokers to all make unilateral offers to pay buyer-brokers a blanket commission that comes out of the seller-brokers' commission and that maximizes buyer-broker incentives to steer buyers to sellers offering buyer-brokers the highest commissions, require that those offers not be disclosed to buyers, encourage buyer-brokers to advertise their services as 'free' to the buyer, and restrain any efforts to negotiate lower buyer-broker commissions from the blanket offers." (emphasis added)).

These pricing disclosures are also similar to rules recently proposed by the FTC to prevent consumers (including home renters) from being subject to hidden or junk fees and many other price disclosure rules that have long been in place for various industries.[3] Like these rules, the new practice changes reflected in Settlement Agreement will help dispel the false impression of "free services" long fostered by the brokerage industry, prevent deceptive trade practices, and enhance competition among buyer brokers.

The DOJ also incorrectly describes Paragraph 58(vi)'s pricing disclosure requirement. The DOJ asserts that Plaintiffs' final approval brief clarified that the NAR Settlement "does not require a *representation agreement* for a specific time period." Doc. #1603 at 1 (emphasis added). What Plaintiffs actually stated is that the Settlement Agreement does not require a "representation agreement" *at all*. Doc. #1595 at 49, 65-66. Rather, it requires that brokers working with buyers disclose their *pricing* to potential buyer clients in a written agreement in advance of touring homes. *Id.* To be clear, Paragraph 58(vi) does not require an agency or any other particular relationship between a broker and buyer. It does not require that a broker and potential buyer client work together on an exclusive basis. And it does not require that brokers set any particular price or adopt any pricing model, as long as the broker's pricing is clearly disclosed in advance of the home search process.

Moreover, the DOJ does not point to any evidence or other authority supporting its claim that the buyer pricing disclosure requirement raises antitrust concerns. The only two cases cited in the DOJ's belated submission bear no resemblance to Paragraph 58(vi)'s requirements. *FTC v.*

---

[3] *See FTC Proposes Rule to Ban Junk Fees*, Fed. Trade Comm'n (Oct. 11, 2023), https://www.ftc.gov/news-events/news/press-releases/2023/10/ftc-proposes-rule-ban-junk-fees; 16 CFR 453.2 (FTC rule requiring funeral homes to provide up-front price disclosures to consumers); 45 CFR part 180 (requiring hospitals to provide public price disclosures to consumers); *Know Before You Owe | Mortgages*, https://www.consumerfinance.gov/know-before-you-owe (describing 12 CFR 1026's requirements that lenders provide loan estimates and closing disclosures to consumers as "mak[ing] it easier to shop around and compare loan offers from multiple lenders").

4

*Indiana Federation of Dentists*, 476 U.S. 447, 459 (1986), concerned a dentist association policy requiring members to withhold x-rays from insurers, which could otherwise use that information to contain costs and prevent the delivery of unnecessary care. *Indiana Federation of Dentists* supports approving the settlement, including Paragraph 58(vi). Just as giving insurers access to x-rays prior to the approval of dental care is useful in reducing costs, buyers can use broker pricing disclosures to "shop around" and reduce the cost of brokerage services.[4] The other decision the DOJ cites, *RealComp II, Ltd. v. FTC*, 635 F.3d 815 (6th Cir. 2011), is similarly inapposite. As the DOJ acknowledges, that case involved "an agreement that *prohibited* information useful to consumers from being distributed through MLS feeds to public websites." Doc. #1603 at 4 (emphasis added). In contrast, the NAR Settlement *requires* that brokers *provide* pricing information that is useful to consumers.

Nonetheless, Plaintiffs' counsel will closely monitor the implementation and impact of these practices changes to ensure that they are being implemented in accordance with the letter and spirit of the Settlement.

November 25, 2024                                   Respectfully Submitted,


**HAGENS BERMAN SOBOL SHAPIRO LLP**

/s/ *Steve W. Berman*
Steve W. Berman (*pro hac vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com

**WILLIAMS DIRKS DAMERON LLC**

/s/ *Eric L. Dirks*
Eric L. Dirks                          MO # 54921
Michael A. Williams            MO # 47538
1100 Main Street, Suite 2600
Kansas City, MO 64105
Tele: (816) 945 7110
Fax: (816) 945-7118

---

[4] Paragraph 58(vi) does not, as the DOJ suggests, require brokers to "withhold from their customers a particular service that they desire." Doc. #1603 at 4. Brokers may provide any service they and their buyers choose at whatever price they choose (they may even offer those services for free for a period of time)—as long as those brokers disclose their pricing in advance of touring a home with a potential buyer.

5

Rio S. Pierce (*pro hac vice*)
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
riop@hbsslaw.com

Jeannie Evans (*pro hac vice*)
Nathan Emmons (Mo. Bar. No. 70046)
455 North Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
jeannie@hbsslaw.com
nathane@hbsslaw.com

**COHEN MILSTEIN SELLERS &
TOLL PLLC**

*/s/ Robert A. Braun*
Robert A. Braun (*pro hac vice*)
Benjamin D. Brown (*pro hac vice*)

Sabrina Merold (*pro hac vice*)
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
bbrown@cohenmilstein.com
rbraun@cohenmilstein.com
smerold@cohenmilstein.com

Daniel Silverman (*pro hac vice*)
769 Centre Street, Suite 207
Boston, MA 02130
Telephone: (617) 858-1990
dsilverman@cohenmilstein.com

**SUSMAN GODFREY L.L.P.**

*/s/ Marc M. Seltzer*
Marc M. Seltzer (*pro hac vice*)
Steven G. Sklaver (*pro hac vice*)
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

dirks@williamsdirks.com
mwilliams@williamsdirks.com

**BOULWARE LAW LLC**

*/s/ Brandon J.B. Boulware*
Brandon J.B. Boulware        MO # 54150
Jeremy M. Suhr             MO # 60075
1600 Genessee Street, Suite 956A
Kansas City, MO 64102
Tele:   (816) 492-2826
Fax:    (816) 492-2826
brandon@boulware-law.com
jeremy@boulware-law.com

**KETCHMARK AND MCCREIGHT P.C.**

*/s/ Michael Ketchmark*
Michael Ketchmark          MO # 41018
Scott McCreight            MO # 44002
11161 Overbrook Rd. Suite 210
Leawood, Kansas 66211
Tele:   (913) 266-4500
mike@ketchmclaw.com
smccreight@ketchmclaw.com

*Attorneys for Plaintiffs and the Class*

6

Beatrice C. Franklin (*pro hac vice*)
One Manhattan West
New York, New York 10001
Telephone: (212) 336-8330
bfranklin@susmangodfrey.com

Matthew R. Berry (*pro hac vice*)
Floyd G. Short (*pro hac vice*)
Alexander W. Aiken (*pro hac vice*)
401 Union St., Suite 3000
Seattle, Washington 98101
Telephone: (206) 516-3880
mberry@susmangodfrey.com
fshort@susmangodfrey.com
aaiken@susmangodfrey.com

***Attorneys for Plaintiffs and the Class***