IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| RHONDA BURNETT, JEROD BREIT, JEREMY KEEL, HOLLEE ELLIS, and FRANCES HARVEY, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC, RE/MAX LLC, and KELLER WILLIAMS REALTY, INC., <br><br> Defendants. | Case No. 4:19-CV-00332-SRB <br><br> RESPONSE TO PLAINTIFFS' NOVEMBER 20, 2024, MOTION FOR FINAL APPROVAL |

## RESPONSE OF OBJECTORS HERBERT AND CHIA WHITEHOUSE TO PLAINTIFFS' MOTION AND SUGGESTIONS FOR FINAL APPROVAL OF SETTLEMENT

Objectors Herbert and Chia Whitehouse submit this response to highlight an anti-consumer and anti-competitive loophole in the Practice Changes required by the proposed NAR Settlement. This loophole establishes both a restriction on independent competitor brokers, while, at the same time, permits "double dipping"[1] by Listing Brokers without imposing that restriction.

While we applaud the addressing of the many other "workarounds" in Plaintiff's recent Final Approval Motion,[2] we still come back to the focus of our April objection; namely, that the Practice

---

[1] Consumer Federation of America, May 2021, DOUBLE-DIPPING BY REAL-ESTATE AGENTS, Risks and Costs to Home Buyers and Sellers, at Real-Estate-Double-Dipping-by-Agents-Report.pdf.

[2] See PLAINTIFFS' MOTION AND SUGGESTIONS IN SUPPORT OF FINAL APPROVAL OF SETTLEMENTS [ ], Filed November 20, 2024, Court Doc. #1595.

Changes should view with concern, rather than promote at the expense of independent brokers, the anti-consumer practice of double dipping.

The Practice Changes in the Settlement requiring pre-touring agreements do not apply when the seller's broker pays, what would be a buyer broker commission if paid to an independent broker, to itself -- the Listing Broker. Commission payments to independent Cooperating Buyer Brokers, or even to the Listing Broker showing the house to a prospective Buyer, *qua* Cooperating Broker, are covered by the rules.[3] But when, or to the extent that, the Cooperating Broker is not paid a commission, the Listing Broker's Exclusive Listing Agreement may provide that the remaining amount (say 6% of the gross sale price) of the Seller paid commissions[4] can be claimed by the Listing (Selling) Broker. This end-run around the MLS focused NAR Settlement Practice Changes is especially anti-competitive when one or a few dominant local or regional brokerage firms implement private and direct sales approaches involving delays in, and/or complete avoidance of, an open invitation to competitive bidding through a MLS listing.[5]

---

[3] NAR Corrected Settlement Agreement, pp 28-29, § 58(vi), Filed April 19. 2024, Court Document #1458-1 (A broker "working with a buyer" must "enter into a written agreement before the buyer tours any home" ... "to the extent that such [broker] will receive compensation from any source"...). Note: A broker acting as a Single Agent fiduciary for the seller (or even when the seller's Single Agent's work on behalf of a buyer triggers common law fiduciary status) would be a Dual Agent under Florida law. So Listing Brokers with fiduciary duties to sellers will not want to receive compensation as a Cooperative Broker.

[4] Including amounts that the Seller would have reasonably thought were intended to cover independent Cooperating (Buyer) Broker commissions under a Clear Cooperation Policy Exclusive Listing Agreement.

[5] *C.f.*, **TheRealDeal**, September 20, 2024, at: Resi BrokerageBosses Clash Over NAR's Clear Cooperation Rule, Jake Indursky ("The national trade group's Emerging Issues Advisory Board met last week to evaluate the policy, which requires brokers to post listings to the MLS within one business day of marketing it to the public. The rule has been the subject of lawsuits over the past four years, with NAR arguing it protects consumers in the industry skirmish over off-market, or "pocket" listings." Also: "Reffkin later turned to Instagram, saying in a post that Compass was among 88 other real estate brokerages and 200,000 real estate agents who want the group to end the policy.").

Here is the introduction to our Opposition filing in April:

**OPPOSITION TO PROPOSED SETTLEMENT WITHOUT MODIFICATIONS**

Chia Whitehouse and Herbert Whitehouse submit this statement of opposition, and suggestions for modification of the Settlement terms, as elderly home sellers who, in the last four years:

a) overpaid Buyer Broker Commissions by tens of thousands of dollars because of the "Buyer Broker Commission Rule"; and
b) suffered hundreds of thousands of dollars in Seller (Listing) Broker caused damages, because of Broker practice standards that adversely affect consumers;[6] practices that ultimately stem from financial incentives that are connected to "unfair methods of competition" inherent in the "Buyer Broker Commission Rule",
   a. including an increasingly important incentive that the rule provides to Selling (Listing) Brokers who become Contributing Brokers in order to keep that "Buyer Broker" Commission for themselves.[7]

Unless the proposed Settlement is modified to remove the "coercive, exploitative, collusive, abusive, deceptive, predatory" impact of the "Buyer Broker Commission Rule" on consumers, Real Estate Industry practices that the Settlement encourages will continue to violate Section 5 of the FTC Act.[8] An important consideration for the Court in evaluating the proposed Settlement is that the proposed changes to MLS requirements will have no material effect as to how, and whether, commission sharing and overall commission levels will change for consumers. Even the proposed notices to Sellers from Selling (Listing) Brokers (to the effect that Sellers need not agree to let Selling (Listing) Brokers use Seller's money to pay a Buyer's Broker) are unlikely to have a material impact.

At a minimum, the Settlement should increase the disclosures made to Consumers so that the "Buyer Broker Commission Rule" will not continue through the Exclusive Listing Agreements that Selling (Listing Agents) require from Sellers. Currently, these Exclusive Listing Agreements control the information given to MLS; and Sellers have been convinced to sign Exclusive Listing Agreements (typically requiring a 6% commission) because they are told that paying such a large commission is needed so that half that large commission can pay for a separate Buyer Broker. **But Selling (Listing)**

---

[6] Compare Policy Statement of the Federal Trade Commission Regarding the Scope of Unfair Methods of Competition Under Section 5 of the Federal Trade Commission Act Commission (November 10, 2022). https://www.ftc.gov/legal-library/browse/policy-statement-regarding-scope-unfair-methods-competition-under-section-5-federal-trade-commission

[7] This required sharing of the Selling (Listing) Broker commission with a Contributing Broker is the meaning of the phrase "Buyer Broker Commission Rule" in this Opposition statement.

[8] *Id.*

**Brokers do not disclose that the preferred (and increasingly common) result for Selling (Listing) Brokers is that they will keep the full commission -- all 6% -- as a Contributing Broker.** This Opposition Statement will discuss why that is.

Whitehouse Opposition To Proposed Statement Without Modification[9]

We ask that the court consider whether the recent push by many brokers for the NAR to revise or eliminate the pro-competition and pro-consumer Clear Cooperation Policy is a result of the Practice Changes proposed in the Settlement.

Respectfully submitted,

*/s/ Chia W. Whitehouse*

By: Chia Whitehouse           Date: November 25, 2024
13676 Chauvin Avenue
Orlando, Florida 32827
Tel: (732) 762 7003
Email: Chiawangw0606@gmail.com

*/s/ Herbert A Whitehouse*

By: Herbert Whitehouse         Date: November 25, 2024
13676 Chauvin Avenue
Orlando, Florida 32827
Tel: (732) 462 5583
Email: herbwhitehouse@outlook.com

---

[9] *See* OPPOSITION TO PROPOSED SETTLEMENT WITHOUT MODIFICATIONS, Herbert and Chia Whitehouse, pp 1-2, Filed April 4. 2024, Court Doc. #1424. *Compare* PLAINTIFFS' MOTION AND SUGGESTIONS IN SUPPORT OF FINAL APPROVAL OF SETTLEMENTS [ ], at p 24, Filed November 20. 2024, Court Doc.#1595 ("Class Counsel received 13 objections or complaints on behalf of 23 purported objectors and other individuals. Seven are from pro se objectors: (1) Khyber Zaffarkhan (Doc. 1539); (2) Robert Duthler (Doc. 1541); (3) Tonya Monestier (Doc. 1552); (4) Black Tie Realty (Gibson Doc. 527); (5) Vivienne Cunningham (Gibson Doc. 528); (6) Arturo Gonzalez (Doc. 1564), and (7) Peter Gustis (Doc. 1510)."