Jorge Zea
2234 N Federal Hwy PMB 68073
Boca Raton, FL 33431
legal@bluelighthouserealty.com
(305) 244-7242

March 25, 2025

Clerk of Court
U.S. District Court
Western District of Missouri
400 E. 9th Street
Kansas City, MO 64106

**Re:** **Case No. 19-CV-00332-SRB**

Motion for Clarification and Declaratory Relief
Submitted by Movant Jorge Zea, Pro Se

Dear Clerk of Court,

Enclosed please find an original signed copy of my Motion for Clarification and Declaratory Relief, submitted in the above-captioned matter, which I am filing as a pro se movant.

I respectfully ask that this Motion be filed with the Court and, upon docketing, served through the CM/ECF system to all counsel of record. I have confirmed via the Clerk's Office that this is the appropriate filing method for pro se litigants without CM/ECF privileges.

I would also like to extend my sincere appreciation to the Clerk's Office and the Docketing Team for their helpful and courteous guidance during this filing process, as reflected in our recent email correspondence.

Please don't hesitate to contact me should anything further be required to ensure proper filing and service.

**Request for CM/ECF Notification and Service Authorization**

      As a pro se movant in this matter, I respectfully request to be added to the case's CM/ECF electronic filing system for the purpose of receiving automatic notifications and service of filings. I authorize service and electronic notification to the following email address: *legal@bluelighthouserealty.com*

      I understand that this request does not grant me electronic filing privileges and that I must continue to file my documents in paper form unless otherwise authorized by the Court.

Respectfully submitted,

*/s/ Jorge Zea*
Jorge Zea
Movant, Pro Se

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| SCOTT AND RHONDA BURNETT, RYAN HENDRICKSON, JEROD BREIT, SCOTT TRUPIANO, AND JEREMY KEEL, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC, RE/MAX LLC, and KELLER WILLIAMS REALTY, INC.,<br><br>Defendants | Case No. 4:19-cv-00332-SRB |

MOTION FOR CLARIFICATION AND DECLARATORY RELIEF
BY MOVANT JORGE ZEA, REALTOR® AND BROKER

# TABLE OF CONTENTS

I. STATEMENT OF INTENT..................................................................................................2

II. INTRODUCTION...............................................................................................................2

III. TIMING AND RATIONALE FOR REQUEST..................................................................3

IV. STANDING, VENUE AND JURISDICTION...................................................................4

V. BACKGROUND.................................................................................................................5

    A. The Omission Is Contradictory and Unexplained................................................6

    B. Movant's Efforts to Seek Clarification.................................................................7

    C. Movant's Efforts to Seek Compliance and Enforcement....................................7

VI. RELIEF REQUESTED......................................................................................................8

VII. CONCLUSION:..............................................................................................................10

CERTIFICATE OF SERVICE................................................................................................13

## I. STATEMENT OF INTENT

Movant, Jorge Zea, a REALTOR® and Broker, submits this Motion in good faith—not as an adversarial challenge to any party, nor as an objection to the Settlement Agreement—but solely as a respectful request for clarification. The relief sought herein is aimed at reinforcing the clarity, enforceability, and intended outcomes of the Settlement.

This Motion does not raise new allegations, introduce new evidence, or rely on external materials. Instead, it is based solely on documents already filed with this Court, including the Settlement Agreement and the Plaintiffs' Motion for Preliminary Approval. Movant seeks clarification of terms and obligations already within the record to ensure proper implementation.

This Motion supports—rather than challenges—the integrity of the resolution achieved in this case. It is presented in the interest of transparency, fair competition, and market-wide compliance, and is intended to benefit all parties involved—including class members, released parties, consumers, and the real estate industry as a whole. Movant respectfully requests the cooperation of the parties so the Court may address this matter promptly and without anticipated opposition, as the issues raised are not controversial but clarifying in nature.

## II. INTRODUCTION

Movant respectfully moves this Court for clarification and declaratory relief regarding the omission of the no-steering rule from the Corrected Settlement Agreement (Doc. 1458-1, Exhibit A, filed April 19, 2024), despite its express description (as part of

2

the negotiated and agreed terms) and inclusion in Plaintiffs' Motion for Preliminary Approval of Settlement (Doc. 1458, filed April 19, 2024).

Movant further seeks this clarification as declaratory relief confirming that steering remains unlawful under both the Settlement Agreement and Section 1 of the Sherman Act.

The omission of this rule has left unresolved the core issue at the heart of this case—the practice of steering—which serves as the controlling instrument used by buyer agents to keep commission levels in check, as consistently outlined in the complaint, legal arguments, jury findings, and Plaintiffs' description of the settlement terms. Steering is the direct mechanism through which price-fixing and group boycotts are effected. These anticompetitive practices continue to distort market dynamics, inflate consumer costs, and suppress innovation and alternative business models in the real estate brokerage industry

### III. TIMING AND RATIONALE FOR REQUEST

Movant brings this Motion now because the consequences of the omitted anti-steering rule were not reasonably apparent during the formal objection window, which closed in November 2024. While the absence of a rule addressing steering could be observed in the Corrected Settlement Agreement, NAR's public representations at the time strongly conveyed that steering was prohibited and enforced through existing Code of Ethics violations and complaint procedure.

3

From NAR's own official statements, the reasonable expectation was that steering would be addressed through the Code of Ethics, and that enforcement mechanisms were already sufficient to prevent the conduct at issue.[1] These assurances, presented contemporaneously with the Settlement Agreement's approval and public rollout, created a presumption that the goals of the settlement—including curbing commission-based steering—would be met without further Court intervention.

Nevertheless, this has not been the case. The behavior and its harmful market effects have become more apparent over time as the new practice changes began to percolate through the market. Rather than being addressed or mitigated, steering appears to continue unimpeded, and enforcement remains absent.[2]

Accordingly, this Motion is both timely and appropriate under this Court's continuing and exclusive jurisdiction to interpret, administer, and enforce the Settlement Agreement and its injunctive relief provisions. (Final Judgment, Doc. 1674, at 3.).

## IV. STANDING, VENUE AND JURISDICTION

Movant has standing to bring this Motion as a REALTOR® and Real Estate Broker of a released brokerage directly bound and obligated by the terms of the Settlement Agreement.

---

[1] "*Under NAR's Code of Ethics, steering buyers based on the amount of broker compensation is prohibited.*" and "*Under these practice changes, NAR has eliminated any theoretical steering because a broker will not make more compensation by steering a buyer to a particular listing because it has a 'higher' offer of compensation.*" (NAR Settlement FAQs, Questions 92 and 93, available at https://www.nar.realtor/the-facts/nar-settlement-faqs (last visited Mar. 25, 2025)).

[2] As recently as March 23, 2025, Movant received an additional denial to a steering-related ethics complaint, further confirming the continued absence of effective enforcement.

4

Case 4:19-cv-00332-SRB    Document 1686    Filed 03/31/25    Page 7 of 20

This Court retains continuing and exclusive jurisdiction over the parties to the Settlement Agreement, including all matters relating to its administration, enforcement, and interpretation. As stated in the Court's Final Judgment (Doc. 1674, at 3), this includes the authority to interpret and enforce the injunctive relief provided by the Settlement and to ensure its proper implementation for the benefit of the Settlement Class.

## V. BACKGROUND

The parties reached an agreement on March 15, 2024, the terms of which were detailed in Plaintiffs' Motion for Preliminary Approval of the Settlement Agreement (filed as Doc 1458 on April 19, 2024). On page 14 of the motion, Plaintiffs highlighted the following as a principal achievement:

> ***"NAR must also adopt, for the first time, rules expressly and directly prohibiting steering by REALTORS® and REALTOR® MLS Participants,*** *including that they 'must not filter out or restrict MLS listings communicated to their customers or clients based on the existence or level of compensation offered . . . .' (Agreement ¶ 58(x))."(emphasis added)*

Plaintiffs filed the Corrected Settlement Agreement As Exhibit A, (Doc 1458-1). The practice changes outlined in the motion are listed on pages 35–39.

The omission creates a material contradiction between Plaintiffs' described settlement terms and the final agreement. As demonstrated in **Exhibit 1**, the Motion

5

promised an "express and direct" prohibition (Doc 1458 at 4), while Rule 58(x) merely states:

> *"x. require that REALTORS® and REALTOR® MLS Participants and subscribers must not filter out or restrict MLS listings communicated to their customers or clients based on the existence or level of compensation offered to the buyer broker or other buyer representative assisting the buyer;"*

### A. The Omission Is Contradictory and Unexplained

The omission of a no-steering rule from the final Settlement Agreement is both contradictory and unexplained, raising the possibility of a drafting error or oversight.

Steering lies at the very core of this case—it is the central mechanism by which sellers are pressured to offer high commission rates, under threat that buyer agents will steer clients toward listings with better commissions. This conduct perpetuates the price-fixing and group boycott schemes, (both *per se* Violations under the Sherman act) forming the foundation of the antitrust violations decided in this case.

From the initial complaint through the final filings, steering was a specific and recurring element of the litigation and the reforms sought. It serves as the critical and direct connecting link between the offer of buyer-agent compensation to the price fixing and group boycott.

Plaintiffs themselves emphasized the steering prohibition rule's importance, describing in their Motion for Preliminary Approval that the settlement agreement would

6

include, *"for the first time"* a rule expressly and directly prohibiting steering—highlighting it as a groundbreaking achievement. The subsequent omission of that provision is therefore inconsistent with the stated intent of the settlement and remains unexplained and unattended.

### B. Movant's Efforts to Seek Clarification

In response to the clear discrepancy between the Plaintiffs' stated intent in their Motion for Preliminary Approval and the final terms of the Settlement Agreement, Movant reached out to NAR and multiple REALTOR® Associations requesting clarification. The responses received confirmed that no rule expressly prohibiting steering was included in the final Settlement Agreement—reflecting, at minimum, an acknowledgment of the omission.

Rather than addressing the omission, the responding parties directed Movant to NAR's Code of Ethics, specifically Article 1, which requires REALTORS® to promote and protect the interests of their clients above their own. However, relying on this ethical guideline as a substitute for a clear, enforceable rule is inherently inadequate. It lacks the legal force, procedural rigor, and deterrent effect necessary to ensure compliance with federal antitrust obligations or the injunctive relief intended by the Settlement Agreement.

### C. Movant's Efforts to Seek Compliance and Enforcement

Relying on the Code of Ethics—a self-regulatory framework—to address what are in fact *per se* violations of the Sherman Act is both inappropriate and ineffective. The ethical enforcement process lacks the authority, structure, and deterrent power necessary

7

to meaningfully address, prevent or enforce systemic anticompetitive conduct and its ongoing harm to market competition and consumers.

Nevertheless, Movant sought compliance and enforcement by filing ethics complaints related to steering, wherein REALTORS® deliberately avoided showing Movant's listings due to the low or absent buyer-agent commission offers. These complaints were filed in various states and before different REALTOR® Associations.

In every case, despite providing documented written evidence—including explicit confirmations by the agents themselves that they avoided showing the property due to the amount of commission offered in advance— all the complaints were dismissed (with one exception where respondent accepted responsibility and waive the right to a hearing).

These consistent denials demonstrate the inherent inadequacy and ineffectiveness of the Code of Ethics enforcement process in addressing steering, thereby confirming the structural impossibility of relying on that framework to enforce what is fundamentally an antitrust *per se* violation. Moreover, Defendants' interpretation of steering as merely an ethical breach—rather than a systemic violation of federal antitrust law—exacerbates the need for judicial clarification. This Court's intervention is necessary to confirm that steering constitutes unlawful conduct under the Sherman Act, not merely a breach of ethical norms.

## VI. RELIEF REQUESTED

**Movant respectfully requests that the Court consider this Motion on an expedited basis**. The ongoing nature of steering inflicts current, compounding, and irreparable harm to market participants, consumers, and competition—harm that cannot

8

be fully remedied by monetary relief or retrospective action. Prompt judicial clarification is urgently needed to prevent further damage and to preserve the integrity and enforceability of the Settlement Agreement itself.

Therefore, Movant seeks clarification through declaratory reliefs; and respectfully requests that the Court:

1. Seek clarification from the parties as to why the negotiated and publicly described anti-steering rule — as outlined in Plaintiffs' Motion for Preliminary Approval of Settlement (Doc. 1458) — was omitted from the Corrected Settlement Agreement (Doc. 1458-1).

2. Declare that steering is prohibited under the terms and intent of the Settlement Agreement.

3. Affirm that steering constitutes a violation of Section 1 of the Sherman Act. (Doc. 1019)

4. Affirm that steering is a *per se* violation of the Sherman Act, consistent with this Court's prior ruling (Doc. 1019 at 20–21).

5. Declare that the National Association of REALTORS® (NAR) holds direct and non-delegable responsibility for the enactment, compliance, and enforcement of anti-steering provisions, and that this responsibility cannot be shifted to local, state, or regional REALTOR® associations.

6. Compel NAR to immediately enact a specific, express, and unambiguous rule that directly prohibits steering in all forms.

7. Order that NAR create a separate and independent national enforcement mechanism—distinct from the current Code of Ethics and/or MLS compliance structures—with disciplinary consequences proportionate to the seriousness and anticompetitive nature of steering.

8. Mandate the establishment of an external, independent compliance monitoring system to oversee the enactment, enforcement, and effectiveness of the anti-steering rule, subject to this Court's retained jurisdiction as expressly authorized in the Final Judgment (Doc. 1674 at 3).

## VII. CONCLUSION:

This case was fundamentally about ending *per se* antitrust violations—specifically, unlawful restraints of trade such as price-fixing and group boycotts—sustained through steering. These anticompetitive practices were enabled by the offering of buyer-agent compensation in advance, historically mandated by MLS rules.

In their Motion for Preliminary Approval of the Settlement Agreement (Doc. 1458), Plaintiffs described as a groundbreaking and major achievement the inclusion of a rule that would, "for the first time", expressly and directly prohibit steering. However, that critical provision was omitted from the final Settlement Agreement (Doc. 1458-1).

In the absence of such an express, enforceable rule, Defendants now interpret steering as a matter of ethics, enforceable solely through Article 1 of NAR's Code of Ethics. This relegation of a core antitrust concern to a self-regulatory ethics framework is inadequate. The Code of Ethics is not designed to detect, deter, or discipline systemic

antitrust violations—it lacks the independence, procedural rigor, and enforceability required to fulfill the injunctive relief contemplated by this Court's Final Judgment.

As a result, the mechanism that sustains anticompetitive harm - steering - remains operational and unaddressed, thereby undermining the purpose and impact of the Settlement. The harm persists, affecting competition, consumers, alternative business models, and market efficiency.

Importantly, this Motion does not introduce new allegations or evidence. It relies solely on documents and representations already before this Court, including those in Plaintiffs' Motion for Preliminary Approval and the Corrected Settlement Agreement. Movant is not attempting to relitigate the case but seeks narrow and essential clarification to uphold the intent, fairness, and transparency of the Settlement.

To the extent such clarification would necessitate the formal adoption of a rule mirroring what was already described to this Court as a "major achievement," Movant respectfully submits that this Court retains the authority to do so. As stated in its Final Judgment (Doc. 1674 at 3), the Court expressly retained continuing and exclusive jurisdiction to "interpret, implement, administer, effectuate, and enforce" the terms of the Settlement and its injunctive relief.

Movant simply asks this Court to exercise that jurisdiction—not to alter the Settlement—but to ensure that its core objectives are faithfully and transparently implemented, for the benefit of the class, consumers, the market, and all parties bound by it.

Movant respectfully expresses his preference to appear in person should the Court deem a hearing necessary, but defers entirely to the Court's discretion. Movant is also prepared to promptly provide any additional documentation or clarification the Court may require in support of this Motion.

Respectfully submitted,

*[signature]*

Jorge Zea
Movant, Pro Se
2234 N. Federal Hwy PMB 68073
Boca Raton, FL 33431
(305) 244-7242
legal@bluelighthouserealty.com

Date: March 25, 2025

# Exhibit 1

# COMPARISON OF STEERING PROHIBITION LANGUAGE
(From Doc. 1458 – Motion for Preliminary Approval, and Doc. 1458-1 – Corrected Settlement Agreement)

| Negotiated Term (Doc 1458) | Final Rule 58(x) (Doc 1458-1) | Material Differences |
|---|---|---|
| "**NAR must also adopt, for the first time, rules expressly and directly prohibiting steering by REALTORS® and REALTOR® MLS Participants,** including that they 'must not filter out or restrict MLS listings communicated to their customers or clients based on the existence or level of compensation offered . . . .' (Agreement ¶ 58(x))." | 58. "x. require that REALTORS® and REALTOR® MLS Participants and subscribers must not filter out or restrict MLS listings communicated to their customers or clients based on the existence or level of compensation offered to the buyer broker or other buyer representative assisting the buyer;" | 1. **Omitted entirely from Rule 58(x)**: The language in Plaintiffs' Motion stating that "*NAR must also adopt, for the first time, rules expressly and directly prohibiting steering by REALTORS® and REALTOR® MLS Participants...*" is not present in the final version.<br><br>2. Removes the historic "*for the first time*" designation, which underscored this provision as a landmark achievement and central reform promised in the Motion for Preliminary Approval. |

*This exhibit compares only the Court's own filed documents (Docs. 1458 & 1458-1) and introduces no new factual material.*

# CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of March, 2025, I mailed the original copy of this Motion to the Clerk of Court for the United States District Court for the Western District of Missouri via the United States Postal Service for filing.

Upon docketing, service will be effectuated through the Court's CM/ECF electronic filing system, which will automatically serve all counsel of record.

Respectfully submitted,

*/s/ Jorge Zea*

Jorge Zea
Movant, Pro Se
2234 N. Federal Hwy PMB 68073
Boca Raton, FL 33431
(305) 244-7242
legal@bluelighthouserealty.com

Date: March 25, 2025



# FLAT RATE ENVELOPE
ONE RATE ■ ANY WEIGHT

SCREENED BY
U.S. MARSHALS

To schedule free Package Pickup,
scan the QR code.



USPS.COM/PICKUP

# TRACKED ■ INSURED

RECEIVED
2025 MAR 31  AM 11: 45
CLERK U.S. DIST. COURT
WEST DIST. OF MO
KANSAS CITY, MO


PS00001000014

EP14F October 2023
OD: 12 1/2 x 9 1/2

**VISIT US AT USPS.COM®**
ORDER FREE SUPPLIES ONLINE

For Domestic shipments, the maximum weight is 70 lbs. For international shipments, the maximum weight is 20 lbs.

## PRIORITY MAIL FLAT RATE ENVELOPE
POSTAGE REQUIRED

**PRIORITY MAIL®**

US POSTAGE IMI $10.10 SSK PM
835550325165747 2000392298
03/25/25 Mailed from 33431 028W2312043

JORGE ZEA
1198 SW 13TH AVE
BOCA RATON FL 33486-5361

4.70 oz
RDC 03

EXPECTED DELIVERY DAY: 03/29/25

C015

SHIP TO:
CLERK OF COURT
US DISTRIC COURT WESTERN DISTRICT
400 E 9TH ST
KANSAS CITY MO 64106-2607

**USPS TRACKING® NUMBER**

9505 5065 6716 5084 4612 67

**TRACKED ■ INSURED**

PS00001000014
EP14F October 2023
OD: 12 1/2 x 9 1/2

FROM:
Jorge Zea
2234 N Federal Hwy.
PMB 68073
Boca Raton FL 33431

TO:
Clerk of Court,
U.S. District Court
Western District of Missouri
400 E. 9th Street
Kansas City, MO 64106