UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| RHONDA BURNETT, JEROD BREIT, HOLLEE ELLIS, FRANCES HARVEY, and JEREMY KEEL, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, REALOGY HOLDINGS CORP., HOMESERVICES OF AMERICA, INC., BHH AFFILIATES, LLC, HSF AFFILIATES, LLC, RE/MAX LLC, and KELLER WILLIAMS REALTY, INC.,<br><br>Defendants. | Case No. 19-CV-00332-SRB |

**PLAINTIFFS' SUGGESTIONS IN OPPOSITION TO MOVANT JORGE ZEA'S MOTION FOR CLARIFICATION AND DECLARATORY RELIEF**

## TABLE OF CONTENTS

|  | Page |
|---|---|
| INTRODUCTION | 1 |
| LAW AND ARGUMENT | 3 |
| I. The Motion for Clarification and Declaratory Relief Should be Denied. | 3 |
|     A. The Court Has Substantial Discretion to Decline to Hear a Declaratory Judgment Action. | 3 |
|     B. The Motion is Procedurally Improper. | 3 |
|     C. The Declaratory Relief Requested is not Warranted. | 5 |
|     D. The Declaratory and Injunctive Relief Sought Exceeds the Scope of the Settlement Agreement. | 8 |
| II. If Considered an Objection to the Settlement, the Motion Should Likewise Be Denied. | 10 |
| CONCLUSION | 11 |

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Brillhart v. Excess Ins. Co. of Am.*,
   316 U.S. 491 (1942)............................................................................................................3

*Centrifugal Acquisition Corp. v. Moon*,
   2010 WL 152074 (E.D. Wis. Jan. 14, 2010)........................................................................4

*Daniel Umpa v. The National Association of Realtors, et al.*,
   No. 23-cv-945 (W.D. Mo.) ..................................................................................................2

*Devlin v. Scardelletti*,
   536 U.S. 1 (2002)...............................................................................................................10

*Don Gibson v. The National Association of Realtors, et al.*,
   No. 23-cv-00788 (W.D. Mo.) ..............................................................................................2

*Feder v. Elec. Data Sys. Corp.*,
   248 F. App'x 579 (5th Cir. 2007) ......................................................................................11

*Frye v. Anadarko Petroleum Corp.*,
   953 F.3d 285 (5th Cir. 2019) ...............................................................................................4

*Gould v. Alleco, Inc.*,
   883 F.2d 281 (4th Cir. 1989) .............................................................................................11

*Kokkonen v. Guardian Life Ins. Co.*,
   511 U.S. 375 (1994).............................................................................................................8

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)...........................................................................................................11

*Moehrl v National Association of Realtors*,
   No. 1:19-cv-01610 (N.D. Ill.) ..............................................................................................2

*NORCAL Mut. Ins. Co. v. Dishman*,
   2019 WL 2505048 (W.D. Mo. June 17, 2019) ....................................................................3

*United States v. Metro. St. Louis Sewer Dist.*,
   440 F.3d 930 (8th Cir. 2006) ...............................................................................................9

*United States v. Metro. St. Louis Sewer Dist.*,
   569 F.3d 829 (8th Cir. 2009) ...............................................................................................4

*Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*,
 386 F.3d 581 (4th Cir. 2004) ........................................................................................................4

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
 396 F.3d 922 (8th Cir. 2005) ......................................................................................................10

**STATUTES**

28 U.S.C. § 2201(a) ........................................................................................................................3

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 57 .................................................................................................4

Federal Rule of Civil Procedure 24 .................................................................................................4

Federal Rule of Civil Procedure 23 ...............................................................................................11

Jorge Zea, a Realtor and Broker, filed a Motion for Clarification and Declaratory Relief (the "Motion") (Doc. 1686), in connection with Plaintiffs' Settlement with the National Association of Realtors ("NAR"). Mr. Zea is not a party to this action, not a member of the Settlement Class, and not an intervenor. Yet, he asks this Court—over four months after final approval of the Settlement—to order NAR to adopt policies that he claims are different from those agreed to in the Settlement. Mr. Zea further requests "declaratory relief confirming that steering remains unlawful under both the Settlement Agreement and Section 1 of the Sherman Act," among other things.

The Motion should be denied as procedurally improper, untimely, for lack of standing, and because the declaratory relief sought exceeds the scope of the Settlement Agreement. To the extent the substance of the motion could be considered as an objection to the Settlement, it should be overruled as untimely and for lack of standing.

## INTRODUCTION

After five years of hard-fought litigation, a jury trial, and extensive arm's-length settlement negotiations, Plaintiffs and NAR reached a global Settlement on March 15, 2024. (Doc. 1458-1). The settlement provides substantial monetary relief—including a settlement fund of at least $418 million—to a nationwide class of home sellers and requires extensive practice changes that benefit home sellers and buyers. Economists and other market experts have predicted that the Settlement could ultimately save consumers billions of dollars.[1]

Plaintiffs are class members who (1) sold a home during the Eligible Date Range; (2) listed the home that was sold on a multiple listing service ("MLS") anywhere in the United

---

[1] *See, e.g.,* Julian Mark, Aaron Gregg & Rachel Kurzius, *Realtors' Settlement Could Dramatically Change Cost of Housing Sales*, Washington Post (Mar. 15, 2024), https://www.washingtonpost.com/business/2024/03/15/nar-real-estate-commissions-settlement/.

States; and (3) paid a commission to any real estate brokerage in connection with the sale of the home. The Settlement resolved on a nationwide basis Plaintiffs' claims for damages and injunctive relief against NAR for its alleged anticompetitive practices in the market for residential real estate brokerage services, including Plaintiffs' claims in the above-captioned case, *Moehrl v National Association of Realtors*, Case No. 1:19-cv-01610-ARW (N.D. Ill.), *Daniel Umpa v. The National Association of Realtors, et al.*, No. 23-cv-945 (W.D. Mo.), and *Don Gibson v. The National Association of Realtors, et al*., No. 23-cv-00788 (W.D. Mo.) (collectively, "the Actions").

After this Court granted preliminary approval of the NAR Settlement (Doc. 1460), Notice to the Settlement Class commenced on August 17, 2024. Class members were given an opportunity to opt out of, or object to, the Settlement on or before October 28, 2024. The Court held a hearing on November 26, 2024, at which arguments were presented for and against final approval. After fully considering the arguments from Objectors at the hearing and in their written submissions, and based on all materials in the record, the Court granted final approval of the settlement on November 27, 2024. (Doc. 1622), finding that the Settlement was "fair, reasonable, and adequate." (*Id.* at ¶16) Certain objectors have appealed that ruling to the 8th Circuit.

Over five months after the deadline to object to the NAR Settlement, and over four months after the Court granted final approval of that Settlement, Movant Jorge Zea ("Zea" or "Movant") filed his Motion for Clarification and Declaratory Relief (Doc. 1686), asking the Court to grant eight items of declaratory or injunctive relief. Specifically, Mr. Zea asks the Court to:

1. Seek clarification from the parties as to why the negotiated and publicly described anti-steering rule—as outlined in Plaintiffs' Motion for Preliminary Approval of Settlement (Doc. 1458)—was omitted from the Corrected Settlement Agreement (Doc. 1458-1).

2. Declare that steering is prohibited under the terms and intent of the Settlement Agreement.

3. Affirm that steering constitutes a violation of Section 1 of the Sherman Act.

2

4. Affirm that steering is *a per se* violation of the Sherman Act.

5. Declare that the National Association of REALTORS® (NAR) holds direct and non-delegable responsibility for the enactment, compliance, and enforcement of anti-steering provisions, and that this responsibility cannot be shifted to local, state, or regional REALTOR® associations.

6. Compel NAR to immediately enact a specific, express, and unambiguous rule that directly prohibits steering in all forms.

7. Order that NAR create a separate and independent national enforcement mechanism—distinct from the current Code of Ethics and/or MLS compliance structures—with disciplinary consequences proportionate to the seriousness and anticompetitive nature of steering.

8. Mandate the establishment of an external, independent compliance monitoring system to oversee the enactment, enforcement, and effectiveness of the anti-steering rule, subject to this Court's retained jurisdiction as expressly authorized in the Final Judgment.

*See* Doc. 1686 at 9-10.

## LAW AND ARGUMENT

**I.** **The Motion for Clarification and Declaratory Relief Should be Denied.**

**A.** **The Court Has Substantial Discretion to Decline to Hear a Declaratory Judgment Action.**

A district court has substantial discretion to decline to hear a declaratory judgment action, even if it has subject matter jurisdiction over the matter. 28 U.S.C. § 2201(a); *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942); *Wilton v. Seven Falls Co.,* 515 U.S. 277, 282, 286-287 (1995). The Declaratory Judgment Act "gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." *NORCAL Mut. Ins. Co. v. Dishman*, 2019 WL 2505048, at *1 (W.D. Mo. June 17, 2019).

**B.** **The Motion is Procedurally Improper.**

To properly request a declaratory judgment, Movant could have filed a separate action under the Declaratory Judgment Act (28 U.S.C. § 2201), in conjunction with Federal Rule of

Civil Procedure 57, and attempted to establish jurisdiction, standing, and a live case or controversy. A party seeking a declaratory judgment must do so by commencing an action. *See Centrifugal Acquisition Corp. v. Moon*, 2010 WL 152074, at *1 (E.D. Wis. Jan. 14, 2010) ("the motion is procedurally improper because there is no such thing as a motion for declaratory relief. 'A party may not make a *motion* for declaratory relief, but rather, the party must bring an *action* for a declaratory judgment.'" (quoting *Kam–Ko Bio–Pharm Trading Co., Ltd. v. Mayne Pharma (USA) Inc.,* 560 F.3d 935, 943 (9th Cir. 2009)); 10B Wright, Miller & Kane, Fed. Prac. and Proc. Civ. § 2768 (4th ed. 2025); *Arizona v. City of Tucson*, 761 F.3d 1005, 1010 (9th Cir. 2014) ("A request for declaratory relief is properly before the court when it is pleaded in a complaint for declaratory judgment. Requests for declaratory judgment are not properly before the court if raised only in passing, or by motion.").

After a complaint is filed, the Court would then need to determine whether (1) an independent basis for jurisdiction exists; (2) the complaint alleges an actual controversy; and (3) whether exercising jurisdiction would constate an abuse of discretion. *See Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 592, 594 (4th Cir. 2004); *see also Frye v. Anadarko Petroleum Corp.*, 953 F.3d 285, 293 (5th Cir. 2019). Such analysis is premature at this point.

Mr. Zea further lacks standing because (a) he does not claim to be a party to the case; and (b) he has not moved to intervene. Before properly filing a motion for substantive relief in this action, Mr. Zea would need to successfully file a motion to intervene under Federal Rule of Procedure 24, which he has not done. *United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 833 (8th Cir. 2009) (intervention required for non-parties to participate meaningfully in litigation).

### C. The Declaratory Relief Requested is not Warranted.

**1.** Movant asks the Court for "clarification from the parties as to why the negotiated and publicly described anti-steering rule—as outlined in Plaintiffs' Motion for Preliminary Approval of Settlement (Doc. 1458)—was omitted from the Corrected Settlement Agreement (Doc. 1458-1)."

**2.** Movant asks the Court to "Declare that steering is prohibited under the terms and intent of the Settlement Agreement."

Mr. Zea's request for clarification is unnecessary. As explained in their Motion for Preliminary Approval (Doc. 1458, pp. 6-9) and their Motion for Final Approval (Doc. 1595, pp. 8-11), the Settlement Agreement includes multiple rules designed to prohibit steering. For instance, as part of the Settlement, NAR agreed to implement the following Practice Changes (Doc. 1458-1, Settlement, ¶58 (i)-(xiii)), which have the purpose and effect of restricting steering by agents representing buyers.

"*Practice Changes*", NAR Settlement (Doc. 1458-1) ¶58:

"*As soon as practicable, and in no event later than the date of Class Notice (as provided in Paragraph 30 of this Settlement Agreement), the National Association of REALTORS® (defined for purposes of this paragraph to include present and future, direct and indirect subsidiaries, predecessors, and successors) will implement the following practice changes:*

> i. ==eliminate and prohibit any requirement by the National Association of REALTORS®, REALTOR® MLSs, or Member Boards that listing brokers or sellers must make offers of compensation to buyer brokers== *or other buyer representatives (either directly or through buyers), and eliminate and prohibit any requirement that such offers, if made, must be blanket, unconditional, or unilateral;*
> ii. ==prohibit REALTOR® MLS Participants, subscribers, other real estate brokers, other real estate agents, and their sellers from (a) making offers of compensation on the MLS to buyer brokers or other buyer representatives (either directly or through buyers)== *or (b) disclosing on the MLS listing broker compensation or total broker compensation (i.e., the combined compensation to both listing brokers and cooperating brokers);*
> iii. *require REALTOR® MLSs to (a)* ==eliminate all broker compensation fields on the MLS a==*nd (b) prohibit the sharing of the offers of compensation to buyer brokers or other buyer representatives described in Paragraphs 58(i) and (ii) of this Settlement Agreement via any other REALTOR® MLS field;*
> iv. *eliminate and prohibit any requirements conditioning participation or membership in a REALTOR® MLS on offering or accepting offers of compensation to buyer brokers or other buyer representatives;*

v.	agree not to create, facilitate, or support any non-MLS mechanism (including by providing listing information to an internet aggregators' website for such purpose) for listing brokers or sellers to make offers of compensation to buyer brokers or other buyer representatives (either directly or through buyers), however, this provision is not violated by (a) a REALTOR® MLS providing data or data feeds to a REALTOR®, REALTOR® MLS Participant, or third party unless the REALTOR® MLS knows those data or data feeds are being used directly or indirectly to establish or maintain a platform for offers of compensation from multiple brokers (i.e., the REALTOR® MLS cannot intentionally circumvent this requirement); or (b) a REALTOR® or REALTOR® MLS Participant displaying both (1) data or data feeds from a REALTOR® MLS and (2) offers of compensation to buyer brokers or other buyer representatives but only on listings from their own brokerage;

vi.	unless inconsistent with state or federal law or regulation before or during the operation of this Paragraph 58(vi) of this Settlement Agreement, require that all REALTOR® MLS Participants working with a buyer enter into a written agreement before the buyer tours any home with the following:
  a. to the extent that such a REALTOR® or Participant will receive compensation from any source, the agreement must specify and conspicuously disclose the amount or rate of compensation it will receive or how this amount will be determined;
  b. the amount of compensation reflected must be objectively ascertainable and may not be open-ended (e.g., "buyer broker compensation shall be whatever amount the seller is offering to the buyer"); and
  c. such a REALTOR® or Participant may not receive compensation for brokerage services from any source that exceeds the amount or rate agreed to in the agreement with the buyer;

vii.	prohibit REALTORS® and REALTOR® MLS Participants from representing to a client or customer that their brokerage services are free or available at no cost to their clients, unless they will receive no financial compensation from any source for those services;

viii.	require REALTORS® and REALTOR® MLS Participants acting for sellers to conspicuously disclose to sellers and obtain seller approval for any payment or offer of payment that the listing broker or seller will make to another broker, agent, or other representative (e.g., a real estate attorney) acting for buyers; and such disclosure must be in writing, provided in advance of any payment or agreement to pay to another broker acting for buyers, and specify the amount or rate of any such payment;

ix.	require REALTORS® and REALTOR® MLS Participants to disclose to prospective sellers and buyers in conspicuous language that broker commissions are not set by law and are fully negotiable (a) in their listing agreement if it is not a government-specified form, (b) in their agreement with buyers if it is not a government-specified form, and (c) in pre-closing disclosure documents if there are any and they are not government-specified forms. In the event that the listing agreement, buyer representation agreement, or pre-closing disclosure documents are a government form, then REALTORS® and REALTOR® MLS Participants must include a disclosure with conspicuous language expressly stating that broker commissions are not set by law and are fully negotiable.

> *NAR also shall require that REALTOR® Member Boards and REALTOR® MLSs, to the extent they publish form listing agreements, buyer representation agreements, and pre-closing disclosure documents for use by REALTORS®, Participants, and/or subscribers, must conform those documents to this Paragraph 58(ix).*
>
> > *x.     require that REALTORS® and REALTOR® MLS Participants and subscribers must not filter out or restrict MLS listings communicated to their customers or clients based on the existence or level of compensation offered to the buyer broker or other buyer representative assisting the buyer;*
> >
> > *xi.     rescind or modify any existing rules that are inconsistent with the practice changes reflected in this Settlement Agreement; and*
> >
> > *xii.     develop educational materials that reflect and are consistent with each provision in these practice changes, and eliminate educational materials, if any, that are contrary to it.*
> >
> > *xiii.     the practice changes in Paragraph 58 of this Settlement Agreement shall not prevent (a) offers of compensation to buyer brokers or other buyer representatives off of the multiple listing service; or (b) sellers from offering buyer concessions on a REALTOR® MLS (e.g., for buyer closing costs), so long as such concessions are not limited to or conditioned on the retention of or payment to a cooperating broker, buyer broker, or other buyer representative.*"

The Settlement Agreement further requires that NAR will make best efforts to implement the Practice Changes listed above. (*See* Settlement, ¶60) NAR has adopted several policies restricting steering and enacting and enforcing the other agreed Practice Changes. *See generally* Exhibit A, NAR 2025 Handbook on Multiple Listing Policy.[2] Those include:

1. "*The MLS must not accept listing containing an offer of compensation in the MLS to other MLS Participants and Subscribers. …*"[3]

2. "*Participants, Subscribers, or their sellers may not make offers of compensation to buyer brokers and other buyer representatives in the MLS.*"[4]

3. "*MLS Participants and Subscribers must not, and MLSs must not enable the ability to, filter out or restrict MLS listings that are communicated to consumers or clients based on*

---

[2] Attached as Exhibit A, and also available at this link: https://www.nar.realtor/sites/default/files/2025-01/PDF-HMLP-2025-Handbook-on-Multiple-Listing-Policy-2025-01-23.pdf.

[3] Ex. A, Handbook, p. 39, Section 1, No Offers of Compensation in MLS (Policy Statement 8.11).

[4] *Id.*, p. 69, Section 5; *see also* p. 114.

*the existence or level of compensation offered to the cooperating broker or the name of a brokerage or agent. (Amended 8/24). Mandatory.*"[5]

4. "*Unless inconsistent with state or federal law or regulation, all MLS Participants working with a buyer must enter into a written agreement with the buyer prior to touring a home. The written agreement must include:*
    a. *a specific and conspicuous disclosure of the amount or rate of compensation the Participant will receive or how this amount will be determined, to the extent that the Participant will receive compensation from any source.*
    b. *the amount of compensation in a manner that is objectively ascertainable and not open-ended.*
    c. *a term that prohibits the Participant from receiving compensation for brokerage services from any source that exceeds the amount or rate agreed to in the agreement with the buyer; and*
    d. *a conspicuous statement that broker fees and commissions are not set by law and are fully negotiable. (Adopted 8/24) Mandatory*"[6]

5. "*Disclosure of Compensation: MLS Participants and Subscribers must: Disclose to prospective sellers and buyers that broker compensation is not set by law and is fully negotiable. This must be included in conspicuous language as part of any listing agreement, buyer written agreement, and pre-closing disclosure documents (if any).*"[7]

6. "*MLS Participants and Subscribers must not represent that their brokerage services to a client or customer are free or available at no cost to clients ….*"[8]

### D. The Declaratory and Injunctive Relief Sought Exceeds the Scope of the Settlement Agreement.

Several of Mr. Zea's requests should be denied to the extent he asks the Court to order NAR to adopt rules and policies that are not reflected in the Settlement Agreement. Such proposed declaratory judgments should be denied. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 381 (1994) (court's enforcement authority is limited to the terms of the settlement as

---

[5] *Id.*, p.22, Section 21, Non-Filtering of Listings (Policy Statement 8.5); *see also*, p. 69 and p. 114.

[6] *Id*. p. 40, Section 4 Written Buyer Agreements Required (Policy Statement 8.13); *see also*, p.70 and p. 115.

[7] *Id.*, p. 40, Section 3 Required Consumer Disclosure (Policy Statement 8.12); *see also*, p. 70 and p. 115.

[8] *Id.*, p. 30, Section 6, Services Advertised as "Free."

retained in its order); *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006) (courts enforce settlements as contracts).

3. Movant asks the Court to "Affirm that steering constitutes a violation of Section 1 of the Sherman Act."

4. Movant further asks the Court to "Affirm that steering is *a per se* violation of the Sherman Act …."

Plaintiffs respond to these two requests that the parties' Settlement does not contain any agreement regarding whether steering constitutes a violation (or a per se violation) of Section 1 of the Sherman Act. Plaintiffs alleged in their complaints that NAR participated in a conspiracy to raise, fix, maintain, or stabilize real estate commissions in violation of Section 1 of the Sherman Act (Settlement p.1), and NAR denies these allegations (Settlement ¶72). The Settlement Agreement expressly provides that it shall not be construed as an admission of liability. (*Id.*) Thus, the declaratory relief Movant seeks in Requests 3 and 4 is beyond the scope of the Settlement.

5. Movant asks the Court to "Declare that the National Association of REALTORS® (NAR) holds direct and non-delegable responsibility for the enactment, compliance, and enforcement of anti-steering provisions, and that this responsibility cannot be shifted to local, state, or regional REALTOR® associations."

6. Movant asks the Court to "Compel NAR to immediately enact a specific, express, and unambiguous rule that directly prohibits steering in all forms."

7. Movant asks the Court to "Order that NAR create a separate and independent national enforcement mechanism-distinct from the current Code of Ethics and/or MLS compliance structures-with disciplinary consequences proportionate to the seriousness and anticompetitive nature of steering."

8. Movant further asks the Court to "Mandate the establishment of an external, independent compliance monitoring system to oversee the enactment, enforcement, and effectiveness of the anti-steering rule, subject to this Court's retained jurisdiction as expressly authorized in the Final Judgment."

Plaintiffs respond that the Settlement imposes obligations on NAR, opting-in MLSs, and Realtor associations. With respect to NAR, those obligations include the Practice Changes set forth
9

Case 4:19-cv-00332-SRB    Document 1687    Filed 04/14/25    Page 13 of 17

in Paragraphs 58 and 60, among them several provisions are designed to reduce steering. The Settlement also includes various enforcement mechanisms, including several directed at NAR. For instance, the Settlement requires NAR to: "(xi) rescind or modify any existing rules that are inconsistent with the practice changes reflected in this Settlement Agreement; and (xii) develop educational materials that reflect and are consistent with each provision in these practice changes, and eliminate educational materials, if any, that are contrary to it." (¶58 (xi)-(xii)). The Settlement Agreement further provides that NAR shall "use its best efforts to implement the practice changes[.]" (¶60). The Court has already granted final approval of the Settlement (Doc. 1622) and may enforce those obligations but may not modify them.

## II. If Considered an Objection to the Settlement, the Motion Should Likewise Be Denied.

To the extent the Motion is considered an objection to the Settlement, such objection should be overruled as untimely and for lack of standing. Pursuant to this Court's Orders granting preliminary approval of the NAR Settlement (Doc. 1460) and granting approval of the form and manner of notice (Doc. 1521), Class Notice commenced on August 17, 2024, and Class Members had the opportunity to object or opt out of the Settlement on or before October 28, 2024.

Mr. Zea did not file his Motion for relief until over five months after the objection deadline, and over four months after the Settlement received final approval by this Court. As such, to the extent his Motion is an objection to the Settlement, it is untimely.

Furthermore, Mr. Zea does not claim to have sold a home on an MLS and paid a commission during the eligible time period, so he has not established that he is a member of the Settlement Class. Non-class members lack standing to object to class settlements. *See Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989) ("The plain language of Rule 23(e) clearly contemplates allowing only class members to object to settlement proposals.") (citing *Jenson v. Cont'l Fin. Corp.*, 591 F.2d 477, 482 n.7 (8th Cir. 1979)); *Feder v. Elec. Data Sys. Corp.,* 248 F.

App'x 579, 580 (5th Cir. 2007) ("O]nly class members have standing to object to a settlement. Anyone else lacks the requisite proof of injury necessary to establish the 'irreducible minimum' of standing"); 4 Newberg and Rubenstein on Class Actions § 13:22 (6th ed. June 2024 Update) ("Rule 23 confers the right to object upon class members, the Rule itself does not confer standing upon nonclass members" and "Courts regularly find that nonclass members have no standing to object to a proposed settlement[.]"). The burden is on the objector to show standing. *Feder*, 248 F. App'x at 581.

## CONCLUSION

For these reasons, the Court should deny Mr. Zea's Motion for Clarification and Declaratory Relief in its entirety.

DATED: April 14, 2025               Respectfully submitted by:

**HAGENS BERMAN SOBOL                    WILLIAMS DIRKS DAMERON LLC**
**SHAPIRO LLP**

*/s/ Jeannie Y. Evans*                       */s/ Eric L. Dirks*

Steve W. Berman (*pro hac vice*)            Michael A. Williams, MO # 47538
1301 Second Avenue, Suite 2000              Eric L. Dirks, MO # 54921
Seattle, WA 98101                           1100 Main Street, Suite 2600
Telephone: (206) 623-7292                   Kansas City, MO 64105
steve@hbsslaw.com                           Telephone: (816) 945 7110
                                            Facsimile: (816) 945-7118
Rio S. Pierce (*pro hac vice*)              mwilliams@williamsdirks.com
715 Hearst Avenue, Suite 300                dirks@williamsdirks.com
Berkeley, CA 94710
Telephone: (510) 725-3000                   **BOULWARE LAW LLC**
riop@hbsslaw.com                            Brandon J.B. Boulware, MO # 54150
                                            Jeremy M. Suhr, MO # 60075
Jeannie Evans (*pro hac vice*)              Erin D. Lawrence, MO # 63021
Nathan Emmons (Mo. Bar. No. 70046)          1600 Genessee Street, Suite 416
455 North Cityfront Plaza Drive, Suite 2410 Kansas City, MO 64102
Chicago, IL 60611                           Telephone (816) 492-2826
Telephone: (708) 628-4949                   Facsimile: (816) 492-2826
jeannie@hbsslaw.com                         brandon@boulware-law.com
nathane@hbsslaw.com                         jeremy@boulware-law.com

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Benjamin D. Brown (*pro hac vice*)
Robert A. Braun (*pro hac vice*)
Sabrina Merold (*pro hac vice*)
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
bbrown@cohenmilstein.com
rbraun@cohenmilstein.com
smerold@cohenmilstein.com

Daniel Silverman (*pro hac vice*)
769 Centre Street, Suite 207
Boston, MA 02130
Telephone: (617) 858-1990
dsilverman@cohenmilstein.com

**SUSMAN GODFREY L.L.P.**
Marc M. Seltzer (*pro hac vice*)
Steven G. Sklaver (*pro hac vice*)
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Beatrice C. Franklin (*pro hac vice*)
One Manhattan West
New York, NY 10001
Telephone: (212) 336-8330
bfranklin@susmangodfrey.com

Matthew R. Berry (*pro hac vice*)
Floyd G. Short (*pro hac vice*)
Alexander W. Aiken (*pro hac vice*)
401 Union St., Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
mberry@susmangodfrey.com
fshort@susmangodfrey.com
aaiken@susmangodfrey.com

*Attorneys for Plaintiffs and the Classes*

erin@boulware-law.com

**KETCHMARK AND MCCREIGHT P.C.**
Michael Ketchmark, MO # 41018
Scott McCreight, MO # 44002
11161 Overbrook Road, Suite 210
Leawood, KS 66211
Telephone: (913) 266-4500
mike@ketchmclaw.com
smccreight@ketchmclaw.com

*Attorneys for Plaintiffs and the Classes*

## CERTIFICATE OF SERVICE

  I hereby certify that on April 14, 2025 a copy of the foregoing document was electronically filed through the ECF system and will be sent electronically to all persons identified on the Notice of Electronic Filing.

               /s/ *Jeannie Y. Evans*
                Jeannie Y. Evans