| | |
|---|---|
| RHONDA BURNETT, JEROD BREIT, HOLLEE ELLIS, FRANCES HARVEY, and JEREMY KEEL, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> THE NATIONAL ASSOCIATION OF REALTORS, *et al.*, <br><br> Defendants. | Civil Action No. 4:19-CV-00332-SRB <br><br> Hon. Stephen R. Bough |
| DON GIBSON, LAUREN CRISS, JOHN MEINERS, and DANIEL UMPA, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> THE NATIONAL ASSOCIATION OF REALTORS, *et al.*, <br><br> Defendants. | Civil Action No. 4:23-cv-00788-SRB <br><br> [Consolidated with 4:23-cv-00945-SRB] <br><br> Hon. Stephen R. Bough |

## PLAINTIFFS' MOTION TO ADOPT A PROCEDURE TO ADDRESS ENFORCEMENT OF THE OPT-IN MLS SETTLEMENT AGREEMENTS

Plaintiffs Don Gibson, Lauren Criss, John Meiners, and Daniel Umpa hereby move for an order enforcing the opt-in MLS settlement agreements in order to facilitate the third-party production of the Settling MLSs' data in this litigation. This motion is time sensitive in light of the present class certification deadlines.

The vast majority of MLSs around the country—more than 500—settled with Plaintiffs in this litigation by opting into the NAR settlement. As a condition for opting-in and obtaining

releases, those MLSs expressly consented to Plaintiffs obtaining their listing and class member data from third parties, such as MLS platform providers, to support the litigation of the *Gibson* case. *See, e.g.*, NAR Opt-In Settlement Agreement (App'x B) ¶ 8.iv (reflected at *Burnett v. Nat'l Assoc. of Realtors*, 4:19-cv-00332 (W.D. Mo.), Dkt. 1458-1 at 64) (opting in MLS "stipulate[s] that Plaintiffs have the consent to obtain from third parties relevant class member and listing data to support . . . the litigation of the Actions"); NAR Settlement Agreement at 1 (defining "Actions" to include *Gibson*).

This provision was included in the MLS Opt-in Settlement Agreements because Plaintiffs were aware that a small number of third parties possessed listing data, including commission data, for almost all of country's MLSs and obtaining data from those third parties would be significantly more efficient that obtaining it from more than 500 separate MLSs.

The opting-in MLSs further agreed to this Court retaining exclusive jurisdiction to implement and enforce their opt-in settlement agreements. *See* NAR Opt-In Settlement Agreement ¶ 15 ("The Court shall retain jurisdiction over the implementation and enforcement of the Settlement Agreement and the Settlement, including Appendix B."); *id*. ¶ 16 ("Stipulating MLS submits to the exclusive jurisdiction of the Court for the purposes of interpreting and enforcing the terms of Appendix B, including but not limited to, the practice changes contained therein.").

Consistent with the opt-in MLSs' settlement agreements, this Court expressly retained jurisdiction to enforce those settlements. *See* Dkt. 1622 at 22 ("The Settlement Agreement includes an opt-in structure that permitted Realtor and non-Realtor MLSs to agree to submit to the Court's jurisdiction, including for purposes of enforcing the settlement, as one of several conditions for obtaining a release."); Dkt. 1673 (in entering final judgment, this Court "expressly retains

continuing and exclusive jurisdiction over the parties and the Released Parties to the Settlement Agreement . . . including those entities opting into the Settlement Agreement").

Contrary to their settlement agreements, which were approved by this Court, Plaintiffs have been advised that certain MLSs have resisted or declined to facilitate the third-party production of listing and class member data in support of this litigation. For instance, Plaintiffs in this case served on third-party Financial Business Systems, Inc. ("FBS") a Rule 45 document subpoena on April 1, 2026, including seeking:

> Data sufficient to show, for each actual or potential purchase, sale, or listing of residential real estate, (i) the location of the property; (ii) the names of the buyer(s) and seller(s) and their contact information (including any new address, phone number, or email address); (iii) the date of the transaction; (iv) whether either of the counterparties was self-represented and, if not, the Broker representing each; (v) any unique identifier associated with the transaction; (vi) the amount and other terms of any offer; (vii) the amount and other terms of any commission offered or paid; (viii) the length of time the property was on the market; (ix) all pricing information concerning the property; (x) any other available pricing or commission information; and (xi) any features of the property or sale type.

FBS is among the country's largest providers of MLS platform services. FBS has acknowledged that it has in its possession historical MLS listing data—including data on commissions—for more than 100 MLSs around the country.

Plaintiffs attempted to work cooperatively with FBS for several months, including providing FBS with: (i) the MLS opt-in settlement agreement language in which the MLSs consented to the production of their data; and (ii) a full list of opting in MLS. Despite this, FBS has refused to produce the requested MLS listing and class member data. In refusing to comply with Plaintiffs' subpoena, FBS focused on its contracts with MLS clients, which include certain disclosure limitations. These contracts expressly state, however, that FBS is permitted to disclose MLS data as long as the disclosure is (i) made to "persons to whom disclosure has been authorized in writing by [the MLS] Customer" and/or (ii) authorized or directed "by order of a court."

In refusing to comply with Plaintiffs' subpoena,[1] FBS further indicated that it unilaterally notified its MLS clients of Plaintiffs' subpoena and asked whether they consent to FBS producing their data. FBS issued notices unilaterally despite Plaintiffs' request to work collaboratively on a notice procedure and language that identified the MLSs' existing agreements permitting third parties to produce their data. Plaintiffs understand that the unilateral notices FBS provided did not reference the MLSs' existing settlement obligations.

FBS has further indicated that the vast majority of MLSs to which it unilaterally provided notices have not affirmatively responded at all and that several others have affirmatively indicated they do not consent to FBSs' production of their data. However, FBS has refused to provide Plaintiffs with a list of MLSs it claims have not consented. As a result, Plaintiffs are unable to identify the particular MLSs that have resisted complying with their settlement obligations.

Accordingly, in order to facilitate enforcement of the opt-in MLSs' settlement obligations, Plaintiffs request that the Court adopt the following procedures as reflected in the attached proposed order:

1.      Plaintiffs will provide notice to each opting in MLS, including of: (i) the attached proposed order, including the procedures for lodging an objection; and (ii) each MLSs' "stipulat[ion] that Plaintiffs have the consent to obtain from third parties relevant class member and listing data to support . . . the litigation of the Actions" NAR Opt-In Settlement Agreement ¶ 8.iv.

---

[1] In addition to enforcing their settlement agreements with opting-in MLSs, Plaintiffs intend to enforce their subpoena on FBS. Although this Court issued the subpoena in question, and FBS is represented in connection with the subpoena by counsel from Stimson LLP that are located in this District, FBS has refused to consent to this Court's authority to enforce the subpoena. Accordingly, Plaintiffs intend to seek to transfer to this Court enforcement of the subpoena on FBS pursuant to Federal Rule of Civil Procedure 45(f).

2.      Any MLS that disputes whether it has consented under its settlement agreement to the production of its data by third parties shall then have 7 days from the receipt of notice to lodge an objection with the Court.

3.      Any MLS that does not object within 7 days to the production by third parties of its MLS or class member data shall be deemed, pursuant to NAR Opt-In Settlement Agreement ¶ 8.iv., to have authorized in writing the production of their data by third parties to the parties to this litigation and the production of their data shall be deemed to have been authorized by an order of this Court.

4.      With respect to any MLS that lodges a timely objection, Plaintiffs and the MLS shall brief the merits of that objection and the Court shall subsequently resolve any dispute over the enforcement of the settlement agreement as to that MLS.

The proposed procedures are similar to those previously adopted by the Court to govern the production of documents to the *Gibson* Defendants that were previously produced in *Burnett v. NAR*, No. 4:19-cv-00332 (W.D. Mo.), and *Moehrl v. NAR*, No. 1:19-cv-01610 (N.D. Ill.)/ *See* Dkt. No. 780.


Dated: July 22, 2026                    Respectfully Submitted,

                                        **WILLIAMS DIRKS DAMERON LLC**

                                        */s/ Eric L. Dirks*
                                        Eric L. Dirks MO # 54921
                                        1100 Main Street, Suite 2600
                                        Kansas City, MO 64105
                                        Tele: (816) 945 7110
                                        Fax: (816) 945-7118
                                        dirks@williamsdirks.com

**BOULWARE LAW LLC**

Brandon J.B. Boulware MO # 54150
Jeremy M. Suhr MO # 60075
1600 Genessee Street, Suite 956A
Kansas City, MO 64102
Tele: (816) 492-2826
Fax: (816) 492-2826
brandon@boulware-law.com
jeremy@boulware-law.com

**KETCHMARK AND MCCREIGHT P.C.**

Michael Ketchmark MO # 41018
Scott McCreight MO # 44002 11161
Overbrook Rd. Suite 210
Leawood, Kansas 66211
Tele: (913) 266-4500
mike@ketchmclaw.com
smccreight@ketchmclaw.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**

Steve W. Berman (*pro hac vice*)
steve@hbsslaw.com
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292

Rio S. Pierce (*pro hac vice*)
riop@hbsslaw.com
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000

Nathan Emmons (Mo. Bar. No. 70046)
455 North Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
nathane@hbsslaw.com

**COHEN MILSTEIN SELLERS & TOLL PLLC**

Benjamin D. Brown (*pro hac vice*)

Robert A. Braun (*pro hac vice*)
Sabrina Merold (*pro hac vice*)
1100 New York Ave. NW, Suit 800
Washington, DC 20005
Telephone: (202) 408-4600
bbrown@cohenmilstein.com
rbraun@cohenmilstein.com
smerold@cohenmilstein.com

Daniel Silverman (*pro hac vice*)
769 Centre Street, Suite 207
Boston, MA 02130
Telephone: (617) 858-1990
dsilverman@cohenmilstein.com

**SUSMAN GODFREY L.L.P.**

Marc M. Seltzer (*pro hac vice*)
Steven G. Sklaver (*pro hac vice*)
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Beatrice C. Franklin (*pro hac vice*)
One Manhattan West
New York, New York 10001
Telephone: (212) 336-8330
bfranklin@susmangodfrey.com

Matthew R. Berry (*pro hac vice*)
Floyd G. Short (*pro hac vice*)
Alexander W. Aiken (*pro hac vice*)
401 Union St., Suite 3000
Seattle, Washington 98101
Telephone: (206) 516-3880
mberry@susmangodfrey.com
fshort@susmangodfrey.com
aaiken@susmangodfrey.com

***Attorneys for Plaintiffs and the Class***