DMITRY SHKIPIN (*pro se*)
support@homeopenly.com
325 Sharon Park Dr. #416
Menlo Park, CA 94025
Telephone: 650.281.6962

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MISSOURI, WESTERN DIVISION

| | |
|---|---|
| RHONDA BURNETT, JEROD BREIT, HOLLEE ELLIS, FRANCES HARVEY, and JEREMY KEEL, on behalf of themselves and all others similarly situated,<br>　　　　Plaintiffs,<br><br>　　v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, et al.,<br>　　　　Defendants. | Case No.: 4:19-cv-00332-SRB<br><br>**GEODOMA'S STATEMENT IN SUPPORT OF CONSUMERS**<br><br>Judge:　　Hon. Stephen R. Bough |
| DON GIBSON, LAUREN CRISS, JOHN MEINERS, and DANIEL UMPA, on behalf of themselves and all others similarly situated,<br>　　　　Plaintiffs,<br><br>　　v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, et al.,<br>　　　　Defendants. | Case No.: 4:23-cv-00788-SRB<br>[Consolidated with 4:23-cv-00945-SRB]<br><br>Judge:　　Hon. Stephen R. Bough |

**STATEMENT**

Your Honor, Zillow Preferred (Flex) violates RESPA (Real Estate Settlement Procedures Act) by requiring so-called Flex Partner Agents to remit ~40% of their commission to Zillow, as a platform advertising fee paid for referring them to Homebuyers.

However, Homebuyers cannot effectively sue Zillow for this RESPA fraud because of the fundamental requirement established by <u>Gibson et al.</u> Settlement Agreement mandates that NAR-affiliated MLS Participants' Buyer commissions are negotiated by Buyers and are treated as the Buyer's responsibility – ***is not being followed.***

Most recently, in <u>Taylor v. Zillow, Inc. Order Motion to Dismiss 2:25-cv-01818-JLR (W.D. Wash. Jul. 27, 2026) (Doc. 102)</u>, Hon. James L. Robart reasoned:

> "Furthermore, the CACC explicitly asserts that the seller and the listing broker specify the commission amount, and that the seller pays the total commission to the buyer-broker, rather than the buyer."

> "Their Section 2607(b) claim fails because Plaintiffs allege that seller brokers paid the settlement fees at issue. (Id. 298 (acknowledging that the "seller brokers"—not the buyers' brokers—paid the Hidden Zillow Fee).) Because Plaintiffs did not directly pay for the contested settlement services, they lack statutory standing, and the claim fails as a matter of law. In light of this threshold deficiency, the court declines to address the remaining bases for dismissal of Plaintiffs' RESPA claims."

In my civil lawsuit with HomeLight, the United States District Court for the Northern District of California recently reasoned that HomeLight acts in a vertical servicer-customer relationship at a different level of the supply chain, with +/-28,000 partner agents. The federal court had reasoned that HomeLight is an "upstream" supplier of paid referrals to "downstream" real estate brokers, as opposed to a real estate broker acting on the same level of distribution.

> "To start, even though HomeLight is a licensed brokerage, in the context of this agreement HomeLight and agents are not acting as horizontal competitors agreeing to charge customers the same price for a service they both offer. …

HomeLight's referral is better thought of as a vertical input to the partner agent's ultimate sale … [where] … real estate agents [are] referral platform's intermediate consumers …" <u>HomeLight, Inc. v. Shkipin</u>, 694 F. Supp. 3d 1242, 1250 (N.D. Cal. 2023)

This same distinction was articulated in another recent legal dispute (<u>McLaughlin v. HomeLight, Inc.</u>) that also clarified that HomeLight functions as a referral platform, as opposed to "a real estate agent directly involved with home buyers or sellers in the purchase and sale of real estate." That court reasoned:

"HomeLight contends that McLaughlin brings this lawsuit as an aggrieved potential consumer of its real estate agent referral service, not as a direct competitor. The Court agrees with HomeLight that McLaughlin does not plead facts supporting his conclusion that he and HomeLight are 'direct competitors.'" <u>McLaughlin v. HomeLight, Inc.</u>, 2:21-cv-05379-MCS, 2021 (C.D. Cal. Sept. 17, 2021)

In markers that do not involve RESPA-covered settlement services, there is typically no problem with this vertical servicer-customer relationship, at a different level of the supply chain. Businesses can easily serve other businesses as their customers. However, subject to RESPA, this servicer-customer relationship designation plainly precludes 12 U.S.C. § 2607(c)(3) safe harbor applicability for any of the "referral platform" referrals of RESPA-covered "settlement services."

An agent-matching platform may, of course, easily sell customer leads to real estate brokers or charge for subscriptions. However, such sales must never be tied to the outcome of the successful transaction or be based on a percentage of brokerages' commissions.

The US-CFPB Advisory Opinion issued on February 7, 2023, further confirms that any operator of a "settlement services" digital comparison-shopping platform receives a prohibited referral fee in violation of RESPA when the operator receives a "thing of value" for referral

activity. (See https://www.consumerfinance.gov/rules-policy/final-rules/real-estate-settlement-procedures-act-regulation-x-digital-mortgage-comparison-shopping-platforms-and-related-payments-to-operators/ )

From the same RESPA/RICO Taylor et al. class action lawsuit, Consumers' Opposition to Zillow Motion to Dismiss similarly reads:

> "Though Zillow is a licensed real-estate broker, Plaintiffs allege that "Zillow does not act as a real-estate broker or perform brokerage functions in these [challenged] transactions[,]" but instead, merely "operates as a referral marketplace[.]". Accepting those allegations as true, Zillow received a portion of settlement charges generated by brokerage services performed by participating agents while providing none of those brokerage services. Such an arrangement falls outside RESPA's safe harbor. Courts have recognized that agent-matching platforms operate upstream of brokers by supplying referrals rather than acting as brokers themselves. See HomeLight, Inc. v. Shkipin, 694 F. Supp. 3d 1242, 1250 (N.D. Cal. 2023) (describing referral platform as a vertical supplier of referrals to real estate agents rather than a broker competing with them); Henson, 18 F. Supp. 3d at 1012 (rejecting the notion that RESPA's safe harbor applies whenever the recipient performed some generic service, observing that such a rule "would lead to illogical results"). Under Plaintiffs' allegations, this scheme is not a fee division between cooperating brokers working on a transaction; they are success-based payments extracted from agents' commissions when a sale closes. The safe harbor offers Zillow no refuge." Taylor v. Zillow, Inc., 2:25-cv-01818 (W.D. Wash.) (Doc. 80)

Zillow merely attempts to meet 12 U.S.C. § 2607(c)(3) broker-to-broker exemption to collect massive ~40% referral fees (these kickbacks have been estimated to yield 32x more revenue than lawful upfront ads, because they are baked into federally funded loans and paid only upon successful transaction), but this exemption simply does not apply to agent-matching platforms that serve real estate brokers as customers. Zillow Preferred (Flex) "success fees" are de facto a federal crime whenever a referral is made "incident to or a part of a real estate settlement service involving a federally related mortgage loan."

Subject to this reality, in collusion with over 100,000 "Flex partner agents," Zillow Preferred (Flex) violates RESPA every (4) seconds, an estimated $5 billion RESPA fraud since 2018. This is not merely honest services fraud; it is also wire fraud, where RESPA-banned kickbacks are originated and transmitted with "use of interstate wire communication to further that scheme." United States v. Lemire, 720 F.2d 1327 (D.C. Cir. 1983)

However, Homebuyers cannot make any of these arguments right now: they have been denied Article III standing (as you know, indeed, Article III Constitutional rights are limited to harmed consumers who have PAID for the contested settlement services.)

As I recently described before this Court in my Amicus Brief (ECF 1740), in 2024, to avoid the fallout from this antitrust litigation, NAR established a false claim that "Fannie Mae and Freddie Mac published explicit confirmations that [until 2031] commissions for [NAR-affiliated MLS Participants] buyer agents paid by the Seller would not count against the Buyer." (Source: https://www.nar.realtor/the-facts/nar-settlement-faqs )

This false claim utilizes a rudimentary lie to misinterpret the actual guidance that strictly applies to closing costs paid by a Seller (i.e., costs that are the Seller's responsibility) "are not subject to the IPC limits." (Source: https://singlefamily.fanniemae.com/media/38706/display )

Under law, GSE's April 15, 2024 "Real Estate Commissions and Interested Party Contributions" Guidance DOES NOT apply to Buyer-paid commissions. Despite that, NAR-affiliated MLS Participants devised this lie to ILLEGALLY bake Buyer-paid commissions into federally funded loans as Seller-paid closing costs (listed on the Seller-side of the HUD-1 Statement). Whenever Buyer-paid commissions are ILLEGALLY charged on the Seller-side of the HUD-1 Statement (as opposed to the Buyer-side of the HUD-1 Statement, where they belong) – there is, indeed, a legitimate question of law if such fees are truly Buyer-paid closing

costs. Consequently, Buyers now lack the Article III standing to raise a RESPA claim to rightfully keep their Buyer-paid commissions free from RESPA-banned kickbacks.

This IPCs fraud creates an absurd condition where Buyers are required to negotiate commissions with NAR-affiliated MLS Participants and are responsible for paying for commissions to NAR-affiliated MLS Participants, yet these costs are recorded into the HUD-1 Settlement Statement as Seller-paid commissions.

This conduct is not only fraud against the United States Government, but also a multi-level problem for Buyers being unable to show Article III standing to sue massive kickback schemes (such as Zillow Flex) that openly subject them to ~40% "success fees" banned under Section 8 of RESPA.

Buyers are, in fact, responsible for paying Buyer-paid commissions (if the Buyer signs the Buyer Broker Agreement with an NAR-affiliated MLS Participant and violates it – they will end up having to get their checkbook out and pay $30,000 on a $1M home purchase subject to a 3% commission – that they have expressly agreed to pay). Gibson et al. Settlement Practice Changes are crystal clear: Buyers must agree to pay and are fully responsible for paying Buyer-paid fees.

Without a concise Order by this Court that distinctly clarifies that contributions made by Sellers with a vested interest in the transaction to cover costs that are the Buyer's responsibility are IPCs, we are now entering into a twilight zone of lawlessness and disorder: Buyers cannot effectively ask our federal and state courts to keep their Buyer-paid commissions free from kickbacks, even though they are required to enter into Buyer Broker Agreements (BBAs) with NAR-affiliated MLS Participants and are legally responsible for paying Buyer-paid commissions that they negotiate over.

When Buyer-paid commissions are ILLEGALLY entered on the Seller-side of the HUD-1 Statements, across 1,500,000 NAR-affiliated MLS Participants across 4,000,000 to 6,000,000 home purchase transactions every year – this is not an isolated issue. In the interest of justice, this Court is beholden to clarify it. Buyers are innocent victims, Your Honor – they do not know about any of this: they do not know about RESPA, they do not know about GSEs IPCs caps, they do not know that Zillow scams them blind with illegal kickbacks that cost them an ability to negotiate $10,000s in buyer broker rebates in (40) states.

Today, massive "Referral Networks," (e.g., Opendoor.com Partner Program mellohome.com (loanDepot) Tomo.com (Moto Real Estate) Better.com Real Estate OwnUp.com (RateGravity) FastExpert.com Offerpad.com HomePro AmeriSaveRealty.com AtClosing.com Newzip.com (Realeaux) HomeAdvantage.com HomeStoryRewards.com AgentFixup.com SOLD.com LemonBrew.com ClosingLeads.com 55places.com Neighborhoods.com NavyFederalRealtyPlus.com MyAgentFinder.com (BoomTown) HomeAndMoney.com (BoomTown) RealEstateAgentsITrust.com (Glenn Beck) RamseySolutions.com TopAgentsRanked.com (ReferralExchange) PLACE.com HomeGenius.com (Radian) IdealAgent.com RealEstateAgents.com (ReferralExchange) AgentPronto.com Estately.com ReferralExchange.com Landed.com HouseTea.com HouseWhisper.ai GetRidley.com TrueParity.com ComeHome.com (HouseCanary) Lower.com (Movoto, OJO) NAFHomes.com (New American Funding) ListWithClever.com (Clever Real Estate) Realtor.com (OpCity, UpNest) VeteransUnitedRealty.com (Veterans United Home Loans) RocketHomes.com (Rocket, Redfin Partner Program) Zillow.com Preferred (Flex, Zillow Home Loans) HomeLight.com EffectiveAgents.com HomesForHeroes.com and similar paper brokerage sham arrangements), scam consumers blind with ~25% to ~40% RESPA-banned "success fees" kickbacks in the

middle of a housing affordability crisis and engage in false advertising and unlawful steering practices, in violation of, inter alia, 15 U.S.C. § 45, RESPA 12 U.S.C. § 2607, 12 C.F.R. § 1024.14 as well as racketeering activities within the meaning of RICO 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c), by using wire facilities, in violation of 18 U.S.C. § 1343 (wire fraud) that amount to over $15 billion every year, stolen from the $100 billion Consumers spend on real estate commissions.

By working together as part of an enterprise and using interstate wire communications in furtherance of their fraudulent scheme, every "Referral Network" conspires with unaffiliated real estate brokerages (such as Side.com TheJasonMitchellGroup.com LPTRealty.com UnitedRealEstate.com HomeSmart.com NextHome.com FathomRealty.com WestUSA.com RealtyExecutives.com TheAgencyRE.com SERHANT.com Corcoran.com Intero.com RealtyOneGroup.com SothebysRealty.com ERA.com Compass.com ColdwellBanker.com ChristiesRealEstate.com CENTURY21.com BHGRE.com atProperties.com Anywhere.re VyllaHome.com Windermere.com EVrealestate.com HowardHanna.com oneREAL.com KW.com Elliman.com BHHS.com HomeServices.com eXpRealty.com REMAX.com etc.) that further engage in fiduciary duty fraud, false advertising, and unlawful steering practices, in violation of, inter alia, 15 U.S.C. § 45, RESPA 12 U.S.C. § 2607, 12 C.F.R. § 1024.14, and as a co-conspirators in "Referral Networks" racketeering activities within the meaning of RICO 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c), by using wire facilities, in violation of 18 U.S.C. § 1343 (wire fraud).

Post-settlement, NAR-affiliated MLS Participants lock Homebuyers into mandated Buyer Broker Agreements (BBAs), but also tell them: "Don't worry about it – we will just bake your 3% Buyer-paid commission cost into the purchase offer – and it does not count against you."

Buyers do not KNOW that this "does not count against you" notion also means that NAR-affiliated MLS Participants subject them to IPCs fraud (since August 17, 2024.) NAR-affiliated MLS Participants' ILLEGAL conduct further destroys Buyer's Article III Constitutional standing to raise a RESPA claim to keep their Buyer-paid commissions free from illegal kickbacks.

## THIS ISSUE AFFECTS THE GREATER PUBLIC INTERESTS, AND THIS COURT HAS FULL JURISDICTION OVER THE SETTLEMENT AGREEMENT

Zillow characterized Hon. James L. Robart's Jul. 27, 2026 ruling where "[p]laintiffs make no allegations that they paid out-of-pocket for any settlement services" as a greater vindication of a "baseless" lawsuit, saying the Consumers have described ordinary business conduct and called it a RICO conspiracy. (See https://www.zillow.com/news/court-dismisses-baseless-taylor-v-zillow-lawsuit/ ).

NAR-affiliated MLS Participants openly proclaimed that "that [Gibson et al. antitrust] lawsuit essentially did nothing but add more paperwork." (Source: https://www.morningstar.com/news/marketwatch/2026052523/im-selling-my-1-million-home-will-my-agent-really-charge-less-than-a-6-commission ).

At what point are we going to stop pretending that steering, kickbacks, racketeering, price-fixing, and IPCs fraud are ordinary business conduct that NAR-affiliated MLS Participants or Zillow Flex Partner Agents can subject people to when buying and/or selling homes?

This Court holds the answer, and this answer starts with clarifying the PAYMENT responsibility for Buyer-paid commissions post-settlement. This Court can interpret the law principles to determine the original intent of the Parties, to provide both Buyers and Sellers with the one and true answer:

1. **What side of the Settlement Statement (HUD-1) (https://www.hud.gov/sites/documents/1.pdf ) MUST NAR-affiliated MLS Participants, bound by the Gibson et al. Settlement Agreement, use to record the agreed-upon specific amount or rate of compensation stated in their Buyer Broker Agreements with Homebuyers: (A) the Borrower's Side, or (B) the Seller's Side?**

In other words, since August 17, 2024, *are Buyers responsible for PAYMENT* for the services rendered by their real estate broker, as defined under 12 U.S.C. § 2602(3), when working with NAR-affiliated MLS Participants bound by the written Buyer Broker Agreement mandate under the Gibson et al. Settlement Agreement?

If the answer is (B) the Seller's Side, then why do Buyers have to sign mandatory Agreements with NAR-affiliated MLS Participant buyer brokers? If the answer is (A) the Borrower's Side, then we have a serious problem, called mortgage fraud, because it is not the side these fees are currently being recorded on.

Thank you for your time,

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 6, 2026

*/s/ Dmitry Shkipin*

Dmitry Shkipin, pro se