**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| RHONDA BURNETT, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, et al.,<br><br>Defendants. | Case No. 4:19-cv-00332-SRB |
| DON GIBSON, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, et al.,<br><br>Defendants. | Case No. 4:23-cv-00788-SRB |

**NON-PARTY JND LEGAL ADMINISTRATION LLC'S**
**MOTION TO RECUSE SPECIAL MASTER**
<u>**CHRIS HELLUMS AND INCORPORATED SUGGESTIONS IN SUPPORT**</u>

<u>**ORAL ARGUMENT REQUESTED**</u>

i

# TABLE OF CONTENTS

PRELIMINARY STATEMENT.................................................................................................. 1

ARGUMENT ...................................................................................................................... 3

I.    The Court Should Disqualify Mr. Hellums Pursuant to Fed. R. Civ. P. 53(a)(2) and 28 U.S.C. § 455(a). ........................................................................................................ 3

    A.    Section 455(a) Requires Disqualification of a Special Master Whose Impartiality May Reasonably Be Questioned ................................................................................. 3

    B.    Mr. Hellums' Impartiality May Reasonably Be Questioned.............................................. 4

        1.    Mr. Hellums attacks JND in the *BCBS Class Action*. ...................................................... 4

        2.    Mr. Hellums is appointed as Special Master to audit and report on JND but does not disclose his actions in *BCBS*. ..................................................................................... 10

CONCLUSION................................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**<u>Cases</u>**

*Antoniu v. SEC*,
    877 F.2d 721 (8th Cir. 1989) ........................................................................................ 12

*In re Brooks*,
    383 F.3d 1036 (C.A.D.C., 2004) ................................................................................. 12

*Liteky v. U.S.*,
    510 U.S. 540 (1994) ............................................................................................. 3, 4, 13

*Moran v. Clarke,*
    296 F.3d 638 (8th Cir. 2002) ....................................................................................... 3, 4

*White v. Nat'l Football League*,
    585 F.3d 1129 (8th Cir. 2009) ......................................................................................... 4

**<u>Statutes</u>**

28 U.S.C. § 455 ........................................................................................................... 10, 12, 13

28 U.S.C. § 455(a) ................................................................................................1, 2, 3, 10, 11, 13

28 U.S.C. § 455(b) ............................................................................................................... 10

**<u>Rules</u>**

Fed. R. Civ. P. 53 ..................................................................................................................... 1

Fed. R. Civ. P. 53(a)(2) ....................................................................................................... 3, 13

Fed. R. Civ. P. 53(b)(1) ...........................................................................................................11

Fed. R. Civ. P. 53(b)(3)(A) ...................................................................................................10, 11

Case 4:19-cv-00332-SRB    Document 1744    Filed 08/07/26    Page 3 of 18

JND Legal Administration LLC ("JND") respectfully files this motion for recusal of Special Master Chris Hellums under Fed. R. Civ. P. 53 and 28 U.S.C. § 455(a) and submits these suggestions in support.

## PRELIMINARY STATEMENT

JND is fully prepared to comply with the Court-supervised audit in this case and intends to do so. The audit will confirm what JND has explained in this and other proceedings—JND has a well-earned reputation as an industry leader that is properly relied upon by courts and class and defense counsel to administer the most complex class action settlements. Indeed, JND has publicly filed all of its invoices in this matter. Those invoices disclose all of JND's fees, which can be freely scrutinized. JND also submits its invoices to Class Counsel on a monthly basis for review and approval. And, it has publicly filed additional statements sworn under penalty of perjury attesting to the work JND has done and the terms of its charges. As all of those submissions show, JND has scrupulously and without exception adhered to the terms of its court-approved appointment and direction by counsel. In short, JND's transparency makes clear that it has nothing to hide.

JND is nonetheless compelled to bring to light a significant conflict involving Mr. Chris Hellums that was not disclosed in his affidavit to the Court. In connection with his responsibilities in *In re Blue Cross Blue Shield Antitrust Litigation*, MDL No. 2406, No. 2:13-cv-20000-RDP (N.D. Ala.) ("*BCBS*"), where Mr. Hellums serves as Local Facilitating Counsel and JND serves as claims administrator, Mr. Hellums has expressed a bias against JND. Spurred by the recent scrutiny on claims administrators, banks, and debit card vendors, which is now the subject of *In re Class Action Settlement Administration Litigation*, MDL No. 3162, No. 1:25-mc-00179-JDB (D.D.C.) ("*In re*

1

*Class Action Settlement Admin. Litig.*"), pending before Judge John Bates,[1] Mr. Hellums asked JND to disclose any credits or rebates or any other revenue sharing from vendors. JND responded several times, informing Mr. Hellums that, "[i]n this case, JND has received no credits or rebates or any other revenue sharing from vendors and will not do so." Ex. 1 to Declaration of Stacey Gilman ("Gilman Dec.") (Zola email, Dec. 24, 2025, 12:16 PM). Notably, JND's responses to Mr. Hellums followed months of scrutiny of its work by the *BCBS* court (Hon. R. David Proctor), class counsel (Boies Schiller and Hausfeld), and special master (Ed Gentle III). This included voluminous disclosures, interviews, and a competitive bidding process to handle digital distribution. Ultimately, class counsel[2] and the court agreed that JND should handle digital distribution. But none of this made any difference to Mr. Hellums. Instead, ignoring JND's unequivocal representations that it had not received and would not receive any credits, rebates, or revenue-sharing payments, Mr. Hellums nonetheless told JND, without any basis, that, "[i]f asked by the special master, court, or leadership, my recommendation will be that JND not be allowed to handle any digital distributions." Ex. 1 to Gilman Dec. (Hellums email, Jan. 5, 2026, 3:07 PM).

Mr. Hellums' unfounded and unexplained pronouncement against JND compels his disqualification. Under 28 U.S.C. § 455(a), no judge would be permitted to oversee a case against a party under comparable circumstances, because a reasonable person apprised of the facts would

---

[1] JND notes that Mr. Hellums has, on at least two occasions, spoken on panels regarding these issues with the very lawyers leading the lawsuit against JND in *In re Class Action Settlement Admin. Litig.* JND has attempted to obtain recordings of those presentations but has been told they are only available to plaintiffs' counsel. *See HarrisMartin's MDL Conference*, HARRISMARTIN (Mar. 2026), https://www.harrismartin.com/conferences/1288/MDL_March2026/agenda/; *HarrisMartin's MDL Conference: Dupixent, Spinal Cord Stimulator and MDL Updates*, HARRISMARTIN (May 2026), https://www.harrismartin.com/conferences/1354/MDL_May2026/agenda/.

[2] Notably, David Boies is the head of the Executive Committee in *In re Class Action Settlement Admin. Litig.* See Dkt. No. 111 (Apr. 9, 2026) (order appointing leadership).

2

question the judge's impartiality. And, under Fed. R. Civ. P. 53(a)(2), the same standard for disqualification applies equally to a Special Master. A reasonable person apprised of the facts would agree that Mr. Hellums cannot craft and supervise an audit of JND when he has already formed negative opinions about JND, particularly when the negative prejudgments he expressed relate directly to JND's veracity. If an audit is to be conducted, it must be beyond reproach and capable of reassuring class members, the public, and the Court about the soundness of the results. This is the very purpose of Rule 53(a)(2) and § 455(a). Accordingly, the Court should disqualify Mr. Hellums from his Special Master appointment.

## ARGUMENT

**I. The Court Should Disqualify Mr. Hellums Pursuant to Fed. R. Civ. P. 53(a)(2) and 28 U.S.C. § 455(a).**

This is a textbook case for disqualification—Mr. Hellums' impartiality to serve as a Special Master would reasonably be questioned due to his role in *BCBS* and opinions he expressed against JND even in the face of detailed scrutiny by the court, class counsel, and a special master that uniformly approved JND's role in that action. Given this history, which was not disclosed to this Court, Mr. Hellums cannot serve as Special Master in this case, where he would be required to assess and report on largely the same issues that were the subject of his conclusions in *BCBS*.

**A. Section 455(a) Requires Disqualification of a Special Master Whose Impartiality May Reasonably Be Questioned**

The judicial disqualification statute broadly requires that a judge—or a special master, by way of Fed. R. Civ. P. 53(a)(2)—"shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a); *see also Liteky v. U.S.*, 510 U.S. 540, 547 (1994). "Whether a judge actually has a bias, or actually knows of grounds requiring recusal is irrelevant—section 455(a) sets an objective standard that does not require scienter." *Moran v. Clarke,* 296 F.3d 638, 648 (8th Cir. 2002) *abrogated on other grounds by Stockley v.*

3

*Joyce*, 963 F.3d 809, 821 (8th Cir. 2020); *see also Liteky*, 510 U.S. at 548. As the Eighth Circuit has explained, "[i]n analyzing whether recusal is required, we ask 'whether the judge's impartiality might reasonably be questioned by the average person on the street who knows all the relevant facts of a case.'" *White v. Nat'l Football League*, 585 F.3d 1129, 1138 (8th Cir. 2009) (quoting *Moran,* 296 F.3d at 648).

### B. Mr. Hellums' Impartiality May Reasonably Be Questioned

Mr. Hellums cannot serve as a Special Master to oversee an audit of JND after attacking JND in *BCBS* and stating, without basis, that it should not handle any digital distribution. Simply put, an "average person on the street" who is informed about these facts would reasonably question Mr. Hellums' impartiality. *See White*, 585 F.3d at 1138.

#### 1. Mr. Hellums attacks JND in the *BCBS Class Action*.

Mr. Hellums' role, actions, and statements in *BCBS* against JND, through which he overtly expressed bias based on an unfounded hunch, provide ample grounds to question his impartiality. Mr. Hellums was initially appointed in 2013 to serve as Local Facilitating Counsel for the Subscriber Plaintiffs. *BCBS*, Dkt. 61. At that time, the Court also appointed David Boies and Michael Hausfeld to serve as Co-Lead Class Counsel. *Id*. On November 30, 2020, the Court entered an order granting preliminary approval, which included selection of JND to serve as claims administrator. *BCBS*, Dkt. 2641. The Court subsequently granted final approval on August 9, 2022. *BCBS*, Dkt. 2931.

JND implemented an extensive notice campaign that resulted in the filing of more than 8.4 million claims. *See* Declaration of Jennifer M. Keough in Support of Plaintiffs' Motion for Approval of Distribution Plan ("Keough Dec.") ¶ 14, *BCBS*, Dkt. 3419-2; Ex. 2 to Gilman Dec. JND's efforts in *BCBS* are described in detail in the 58-page declaration Ms. Keough submitted in

4

April 2026, which explains the extensive work JND completed during the administration, including complex claim processing, call center activities, work with Judge Gonzalez regarding disputed claims, and myriad other tasks. *Id.* Ex. 2 to Gilman Dec. The Keough Declaration also explains the year-long negotiation between the parties, the special master, and JND regarding certain budgets and expected fees. *Id.* ¶¶ 93-94. During this time, JND provided numerous budgets to the parties and special master, made at least four video presentations on its progress and expected next tasks, and engaged in a day-long mediation session in November 2024 in front of Judge Proctor. *Id.* ¶ 94.

JND went through yet another round of scrutiny in 2025. The special master, at the apparent urging of Huntington Bank, which wanted to be considered as an alternative to JND for debit card distribution, agreed to set up an RFP process for the discrete task of handling debit card distribution—a task that was already included in JND's budget that was approved by the Court. *BCBS*, Dkt. 3419-2, Keough Dec. ¶ 94; Ex. 2 to Gilman Dec. JND responded to an extensive RFP crafted by the special master. In its response, JND provided detailed pricing as well as answers to very specific questions about how JND would handle all digital distribution, including questions about how JND would be paid. JND confirmed that in *BCBS*, it would not receive rebates, credits, or revenue sharing in connection with its handling of digital distribution. Ultimately, JND was *again* selected by class counsel to handle digital distribution. The court agreed with and approved JND's selection. *BCBS*, Dkt. 3420; Ex. 3 to Gilman Dec.

Mr. Hellums' relevant activities and statements in *BCBS* recently occurred in December 2025 and January 2026, and overlapped with JND's *repeat* selection to handle digital distribution. Despite the fact that JND had answered all questions about its bid and provided detailed information to class counsel about its services, including confirming that it was not going to receive

credits, rebates, or revenue sharing, Mr. Hellums initiated an unfounded campaign *against* JND. This included his repeated demands for information that JND had already disclosed and his insistence on JND proving a negative—*i.e.*, that JND would not receive credits, rebates, or revenue sharing—despite the fact that JND had provided sworn written assurance that it would not do so in *BCBS*, and had also separately reassured Mr. Hellums in writing of this fact.

On December 18, 2025, Mr. Hellums first emailed Jennifer Keough and Neil Zola, JND's principals, with questions about its work. Ex. 1 to Gilman Dec. (Hellums email, Dec. 18, 2025, 12:20 PM). Mr. Hellums posed two questions, purportedly in preparation for a call the next day. *Id.* First, he asked what custodial bank and card issuer JND planned to use for digital distributions. *Id.* Second, despite acknowledging JND's proposal's clear statement that JND would "'receive no compensation other than what is outlined in this proposal and our Budget,'" Mr. Hellums asked JND to "be more specific on precisely the amount of revenue you are budgeting to make from digital distributions." *Id.*

Ms. Keough responded promptly within a matter of hours to note that she was not invited to the call that was the subject of his email. Ex. 1 to Gilman Dec. (Keough email, Dec. 18, 2025, 2:43 PM). Rather than clarify the situation, Mr. Hellums attacked JND, effectively accusing Ms. Keough of refusing to "disclose the information" and insisting that he had asked for this information before and "ha[d] made similar requests to Huntington Bank." Ex. 1 to Gilman Dec. (Hellums email, Dec. 19, 2025, 11:11 AM). Mr. Hellums asserted that he had "evaluated both proposals"—one from JND and another from Huntington Bank—but that he was "not able to reconcile the results without additional information from both parties." *Id.*

Once again, JND responded to Mr. Hellums within hours. Ex. 1 to Gilman Dec. (Zola email, Dec. 19, 2025, 2:44 PM). Mr. Zola explained in an email the pricing terms for PayPal and

6

Venmo payments to class members, which already appeared in JND's proposal to the special master, and stated that this was also "the same **<u>EXACT</u>** pricing that we put in our final budget that was approved by all parties, the Special Master and the Court in November 2024, after a year of negotiation." *Id*. Mr. Zola further explained that JND had not selected a card issuer yet but that the pricing did not matter because JND "will charge the class precisely what we outline above," *i.e.*, the same amount that JND had included in its budget. *Id*. Mr. Zola then addressed the issue of payments to JND from the card issuer head on: "And just so there is no further misunderstanding, JND will not be receiving a dime from whichever card issuer we select, even though we are entitled to such compensation under paragraph 4 of the contract that was negotiated and signed by Boies Schiller, Hausfeld, Burns Charest, and JND in this matter." *Id*.

Mr. Hellums responded on December 23 and continued to escalate his attacks on JND. Ex. 1 to Gilman Dec. (Hellums email, Dec. 23, 2025, 12:24 PM). Turning Mr. Zola's prior email on its head, Mr. Hellums suggested that the mere fact that JND's contract permitted JND to receive "rebates or credits from vendors" was an "indicat[ion] at the time [the contract] was presented to leadership, [that] JND intended to receive some sort of undisclosed revenue sharing from 'vendors.'" *Id*. Mr. Hellums made this assertion even though Mr. Zola's prior email stated unequivocally that JND was not receiving—and would not receive—any payments from vendors in that case. Yet, based on contractual language that gave JND the (unexercised) permission to receive such payments, and noting various news reports principally about class action settlements with which JND had no involvement, Mr. Hellums insisted *again* that JND disclose "what specific commissions, rebates, credits, and revenue sharing [it] w[as] intending to receive and what [it] ha[d] already received." *Id*.

7

JND promptly responded and explained, once again, that it "received no credits or rebates or any other revenue sharing from vendors and will not do so" in *BCBS*. Ex. 1 to Gilman Dec. (Zola email, Dec. 24, 2025, 12:16 PM). Mr. Zola further explained that this did not "change the fact that contractually [JND is] allowed to." *Id*. In other words, Mr. Zola tried to explain to Mr. Hellums again that—even though JND was allowed to receive those types of benefits by a court-approved contract that had been reviewed, negotiated, and accepted by class counsel—JND had not and would not do so in *BCBS*. Mr. Zola concluded his email by inviting Mr. Hellums to join a call that was being organized in January to discuss JND's digital payment proposal. *Id*.

A week and a half later, on January 5, 2026, the day before that call was scheduled to be convened to answer any remaining questions about JND, Mr. Hellums responded with yet another attack on JND. Ex. 1 to Gilman Dec. (Hellums email, Jan. 5, 2026, 3:07 PM). Despite being told that "JND has received no credits or rebates or any other revenue sharing from vendors and will not do so," *id*. (Zola email, Dec. 24, 2025, 12:16 PM), and despite the extensive scrutiny that JND was subjected to by class counsel that culminated with JND's selection to perform digital distribution services, *which the court approved*, Mr. Hellums doubled down on his accusations against JND. Mr. Hellums announced that he had no "specific authority to make decisions related to this matter" but that, "[i]f asked by the special master, court, or leadership, my recommendation will be that JND not be allowed to handle any digital distributions." *Id*. (Hellums email, Jan. 5, 2026, 3:07 PM). Notably, Mr. Hellums did not point to any actual evidence in *BCBS* or anything specific to JND to support his desire to reject JND's role—this was unsurprising given the extensive vetting process JND had just been subjected to. Instead, Mr. Hellums invoked his "experience in this area," arising from his having "previously been appointed [sic] by a federal judge to investigate and prepare a report and recommendation related to claims administration

8

irregularities" and his representation that he would "shortly be undertaking an RFP process for a large digital distribution." *Id*.

The entirety of Mr. Hellums' January 5 email is as follows:

Neil

I am not lead counsel and I am not a member of the PSC. I do not have any specific authority to make decisions related to this matter. I do have some experience in this area, as I have previously been appointed appointed by a federal judge to investigate and prepare a report and recommendations related to claims administration irregularities and will shortly be undertaking an RFP process for a large digital distribution. If asked by the special master, court, or leadership, my recommendation will be that JND not be allowed to handle any digital distributions. My reasoning is simple. Without the information requested, a proper and transparent analysis cannot be performed.

Chris Hellums
Pittman, Dutton, Hellums, Bradley & Mann, P.C.

Ex. 1 to Gilman Dec.

On January 6, class counsel held its scheduled video conference with Mr. Zola to answer any final questions it had about JND's proposal, including questions about credits, rebates, or other revenue sharing. Mr. Hellums did not attend the call for reasons unknown to JND. After the conference, Mr. Zola wrote Mr. Hellums to express "disappoint[ment] that [he] w[as] not on the video call when [JND] . . . went through every page of the proposal and answered all questions posed to [JND] by the lawyers who were on the call." Ex. 1 to Gilman Dec. (Zola email, Jan. 6, 2026, 3:12 PM). Mr. Zola further invited Mr. Hellums to follow up with the lawyers who attended to see if they could "change [his] mind as to JND." *Id*. Mr. Hellums never responded.

In short, Mr. Hellums has expressed a bias against JND. The fact of his existing prejudgment is, alone, disqualifying here. But, even worse, Mr. Hellums cast judgment against JND without a factual basis and in direct contrast with the outcome of a competitive selection process that pitted JND against Huntington Bank and in which class counsel, *including a lawyer*

*who is on the Executive Committee of the MDL prosecuting claims against JND*, agreed that JND should handle digital distribution services.

**2.      Mr. Hellums is appointed as Special Master to audit and report on JND but does not disclose his actions in *BCBS*.**

Just months after this hostile exchange with JND, Mr. Hellums was selected to serve as Special Master in this action to shape a review and audit of JND's work.  The Court, of course, did not have the benefit of the above background when it made the selection.

As required by Rule 53(b)(3)(A), Mr. Hellums prepared and signed an affidavit in which he acknowledged that he was required to disclose "any ground for disqualification under 28 U.S.C. § 455."  Affidavit of Proposed Special Master Pursuant to Fed. R. Civ. P. 53(b)(3)(A) ("Hellums Aff.") at 1, *Burnett v. Nat'l Ass'n of Realtors*, No. 19-cv-00332-SRB, Dkt. 1741-1 (W.D. Mo.), Ex. 4 to Gilman Dec.  But Mr. Hellums did not disclose the record above.  Instead, Mr. Hellums submitted an affidavit that began by specifically addressing grounds for disqualification under § 455(b), while skipping over whether there was a basis for his disqualification under § 455(a)—the section pursuant to which this motion is brought.  Under Section 455(a), a judge or special master "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned," as measured by a reasonable person standard.  28 U.S.C. § 455(a).  The relevant portion of Mr. Hellums' affidavit states as follows:

I have reviewed the parties, counsel of record, and known witnesses in this matter. Based on that review, I make the following disclosures:

a. **Financial Interests (§ 455(b)(4)):** I do not have any financial interest in the underlying matter, nor do I have any financial interest in a party to the proceeding.

b. **Prior Involvement (§ 455(b)(1)– (3)):**
I have no personal knowledge of underlying evidentiary facts in the above-referenced proceeding. I have not served as a lawyer in the matter in controversy, nor have I been a material witness concerning it, nor have I previously expressed an opinion concerning the merits of the underlying case in controversy.

Ex. 4 at 2. Mr. Hellums' affidavit did not comply with Rule 53(b)(3)(A) because it failed to address § 455(a). Moreover, while Mr. Hellums recognized on the face of his affidavit that the fact that he and his law firm "have been involved in cases in which JND served as the claims administrator," *id.*, was relevant to his ability to serve as a special master here, he disclosed *only* the fact of that involvement. His affidavit did not disclose the (unfounded) negative judgments he had reached and bias he had shown toward JND in *BCBS* just months earlier.[3] *See Ex. 1 to Gilman Dec.* This Court was thus not aware of Mr. Hellums' relationship with JND when it appointed him.

Under § 455(a)'s objective standard for disqualification, Mr. Hellums should be recused. Indeed, federal courts have repeatedly held that judges and special masters must be disqualified when they have previously espoused negative opinions about a party in an extra-judicial setting.

For example, in *In re Brooks*, the D.C. Circuit held that a special master should be disqualified under § 455(a) where he had written a letter accusing certain attorneys of a "misguided campaign to undermine my authority," and those same attorneys later became subjects of a

---

[3] JND could not have raised this objection before Mr. Hellums' appointment because it did not have prior notice that he was under consideration by the Court to serve as Special Master. *See* Fed. R. Civ. P. 53(b)(1) (requiring prior notice and opportunity to be heard before master's appointment).

11

contempt inquiry he was charged with investigating. *In re Brooks*, 383 F.3d 1036, 1045-46 (C.A.D.C., 2004). The D.C. Circuit held that the tone and substance of the letter made it "likely, if not inevitable" that his compilation of the record and his reports and recommendations would be subject to selection bias, and that "at the very least, an observer apprised of all the facts would reasonably question his impartiality." *Id*. at 1046. This was so notwithstanding the district court's proposal to review the special master's findings and recommendations *de novo*. *Id*.

Similarly, in *Antoniu v. SEC*, 877 F.2d 721, 724-26 (8th Cir. 1989), the Eighth Circuit held that a speech by a commissioner of the Securities and Exchange Commission that described the exclusion of an individual from the industry as permanent and called him an "indifferent violator" while the question of whether to impose permanent debarment was pending before the SEC constituted prejudgment of the issue that required setting aside the SEC's decision. Although *Antoniu* arose in the administrative context, the Eighth Circuit applied a "disinterested observer" standard similar to § 455 to assess whether the commissioner was conflicted. *Id.* at 725

Mr. Hellums' conflict is even more straightforward than *In re Brooks* and *Antoniu*. In *BCBS*, Mr. Hellums stated, without any factual basis, that he did not think JND should provide *any* digital distribution services. What's more, he did so without any regard for the work of *BCBS* class counsel, who selected JND to provide digital distribution services after looking specifically at the issue of whether JND would receive credits, rebates, or revenue sharing. And rather than acknowledging any of this and JND's representations that it would not receive any credits, rebates, or revenue sharing, Mr. Hellums instead used his exchanges to manufacture a dispute with JND based on nothing more than his purported past experience and news reports about other parties.

A person apprised of all the facts would reasonably question Mr. Hellums' impartiality to oversee and shape an audit in this action into the same issues that were the subject of his attacks

12

against JND in *BCBS*. Such an individual not only might—but would—reasonably wonder if Mr. Hellums will steer the audit in a way that is designed to cast doubt on JND and thereby vindicate his predetermined position from *BCBS* that JND should not have a role in any digital distribution. And this hypothetical reasonable individual might even wonder if Mr. Hellums' failure to disclose his recent interactions with JND to this Court was deliberate, providing further reason to question his impartiality.

Notably, because § 455(a) uses an objective standard, all that matters is what a reasonable person apprised of the facts might think. *See Liteky*, 510 U.S. at 548. And, just as a judge never would adjudicate claims against a party after previously attacking that party based on extra-judicial sources, Rule 53(a)(2) applies that same standard to special masters and dictates Mr. Hellums' disqualification.

**CONCLUSION**

For the foregoing reasons, JND respectfully requests that the Court disqualify Mr. Hellums pursuant to Fed. R. Civ. P. 53(a)(2) and 28 U.S.C. § 455 from the audit role assigned to him in the July 27 Order.

DATED: August 7, 2026

Respectfully submitted,

**BERKOWITZ OLIVER LLP**

By: */s/ Stacey R. Gilman*
    Stacey R. Gilman, MO Bar #55690
    2600 Grand Boulevard Suite 1200
    Kansas City, Missouri 64108
    Telephone: (816) 561-7007
    Facsimile: (816) 561-1888
    sgilman@berkowitzoliver.com

and

**ARNOLD & PORTER KAYE SCHOLER LLP**

E. Alex Beroukhim, *pro hac vice forthcoming*
777 South Figueroa Street, 44th Floor
Los Angeles, California 90017
Telephone:  (213) 243-4059
Facsimile:   (213) 243-4199
Alex.Beroukhim@arnoldporter.com

Robert J. Katerberg, *pro hac vice forthcoming*
David J. Weiner, *pro hac vice forthcoming*
601 Massachusetts Ave, NW
Washington, D.C. 20001
Telephone:  (202) 942-5000
Facsimile:   (202) 942-5999
Robert.Katerberg@arnoldporter.com
David.Weiner@arnoldporter.com

*Attorneys for Non-Party JND Legal
Administration*

14

**CERTIFICATE OF SERVICE**

I hereby certify that on the 7th Day of August, 2026, a true and correct copy of the foregoing was filed with the Court's CM/ECF system, which gave notice to all counsel of record.

*/s/ Stacey R. Gilman*
**Attorney for Non-Party JND Legal Administration**

15